UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE J. AUSTIN,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., et al.,<br><br>Defendants. | Case No.  20-cv-00800-JCS<br><br>**REPORT AND RECOMMENDATION REGARDING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND SUFFICIENCY OF COMPLAINT**<br><br>Re: Dkt. Nos. 1, 6 |

## I.  INTRODUCTION

Plaintiff George J. Austin, pro se, brings this action against Defendants Tesla, Inc.; Balance Staffing; MVP Personnel Staffing Group; Tesla employees Steve Anderson, Vince Woodard, Daniel Garcia, and Jose Mendiola; and Balance Staffing employee Sandy Malloy.  The undersigned previously granted Austin's application to proceed in forma pauperis, and now reviews the sufficiency of his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), as well as an application Austin filed for a temporary restraining order.  For the reasons discussed below, the undersigned recommends that Austin's complaint be DISMISSED, with leave to amend as to most claims, and that the application for a temporary restraining order be DENIED.

Because not all parties have consented the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c), this case will be reassigned to a United State district judge for all further proceedings, including action on the recommendations of this report.  Austin may file an objection to these recommendations **no later than May 20, 2020**.  The case management conference previously set for May 8, 2020 is VACATED.

## II.  BACKGROUND

Much of Austin's complaint consists of legal argument as to the elements of various causes of action, including long quotations from statutes, the American Bar Association website, and

other authorities.  Under the Federal Rules of Civil Procedure, a complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), supported by sufficient *factual* allegations to plausibly support the plaintiff's claims, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If Austin files an amended complaint, he is encouraged to begin by clearly presenting, in chronological order, all facts relevant to his claims, and then clearly identifying each claim that he wishes to assert, with a brief explanation of which factual allegations support each claim and which defendants each claim is asserted against.

Austin alleges that a "person of authority" told him that his contract to work with Tesla ended because he recorded a supervisor, in violation of California law requiring consent to recording.  Compl. (dkt. 1) at ECF pp. 7, 15.[1]  According to Austin, that justification "was not only false, but wasn't even inquired upon before taking negative action," and the purportedly false statement "had to go through multiple layers of the company before being passed on to [Austin]." *Id.*  In Austin's view, "[t]he truth was Steve Anderson, Associate Manager, and Jose Mendiola, Supervisor, got caught lying and began becoming hostile when asked about the issue (in a retaliatory manner)," and "when they realized they were documented doing so, it appears someone concocted a lie to cover what they knew was illegal behavior." *Id.* at 15.  Austin alleges that the termination of his contract was retaliation for "making the company aware, all the way up to the CEO, of practices that could result in liability for them due to their behaviors identified as wage theft, unsafe practices, creating a hostile environment, [and] sabotaging upward career mobility." *Id.* at 7.

Austin alleges that he met with Vince Woodard, a human resources officer, "for a promotion, and in reference to [an] issue of pay concern."  *Id.* at 17.  Austin contends that payroll records showed "two ledgers assigned to [his] social security number," with two separate sets of payroll checks, of which he only received one, "with the missing value of approx. $25,000 or more, over 22 checks."  *Id.*  Austin alleges that when he inquired about that discrepancy, Defendants said that the two ledgers reflected the same transactions, but Austin asserts that

---

[1] Because Austin's complaint includes multiple page numbering schemes, this report cites the complaint using the page number's assigned by the Court's ECF docketing system.

United States District Court
Northern District of California

1   differences between the records undermine that explanation, and Defendants failed to explain

2   those differences. *Id.* Austin accuses Defendants of wage theft and failing to give him credit for

3   work performed, which undermined his ability to receive a promotion and to be entered in a

4   contest to win a Tesla vehicle. *Id.* at 18. He also notes that he was "injured on the job, on

5   Thanksgiving of 2019, while working overtime," and alleges that Defendants' "retaliatory

6   behavior happened before [he] was able to obtain an MRI to ensure full health," but the complaint

7   does not explain the circumstances of the injury or make clear whether Austin intends to pursue

8   any claim based on that injury. *Id.* Austin also briefly references "other behaviors creating a

9   hostile work environment," *see id.*, without factual allegations describing any such behavior.

