# UNITED STATES DISTRICT COURT

### for the

### Northern District of California

_____ Division

|  |  |
|---|---|
| George J. Austin, esq. (TBA). | Case No. 3:20-cv-00800 |
| | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)* ☑ Yes ☐ No |
| **-v-** | |
| Tesla, Inc., Balance Staffing, MVP Personnel, Steve Anderson, Daniel Garcia, Jose Mendiola, Vince Woodard | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |

## COMPLAINT FOR A CIVIL CASE

### I.     The Parties to This Complaint

#### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | George Austin, esq. (TBA)., or George J. Austin, esq. (TBA) |
| Street Address | PO Box 1832 |
| City and County | Oakland, Alameda County |
| State and Zip Code | California, 94604 |
| Telephone Number | NA |
| E-mail Address | gaustin07@gmail.com, geaustin@tesla.com, gaustin07@berkeley.e |

#### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Tesla, Inc. |
| Job or Title *(if known)* | Organization |
| Street Address | 455000 Fremont Blvd, |
| City and County | Fremont |
| State and Zip Code | CA, 94538 |
| Telephone Number | 510.249.3500 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Balance Staffng (Division of Personnel Staffing Group) |
| Job or Title *(if known)* | Organization |
| Street Address | 2750 Cherryland Ave; also (1751 Lake Cook Rd. Ste 600) |
| City and County | Stockton; also Deerfield, |
| State and Zip Code | CA 95215, also IL, 60015-5637 |
| Telephone Number | 209.474.1379, also (847)663-4300 |
| E-mail Address *(if known)* | teslapayroll@balancestaffing.com |

Defendant No. 3

| | |
|---|---|
| Name | MVP Personnel Staffing Group |
| Job or Title *(if known)* | Organization |
| Street Address | 1751 Lake Cook Rd Ste 600 |
| City and County | Deerfield, |
| State and Zip Code | IL, 60015-5637 |
| Telephone Number | (847)663-4300, also (209) 645-7773, |
| E-mail Address *(if known)* | mvppayroll@balancestaffing.com |

Defendant No. 4

| | |
|---|---|
| Name | Steve Anderson |
| Job or Title *(if known)* | Associate Manager, Tesla |
| Street Address | 455000 Fremont Blvd, |
| City and County | Fremont |
| State and Zip Code | CA, 94538 |
| Telephone Number | 510.249.3500 |
| E-mail Address *(if known)* | standersen@tesla.com |

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question          ☑ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

* Fair Labor Standards Act (FLSA) * Whistle-blower Laws * Sarbanes– Oxley Act *

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

    a.    If the plaintiff is an individual

    The plaintiff, *(name)* George J. Austin, esq. (TBA), is a citizen of the State of *(name)* California .

    b.    If the plaintiff is a corporation

    The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____ ,

    and has its principal place of business in the State of *(name)* _____ .

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

    a.    If the defendant is an individual

    The defendant, *(name)* _____, is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

    b.      If the defendant is a corporation

The defendant, *(name)*   Tesla,   , is incorporated under

the laws of the State of *(name)*   Delaware   , and has its

principal place of business in the State of *(name)*   California   .

Or is incorporated under the laws of *(foreign nation)*     ,

and has its principal place of business in *(name)*     .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

(See Statement of Claim for a more complete explanation, but simply the amount is partially derived from loss and stolen wages, job opportunity of approximately $100K (on a pro rata basis), equity ownership from hiring and performance benefits, compensatory and punitive damages from violations below)

## III.   Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

See attached - Statement of Claim.

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Series of defamation, slanders and conspiracy have led to a host of damages and are presently continuing. Defamation Per Se Damages are presumed.
Injuction on trial resulting from these series of defamations and conspiracy.
Damages in the form of compensatory and punitive to be determined by finder of fact, and through discovery process.

## V.        Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.        For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:                        6/10/20

Signature of Plaintiff              George J. Austin, esq. (TBA).

Printed Name of Plaintiff        George J. Austin, esq. (TBA)

### B.        For Attorneys

Date of signing:                        6/10/20

Signature of Attorney            George  J. Austin, esq. (TBA)

Printed Name of Attorney       George J. Austin, esq. (TBA).

Bar Number                             TBA

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address                         gaustin07@gmail.com or alternatively, gaustin07@berkeley.edu

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

GEORGE J. AUSTIN, Plaintiff,

v.

TESLA, INC., et al., Defendants.

Case No. 3:20-cv-00800

AMENDED COMPLAINT, OBJECTIONS & INCORPORATION OF REPORT AND RECOMMENDATIONS   Re: Dkt. Nos. 12, 16, 17

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

## Table of Content & Points and Authorities

### A. Incorporation of Chief Magistrate Judge Spero's Recommendations

1. Federal Rules of Civil Procedure Rule 15 Amended and Supplemental Pleadings
2. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).
3. 28 U.S.C. § 1915,
4. *Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996)
5. 28 U.S.C. § 1915(e)(2)(B).
6. Rule 8(a)(2) of the Federal Rules of Civil Procedure
7. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).
8. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).
9. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)
10. *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting Schucker v. Rockwood, 846 F.2d 1202, 1203−04 (9th Cir. 1988)).
11. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990).
12. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

### B. Federal Jurisdiction

1. Under Article III of the Constitution,
2. US Const, Art II, Sec. 2
3. *Osborn v. Bank of the United States*, 9 Wheat. (22 U.S.) 738 (1824).
4. 28 USC 1331
5. *Austin v. Tesla, et. al*
6. Under 28 U.S.C. 1332,
7. 28 U.S.C. 1332(c)(1)

### 1. Defamation

1. *Taus v. Loftus* (2007) 40 Cal.4th 683, 720.
2. Civ. Code § 44
3. Civ. Code § 46
4. Civ. Code § 46
5. Civ. Code § 46
6. *Taus v. Loftus* (2007) 40 Cal.4th 683, 720.  See also 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, sec. 529, p. 782, citing Civ. Code, secs 45-46 and, cases.)
7. CA Civil Code Section 47, subdivision (c)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

8. *Sanborn v. Chronicle Pub. Co.* (1976) 18 Cal.3d 406,413,134 Cal.Rptr. 402,556, P.2d 764

## 2. Non-payment - CA Labor Code

1. CA Labor Code Section 200(a)
2. *Duffy Brothers v. Bing & Bing* (1939) 217 App.Div. 10, 215, N.Y.S. 755).
3. CA Labor Code sections 201 and 202
4. CA Labor Codes 201, 202, 218, and 1194,
5. *Martinez v. Combs (2010) 49 Cal.4th 35, 64, 71.*
6. *Reid*, supra, 55 Cal.2d at p. 207, 10 Cal.Rptr. 819, 359 P.2d 251.)
7. *In re Trombley* (1948) 31 Cal.2d 801, 809–810, 193 P.2d 734.)  See Also *Hermann v. Charles Stratton, D.D.S.*, Inc., No. A095233, 2002 WL 193857, at *3 (Cal. Ct. App. Feb. 7, 2002).
8. Labor Code Section 203
9. Labor Code Section 226(a)
10. Labor Code Section 204(b)(2)
11. *Mamika v. Barca* (1998) 68 Cal.App4th 487.
12. CA Labor Code Sections 201 and 227.3
13. CA Labor Code section 510, i
14. *Flowers v. Los Angeles County MetropolitanTransportation Authority* (2015) 243 Cal.App.4th 66, 83 [196 Cal.Rptr.3d 352], internal citation omitted.)
15. *Davis v. Farmers Ins. Exchange* (2016) 245 Cal.App.4th 1302,1330 [200 Cal.Rptr.3d 315].
16. *Davis, supra*, 245 Cal.App.4th at p.1331, internal citation omitted.
17. *Davis*, supra, 245 Cal.App.4th at p. 1332, fn. 20.
18. *Mendiola*, supra, 60 Cal.4th at p. 840.
19. *Hudgins v. Neiman Marcus Group*, Inc. (1995) 34 Cal.App.4th 1109, 1118 [41Cal.Rptr.2d
20. *Barnhill v. Robert Saunders & Co* (1981) 125 Cal.App.3d 1, 6 [177 Cal.Rptr. 803].
21. *Cash v. Winn* (2012) 205 Cal.App.4th 1285, 1297, 140 Cal.Rptr.3d 867. See Also *Flowers v. Los Angeles Cty. Metro. Transportation Auth*., 243 Cal. App. 4th 66, 82, 196 Cal. Rptr. 3d 352, 362 (2015)
22. *Industrial Welfare Com. v. Superior Court,* supra, 27 Cal.3d at p. 702, 166 Cal.Rptr. 331, 613 P.2d 579; see also Murphy, at p. 1103, 56 Cal.Rptr.3d 880, 155 P.3d 284" see also *Brinker Rest. Corp. v. Superior Court,* 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012) see also *Flowers v. Los Angeles Cty. Metro. Transportation Auth*., 243 Cal. App. 4th 66, 82, 196 Cal. Rptr. 3d 352, 362 (2015)
23. *Brinker Rest. Corp. v. Superior Court,* 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012)  Under  CA Labor Code sec 206.5
24. *Hermann v. Charles Stratton, D.D.S., Inc.*, No. A095233, 2002 WL 193857, at *4 (Cal. Ct. App. Feb. 7, 2002)

George Jarvis (J).. Austin, esq. (TBA) 06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

## 3. Non-payment - FLSA

1. Fair Labor Standards Act of 1938
2. *Industrial Welfare Com. v. Superior Court*, supra, 27 Cal.3d at p. 702, 166 Cal.Rptr. 331, 613 P.2d 579; see also Murphy, at p. 1103, 56 Cal.Rptr.3d 880, 155 P.3d 284" see also *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012) see also *Flowers v. Los Angeles Cty. Metro. Transportation Auth.*, 243 Cal. App. 4th 66, 82, 196 Cal. Rptr. 3d 352, 362 (2015)
3. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012)
4. *Flowers v. Los Angeles County Metropolitan Transportation Authority* (2015) 243 Cal.App.4th 66, 83 [196 Cal.Rptr.3d 352],
5. Fair Labor Standards Act, of 1938, § 1 et seq., 29 U.S.C.A. § 201
6. *Martinez v. Combs (2010) 49 Cal.4th 35, 64, 71*
7. CA Labor Law on undisputed wages
8. FLSA
9. Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.
10. 401 F.Supp.3d 886
11. Fair Labor Standards Act of 1938 § 7, 29 U.S.C.A. § 207(e); 29 C.F.R. § 778.108.  See 401 F.Supp.3d 886
12. Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq  See 401 F.Supp.3d 886
13. *Chao v. A–One Med. Servs.*, Inc., 346 F.3d 908, 918 (9th Cir. 2003) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)) (alteration in original); *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016)
14. *Alvarez v. IBP*, Inc., 339 F.3d 894, 909 (9th Cir. 2003).  See also *Hugler v. Kazu Constr.*, LLC, 262 F. Supp. 3d 1032, 1036 (D. Haw. 2017)
15. 29 U.S.C. § 207(a)(1), provided the employer has actual or constructive knowledge that the work is occurring. 29 C.F.R. § 785.11; *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981).
16. 29 U.S.C. § 216(b).  See *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1102 (9th Cir. 2018)
17. *A.H. Phillips v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945) (quoting Message of the President to Congress, May 24, 1934).
18. 29 U.S.C. §§ 206, 207. The FLSA requires covered workers to be paid at least 1.5 times their normal rate for all work in excess of forty hours weekly. 29 U.S.C. § 207(a)(1). The FLSA defines "regular rate" broadly as "all remuneration for employment." 29 U.S.C. § 207(e).
19. *Parth v. Pomona Valley Hosp. Med.* Ctr., No. CV 06-04703 MMM (FFMx), 2007 WL 9193688, at *6 (C.D. Cal. Dec. 5, 2007) (citing *Walling v. Youngerman-Reynolds*

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

*Hardwood* Co., 325 U.S. 419, 424, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945); 29 C.F.R. § 778.108).

20. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1102 (9th Cir. 2018) (quoting 29 U.S.C. § 216(b))  See 401 F.Supp.3d 886, 895

21. 29 CFR 778.114

22. 29 CFR 778.114(a)

23. FLSA sections 7(e)(1)–(8))

24. 29 CFR 778.114(b)

## 4. Conversion

1. *Gen. Motors Acceptance Corp. v. Dallas* (1926) 198 Cal. 365, 370; Witkin § 705

2. *De Vries v. Brumback* (1960) 53 Cal. 2d 643, 647

3. *Steele v. Marsciano* (1894) 102 Cal. 666, 669; 5 Witkin Summary of California Law Torts § 699 (10th ed. 2005)].

4. *Dept. of Industrial Relations v. UI Video Stores* (1997) 55 Cal. App. 4th 1084, 1095 (state agency with immediate right to possession of checks could sue for conversion); Witkin § 706] 3

5. *Reynolds v. Lerman* (1956) 138 Cal. App. 2d 586, 596; Witkin § 707

6. Witkin §§ 701, 702; See Downing v. Mun. Ct., 88 Cal.App.2d 345, 350 (1948).

7. *Kremen v. Cohen*, 337 F.3d 1024, 1030, 1031-33 (9th Cir. 2003)

8. *Payne v. Elliot*, 54 Cal. 339, 341 (1880)

9. *Haigler v. Donnelly* (1941) 18 Cal. 2d 674, 681

10. *Zaslow v. Kroenert* (1946) 20 Cal. 2d 541, 550

11. *Enterprise Leasing Corp. v. Shugart Corp.* (1991) 231 Cal. App. 3d 737, 748; Witkin § 708]

12. *Jordan v. Talbot,* 55 Cal.2d 597, 610 (1961) (citing Zaslow v. Cronert, 29 Cal.2d 541, 551 (1946))]

13. *Gruber v. Pacific States Savings & Loans Co.* (1939) 13 Cal. 2d 144, 147; Witkin § 709]

14. *Reid*, supra, 55 Cal.2d at p. 207, 10 Cal.Rptr. 819, 359 P.2d 251.)

15. *In re Trombley* (1948) 31 Cal.2d 801, 809–810, 193 P.2d 734.)  See Also *Hermann v. Charles Stratton, D.D.S.*, Inc., No. A095233, 2002 WL 193857, at *3 (Cal. Ct. App. Feb. 7, 2002)

16. *Edwards v. Jenkins* (1932) 214 Cal. 713, 720; Witkin § 712]

17. *Byer v. Canadian Bank of Commerce* (1937) 8 Cal. 2d 297, 299; Witkin § 712

18. *Acme Paper Co. v. Goffstein* (1954) 125 Cal. App. 2d 175, 179 (conversion of check); *Mears v. Crocker First Nat'l Bank* (1948) 84 Cal. App. 2d 637, 644 (conversion of stock share certificate); Cal. Jur. § 12; Witkin § 702]

## 5. Breach

1. *Casella v. SouthWest Dealer Services, Inc.* (2007) 157Cal.App.4th 1127, 1138–1139 [69 Cal.Rptr.3d 445],

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

2. *Huber v. Standard Ins. Co*., 841 F.2d 980 (9th Cir. 1988)

3. *Huber v. Standard Ins. C*o., 841 F.2d 980 (9th Cir. 1988)

4. *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 337 [100 Cal.Rptr.2d 352,8 P.3d 1089]

5. *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 680 [254 Cal.Rptr. 211, 765P.2d 373],

6. *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th317, 336–337 [100 Cal.Rptr.2d 352, 8 P.3d 1089], internal citations omitted.)

7. Civil Code sections 1619–1621 t

8. *Walker v. Blue Cross of California* (1992) 4 Cal.App.4th 985, 994 [6Cal.Rptr.2d 184, internal citations omitted, abrogated on another ground inGuz, supra, 24 Cal.4th at p. 351.

9. CACINo. 2405, Breach of Implied Employment Contract—Unspecified Term—"GoodCause" Defined—Misconduct

10. *Cotran v. RollinsHudig Hall International, Inc.* (1998) 17 Cal.4th 93, 107 [69 Cal.Rptr.2d 900, 948P.2d 412].)

11. *Wallis V. Farmers Group, Inc.* (1990) 220 Cal.App.3d 718, 733 [269 Cal.Rptr. 299],disapproved on other grounds in Dore v. Arnold Worldwide, Inc. (2006) 39Cal.4th 384, 394 fn. 2 [46 Cal.Rptr.3d 668, 139 P.3d 56].)

12. *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830,872 [172 Cal.Rptr.3d 732], internal citations omitted.)

13. *Walker v. Blue Cross of California* (1992)4 Cal.App.4th 985, 994 [6 Cal.Rptr.2d 184], internal citations omitted,abrogated on another ground in Guz v. Bechtel National, Inc. (2000) 24 Cal.4th317, 351 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

14. *Pugh,* supra, 116 Cal.App.3d at p. 330.

15. *Pugh*, supra, 116 Cal.App.3d at pp. 329–330, internal citation omitted.)Secondary Sources3 Witkin, Summary of California Law (10th ed. 2005) Agency and Employment,§§ 208, 209, 231Chin et al., Cal. Practice Guide: Employment Litigation ¶¶ 4:270–4:273, 4:300 (TheRutter Group)1 Wrongful Employment Termination Practice (Cont.Ed.Bar 2d ed.) ContractCACI No. 2404 WRONGFUL TERMINATION

16. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts,

17. 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 852, pp. 938–940; Brown v. Grimes, 192 Cal. App. 4th 265, 278, 120 Cal. Rptr. 3d 893, 903 (2011)

18. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts.

19. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts.

20. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts.

21. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005)

22. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

### 6. Fraudulent Misrepresentation

1. *Perlas v. GMAC Mortgage, LLC* (2010) 187 Cal.App.4th 429, 434, 113 Cal.Rptr.3d 790 (Perlas ) See also *Graham v. Bank of Am.*, N.A., 226 Cal. App. 4th 594, 605–06, 172 Cal. Rptr. 3d 218, 228 (2014)
2. *Beckwith v. Dahl*(2012) 205 Cal.App.4th 1039, 1061 [141 Cal.Rptr.3d 142].
3. *Beckwith*, supra, 205 Cal.App.4th at p. 1062.
4. *Affiliated Ute Citizens v. United States*, supra, 406 U.S.128 (Ute) .
5. *Mirkin*, supra, 5 Cal.4th at p. 1093.
6. *Boschma*,supra, 198 Cal.App.4th, 249

### 7. Fraudulent Concealment

1. *Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862, 870, 130 Cal.Rptr.3d 504 (*Bank of America Corp.*).) See *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606, 172 Cal. Rptr. 3d 218, 228 (2014)
2. *Warner Constr. Corp. v. L.A.* (1970) 2 Cal.3d 285, 294 [85 Cal. Rptr. 444, 466 P.2d996].
3. *Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1187 [175Cal.Rptr.3d 820].)
4. *Hackethal v. National Casualty Co.* (1987) 189 Cal.App.3d 1102, 1110 [234 Cal.Rptr. 853].)
5. *Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248 [129 Cal.Rptr.3d 874].
6. *SCC Acquisitions, Inc. v. Central Pacific Bank* (2012) 207 Cal.App.4th 859, 860 [143 Cal.Rptr.3d 711].)
7. *Warner Construction Corp.*, supra, 2 Cal.3d at p. 294, footnotes omitted.
8. *Hoffman*, supra, 228 Cal.App.4th at p. 1187, original italics, internal citations omitted.
9. *Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634,666 [51 Cal.Rptr.2d 907],
10. *Marketing West, Inc. v. Sanyo Fisher* (USA) Corp. (1992) 6Cal.App.4th 603, 613 [7 Cal.Rptr.2d 859].)
11. *Beckwith v. Dahl*(2012) 205 Cal.App.4th 1039, 1061 [141 Cal.Rptr.3d 142].
12. *Beckwith*, supra, 205 Cal.App.4th at p. 1062
13. *Affiliated Ute Citizens v. United States*, supra, 406 U.S.128 (Ute)
14. *Mirkin*, supra, 5 Cal.4th at p. 1093.
15. *Boschma*,supra, 198 Cal.App.4th at p. 249, original italics.

### 8. Tortious Interference

1. *North American Chemical Co. v. Superior Court* (1997) 59Cal.App.4th 764, 786 [69 Cal.Rptr.2d 466].)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

2. Judicial Council of California Civil Jury Instructions See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts.

3. *Little v. Amber Hotel Co*. (2011) 202 Cal.App.4th 280, 291 [136Cal.Rptr.3d 97.

4. *Pacific Gas & Electric Co. v. BearStearns & Co.* (1990) 50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587],internal citations omitted.)

5. *PMC, Inc. v. Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579,601 [52 Cal.Rptr.2d 877].

6. *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th26, 55 [77 Cal.Rptr.2d 709, 960 P.2d 513], internal citations omitted.

7. *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134,1154 [131 Cal.Rptr.2d 29, 63 P.3d 937], original italics.

8. *Korea SupplyCo*., supra, 29 Cal.4th at p. 1157

9. *Pacific Gas & Electric Co.*, supra, 50 Cal.3d at p. 1129, internal citations omitted.

10. *Youst v. Longo* (1987) 43 Cal.3d 64. See also California Civil Jury Instructions (CACI) 2202. Intentional Interference With Prospective Economic Relations.

11. *Roth v. Rhodes* (1994) 25 Cal.App.4th 530.

12. *Pacific Gas &Electric Co*., supra, 50 Cal.3d at p. 1127, internal citations and quotations omitted.