10      Austin lists the following statutes as supporting federal question jurisdiction: (1) "Equal

11   Pay Act (Wage Theft)"; (2) "Whistle-blower laws"; (3) the First Amendment to the U.S.

12   Constitution; (4) 18 U.S.C. § 241, a statute criminalizing conspiracies to suppress the free exercise

13   of civil rights; (5) the Americans with Disabilities Act, based on its protection of "those

14   incorrectly perceived [as having] disabilities . . . and those injured on the job"; and (6) 42 U.S.C.

15   § 1981, guaranteeing equal rights under the law. *Id.* at 4. His complaint also includes references

16   to the Fair Labor Standards Act, *id.* at 8, an unspecified California law regarding wage theft, *id.* at

17   9, defamation, *id.* at 4–5, and the Genetic Information Nondiscrimination Act, 42 U.S.C. § 2000ff,

18   *et seq.*, *id.* at 14–15.

19      Austin attaches a number of documents to his complaint, including copies of several

20   identification cards, a photograph of Austin at a graduation ceremony, various certificates and

21   accolades, and emails that Austin sent to his supervisors inquiring about payroll and attendance

22   issues. *Id.* at 19–47. Those documents, offered for the most part without explanation, do not add

23   meaningful clarity to Austin's allegations.

24   **III.   ANALYSIS**

25      **A.   Legal Standard for Review Under 28 U.S.C. § 1915**

26      Where a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is granted leave

27   to proceed in forma pauperis, courts must engage in screening and dismiss any claims which: (1)

28   are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek

United States District Court
Northern District of California

3

1    monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see*

2    *Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996).  Rule 8(a)(2) of the Federal Rules of Civil

3    Procedure provides that a pleading must contain a "short and plain statement of the claim showing

4    that the pleader is entitled to relief."  A complaint that lacks such statement fails to state a claim

5    and must be dismissed.

6        In determining whether a plaintiff fails to state a claim, the court assumes that all factual

7    allegations in the complaint are true.  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th

8    Cir. 1995).  However, "the tenet that a court must accept a complaint's allegations as true is

9    inapplicable to legal conclusions" and to "mere conclusory statements."  *Ashcroft v. Iqbal*, 556

10   U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The pertinent

11   question is whether the factual allegations, assumed to be true, "state a claim to relief that is

12   plausible on its face."  *Id.* (citing *Twombly*, 550 U.S. at 570).  Thus, to meet this requirement, the

13   complaint must be supported by factual allegations.  *Id.*

14       Where the complaint has been filed by a pro se plaintiff, as is the case here, courts must

15   "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt."  *Hebbe v.*

16   *Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  "A district court should not dismiss a

17   pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the

18   complaint could not be cured by amendment.'"  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir.

19   2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203−04 (9th Cir. 1988) (per curiam)).

20       **B.    Austin's Complaint Does Not State a Claim**

21       Austin's complaint does not include sufficient factual allegations to place any defendant on

22   notice of the basis for his claims or to determine whether he is entitled to relief.  As one example,

23   to the extent that his claims are based on wrongful termination, or more generally on adverse

24   employment action, he has not alleged that his contract was terminated or that he is no longer

25   being paid, but only that Defendants' alleged actions "appear to result in a wrongful termination"

26   despite Austin "hav[ing] yet to receive confirmation in writing."  *See* Compl. at ECF p. 15.  While

27   Austin need not provide *evidence* of the basis for his claims at the pleading stage, he must allege

28

United States District Court
Northern District of California

that the facts on which he basis his claims in fact occurred.[2]  To the extent that his claims are based on purported wage theft, Austin has not specified how much any defendant was obligated to pay him (or specifically identified which Defendant employed him) and has not alleged that he was paid less than agreed or required, but instead merely references ambiguous, potentially duplicative payroll documents bearing Austin's social security number.  To the extent that Austin asserts defamation claims based on statements that he illegally recorded a supervisor, it is not clear from his complaint who made such statements, to whom the statements were directed, or even whether the statements were substantially accurate.  While Austin's complaint includes a conclusory assertion that the statement was "false," he does not address specifically whether he recorded his supervisor, and his allegation that supervisors Anderson and Mendiola were "documented" lying (or perhaps becoming hostile after being caught in a lie—the allegation is somewhat ambiguous), *see* Compl. at ECF p. 15, could perhaps suggest that Austin in fact recorded them.  Accordingly, in the absence of a clear, chronological narrative of the facts giving rise to Austin's claims, his claims do not cross the "plausibility" threshold required by *Iqbal* and *Twombly*.