13. *Youst v. Longo* (1987) 43 Cal.3d 64.

14. *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747; *Meister v. Mensinger* (2014) 230 Cal.App.4th 381. See also CACI 3903N. Lost Profits (Economic Damage).

15. *Della Penna v. Toyota Motor Sales*, U.S.A., Inc. (1995) 11 Cal.4th 376.

16. *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747; Meister v. Mensinger (2014) 230 Cal.App.4th 381. See also CACI 3903N. Lost Profits (Economic Damage).

17. *San Jose Construction, Inc. v. S.B.C.C.*, Inc. (2007) 155 Cal.App.4th 1528.

18. California Civil Code 1709.

19. *Korea Supply Co*., endnote 7; Ramona Manor Convalescent Hospital v. Care Enterprises (1986) 177 Cal.App.3d 1120

20. California Civil Code 3294.

21. California Civil Code 3294(c).

22. *Della Penna v. Toyota Motor Sales, USA*, Inc., 11 Cal.4th 376, 393 (1995).

23. *Buckaloo v. Johnson*, 14 Cal.3d 815, 824 (1975).

24. *Pacific Gas & Electric Co. v. Bear Stearns & Co*., 50 Cal.3d 1118 (1990).

25. *Della Penna v. Toyota MotorSales, U.S.A.*, Inc. (1995) 11 Cal.4th 376, 393 [45 Cal.Rptr.2d 436, 902 P.2d 740].

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

26. *PMC, Inc. v.Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 603 [52 Cal.Rptr.2d 877],disapproved on other grounds in Korea Supply Co. v. Lockheed Martin Corp.(2003) 29 Cal.4th 1134, 1159 fn. 11 [131 Cal.Rptr.2d 29, 63 P.3d 937].

27. *Settimo Associates v. Environ Systems, Inc.* (1993) 14Cal.App.4th 842, 845 [17 Cal.Rptr.2d 757], internal citation omitted.

28. *PacificGas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 [270Cal.Rptr. 1, 791 P.2d 587], internal citations omitted.

29. *Youst v. Longo* (1987) 43 Cal.3d 64, 71, fn. 6 [233Cal.Rptr. 294, 729 P.2d 728].)

30. *Korea Supply Co.*, supra, 29 Cal.4th at p. 1154, original italics.

31. *Della Penna,*supra, 11 Cal.4th at p.393.

32. *San Jose Construction, Inc. v.S.B.C.C., Inc.* (2007) 155 Cal.App.4th 1528, 1544–1545 [67 Cal.Rptr.3d 54],internal citations omitted.

33. *Limandri v. Judkins* (1997) 52 Cal.App.4th326, 340 [60 Cal.Rptr.2d 539].

34. *Arntz Contracting Co. v. St. Paul Fire and Marine Insurance* Co. (1996) 47Cal.App.4th 464, 477–478 [54 Cal.Rptr.2d 888], internal citations omitted.)

35. *PMC*, Inc., supra, 45 Cal.App.4th at p.603, internal citation omitted.

36. *Crown Imports, LLC v. Superior Court* (2014) 223 Cal.App.4th1395, 1404 [168 Cal.Rptr.3d 228].

37. *Crown Imports* LLC,supra, 223 Cal.App.4th at p. 1405, original italics.

38. *Arntz Contracting* Co., supra, 47 Cal.App.4th at p. 477.

39. *Roth v. Rhodes* (1994) 25 Cal.App.4th 530, 546 [30 Cal.Rptr.2d 706], internal citations omitted.

40. *Kasparian v. County of Los Angeles* (1995) 38 Cal.App.4th 242, 266 [45Cal.Rptr.2d 90], original italics.

41. *Youst,* supra, 43 Cal.3d at p. 71, internal citations omitted.

42. *Overhill Farms, Inc. v. Lopez* (2010) 190 Cal.App.4th 1248, 1267[119 Cal.Rptr.3d 127], original italics.

## 9. Wrongful

1. Yauv. Allen (2014) 229 Cal.App.4th 144, 154 [176 Cal.Rptr.3d 824].)

2. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts.

3. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005)

4. FLSA, California Labor Code, and Sarbanes Oxley,

5. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

6. *Stevenson v. Sup.*Ct. (Huntington Mem. Hosp.) (1997) 16 C4th 880, 897, 66 CR2d 888, 898
7. *Silo v. CHW Med. Found.* (2002) 27 C4th 1097, 1104-1105, 119 CR2d 698, 703-704
8. *Franklin v. Monadnock Co.* (2007) 151 CA4th 252, 260, 59 CR3d 692, 697
9. Employment Presumed At Will, Cal. Prac. Guide Employment Litigation Ch. 4-A
10. *Casella v. SouthWest Dealer Services, Inc.* (2007) 157Cal.App.4th 1127, 1138–1139 [69 Cal.Rptr.3d 445
11. *Tameny v. AtlanticRichfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330].

## 10. Whistleblower

1. *Monavian v. Department of Justice* (29108) 28 Cal.App.5th 1127, 2241.
2. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973);
3. CA Labor Code, FLSA, Sarbanes-Oxley (applicable to publicly traded companies, and to private as well) have similar elements.
4. [Lab.C. § 98.6];
5. [Lab.C. § 132a];
6. [Lab.C. § 6310;
7. *Lujan v. Minagar* (2004) 124 CA4th 1040, 1046, 21 CR3d 861, 866
8. *Freund v. Nycomed Amersham* (9th Cir. 2003) 347 F3d 752, 758 (applying Calif. law)]
9. California Labor Code Section 1102.5,
10. Fair Labor Standards Act (FLSA)
11. Fair Labor Standards Act (FLSA).
12. *Kasten v. Saint-Gobain Performance Plastics Corp.*, No. 09-834 (March 22, 2011).
13. *Palmer v. Canadian National Railway, ARB* No. 16-035 at 53
14. *Allen v. Stewart Enters., Inc., ARB* Case No. 06-081, slip op. at 17 (U.S. Dep't of Labor July 27, 2006).
15. William Dorsey, An Overview of Whistleblower Protection Claims at the United States Department of Labor, 26 *J. Nat'l Ass'n Admin.* L. Judiciary 43, 66 (Spring 2006) (citing *Griffith v. City of Des Moines*, 387 F.3d 733 (8th Cir. 2004)).
16. *Clemmons v. Ameristar Airways, Inc.*, ARB No. 08-067, at 9, ALJ No. 2004-AIR-11 (ARB May 26, 2010) (footnotes omitted).
17. Id. at 9-10 (footnotes omitted).
18. *Bobreski v. J. Givoo Consultants, Inc.*, ARB No. 13-001, ALJ No. 2008-ERA-3 (ARB Aug. 29, 2014).
19. *Overall v. TVA*, ARB Nos. 98-111 and 128, slip op. at 16-17 (Apr. 30, 2001), aff'd *TVA v. DOL*, 59 F. App'x 732 (6th Cir. 2003).
20. CA Labor Code, FLSA, and Sarbanes-Oxley

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1    **A.Incorporation of Chief Magistrate Judge Spero's Recommendations**

2    In accord with Federal Rules of Civil Procedure 15 for *Amended ... Pleadings* Attorney of Record,

3    Pro Se Litigant, and Plaintiff, Mr. George Jarvis (J.) Austin, esq. (TBA)., has incorporated the

4    detailed, generous, and constructive, recommendations by Chief Magistrate Judge Spero into an

5    Amended Complaint in compliance with Judge Chen's Order, and the heightened pleading

6    standards after the Court's ruling in *Iqbal* and *Twombly*.  Attorney of Record, Pro Se Litigant, and

7    Plaintiff, Mr. George Jarvis (J.) Austin, esq. (TBA) has amended the complaint to meet, and ideally

8    surpass, the Legal Standard for Review Under 28 U.S.C. § 1915, and articulated in *Marks v.*

9    *Solcum, 98 F.3d 494, 495 (9th Cir. 1996)* so that while examining the following stated claims, it

10   will be clear that they are not frivolous or malicious, but instead substantive and meritorious (, from

11   which relief may be granted from defendants who are not immune) 28 U.S.C. § 1915(e)(2)(B).

12   Similarly, the complaint has been amended to meet the guidelines of Rule 8(a)(2) of the Federal

13   Rules of Civil Procedure to ensure that this pleading contains "short and plain statement(s) of the

14   claim showing that the pleader is entitled to relief." Further, In highlighting Plaintiff's meritorious,

15   and substantive claims, the court shall assume that all factual allegations in the complaint are true.

16   Parks Sch. of Bus. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

17

18   To meet this heightened standard, the complaint must be supported by factual allegations. Ashcroft

19   v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

20   Where the complaint has been filed by a pro se plaintiff, as is the case here, courts must "construe

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  the pleadings liberally . . . to afford the petitioner the benefit of any doubt." Hebbe v. Pliler, 627

2  F.3d 338, 342 (9th Cir. 2010) "A district court should not dismiss a pro se complaint without leave

3  to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by

4  amendment.'" Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting Schucker v.

5  Rockwood, 846 F.2d 1202, 1203−04 (9th Cir. 1988) (per curiam)).  In fact, Pro se litigants

6  pleadings must be liberally construed.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696 (9th Cir.

7  1990).  Further, the complaint has been amended to:

8  1.  More completely state claim (enumerated) that includes (more than) sufficient factual

9  allegations to place all defendants on notice of the basis for claims and determine plaintiff is

10  entitled to relief,

11  2.  Include a clear, chronological narrative of the facts giving rise to Plaintiff's claims, which

12  meet and surpass the "plausibility" threshold required by Iqbal and Twombly, and

13  3.  Lastly, includes clearly enumerated claims, causes of action, statute or theory of recovery.

14

15  **Side Notes on Fed Pro Bono Project**

16

17  I appreciate the suggestion from Judge Spero, and welcome additional wise counsel, and actually

18  sought them out before ever commencing any Federal Legal Action.  However, when I sought out

19  their services on multiple occasions, they said they couldn't serve me or help with my needs, and

20  actually gave incorrect legal advice on the topic discussed.  It would have been great to have the

21  additional support mechanism to help more quickly solve the legal puzzles, and construct

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1    documents more quickly and appropriately (as I truly believe in the benefit and power of

2    cooperative, and collaborative work).  Yet, they refused, so, alternatively, I did all on my own,

3    independently, while maintaining my livelihood (as is also true for the other ongoing, and

4    successful, Rights of Publicity, and Privacy, Lawsuit mentioned).

5

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1                          **B. Federal Court Jurisdiction**

2  Under Article III of the Constitution, Federal courts can hear "all cases, in law and equity, arising

3  under this Constitution, [and] the laws of the United States…" See US Const, Art II, Sec. 2   The

4  Supreme Court has interpreted the clause broadly to hear any case with a federal ingredient.  See

5  Osborn v. Bank of the United States, 9 Wheat. (22 U.S.) 738 (1824).  Moreover there are two

6  general paths to partake in the Federal Judicial System and have the case heard: Diversity, and

7  Federal Question Jurisdiction.  Both are relevant, and applicable, to this case and controversy.

8  Under 28 USC 1331 a case that "arise[s] under" federal law shall be heard.  In *Austin v. Tesla, et.*

9  *al.* several of plaintiffs' claims for bringing suit are based in federal law.  Alternatively, and also

10  aligned with granting Federal Court jurisdiction and access Austin v. Tesla, et al meets the

11  Diversity standard for access.  Under 28 U.S.C. 1332, "the district courts shall have original

12  jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of

13  $75,000, exclusive of interests and costs, and is between 1) citizens of different States; …(c)(1) for

14  purposes of this section a corporation shall be deemed to be a citizen of every State … it has been

15  incorporated.  Under 28 U.S.C. 1332(c)(1)  for purposes of determining diversity jurisdiction, a

16  corporation is deemed to be a citizen of the State where it was incorporated and here Tesla is a

17  citizen of Delaware, and MVP/Balance a citizen of Illinois, and Plaintiff George J. Austin is a

18  citizen of California, since 1993 with the matter in controversy well over the financial threshold of

19  $75,000.  Thus either Federal Question Jurisdiction or alternatively Diversity Jurisdiction could be

20  applicable.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1

## C. Facts  (Chronological & Substantive Order)

In Summer of 2019 Plaintiff, Mr. George Jarvis (J.) Austin, esq. (TBA), began working for Tesla,

where 100% of the training, operations, and management occured, via an intermediary Staffing

organization. MVP Personnel and a Division of MVP's company Balance Staffing  whom both

components (MVP and Balance) directly paid wages to Plaintiff for work performed. Plaintiff,

(University of California, Berkeley Graduate (09'), Honors Student, Bay Area Housing

Commissioner, Alum, NAACP National Representative, and Local Youth and College President,

Alum, California Senate, Governance and Finance Committee, Consultant, Capital Fellows, and

Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and UCLA

Anderson Riordan MBA, Fellows, Alum (08', 13'), T-14 Law Student, etc.), and Attorney of

Record, Mr. George Jarvis (J.) Austin, esq. (TBA) worked up through 2020 where the events fully

triggering the need for litigation, on Plaintiff's behalf, occurred.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1   One of the issues Plaintiff noticed were wage discrepancies.  When investigated further, and

2   provided more access to information by Defendant staff organizations Plaintiff reviewed check

3   stubs and discovered there were a second set of non-disputed separate wages I had not received

4   (but declared mine via name printed on payroll checks, permanent address printed on payroll

5   checks, social security number, and other unique identifiers signifying ownership.  These checks

6   have been repeatedly independently confirmed via Wage Affidavits from the Auditing Unit of

7   reputable California State Agency (as well as IRS).  From MVP Personnel's, and Balance

8   Staffing's explanation, both are part of the same parent Company, but operate somewhat

9   independently.  However, legal liability for both sets of wages, and other liability incurred, rests in

10  the parent Company, MVP Personnel, headquartered in Illinois.  According to (SEC) Securities

11  and Exchange Commision's Filings, Tesla is incorporated in, and a citizen of Delaware.  Plaintiff,

12  George Jarvis (J.) Austn, esq. (TBA) is a citizen of California, and has been since 1993 when he

13  moved here, with his mother, only child of mother, Charlotte Hall-Austin, from out of State.

14

15  Attorney of Record, and Plaintiff, Mr. George J. Austin, noticed wage, communication, operations,

16  safety employer issues, and attendance record discrepancies (in Tesla's official system; which all

17  defendant organizations make decisions based on).  Plaintiff notified all involved organizations,

18  and persons responsible (broadly Defendant's), for correction.  Because all operations, and

19  management, were handled at Tesla, but all pay went through Personnel (MVP/Balance)

20  Organizations, Attorney of Record, and Plaintiff, George J. Austin, took extra care to reach out via

21  multiple channels, and methods, and went as high up each organizations ladder as possible to

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  inquire, inform, make official demand for correction, and ultimately official complaint, including to

2  the CEO of Tesla, via email, Elon Musk.  I personally had no desire to sue, and would have

3  initially preferred a non-litigation path to resolution.

4

5  Unfortunately, for those organizations, Attorney of Record, and Plaintiff's, inquiries, requests,

6  demands, and complaints were not met with honesty, fair dealing, contract performance, or legal

7  compliance in areas of violation, by Employers (or Defendants).  Communication from each

8  company became more and more strained.  With access to communicating effectively increasingly

9  limited, by the defendants.  Litigation became the most logical path forward.  In Early, 2020,

10  Attorney of Record, and Plaintiff, made an appointment with a Human Resource Officer, and

11  Hiring Manager for promotion.   Vice President of Tesla, at the time, Bert Breggman suggested I

12  meet with that department after being confirmed in writing, and verbally, repeatedly of great work

13  performance, by multiple person's of direct authority in my work environment.  I made an

14  appointment, independently, and communicated with that department, and person(s), for that

15  purpose, and for resolution of the discrepancies mentioned, only.  This point, and purpose, was

16  reaffirmed by that department, and by the MVP Personnel representative in the meeting.  I never

17  had been disciplined or informed of any violations before that point, or while at the meeting.  I

18  confirmed at the end of the meeting and Vince Woodard, HR Officer, again affirmed that he would

19  be resolving the issue immediately, and getting in contact soon.  Again ensuring nothing

20  disciplinary whatsoever; just to address advancement, pay issues, and my concerns.

21

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  I was told to take the rest of the day off, with pay, as he said it had been unfair to me to have to go

2  through all those changes for something those companies were legally obligated to do.  I did as

3  instructed by the Human Resource Officer, Vince Woodard, and Instead of resolution, a series of

4  further employer(s) missteps occurred, including a false, and defaming, accusation (resulting in

5  negative employment action, including wrongful termination) of recording a supervisor in violation

6  of California Penal Law.   Attorney of Record, and Plaintiff, began documenting, made written

7  record, and limited communication as much as possible to email when I noticed continued lies,

8  unexplained issues, and discrepancies continuing even after brought to management officers

9  attention.  After repeated inquiry, and follow up, with no resolve, Attorney of Record, and Plaintiff

10  George J. Austin, filed suit to resolve the issues at hand, which given the layers, and unwillingness

11  for Defendants to resolve, without litigation, appeared appropriate and the best path forward,

12  especially given the circumstances.  Unfortunately, Plaintiff also suffered a workplace lower

13  extremity injury to which he has not yet healed, but has not received any worker's compensation

14  benefits, yet.

15

16  In the interim Attorney of Record, and Plaintiff, has successfully filed taxes as well as filed,and

17  received, unemployment benefits confirming both sets of wages, and temporary disability benefits,

18  also confirming those wages.  Due to severe upper body trauma injuries and my body's current

19  response pattern, and physical nature of work, I likely will not recover until the end of 2020 based

20  on my body's current rate of recovery (Sharp pains and limited range of motion).  I am being

21  treated by Dr. Lisa Nhu, in Pleasant HIll, for my current injuries.  There has been a breach of

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  medical records for this physical injury which is of major concern as a non-related person,

2  proposing to be an attorney, Guido Gateiri, contacted me with the information and proposed to file

3  a lawsuit in my name with my information in the State of California (without my consent, or

4  knowledge).   Because I have concerns around invasions of privacy, and fraudulent filings of

5  benefits in my name, with my wages, (another form of theft/fraud/conversion), I have filed a

6  Health and Human Services Privacy and Security HIPAA (Health Insurance Portability and

7  Accountability Act) Complaint.  Although, broadly part of non-payment of wage discussion (and

8  claims), as well as separate causes of action, it is ideally being resolved without additional parties

9  added, or need for additional litigation.

10

11  Throughout the beginning of the professional relationship between all parties I have done my best

12  to maintain an open, candid, effective, and beneficial relationship with named parties to suit

13  (Defendants), and those not named.  I have gone out of my way to ensure, or create an open, and

14  effective line of communication, to proactively resolve issues outside of litigation.  However,

15  whether due to hubris, or other Defendant parties self imposed limitations, litigation has become

16  the necessary means to resolve the issues at hand.

17  **1. Defamation and Defamation Per Se in the Workplace.**

18  Defendants Defamed Plaintiff.  Tesla, MVP, and Balance (broadly Defendants) collectively

19  practiced workplace defamation, and defamation per se, via Sandy Malloy (and other company

20  officers, and representatives). Defendants did so when Ms. Malloy spoke on all three entities

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1   behalf, after communicating, and "publishing", a lie ("that Plaintiff recorded a supervisor against

2   California penal code; accusation of "a crime") with other company officers (Ms. Malloy didn't

3   clarify context, just made false statement presented as truth).  Defendants via Sandy Malloy made

4   defamatory statements in a decision making capacity (that Plaintiff recorded a supervisor against

5   California Penal Code), with a failed duty to ascertain truth before "publishing" those statements

6   against an employee, Plaintiff.  Defendants also used that lie to initiate negative employment

7   actions, and ultimately wrongful termination of Plaintiff, (University of California, Berkeley

8   Graduate (09'), Honors Student, Bay Area Housing Commissioner, Alum, NAACP National

9   Representative, and Local Youth and College President, Alum, California Senate, Capital Fellows,

10   Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and Anderson

11   Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as well as others), and Attorney of

12   Record, Mr. George Jarvis (J.) Austin, esq. (TBA)

13

14   In New York Times Co. v. Sullivan, supra, the Court for the first time held that the First

15   Amendment limits the reach of state defamation laws. That case concerned a public official's

16   recovery of damages for the publication of an advertisement criticizing police conduct in a civil

17   rights demonstration. As the Court noted, the advertisement concerned "one of the major public

18   issues of our time." Id., 376 U.S., at 271, 84 S.Ct., at 721. Noting that "freedom of expression

19   upon public questions is secured by the First Amendment," id., at 269, 84 S.Ct., at 720 (emphasis

20   added), and that "debate on public issues should be uninhibited, robust, and wide-open," id., at

21   270, 84 S.Ct., at 721 (emphasis added), the Court held that a public official cannot recover

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  damages for defamatory falsehood unless he proves that the false statement was made with "

2  'actual malice'-that is, <u>with knowledge that it was false or with reckless disregard of whether it was</u>

3  <u>false or not</u>," id., at 280, 84 S.Ct., at 726. - Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,

4  472 U.S. 749, 755, 105 S. Ct. 2939, 2943, 86 L. Ed. 2d 593 (1985)

5

6  Defamation is a false and unprivileged publication that has a natural tendency to injure the plaintiff

7  or cause the plaintiff special damage See Taus v. Loftus (2007) 40 Cal.4th 683, 720.  Defamation

8  may consist of libel (written) or slander (oral) forms of defamation. See Civ. Code § 44  Slander,

9  most common in the workplace, is "a false and unprivileged publication, orally uttered, and also

10  communications by radio or any mechanical or other means (including cell phones, and voice

11  messages). . . ."  [Civ. Code § 46.]  A slanderous statement may charge a person with a crime, or

12  with having been indicted, convicted, or punished for a crime.  It may also characterize a person as

13  having an infectious, contagious, or loathsome disease, or as being impotent or lacking chastity.