Austin's complaint does not include clearly enumerated claims or causes of action, but this report addresses each statute or theory of recovery referenced in the complaint in turn, starting with the Equal Pay Act.  That statute, which "was enacted as an amendment to the Fair Labor Standards Act," provides that "'[n]o employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work,'" subject to certain exceptions and affirmative defenses.  *Rizo v. Yovino*, 950 F.3d 1217, 1222 (9th Cir. 2020) (quoting 29 U.S.C. § 206(d)(1)).  Austin does not allege that he was paid less than another employee of the opposite sex for equal work.  He also does not specify which defendant employed him and was obligated to pay him at all.  The undersigned recommends that this claim be dismissed with leave to amend.

---

[2] Austin's separate application for a temporary restraining order indicates that he has applied for unemployment benefits, suggesting that he is in fact no longer employed.  But if Austin wishes to base his claims on termination of his employment, he must allege in his complaint that such termination actually occurred.

To the extent that Austin's complaint references the Fair Labor Standards Act ("FLSA"), that statute "guarantees employees a minimum wage and ensures that they receive additional compensation for overtime work," among other protections, but "is not a general guarantee that an employee will be paid his promised wage." *Thompson v. N. Am. Terrazzo, Inc.*, No. C13-1007RAJ, 2015 WL 926575, at *5 (W.D. Wash. Mar. 4, 2015) (citing 29 U.S.C. §§ 206(a), 207(a)(1)). Here, Austin has not addressed even whether he was paid less than his promised compensation, which would not in itself establish an FLSA violation, much less whether any defendant that employed him failed to pay minimum wage, overtime, or any other wage guaranteed by the FLSA. The undersigned is not aware of any provision of the FLSA implicated by Austin's allegation that Defendants maintained additional payroll records referencing Austin's Social Security number beyond those corresponding to payments Austin actually received. The undersigned therefore recommends that to the extent Austin's complaint could be construed as asserting an FLSA claim, that claim be dismissed with leave to amend.

Austin cites the Whistleblower Protection Act and the Whistleblower Protection Enhancement Act, and asserts that he may have been retaliated against for raising issues related to payroll discrepancies. Those statutes apply only to federal government employees, and Austin has not alleged that he was a federal employee, but rather that he worked for one or more private companies. *See, e.g.*, *Brown v. Techlaw, Inc.*, No. CV 18-84-M-DLC-KLD, 2019 WL 7562365, at *5 (D. Mont. Nov. 1, 2019) ("Because Brown was not a federal employee, he is not entitled to protection under the Whistleblower Protection Act . . . ."), *report and recommendation adopted*, 2019 WL 6271761 (D. Mont. Nov. 25, 2019). The undersigned recommends that any claim under the Whistleblower Protection Act or Whistleblower Protection Enhancement Act be dismissed with prejudice. Austin also references 41 U.S.C. § 4712, *see* Compl. at ECF p. 10, which prohibits federal contractors from retaliating against employees for disclosing to certain authorities "information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or

United States District Court
Northern District of California

1    negotiation of a contract) or grant." 41 U.S.C. § 4712(a)(1).  Austin has not alleged that he

2    disclosed any information falling within that statute, or that any defendant is a federal contractor.

3    The undersigned recommends that this claim be dismissed with leave to amend.  To the extent that

4    Austin's complaint could be construed as raising a whistleblower retaliation claim under any other

5    applicable statute, the undersigned recommends that such claim be dismissed, with leave to

6    amend, for failure to clearly identify any protected disclosure or to allege that Austin was in fact

7    terminated or subject to any other adverse action.  An amended complaint raising such a claim

8    should also identify an applicable statutory basis for such claim.