14  [Civ. Code § 46.].    Slander is more commonly found in the employment context than libel,

15  particularly during pre-termination investigations, at termination, or even during post-employment

16  conversations with prospective employers.  Statements that tend to injure an employee with respect

17  to his or her occupation are especially slanderous, either by accusing the employee of an inability

18  to perform the general functions required of his or her profession, trade, or business, or by imputing

19  something with reference to the employee's office, profession, trade, or business that has a natural

20  tendency to lessen its profits.  See Civ. Code § 46.

21

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  The tort of defamation requires: (1) a publication that is (2) false, (3) defamatory, (4) unprivileged,

2  and (5) that has a natural tendency to injure or that causes special damage.  See Taus v. Loftus

3  (2007) 40 Cal.4th 683, 720.  See also 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, sec.

4  529, p. 782, citing Civ. Code, secs 45-46 and cases.)

5

6  Here Defendants:

7     1.  Published:  Defendants published a statement by speaking to one other person (Sandy

8        Malloy was not in the meeting thus someone had to communicate with her meeting the

9        standard for publishing i.e. communicating to at least one other person).

10        a.  Defendants communicated via multiple channels, and 'published' false information

11           before saying the false information to Plaintiff.  The statements had no basis, and

12           contradicted the meetings, written communications, and everything up until that

13           point (and after), as it was a lie.  For the message to get to me, and for the

14           accusation to be made, it had to go through at least two layers, or more of

15           management, the Human Resource Officers, and or Team (of Tesla), and then the

16           Human Resource Team, and Recruiter/Officer Sandy of MVP/Balance.  The

17           statement representing a false record presented as truth by Sandy Malloy stated

18           ahead of time that the person who reaches out for resolution of the issues (by

19           Tesla's HR Officer) would be speaking on behalf of, and representing all three

20           organizations with their words.  I didn't know who I would be hearing from to

21           resolve the issues, but what I received were defamatory per se statements and

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1    messages (see written transcription), thus incurring liability for all three,

2    simultaneously.  Documented written conversations up till this point  The only

3    mention of the false accusation of recording, was an after the fact excuse, but still

4    did not address the fundamental questions the meeting was supposed to deal with.

5    Without any details of where, when, and why this supposedly happened, and never

6    any questions of did I record?  To which I would have answered no.  In a different

7    shade of the meaning, record, I  did keep "record" in writing, because I realized

8    dishonesty was becoming more apparent (both in my Tesla email, and my duplicate

9    copies of certain communications outside their system), but never in the manner

10    falsely accused.

11

12    2.  False Statements: It was a lie.  Here Defendants grossly negligent, and recklessly,

13    unconcerned at best, and intentionally malicious at worse, published untruths and also took

14    negative employment action.  Not only have I never recorded a supervisor against

15    California Penal Code, but I also wasn't asked 'IF' I had before the accusation and

16    negative employment action.

17        a.  I didn't record a supervisor, or anyone else, at Tesla,  I had never been notified of

18            an issue with recording anyone at Tesla prior to the, after the fact explanation,

19            phone call from Sandy Malloy representing all organizational defendants (according

20            to HR Officer Vince Woodard who spoke for Tesla).  Sandy Malloy, repeated the

21            false statement to me via voicemail, as she was not present at the meeting with

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1    Vince.  Another MVP/Balance representative was present at the meeting.  I

2    received the defamatory statements after it had been passed through multiple layers

3    of each company, and through several parties.  The statement was false, and made

4    to my detriment, and incurred liability to the company.

5

6    3.  Defamatory Statements: Here Defendants In the workplace statements accusing of criminal

7    conduct are not only defamatory, but in California rise to the level of Per Se particularly

8    when injury occurs (i.e. negative employment action).  Accusations of Criminality,

9    particularly in California, especially in the workplace rise to the level of not just

10   defamation, but defamation per se (particularly when coupled with quantifiable harm -

11   though not a requirement as damages are presumed.

12        a.  Here Defendants presented a lie as fact to the harm and detriment of the plaintiff.

13            Further, this was not just any lie, but a particularly harmful lie causing economic,

14            and other immediate damages.  Even more, the statements were made with reckless

15            disregard, at best, of ascertaining truth before taking action.  Defendants falsely

16            accused Plaintiff of a crime, without verifying, or even inquiring, on its veracity.

17            Even more, this false accusation has created tremendous negative ripple effects and

18            consequences.

19

20   4.  Which Were Unprivileged: Defendants defamatory statements were not privileged, and

21   instead were published without good faith, truth, and reckless disregard for veracity of

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1    statement, and plaintiffs well being, and used to to take negative employment action(s).

2    Under CA Civil Code Section 47, subdivision (c) Defendants have the burden of

3    establishing that the statement was made on a privileged occasion, which they have not

4    done.  Further, Defendants demonstrated "actual malice" which destroys any qualified

5    privilege defense by showing that their publication was motivated by ill will, reckless

6    disregard, and lacked reasonable ground(s) for belief in the truth of publication.  See

7    Sanborn v. Chronicle Pub. Co. (1976) 18 Cal.3d 406,413,134 Cal.Rptr. 402,556, P.2d 764

8        a.   Defendants could have simply asked or inquired before taking a negative leap of

9           faith, and massive negative assumption, to assume and accuse of criminality.  Even

10          more ironic is the fact that the company itself was sued by its employees (similarly

11          situated to me) for the practice of doing that to its employees.  They lost.  Hypocrisy

12          at its finest, and behavior incurring legal liability.

13

14   5.   Causing Injury: Here Plaintiff was directly injured by defamatory statements by Defendants

15      including negative employment action(s), lost wages, emotional pain and suffering, injury

16      to professional reputation, and other injuries.

17       a.   Plaintiffs experience multiple layers of negative employment action, and harm,

18          including lost past, present, and future wages, Tesla Car Ownership via winning

19          competition (verified was eligible, in writing, by supervisor before negative

20          employment action), professional reputational harm, emotional distress, etc. due to

21          lies.  Defendants by intentionally lying, or with complete and reckless disregard to

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1    truth, harmed Plaintiff and put in unnecessary vulnerable economic position,

2    unjustifiably.  The false, defamatory, and negative statements were analogous to the

3    false and harmful professional statements negatively affecting reputation, and

4    career, in the $5 Million judgement in Lawnwood Medical Center inc., v. Samuel

5    H. Sadow, M.D., Plaintiff suffered professional reputation attack, loss in wage, and

6    property, as well as opportunity costs.  In Tilkey v Allstate Insurance CA's Fourth

7    District Court of Appeal ruled that even self-compelled defamation (although this

8    wasn't self-compelled, it was just a lie) may provide a basis for a defamation per se

9    cause of action against employer punitive damage award of approximately

10   $16,000,0000.  Even without a pre-existing quantitative damage amount a primae

11   facie case of defamation per se presumes special damages.  A false accusation of

12   criminality [especially in the workplace] qualifies, and establishes presumed

13   damages.  In the case of Okeke v. Biomat USA,  Okeke's defamation claim rests

14   entirely on his allegation that Biomat told an employee of another corporation,

15   Telecris, that Okeke "was terminated because he sexually harassed a woman."

16   (Complaint # 1 at ¶ 42.) Courts have found that allegations of sexual harassment

17   against a professional can impute a lack of fitness. See, e.g., Ricciardi v. Weber, 350

18   N.J.Super. 453, 795 A.2d 914, 928 (2002); *1028 Wilcoxon v. Red Clay

19   Consolidated School District Board, 437 F.Supp.2d 235, 247–48 (D.Del.2006).

20   Accordingly, Okeke has successfully alleged a defamation per se claim in which

George Jarvis (J).. Austin, esq. (TBA) 06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  special damages are presumed. - Okeke v. Biomat USA, Inc., 927 F. Supp. 2d

2  1021, 1027–28 (D. Nev. 2013)

3  **2. Non-Payment (and Withholding of Wages) in Violation of California Labor Code**

4

5  Defendants withheld, and did not pay Plaintiff wages against CA Labor Code.  Tesla, MVP

6  Personnel, and Balance Staffing along with other defendants conspired in withholding, and

7  non-payment of undisputed wages (i.e. already printed and signed with my social security number,

8  unique check numbers, and full name (with middle initial) George J. Austin.  Defendants also

9  conspired in non-payment of other wages to the detriment of Plaintiff, (University of California,

10  Berkeley Graduate (09'), Honors Student, Bay Area Housing sCommissioner, Alum, NAACP

11  National Representative, and Local Youth and College President, Alum, California Senate,

12  Governance and Finance Committee, Consultant, Capital Fellows, and Senate Fellows Top 10 out

13  of 800+ Nationally Ranked, Alum (13'), UCLA Law, and Anderson Riordan MBA Fellows,

14  Alum (08', 13'), T-14 Law Student,  as well as others), and Attorney of Record, Mr. George Jarvis

15  (J.) Austin, esq. (TBA).

16

17  Under CA Labor Code Section 200(a) "wage" is defined as money or other value that is received

18  by an employee as compensation for labor or services performed. "Other value" could include

19  room, board, clothes, [cars, including bonuses, overtime pay incentives, stock/ownership, etc.] and

20  other benefits to which the employee is entitled as a part of his, or her, compensation. A bonus is

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1   performance-based compensation to be paid to an employee in addition to the employee's regular

2   salary. (Duffy Brothers v. Bing & Bing (1939) 217 App.Div. 10, 215, N.Y.S. 755).  Bonuses

3   constitute additional salary, and thus, must be paid in accordance with Labor Code sections 201

4   and 202 when an employee is terminated, or voluntarily quits, his, or her, employment.

5

6   Under CA Labor Codes 201, 202, 218, and 1194, a plaintiff is entitled to relief for unpaid, or

7   withheld, wages (including overtime) when 1) plaintiff performed work for the defendant; 2)

8   defendant owes plaintiff wages under the terms of the employment; 3) plaintiff worked overtime

9   hours; 4) defendant knew or should have known that plaintiff had worked overtime hours; 5)

10  plaintiff was either not paid or paid less than the wage or overtime rate for some or all of the hours

11  worked; and 6) The employer debt for amount of wage or overtime pay is owed plaintiff/employee

12  even if he or she would agree to work for a lower overtime rate (the entitlement is not eliminated).

13

14      1.   Here Plaintiff is entitled to relief because:

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1      a.  Plaintiff performed work for Defendants:

2          i.  Plaintiff performed work for defendants, and was praised for work, and

3             character, while performing duties by multiple persons of authority in the

4             respective companies.  Employment agencies and the employers who

5             contract with them are considered employers under the law (Defendants and

6             joint liability for wages can be placed on both the employment agency

7             (MVP/Balance) and the entity that supervises the work (Tesla).  See

8             *Martinez v. Combs (2010) 49 Cal.4th 35, 64, 71.*

9      b.  Defendants owe plaintiff wages:

10          i.  Organizational Defendants respectively owe Plaintiff, George J. Austin,

11             wages under the terms of employment and California, and Federal law as

12             evidenced in the undisputed withheld, and unpaid wages, as well as

13             confirmation of these wages from an independent State Government

14             Auditing Agency which confirmed.

15      c.  Plaintiff worked overtime hours:

16          i.  Plaintiff performed overtime work for defendants, and was praised for

17             work, and character, while performing duties by multiple persons of

18             authority in the respective companies.

19      d.  Defendant knew or should have known plaintiff worked overtime:

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1        i.    Defendants knew, or should have known, that the plaintiff worked overtime

2            as he communicated with all respective persons in various departments,

3            including Tesla's CEO.

4    e.  Plaintiff was either not paid, or paid less than wage or overtime pay:

5        i.    Plaintiff, George J. Austin, wages under the terms of employment and

6            California, and Federal law as evidenced in the undisputed withheld, and

7            unpaid wages, as well as confirmation of these wages from an independent

8            State Government Auditing Agency, and IRS, which confirmed.

9    f.  Defendants (employers) owe plaintiff amount unpaid:

10        i.    Defendants have to date still not paid the undisputed wages owed to

11            Plaintiff, George J. Austin. Two sets of checks, two sets of transaction

12            numbers, each check possessing a unique number representing a different

13            wage (check), and all printed with my social security number, full name,

14            George J. Austin, permanent address, etc. Under CA Labor Law on

15            undisputed wages approximately $25,000, should have been paid

16            immediately, upon request, or the employer shall be liable for additional

17            liability, and penalties.  The veracity and authenticity of these wages have

18            been independently confirmed via a Wage Affidavit by an independent

19            State Government Auditing Agency which confirmed veracity of the

20            second set of wages [undisputed wages owed]. However, beyond the

21            disputed wages, there are additional missing past, present and future wages

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1   (including bonus, incentives, stock, automobile, and other incentives or their

2   equivalent values) that can be more accurately determined during the

3   discovery process.

4

5   Although public policy generally favors informal resolution of disputes, claims for wages are in a

6   special category. (Reid, supra, 55 Cal.2d at p. 207, 10 Cal.Rptr. 819, 359 P.2d 251.) "It has long

7   been recognized that wages are not ordinary debts, that they may be preferred over other claims,

8   and that, because of the economic position of the average worker and, in particular, his dependence

9   on wages for the necessities of life for himself and his family, it is essential to the public welfare

10  that he receive his pay when it is due." (In re Trombley (1948) 31 Cal.2d 801, 809–810, 193 P.2d

11  734.)  See Also Hermann v. Charles Stratton, D.D.S., Inc., No. A095233, 2002 WL 193857, at *3

12  (Cal. Ct. App. Feb. 7, 2002).  A "willful" failure to pay wages within the meaning of Labor Code

13  Section 203 occurs when an employer intentionally fails to pay wages to an employee when those

14  wages are due.  Overtime wages must be paid no later than the payday for the next regular payroll

15  period following the payroll period in which the overtime wages were earned. An employer shall

16  be in compliance with Labor Code Section 226(a) relating to total hours worked by the employee

17  if the overtime hours are recorded as a correction on the itemized statement for the next regular pay

18  period and include the dates of the pay period for which the correction is being made see Labor

19  Code Section 204(b)(2)  An employer who willfully fails to pay any wages due a terminated

20  employee (discharge or quit) in the prescribed time frame may be assessed a waiting time penalty.

21  The waiting time penalty is an amount equal to the employee's daily rate of pay for each day the

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1    wages remain unpaid, up to a maximum of thirty (30) calendar days. Mamika v. Barca (1998) 68

2    Cal.App4th 487.  Additionally, an employee who is discharged must be paid all of his or her

3    wages, including accrued vacation, immediately at the time of termination. Labor Code Sections

4    201 and 227.3

5

6    Where the FLSA [federal Fair Labor Standards Act] requires overtime pay only if an employee

7    works more than 40 hours per week, regardless of the number of hours worked during any one

8    day, California law, codified at Labor Code section 510, is more stringent and requires overtime

9    compensation for '[a]nywork in excess of eight hours in one workday and any work in excess of

10   40 hours in any one workweek.' " (Flowers v. Los Angeles County MetropolitanTransportation

11   Authority (2015) 243 Cal.App.4th 66, 83 [196 Cal.Rptr.3d 352], internal citation omitted.)

12   "[Employees are] entitled to the benefit of wage laws requiring an employer to promptly pay all

13   wages due, and prohibiting the employer from deducting unauthorized expenses from the

14   employee's wages, deducting for debts due the employer, or recouping advances absent the parties'

15   express agreement." (Davis v. Farmers Ins. Exchange (2016) 245 Cal.App.4th 1302,1330 [200

16   Cal.Rptr.3d 315].)   "The Labor Code's protections are 'designed to ensure that employees receive

17   their full wages at specified intervals while employed, as well as when they are fired or quit,' and

18   are applicable not only to hourly employees, but to highlycompensated executives and

19   salespeople." (Davis, supra, 245 Cal.App.4th at p.1331, internal citation omitted.)

20

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  [W]ages include not just salaries earned hourly, but also bonuses, profit-sharing plans, and

2  commissions." (Davis, supra, 245 Cal.App.4th at p. 1332, fn. 20.)  "[A]n employee's on-call or

3  standby time may require compensation."(Mendiola, supra, 60 Cal.4th at p. 840.)  "[Labor Code]

4  section 221 has long been held to prohibit deductions from an employee's wages for cash

5  shortages, breakage, loss of equipment, and other business losses that may result from the

6  employee's (or employer's) simple negligence."(Hudgins v. Neiman Marcus Group, Inc. (1995) 34

7  Cal.App.4th 1109, 1118 [41Cal.Rptr.2d 46].)  Further even if the employer mistakenly, or

8  intentionally, allowed a different person to use those wages, and cash those checks, those wages

9  are still owed to me.  "[A]n employer is not entitled to a setoff of debts owing it by an employee

10  against any wages due that employee." (Barnhill v. Robert Saunders & Co (1981) 125 Cal.App.3d

11  1, 6 [177 Cal.Rptr. 803].)  "State wage and hour laws 'reflect the strong public policy favoring

12  protection of workers' general welfare and "society's interest in a stable job market." See Cash v.

13  Winn (2012) 205 Cal.App.4th 1285, 1297, 140 Cal.Rptr.3d 867. See Also Flowers v. Los Angeles

14  Cty. Metro. Transportation Auth., 243 Cal. App. 4th 66, 82, 196 Cal. Rptr. 3d 352, 362 (2015)

15  They are therefore liberally construed (as are Pro Se Complaints) in favor of protecting workers.

16

17  Our Supreme Court has stated that, " '[I]n light of the remedial nature of the legislative enactments

18  authorizing the regulation of wages, hours and working conditions for the protection and benefit of

19  employees, the statutory provisions are to be liberally construed with an eye to promoting such

20  protection.' See Industrial Welfare Com. v. Superior Court, supra, 27 Cal.3d at p. 702, 166

21  Cal.Rptr. 331, 613 P.2d 579; see also Murphy, at p. 1103, 56 Cal.Rptr.3d 880, 155 P.3d 284" see

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1   also Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012)

2   see also Flowers v. Los Angeles Cty. Metro. Transportation Auth., 243 Cal. App. 4th 66, 82, 196

3   Cal. Rptr. 3d 352, 362 (2015)  [G]iven the Legislature's remedial purpose, "statutes governing

4   conditions of employment are to be construed broadly in favor of protecting employees."].) See

5   Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012)

6

7   Under  CA Labor Code sec 206.5 There can be no valid release of any claim or right on account

8   of wages due unless the wages subject to the release have been paid.   "The purpose of section 206

9   is to prevent an employer from coercing a settlement by placing any condition on payment of

10   wages that are concededly due to the employee. It requires the employer to leave the employee to

11   all remedies for the balance claimed. The purpose of section 206.5 is to invalidate a release of *any*

12   wage claim before "such wages" are actually paid. Thus, by its terms, section 206.5 merely

13   prohibits release of a claim before the wages subject to the release have been paid."

14

15   "Although we find that the language of the statute is clear and does not need to refer to legislative

16   history, it also supports our construction. The Governor's Chaptered Bill File for Assembly Bill

17   No. 302, (which added section 206.5 in 1959), contains a letter to the governor from the legislative

18   representative of the California Labor Federation, stating that testimony before legislative

19   committees developed evidence of a wide-spread practice in the building industry of requiring

20   execution of a release as a condition of an employee's wage payment, and then raising the release

21   as a defense when the wage checks were dishonored. (Letter from C.J. Haggerty to Governor

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1 Edmund G. Brown (June 11, 1959) p. 1.)8 This letter evidences a concern that the wages due are

2 actually paid before the release can be raised as a defense to a wage claim.  Also, the bill

3 memorandum, dated June 16, 1959, that accompanied the assembly's unanimous vote on the bill

4 stated that the bill was designed "to provide a remedy against abuses on the part of an employer

5 who requires an employee to release his claim for wages as a conditional settlement of the claim for

6 an amount less than the wages actually due." (contained in Governor's Chaptered Bill File, ch.

7 1066, Bill Mem., Assem. Bill No. 302, (1959 Reg. Sess.) June 16, 1959.) This document indicates

8 a focus on requiring payment before the wage claim is released. See  Hermann v. Charles Stratton,

9 D.D.S., Inc., No. A095233, 2002 WL 193857, at *4 (Cal. Ct. App. Feb. 7, 2002)

10

11 The Court finds that exhaustion under § 98.7 is not required before bringing a civil action under §§

12 98.6 and 1102.5. In so holding, the Court finds Creighton persuasive and adopts its reasoning.