9         Austin briefly references the First Amendment to the United State Constitution.  *See*

10   Compl. at ECF p. 4.  That amendment, by its terms, restricts *Congress*'s ability to make laws

11   affecting certain rights, although its protections also apply against state governments as

12   incorporated by the Due Process Clause of the Fourteenth Amendment.  *See 44 Liquormart, Inc. v.*

13   *Rhode Island*, 517 U.S. 484, 489 n.1 (1996).  Here, Austin has alleged neither any infringement of

14   a right protected by the First Amendment nor action by any government.  To extent Austin asserts

15   a claim under the First Amendment, the undersigned recommends that such claim be dismissed

16   with leave to amend.[3]

17        Austin cites 18 U.S.C. § 241 without explanation for what alleged conduct might have

18   violated that statute.  *See* Compl. at ECF p. 4.  Regardless, that "criminal provision[] . . .

19   provide[s] no basis for civil liability."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

20   The undersigned recommends that this claim be dismissed with prejudice.

21        Austin cites the Americans with Disabilities Act, and specifically notes its protection for

22   "those incorrectly perceived [as having] disabilities . . . and those injured on the job."  Compl. at

23   ECF p. 4; *see also id.* at 13.  Austin has not alleged that he was subject to discrimination based on

24   any actual or perceived disability.  Similarly, while Austin recites provisions of the Genetic

25   Information Nondiscrimination Act, *id.* at 14, he does not allege that any defendant discriminated

26

27   ───────────────
     [3] Because Austin has not alleged any violation of the First Amendment, this report does not reach
28   the question of what, if any, statutory or judicially-created cause of action might be available to
     assert such violation.

*United States District Court*
*Northern District of California*

1    against him based on genetic information.  The undersigned recommends that these claims be

2    dismissed with leave to amend.

3            Austin cites 42 U.S.C. § 1981, *see* Compl. at ECF pp. 4, 8, which generally provides that

4    all persons within the United States are entitled to the same protection under the law "as is enjoyed

5    by white citizens." 42 U.S.C. § 1981.  That statute protects against discrimination on the basis of

6    race, *see generally Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009,

7    1019 (2020), or in some circumstances against retaliation for opposing racial discrimination, *see*

8    *generally CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008).  Austin has not alleged here any

9    discrimination based on race.  The undersigned recommends that this claim be dismissed with

10   leave to amend.

11           Austin asserts a claim for "defamation per se" based on the implication that he committed

12   a crime under California law by recording a supervisor.  *See* Compl. at ECF pp. 10–11, 15, 18.  As

13   a starting point, a claim for defamation arises under state law, and unless Austin can amend his

14   complaint to assert a sufficient claim under federal law so related to this claim to provide for

15   supplemental jurisdiction under 28 U.S.C. § 1367(a), or allege that no defendant is a citizen of the

16   same state as Austin and the amount in controversy exceeds $75,000 as needed for diversity

17   jurisdiction under 28 U.S.C. § 1332(a), the Court would lack subject matter jurisdiction over this

18   claim.  Assuming that Austin could establish a basis for jurisdiction, the claim is nevertheless

19   subject to dismissal as currently pleaded.

20           Under California law, "[d]efamation constitutes an injury to reputation; the injury may

21   occur by means of libel or slander."  *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003) (citing

22   Cal. Civ. Code § 44).  Libel consists of "a written communication that is false, that is not protected

23   by any privilege, and that exposes a person to contempt or ridicule or certain other reputational

24   injuries." *Id.* (citing Cal. Civ. Code § 45).  "A false and unprivileged *oral* communication

25   attributing to a person specific misdeeds or certain unfavorable characteristics or qualities, or

26   uttering certain other derogatory statements regarding a person, constitutes slander." *Id.* (citing

27   Cal. Civ. Code § 46).  Here, while Austin suggests that *someone* accused him of recording a

28   supervisor in violation of California's two-party consent law and that such accusations "had to go

United States District Court
Northern District of California

1  through multiple layers of the company before being passed to [Austin]," he does not allege that

2  any particular defendant made such a statement—except for Defendant Sandy Malloy, who

3  allegedly told Austin that his contract was being terminated for that reason, but a statement made

4  only *to Austin himself* cannot cause any injury to Austin's reputation.  *See* Compl. at ECF p. 9.

5  Austin's complaint therefore does not state a plausible claim for defamation against any defendant,

6  and the undersigned recommends this claim be dismissed with leave to amend.

7       Moreover, substantial truth is a defense to defamation.  Even if a statement contains minor

8  inaccuracies, the statement is not actionable "unless it would have a different effect on the mind of

9  the reader from that which the truth would have produced."  *Jackson v. Mayweather*, 10 Cal. App.