13 Particularly, the Court agrees that the Private Attorneys General Act ("PAG Act" or "PAGA"),

14 which covers the statutory claims at issue here, see Cal. Labor Code § 2699.5, indicates a

15 legislative emphasis on private enforcement of the Labor Code that would be undercut by a

16 mandatory exhaustion requirement before the Labor Commissioner. The PAG Act " 'empowers or

17 deputizes an aggrieved employee to sue for civil penalties ... as an alternative to enforcement by the

18 State.' " McKenzie v. Fed. Exp. Corp., 765 F.Supp.2d 1222, 1231 (C.D.Cal.2011) (quoting

19 Villacres v. ABM Indus., Inc., 189 Cal.App.4th 562, 592, 117 Cal.Rptr.3d 398 (2010) (internal

20 quotation, citation, and alterations omitted)). The Act allows private citizens to sue on behalf of

21 themselves "and other current or former employees" for violations of the Labor Code, and permits

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  said citizens to recover civil penalties otherwise recoverable only by the government. See §

2  2699(a). - Turner v. City and County of San Francisco, 892 F.Supp.2d 1188, 1202

3  (N.D.Cal.,2012)

4                  **3. Non-Payment (and Withholding of Wages) in violation of FLSA**

5

6  Defendants withheld and did not pay plaintiff against Fair Labor Standards Act.  Tesla, MVP

7  Personnel, and Balance Staffing along with other defendants conspired in withholding, and

8  non-payment of undisputed wages, and overtime wages (i.e. already printed and signed with my

9  social security number, unique check numbers, and full name (with middle initial) George J. Austin

10  to the detriment of Plaintiff, (University of California, Berkeley Graduate (09'), Honors Student,

11  Bay Area Housing Commissioner, Alum, NAACP National Representative, and Local Youth and

12  College President, Alum, California Senate, Governance and Finance Committee, Consultant,

13  Capital Fellows, and Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA

14  Law, and Anderson Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as well as

15  others), and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA).

16

17  Under the FLSA employees in the United States must be paid at least one and one-half the regular

18  rate of pay for all hours worked (overtime) over 40 hours in a workweek.  Our Supreme Court has

19  stated that, " '[I]n light of the remedial nature of the legislative enactments authorizing the

20  regulation of wages, hours and working conditions for the protection and benefit of employees, the

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  statutory provisions are to be liberally construed with an eye to promoting such protection.' See

2  Industrial Welfare Com. v. Superior Court, supra, 27 Cal.3d at p. 702, 166 Cal.Rptr. 331, 613 P.2d

3  579; see also Murphy, at p. 1103, 56 Cal.Rptr.3d 880, 155 P.3d 284" see also Brinker Rest. Corp.

4  v. Superior Court, 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012) see also Flowers v. Los

5  Angeles Cty. Metro. Transportation Auth., 243 Cal. App. 4th 66, 82, 196 Cal. Rptr. 3d 352, 362

6  (2015)  [G]iven the Legislature's remedial purpose, "statutes governing conditions of employment

7  are to be construed broadly in favor of protecting employees."].) See Brinker Rest. Corp. v.

8  Superior Court, 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012)  The FLSA [Federal Fair

9  Labor Standards Act] requires overtime pay… if an employee works more than 40 hours per week,

10  regardless of the number of hours worked during any one day." (Flowers v. Los Angeles County

11  MetropolitanTransportation Authority (2015) 243 Cal.App.4th 66, 83 [196 Cal.Rptr.3d 352],

12

13  Under the Fair Labor Standards Act, of 1938, § 1 et seq., 29 U.S.C.A. § 201, the Plaintiff shall

14  succeed in recovery of claims with proving by a preponderance of the evidence that Plaintiff was

15  a) and employee of Defendant, b) engaged in commerce and c) the Defendant did not pay him the

16  legally required overtime or other bonus, and incentive pay.

17      1.  Here Defendants:

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

    a.  Employed Plaintiff:

        i.    During the time period involved Plaintiff was employed by Defendants, and was praised for work, and character, while performing duties by multiple persons of authority in the respective companies.  Employment agencies and the employers who contract with them are considered employers under the law (Defendants and joint liability for wages can be placed on both the employment agency (MVP/Balance) and the entity that supervises the work (Tesla).  See *Martinez v. Combs (2010) 49 Cal.4th 35, 64, 71*

    b.  Engaged Plaintiff in Commerce through employment:

        i.    Plaintiff's work was engaged in commerce or in the production of goods for commerce.  Tesla is one of the top car and energy manufacturers in the World and is rapidly growing and thus Defendant's business or businesses under unified operation or common control met the standard (employed at least two persons and was engaged in commerce or the production of goods for commerce and had an annual gross sales of at least $500,000.00).  In my direct role I engaged in commerce as defined as a person who produced, manufactured, mined, handled, transported, or in any manner worked on such goods or worked in any closely related process or occupation directly essential to the production of the goods.

    c.  Failed to Pay Plaintiff

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1        i.    Defendant failed to pay the Plaintiff the overtime pay required by law.

2           Defendants have to date still not paid the undisputed wages owed to

3           Plaintiff, George J. Austin. Two sets of checks, two sets of transaction

4           numbers, each check possessing a unique number representing a different

5           wage (check), and all printed with my social security number, full name,

6           George J. Austin, etc. Under CA Labor Law on undisputed wages

7           approximately $25,000, should have been paid immediately, upon request,

8           or the employer shall be liable for additional liability, and penalties.  The

9           veracity and authenticity of these wages have been independently confirmed

10           via a Wage Affidavit by an independent State Government Auditing

11           Agency which confirmed the veracity of the second set of wages

12           [undisputed wages owed]. However, beyond the disputed wages, there are

13           additional missing past, present and future wages (including bonus,

14           incentives, stock, automobile, and other incentives or their equivalent

15           values) that can be more accurately determined during the discovery

16           process.  Under the FLSA An employer must pay its employees at least one

17           and one-half times their regular rate for overtime work.

18

19 The Fair Labor Standards Act was designed to extend the frontiers of social progress by [ensuring]

20 all able-bodied working men and women a fair day's pay for a fair day's work. Fair Labor

21 Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.  See 401 F.Supp.3d 886  For

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  purposes of the requirement under the Fair Labor Standards Act (FLSA), that covered workers be

2  paid at least 1.5 times their regular rate for work exceeding 40 hours weekly, "regular rate" is

3  defined as the hourly rate actually paid the employee for the normal, non-overtime workweek for

4  which he is employed. Fair Labor Standards Act of 1938 § 7, 29 U.S.C.A. § 207(e); 29 C.F.R. §

5  778.108.  See 401 F.Supp.3d 886  An employer commits a willful violation of the Fair Labor

6  Standards Act (FLSA), making the three year statute of limitations applicable, if it knew or showed

7  reckless disregard for the matter of whether its conduct was prohibited by the FLSA. Fair Labor

8  Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq  See 401 F.Supp.3d 886

9

10  "A violation of the FLSA is willful if the employer 'knew or showed reckless disregard for the

11  matter of whether its conduct was prohibited by the [FLSA]." Chao v. A–One Med. Servs., Inc.,

12  346 F.3d 908, 918 (9th Cir. 2003) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133,

13  108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)) (alteration in original); Flores v. City of San Gabriel, 824

14  F.3d 890, 906 (9th Cir. 2016) ("A violation is willful if the employer knew or showed reckless

15  disregard for the matter of whether its conduct was prohibited by the [FLSA].") (internal quotation

16  and citation omitted) (alteration in original).5  The Ninth Circuit has found willfulness where the

17  employer was "on notice of its FLSA requirements, yet took no affirmative action to assure

18  compliance with them." Alvarez v. IBP, Inc., 339 F.3d 894, 909 (9th Cir. 2003).  See also Hugler

19  v. Kazu Constr., LLC, 262 F. Supp. 3d 1032, 1036 (D. Haw. 2017)

20

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1 The FLSA requires covered workers to be paid at least 1.5 times their normal rate for all work in

2 excess of forty hours weekly, 29 U.S.C. § 207(a)(1), provided the employer has actual or

3 constructive knowledge that the work is occurring. 29 C.F.R. § 785.11; Forrester v. Roth's I.G.A.

4 Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981). Employers who violate this requirement are

5 liable for damages in the amount of the unpaid overtime, "an additional equal amount as liquidated

6 damages," and "reasonable attorney's fee ... and costs." 29 U.S.C. § 216(b).  See Campbell v. City

7 of Los Angeles, 903 F.3d 1090, 1102 (9th Cir. 2018)

8

9 "The Fair Labor Standards Act was designed to 'extend the frontiers of social progress' by

10 '[e]nsuring to all our able-bodied working men and women a fair day's pay for a fair day's work.' "

11 A.H. Phillips v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945) (quoting

12 Message of the President to Congress, May 24, 1934). Among the protections offered to workers

13 under the FLSA are a federal minimum wage and limits on overtime. See 29 U.S.C. §§ 206, 207.

14 The FLSA requires covered workers to be paid at least 1.5 times their normal rate for all work in

15 excess of forty hours weekly. 29 U.S.C. § 207(a)(1). The FLSA defines "regular rate" broadly as

16 "all remuneration for employment." 29 U.S.C. § 207(e). "Courts have defined 'regular rate' more

17 specifically as 'the hourly rate actually paid the employee for the normal, non-overtime workweek

18 for which he is employed.' " Parth v. Pomona Valley Hosp. Med. Ctr., No. CV 06-04703 MMM

19 (FFMx), 2007 WL 9193688, at *6 (C.D. Cal. Dec. 5, 2007) (citing Walling v.

20 Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945);

21 29 C.F.R. § 778.108). "Employers who violate this requirement are liable for damages in the

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  amount of the unpaid overtime, "an additional equal amount as liquidated damages," and a

2  "reasonable attorney's fee ... and costs." Campbell v. City of Los Angeles, 903 F.3d 1090, 1102

3  (9th Cir. 2018) (quoting 29 U.S.C. § 216(b))  See 401 F.Supp.3d 886, 895

4

5  An employee's regular rate is the basis for calculating any overtime pay due the employee.  The

6  regular rate for a week is determined by dividing the first 40 hours worked into the total wages

7  paid for those 40 hours. The overtime rate, then, is one and one-half times that rate.  Additionally,

8  The United States Department of Labor recently added language to clarify the Employer's legal

9  responsibilities, and incurred liabilities, with the Fluctuating Workweek Method of Computing

10  Overtime under 29 CFR 778.114  The final rule clarifies that payments in addition to the fixed

11  salary are compatible with the use of the fluctuating workweek method under the Fair Labor

12  Standards Act (FLSA)  It adds language to 29 CFR 778.114(a) to expressly state that employers

13  can pay bonuses, premium payments, or other additional pay, such as commissions and hazard pay,

14  to employees compensated using the fluctuating workweek method of compensation. (The rule

15  also states that such supplemental payments must be included in the calculation of the regular rate

16  unless they are excludable under FLSA sections 7(e)(1)–(8)). The rule grants employers greater

17  flexibility to provide bonuses or other additional compensation to nonexempt employees whose

18  hours vary from week to week, and eliminates any disincentive for employers to pay additional

19  bonus or premium payments to such employees.  Addresses uncertainty and adds examples to 29

20  CFR 778.114(b) to illustrate these principles where an employer pays an employee, in addition to a

21  fixed salary (1) a night shift differential and (2) a productivity bonus.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1                               4. **Conversion**

2   Defendants practiced conversion of Plaintiff's property.  Tesla, MVP Personnel, and Balance

3   Staffing along with other defendants knowingly conspired to commit the tort of conversion of

4   non-paid, and undisputed wages (i.e. already printed and signed with my social security number,

5   unique check numbers, and full name (with middle initial) George J. Austin.  Defendants also

6   conspired in the tort of conversion of non-payment of other wages to the detriment of Plaintiff,

7   (University of California, Berkeley Graduate (09'), Honors Student, Bay Area Housing

8   Commissioner, Alum, NAACP National Representative, and Local Youth and College President,

9   Alum, California Senate, Governance and Finance Committee, Consultant, Capital Fellows, and

10  Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and Anderson

11  Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as well as others), and Attorney of

12  Record, Mr. George Jarvis (J.) Austin, esq. (TBA).

13

14  Conversion is essentially the civil law equivalent to criminal theft. Plaintiff's must have right to

15  possession, title, or ownership of the personal property to sue for conversion. [Gen. Motors

16  Acceptance Corp. v. Dallas (1926) 198 Cal. 365, 370 (where conversion occurred after sale of

17  automobile, buyer must either show certificate of ownership or actual possession to sue for

18  conversion); Witkin § 705]  Generally, conversion is the wrongful exercise of dominion over the

19  personal property of another. [De Vries v. Brumback (1960) 53 Cal. 2d 643, 647 (conversion is

20  "an act of willful interference with personal property, done without lawful justification, by which

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  any person entitled thereto is deprived of the use and possession of the personal property"); Steele

2  v. Marsciano (1894) 102 Cal. 666, 669; 5 Witkin Summary of California Law Torts § 699 (10th

3  ed. 2005)].  A person with a special interest with a right of possession can sue for conversion.

4  [Dept. of Industrial Relations v. UI Video Stores (1997) 55 Cal. App. 4th 1084, 1095 (state agency

5  with immediate right to possession of checks could sue for conversion); Witkin § 706] 3.

6

7  One can have ownership without possession.  An owner not in possession may also sue for

8  conversion. [Reynolds v. Lerman (1956) 138 Cal. App. 2d 586, 596 (where debtor sued sheriff for

9  wrongful sale of debtor's attached property, debtor's conversion claim was valid because he was

10  owner despite not having a right of immediate possession) Witkin § 707]   Property is a broad

11  concept that includes "every intangible benefit and prerogative susceptible of possession or

12  disposition[,]" conversion generally involves tangible personal property. [Witkin §§ 701, 702; See

13  Downing v. Mun. Ct., 88 Cal.App.2d 345, 350 (1948).] 1/15/2010 5:04 PM (2K) [CA Conversion

14  Law Chapter, 1.13.doc] 1.  Intangible versus tangible property: while conversion developed to

15  remedy the wrongful taking of physical personal property, "virtually every jurisdiction … has

16  disregarded this rigid limitation to some degree." Kremen v. Cohen, 337 F.3d 1024, 1030, 1031-33

17  (9th Cir. 2003)  Conversion applies to all types of personal property: conversion is "a remedy for

18  the conversion of every species of personal property," [Payne v. Elliot, 54 Cal. 339, 341 (1880)

19  (holding that shares in a corporation, money (or specifically payroll checks) is a possible

20  conversion cause of action for a specific identifiable sum of money. [Haigler v. Donnelly (1941) 18

21  Cal. 2d 674, 681

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1

To succeed Intentional interference is required: a conversion cause of action arises only from

intentional acts causing substantial interference with an owner's property right. [Zaslow v.

Kroenert (1946) 20 Cal. 2d 541, 550 (taking possession of and locking building, by itself, does not

constitute interference without intent to convert possession); Enterprise Leasing Corp. v. Shugart

Corp. (1991) 231 Cal. App. 3d 737, 748 (plaintiff need only show that he was entitled to

possession at time of conversion; later recovery of property does not preclude conversion claim);

Witkin § 708] 1. Interference must be substantial: "[w]here the conduct complained of does not

amount to a substantial interference with the possession of or the right thereto, but consists of the

intermeddling with or use of, or damages to the personal property[,]" no conversion exists. [Jordan

v. Talbot, 55 Cal.2d 597, 610 (1961) (citing Zaslow v. Cronert, 29 Cal.2d 541, 551 (1946))] ii.

Control may be sufficient: manual taking of the plaintiff's personal property is not required; any

wrongful assumption of control may constitute actual interference. [Gruber v. Pacific States

Savings & Loans Co. (1939) 13 Cal. 2d 144, 147 (landlord's refusal to permit tenant to remove

personal property amounted to conversion); Witkin § 709]

16

Even within the confines of the *Voris* holding by the California State Supreme Court, which is

broadly adverse to more traditional unpaid wages conversion claim, supports this claim due to an

identifiable, ownership interest, uncontested (i.e. checks in my name, social security number, etc.),

defined amount of money.  Public policy generally favors informal resolution of disputes, claims

for wages [especially uncontested wages] are in a special category. (Reid, supra, 55 Cal.2d at p.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  207, 10 Cal.Rptr. 819, 359 P.2d 251.) "It has long been recognized that wages are not ordinary

2  debts, that they may be preferred over other claims, and that, because of the economic position of

3  the average worker and, in particular, his dependence on wages for the necessities of life for

4  himself and his family, it is essential to the public welfare that he receive his pay when it is due."

5  (In re Trombley (1948) 31 Cal.2d 801, 809–810, 193 P.2d 734.)  See Also Hermann v. Charles

6  Stratton, D.D.S., Inc., No. A095233, 2002 WL 193857, at *3 (Cal. Ct. App. Feb. 7, 2002)  This is

7  even more true with undisputed wages as they are immediately owed, and considered property of

8  the employee.  Some additional examples of conversion are wrongful withholding of plaintiff's

9  property. [Edwards v. Jenkins (1932) 214 Cal. 713, 720; Witkin § 712] 1/15/2010 5:04 PM (2K)

10  [CA Conversion Law Chapter, 1.13.doc] 5  Delivery of goods to the wrong person. [Byer v.

11  Canadian Bank of Commerce (1937) 8 Cal. 2d 297, 299; Witkin § 712] Intangible property

12  represented by physical document: possible conversion cause of action for improper use of

13  intangibles represented by documents, i.e., bonds, notes, stock certificates, negotiable instruments,

14  etc. [Acme Paper Co. v. Goffstein (1954) 125 Cal. App. 2d 175, 179 (conversion of check); Mears

15  v. Crocker First Nat'l Bank (1948) 84 Cal. App. 2d 637, 644 (conversion of stock share

16  certificate); Cal. Jur. § 12; Witkin § 702]

17  Here Plaintiff::

18       a.   Had Right to Ownership or Possess

19            i.   Plaintiff in fact had the right to possess said property [money] including

20                 undisputed wages as signified by social security number, name George J.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1    Austin, and other unique identifiers of rightful legal ownership.

2    Organization demonstrated in multiple ways that they intended to

3    permanently deprive me of wages, in my name, under my social security

4    number, and with easily discoverable unique identifiers (i.e. check

5    numbers/dates, etc.) by lying, repeatedly of their existence, and refusing to

6    cancel and resend once Identified of their existence, and notified

7    organization of non-receipt of wages right of ownership, or possession,

8    demonstrated in the above described phenomena.

9    b.   Was Deprived of Right/Interests

10    i.   Defendant's disposition of property was in a manner inconsistent with

11    plaintiff's property rights.  Plaintiff was deprived of said rights by Employer

12    not properly notifying of additional wages, or delivering, and then by not

13    correcting once Plaintiff discovered, and made formal inquiry, request, and

14    demand.  Organization lied repeatedly, in writing, showing intent, and

15    scienter, of their existence and further their intent to deprive. Defendants lost

16    a tremendous amount of credibility while continually denying even though

17    fairly easily ascertainable, discoverable contradicted, via subpoena (and

18    other investigative, truth/fact finding methods).  Communicated to each part

19    of the MVP Personnel, and its organization Balance Staffing, and Tesla, and

20    none corrected, nor provided a solution (and continued the knowing

21    dishonesty).  Pay, and Paystubs, clearly identified me as the owner of the

George Jarvis (J).. Austin, esq. (TBA) 06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1         property via social security number, name including middle initial, George J.

2         Austin, address listed on my drivers license, etc. In California wages

3         [especially undisputed] are owned by employees. Was deprived of, and

4         substantially interfered with, interest in the property by the defendant's

5         unauthorized act.

6    c.   c) Suffered damages

7        i.    Plaintiff suffered direct, and indirect, damages with an immediate and direct

8         known amount of approximately $25,000 and an unknown amount through

9         discovery that will help determine a full amount. It is likely an even larger

10        direct amount of wages through fraudulent benefits, or incentives, paid to

11        persons who stole those wages, and filed, also in my name (i.e. worker's

12        compensation). Those sums of money, stolen, or improperly converted,

13        shall also be included in the total direct damages (as Defendants at

14        minimum, aided and abetted, their theft (or conversion) if not directly stolen

15        that money themselves). Undisputed stolen, or converted, wages already

16        have independently been verified through a Wage Affidavit, and

17        investigation,via an independent and reputable government agency.

18                **5. Breach of Employment Contract**

19 Defendant's breached employment contract with Plaintiff. Tesla, MVP Personnel, and Balance

20 Staffing along with other defendants collectively breached their employment contract, in violation

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  of not only "Good Cause," (express or implied), but also in tortious violation of laws against fraud,

2  deceit, and defamation.  All to the detriment of Plaintiff, (University of California, Berkeley

3  Graduate (09'), Honors Student, Bay Area Housing Commissioner, Alum, NAACP National

4  Representative, and Local Youth and College President, Alum, California Senate, Governance and

5  Finance Committee, Consultant, Capital Fellows, and Senate Fellows Top 10 out of 800+

6  Nationally Ranked, Alum (13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08',

7  13'), T-14 Law Student,  as well as others), and Attorney of Record, Mr. George Jarvis (J.) Austin,

8  esq. (TBA).