10  5th 1240 1263 (2017) (discussing *Carver v. Bonds*, 135 Cal. App. 4th 328, 344–45).  As noted

11  above, reading Austin's conclusory assertion that the statement was "false" in conjunction with his

12  allegation that two of his supervisors were "documented" engaging in purported misconduct, as

13  well as the absence of any clear allegation that Austin did *not* record a supervisor, potentially

14  raises an inference that the statement at issue was substantially true.  If Austin files an amended

15  complaint asserting a claim for defamation, it should state whether he recorded a supervisor.

16       Finally, California law recognizes a qualified "common interest" privilege that protects

17  assertions made "[i]n a communication, without malice, to a person interested therein, (1) by one

18  who is also interested, or (2) by one who stands in such a relation to the person interested as to

19  afford a reasonable ground for supposing the motive for the communication to be innocent, or

20  (3) who is requested by the person interested to give the information."  Cal. Civ. Code § 47.  This

21  privilege could potentially encompass internal corporate communications regarding actual or

22  perceived employee misconduct.  Any amended complaint asserting a claim for defamation should

23  include sufficient factual allegations to show that the claim is not barred by the common interest

24  privilege.

25       **C.    Austin Is Not Entitled to a Temporary Restraining Order**

26       After the undersigned granted Austin's application to proceed in forma pauperis, Austin

27  filed an application for a temporary restraining order requiring immediate reissue of payroll

28  checks never delivered to him, immediate payment of unemployment benefits from the

9

1    Employment Development Department ("EDD"), and a correction of the rate utilized by the EDD

2    to calculate Austin's benefits.  *See generally* Application for TRO (dkt. 6).  As the Honorable

3    Yvonne Gonzalez Rogers noted in denying Austin's application for a temporary restraining order

4    in a different case:

> Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977); *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, Inc., 240 F.3d 832, 839 n. 7 (9th Cir. 2001). Preliminary injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction, is an "extraordinary and drastic remedy," that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689–690 (2008) (internal citations omitted). In order to obtain such relief, a plaintiff must establish four factors: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council. Inc.*, 555 U.S. 7, 20 (2008). Moreover, the party seeking such relief must show that he has provided notice to the adverse party or its attorney unless the moving party provides:
>
> > (A) specific facts in an affidavit or a verified complaint [which] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> >
> > (B) [certification] in writing [of] any efforts made to give notice and the reasons why it should not be required.
>
> Fed. R. Civ. P. 65; see also Northern District Local Rules 65-1(b).

19   *Austin v. Georgetown Univ.*, No. 19-cv-05631-YGR, ECF Doc. No. 22 (N.D. Cal. Mar. 3, 2020)

20   (alterations in original).

21        As in that case, Austin has not provided an affidavit to show that any irreparable injury

22   would result in the absence of preliminary relief.  Even if Austin's arguments in his application

23   were presented in an affidavit, the relief that Austin seeks appears to be compensable through

24   money damages.  Moreover, the EDD is not a party to this case and Austin has stated no claim

25   against it, and as discussed above in the context of the sufficiency of his complaint, Austin has not

26   shown that he is likely to succeed on the merits of the claims he actually asserted against any

27   parties.  The undersigned therefore recommends that the application be DENIED.

28

1

## IV. CONCLUSION

For the reasons discussed above, the undersigned recommends that Austin's complaint be DISMISSED with leave to amend, except as to his claims under the Whistleblower Protection Act, the Whistleblower Protection Enhancement Act, and 18 U.S.C. § 241, which the undersigned recommends the Court DISMISS WITH PREJUDICE.  The undersigned recommends that Austin's application for a temporary restraining order be DENIED.  Austin may file objections to these recommendations no later than May 20, 2020.

Austin, who is representing himself, is encouraged to contact the Federal Pro Bono Project's Pro Se Help Desk for assistance if he continues to pursue this case.  Lawyers at the Help Desk can provide basic assistance to parties representing themselves but cannot provide legal representation.  Although in-person appointments are not currently available due to the COVID-19 public health emergency, Austin may contact the Help Desk at 415-782-8982 or FedPro@sfbar.org to schedule a telephonic appointment.

/ / /

Dated: May 6, 2020

JOSEPH C. SPERO
Chief Magistrate Judge