9

10  There can be no right to terminate for an unlawful reason or a purpose that contravenes

11  fundamental public policy. Any other conclusion would sanction lawlessness, which courts by

12  their very nature are bound to oppose.' " (Casella v. SouthWest Dealer Services, Inc. (2007)

13  157Cal.App.4th 1127, 1138–1139 [69 Cal.Rptr.3d 445],  Under California law, breach of implied

14  covenant of good faith and fair dealing in employment contracts is established whenever an

15  employer engages in bad-faith action extraneous to contract, combined with the employer's intent

16  to frustrate employee's enjoyment of contract rights. Huber v. Standard Ins. Co., 841 F.2d 980 (9th

17  Cir. 1988)  Ninth Circuit Court of Appeals in *Huber* held that when genuine issue of material fact

18  exists as to whether employer's discharge of employee was bad-faith action extraneous to

19  employment contract and done with intent to frustrate employee's enjoyment of contract rights

20  summary judgment is precluded under California law on claim of breach of implied covenant of

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  good faith and fair dealing in employment contract.  See Huber v. Standard Ins. Co., 841 F.2d 980

2  (9th Cir. 1988)

3

4  Good cause exists when an employer's decision to discharge or demote an employee is made in

5  good faith and based on a fair and honest reason (a lie especially with reckless disregard for truth

6  [malice] disqualifies).  Further, good cause does not exist if the employer's reasons for the

7  discharge or demotion are trivial, arbitrary, inconsistent with usual practices, or unrelated to

8  business needs or goals [or if the stated reasons conceal the employer's true reasons].  Even more,

9  an employer cannot defraud, deceive, or defame to accomplish its ends, whether legitimate, or

10  legitimate business needs.  At will presumption in law is limited by legal, and honest, dealing,

11  when the alternative is present it destroys those employer protections and opens them up to liability

12  for breach of contract and beyond.

13

14  Where there is no express agreement, the issue is whether other evidence of the parties' conduct

15  has a 'tendency in reason' to demonstrate the existence of an actual mutual understanding on

16  particular terms and conditions of employment. If such evidence logically permits conflicting

17  inferences, a question of fact is presented."(Guz v. Bechtel National, Inc. (2000) 24 Cal.4th 317,

18  337 [100 Cal.Rptr.2d 352,8 P.3d 1089], internal citations omitted.)  "The presumption that an

19  employment relationship of indefinite duration is intended to be terminable at will is therefore

20  'subject, like any presumption, to contrary evidence. This may take the form of an agreement,

21  express or implied,that . . . the employment relationship will continue indefinitely, pending the

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1   occurrence of some event such as the employer's dissatisfaction with the employee's services or the

2   existence of some "cause" for termination.' " (Foley v. Interactive Data Corp. (1988) 47 Cal.3d

3   654, 680 [254 Cal.Rptr. 211, 765 P.2d 373], internal citation omitted.) "In Foley, we identified

4   several factors, apart from express terms, that may bear upon 'the existence and content of an . . .

5   [implied-in-fact] agreement' placing limits on the employer's right to discharge an employee. These

6   factors might include ' "the personnel policies or practices of the employer, the employee's

7   longevity of service, actions or communications by the employer reflecting assurances of continued

8   employment, and the practices of the industry in which the employee is engaged." ' " (Guz v.

9   Bechtel National, Inc. (2000) 24 Cal.4th 317, 336–337 [100 Cal.Rptr.2d 352, 8 P.3d 1089], internal

10  citations omitted.)

11

12  Civil Code sections 1619–1621 together provide as follows: "A contract is either express or

13  implied. An express contract is one, the terms of which are stated in words. An implied contract is

14  one, the existence and terms of which are manifested by conduct." 'Good cause' or 'just cause' for

15  termination connotes ' "a fair and honest cause or reason," ' regulated by the good faith of the

16  employer. The term is relative, and defamatory lies bars and destroys good cause. Whether good

17  cause exists is dependent upon the particular circumstances of each case. In deciding whether a

18  good cause exists, there must be a balance between the employer's interest in operating its business

19  efficiently and profitably and the employee's interest in continued employment. Care must be

20  exercised so as not to interfere with the employer's legitimate exercise of managerial discretion.

21  While the scope of such discretion is substantial, it is not unrestricted. Good cause is not properly

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  found where the asserted reasons for discharge are 'trivial, capricious, unrelated to business needs

2  or goals, pretextual.' Where there is a contract to terminate only for good cause, the employer has

3  no right to terminate for an arbitrary or unreasonable decision."(Walker v. Blue Cross of California

4  (1992) 4 Cal.App.4th 985, 994 [6Cal.Rptr.2d 184], internal citations omitted, abrogated on another

5  ground inGuz, supra, 24 Cal.4th at p. 351.)

6

7  When the reason given for the discharge is misconduct, and there is a factual dispute whether the

8  misconduct occurred, then the court should give allow the finders fact to ascertain truth CACINo.

9  2405, Breach of Implied Employment Contract—Unspecified Term—"GoodCause"

10  Defined—Misconduct, (See Cotran v. RollinsHudig Hall International, Inc. (1998) 17 Cal.4th 93,

11  107 [69 Cal.Rptr.2d 900, 948P.2d 412].)13370015  "If the evidence is uncontradicted and permits

12  only one conclusion, then the issue [of good cause] is legal, not factual. Where, however, as here,

13  the evidence is contradicted, the issue is one for the trier of fact to decide." (Wallis V. Farmers

14  Group, Inc. (1990) 220 Cal.App.3d 718, 733 [269 Cal.Rptr. 299],disapproved on other grounds in

15  Dore v. Arnold Worldwide, Inc. (2006) 39Cal.4th 384, 394 fn. 2 [46 Cal.Rptr.3d 668, 139 P.3d

16  56].)

17

18

19  "[G]ood cause" in [the context of wrongful termination based on an implied contract] "is quite

20  different from the standard applicable in determining the propriety of an employee's termination

21  under a contract for a specified term."(Pugh, supra, 116 Cal.App.3d at p. 330.)  "We have held that

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1 appellant has demonstrated a prima facie case of wrongful termination in violation of his contract

2 of employment. The burden of coming forward with evidence as to the reason for appellant's

3 termination now shifts to the employer. Appellant may attack the employer's offered explanation,

4 either on the ground that it is pretextual (and that the real reason is one prohibited by contract or

5 public policy, or on the ground that it is insufficient to meet the employer's obligations under

6 contract or applicable legal principles. Appellant bears, however, the ultimate burden of proving

7 that he was terminated wrongfully." (Pugh, supra, 116 Cal.App.3d at pp. 329–330, internal citation

8 omitted.)Secondary Sources3 Witkin, Summary of California Law (10th ed. 2005) Agency and

9 Employment,§§ 208, 209, 231Chin et al., Cal. Practice Guide: Employment Litigation ¶¶

10 4:270–4:273, 4:300 (TheRutter Group)1 Wrongful Employment Termination Practice

11 (Cont.Ed.Bar 2d ed.) ContractCACI No. 2404   A defamatory lie, without previous basis,

12 warning, employer due diligence (demonstrating a reckless disregard for truth at minimum)

13 qualifies to destroy good cause defense, and triggers liability.

14

15 Under California law breach of employment contract claim shall be meritorious when a) plaintiff

16 and defendant enter into an employment relationship. b)  Defendant promised, by words or

17 conduct, to discharge, or demote, plaintiff, only for good cause, and c) plaintiff substantially

18 performed his, or her, job duties unless plaintiff's performance was excused or prevented, d)

19 defendant discharged, or demoted plaintiff without good cause; and e). plaintiff was harmed by the

20 discharge, or demotion. See *Judicial Council of California Civil Jury Instructions* See also 1

21 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, ["The determination whether a material

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1 breach has occurred is generally a question of fact"].) Whether a partial breach of a contract is

2 material depends on "the importance or seriousness thereof and the probability of the injured party

3 getting substantial performance." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, §

4 852, pp. 938–940; Brown v. Grimes, 192 Cal. App. 4th 265, 278, 120 Cal. Rptr. 3d 893, 903

5 (2011)

6

7 Here there was:

8

9      a.   Contract Formation:

10          i.   Plaintiff and Defendants entered into an employment relationship.  See

11           *Judicial Council of California Civil Jury Instructions* See also 1 Witkin,

12           Summary of Cal. Law (10th ed. 2005) Contracts.  The formation of a

13           contract between the Plaintiff, George J. Austin, and the Defendants Tesla,

14           MVP/Balance was formed prior to beginning work in the summer and fully

15           consummated once work began. This is evident in badges, work attire

16           provided by the company, paystubs made out to me, in my name, and with

17           my social security number, time sheets, work ID and other items and work

18           records.

19

20      b.   Implied or Express Good Cause

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

i.  Defendant promised, by words or conduct, to discharge, or demote,

plaintiff, only for good cause, See *Judicial Council of California Civil Jury*

*Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005)

Contracts.  The Implied and Express Good Cause clause was evident in

written, and oral word from the very beginning of training, and continued

indeed throughout the time working in a multitude of ways.  From the top

down the reason for emphasis on attendance, PPE, and other policies and

procedures from employees, and human resource handbooks, to which I

took heed (and extra care) and was commended for, were expression of

Good Clauses express or implied.

c.  Plaintiff Substantial Performance

i.  Plaintiff substantially performed his job duties See *Judicial Council of*

*California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law

(10th ed. 2005) Contracts.  Plaintiff, George J. Austin, performed contract,

and duties, receiving positive feedback from peers, supervisors, Executive

leadership, officers and managers.  Not only was there not good cause for

firing, I was alternatively told repeatedly, and explicitly, by my supervisors

that I was doing an excellent job, and looking to promote me.  In fact I was

explicitly asked by my Supervisor if I had considered Management, while

he was saying he was impressed by my work.  The Vice President, and

George Jarvis (J).. Austin, esq. (TBA) 06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1    head of the department I worked in said explicitly I should already be in a

2    lead, or Supervisor role.  I also received multiple positive written feedback

3    from a variety of sources.

4

5    d.  Defendant Non-performance, and discharge without Good Cause

6         i.  Although Plaintiff substantially performed his job, and functions,

7              Defendants didn't hold their end of the bargain, and illegally discharged the

8              plaintiff without good cause; See *Judicial Council of California Civil Jury*

9              *Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005)

10             Contracts Defendant(s), collectively did not perform, or hold up, their end

11             of the contract.  Unfortunately they a) violated their duty to ensure receipt of

12             all [undisputed] wages assigned to me by their company, also b) failed to

13             properly, and honestly, remedy missing/stolen wages when notified (i.e. stop

14             order, and reprint), c) failed to conduct proper due diligence before, and

15             acted at best reckless (at worse maliciously) taking negative employment

16             and retaliatory action, d) violating public policy, and ethical baselines by

17             acting recklessly, and practicing defamation per se.  Defendants Failed to

18             perform.

19

20    e.  e) Resulting damages to the plaintiff.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1        i.    Plaintiff was harmed by the breach up and ultimate, discharge, or demotion.

2        See *Judicial Council of California Civil Jury Instructions* See also 1 Witkin,

3        Summary of Cal. Law (10th ed. 2005) Contracts.  Plaintiff, George J.

4        Austin, incurred multiple damages due to breach of contract including lost

5        wages, opportunities, incentives, bonuses, automobiles, other opportunities,

6        and forms of wages to be more fully and accurately determined through the

7        discovery process.

8            **6. Fraudulent Misrepresentation**

9

10   Defendants made fraudulent misrepresentation to and about Plaintiff.  Tesla, MVP, and Balance

11   (broadly Defendants) collectively caused injury, and prevented subsequent employment by

12   Fraudulent Misrepresentation, via Sandy Malloy (and other company officers, and representatives).

13   Defendants did so when Ms. Malloy spoke on all three entities behalf, after communicating, and

14   "publishing", a lie ("that Plaintiff recorded a supervisor against California penal code; accusation of

15   "a crime") with other company officers.  Defendants via Sandy Malloy not only made fraudulent

16   misrepresentations in a decision making capacity, and with a failed duty to ascertain truth, and

17   present truth, but used those misrepresentation to  wrongfully withhold wages, initiate negative

18   employment actions, ultimately wrongful termination, and prevent subsequent employment of

19   Plaintiff, (University of California, Berkeley Graduate (09'), Honors Student, Bay Area Housing

20   Commissioner, Alum, NAACP National Representative, and Local Youth and College President,

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  Alum, California Senate, Capital Fellows, Senate Fellows Top 10 out of 800+ Nationally Ranked,

2  Alum (13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08', 13'), T-14 Law

3  Student,  as well as others), and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA)

4

5  "To establish a claim for fraudulent misrepresentation, the plaintiff must prove: '(1) the defendant

6  represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the

7  defendant knew that the representation was false when the defendant made it, or the defendant

8  made the representation recklessly and without regard for its truth; (4) the defendant intended that

9  the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6)

10  the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a

11  substantial factor in causing that harm to the plaintiff.' " (Perlas v. GMAC Mortgage, LLC (2010)

12  187 Cal.App.4th 429, 434, 113 Cal.Rptr.3d 790 (Perlas )  See also Graham v. Bank of Am., N.A.,

13  226 Cal. App. 4th 594, 605–06, 172 Cal. Rptr. 3d 218, 228 (2014)

14

15  Here Defendants:

16     1)  Misrepresented

17                    i)      There were a series of multiple misrepresentations, outright lies, and

18                            fraudulent claims intended to take, steal, and deprive Plaintiff (presented as

19                            fact).  Defendants conspired to deprive of  wages, and make false claim, and

20                            misrepresentation, of recording a supervisor with intent to deprive of wages,

21                            job, and benefits.  A fundamental lie, or misrepresentation, is that I recorded

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1    a supervisor (still unsure of context or full meaning, but all I have is the

2    message).  Asked for clarity, and more information, in writing, none was

3    provided. Another major misrepresentation/lie, was  that the second group

4    of checks/wages did not exist, when they clearly were already made out in

5    my name, with my social security number, and ready to be

6    cashed/deposited.

7    2)  Had Scienter, or Knowledge of falsity

8         i)    In each example of misrepresentation/false statement the defendants knew,

9              or easily could have inquired to find out, and instead were grossly negligent,

10             but made the false statements anyway.  In the case of the checks, wages, not

11             only did they deny their existence, when the official records (inside, and

12             outside their company) say otherwise, but refused to offer any requested

13             proof to show otherwise.  In the example of defamatory per se statements

14             made resulting in negative employment action by employer, again, it was

15             with knowledge, and reckless disregard.

16   3)  Intended to defraud/deceive

17        i)    Employer's, and Defendant's, intended to defraud as evidenced not only in

18             the initial false statements, but in their responses to legitimate inquiry.  An

19             honest mistake can often be corrected with honest recognition, and

20             adjustment/correction as needed.  However, when the response is to further

21             hide, retaliate, and deceive, it shows the true motives of the party.  Here,

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1    each inquiry was received not with honesty, but with more attempts to

2    deceive, and create obstacles to finding the truth, and correcting any

3    missteps (intentional, or by omission), the defendants made.

4    4)  Induced plaintiff's justifiable reliance

5        i)    Plaintiff would have responded sooner, and taken action, but for the justified

6              reliance in his employer's, and collectively defendant's, words, though

7              shown to be deceitful, and fraudulent.  Because Defendant's, as Plaintiff's

8              employer, owed a special duty of care, loyalty, and responsibility, plaintiff

9              by law had a reasonably justifiable reliance on the words of Defendants.

10             Although those words ultimately proved false, when there was no reason to

11             assume they were lying, ultimately fraudulent, Defendants had a duty as

12             employer to present the truth, and Plaintiff had a reasonable and justifiable

13             reliance on their words.  Defendants lied about stolen/withheld wages [some

14             of which were non-disputed], opportunities, as well as others.  Defendant's

15             also made fraudulent representations about the plaintiff, mentioned above as

16             defamation per se, with the intent of depriving plaintiff of property, rights

17             and opportunities he was entitled to.

18   5)  resulting damage

19       i)    Due to the misrepresentations by Employer, Plaintiff suffered a variety of

20             damages of significant magnitude.

21

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1 "[F]fraudulent intent is an issue for the trier of fact to decide." (Beckwith v. Dahl(2012) 205

2 Cal.App.4th 1039, 1061 [141 Cal.Rptr.3d 142].)  "[T]here are two causation elements in a fraud

3 cause of action.  First, the plaintiff's actual and justifiable reliance on the defendant's

4 misrepresentation must have caused him to take a detrimental course of action. Second, the

5 detrimental action taken by the plaintiff must have caused his alleged damage."(Beckwith, supra,

6 205 Cal.App.4th at p. 1062.  "[P]laintiffs argue that actual reliance cannot logically be an element

7 of a cause of action for deceit based on an omission because it is impossible to demonstrate reliance

8 on something that one was not told. In support of the argument, plaintiffs cite Affiliated Ute

9 Citizens v. United States, supra, 406 U.S.128 (Ute) . . . Interpreting Rule 10b-5, the high court held

10 that 'positive proof of reliance is not a prerequisite to recovery' in a case involving primarily a

11 failure to disclose . . . .' [¶] Contrary to plaintiffs' assertion, it is not logically impossible to prove

12 reliance on an omission.  One need only prove that, had the omitted information been disclosed,

13 one would have been aware of it and behaved differently." (Mirkin, supra, 5 Cal.4th at p. 1093.)

14

15 "The fact that a false statement may be obviously false to those who are trained and experienced

16 does not change its character, nor take away its power to deceive others less experienced. There is

17 no duty resting upon a citizen to suspect the honesty of those with whom he [or she] transacts

18 business. Laws are made to protect the trusting, as well as the suspicious. [T]he rule of caveat

19 emptor should not be relied upon to reward fraud and deception." (Boschma,supra, 198

20 Cal.App.4th at p. 249, original italics.)

21

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1

## 7.  Fraudulent Concealment

2   Defendants fraudulently concealed material information from Plaintiff.  Tesla, MVP, and Balance

3   (broadly Defendants) collectively caused injury, and prevented subsequent employment by

4   Fraudulent Concealment.  Defendants collectively withheld, or lied directly, about vital information

5   in a decision making capacity to wrongfully withhold wages, initiate negative employment actions,

6   ultimately wrongful termination, and prevent subsequent employment of Plaintiff, (University of

7   California, Berkeley Graduate (09'), Honors Student, Bay Area Housing Commissioner, Alum,

8   NAACP National Representative, and Local Youth and College President, Alum, California

9   Senate, Capital Fellows, Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'),

10  UCLA Law, and Anderson Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as well

11  as others), and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA)

12

13  The required elements for fraudulent concealment are: (1) concealment or suppression of a material

14  fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to

15  defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was

16  unaware of the fact and would not have acted as he or she did if he or she had known of the

17  concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or

18  suppression of the fact. (*Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862,

19  870, 130 Cal.Rptr.3d 504 (*Bank of America Corp.*).)  See Graham v. Bank of Am., N.A., 226 Cal.

20  App. 4th 594, 606, 172 Cal. Rptr. 3d 218, 228 (2014)

George Jarvis (J).. Austin, esq. (TBA) 06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1

2  There must usually be a duty to disclose arising from a fiduciary or confidential relationship

3  between the parties. Here the Defendant parties clearly had a fiduciary and other duties as

4  employers.  However, in transactions that do not involve fiduciary or confidential relations, a duty

5  to disclose material facts may arise in at least three instances: (1) the defendant makes

6  representations but does not disclose facts that materially qualify the facts disclosed, or that render

7  his disclosure likely to mislead(option 2); (2) the facts are known or accessible only to defendant,

8  and defendant knows they are not known to or reasonably discoverable by the plaintiff (option

9  3);(3) the defendant actively conceals discovery from the plaintiff (option 4). (SeeWarner Constr.

10  Corp. v. L.A. (1970) 2 Cal.3d 285, 294 [85 Cal. Rptr. 444, 466 P.2d996].) For the second, third,

11  and fourth options, if the defendant asserts that there was no relationship based on a transaction

12  giving rise to a duty to disclose, the jury should also be instructed to determine whether the

13  requisite relationship existed.(See Hoffman v. 162 North Wolfe LLC (2014) 228 Cal.App.4th

14  1178, 1187 [175Cal.Rptr.3d 820].)

15

16  "The elements of fraud, which give rise to the tort action for deceit, are (1)misrepresentation (false

17  representation, concealment or non-disclosure); (2)knowledge of falsity (or 'scienter'); (3) intent to

18  defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." (Hackethal v.

19  National Casualty Co. (1987) 189 Cal.App.3d 1102, 1110 [234 Cal.Rptr. 853].)

20

21  Here Defendant Employers:

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

b)  Concealed

    i)  There were a series of multiple misrepresentations, outright lies, and fraudulent claims intended to take, steal, and deprive Plaintiff.  Wages, False Claim of recording with intent to steal wages, job, benefits.  a) First lie, that I recorded a supervisor (still unsure of context or full meaning, but all I have is the message).  Asked for clarity, and more information, in writing, none was provided. b) Second misrepresentation/lie, second group of checks/wages did not exist, yet have been proven to exist and likely used by others not Plaintiff (discovery will uncover).

c)  Had Knowledge of Falsity

    i)  In each example of misrepresentation/false statement the employer knew, or easily could have inquired to find out, grossly negligent, but made the false statements anyway.  In the case of the checks, wages, not only did they deny their existence, when the official records (inside, and outside their company) say otherwise, but refused to offer any requested proof to show otherwise.  In the example of defamatory per se statements made resulting in negative employment action by employer, again, it was

d)  Intent to Defraud

    i)  Employer's, and Defendant's, intended to defraud as evidenced not only in the initial false statements, but in their responses to legitimate inquiry.  An honest mistake can often be corrected with honest recognition, and

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1    adjustment/correction as needed.  However, when the response is to further

2    hide, retaliate, and deceive, it shows the true motives of the party.  Here,

3    each inquiry was received not with honesty, but with more attempts to

4    deceive, and create obstacles to finding the truth, and correcting any

5    missteps (intentional, or by omission), the defendants made.

6    e)   Provide Justifiable Reliance

7        i)   Plaintiff would have responded sooner, and taken action, but for the justified

8             reliance on his employer's words, though shown to be deceitful, and

9             fraudulent.  Because, defendant's, as Plaintiff's employer, owed a special

10            duty of care, loyalty, and responsibility, plaintiff by law had a reasonably

11            justifiable reliance on the words, though fraudulent, of defendants

12    f)   Resulting damage

13        i)   Due to the misrepresentations by Employer, Plaintiff suffered a variety of

14            damages of significant magnitude.

15

16   "[T]he elements of an action for fraud and deceit based on a concealment are:(1) the defendant

17   must have concealed or suppressed a material fact, (2) the defendant must have been under a duty

18   to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or

19   suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware

20   of the fact and would not have acted as he did if he had known of the concealed or suppressed fact,

21   and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1   damage." (Boschma v. Home Loan Center,Inc. (2011) 198 Cal.App.4th 230, 248 [129 Cal.Rptr.3d

2   874].) "A duty to speak may arise in four ways: it may be directly imposed by statute or other

3   prescriptive law; it may be voluntarily assumed by contractual undertaking; it may arise as an

4   incident of a relationship between the defendant and the plaintiff; and it may arise as a result of

5   other conduct by the defendant that makes it wrongful for him to remain silent." (SCC

6   Acquisitions, Inc. v. Central Pacific Bank (2012) 207 Cal.App.4th 859, 860 [143 Cal.Rptr.3d

7   711].)

8

9   "In transactions which do not involve fiduciary or confidential relations, a cause of action for

10  non-disclosure of material facts may arise in at least three instances: (1) the defendant makes

11  representations but does not disclose facts which materially qualify the facts disclosed, or which

12  render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and

13  defendant knows they are not known to or reasonably discoverable by the plaintiff; (3) the

14  defendant actively conceals discovery from the plaintiff."(Warner Construction Corp., supra, 2

15  Cal.3d at p. 294, footnotes omitted.)  "[O]ther than the first instance, in which there must be a

16  fiduciary relationship between the parties, 'the other three circumstances in which non-disclosure

17  may be actionable: presuppose the existence of some other relationship between the plaintiff and

18  defendant in which a duty to disclose can arise. . . . "[W]here material facts are known to one party

19  and not to the other, failure to disclose them is not actionable fraud unless there is some relationship

20  between the parties which gives rise to a duty to disclose such known facts." [Citation.]' A

21  relationship between the parties is present if there is 'some sort of transaction between the parties.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  [Citations.] Thus, a duty to disclose may arise from the relationship between seller and buyer,

2  employer and prospective employee,doctor and patient, or parties entering into any kind of

3  contractual agreement.' "(Hoffman, supra, 228 Cal.App.4th at p. 1187, original italics, internal

4  citations omitted.)

5

6  "Even if a fiduciary relationship is not involved, a non-disclosure claim arises when the defendant

7  makes representations but fails to disclose additional facts which materially qualify the facts

8  disclosed, or which render the disclosure likely to mislead." (Roddenberry v. Roddenberry (1996)

9  44 Cal.App.4th 634,666 [51 Cal.Rptr.2d 907], internal citations omitted.)  "'[T]he rule has long

10  been settled in this state that although one may be under no duty to speak as to a matter, "if he

11  undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly

12  what he tells but also not to suppress or conceal any facts within his knowledge which materially

13  qualify those stated. If he speaks at all he must make a full and fair disclosure." ' " (Marketing

14  West, Inc. v. Sanyo Fisher (USA) Corp. (1992) 6Cal.App.4th 603, 613 [7 Cal.Rptr.2d 859].)

15

16  "[F]raudulent intent is an issue for the trier of fact to decide." (Beckwith v. Dahl(2012) 205

17  Cal.App.4th 1039, 1061 [141 Cal.Rptr.3d 142].)  "[T]here are two causation elements in a fraud

18  cause of action. First, the plaintiff's actual and justifiable reliance on the defendant's

19  misrepresentation must have caused him to take a detrimental course of action. Second, the

20  detrimental action taken by the plaintiff must have caused his alleged damage."(Beckwith, supra,

21  205 Cal.App.4th at p. 1062.  "[P]laintiffs argue that actual reliance cannot logically be an element

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  of a cause of action for deceit based on an omission because it is impossible to demonstrate reliance

2  on something that one was not told. In support of the argument, plaintiffs cite Affiliated Ute

3  Citizens v. United States, supra, 406 U.S.128 (Ute) . . . Interpreting Rule 10b-5, the high court held

4  that 'positive proof of reliance is not a prerequisite to recovery' in a case involving primarily a

5  failure to disclose . . . .' [¶] Contrary to plaintiffs' assertion, it is not logically impossible to prove

6  reliance on an omission. One need only prove that, had the omitted information been disclosed,

7  one would have been aware of it and behaved differently." (Mirkin, supra, 5 Cal.4th at p. 1093.)

8

9  "The fact that a false statement may be obviously false to those who are trained and experienced

10  does not change its character, nor take away its power to deceive others less experienced. There is

11  no duty resting upon a citizen to suspect the honesty of those with whom he [or she] transacts

12  business. Laws are made to protect the trusting as well as the suspicious. [T]he rule of caveat

13  emptor should not be relied upon to reward fraud and deception." (Boschma,supra, 198

14  Cal.App.4th at p. 249.)

15  **8.  Tortious Interference with economic and contractual relations**

16  Defendants tortiously interfered with economic and contractual relations. Tesla, MVP, Balance and

17  other defendants collectively conspired to tortiously interfere with economic, present and future

18  contractual relations to the detriment of Plaintiff, (University of California, Berkeley Graduate

19  (09'), Honors Student, Bay Area Housing Commissioner, Alum, NAACP National

20  Representative, and Local Youth and College President, Alum, California Senate, Capital Fellows,

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and Anderson

2  Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as well as others),and Attorney of

3  Record, Mr. George Jarvis (J.) Austin, esq. (TBA)

4

5  "The tort of negligent interference with prospective economic advantage is established where a

6  plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third

7  party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2)

8  the defendant knew of the existence of the relationship and was aware or should have been aware

9  that if it did not act with due care its actions would interfere with this relationship and cause

10  plaintiff to lose in whole or in part the probable future economic benefit or advantage of the

11  relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in

12  that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part

13  the economic benefits or advantage reasonably expected from the relationship." (North American

14  Chemical Co. v. Superior Court (1997) 59Cal.App.4th 764, 786 [69 Cal.Rptr.2d 466].)

15

16  The fundamental elements are the similar for prospective, contract, and economic or business

17  relations as well as existing contracts.  Thus, I'll combine into one claim for Tortious interference

18  with current contractual relations as well as prospective contract and business, (or economic)

19  relations as that combination most aptly fits the fact pattern. I had a current contract with all three

20  organizational defendants, but was on the verge of entering into new contractual and

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1 economic/business relations directly with Tesla outside of the intermediaries prior to Tortious

2 interference.

3

4 Here Plaintiff, in establishing the claims of tortious interference with a) existing, b) prospective,

5 contratual and economic relations shows:

6      a.  Were in an existing contract:

7           i.  Plaintiffs and Defendants were in an existing contract as evidence by work

8              relationships, payroll, and IDs/Badges.

9      b.  Was on the verge of new, and improved contract(s)

10           i.  Plaintiffs and Defendants were on the verge of new, and improved

11              contracts, particularly directly with Defendant Company, Tesla as I had

12              been commended via multiple persons in leadership, and responsibility and

13              told directly by a Vice President of the company I should already be in a

14              higher position (based on performance, experience, character, education,

15              skill, etc.).

16      c.  Was on the verge of new, and improved economic/business relationship

17           i.  Plaintiff and Defendants, particularly Tesla, were on the verge of economic

18              and business relationship that likely would have resulted in a future

19              economic benefit to plaintiff particularly in the area of stock ownership, and

20              other incentive based benefits. I had been commended via multiple persons

21              in leadership, and responsibility and told directly by a Vice President of the

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1         company I should already be in a higher position (based on performance,

2         experience, character, education, skill, etc.).  Multiple areas of incentive pay

3         (including individual stock ownership contracts) are part of the variety of

4         incentive based pay throughout the company.

5

6     d.  Defendant knew or should have known of these existing and prospective

7     contractual, business, and economic relationships;

8         i.  Defendants knew of contracts and business relationships both prospective,

9         and existing.  In fact, each helped to ensure that it was clear which

10         organization was responsible for which aspect of the contract and business

11         relation.  The explicit goal was to work for the company, as stated

12         repeatedly throughout the entire Tesla training, and development process (as

13         well as all of the other incentives like stock ownership contracts, or the

14         equivalents).

15     e.  Defendant knew or should have known that this relationship would be disrupted if

16     they failed to act with reasonable care;

17         i.  Defendants absolutely knew that the relationship should be handled with

18         care, and would be disrupted from their tortious behavior.  Further, that is

19         explicitly what they advised (handle with care) prior to, and after hiring, yet

20         failed to act with reasonable care (at best grossly negligent, or reckless, at

21         worse with malice and ill-will).  Due to Defendants reckless disregard in

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1    terms of Labor Code, and Tortitous violations (including Defamation Per Se

2    and subsequent negative employment actions), plaintiff business and

3    economic relationship were disrupted.

4       f.   Defendant failed to act with reasonable care;

5          i.   Defendants failed to act with reasonable care and were at best grossly

6    negligent or reckless, and worse ill 'will'ed by not asking or following up

7    on basic duties, requests, or inquiries on issues required by law.

8       g.   Defendants engaged in wrongful conduct through breach of

9    contract,misrepresentation, fraud, violation of statute Federal and State labor statutes

10   including whistleblower protections.

11         i.   Defendants not only failed to act with reasonable care, but affirmatively

12   misrepresented, violated statute, and fraud.

13      h.   That the relationship was disrupted;

14         i.   The relationship was severely disrupted by Defendant tortious, and reckless,

15   at best, behavior, which is a substantial factor, for the disruption, and with

16   fundamental questions, inquiries, and demands still unmet including

17   [undisputed wages].

18      i.   Plaintiff was harmed;

19         i.   Plaintiff was harmed by the tortious interference resulting in negative

20   employment action and ultimately, discharge. See *Judicial Council of*

21   *California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1   (10th ed. 2005) Contracts.  Plaintiff, George J. Austin, incurred multiple

2   damages due to breach of contract including lost wages, opportunities,

3   incentives, bonuses, automobiles,and other opportunities, and forms of

4   wages to be more fully and accurately determined through the discovery

5   process.

6

7   "The elements which a plaintiff must plead to state the cause of action for intentional interference

8   with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's

9   knowledge of this contract;(3) defendant's intentional acts designed to induce a breach or

10  disruption of the contractual relationship; (4) actual breach or disruption of the contractual

11  relationship; and (5) resulting damage." (Pacific Gas & Electric Co. v. BearStearns & Co. (1990)

12  50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587],internal citations omitted.)  This tort is

13  sometimes called intentional interference with performance of a contract.  See Little v. Amber

14  Hotel Co. (2011) 202 Cal.App.4th 280, 291 [136Cal.Rptr.3d 97.  [A] cause of action for

15  intentional interference with contract requires an underlying enforceable contract. Where there is

16  no existing, enforceable contract, only a claim for interference with prospective advantage may be

17  pleaded." PMC, Inc. v. Saban Entertainment, Inc. (1996) 45 Cal.App.4th 579,601 [52 Cal.Rptr.2d

18  877].  Because interference with an existing contract receives greater solicitude thandoes

19  interference with prospective economic advantage, it is not necessary that the defendant's conduct

20  be wrongful apart from the interference with the contract itself." Quelimane Co. v. Stewart Title

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  Guaranty Co. (1998) 19 Cal.4th26, 55 [77 Cal.Rptr.2d 709, 960 P.2d 513], internal citations

2  omitted.

3

4  "Specific intent is not a required element of the tort of interference with prospective economic

5  advantage. While plaintiff may satisfy the intent requirement by pleading specific intent, i.e.,that

6  the defendant desired to interfere with the plaintiff's prospective economic advantage, a plaintiff

7  may alternately plead that the defendant knew that the interference was certain or substantially

8  certain to occur as a result of its action." Korea Supply Co. v. Lockheed Martin Corp. (2003) 29

9  Cal.4th 1134,1154 [131 Cal.Rptr.2d 29, 63 P.3d 937], original italics.  We caution that although we

10  find the intent requirement to be the same for the torts of intentional interference with contract and

11  intentional interference with prospective economic advantage, these torts remain distinct." Korea

12  SupplyCo., supra, 29 Cal.4th at p. 1157  "Plaintiff need not allege an actual or inevitable breach of

13  contract in order to state a claim for disruption of contractual relations. We have recognized that

14  interference with the plaintiff's performance may give rise to a claim for interference with

15  contractual relations if the plaintiff's performance is made more costly or more burdensome. Other

16  cases have pointed out that while the tort of inducing breach of contract requires proof of a breach,

17  the cause of action for interference with contractual relations is distinct and requires only proof of

18  interference."  Pacific Gas & Electric Co., supra, 50 Cal.3d at p. 1129, internal citations omitted.

19  What's required is showing that because of the disruption, the plaintiff suffered economic harm.

20  Youst v. Longo (1987) 43 Cal.3d 64. See also California Civil Jury Instructions (CACI) 2202.

21  Intentional Interference With Prospective Economic Relations.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1

2 An essential element of intentional interference is an existing business relationship. It does not need

3 to be a contractual relationship. But prior business dealings are required. Roth v. Rhodes (1994) 25

4 Cal.App.4th 530. "[I]nterference with an at-will contract is actionable interference with the

5 contractual relationship, on the theory that a contract 'at the will of the parties,respectively, does not

6 make it one at the will of others.' " Pacific Gas &Electric Co., supra, 50 Cal.3d at p. 1127, internal

7 citations and quotations omitted.

8

9 To recover for intentional interference with prospective economic relations, the plaintiff must show

10 that if not for the defendant's wrongful interference, the plaintiff would have been reasonably

11 certain of obtaining an economic advantage. Youst v. Longo (1987) 43 Cal.3d 64.  The defendant

12 knew that disruption of the relationship was certain or substantially certain to occur as a result of

13 his or her actions.  Korea Supply Co., endnote 7; Ramona Manor Convalescent Hospital v. Care

14 Enterprises (1986) 177 Cal.App.3d 1120The usual measure of the lost economic advantage is "lost

15 profits." Lost profits do not need not be calculated with mathematical precision. But there must be

16 a reasonable basis for computing the loss.  Sargon Enterprises, Inc. v. University of Southern

17 California (2012) 55 Cal.4th 747; Meister v. Mensinger (2014) 230 Cal.App.4th 381. See also

18 CACI 3903N. Lost Profits (Economic Damage).  In some cases, the plaintiff may be able to

19 introduce evidence of profits made by similar businesses, or persons, under similar conditions.

20 Della Penna v. Toyota Motor Sales, U.S.A., Inc. (1995) 11 Cal.4th 376.  Competition is not fair

21 and reasonable if it is independently wrongful — that is, in some way other than just disrupting the

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  plaintiff's business.  Sargon Enterprises, Inc. v. University of Southern California (2012) 55

2  Cal.4th 747; Meister v. Mensinger (2014) 230 Cal.App.4th 381. See also CACI 3903N. Lost

3  Profits (Economic Damage).

4

5  An act is independently wrongful if it violates a statute or is otherwise prohibited by a determinable

6  legal standard.  San Jose Construction, Inc. v. S.B.C.C., Inc. (2007) 155 Cal.App.4th 1528.  Other

7  common wrongful actions for purposes of intentional interference claims include (but are not

8  limited to): Acts or threats of violence, Defamation, Extortion, Fraud / misrepresentation, Fraud is a

9  wrongful act that is prohibited by California law. California Civil Code 1709.  California law

10  allows a plaintiff to recover punitive damages when the defendant has acted with "malice, fraud or

11  oppression."California Civil Code 3294.  By definition, "malice" includes conduct which is

12  intended by a defendant to cause injury to the plaintiff.  California Civil Code 3294(c).  The

13  interference must have been wrongful "by some measure beyond the fact of the interference itself."

14  Della Penna v. Toyota Motor Sales, USA, Inc., 11 Cal.4th 376, 393 (1995).  Claim does not

15  require proof of a written contract, and can be asserted in situations where the statute of frauds

16  would otherwise require one.  Buckaloo v. Johnson, 14 Cal.3d 815, 824 (1975).

17

18  The element for Tortious Interference with Existing Contract are  a) A contract existed between the

19  plaintiff and a third party, b) The defendant knew about the contract, c) The defendant engaged in

20  conduct that prevented or hindered performance of the contract, d) The defendant intended this

21  result, or knew it was likely, e) This harmed the plaintiff; and f) The defendant's conduct

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1   substantially caused this harm.  See Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal.3d

2   1118 (1990).  Regarding element 3, the interfering conduct must be wrongful by some legal

3   measure other than the fact of the interference itself. (Della Penna v. Toyota MotorSales, U.S.A.,

4   Inc. (1995) 11 Cal.4th 376, 393 [45 Cal.Rptr.2d 436, 902 P.2d 740].)  This conduct must fall

5   outside the privilege of fair competition. (PMC, Inc. v.Saban Entertainment, Inc. (1996) 45

6   Cal.App.4th 579, 603 [52 Cal.Rptr.2d 877], disapproved on other grounds in Korea Supply Co. v.

7   Lockheed Martin Corp.(2003) 29 Cal.4th 1134, 1159 fn. 11 [131 Cal.Rptr.2d 29, 63 P.3d 937].)

8   Whether the conduct alleged qualifies as wrongful if proven or falls within the privilege of fair

9   competition is resolved by the court as a matter of law. If the court lets the case go to trial, the jury's

10  role is not to determine wrongfulness, but simply to findwhether or not the defendant engaged in

11  the conduct. If the conduct is tortious, the judge should instruct on the elements of the tort.

12

13  "The tort of intentional or negligent interference with prospective economic advantage imposes

14  liability for improper methods of disrupting or diverting the business relationship of another which

15  fall outside the boundaries of fair competition." (Settimo Associates v. Environ Systems, Inc.

16  (1993) 14Cal.App.4th 842, 845 [17 Cal.Rptr.2d 757], internal citation omitted.)  "The tort of

17  interference with prospective economic advantage protects the same interest in stable economic

18  relationships as does the tort of interference with contract, though interference with prospective

19  advantage does not require proof of a legally binding contract. The chief practical distinction

20  between interference with contract and interference with prospective economic advantage is that a

21  broader range of privilege to interfere is recognized when the relationship or economic advantage

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  interfered with is only prospective." (PacificGas & Electric Co. v. Bear Stearns & Co. (1990) 50

2  Cal.3d 1118, 1126 [270Cal.Rptr. 1, 791 P.2d 587], internal citations omitted.)  "The five elements

3  for intentional interference with prospective economic advantage are: (1) [a]n economic

4  relationship between the plaintiff and some third party, with the probability of future economic

5  benefit to the plaintiff; (2)the defendant's knowledge of the relationship; (3) intentional acts on the

6  part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship;

7  and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." (Youst v.

8  Longo (1987) 43 Cal.3d 64, 71, fn. 6 [233Cal.Rptr. 294, 729 P.2d 728].)

9

10  "The question is whether a plaintiff must plead and prove that the defendant engaged in wrongful

11  acts with the specific intent of interfering with the plaintiff's business expectancy. We conclude that

12  specific intent is not a required element of the tort of interference with prospective economic

13  advantage. While plaintiff may satisfy the intent requirement by pleading specific intent, i.e.,that

14  the defendant desired to interfere with the plaintiff's prospective economic advantage, a plaintiff

15  may alternately plead that the defendant knew that the interference was certain or substantially

16  certain to occur as a result of its action." (Korea Supply Co., supra, 29 Cal.4th at p. 1154, original

17  italics.)  "[A] plaintiff seeking to recover for an alleged interference with prospective contractual or

18  economic relations must plead and prove as part of its case-in-chief that the defendant not only

19  knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by

20  some legal measures other than the fact of interference itself." (Della Penna,supra, 11 Cal.4th at

21  p.393.)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1 "With respect to the third element, a plaintiff must show that the defendant engaged in an

2 independently wrongful act. It is not necessary to prove that the defendant acted with the specific

3 intent, or purpose, of disrupting the plaintiff's prospective economic advantage. Instead, 'it is

4 sufficient for the plaintiff to plead that the defendant "[knew] that the interference is certain or

5 substantially certain to occur as a result of his action." ' '[A]n act is independently wrongful if it is

6 unlawful, that is, if it is proscribed by some constitutional, statutory,regulatory, common law, or

7 other determinable legal standard.' '[A]n act must be wrongful by some legal measure, rather than

8 merely a product of animproper, but lawful, purpose or motive.' " (San Jose Construction, Inc.

9 v.S.B.C.C., Inc. (2007) 155 Cal.App.4th 1528, 1544–1545 [67 Cal.Rptr.3d 54],internal citations

10 omitted.)  "Della Penna did not specify what sort of conduct would qualify as 'wrongful apart from

11 the interference itself." Limandri v. Judkins (1997) 52 Cal.App.4th326, 340 [60 Cal.Rptr.2d 539].)

12

13 "Justice Mosk's concurring opinion in Della Penna advocates that proscribed conduct be limited to

14 means that are independently tortious or a restraint of trade. The Oregon Supreme Court suggests

15 that conduct may be wrongful if it violates 'a statute or other regulation, or a recognized rule of

16 common law, or perhaps an established standard of a trade or profession.' . . . Our SupremeCourt

17 may later have occasion to clarify the meaning of 'wrongful conduct' or wrongfulness,' or it may

18 be that a precise definition proves impossible." (ArntzContracting Co. v. St. Paul Fire and Marine

19 Insurance Co. (1996) 47Cal.App.4th 464, 477–478 [54 Cal.Rptr.2d 888], internal citations

20 omitted.)  "Commonly included among improper means are actions which are independently

21 actionable, violations of federal or state law or unethical business practices, e.g., violence,

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1   misrepresentation, unfounded litigation, defamation,trade libel or trade mark infringement." (PMC,

2   Inc., supra, 45 Cal.App.4th at p.603, internal citation omitted.)  "[A] plaintiff need not allege the

3   interference and a second act independent of the interference. Instead, a plaintiff must plead and

4   prove that the conduct alleged to constitute the interference was independently wrongful, i.e.,

5   unlawful for reasons other than that it interfered with a prospective economic

6   advantage.[Citations.]" (Crown Imports, LLC v. Superior Court (2014) 223 Cal.App.4th1395,

7   1404 [168 Cal.Rptr.3d 228].)

8

9   "The question has arisen as to whether, in order to be actionable as interference with prospective

10   economic advantage, the interfering act must be independently wrongful as to the plaintiff. It need

11   not be. There is 'no sound reason for requiring that a defendant's wrongful actions must be directed

12   towards the plaintiff seeking to recover for this tort. The interfering party is liable to the

13   interfered-with party [even] "when the independently tortious means the interfering party uses are

14   independently tortious only as to a third party." ' "(Crown Imports LLC,supra, 223 Cal.App.4th at

15   p. 1405, original italics.)  "[O]ur focus for determining the wrongfulness of those intentional acts

16   should be on the defendant's objective conduct, and evidence of motive or other subjective states

17   of mind is relevant only to illuminating the nature of that conduct." (Arntz Contracting Co., supra,

18   47 Cal.App.4th at p. 477.)  "[A]n essential element of the tort of intentional interference with

19   prospective business advantage is the existence of a business relationship with which the tortfeasor

20   interfered. Although this need not be a contractual relationship, an existing relationship is

21   required." (Roth v. Rhodes (1994) 25 Cal.App.4th 530, 546 [30 Cal.Rptr.2d 706], internal citations

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  omitted.)  "If a party has no liability in tort for refusing to perform an existing contract,no matter

2  what the reason, he or she certainly should not have to bear a burden in tort for refusing to enter

3  into a contract where he or she has no obligation to do so. If that same party cannot conspire with a

4  third party to breach or interfere with his or her own contract then certainly the result should be no

5  different where the 'conspiracy' is to disrupt a relationship which has not even risen to the dignity

6  of an existing contract and the party to that relationship was entirely free to 'disrupt' it on his or her

7  own without legal restraint or penalty."(Kasparian v. County of Los Angeles (1995) 38

8  Cal.App.4th 242, 266 [45Cal.Rptr.2d 90], original italics.)  "Although varying language has been

9  used to express this threshold requirement, the cases generally agree it must be reasonably probable

10  that the prospective economic advantage would have been realized but for defendant's

11  interference." (Youst, supra, 43 Cal.3d at p. 71, internal citations omitted.)  "[I]n the absence of

12  other evidence, timing alone may be sufficient to prove causation . . . . Thus, . . . the real issue is

13  whether, in the circumstances of the case, the proximity of the alleged cause and effect tends to

14  demonstrate some relevant connection. If it does, then the issue is one for the fact finder to decide."

15  (Overhill Farms, Inc. v. Lopez (2010) 190 Cal.App.4th 1248, 1267[119 Cal.Rptr.3d 127], original

16  italics.)


17  **9.  Wrongful Discharge/Termination**

18  Defendants wrongfully discharged Plaintiff.  Tesla, MVP, Balance and other defendants

19  collectively conspired to illegally, tortiously, and in violation of public policy to wrongfully

20  discharge/terminate Plaintiff, (University of California, Berkeley Graduate (09'), Honors Student,

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  Bay Area Housing Commissioner, Alum, NAACP National Representative, and Local Youth and

2  College President, Alum, California Senate, Capital Fellows, Senate Fellows Top 10 out of 800+

3  Nationally Ranked, Alum (13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08',

4  13'), T-14 Law Student,  as well as others),and Attorney of Record, Mr. George Jarvis (J.) Austin,

5  esq. (TBA)

6

7  "The elements [to prove] a claim for wrongful discharge in violation of public policy are (1) an

8  employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the

9  termination was substantially motivated by a violation of public policy, and (4) the discharge

10  caused the plaintiff harm." (Yau v. Allen (2014) 229 Cal.App.4th 144, 154 [176 Cal.Rptr.3d 824].)

11

12       Here Plaintiff:

13            a.   Was employed by Defendants;

14                 i.    Plaintiff and Defendants entered into an employment relationship.  See

15                       *Judicial Council of California Civil Jury Instructions* See also 1 Witkin,

16                       Summary of Cal. Law (10th ed. 2005) Contracts.  The formation of a

17                       contract between the Plaintiff, George J. Austin, and the Defendants Tesla,

18                       MVP/Balance was formed prior to beginning work in the summer and fully

19                       consummated once work began. This is evident in badges, work attire

20                       provided by the company, paystubs made out to me, in my name, and with

21                       my social security number, time sheets, work ID and other items.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1      b.  Was discharged by Defendants ;

2          i.  Although Plaintiff substantially performed his job, and functions,

3      Defendants didn't hold their end of the bargain, and illegally discharged the

4      plaintiff without good cause, in bad faith, and against policy, and the law

5      (with a lie); See *Judicial Council of California Civil Jury Instructions* See

6      also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts

7      Defendant(s), collectively did not perform, or hold up, their end of the

8      contract.  Unfortunately they a) violated their duty to ensure receipt of all

9      [undisputed] wages assigned to me by their company, also b) failed to

10      properly, and honestly, remedy missing/stolen wages when notified (i.e. stop

11      order, and reprint), c) failed to conduct proper due diligence before, and

12      acted at best reckless (at worse maliciously) taking negative employment

13      and retaliatory action, d) violating public policy, and ethical baselines by

14      acting recklessly, and practicing defamation per se.  Defendants Failed to

15      perform.

16      c.  Discharge was in violation of public policy

17          i.  Plaintiff exercised whistleblower duties for potential violations of FLSA,

18      California Labor Code, and Sarbanes Oxley, and that legally protected

19      exercise of rights was a substantial motivating reason for plaintiff's

20      discharge.  Thus discharge was in violation of public policy.

21      d.  Discharge caused harm.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1            i.    Plaintiff was harmed by the breach and ultimate, discharge, or demotion.

2              See *Judicial Council of California Civil Jury Instructions* See also 1 Witkin,

3              Summary of Cal. Law (10th ed. 2005) Contracts.  Plaintiff, George J.

4              Austin, incurred multiple damages due to breach of contract including lost

5              wages, opportunities, incentives, bonuses, automobiles,and other

6              opportunities, and forms of wages to be more fully and accurately

7              determined through the discovery process.

8

9 "An employer may not discharge an at will employee for a reason that violates fundamental public

10 policy. This exception is enforced through tort law by permitting the discharged employee to assert

11 against the employer a cause of action for wrongful discharge in violation of fundamental public

12 policy." [Stevenson v. Sup.Ct. (Huntington Mem. Hosp.) (1997) 16 C4th 880, 897, 66 CR2d 888,

13 898—age discrimination may support claim for wrongful discharge in violation of public policy;

14 see Silo v. CHW Med. Found. (2002) 27 C4th 1097, 1104-1105, 119 CR2d 698,

15 703-704—religious discrimination may support claim for wrongful discharge in violation of public

16 policy; Franklin v. Monadnock Co. (2007) 151 CA4th 252, 260, 59 CR3d 692, 697 (wrongful

17 termination in violation of public policy based on alleged retaliation for reporting unsafe working

18 conditions)] - A.Employment Presumed At Will, Cal. Prac. Guide Employment Litigation Ch. 4-A

19

20 There can be no right to terminate for an unlawful reason or a purpose that contravenes

21 fundamental public policy. Any other conclusion would sanction lawlessness, which courts by

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1   their very nature are bound to oppose.' " (Casella v. SouthWest Dealer Services, Inc. (2007)

2   157Cal.App.4th 1127, 1138–1139 [69 Cal.Rptr.3d 445], internal citations omitted.)• "[W]hen an

3   employer's discharge of an employee violates fundamental principles of public policy, the

4   discharged employee may maintain a tort action and recover damages traditionally available in

5   such actions." (Tameny v. AtlanticRichfield Co. (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839,

6   610 P.2d 1330].)

7                       **10.  Whistleblower Claim**

8

9   Defendants violated well established Whistleblower protections. Tesla, MVP, Balance and other

10   defendants collectively, tortiously, and illegally, violated whistleblower protections under SOX,

11   FLSA, and California Labor Codes.  Defendants did so when they not only did not address

12   concerns that were proven to be true, but alternatively and illegally retaliated, and took negative

13   employment actions against Plaintiff, and  Attorney of Record, (University of California, Berkeley

14   Graduate ('09'), Honors Student, Bay Area Housing Commissioner, Alum, NAACP National

15   Representative, and Local Youth and College President, Alum, California Senate, Capital Fellows,

16   Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and Anderson

17   Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as well as others), Mr. George Jarvis

18   (J.) Austin, esq. (TBA).

19

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  To establish a prima facie whistle blowing wrongful termination case, an employee must establish

2  that: 1) he was a member of a protected class or engaged in protected activities (i.e.

3  whistleblowing) 2) he was performing competently in the position he held: 3) he suffered an

4  adverse employment action, such as demotion, or termination; and 4) "some other circumstance

5  that suggests retaliatory motive." See Monavian v. Department of Justice (29108) 28 Cal.App.5th

6  1127, 2241. See  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973);  Plaintiff engaged in

7  protected activities, whistle-blowing, was performing competently in the position, suffered an

8  adverse employment action, wrongful termination in retaliation to that protected activity.

9

10  Under California Labor Code Section 1102.5, if an employer retaliates against a whistleblower, the

11  employer may be required to reinstate the employee's employment and work benefits, pay lost

12  wages, and take other steps necessary to comply with the law.  Under the FLSA the Supreme

13  Court recently ruled that oral statements made to an employer regarding wage and hour violations

14  are sufficient to trigger the anti-retaliation provision of the Fair Labor Standards Act (FLSA).

15  Kasten v. Saint-Gobain Performance Plastics Corp., No. 09-834 (March 22, 2011).  Thus,

16  employees are not required to file a formal written complaint to constitute "filing" a complaint.

17  In Kasten, the plaintiff (Kasten) received three warnings within a 12-month period for failing to

18  properly clock in.  On the third warning, his supervisors told him that another violation would lead

19  to his termination.  Kasten claimed his inability to properly clock in and out was due to the location

20  of the company's time clocks—a location which, Kasten claimed, violated the FLSA.  Kasten,

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1 however, never lodged a written complaint about the time clocks' location with his employer or the

2 Department of Labor; he only made oral comments to his supervisors.

3

4 Under Sarbanes-Oxley a whistleblower must demonstrate that their protected activity was a

5 contributing factor in the decision to take an adverse action, i.e., that it was "more likely than not"

6 played "any role whatsoever" in the allegedly retaliatory action.[i]Palmer v. Canadian National

7 Railway, ARB No. 16-035 at 53.  "Any role whatsoever" is no exaggeration—the protected

8 activity need not amount to a "significant, motivating, substantial or predominant" factor in the

9 adverse action.[ii] Allen v. Stewart Enters., Inc., ARB Case No. 06-081, slip op. at 17 (U.S. Dep't

10 of Labor July 27, 2006).  A whistleblower may meet this burden by proffering circumstantial

11 evidence, such as: Direct evidence of retaliatory motive, e., "statements or acts that point toward a

12 discriminatory motive for the adverse employment action."[iii] William Dorsey, An Overview of

13 Whistleblower Protection Claims at the United States Department of Labor, 26 J. Nat'l Ass'n

14 Admin. L. Judiciary 43, 66 (Spring 2006) (citing Griffith v. City of Des Moines, 387 F.3d 733 (8th

15 Cir. 2004)).

16

17 A shifting or contradictory explanations for the adverse employment action [qualifies] .[iv]

18 Clemmons v. Ameristar Airways, Inc., ARB No. 08-067, at 9, ALJ No. 2004-AIR-11 (ARB May

19 26, 2010) (footnotes omitted).  Evidence of after-the-fact explanations for the adverse employment

20 action. "[T]he credibility of an employer's after-the-fact reasons for firing an employee is

21 diminished if these reasons were not given at the time of the initial discharge decision."[v]  Id. at

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1   9-10 (footnotes omitted).  Animus or anger towards the employee for engaging in a protected

2   activity. Significant, unexplained or systematic deviations from established policies or practices,

3   such as failing to apply a progressive discipline policy to the whistleblower.[vi] Bobreski v. J.

4   Givoo Consultants, Inc., ARB No. 13-001, ALJ No. 2008-ERA-3 (ARB Aug. 29, 2014).

5   Singling out the whistleblower for extraordinary or unusually harsh disciplinary action.[vii] See

6   Overall v. TVA, ARB Nos. 98-111 and 128, slip op. at 16-17 (Apr. 30, 2001), aff'd TVA v. DOL,

7   59 F. App'x 732 (6th Cir. 2003).

8

9   Disparate treatment or proof that employees who are situated similarly to the plaintiff, but who did

10  not engage in protected conduct, received better treatment.  Close temporal proximity between the

11  employee's protected conduct and the decision to take an actionable adverse employment action.

12  Evidence that the employer conducted a biased or inadequate investigation of the whistleblower's

13  disclosures, including evidence that the person accused of misconduct controlled or heavily

14  influenced the investigation.  The cost of taking corrective action necessary to address the

15  whistleblower's disclosures and the decision-maker's incentive to suppress or conceal the

16  whistleblower's concerns.  Corporate culture and evidence of a pattern or practice of retaliating

17  against whistleblowers.  Fundamentally the same elements for Whistleblowing claims under each

18  CA Labor Code, FLSA, and Sarbanes-Oxley apply:

19

20  Here Plaintiff:

21      1.   Engaged in protected activity (they made a protected disclosure under Section 806);

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1     ☐  I inquired, at multiple levels, and then formally, and informally complained of

2         violations of labor, and other laws, to multiple levels of all defendant organizations

3         including directly to Elon Musk, via email.  I also followed up with respective

4         government agencies to register the complaint, and get follow up.  Promises of

5         follow up to correct fundamental issues were not kept by Defendants, or not

6         answered at all, and instead deflections, lies, and negative, and retaliatory,

7         employment actions were dispensed. Inquiry, and Complaint (Formal and Informal)

8         of potential legal violations (including labor laws) fits the requirement of protected

9         activity.

10

11  2.  Employer knew that Plaintiff engaged in the protected activity;

12    ☐  I made Employer(s), also organizational defendants, aware via multiple channels,

13         including a written email record of the issues, and complaints.  I also alerted of

14         potential legal ramifications if not corrected

15

16  3.  Suffered an unfavorable personnel action;

17    ☐  After Plaintiff made inquiry, and complaints, and received written confirmation of

18         positive work performance, and record (attendance and otherwise), by supervisor,

19         and confirmed via text by previous supervisor, Plaintiff received unjustified, and

20         unbiased, negative, unfavorable, and retaliatory employment action(s).  No proper

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1    due diligence was held, and the allegation, given its falsity, and strong implication,

2    itself, is a violation of law.

3

4    4.   Protected activity was a contributing factor in the unfavorable action.

5    ☐   Prior to the false statement by Sandy Malloy Plaintiff had never even been

6    questioned, about anything relating to the subject matter (of recording), let alone

7    any warning, or discipline.  Yet, once I made the initial inquiry, and followed up

8    after non-resolution by respective companies, and defendants, tone and posture

9    began to change.  As soon as I met with the HR Officer to complain and inquire the

10   next communication following was a baseless negative, or unfavorable,

11   employment action.

12

13   The Court finds that exhaustion under § 98.7 is not required before bringing a civil action under §§

14   98.6 and 1102.5. In so holding, the Court finds Creighton persuasive and adopts its reasoning.

15   Particularly, the Court agrees that the Private Attorneys General Act ("PAG Act" or "PAGA"),

16   which covers the statutory claims at issue here, see Cal. Labor Code § 2699.5, indicates a

17   legislative emphasis on private enforcement of the Labor Code that would be undercut by a

18   mandatory exhaustion requirement before the Labor Commissioner. The PAG Act " 'empowers or

19   deputizes an aggrieved employee to sue for civil penalties ... as an alternative to enforcement by the

20   State.' " McKenzie v. Fed. Exp. Corp., 765 F.Supp.2d 1222, 1231 (C.D.Cal.2011) (quoting

21   Villacres v. ABM Indus., Inc., 189 Cal.App.4th 562, 592, 117 Cal.Rptr.3d 398 (2010) (internal

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  quotation, citation, and alterations omitted)). The Act allows private citizens to sue on behalf of

2  themselves "and other current or former employees" for violations of the Labor Code, and permits

3  said citizens to recover civil penalties otherwise recoverable only by the government. See §

4  2699(a). - Turner v. City and County of San Francisco, 892 F.Supp.2d 1188, 1202

5  (N.D.Cal.,2012)

6

7  Analogous to the whistleblowing techniques, and methodology by Darren Hager, a deputy with

8  the Los Angeles Sheriff's Department, who received a jury award of $4.5 million upon their

9  finding that Hager was wrongfully terminated in retaliation for looking too closely into the

10  disappearance of a fellow officer, Plaintiff by reporting up the chain of command, and investigating

11  suffered retaliation and negative action.

12

13  Under California law, Hager's reports to his employer and the DEA are protected by section

14  1102.5. (Colores v. Board of Trustees, supra, 105 Cal.App.4th at pp. 1312-1313, 130 Cal.Rptr.2d

15  347 [§ 1102.5 concerns employees who report to public agencies; public employee qualifies as

16  whistleblower when reporting to employer].) The federal court never made a determination

17  whether Hager was engaged in protected whistleblowing activity under section 1102.5 when he

18  reported to his employers, the issue raised by his state law claim. Nor did the federal court

19  determine whether Hager's discharge from employment was motivated in whole or in part by his

20  reports to the Sheriff's Department or the DEA. - Hager v. County of Los Angeles, 2010 WL

21  1097046 (Cal.App. 2 Dist.), 9 (Cal.App. 2 Dist.,2010)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1

2  Also, similar to the context and response pattern of the $5 Million Dollar whistleblower award

3  against SF City Attorney's Office whereas Joanne Hoeper, Deputy City Attorney, uncovered a

4  kickback scheme and was sidelined, then fired.  When the issues of pay discrepancy were inquired

5  about Sandy Malloy stated in writing "you're barking up the wrong tree."  Similar to above

6  *Hoeper* case "Her attorneys claim … When Hoeper informed Herrera of her findings, a Claims

7  Unit employee allegedly told her, "You'll be sorry," according to Hoeper's attorneys."

8

9  Whistleblower Claims (Under CA Labor Code, FLSA, Sarbanes-Oxley (applicable to publicly

10 traded companies, and to private as well) have similar elements.  Examples of protected activities

11 include Filing a complaint with the Labor Commissioner or making a written or oral complaint that

12 the employee is owed wages. [Lab.C. § 98.6];  Filing a workers' compensation claim. [Lab.C. §

13 132a];  Complaining re workplace safety. [Lab.C. § 6310; see Lujan v. Minagar (2004) 124 CA4th

14 1040, 1046, 21 CR3d 861, 866—statute also prohibits discharge of employees whom employer

15 fears will complain of safety violations in the future; see also Freund v. Nycomed Amersham (9th

16 Cir. 2003) 347 F3d 752, 758 (applying Calif. law)]

17

18                                **Conclusion**

19 The claims of 1) Defamation Per Se (In the Workplace), 2) Labor Code Non-Payment 3) FLSA

20 Non-Payment 4) Conversion 5) Breach of Employment Contract 6) Fraudulent Misrepresentation

21 7) Fraudulent Concealment 8) Tortious Interference with economic and contractual relations 9)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1  Wrongful Discharge, and 10) Whistleblower Claim have been stated plainly with supporting facts,

2  and precedent. Context, similar fact patterns of favorable holdings, and precedent, have been

3  interwoven to meet the heightened pleading standards after the Court's ruling in Iqbal and

4  Twombly.  Attorney of Record, Pro Se Litigant, and Plaintiff, Mr. George Jarvis (J.) Austin, esq.

5  (TBA) has amended the complaint to meet, and ideally surpass, the Legal Standard for Review

6  Under 28 U.S.C. § 1915, and articulated in Marks v. Solcum, 98 F.3d 494, 495 (9th Cir. 1996) so

7  that while examining stated claims, it is clear that they are not frivolous or malicious, but instead

8  substantive and meritorious (, from which relief may be granted from defendants who are not

9  immune).  Pursuant with Federal Rules of Civil Procedure Rule 15 for Amended Pleadings, 28

10  U.S.C. § 1915(e)(2)(B), and Rule 8(a)(2) of the Federal Rules of Civil Procedure Attorney of

11  Record, Pro Se Litigant, and Plaintiff, Mr. George Jarvis (J.) Austin, esq. (TBA) files an amended

12  complaint.

13

[Written Transcription from Sandy Malloy]

"Hi George, this is Sandy from Balance Staffing, um since I know you are not going to pick up the phone, I'm going to leave this information letting you know, that I'm aware that you had a meeting with Alexandra, and the Tesla HR this week, as a result of that we are ending your assignment, due to a violation of California Penal Code, in regards to recording a supervisor without his consent, your final paycheck can be picked up today after 5pm, if you don't pick it up today it will be mailed by FedEx, um yeah so if you want to discuss this just give me a call, you have my number" - Sandy Malloy, Balance Staffing

.ııl AT&T 5GE                8:08 AM                99 65%

AA          Q 🔒 capital fellows tops          ↻



Google

capital fellows tops                    ✕    🔍

**ALL**    SHOPPING    IMAGES    NEWS    VIDEOS

▶ YouTube › watch

## Capital Fellows Is Tops Again - YouTube

2:26

UPLOADED BY:
Sacramento State

POSTED:
Nov 29, 2012

https://www.csus.edu › center › capi...

## Capital Fellows Programs | Sacramento State

Capital Fellows are placed at some of the highest levels of California state government. Learn about the different fellowship opportunities.

Missing: ~~tops~~ | Must include: tops

<    >         ⬆         ▭         ⧉







# CALIFORNIA SENATE

## EXPIRATION

### 09/30/2013

**Eye Color**

Brown

**Height**

6-0



Austin, George

Governance & Fin









AT&T LTE 11:14 AM 29%

🔒 mail.google.com

| Google+ | **Gmail** | Calendar | Web | more |

'Mega...



California State Senator, Fifth District

Lois Wolk News

State Capitol, Sacramento, CA 95814 ▪ tel 916.651.4005 ▪ fax 916.323.2304 ▪ www.sen.ca.gov/wolk

**FOR IMMEDIATE RELEASE**

**CONTACTS:**        Melissa Jones, (916) 651-4005

July 18, 2012

                Melissa.Jones@sen.ca.gov

## Stockton residents accepted to prestigious Capitol fellowship

*George Austin and Faith Lane selected for 2012-2013 Senate Fellowship Program*

SACRAMENTO– Stockton residents George Austin and Faith Lane have been accepted to the prestigious Senate Fellows Program at the State Capitol, where

   


Case 2:20-cp-008000-EMC Document 531 Filed 06/26/20 Page 107 of 133
AT&T LTE 11:15 AM 29%

🔒 mail.google.com

Google+  **Gmail**  Calendar  Web  more

'Mega...

## Stockton residents accepted to prestigious Capitol fellowship

*George Austin and Faith Lane selected for 2012-2013 Senate Fellowship Program*

SACRAMENTO– Stockton residents George Austin and Faith Lane have been accepted to the prestigious Senate Fellows Program at the State Capitol, where they will work for 11 months as a full-time staffer in a Senate office.

"I am grateful to be selected and very excited for the opportunity to grow, learn more about our system of government, and most importantly, to serve," said Austin, a graduate of the University of California at Berkeley.

"I feel honored to be given this opportunity," said Lane, a graduate of the University of California at Santa Barbara. "Following my term as a Senate Fellow, I hope use my knowledge acquired through the program to better my home in the Central Valley."








## 2012-13
# CALIFORNIA SENATE FELLOWS



**About you**
**Name:** George Austin

**Hometown:** Stockton

**Hobbies/Interests:** Basketball, Golf, Boxing, Cooking, Kayaking, Travel

**Favorite book(s)/movie(s)/TV show(s)/music:** Finding Forester, Goodwill Hunting, Godfather Trilogy, Coming to America, The Golden Child, Batman Begins, Dark Knight, Dark Knight Rises, Hoop Dreams, Above the Rim, Wedding Crashers, Lord of the Rings 1 & 2, Matrix 1 & 2, Ray, Hangover

The West Wing, Doug, Bloomberg Enterprise, Charlie Rose, The Mentor, Bloomberg Game Changers, Cosby Show, The Wire, Martin

Gospel, R & B, Hip-Hop, Country

The Alchemist, Purpose Driven Life, Autobiography of Malcolm X, Developing the Leader Within – John C. Maxwell, How to Win Friends and Influence People Dale Carnegie, Think and Grow Rich Napoleon Hill, 7 Habits of Highly Effective People

**Birthday:** April 12

**3 strange/unique but interesting facts about you:**
1. Up until I was sixteen my shoes size was always 1 or 2 sizes larger than my age (i.e at twelve years old I wore a size fourteen)
2. In one day I met Oprah Winfrey, Prince, Usher, Anthony Hamilton and Barack Obama
3. I've lived in four states

**Education**
**College/University:** University of California, Berkeley

**Degree:** BA

**Major:** Sociology

**Advanced degrees:** Georgetown Law School- JD (deferred, begin 2013)

## 2012-13
# CALIFORNIA SENATE FELLOWS

### Goals & Work/Relevant Experience
**Activities or Work Experience after College:**
- Riordan MBA Fellows Anderson School of Business (UCLA)
- Chartered Financial Analyst Level 1 Candidate December 2012
- Chartered Financial Analyst Society Scholarship Recipient
- HAAS School of Business, Arts, Science & Engineering Program (Berkeley)

**Occupational Goals/Interests:** Business/ Law/Entrepreneurship/Finance/Education

**Policy Interests:** Economy, Finance, Appropriations, Energy, Transportation, Economic Development, Trade (International and Domestic), Tax, Banking, Insurance









## RULES COMMITTEE

RESOLUTION
By
**President pro Tempore of the Senate Darrell Steinberg**
RELATIVE TO COMMENDING

# *George Austin*

**WHEREAS**, George Austin was selected from a highly competitive group of outstanding college and university graduates from California and throughout the nation, and was appointed a 2012-2013 California Senate Fellow; and

**WHEREAS**, George Austin, from Stockton, graduated from the University of California, Berkeley, with a Bachelor of Arts degree in Sociology; and

**WHEREAS**, Through his service in the Senate Committee on Governance and Finance, George Austin had the unique opportunity of acquiring a deeper understanding of the legislative process and public policy formation, while also providing assistance to Senate Members, legislative committees, and their constituencies; and

**WHEREAS**, The California Senate Fellows program, established in 1973 and sponsored jointly by the Senate and California State University, Sacramento, enables 18 individuals to become full-time Senate staff members in the State Capitol for 11 months and receive six units of university graduate credit; and

**WHEREAS**, As a result of his outstanding service as a Senate Fellow, George Austin is better equipped to provide valuable leadership and contributions to educational institutions; local, regional, state, and federal governments; and professional, business, and community endeavors in the State of California and the nation; now, therefore, be it

**RESOLVED BY THE SENATE RULES COMMITTEE**, That George Austin, a 2013-2013 California Senate Fellow, be commended for his exemplary service on behalf of the Members of the Senate, and extended best wishes for every success in his future endeavors.

Senate Rules Committee Resolution No. 24 adopted this 12th day of August, 2013



CHAIR
Senatoris Est Civitatis

Libertatem Tueri •



No. 108

CALIFORNIA LEGISLATURE
AT SACRAMENTO
2013–14 REGULAR SESSION

# Senate
# Daily File

SENATOR ELLEN M. CORBETT
Majority Floor Leader

SENATOR DARRELL STEINBERG
President pro Tempore

SENATOR BOB HUFF
Minority Floor Leader

Compiled Under the Direction of

GREGORY SCHMIDT
Secretary of the Senate

By

MARLISSA HERNANDEZ
Daily File Clerk

and

JAMIE TAYLOR
Assistant Daily File Clerk

SENATE CONVENES AT 12 NOON

**WEDNESDAY, AUGUST 14, 2013**
(FLOOR SESSION)

ONE HUNDRED EIGHTH DAY IN SESSION

(Please report any errors or omissions to Daily File Clerk: Phone 651–4171)

# STANDING COMMITTEES OF THE SENATE

**Agriculture**—(5)—Galgiani (Chair), Cannella (Vice Chair), Berryhill, Lieu and Wolk. Consultant: Anne M. Megaro. Assistant: Jone McCarthy. Phone: (916)651–1508. 1020 N Street, Room 583.

**Appropriations**—(7)—de León (Chair), Walters (Vice Chair), Gaines, Hill, Lara, Padilla and Steinberg. Staff Director: Mark McKenzie Consultants: Robert Ingenito, Marie Liu, Brendan McCarthy, Jolie Onodera, Maureen Ortiz and Jacqueline Wong–Hernandez. Assistants: Jennifer Douglas and Larissa Pitts. Phone: (916)651–4101. Room 2206.

**Banking and Financial Institutions**—(9)—Correa (Chair), Berryhill (Vice Chair), Beall, Calderon, Hill, Hueso, Roth, Torres and Walters. Staff Director: Eileen Newhall. Assistant: Rae Flores. Phone: (916)651–4102. Room 405.

**Budget and Fiscal Review**—(16)—Leno (Chair), Emmerson (Vice Chair), Anderson, Beall, Berryhill, Block, DeSaulnier, Hancock, Jackson, Monning, Nielsen, Price, Roth, Torres, Wright and Wyland. Staff Director: Keely Bosler. Deputy Staff Director: Mark Ibele. Consultants: Michelle Buass, Kim Connor, Catherine Freeman, Jennifer Troia, Joe Stephenshaw and Brady Van Engelen. Assistants: Glenda Higgins and Mary Teabo. Phone: (916)651–4103. Room 5019.

**Business, Professions and Economic Development**—(10)—Lieu (Chair), Emmerson (Vice Chair), Block, Corbett, Galgiani, Hernandez, Hill, Padilla, Wyland and Yee. Chief Consultant: Bill Gage. Consultants: G.V. Ayers, Le Ondra Clark and Sarah Mason. Assistant: Kathleen Sullivan. Phone: (916)651–4104. Room 2053.

**Education**—(9)—Liu (Chair), Wyland (Vice Chair), Block, Correa, Hancock, Hueso, Huff, Monning and Torres. Staff Director: Daniel Alvarez. Principal Consultants: Kathleen Chavira, Lenin Del Castillo and Lynn Lorber. Assistants: Barbara Montero and Vanessa Cisneros. Phone: (916)651–4105. Room 2083.

**Elections and Constitutional Amendments**—(5)—Torres (Chair), Anderson (Vice Chair), Hancock, Padilla and Yee. Chief Consultant: Darren Chesin. Consultant: Frances Tibon–Estoista. Assistant: Maria Lerma. Phone: (916)651–4106. Room 2203.

**Energy, Utilities and Communications**—(11)—Padilla (Chair), Fuller (Vice Chair), Cannella, Corbett, de León, DeSaulnier, Hill, Knight, Pavley, Wolk and Wright. Chief Consultant: Kellie Smith. Principal Consultant: Jacqueline Kinney. Assistant: Melanie Cain. Phone: (916)651–4107. Room 5046.

**Environmental Quality**—(9)—Hill (Chair), Gaines (Vice Chair), Calderon, Corbett, Fuller, Hancock, Jackson, Leno and Pavley. Chief Consultant: Rachel Machi Wagoner. Consultants: Rebecca Newhouse and Joanne Roy. Assistant: Sue Kumpulainien. Phone: (916)651–4108. Room 2205.

**Governance and Finance**—(7)—Wolk (Chair), Knight (Vice Chair), Beall, DeSaulnier, Emmerson, Hernandez and Liu. Staff Director: Gayle Miller. Consultants: George Austin, Toby Ewing, Colin Grinnell, Samantha Lui and Brian Weinberger. Assistants: Marisa Lanchester and Krimilda McKenzie. Phone: (916) 651–4119. Room 408.

5046.

**Environmental Quality**—(9)—Hill (Chair), Gaines (Vice Chair), Calderon, Corbett, Fuller, Hancock, Jackson, Leno and Pavley. Chief Consultant: Rachel Machi Wagoner. Consultants: Rebecca Newhouse and Joanne Roy. Assistant: Sue Kumpulainien. Phone: (916)651–4108. Room 2205.

**Governance and Finance**—(7)—Wolk (Chair), Knight (Vice Chair), Beall, DeSaulnier, Emmerson, Hernandez and Liu. Staff Director: Gayle Miller. Consultants: George Austin, Toby Ewing, Colin Grinnell, Samantha Lui and Brian Weinberger. Assistants: Marisa Lanchester and Krimilda McKenzie. Phone: (916) 651–4119. Room 408.

**Governmental Organization**—(11)—Wright (Chair), Vacant (Vice Chair), Berryhill, Calderon, Cannella, Correa, de León, Galgiani, Hernandez, Lieu and Padilla. Staff Director: Arthur Terzakis. Consultant: Paul Donahue. Assistant: Brenda K. Heiser. Phone: (916)651–1530. 1020 N Street, Room 584.

**Health**—(9)—Hernandez (Chair), Anderson (Vice Chair), Beall, de León, DeSaulnier, Monning, Nielsen, Pavley and Wolk. Staff Director: Melanie Moreno. Consultants: Scott Bain, Vincent D. Marchand, Tanya Robinson–Taylor and Katie Trueworthy. Assistants: Dina Lucero and Alex Norring. Phone (916)651–4111. Room 2191.

**Human Services**—(6)—Yee (Chair), Berryhill (Vice Chair), Emmerson, Evans, Liu and Wright. Chief Consultant: Mareva Brown. Consultant: Sara Rogers. Assistant: Mark A. Teemer Jr. Phone: (916)651–1524. 1020 N Street, Room 521.





▶ Today's news & events

**Berkeleyan**

▶ Berkeleyan home
▶ Berkeleyan archive
▶ Subscribe to news
▶ For the news media
▶ Calendar of events

**Top stories:**



Home away from home for many at Berkeley, Stiles Hall's living room comfortably holds a crowd. Here, from left to right, Jennifer Church, office manager; George Austin, transfer-students-program director; Dave Stark, Stiles director (holding a photo of



🔒 mail.google.com 

'Harva...  

**From:** jdadmiss@law.harvard.edu
<jdadmiss@law.harvard.edu>
**To:** "GAUSTIN07@YAHOO.COM"
<GAUSTIN07@YAHOO.COM>
**Sent:** Wednesday, April 25, 2012, 7:08:30 AM PDT
**Subject:** Harvard Law School - Wait list offer

Dear Mr. Austin:


Thank you for applying to Harvard Law School. After
reviewing your application, the Admissions Committee is
offering you a spot on the wait list for the class of 2015.


I have attached answers to the most frequently asked
questions about our wait list. Simply put, Harvard Law
School maintains a wait list of applicants who are
interested in enrolling at HLS this fall. Should space
become available in the entering class, we will review the
wait list and make offers of admission.


If you are able and interested in accepting an offer of
admission from Harvard Law School over the summer









🔒 mail.google.com 

‹ 'Harva…  

If you are able and interested in accepting an offer of admission from Harvard Law School over the summer, you should remain on the wait list. If at any time you decide that you do not wish to remain on the wait list, please contact us immediately so that we can remove you from the list and avoid delaying the admission of another candidate.

If you'd like your application to remain under consideration, **please reply to this email indicating your desire to remain on the waitlist**. In your response, please specify if there is a date after which you would not be able to consider an offer of admission (note: we keep an active waitlist up through the start of classes in September). Once we receive this information, your status will change from "waitlist offered" to "active on the waitlist."

If you have any relevant, new information, which is not part of your application to date, we invite you to send this information to the Admissions Office. For example, if you have been enrolled in an academic program, you may

   

'Harva…            

If you have any relevant, new information, which is not part of your application to date, we invite you to send this information to the Admissions Office. For example, if you have been enrolled in an academic program, you may wish to provide a final transcript to LSAC.

If you wish to send additional information to the admissions office, please do so via postal mail. Our mailing address is at the bottom of this email. **We will not open or accept email attachments.**

Thank you again for your interest in Harvard Law School.

Sincerely,

Karen Buttenbaum

Director of Admissions

J.D. Admissions Office
Austin Hall, Room 203
1563 Massachusetts Avenue

🔒 mail.google.com

'Harva…   

information to the Admissions Office.  For example, if you have been enrolled in an academic program, you may wish to provide a final transcript to LSAC.

If you wish to send additional information to the admissions office, please do so via postal mail. Our mailing address is at the bottom of this email. **We will not open or accept email attachments.**

Thank you again for your interest in Harvard Law School.

Sincerely,

Karen Buttenbaum

Director of Admissions

J.D. Admissions Office
Austin Hall, Room 203
1563 Massachusetts Avenue
Cambridge, MA 02138



## mail.google.com

'duke l...   

**From:** hoye@law.duke.edu <hoye@law.duke.edu>
**To:** "GAUSTIN07@YAHOO.COM"
<GAUSTIN07@YAHOO.COM>
**Sent:** Tuesday, January 10, 2012, 5:47:42 AM PST
**Subject:** Duke Law School Priority Track



DUKE LAW HOME PAGE  DUKE.EDU

## Duke Priority Track & Fee Waiver

TO:  Mr. George Austin, L

Dear Mr. Austin:

   

'duke l…   

Dear Mr. Austin:

I am pleased to learn of your interest in attending law school. We received information about your outstanding academic record from the Law School Admission Council's Candidate Referral Service. Based on your strong credentials, I invite you to apply to Duke Law School through our Priority Track review process. This program guarantees that a response to your application will be mailed to you within *ten days* of completing your file.

The Priority Track program allows you to submit your application materials at any time prior to the February 15 deadline. Your application fee will be automatically waived when you submit your application through LSAC; you should not need to enter a code. Upon completion of your file, your application will receive an immediate comprehensive review and you will receive a response within ten days. This is a non-binding program; if you are admitted to Duke, you may freely consider offers of admission from other law schools.

Please note that several elements are required to complete your file, including a Credential Assembly Service (CAS)

   

'duke l...   

Dear Mr. Austin:

I am pleased to learn of your interest in attending law school. We received information about your outstanding academic record from the Law School Admission Council's Candidate Referral Service. Based on your strong credentials, I invite you to apply to Duke Law School through our Priority Track review process. This program guarantees that a response to your application will be mailed to you within *ten days* of completing your file.

The Priority Track program allows you to submit your application materials at any time prior to the February 15 deadline. Your application fee will be automatically waived when you submit your application through LSAC; you should not need to enter a code. Upon completion of your file, your application will receive an immediate comprehensive review and you will receive a response within ten days. This is a non-binding program; if you are admitted to Duke, you may freely consider offers of admission from other law schools.

Please note that several elements are required to complete your file, including a Credential Assembly Service (CAS)

   

response within ten days. This is a non-binding program; if you are admitted to Duke, you may freely consider offers of admission from other law schools.

Please note that several elements are required to complete your file, including a Credential Assembly Service (CAS) Law School Report, your application form, a resume, a personal statement, and two letters of recommendation.

In order to have your application reviewed through the Priority Track program, please register now.

In the meantime, I invite you to learn more about Duke Law by visiting our website. I hope that receiving a quick response from Duke will be helpful as you navigate your way through the law school admissions process. I look forward to reading your application.

Sincerely,

William J. Hoye
Associate Dean
Admissions and Student Affairs

Duke University School of Law 
Contact Duke Law | Duke University Home



Personal Hotspot: 1 Connection

🔒 youtube.com    ↻

YouTube: Watch, Listen, Stream
Google, Inc.
★★★★☆
GET — On the App Store    **View**

▶ YouTube      🔍



4:21

# Jamie Foxx - 36th NAACP Image Awards - Outstanding Actor in a Motion Picture

NAACP Image Awards · 55,883 views

 171  5      + ➔

Up next        Autoplay 

   





# Austin wants to be sheriff

Look out Tom Tramel, there may be a future sheriff in town.

Five-year-old George Jarvis Austin attends the Kindergarten Center and he wants to be a police officer or a sheriff when he grows up.

Son of Charlotte Hall-Austin, George has begun his school career with a positive attitude. "George is an enthusiastic learner and he is a well-liked and caring person," says one of his teachers.



His interests include T-ball and books, especially the Berenstein Bears series.

According to Principal Earl Watts, "George is a very smart child. He is totally involved in all classroom activities and loves school. With George's ability, I think he can accomplish his goals in life."

# University of California

ON THE NOMINATION OF THE FACULTY OF THE

COLLEGE OF LETTERS AND SCIENCE

HAVE CONFERRED UPON

## GEORGE JARVIS AUSTIN

THE DEGREE OF BACHELOR OF ARTS

WITH A MAJOR IN SOCIOLOGY

WITH ALL THE RIGHTS AND PRIVILEGES THERETO PERTAINING

GIVEN AT BERKELEY

THIS NINETEENTH DAY OF DECEMBER IN THE YEAR

TWO THOUSAND AND NINE

PRESIDENT OF THE UNIVERSITY

GOVERNOR OF CALIFORNIA AND
PRESIDENT OF THE REGENTS

CHANCELLOR AT BERKELEY

ACTING EXECUTIVE DEAN OF THE COLLEGE

SEAL OF THE UNIVERSITY OF CALIFORNIA 1868



