George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

GEORGE J. AUSTIN, Plaintiff,

v.

TESLA, INC., et al., Defendants.

Case No. 3:20-cv-00800

AMENDED COMPLAINT, OBJECTIONS &
INCORPORATION OF REPORT AND
RECOMMENDATIONS   Re: Dkt. Nos. 12, 16-17,
24-27

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

## Table of Content & Points and Authorities

### A. Incorporation of Chief Magistrate Judge Spero's Recommendations

1. Federal Rules of Civil Procedure Rule 15 Amended and Supplemental Pleadings
2. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).
3. 28 U.S.C. § 1915,
4. *Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996)
5. 28 U.S.C. § 1915(e)(2)(B).
6. Rule 8(a)(2) of the Federal Rules of Civil Procedure
7. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).
8. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).
9. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)
10. *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting Schucker v. Rockwood, 846 F.2d 1202, 1203−04 (9th Cir. 1988)).
11. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990).
12. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

### B. Federal Jurisdiction

1. Under Article III of the Constitution,
2. US Const, Art II, Sec. 2
3. *Osborn v. Bank of the United States*, 9 Wheat. (22 U.S.) 738 (1824).
4. 28 USC 1331
5. *Austin v. Tesla, et. al*
6. Under 28 U.S.C. 1332,
7. 28 U.S.C. 1332(c)(1)

### 1. Defamation

1. *Taus v. Loftus* (2007) 40 Cal.4th 683, 720.
2. Civ. Code § 44
3. Civ. Code § 46
4. Civ. Code § 46
5. Civ. Code § 46
6. *Taus v. Loftus* (2007) 40 Cal.4th 683, 720.  See also 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, sec. 529, p. 782, citing Civ. Code, secs 45-46 and, cases.)
7. CA Civil Code Section 47, subdivision (c)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

8.  *Sanborn v. Chronicle Pub. Co.* (1976) 18 Cal.3d 406,413,134 Cal.Rptr. 402,556, P.2d 764

## 2. Non-payment - CA Labor Code

1.  CA Labor Code Section 200(a)
2.  *Duffy Brothers v. Bing & Bing* (1939) 217 App.Div. 10, 215, N.Y.S. 755).
3.  CA Labor Code sections 201 and 202
4.  CA Labor Codes 201, 202, 218, and 1194,
5.  *Martinez v. Combs (2010) 49 Cal.4th 35, 64, 71.*
6.  *Reid*, supra, 55 Cal.2d at p. 207, 10 Cal.Rptr. 819, 359 P.2d 251.)
7.  *In re Trombley* (1948) 31 Cal.2d 801, 809–810, 193 P.2d 734.)  See Also *Hermann v. Charles Stratton, D.D.S.*, Inc., No. A095233, 2002 WL 193857, at *3 (Cal. Ct. App. Feb. 7, 2002).
8.  Labor Code Section 203
9.  Labor Code Section 226(a)
10. Labor Code Section 204(b)(2)
11. *Mamika v. Barca* (1998) 68 Cal.App4th 487.
12. CA Labor Code Sections 201 and 227.3
13. CA Labor Code section 510, i
14. *Flowers v. Los Angeles County MetropolitanTransportation Authority* (2015) 243 Cal.App.4th 66, 83 [196 Cal.Rptr.3d 352], internal citation omitted.)
15. *Davis v. Farmers Ins. Exchange* (2016) 245 Cal.App.4th 1302,1330 [200 Cal.Rptr.3d 315].
16. *Davis, supra*, 245 Cal.App.4th at p.1331, internal citation omitted.
17. *Davis*, supra, 245 Cal.App.4th at p. 1332, fn. 20.
18. *Mendiola*, supra, 60 Cal.4th at p. 840.
19. *Hudgins v. Neiman Marcus Group*, Inc. (1995) 34 Cal.App.4th 1109, 1118 [41Cal.Rptr.2d
20. *Barnhill v. Robert Saunders & Co* (1981) 125 Cal.App.3d 1, 6 [177 Cal.Rptr. 803].
21. *Cash v. Winn* (2012) 205 Cal.App.4th 1285, 1297, 140 Cal.Rptr.3d 867. See Also *Flowers v. Los Angeles Cty. Metro. Transportation Auth.*, 243 Cal. App. 4th 66, 82, 196 Cal. Rptr. 3d 352, 362 (2015)
22. *Industrial Welfare Com. v. Superior Court,* supra, 27 Cal.3d at p. 702, 166 Cal.Rptr. 331, 613 P.2d 579; see also Murphy, at p. 1103, 56 Cal.Rptr.3d 880, 155 P.3d 284" see also *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012) see also *Flowers v. Los Angeles Cty. Metro. Transportation Auth.*, 243 Cal. App. 4th 66, 82, 196 Cal. Rptr. 3d 352, 362 (2015)
23. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012)  Under  CA Labor Code sec 206.5
24. *Hermann v. Charles Stratton, D.D.S., Inc.*, No. A095233, 2002 WL 193857, at *4 (Cal. Ct. App. Feb. 7, 2002)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

### 3. Non-payment - FLSA

1. Fair Labor Standards Act of 1938
2. *Industrial Welfare Com. v. Superior Court*, supra, 27 Cal.3d at p. 702, 166 Cal.Rptr. 331, 613 P.2d 579; see also Murphy, at p. 1103, 56 Cal.Rptr.3d 880, 155 P.3d 284" see also *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012) see also *Flowers v. Los Angeles Cty. Metro. Transportation Auth.*, 243 Cal. App. 4th 66, 82, 196 Cal. Rptr. 3d 352, 362 (2015)
3. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012)
4. *Flowers v. Los Angeles County MetropolitanTransportation Authority* (2015) 243 Cal.App.4th 66, 83 [196 Cal.Rptr.3d 352],
5. Fair Labor Standards Act, of 1938, § 1 et seq., 29 U.S.C.A. § 201
6. *Martinez v. Combs (2010) 49 Cal.4th 35, 64, 71*
7. CA Labor Law on undisputed wages
8. FLSA
9. Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.
10. 401 F.Supp.3d 886
11. Fair Labor Standards Act of 1938 § 7, 29 U.S.C.A. § 207(e); 29 C.F.R. § 778.108.  See 401 F.Supp.3d 886
12. Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq  See 401 F.Supp.3d 886
13. *Chao v. A–One Med. Servs.*, Inc., 346 F.3d 908, 918 (9th Cir. 2003) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)) (alteration in original); *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016)
14. *Alvarez v. IBP*, Inc., 339 F.3d 894, 909 (9th Cir. 2003).  See also *Hugler v. Kazu Constr.*, LLC, 262 F. Supp. 3d 1032, 1036 (D. Haw. 2017)
15. 29 U.S.C. § 207(a)(1), provided the employer has actual or constructive knowledge that the work is occurring. 29 C.F.R. § 785.11; *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981).
16. 29 U.S.C. § 216(b).  See *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1102 (9th Cir. 2018)
17. *A.H. Phillips v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945) (quoting Message of the President to Congress, May 24, 1934).
18. 29 U.S.C. §§ 206, 207. The FLSA requires covered workers to be paid at least 1.5 times their normal rate for all work in excess of forty hours weekly. 29 U.S.C. § 207(a)(1). The FLSA defines "regular rate" broadly as "all remuneration for employment." 29 U.S.C. § 207(e).
19. *Parth v. Pomona Valley Hosp. Med.* Ctr., No. CV 06-04703 MMM (FFMx), 2007 WL 9193688, at *6 (C.D. Cal. Dec. 5, 2007) (citing *Walling v. Youngerman-Reynolds*

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

*Hardwood* Co., 325 U.S. 419, 424, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945); 29 C.F.R. § 778.108).

20. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1102 (9th Cir. 2018) (quoting 29 U.S.C. § 216(b))  See 401 F.Supp.3d 886, 895

21. 29 CFR 778.114

22. 29 CFR 778.114(a)

23. FLSA sections 7(e)(1)–(8))

24. 29 CFR 778.114(b)


## 4. Conversion


1. *Gen. Motors Acceptance Corp. v. Dallas* (1926) 198 Cal. 365, 370; Witkin § 705

2. *De Vries v. Brumback* (1960) 53 Cal. 2d 643, 647

3. *Steele v. Marsciano* (1894) 102 Cal. 666, 669; 5 Witkin Summary of California Law Torts § 699 (10th ed. 2005)].

4. *Dept. of Industrial Relations v. UI Video Stores* (1997) 55 Cal. App. 4th 1084, 1095 (state agency with immediate right to possession of checks could sue for conversion); Witkin § 706] 3

5. *Reynolds v. Lerman* (1956) 138 Cal. App. 2d 586, 596; Witkin § 707

6. Witkin §§ 701, 702; See Downing v. Mun. Ct., 88 Cal.App.2d 345, 350 (1948).

7. *Kremen v. Cohen*, 337 F.3d 1024, 1030, 1031-33 (9th Cir. 2003)

8. *Payne v. Elliot*, 54 Cal. 339, 341 (1880)

9. *Haigler v. Donnelly* (1941) 18 Cal. 2d 674, 681

10. *Zaslow v. Kroenert* (1946) 20 Cal. 2d 541, 550

11. *Enterprise Leasing Corp. v. Shugart Corp.* (1991) 231 Cal. App. 3d 737, 748; Witkin § 708]

12. *Jordan v. Talbot,* 55 Cal.2d 597, 610 (1961) (citing Zaslow v. Cronert, 29 Cal.2d 541, 551 (1946))]

13. *Gruber v. Pacific States Savings & Loans Co.* (1939) 13 Cal. 2d 144, 147; Witkin § 709]

14. *Reid*, supra, 55 Cal.2d at p. 207, 10 Cal.Rptr. 819, 359 P.2d 251.)

15. *In re Trombley* (1948) 31 Cal.2d 801, 809–810, 193 P.2d 734.)  See Also *Hermann v. Charles Stratton, D.D.S.*, Inc., No. A095233, 2002 WL 193857, at *3 (Cal. Ct. App. Feb. 7, 2002)

16. *Edwards v. Jenkins* (1932) 214 Cal. 713, 720; Witkin § 712]

17. *Byer v. Canadian Bank of Commerce* (1937) 8 Cal. 2d 297, 299; Witkin § 712

18. *Acme Paper Co. v. Goffstein* (1954) 125 Cal. App. 2d 175, 179 (conversion of check); *Mears v. Crocker First Nat'l Bank* (1948) 84 Cal. App. 2d 637, 644 (conversion of stock share certificate); Cal. Jur. § 12; Witkin § 702]


## 5. Breach


1. *Casella v. SouthWest Dealer Services, Inc.* (2007) 157Cal.App.4th 1127, 1138–1139 [69 Cal.Rptr.3d 445],

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

2. *Huber v. Standard Ins. Co.*, 841 F.2d 980 (9th Cir. 1988)

3. *Huber v. Standard Ins. Co.*, 841 F.2d 980 (9th Cir. 1988)

4. *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 337 [100 Cal.Rptr.2d 352,8 P.3d 1089]

5. *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 680 [254 Cal.Rptr. 211, 765P.2d 373],

6. *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th317, 336–337 [100 Cal.Rptr.2d 352, 8 P.3d 1089], internal citations omitted.)

7. Civil Code sections 1619–1621 t

8. *Walker v. Blue Cross of California* (1992) 4 Cal.App.4th 985, 994 [6Cal.Rptr.2d 184, internal citations omitted, abrogated on another ground inGuz, supra, 24 Cal.4th at p. 351.

9. CACINo. 2405, Breach of Implied Employment Contract—Unspecified Term—"GoodCause" Defined—Misconduct

10. *Cotran v. RollinsHudig Hall International, Inc.* (1998) 17 Cal.4th 93, 107 [69 Cal.Rptr.2d 900, 948P.2d 412].)

11. *Wallis V. Farmers Group, Inc.* (1990) 220 Cal.App.3d 718, 733 [269 Cal.Rptr. 299],disapproved on other grounds in Dore v. Arnold Worldwide, Inc. (2006) 39Cal.4th 384, 394 fn. 2 [46 Cal.Rptr.3d 668, 139 P.3d 56].)

12. *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830,872 [172 Cal.Rptr.3d 732], internal citations omitted.)

13. *Walker v. Blue Cross of California* (1992)4 Cal.App.4th 985, 994 [6 Cal.Rptr.2d 184], internal citations omitted,abrogated on another ground in Guz v. Bechtel National, Inc. (2000) 24 Cal.4th317, 351 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

14. *Pugh,* supra, 116 Cal.App.3d at p. 330.

15. *Pugh*, supra, 116 Cal.App.3d at pp. 329–330, internal citation omitted.)Secondary Sources3 Witkin, Summary of California Law (10th ed. 2005) Agency and Employment,§§ 208, 209, 231Chin et al., Cal. Practice Guide: Employment Litigation ¶¶ 4:270–4:273, 4:300 (TheRutter Group)1 Wrongful Employment Termination Practice (Cont.Ed.Bar 2d ed.) ContractCACI No. 2404 WRONGFUL TERMINATION

16. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts,

17. 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 852, pp. 938–940; Brown v. Grimes, 192 Cal. App. 4th 265, 278, 120 Cal. Rptr. 3d 893, 903 (2011)

18. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts.

19. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts.

20. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts.

21. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005)

22. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

### 6. Fraudulent Misrepresentation

1. *Perlas v. GMAC Mortgage, LLC* (2010) 187 Cal.App.4th 429, 434, 113 Cal.Rptr.3d 790 (Perlas ) See also *Graham v. Bank of Am.*, N.A., 226 Cal. App. 4th 594, 605–06, 172 Cal. Rptr. 3d 218, 228 (2014)
2. *Beckwith v. Dahl*(2012) 205 Cal.App.4th 1039, 1061 [141 Cal.Rptr.3d 142].
3. *Beckwith*, supra, 205 Cal.App.4th at p. 1062.
4. *Affiliated Ute Citizens v. United States*, supra, 406 U.S.128 (Ute) .
5. *Mirkin*, supra, 5 Cal.4th at p. 1093.
6. *Boschma*,supra, 198 Cal.App.4th, 249

### 7. Fraudulent Concealment

1. *Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862, 870, 130 Cal.Rptr.3d 504 (*Bank of America Corp.*).)  See also *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606, 172 Cal. Rptr. 3d 218, 228 (2014)
2. *Warner Constr. Corp. v. L.A.* (1970) 2 Cal.3d 285, 294 [85 Cal. Rptr. 444, 466 P.2d996].
3. *Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1187 [175Cal.Rptr.3d 820].)
4. *Hackethal v. National Casualty Co.* (1987) 189 Cal.App.3d 1102, 1110 [234 Cal.Rptr. 853].)
5. *Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248 [129 Cal.Rptr.3d 874].)
6. *SCC Acquisitions, Inc. v. Central Pacific Bank* (2012) 207 Cal.App.4th 859, 860 [143 Cal.Rptr.3d 711].)
7. *Warner Construction Corp.*, supra, 2 Cal.3d at p. 294, footnotes omitted.
8. *Hoffman*, supra, 228 Cal.App.4th at p. 1187, original italics, internal citations omitted.
9. *Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634,666 [51 Cal.Rptr.2d 907],
10. *Marketing West, Inc. v. Sanyo Fisher* (USA) Corp. (1992) 6Cal.App.4th 603, 613 [7 Cal.Rptr.2d 859].)
11. *Beckwith v. Dahl*(2012) 205 Cal.App.4th 1039, 1061 [141 Cal.Rptr.3d 142].
12. *Beckwith*, supra, 205 Cal.App.4th at p. 1062
13. *Affiliated Ute Citizens v. United States*, supra, 406 U.S.128 (Ute)
14. *Mirkin*, supra, 5 Cal.4th at p. 1093.
15. *Boschma*,supra, 198 Cal.App.4th at p. 249, original italics.

### 8. Tortious Interference

1. *North American Chemical Co. v. Superior Court* (1997) 59Cal.App.4th 764, 786 [69 Cal.Rptr.2d 466].)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

2. Judicial Council of California Civil Jury Instructions See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts.

3. *Little v. Amber Hotel Co*. (2011) 202 Cal.App.4th 280, 291 [136Cal.Rptr.3d 97.

4. *Pacific Gas & Electric Co. v. BearStearns & Co.* (1990) 50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587],internal citations omitted.)

5. *PMC, Inc. v. Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579,601 [52 Cal.Rptr.2d 877].

6. *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th26, 55 [77 Cal.Rptr.2d 709, 960 P.2d 513], internal citations omitted.

7. *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134,1154 [131 Cal.Rptr.2d 29, 63 P.3d 937], original italics.

8. *Korea SupplyCo*., supra, 29 Cal.4th at p. 1157

9. *Pacific Gas & Electric Co.*, supra, 50 Cal.3d at p. 1129, internal citations omitted.

10. *Youst v. Longo* (1987) 43 Cal.3d 64. See also California Civil Jury Instructions (CACI) 2202. Intentional Interference With Prospective Economic Relations.

11. *Roth v. Rhodes* (1994) 25 Cal.App.4th 530.

12. *Pacific Gas &Electric Co*., supra, 50 Cal.3d at p. 1127, internal citations and quotations omitted.

13. *Youst v. Longo* (1987) 43 Cal.3d 64.

14. *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747; *Meister v. Mensinger* (2014) 230 Cal.App.4th 381. See also CACI 3903N. Lost Profits (Economic Damage).

15. *Della Penna v. Toyota Motor Sales*, U.S.A., Inc. (1995) 11 Cal.4th 376.

16. *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747; Meister v. Mensinger (2014) 230 Cal.App.4th 381. See also CACI 3903N. Lost Profits (Economic Damage).

17. *San Jose Construction, Inc. v. S.B.C.C.*, Inc. (2007) 155 Cal.App.4th 1528.

18. California Civil Code 1709.

19. *Korea Supply Co*., endnote 7; Ramona Manor Convalescent Hospital v. Care Enterprises (1986) 177 Cal.App.3d 1120

20. California Civil Code 3294.

21. California Civil Code 3294(c).

22. *Della Penna v. Toyota Motor Sales, USA*, Inc., 11 Cal.4th 376, 393 (1995).

23. *Buckaloo v. Johnson*, 14 Cal.3d 815, 824 (1975).

24. *Pacific Gas & Electric Co. v. Bear Stearns & Co*., 50 Cal.3d 1118 (1990).

25. *Della Penna v. Toyota MotorSales, U.S.A.*, Inc. (1995) 11 Cal.4th 376, 393 [45 Cal.Rptr.2d 436, 902 P.2d 740].

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

26. *PMC, Inc. v.Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 603 [52 Cal.Rptr.2d 877],disapproved on other grounds in Korea Supply Co. v. Lockheed Martin Corp.(2003) 29 Cal.4th 1134, 1159 fn. 11 [131 Cal.Rptr.2d 29, 63 P.3d 937].

27. *Settimo Associates v. Environ Systems, Inc.* (1993) 14Cal.App.4th 842, 845 [17 Cal.Rptr.2d 757], internal citation omitted.

28. *PacificGas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 [270Cal.Rptr. 1, 791 P.2d 587], internal citations omitted.

29. *Youst v. Longo* (1987) 43 Cal.3d 64, 71, fn. 6 [233Cal.Rptr. 294, 729 P.2d 728].)

30. *Korea Supply Co.*, supra, 29 Cal.4th at p. 1154, original italics.

31. *Della Penna,*supra, 11 Cal.4th at p.393.

32. *San Jose Construction, Inc. v.S.B.C.C., Inc.* (2007) 155 Cal.App.4th 1528, 1544–1545 [67 Cal.Rptr.3d 54],internal citations omitted.

33. *Limandri v. Judkins* (1997) 52 Cal.App.4th326, 340 [60 Cal.Rptr.2d 539].

34. *Arntz Contracting Co. v. St. Paul Fire and Marine Insurance* Co. (1996) 47Cal.App.4th 464, 477–478 [54 Cal.Rptr.2d 888], internal citations omitted.)

35. *PMC*, Inc., supra, 45 Cal.App.4th at p.603, internal citation omitted.

36. *Crown Imports, LLC v. Superior Court* (2014) 223 Cal.App.4th1395, 1404 [168 Cal.Rptr.3d 228].

37. *Crown Imports* LLC,supra, 223 Cal.App.4th at p. 1405, original italics.

38. *Arntz Contracting* Co., supra, 47 Cal.App.4th at p. 477.

39. *Roth v. Rhodes* (1994) 25 Cal.App.4th 530, 546 [30 Cal.Rptr.2d 706], internal citations omitted.

40. *Kasparian v. County of Los Angeles* (1995) 38 Cal.App.4th 242, 266 [45Cal.Rptr.2d 90], original italics.

41. *Youst,* supra, 43 Cal.3d at p. 71, internal citations omitted.

42. *Overhill Farms, Inc. v. Lopez* (2010) 190 Cal.App.4th 1248, 1267[119 Cal.Rptr.3d 127], original italics.

## 9. Wrongful Discharge

1. Yauv. Allen (2014) 229 Cal.App.4th 144, 154 [176 Cal.Rptr.3d 824].)

2. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts.

3. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005)

4. FLSA, California Labor Code, and Sarbanes Oxley,

5. *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

6. *Stevenson v. Sup.*Ct. (Huntington Mem. Hosp.) (1997) 16 C4th 880, 897, 66 CR2d 888, 898
7. *Silo v. CHW Med. Found.* (2002) 27 C4th 1097, 1104-1105, 119 CR2d 698, 703-704
8. *Franklin v. Monadnock Co.* (2007) 151 CA4th 252, 260, 59 CR3d 692, 697
9. Employment Presumed At Will, Cal. Prac. Guide Employment Litigation Ch. 4-A
10. *Casella v. SouthWest Dealer Services, Inc.* (2007) 157Cal.App.4th 1127, 1138–1139 [69 Cal.Rptr.3d 445
11. *Tameny v. AtlanticRichfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330].

## 10. Whistleblower Retaliation

1. *Monavian v. Department of Justice* (29108) 28 Cal.App.5th 1127, 2241.
2. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973);
3. CA Labor Code, FLSA, Sarbanes-Oxley (applicable to publicly traded companies, and to private as well) have similar elements.
4. [Lab.C. § 98.6];
5. [Lab.C. § 132a];
6. [Lab.C. § 6310;
7. *Lujan v. Minagar* (2004) 124 CA4th 1040, 1046, 21 CR3d 861, 866
8. *Freund v. Nycomed Amersham* (9th Cir. 2003) 347 F3d 752, 758 (applying Calif. law)]
9. California Labor Code Section 1102.5,
10. Fair Labor Standards Act (FLSA)
11. Fair Labor Standards Act (FLSA).
12. *Kasten v. Saint-Gobain Performance Plastics Corp*., No. 09-834 (March 22, 2011).
13. *Palmer v. Canadian National Railway, ARB* No. 16-035 at 53
14. *Allen v. Stewart Enters., Inc., ARB* Case No. 06-081, slip op. at 17 (U.S. Dep't of Labor July 27, 2006).
15. William Dorsey, An Overview of Whistleblower Protection Claims at the United States Department of Labor, 26 *J. Nat'l Ass'n Admin.* L. Judiciary 43, 66 (Spring 2006) (citing *Griffith v. City of Des Moines*, 387 F.3d 733 (8th Cir. 2004)).
16. *Clemmons v. Ameristar Airways, Inc.*, ARB No. 08-067, at 9, ALJ No. 2004-AIR-11 (ARB May 26, 2010) (footnotes omitted).
17. Id. at 9-10 (footnotes omitted).
18. *Bobreski v. J. Givoo Consultants, Inc.*, ARB No. 13-001, ALJ No. 2008-ERA-3 (ARB Aug. 29, 2014).
19. *Overall v. TVA*, ARB Nos. 98-111 and 128, slip op. at 16-17 (Apr. 30, 2001), aff'd *TVA v. DOL*, 59 F. App'x 732 (6th Cir. 2003).
20. CA Labor Code, FLSA, and Sarbanes-Oxley

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

## 11. Civil Rights Due Process

1. US Constitution
2. The Americans with Disabilities Act of 1990 (ADA), 42 US Code sec 12101
3. Gov.Code, § 12940(n)
4. Social Security Act, 42 U.S.C. secs 301-1305
5. CA Unemployment (and Disability) Insurance Code
6. Unruh Civil Rights Act, Civ. Code, sec. 51-52
7. The Fair Employment Housing Act, Govt. Code, secs 12900-12996
8. Government Code section 12940(m)
9. Government Code section 12926(p)
10. Cal. Code Regs., tit. 2, § 11068(a)
11. Government Code section 12926.1(c)
12. The Americans with Disabilities Act of 1990 (ADA), 42 US Code sec 12101
13. The Americans with Disabilities Act of 1990 (ADA), 42 US Code sec 12101
14. The Americans with Disabilities Act of 1990 (ADA), 42 US Code sec 12101
15. The Americans with Disabilities Act of 1990 (ADA), 42 US Code sec 12101
16. Title II of the The Americans with Disabilities Act of 1990 (ADA)
17. *California Human Resources Dept. v. Java,* supra, 402 U.S. 121, 131-132, 91 S.Ct. 134, 1354, 28 L.Ed.2d 666.
18. *Am. Fed'n of Labor v. Employment Dev. Dep't,* 88 Cal.App.3d 811, 821, 152 Cal.Rptr. 193, 199
19. Unruh Civil Rights Act, Civ. Code, sec. 51-52
20. See *Harris v. City of SantaMonica* (2013) 56 Cal.4th 203, 232 [152 Cal.Rptr.3d 392, 294 P.3d 49]; CACI No.2507, "Substantial Motivating Reason" Explained.
21. See *Koirev. Metro Car Wash* (1985) 40 Cal.3d 24, 33 [219 Cal.Rptr. 133, 707 P.2d 195
22. Civ. Code, § 52(a)
23. see Civ. Code, § 52(h) ["actual damages" means special and general damages].
24. *Claudio,* supra, 134 Cal.App.4th at p. 243.
25. *Gelfo,* supra, 140 Cal.App.4th at p. 54, internal citations omitted.
26. *Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 379 [184 Cal.Rptr.3d 9].
27. *Gelfo,* supra, 140 Cal.App.4th at p. 61, fn. 21.
28. *Swanson v. Morongo UnifiedSchool Dist.* (2014) 232 Cal.App.4th 954, 971–972 [181 Cal.Rptr.3d 553].
29. *Gelfo,* supra,140 Cal.App.4th at p. 62, fn. 23.
30. *A.M. v. Albertsons, LLC* (2009) 178 Cal.App.4th 455, 464 [100Cal.Rptr.3d 449].
31. *Wysinger,* supra, 157Cal.App.4th at pp. 424–425, internal citations omitted.
32. *Nadaf-Rahrov,* supra, 166Cal.App.4th at pp. 984–985.
33. *Scotch,* supra, 173 Cal.App.4th at pp.1018–1019.
34. *Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344, 362 [118Cal.Rptr.2d 443].

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

35. *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935,950–951 [62 Cal.Rptr.2d 142].

36. *Nadaf-Rahrov v. The Neiman MarcusGroup, Inc.* (2008) 166 Cal.App.4th 952, 977–978 [83 Cal.Rptr.3d 190], internal citations omitted.

37. See *Green v. State of California* (2007) 42 Cal.4th 254, 260 [64 Cal.Rptr.3d 390, 165P.3d 118].

38. See *Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757,766 [123 Cal.Rptr.3d 562]; *Nadaf-Rahrov v. The Neiman Marcus Group, Inc.*(2008) 166 Cal.App.4th 952, 973–979 [83 Cal.Rptr.3d 190].

39. *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935,950–951 [62 Cal.Rptr.2d 142]; see also *Furtado v. State Personnel Bd.* (2013) 212Cal.App.4th 729, 745 [151 Cal.Rptr.3d 292]; *Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 243 [35 Cal.Rptr.3d 837]; *Hanson v. Lucky Stores* (1999) 74 Cal.App.4th 215, 226 [87 Cal.Rptr.2d 487].

40. See *Nadaf-Rahrov, supra,* 166Cal.App.4th at p. 978; see also *Cuiellette,* supra, 194 Cal.App.4th at p. 767

41. See *Prilliman,* supra, 53Cal.App.4th at pp. 950–951.

42. *Cuiellette,*supra, 194 Cal.App.4th at p. 766.

43. *Cuiellette,*supra, 194 Cal.App.4th at p.766.

44. *Swanson v. MorongoUnified School Dist.* (2014) 232 Cal.App.4th 954, 968 [181 Cal.Rptr.3d 553],original italics.

45. *Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 375 [184Cal.Rptr.3d 9].

46. *Furtado,supra,* 212Cal.App.4th at p. 745.

47. *Swanson, supra,* 232 Cal.App.4th at p. 970.

48. *Avila, supra,* 165Cal.App.4th at pp. 1252–1253, internal citations omitted.

49. *Prilliman,supra,* 53 Cal.App.4th at p. 954, internal citation omitted.

50. *Bagatti, supra,* 97 Cal.App.4th at p. 362.

51. *Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1389 [96 Cal.Rptr.2d236].

52. *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 55 [43 Cal.Rptr.3d 874].

53. *Sanchez v. Swissport, Inc.* (2013) 213Cal.App.4th 1331, 1341 [153 Cal.Rptr.3d 367].

54. *Nealy, supra,* 234 Cal.App.4th at pp. 377–378.

55. *Pangburn v. N. Ky. Univ.,* No. 99-5474, 2000 U.S. App. LEXIS 6413, at *4, 2000 WL 331948 (6th Cir. Mar. 23, 2000).

56. *Pangburn v. N. Ky. Univ.,* No. 99-5474, 2000 U.S. App. LEXIS 6413, at *4, 2000 WL 331948 (6th Cir. Mar. 23, 2000). (citing *Kaltenberger v. Ohio Coll. of Podiatric Med.,* 162 F.3d 432, 435 (6th Cir. 1998)).

57. See *Halpern v. Wake Forest Univ. Health Scis.,* 669 F.3d 454 (4th Cir. 2012) (compiling list of cases). *Cobble v. Spalding University,* 2017 WL 382245 (W.D.Ky.), 4 (W.D.Ky., 2017)

58. see *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 665[94 Cal.Rptr.3d 685, 208 P.3d 623]

59. See *Harris v. Capital Growth Investors* XIV (1991) 52Cal.3d 1142, 1149 [278 Cal.Rptr. 614, 805 P.2d 873].

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

60. *Rotary Club of Duarte v. Bd. of Directors* (1986)178 Cal.App.3d 1035, 1050 [224 Cal.Rptr. 213].

61. *In reCox* (1970) 3 Cal.3d 205, 216 [90 Cal.Rptr. 24, 474 P.2d 992].

62. *Semler v. General Electric CapitalCorp.* (2011) 196 Cal.App.4th 1380, 1392–1393 [127 Cal.Rptr.3d 794]; see *Harris,supra*, 52 Cal.3d at pp. 1159–1162.

63. *Flowers v. Prasad* (2015) 238 Cal.App.4th 930, 937 [190 Cal.Rptr.3d 33].

64. *Javorsky v. Western Athletic Clubs, Inc.*(2015) 242 Cal.App.4th 1386, 1404 [195 Cal.Rptr.3d 706].

65. *O'Connor v. Village Green Owners Assn.* (1983) 33 Cal.3d 790,795 [191 Cal.Rptr. 320, 662 P.2d 427], internal citations omitted.

66. *Rotary Club of Duarte, supra,* 178 Cal.App.3d at p. 1050.

67. *Hessians Motorcycle Club v. J.C.Flanagans* (2001) 86 Cal.App.4th 833, 836 [103 Cal.Rptr.2d 552], internal citations omitted.

68. *Javorsky, supra,* 242Cal.App.4th at p. 1394, internal citations omitted.

69. *Harris, supra,* 52 Cal.3d at p. 1149.

70. *Munson, supra,* 46 Cal.4th at p.665.

71. *Baughman v. Walt Disney World Co.* (2013) 217Cal.App.4th 1438, 1446 [159 Cal.Rptr.3d 825], internal citations omitted.

72. *Javorsky, supra,* 242Cal.App.4th at p. 1399.

73. *Winchell v. English*(1976) 62 Cal.App.3d 125, 129 [133 Cal.Rptr. 20].

74. *Maureen K. v. Tuschka* (2013) 215 Cal.App.4th 519,529–530 [155 Cal.Rptr.3d 620], original italics, internal citations omitted.

75. 42 U.S.C. 12101-12213

76. Civil Rights Act of 1866 (Section 1981)

77. 42 U.S. Code § 12101

78. *United States v. Classic,* 313 U.S. 299, 61 S. Ct. 1031, 85 L. Ed. 1368 [1941]

79. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)

### 12. Physical Disability Discrimination

1. US Constitution
2. The Americans with Disabilities Act of 1990 (ADA), 42 US Code sec 12101
3. Gov.Code, § 12940(n)
4. Social Security Act, 42 U.S.C. secs 301-1305
5. CA Unemployment (and Disability) Insurance Code
6. CA Unemployment (and Disability) Insurance Cod
7. Unruh Civil Rights Act, Civ. Code, sec. 51-52
8. The Fair Employment Housing Act, Govt. Code, secs 12900-12996
9. Government Code section 12940(m)
10. Government Code section 12926(p)
11. Cal. Code Regs., tit. 2, § 11068(a)
12. Government Code section 12926.1(c)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

13. The Americans with Disabilities Act of 1990 (ADA), 42 US Code sec 12101

14. The Americans with Disabilities Act of 1990 (ADA), 42 US Code sec 12101

15. 42 U.S.C. § 12101 et seq.

16. The Americans with Disabilities Act of 1990 (ADA), 42 US Code sec 12101

17. Title II of the ADA

18. *California Human Resources Dept. v. Java, supra*, 402 U.S. 121, 131-132, 91 S.Ct. 1347, 1354, 28 L.Ed.2d 666.

19. *Am. Fed'n of Labor v. Employment Dev. Dep't*, 88 Cal.App.3d 811, 821, 152 Cal.Rptr. 193, 199

20. Unruh Civil Rights Act.

21.  See *Harris v. City of SantaMonica* (2013) 56 Cal.4th 203, 232 [152 Cal.Rptr.3d 392, 294 P.3d 49]; CACI No.2507, "Substantial Motivating Reason" Explained.

22. Unruh Civil Rights Act.

23. Civ. Code, § 52(a).

24. See *Koirev. Metro Car Wash* (1985) 40 Cal.3d 24, 33 [219 Cal.Rptr. 133, 707 P.2d 195

25. Civ. Code, § 52(a)

26. Civ. Code, § 52(h)

27. *Claudio*, supra, 134 Cal.App.4th at p. 243.

28. *Gelfo*, supra, 140 Cal.App.4th at p. 54, internal citations omitted.

29. *Nealy v.City of Santa Monica* (2015) 234 Cal.App.4th 359, 379 [184 Cal.Rptr.3d 9].

30. *Gelfo*, supra, 140 Cal.App.4th at p. 61, fn. 21.

31. *Swanson v. Morongo UnifiedSchool Dist.* (2014) 232 Cal.App.4th 954, 971–972 [181 Cal.Rptr.3d 553].

32. *Gelfo*, supra,140 Cal.App.4th at p. 62, fn. 23.

33. *A.M. v. Albertsons, LLC* (2009) 178 Cal.App.4th 455, 464 [100Cal.Rptr.3d 449].

34. *Wysinger, supra*, 157Cal.App.4th at pp. 424–425, internal citations omitted.

35. *Nadaf-Rahrov, supra,* 166Cal.App.4th at pp. 984–985.

36. *Scotch*, supra, 173 Cal.App.4th at pp.1018–1019.

37. *Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344, 362 [118Cal.Rptr.2d 443].

38. *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935,950–951 [62 Cal.Rptr.2d 142].

39. *Nadaf-Rahrov v. The Neiman MarcusGroup, Inc.* (2008) 166 Cal.App.4th 952, 977–978 [83 Cal.Rptr.3d 190], internal citations omitted.

40. See *Green v. State of California* (2007) 42 Cal.4th 254, 260 [64 Cal.Rptr.3d 390, 165P.3d 118].

41. See *Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757,766 [123 Cal.Rptr.3d 562]

42. *Nadaf-Rahrov v. The Neiman Marcus Group, Inc.*(2008) 166 Cal.App.4th 952, 973–979 [83 Cal.Rptr.3d 190].

43. *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935,950–951 [62 Cal.Rptr.2d 142]; see also *Furtado v. State Personnel Bd.* (2013) 212Cal.App.4th 729, 745 [151 Cal.Rptr.3d 292]; *Claudio v. Regents of the Universityof California* (2005) 134

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Cal.App.4th 224, 243 [35 Cal.Rptr.3d 837]; *Hanson v.Lucky Stores* (1999) 74 Cal.App.4th 215, 226 [87 Cal.Rptr.2d 487].)

44. See *Nadaf-Rahrov, supra*, 166Cal.App.4th at p. 978; see also Cuiellette, supra, 194 Cal.App.4th at p. 767

45. Government Code section 12940(n)

46. See *Prilliman, supra*, 53Cal.App.4th at pp. 950–951.

47. *Cuiellette,supra*, 194 Cal.App.4th at p. 766.

48. *Swanson v. MorongoUnified School Dist.* (2014) 232 Cal.App.4th 954, 968 [181 Cal.Rptr.3d 553],original italics.

49. *Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 375 [184Cal.Rptr.3d 9].

50. *Furtado,supra*, 212Cal.App.4th at p. 745.

51. *Swanson, supra*, 232 Cal.App.4th at p. 970.

52. *Avila, supra*, 165Cal.App.4th at pp. 1252–1253, internal citations omitted.

53. *Prilliman,supra*, 53 Cal.App.4th at p. 954, internal citation omitted.

54. *Bagatti, supra*, 97 Cal.App.4th at p. 362.

55. *Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1389 [96 Cal.Rptr.2d236].

56. *Gelfo v.Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 55 [43 Cal.Rptr.3d 874].) "Appellant also stated a viable claim under section 12940, subdivision (m),

57. *Sanchez v. Swissport, Inc.* (2013) 213Cal.App.4th 1331, 1341 [153 Cal.Rptr.3d 367].

58. *Nealy, supra*, 234 Cal.App.4th at pp. 377–378.

59. *Pangburn v. N. Ky. Univ., No.* 99-5474, 2000 U.S. App. LEXIS 6413, at *4, 2000 WL 331948 (6th Cir. Mar. 23, 2000).

60. *Pangburn v. N. Ky. Univ., No.* 99-5474, 2000 U.S. App. LEXIS 6413, at *4, 2000 WL 331948 (6th Cir. Mar. 23, 2000). (citing *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998)

61. See *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454 (4th Cir. 2012) (compiling list of cases). *Cobble v. Spalding University*, 2017 WL 382245 (W.D.Ky.), 4 (W.D.Ky., 2017)

62. see *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 665[94 Cal.Rptr.3d 685, 208 P.3d 623]

63. See *Harris v. Capital Growth Investors XIV* (1991) 52Cal.3d 1142, 1149 [278 Cal.Rptr. 614, 805 P.2d 873].

64. *Rotary Club of Duarte v. Bd. of Directors* (1986)178 Cal.App.3d 1035, 1050 [224 Cal.Rptr. 213].

65. In re*Cox* (1970) 3 Cal.3d 205, 216 [90 Cal.Rptr. 24, 474 P.2d 992].

66. *Semler v. General Electric CapitalCorp.* (2011) 196 Cal.App.4th 1380, 1392–1393 [127 Cal.Rptr.3d 794]; see Harris,supra, 52 Cal.3d at pp. 1159–1162.

67. *Flowers v. Prasad* (2015) 238 Cal.App.4th 930, 937 [190 Cal.Rptr.3d 33].

68. *Javorsky v. Western Athletic Clubs, Inc.*(2015) 242 Cal.App.4th 1386, 1404 [195 Cal.Rptr.3d 706].

69. *O'Connor v. Village Green Owners Assn.* (1983) 33 Cal.3d 790,795 [191 Cal.Rptr. 320, 662 P.2d 427]

70. *Rotary Club of Duarte, supra*, 178 Cal.App.3d at p. 1050.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

71. *Hessians Motorcycle Club v. J.C.Flanagans* (2001) 86 Cal.App.4th 833, 836 [103 Cal.Rptr.2d 552], internal citations omitted.

72. *Javorsky*, supra, 242Cal.App.4th at p. 1394, internal citations omitted.

73. *Harris*, supra, 52 Cal.3d at p. 1149.

74. *Munson*, supra, 46 Cal.4th at p.665.

75. *Baughman v. Walt Disney World Co.* (2013) 217Cal.App.4th 1438, 1446 [159 Cal.Rptr.3d 825], internal citations omitted.)

76. *Javorsky*, supra, 242Cal.App.4th at p. 1399.

77. *Winchell v. English*(1976) 62 Cal.App.3d 125, 129 [133 Cal.Rptr. 20].

78. *Maureen K. v. Tuschka* (2013) 215 Cal.App.4th 519,529–530 [155 Cal.Rptr.3d 620], original italics, internal citations omitted.

79. The Americans With Disabilities Act (ADA) found at 42 U.S.C. 12101-12213

80. Civil Rights Act of 1866 (Section 1981)

81. 42 U.S. Code § 12101

82. *United States v. Classic*, 313 U.S. 299, 61 S. Ct. 1031, 85 L. Ed. 1368 [1941])

83. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)

## 13. Breach of Insurance Contract

1. *Isaacson v. California Insurance Guarantee Assn.* (1988) 44 Cal.3d775, 791 [244 Cal.Rptr. 655, 750 P.2d 297].

2. *Robles II,* supra, 236 Cal.App.4th

3. *Paratransit, Inc. v. Unemployment Ins. Appeals Bd.* (2014) 59 Cal. 4th 551, 558, fn. omitted; see § 100

4. *Robles II,* supra, 236 Cal.App.4th at pp. 545–546.

5. *Robles II,* supra, 236 Cal.App.4th at pp. 545–546 at p. 546

6. *Robles I,* supra, 207 Cal.App.4th at p. 1034.

7. *Comunale v. Traders & General Ins.Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198].

8. *Egan v. Mutual of Omaha Insurance Co.* (1979) 24 Cal.3d 809, 818–819 [169 Cal.Rptr. 691, 620P.2d 141].

9. *Major v. Western HomeIns. Co.* (2009) 169 Cal.App.4th 1197, 1209 [87 Cal.Rptr.3d 556], internal citations omitted.

10. *Bosetti v. United States Life Ins. Co. in the City Of New York* (2009) 175 Cal.App.4th 1208, 1236 [96 Cal.Rptr.3d 744], original italics, internal citations omitted.

11. *Century Surety Co. v.Polisso* (2006) 139 Cal.App.4th 922, 949 [43 Cal.Rptr.3d 468], internal citations omitted.

12. *Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th1062, 1073 [56 Cal.Rptr.3d 312].

13. *R. J. Kuhl Corp. v. Sullivan* (1993) 13 Cal.App.4th1589, 1602 [17 Cal.Rptr.2d 425].

14. *Austero v.National Cas. Co.* (1978) 84 Cal.App.3d 1, 30 [148 Cal.Rptr. 653], overruled on other grounds in Egan, supra, 24 Cal.3d at p. 824 fn. 7.

15. *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1148–1149 [271Cal.Rptr. 246], internal citations omitted.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

16. *Gruenberg v. Aetna Insurance Co.* (1973) 9Cal.3d 566, 574–575 [108 Cal.Rptr. 480, 510 P.2d 1032], original italics.

17. *Rappaport-Scott v. Interinsurance Exch. of the Auto. Club* (2007) 146Cal.App.4th 831, 837 [53 Cal.Rptr.3d 245], internal citations omitted.

18. *Love v. Fire Insurance Exchange* (1990) 221Cal.App.3d 1136, 1151 [271 Cal.Rptr. 246], internal citations omitted.

19. *Chateau Chamberay Homeowners Assn. v. Associated International Insurance Co.* (2001) 90Cal.App.4th 335, 347 [108 Cal.Rptr.2d 776].

20. *Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 949 [43Cal.Rptr.3d 468].

21. *Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th1062, 1073 [56 Cal.Rptr.3d 312].

22. *Maslo v. Ameriprise Auto & Home Ins.*(2014) 227 Cal.App.4th 626, 634 [173 Cal.Rptr.3d 854].

23. *Gruenberg,* supra, 9 Cal.3d at p. 578.

24. *Maslo,*supra, 227 Cal.App.4th at pp. 638–639 [uninsured motorist coverage case].

25. *Hughes v. Blue Cross of Northern California* (1989) 215Cal.App.3d 832, 848 [263 Cal.Rptr. 850].

26. *Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1214 [87 Cal.Rptr.3d 556], original italics, internal citations omitted.

27. *Frommoethelydo v. Fire Insurance Exchange* (1986) 42Cal.3d 208, 214–215 [228 Cal.Rptr. 160, 721 P.2d 41], internal citation omitted.

28. *Egan,* supra, 24 Cal.3d at p. 819.

29. *Mariscal v. Old Republic Life Ins. Co.* (1996) 42 Cal.App.4th1617, 1620 [50 Cal.Rptr.2d 224].


## A.Incorporation of Chief Magistrate Judge Spero's Recommendations

In accord with Federal Rules of Civil Procedure 15 for *Amended ... Pleadings* Attorney of Record, Pro Se Litigant, and Plaintiff, Mr. George Jarvis (J.) Austin, esq. (TBA)., has incorporated the detailed, generous, and constructive, recommendations by Chief Magistrate Judge Spero into an Amended Complaint in compliance with Judge Chen's Order, and the heightened pleading standards after the Court's ruling in *Iqbal* and *Twombly*.  Attorney of Record, Pro Se Litigant, and Plaintiff, Mr. George Jarvis (J.) Austin, esq. (TBA) has amended the complaint to meet, and ideally surpass, the Legal Standard for Review Under 28 U.S.C. § 1915, and articulated in *Marks v.*

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

*Solcum*, 98 F.3d 494, 495 (9th Cir. 1996) so that while examining the following stated claims, it will be clear that they are not frivolous or malicious, but instead substantive and meritorious (, from which relief may be granted from defendants who are not immune) 28 U.S.C. § 1915(e)(2)(B). Similarly, the complaint has been amended to meet the guidelines of Rule 8(a)(2) of the Federal Rules of Civil Procedure to ensure that this pleading contains "short and plain statement(s) of the claim showing that the pleader is entitled to relief." Further, In highlighting Plaintiff's meritorious, and substantive claims, the court shall assume that all factual allegations in the complaint are true. Parks Sch. of Bus. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

To meet this heightened standard, the complaint must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Where the complaint has been filed by a pro se plaintiff, as is the case here, courts must "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) "A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting Schucker v. Rockwood, 846 F.2d 1202, 1203−04 (9th Cir. 1988) (per curiam)).  In fact, Pro se litigants pleadings must be liberally construed.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696 (9th Cir. 1990).  Further, the complaint has been amended to:

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1. More completely state claim (enumerated) that includes (more than) sufficient factual allegations to place all defendants on notice of the basis for claims and determine plaintiff is entitled to relief,

2. Include a clear, chronological narrative of the facts giving rise to Plaintiff's claims, which meet and surpass the "plausibility" threshold required by Iqbal and Twombly, and

3. Lastly, includes clearly enumerated claims, causes of action, statute or theory of recovery.

**Side Notes on Fed Pro Bono Project**

Plaintiff appreciates the suggestion from Judge Spero, and welcomes additional wise counsel, and actually sought them out (before ever commencing any Federal Legal Action).  However, when Plaintiff sought out their services on multiple occasions, they said they couldn't serve him or help with his needs, and actually gave incorrect legal advice on the topic discussed.  It would have been great to have the additional support mechanism to help more quickly solve the legal puzzles, and construct documents more quickly and appropriately (as Plaintiff truly believes in the benefit and power of cooperative, and collaborative work).  Yet, they refused, so, alternatively, he did all on his own, independently, while maintaining his livelihood (as is also true for the other ongoing, and successful, Rights of Publicity, and Privacy, Lawsuit mentioned).

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

## B. Federal Court Jurisdiction

Under Article III of the Constitution, Federal courts can hear "all cases, in law and equity, arising

under this Constitution, [and] the laws of the United States…" See US Const, Art II, Sec. 2   The

Supreme Court has interpreted the clause broadly to hear any case with a federal ingredient.  See

Osborn v. Bank of the United States, 9 Wheat. (22 U.S.) 738 (1824).  Moreover there are two

general paths to partake in the Federal Judicial System and have the case heard: Diversity, and

Federal Question Jurisdiction.  Both are relevant, and applicable, to this case and controversy.

Under 28 USC 1331 a case that "arise[s] under" federal law shall be heard.  In *Austin v. Tesla, et.*

*al.* several of plaintiffs' claims for bringing suit are based in federal law.  Alternatively, and also

aligned with granting Federal Court jurisdiction and access Austin v. Tesla, et al meets the

Diversity standard for access.  Under 28 U.S.C. 1332, "the district courts shall have original

jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of

$75,000, exclusive of interests and costs, and is between 1) citizens of different States; …(c)(1) for

purposes of this section a corporation shall be deemed to be a citizen of every State … it has been

incorporated.  Under 28 U.S.C. 1332(c)(1)  for purposes of determining diversity jurisdiction, a

corporation is deemed to be a citizen of the State where it was incorporated and here Tesla is a

citizen of Delaware, and MVP/Balance a citizen of Illinois, and Plaintiff George J. Austin is a

citizen of California, since 1993 with the matter in controversy well over the financial threshold of

$75,000.  Thus either Federal Question Jurisdiction or alternatively Diversity Jurisdiction could be

applicable.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

### C. Facts  (Chronological & Substantive Order)

In Summer of 2019 Plaintiff, Mr. George Jarvis (J.) Austin, esq. (TBA), began working for Tesla, where 100% of the training, operations, and management occured, via an intermediary Staffing organization. MVP Personnel and a Division of MVP's company Balance Staffing  whom both components (MVP and Balance) directly paid wages to Plaintiff for work performed. Plaintiff, (University of California, Berkeley Graduate (09'), Honors Student, Bay Area Housing Commissioner, Alum, NAACP National Representative, and Local Youth and College President, Alum, California Senate, Governance and Finance Committee, Consultant, Capital Fellows, and Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and UCLA Anderson Riordan MBA, Fellows, Alum (08', 13'), T-14 Law Student, etc.), and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA) worked up through 2020 where the events fully triggering the need for litigation, on Plaintiff's behalf, occurred.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

One of the issues Plaintiff noticed were wage discrepancies.  When investigated further, and

provided more access to information by Defendant staff organizations Plaintiff reviewed check

stubs and discovered there were a second set of non-disputed separate wages he had not received

(but declared mine via name printed on payroll checks, permanent address printed on payroll

checks, social security number, and other unique identifiers signifying ownership.  These checks

have been repeatedly independently confirmed via Wage Affidavits from the Auditing Unit of

reputable California State Agency (as well as IRS).  From MVP Personnel's, and Balance

Staffing's explanation, both are part of the same parent Company, but operate somewhat

independently.  However, legal liability for both sets of wages, and other liability incurred, rests in

the parent Company, MVP Personnel, headquartered in Illinois.  According to (SEC) Securities

and Exchange Commision's Filings, Tesla is incorporated in, and a citizen of Delaware.  Plaintiff,

George Jarvis (J.) Austn, esq. (TBA) is a citizen of California, and has been since 1993 when he

moved here, with his mother, only child of mother, Charlotte Hall-Austin, from out of State.


Attorney of Record, and Plaintiff, Mr. George J. Austin, noticed wage, communication, operations,

safety employer issues, and attendance record discrepancies (in Tesla's official system; which all

defendant organizations make decisions based on).  Plaintiff notified all involved organizations,

and persons responsible (broadly Defendant's), for correction.  Because all operations, and

management, were handled at Tesla, but all pay went through Personnel (MVP/Balance)

Organizations, Attorney of Record, and Plaintiff, George J. Austin, took extra care to reach out via

multiple channels, and methods, and went as high up each organization's ladder as possible to

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

inquire, inform, make official demand for correction, and ultimately official complaint, including to the CEO of Tesla, via email, Elon Musk.  Plaintiff personally had no desire to sue, and would have initially preferred a non-litigation path to resolution.

Unfortunately, for those organizations, Attorney of Record, and Plaintiff's, inquiries, requests, demands, and complaints were not met with honesty, fair dealing, contract performance, or legal compliance in areas of violation, by Employers (or Defendants).  Communication from each company became more and more strained.  With access to communicating effectively increasingly limited, by the defendants.  Litigation became the most logical path forward.  In Early, 2020, Attorney of Record, and Plaintiff, made an appointment with a Human Resource Officer, and Hiring Manager for promotion.   Vice President of Tesla, at the time, Bert Breggman suggested Plaintiff, George J. Austin, meet with that department after being confirmed in writing, and verbally, repeatedly, of great work performance, by multiple person's of direct authority in my work environment.  Plaintiff made an appointment, independently, and communicated with that department, and person(s), for that purpose, and for resolution of the discrepancies mentioned, only.  This point, and purpose, was reaffirmed by that department, and by the MVP Personnel representative in the meeting.  Plaintiff never had been disciplined or informed of any violations before that point, or while at the meeting.  Plaintiff confirmed at the end of the meeting and Vince Woodard, HR Officer, again affirmed that he would be resolving the issue immediately, and getting in contact soon.  Again ensuring nothing disciplinary whatsoever; just to address advancement, pay issues, and my concerns.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Plaintiff was told to take the rest of the day off, with pay, as he said it had been unfair to him to

have to go through all those changes for something those companies were legally obligated to do.

Plaintiff did as instructed by the Human Resource Officer, Vince Woodard, and Instead of

resolution, a series of further employer(s) missteps occurred, including a false, and defaming,

accusation (resulting in negative employment action, including wrongful termination) of recording

a supervisor in violation of California Penal Law.   Attorney of Record, and Plaintiff, began

documenting, made written record, and limited communication as much as possible to email when

he noticed continued lies, unexplained issues, and discrepancies continuing even after brought to

management officers attention.  After repeated inquiry, and follow up, with no resolve, Attorney of

Record, and Plaintiff George J. Austin, filed suit to resolve the issues at hand, which given the

layers, and unwillingness for Defendants to resolve, without litigation, appeared appropriate and

the best path forward, especially given the circumstances.  Unfortunately, Plaintiff also suffered a

workplace lower extremity injury to which he has not yet healed, but has not received any

worker's compensation benefits, yet.


Plaintiff has applied for EDD disability benefits beginning 4/20/20, was granted benefits, and has

been getting some compensation (but severely underpaid according to statutorily entitled - even

though both wages were recognized; initially wrong quarter was utilized).  Authorities in the EDD

(Auditing and Accounting Departments) have personally reached out to Plaintiff to verify that the

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

appropriate amount of compensation, and upward calculation has been verified, and processed, but

somehow has not entered into Plaintiff bank account, yet (over 16 weeks late).


This highlighted specific set of facts for this amended complaint, has been expanded to include the

more recent facts leading to the immediate need and request: EDD compensation Injunctive relief.

Plaintiff was injured on the job (lower portion of body still unhealed, but to date received no

worker's compensation), and later outside of job (upper body injury).  Both injuries are still

unhealed, likely will not be healed until at least 2021.  Plaintiff has not received any worker's

compensation for his on the job injuries, and applied on 04/20/20 for outside of work injuries, and

subsequently received EDD Disability benefits.  Although Plaintiff began receiving Disability

benefits, and both unique sets of wages from Balance, and MVP, were recognized, and verified, by

EDD, and utilized as the wage basis in their system, Plaintiff noticed the State via EDD

Department used the wrong Calendar quarter, and sought correction.  Plaintiff sent in a variety of

communications, and calls to rectify the situation as early as May continuing into the present.  An

example, and quote from an earlier Plaintiff mailed, and faxed, notice to EDD after multiple phone

call follow ups, notice reads:


      "A representative in your department confirmed the OCT-DEC wages were

      almost updated in your system, and the department is almost complete with

      the calculation for my full benefit," but when I called there was no change

      in my file, and no notice of computation.  Further, the wages were not

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

scanned into the system, so not sure what the internal discrepancy was (As the Auditing Department already had in their system).  Previously, "I've also included a filed Wage Affidavit for an ongoing Federal lawsuit with my previous, Defendant, employers (for context).  See attached.  I am the Plaintiff, one who initiated the lawsuit (which has met Federal Judicial standards of review, and is now being served on Defendant Employers).  See attached.  I've re-included the key information for both purposes, one redacted (submitted to Federal Court), and one unredacted for our purposes here."  This information is already scanned into your system according to the representative I spoke with on the phone." - George J. Austin


Since then representatives and others have personally called to verify that the information had been corrected, updated, processed in their system, but Plaintiff still has yet to receive.  Most recently a notice had been both faxed to the Accounting and Auditing Department, and mailed to the appropriate organizational mailing address stating the need for correction, still.  A series of incorrect adjustments were made, and finally a point person for the Auditing department, Anna, called Plaintiff directly on 8/18/20, after previous assurances had been made months ago and said that she'd finished updating in the system and Plaintiff should be receiving shortly (within days; that was weeks ago).  She apologized for any inconvenience and said "God bless you" and thank you for your patience.  Yet, Plaintiff still hasn't received.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Defendant EDD has been severely, and extremely late in fully payment (though verified, and

approved multiple times by their Auditing and Accounting departments), in violation of Plaintiff's

due Process.  Plaintiff has been proactive and gone above and beyond providing all levels, and

layers of paperwork, documentation, proof, correspondence, phone calls, emails, internal

messages, etc to solve the problem.  Without exaggeration there has been at least 100 seperate

communications (in a variety of forms on resolving this specific issue, yet no resolution has been

materialized in Plaintiff's account).  Plaintiff has personally communicated with Anna, in the

Accounting and Auditing department on multiple occasions, sending necessary fax documents,

phone calls, and all supporting information for her so that she could, and did, conduct sufficient

due diligence on behalf of the State of California's EDD.  She did so, and assured that she had

gone above and beyond to personally investigate the employers, validate, and verify all wages,

connected account information, and documented her Auditing report in the system.  She personally

called me and said she made the adjustment several weeks ago (after I had already previously been

assured that this was complete several weeks prior to this).   Anna apologized for any

inconvenience to me, and said it would be available shortly, and proper adjustment would be made,

but still have not received.


Plaintiff is still very much injured.  Based on Plaintiff's body's recovery timetable, thus far, and the

physical standards, for Plaintiff's current area of very physical work and labor requirements

(standing 12 hours, lifting, moving and adjusting 50-100 pounds regularly, bending, adjusting

lifting etc) he likely will not be ready to return at least until 2021.  Plaintiff's previous Doctor, Lisa

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Nhu, committed a major invasion of privacy, and violation of HIPAA standards (and other tortious and unconstitutional acts) by sending my medical records to someone I've never met, and don't know, without notice, inquiry, verification, or permission, and retaliated when reporting the illegal behavior to Federal Agency responsible for oversight (and at this point will also be sued in Federal Court) *See Austin v. Atlina, et. al.*  The need for compliance with the statutory, and constitutional, requirements of immediate pay 'when due' is of utmost importance triggering the need for injunctive relief, to prevent further irreparable injury, and deprivation of Plaintiff's constitutional due process rights.

Currently, Defendant EDD, according to their own representatives, publications, and records, owes Plaintiff George J. Austin, Esq. (TBA), over $10,000(+) in backpay, and proper and full compensation rate going forward.  According to the EDD representatives, EDD website, CA UIC Unemployment (and Disability) Insurance Code, and in accord with Federal statutes including the Social Security Act, as well as the methodology for finding the appropriate base period, Plaintiff has been extremely underpaid with the incorrect rate from the beginning (over 16 weeks, and counting).  Under UIC section 2707.3. upon the filing of a claim for unemployment compensation disability benefits, the Employment Development Department <u>shall promptly</u> make a computation on the claim which shall set forth the maximum amount of benefits potentially payable during the disability benefit period and the weekly benefit amount.  The Employment Development Department (EDD) shall promptly notify the claimant of the computation.  Under UIC section 1329.5 which states Section 1326 "... the department <u>shall promptly pay benefits</u>."     To prevent

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

further irreparable injury, and violations of Section 303(a)(1) of the Social Security Act, 49 Stat.

626, as amended, 42 U.S.C. 503(a)(1), CA Labor Code Section 212, Unemployment Insurance

Code Section 1329.5, Labor Code Section 206, and the holdings Goldberg v. Kelly, 397 U.S. 254,

90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) as well as California Department of Human Resources

Development et al., Appellants, v. Judith JAVA ,402 U.S. 121 (91 S.Ct. 1347, 28 L.Ed.2d 666)

and in compliance with these statutes, and Due process, and other law, Plaintiff is requesting

injunctive relief as EDD to present still has not made correction to the point where Plaintiff

received (although representatives said they already processed in their system).


Throughout the beginning of the professional relationship between all parties Plaintiff has done his

best to maintain an open, candid, effective, and beneficial relationship with named parties to suit

(Defendants), and those not named.  Plaintiff has gone out of his way to ensure, or create an open,

and effective line of communication, and to proactively resolve issues outside of litigation.

However, whether due to hubris, or other Defendant parties self imposed limitations, litigation, and

injunctive relief has become the necessary means to resolve the issues at hand.


### 1. Defamation and Defamation Per Se in the Workplace.

Defendants Defamed Plaintiff.  Tesla, MVP, and Balance (broadly Defendants) collectively

practiced workplace defamation, and defamation per se, via Sandy Malloy (and other company

officers, and representatives). Defendants did so when Ms. Malloy spoke on all three entities

behalf, after communicating, and "publishing", a lie ("that Plaintiff recorded a supervisor against

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

California penal code; accusation of "a crime") with other company officers (Ms. Malloy didn't

clarify context, just made false statement presented as truth).  Defendants via Sandy Malloy made

defamatory statements in a decision making capacity (that Plaintiff recorded a supervisor against

California Penal Code), with a failed duty to ascertain truth before "publishing" those statements

against an employee, Plaintiff.  Defendants also used that lie to initiate negative employment

actions, and ultimately wrongful termination of Plaintiff, (University of California, Berkeley

Graduate (09'), Honors Student, Bay Area Housing Commissioner, Alum, NAACP National

Representative, and Local Youth and College President, Alum, California Senate, Capital Fellows,

Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and Anderson

Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as well as others), and Attorney of

Record, Mr. George Jarvis (J.) Austin, esq. (TBA)


In New York Times Co. v. Sullivan, supra, the Court for the first time held that the First

Amendment limits the reach of state defamation laws. That case concerned a public official's

recovery of damages for the publication of an advertisement criticizing police conduct in a civil

rights demonstration. As the Court noted, the advertisement concerned "one of the major public

issues of our time." Id., 376 U.S., at 271, 84 S.Ct., at 721. Noting that "freedom of expression

upon public questions is secured by the First Amendment," id., at 269, 84 S.Ct., at 720 (emphasis

added), and that "debate on public issues should be uninhibited, robust, and wide-open," id., at

270, 84 S.Ct., at 721 (emphasis added), the Court held that a public official cannot recover

damages for defamatory falsehood unless he proves that the false statement was made with "

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

'actual malice'-that is, <u>with knowledge that it was false or with reckless disregard of whether it was false or not</u>," id., at 280, 84 S.Ct., at 726. - Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 755, 105 S. Ct. 2939, 2943, 86 L. Ed. 2d 593 (1985)

Defamation is a false and unprivileged publication that has a natural tendency to injure the plaintiff or cause the plaintiff special damage See Taus v. Loftus (2007) 40 Cal.4th 683, 720.  Defamation may consist of libel (written) or slander (oral) forms of defamation. See Civ. Code § 44  Slander, most common in the workplace, is "a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means (including cell phones, and voice messages). . . ."  [Civ. Code § 46.]  A slanderous statement may charge a person with a crime, or with having been indicted, convicted, or punished for a crime.  It may also characterize a person as having an infectious, contagious, or loathsome disease, or as being impotent or lacking chastity. [Civ. Code § 46.].    Slander is more commonly found in the employment context than libel, particularly during pre-termination investigations, at termination, or even during post-employment conversations with prospective employers.  Statements that tend to injure an employee with respect to his or her occupation are especially slanderous, either by accusing the employee of an inability to perform the general functions required of his or her profession, trade, or business, or by imputing something with reference to the employee's office, profession, trade, or business that has a natural tendency to lessen its profits.  See Civ. Code § 46.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

The tort of defamation requires: (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) that has a natural tendency to injure or that causes special damage.  See Taus v. Loftus (2007) 40 Cal.4th 683, 720.  See also 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, sec. 529, p. 782, citing Civ. Code, secs 45-46 and cases.)

Here Defendants:

1.  Published:  Defendants published a statement by speaking to one other person (Sandy Malloy was not in the meeting thus someone had to communicate with her meeting the standard for publishing i.e. communicating to at least one other person).

    a.  Defendants communicated via multiple channels, and 'published' false information before saying the false information to Plaintiff.  The statements had no basis, and contradicted the meetings, written communications, and everything up until that point (and after), as it was a lie.  For the message to get to me, and for the accusation to be made, it had to go through at least two layers, or more of management, the Human Resource Officers, and or Team (of Tesla), and then the Human Resource Team, and Recruiter/Officer Sandy of MVP/Balance.  The statement representing a false record presented as truth by Sandy Malloy stated ahead of time that the person who reaches out for resolution of the issues (by Tesla's HR Officer) would be speaking on behalf of, and representing all three organizations with their words.  I didn't know who I would be hearing from to resolve the issues, but what I received were defamatory per se statements and

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

messages (see written transcription), thus incurring liability for all three, simultaneously.  Documented written conversations up till this point  The only mention of the false accusation of recording, was an after the fact excuse, but still did not address the fundamental questions the meeting was supposed to deal with. Without any details of where, when, and why this supposedly happened, and never any questions of did I record?  To which I would have answered no.  In a different shade of the meaning, record, I  did keep "record" in writing, because I realized dishonesty was becoming more apparent (both in my Tesla email, and my duplicate copies of certain communications outside their system), but never in the manner falsely accused.

2.  False Statements: It was a lie.  Here Defendants grossly negligent, and recklessly, unconcerned at best, and intentionally malicious at worse, published untruths and also took negative employment action.  Not only have I never recorded a supervisor against California Penal Code, but I also wasn't asked 'IF' I had before the accusation and negative employment action.

    a.  I didn't record a supervisor, or anyone else, at Tesla,  I had never been notified of an issue with recording anyone at Tesla prior to the, after the fact explanation, phone call from Sandy Malloy representing all organizational defendants (according to HR Officer Vince Woodard who spoke for Tesla).  Sandy Malloy, repeated the false statement to me via voicemail, as she was not present at the meeting with

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Vince.  Another MVP/Balance representative was present at the meeting.  I

received the defamatory statements after it had been passed through multiple layers

of each company, and through several parties.  The statement was false, and made

to my detriment, and incurred liability to the company.

3.   Defamatory Statements: Here Defendants In the workplace statements accusing of criminal

conduct are not only defamatory, but in California rise to the level of Per Se particularly

when injury occurs (i.e. negative employment action).  Accusations of Criminality,

particularly in California, especially in the workplace rise to the level of not just

defamation, but defamation per se (particularly when coupled with quantifiable harm -

though not a requirement as damages are presumed.

   a.   Here Defendants presented a lie as fact to the harm and detriment of the plaintiff.

      Further, this was not just any lie, but a particularly harmful lie causing economic,

      and other immediate damages.  Even more, the statements were made with reckless

      disregard, at best, of ascertaining truth before taking action.  Defendants falsely

      accused Plaintiff of a crime, without verifying, or even inquiring, on its veracity.

      Even more, this false accusation has created tremendous negative ripple effects and

      consequences.

4.   Which Were Unprivileged: Defendants defamatory statements were not privileged, and

instead were published without good faith, truth, and reckless disregard for veracity of

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

statement, and plaintiffs well being, and used to to take negative employment action(s).

Under CA Civil Code Section 47, subdivision (c) Defendants have the burden of

establishing that the statement was made on a privileged occasion, which they have not

done.  Further, Defendants demonstrated "actual malice" which destroys any qualified

privilege defense by showing that their publication was motivated by ill will, reckless

disregard, and lacked reasonable ground(s) for belief in the truth of publication.  See

Sanborn v. Chronicle Pub. Co. (1976) 18 Cal.3d 406,413,134 Cal.Rptr. 402,556, P.2d 764

   a.  Defendants could have simply asked or inquired before taking a negative leap of

       faith, and massive negative assumption, to assume and accuse of criminality.  Even

       more ironic is the fact that the company itself was sued by its employees (similarly

       situated to me) for the practice of doing that to its employees.  They lost.  Hypocrisy

       at its finest, and behavior incurring legal liability.


5.  Causing Injury: Here Plaintiff was directly injured by defamatory statements by Defendants

    including negative employment action(s), lost wages, emotional pain and suffering, injury

    to professional reputation, and other injuries.

   a.  Plaintiffs experience multiple layers of negative employment action, and harm,

       including lost past, present, and future wages, Tesla Car Ownership via winning

       competition (verified was eligible, in writing, by supervisor before negative

       employment action), professional reputational harm, emotional distress, etc. due to

       lies.  Defendants by intentionally lying, or with complete and reckless disregard to

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

truth, harmed Plaintiff and put in unnecessary vulnerable economic position,

unjustifiably.  The false, defamatory, and negative statements were analogous to the

false and harmful professional statements negatively affecting reputation, and

career, in the $5 Million judgement in Lawnwood Medical Center inc., v. Samuel

H. Sadow, M.D., Plaintiff suffered professional reputation attack, loss in wage, and

property, as well as opportunity costs.  In Tilkey v Allstate Insurance CA's Fourth

District Court of Appeal ruled that even self-compelled defamation (although this

wasn't self-compelled, it was just a lie) may provide a basis for a defamation per se

cause of action against employer punitive damage award of approximately

$16,000,0000.  Even without a pre-existing quantitative damage amount a primae

facie case of defamation per se presumes special damages.  A false accusation of

criminality [especially in the workplace] qualifies, and establishes presumed

damages.  In the case of Okeke v. Biomat USA,  Okeke's defamation claim rests

entirely on his allegation that Biomat told an employee of another corporation,

Telecris, that Okeke "was terminated because he sexually harassed a woman."

(Complaint # 1 at ¶ 42.) Courts have found that allegations of sexual harassment

against a professional can impute a lack of fitness. See, e.g., Ricciardi v. Weber, 350

N.J.Super. 453, 795 A.2d 914, 928 (2002); *1028 Wilcoxon v. Red Clay

Consolidated School District Board, 437 F.Supp.2d 235, 247–48 (D.Del.2006).

Accordingly, Okeke has successfully alleged a defamation per se claim in which

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

special damages are presumed. - Okeke v. Biomat USA, Inc., 927 F. Supp. 2d

1021, 1027–28 (D. Nev. 2013)


## 2. Non-Payment (and Withholding of Wages) in Violation of California UIC & Labor Codes

Defendants (including EDD) withheld, and did not pay Plaintiff wages, or appropriate

compensation, against CA Labor, UIC & DI Codes.  EDD, Tesla, MVP Personnel, and Balance

Staffing along with other defendants conspired in withholding, and non-payment of statutorily

entitled compensation, and undisputed wages (i.e. already printed and signed with my social

security number, unique check numbers, and full name (with middle initial), George J. Austin.

Defendants also conspired in non-payment of other wages to the detriment of Plaintiff, (University

of California, Berkeley Graduate (09'), Honors Student, Bay Area Housing Commissioner, Alum,

NAACP National Representative, and Local Youth and College President, Alum, California

Senate, Governance and Finance Committee, Consultant, Capital Fellows, and Senate Fellows Top

10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and Anderson Riordan MBA

Fellows, Alum (08', 13'), T-14 Law Student,  as well as others), and Attorney of Record, Mr.

George Jarvis (J.) Austin, esq. (TBA).


Under CA Labor Code Section 200(a) "wage" is defined as money or other value that is received

by an employee as compensation for labor or services performed. "Other value" could include

room, board, clothes, [cars, including bonuses, overtime pay incentives, stock/ownership, etc.] and

other benefits to which the employee is entitled as a part of his, or her, compensation.  A bonus is

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

performance-based compensation to be paid to an employee in addition to the employee's regular salary. (Duffy Brothers v. Bing & Bing (1939) 217 App.Div. 10, 215, N.Y.S. 755).  Bonuses constitute additional salary, and thus, must be paid in accordance with Labor Code sections 201 and 202 when an employee is terminated, or voluntarily quits, his, or her, employment.

Under CA Disability and Unemployment Code sections 2652-2658 the benefit amount, or disability 'wages' is determined by the highest quarterly earnings within a set period of time (approx. two year window).  Under CA Labor Codes 201, 202, 218, and 1194, a plaintiff is entitled to relief for unpaid, or withheld, wages (including overtime) when 1) plaintiff performed work for the defendant; 2) defendant owes plaintiff wages under the terms of the employment; 3) plaintiff worked overtime hours; 4) defendant knew or should have known that plaintiff had worked overtime hours; 5) plaintiff was either not paid or paid less than the wage or overtime rate for some or all of the hours worked; and 6) The employer debt for amount of wage or overtime pay is owed plaintiff/employee even if he or she would agree to work for a lower overtime rate (the entitlement is not eliminated).  Similarly, Under CA Disability and Unemployment Code (UIC) sections 2652-2658 a plaintiff is entitled to relief for unpaid, or withheld, statutorily predefined benefits, or disability 'wages,'

1.  Here Plaintiff is entitled to relief because:

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

a.   Plaintiff performed work for, and or is entitled to pay from, Organizational

Defendants (including EDD):

    i.   With previous employers Plaintiff performed work for defendants, and was

praised for work, and character, while performing duties by multiple persons

of authority in the respective companies.  Employment agencies and the

employers who contract with them are considered employers under the law

(Defendants and joint liability for wages can be placed on both the

employment agency (MVP/Balance) and the entity that supervises the work

(Tesla).  See *Martinez v. Combs (2010) 49 Cal.4th 35, 64, 71.*   Regarding

EDD plaintiff is entitled to unpaid, and underpaid benefit amounts, or

wages, already entered into the system, according to the Auditing and

Accounting Department, but still unpaid to Plaintiff, nor deposited into his

account.

b.   Defendants owe plaintiff wages:

    i.   Organizational Defendants respectively owe Plaintiff, George J. Austin,

wages under the terms of employment and California, and Federal law as

evidenced in the undisputed withheld, and unpaid wages, as well as

confirmation of these wages from an independent State Government

Auditing Agency which confirmed.  Similarly, EDD also owes plaintiff

unpaid, and underpaid benefit amounts, or wages, including the proper pay

rate going forward already entered into the system, according to the

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Auditing and Accounting Department, but still unpaid to Plaintiff, nor

deposited into his account.  A leader in that Department explicitly said they

had already been entered, and should be available shortly, but weeks have

passed, and still not received.

c.   Plaintiff worked overtime hours:

    i.   Plaintiff performed overtime work for defendants, and was praised for

work, and character, while performing duties by multiple persons of

authority in the respective companies.  Part of the reason Plaintiff's base rate

is high enough to qualify for the amount of benefit wages due to disability is

precisely because of overtime already entered into the system, according to

the Auditing and Accounting Department, but still unpaid to Plaintiff, nor

deposited into his account.

d.   Defendant knew or should have known plaintiff worked overtime:

    i.   Defendants knew, or should have known, that the plaintiff worked overtime

as he communicated with all respective persons in various departments,

including Tesla's CEO.  Defendant EDD is well aware of the total amount

of wages, as the Auditing Department leader, and representative, said she

personally verified wages, accounts, and completed full and thorough due

diligence, and follow up, before authorizing and entering into the system

(including overtime).  However, it is still unpaid to Plaintiff, nor deposited

into his account.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

e.   Plaintiff was either not paid, or paid less than wage, overtime, (or statutorily

entitled) pay:

     i.    Plaintiff, George J. Austin, was missing wages under the terms of

            employment and California, and Federal law as evidenced in the undisputed

            withheld, and unpaid wages, as well as confirmation of these wages from an

            independent State Government Auditing Agency, and IRS, which

            confirmed.  Also, Part of the reason Plaintiff's base rate is high enough to

            qualify for the amount of benefit wages due to disability is precisely because

            of overtime already entered into the system, according to the Auditing and

            Accounting Department.  Defendant EDD is well aware of the total amount

            of wages, as the Auditing Department leader, and representative, said she

            personally verified wages, accounts, and completed full and thorough due

            diligence, and follow up, before authorizing and entering into the system

            (including overtime).  However, it is still unpaid to Plaintiff, nor deposited

            into his account.

f.   Defendants (employers) owe plaintiff amount unpaid:

     i.    Defendants have to date still not paid the undisputed wages owed to

            Plaintiff, George J. Austin. Two sets of checks, two sets of transaction

            numbers, each check possessing a unique number representing a different

            wage (check), and all printed with my social security number, full name,

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

George J. Austin, permanent address, etc. Under CA Labor Law on

undisputed wages approximately $25,000, should have been paid

immediately, upon request, or the employer shall be liable for additional

liability, and penalties.  The veracity and authenticity of these wages have

been independently confirmed via a Wage Affidavit by an independent

State Government Auditing Agency which confirmed veracity of the

second set of wages [undisputed wages owed]. However, beyond the

disputed wages, there are additional missing past, present and future wages

(including bonus, incentives, stock, automobile, and other incentives or their

equivalent values) that can be more accurately determined during the

discovery process.  Further, Defendant EDD is well aware of the total

amount of wages, as the Auditing Department leader, and representative,

said she personally verified wages, accounts, and completed full and

thorough due diligence, and follow up, before authorizing and entering into

the system (including overtime).  However, it is still unpaid to Plaintiff, nor

deposited into his account.


Although public policy generally favors informal resolution of disputes, claims for wages (and

benefits, or disability wages) are in a (very) special category. (Reid, supra, 55 Cal.2d at p. 207, 10

Cal.Rptr. 819, 359 P.2d 251.) "It has long been recognized that wages are not ordinary debts, that

they may be preferred over other claims, and that, because of the economic position of the average

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

worker and, in particular, his dependence on wages for the necessities of life for himself and his

family, it is essential to the public welfare that he receive his pay when it is due." (In re Trombley

(1948) 31 Cal.2d 801, 809–810, 193 P.2d 734.)  See Also Hermann v. Charles Stratton, D.D.S.,

Inc., No. A095233, 2002 WL 193857, at *3 (Cal. Ct. App. Feb. 7, 2002).  A "willful" failure to

pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally

fails to pay wages to an employee when those wages are due.  Overtime wages must be paid no

later than the payday for the next regular payroll period following the payroll period in which the

overtime wages were earned. An employer shall be in compliance with Labor Code Section 226(a)

relating to total hours worked by the employee if the overtime hours are recorded as a correction on

the itemized statement for the next regular pay period and include the dates of the pay period for

which the correction is being made see Labor Code Section 204(b)(2)  An employer who willfully

fails to pay any wages due a terminated employee (discharge or quit) in the prescribed time frame

may be assessed a waiting time penalty. The waiting time penalty is an amount equal to the

employee's daily rate of pay for each day the wages remain unpaid, up to a maximum of thirty (30)

calendar days. Mamika v. Barca (1998) 68 Cal.App4th 487.  Additionally, an employee who is

discharged must be paid all of his or her wages, including accrued vacation, immediately at the

time of termination. Labor Code Sections 201 and 227.3


Where the FLSA [federal Fair Labor Standards Act] requires overtime pay only if an employee

works more than 40 hours per week, regardless of the number of hours worked during any one

day, California law, codified at Labor Code section 510, is more stringent and requires overtime

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

compensation for '[a]nywork in excess of eight hours in one workday and any work in excess of

40 hours in any one workweek.' " (Flowers v. Los Angeles County MetropolitanTransportation

Authority (2015) 243 Cal.App.4th 66, 83 [196 Cal.Rptr.3d 352], internal citation omitted.)

"[Employees are] entitled to the benefit of wage laws requiring an employer to promptly pay all

wages due, and prohibiting the employer from deducting unauthorized expenses from the

employee's wages, deducting for debts due the employer, or recouping advances absent the parties'

express agreement." (Davis v. Farmers Ins. Exchange (2016) 245 Cal.App.4th 1302,1330 [200

Cal.Rptr.3d 315].)   "The Labor Code's protections are 'designed to ensure that employees receive

their full wages at specified intervals while employed, as well as when they are fired or quit,' and

are applicable not only to hourly employees, but to highlycompensated executives and

salespeople." (Davis, supra, 245 Cal.App.4th at p.1331, internal citation omitted.)


[W]ages include not just salaries earned hourly, but also bonuses, profit-sharing plans, and

commissions." (Davis, supra, 245 Cal.App.4th at p. 1332, fn. 20.)   "[A]n employee's on-call or

standby time may require compensation."(Mendiola, supra, 60 Cal.4th at p. 840.)   "[Labor Code]

section 221 has long been held to prohibit deductions from an employee's wages for cash

shortages, breakage, loss of equipment, and other business losses that may result from the

employee's (or employer's) simple negligence."(Hudgins v. Neiman Marcus Group, Inc. (1995) 34

Cal.App.4th 1109, 1118 [41Cal.Rptr.2d 46].)   Further even if the employer mistakenly, or

intentionally, allowed a different person to use those wages, and cash those checks, those wages

are still owed to me.  "[A]n employer is not entitled to a setoff of debts owing it by an employee

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

against any wages due that employee." (Barnhill v. Robert Saunders & Co (1981) 125 Cal.App.3d

1, 6 [177 Cal.Rptr. 803].)  "State wage and hour laws 'reflect the strong public policy favoring

protection of workers' general welfare and "society's interest in a stable job market." See Cash v.

Winn (2012) 205 Cal.App.4th 1285, 1297, 140 Cal.Rptr.3d 867. See Also Flowers v. Los Angeles

Cty. Metro. Transportation Auth., 243 Cal. App. 4th 66, 82, 196 Cal. Rptr. 3d 352, 362 (2015)

They are therefore liberally construed (as are Pro Se Complaints) in favor of protecting workers.


Our Supreme Court has stated that, " '[I]n light of the remedial nature of the legislative enactments

authorizing the regulation of wages, hours and working conditions for the protection and benefit of

employees, the statutory provisions are to be liberally construed with an eye to promoting such

protection.' See Industrial Welfare Com. v. Superior Court, supra, 27 Cal.3d at p. 702, 166

Cal.Rptr. 331, 613 P.2d 579; see also Murphy, at p. 1103, 56 Cal.Rptr.3d 880, 155 P.3d 284" see

also Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012)

see also Flowers v. Los Angeles Cty. Metro. Transportation Auth., 243 Cal. App. 4th 66, 82, 196

Cal. Rptr. 3d 352, 362 (2015)  [G]iven the Legislature's remedial purpose, "statutes governing

conditions of employment are to be construed broadly in favor of protecting employees."].) See

Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012)


Under  CA Labor Code sec 206.5 There can be no valid release of any claim or right on account

of wages due unless the wages subject to the release have been paid.   "The purpose of section 206

is to prevent an employer from coercing a settlement by placing any condition on payment of

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

wages that are concededly due to the employee. It requires the employer to leave the employee to

all remedies for the balance claimed. The purpose of section 206.5 is to invalidate a release of *any*

wage claim before "such wages" are actually paid. Thus, by its terms, section 206.5 merely

prohibits release of a claim before the wages subject to the release have been paid."


"Although we find that the language of the statute is clear and does not need to refer to legislative

history, it also supports our construction. The Governor's Chaptered Bill File for Assembly Bill

No. 302, (which added section 206.5 in 1959), contains a letter to the governor from the legislative

representative of the California Labor Federation, stating that testimony before legislative

committees developed evidence of a wide-spread practice in the building industry of requiring

execution of a release as a condition of an employee's wage payment, and then raising the release

as a defense when the wage checks were dishonored. (Letter from C.J. Haggerty to Governor

Edmund G. Brown (June 11, 1959) p. 1.)  This letter evidences a concern that the wages due are

actually paid before the release can be raised as a defense to a wage claim.  Also, the bill

memorandum, dated June 16, 1959, that accompanied the assembly's unanimous vote on the bill

stated that the bill was designed "to provide a remedy against abuses on the part of an employer

who requires an employee to release his claim for wages as a conditional settlement of the claim for

an amount less than the wages actually due." (contained in Governor's Chaptered Bill File, ch.

1066, Bill Mem., Assem. Bill No. 302, (1959 Reg. Sess.) June 16, 1959.) This document indicates

a focus on requiring payment before the wage claim is released. See  Hermann v. Charles Stratton,

D.D.S., Inc., No. A095233, 2002 WL 193857, at *4 (Cal. Ct. App. Feb. 7, 2002)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

The Court finds that exhaustion under § 98.7 is not required before bringing a civil action under §§ 98.6 and 1102.5. In so holding, the Court finds Creighton persuasive and adopts its reasoning. Particularly, the Court agrees that the Private Attorneys General Act ("PAG Act" or "PAGA"), which covers the statutory claims at issue here, see Cal. Labor Code § 2699.5, indicates a legislative emphasis on private enforcement of the Labor Code that would be undercut by a mandatory exhaustion requirement before the Labor Commissioner. The PAG Act " 'empowers or deputizes an aggrieved employee to sue for civil penalties ... as an alternative to enforcement by the State.' " McKenzie v. Fed. Exp. Corp., 765 F.Supp.2d 1222, 1231 (C.D.Cal.2011) (quoting Villacres v. ABM Indus., Inc., 189 Cal.App.4th 562, 592, 117 Cal.Rptr.3d 398 (2010) (internal quotation, citation, and alterations omitted)). The Act allows private citizens to sue on behalf of themselves "and other current or former employees" for violations of the Labor Code, and permits said citizens to recover civil penalties otherwise recoverable only by the government. See § 2699(a). - Turner v. City and County of San Francisco, 892 F.Supp.2d 1188, 1202 (N.D.Cal.,2012)

Similar to Labor Code Requirements of timely, and full pay, the Insurance Code, inclusive of Unemployment & Disability Insurance Code has those same requirements for disability wages under the UIC.  "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." (Comunale v. Traders & General Ins.Co. (1958) 50 Cal.2d 654, 658 [328 P.2d 198].) "For the insurer to fulfill its obligation not to impair the right of the insured to receive the benefits

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

of the agreement, it again must give at least as much consideration to the latter's interests as it does

to its own." (Egan v. Mutual of Omaha Insurance Co. (1979) 24 Cal.3d 809, 818–819 [169

Cal.Rptr. 691, 620P.2d 141].)

"[T]o establish the insurer's 'bad faith' liability, the insured must show that the insurer has (1)

withheld benefits due under the policy, and (2) that such withholding was 'unreasonable' or

'without proper cause.' The actionable withholding of benefits may consist of the denial of benefits

due; paying less than due; and/or unreasonably delaying payments due." (Major v. Western

HomeIns. Co. (2009) 169 Cal.App.4th 1197, 1209 [87 Cal.Rptr.3d 556], internal citations

omitted.) " '[T]he covenant of good faith can be breached for objectively unreasonable conduct,

regardless of the actor's motive.' . . . [A]n insured plaintiff need onlyshow, for example, that the

insurer unreasonably refused to pay benefits or failed to accept a reasonable settlement offer; there

is no requirement to establish subjective bad faith." (Bosetti v. United States Life Ins. Co. in the

City Of New York (2009) 175 Cal.App.4th 1208, 1236 [96 Cal.Rptr.3d 744], original italics,

internal citations omitted.)

"Thus, a breach of the implied covenant of good faith and fair dealing involves something more

than a breach of the contract or mistaken judgment. There must be proof the insurer failed or

refused to discharge its contractual duties not because of an honest mistake, bad judgment, or

negligence, 'but rather by a conscious and deliberate act, which unfairly frustrates the agreed

common purposes and disappoints the reasonable expectations of the other party thereby depriving

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

that party of the benefits of the agreement.' " (Century Surety Co. v.Polisso (2006) 139 Cal.App.4th 922, 949 [43 Cal.Rptr.3d 468], internal citations omitted.) "[I]f the insurer denies benefits unreasonably (i.e., without any reasonable basis for such denial), it may be exposed to the full array of tort remedies, including possible punitive damages." (Jordan v. Allstate Ins. Co. (2007) 148 Cal.App.4th1062, 1073 [56 Cal.Rptr.3d 312].)  "Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." (R. J. Kuhl Corp. v. Sullivan (1993) 13 Cal.App.4th1589, 1602 [17 Cal.Rptr.2d 425].)

If an insurer "fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy,such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing. . . . [¶] . . . [W]hen the insurer unreasonably and in bad faith withholds payment of the claim of its insured, itis subject to liability in tort." (Gruenberg v. Aetna Insurance Co. (1973) 9Cal.3d 566, 574–575 [108 Cal.Rptr. 480, 510 P.2d 1032], original italics.) "An insurer's obligations under the implied covenant of good faith and fair dealing with respect to first party coverage include a duty not to

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

unreasonably withhold benefits due under the policy. An insurer that unreasonably delays, or fails

to pay, benefits due under the policy may be held liable in tort for breach of the implied covenant.

The withholding of benefits due under the policy may constitute a breach of contract even if the

conduct was reasonable, but liability in tort arises only if the conduct was unreasonable, that is,

without proper cause."(Rappaport-Scott v. Interinsurance Exch. of the Auto. Club (2007)

146Cal.App.4th 831, 837 [53 Cal.Rptr.3d 245], internal citations omitted.)


"[T]here are at least two separate requirements to establish breach of the implied covenant: (1)

benefits due under the policy must have been withheld;and (2) the reason for withholding benefits

must have been unreasonable or without proper cause." (Love v. Fire Insurance Exchange (1990)

221Cal.App.3d 1136, 1151 [271 Cal.Rptr. 246], internal citations omitted.) "[A]n insurer denying

or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured

as to the existence of coverage liability or the amount of the insured's coverage claim is not liable

in bad faith even though it might be liable for breach of contract." (Chateau Chamberay

Homeowners Assn. v. Associated International Insurance Co. (2001) 90Cal.App.4th 335, 347

[108 Cal.Rptr.2d 776].)  Here there are no disputes, just improper withholding.  "We evaluate the

reasonableness of the insurer's actions and decision to deny benefits [or unduly delay] as of the

time they were made rather than with the benefit of hindsight." (Century Surety Co. v. Polisso

(2006) 139 Cal.App.4th 922, 949 [43Cal.Rptr.3d 468].)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

"[I]f the insurer denies benefits unreasonably (i.e., without any reasonable basis for such denial), it may be exposed to the full array of tort remedies, including possible punitive damages." (Jordan v. Allstate Ins. Co. (2007) 148 Cal.App.4th1062, 1073 [56 Cal.Rptr.3d 312].)" '[D]enial [or delay] of a claim on a basis unfounded in the facts known to the insurer, or contradicted by those facts, may be deemed unreasonable. "A trier of fact mayfind that an insurer acted unreasonably if the insurer ignores evidence available to it which supports the claim. The insurer may not just focus on those facts which justify denial of the claim." ' " (Maslo v. Ameriprise Auto & Home Ins.(2014) 227 Cal.App.4th 626, 634 [173 Cal.Rptr.3d 854].)  "We conclude . . . that the duty of good faith and fair dealing on the part of defendant insurance companies is an absolute one. . . . [T]he nonperformance by one party of its contractual duties cannot excuse a breach of the duty of good faith and fair dealing by the other party while the contract between them is in effect and not rescinded." (Gruenberg, supra, 9 Cal.3d at p. 578.) [A]n insurer may act unreasonably by failing to pay damages that are certain and demanding arbitration on those damages." (Maslo,supra, 227Cal.App.4th at pp. 638–639 [uninsured motorist coverage case].)

"[T]he insurer's duty to process claims fairly and in good faith [is] a non delegable duty." (Hughes v. Blue Cross of Northern California (1989) 215Cal.App.3d 832, 848 [263 Cal.Rptr. 850].)  "[I]n [a bad-faith action] 'damages for emotional distress are compensable as incidental damages flowing from the initial breach, not as a separate cause of action.' Such claims of emotional distress must be incidental to 'a substantial invasion of property interests.' " (Major v. Western Home Ins. Co. (2009) 169Cal.App.4th 1197, 1214 [87 Cal.Rptr.3d 556], original italics, internal citations

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

omitted.)  "To fulfill its implied obligation, an insurer must give at least as much consideration to

the interests of the insured as it gives to its own interests.When the insurer unreasonably and in bad

faith withholds payment of the claim of its insured, it is subject to liability in tort. And an insurer

cannot reasonably and in good faith deny payments to its insured without fully investigating the

grounds for its denial." (Frommoethelydo v. Fire Insurance Exchange (1986) 42Cal.3d 208,

214–215 [228 Cal.Rptr. 160, 721 P.2d 41], internal citation omitted.)


"To protect [an insured's] interests it is essential that an insurer fully inquire into possible bases that

might support the insured's claim. Although we recognize that distinguishing fraudulent from

legitimate claims may occasionally be difficult for insurers, . . . an insurer cannot reasonably and in

good faith deny payments to its insured without thoroughly investigating the foundation for its

denial." (Egan, supra, 24 Cal.3d at p. 819.)  "When investigating a claim, an insurance company

has a duty to diligently search for evidence which supports its insured's claim. If it seeks to

discover only the evidence that defeats the claim it holds its own interest above that of the insured."

(Mariscal v. Old Republic Life Ins. Co. (1996) 42 Cal.App.4th1617, 1620 [50 Cal.Rptr.2d 224].)


### 3. Non-Payment (and Withholding of Wages) in violation of FLSA


Defendants withheld and did not pay plaintiff against Fair Labor Standards Act.  Tesla, MVP

Personnel, and Balance Staffing along with other defendants conspired in withholding, and

non-payment of undisputed wages, and overtime wages (i.e. already printed and signed with my

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

social security number, unique check numbers, and full name (with middle initial) George J. Austin

to the detriment of Plaintiff, (University of California, Berkeley Graduate (09'), Honors Student,

Bay Area Housing Commissioner, Alum, NAACP National Representative, and Local Youth and

College President, Alum, California Senate, Governance and Finance Committee, Consultant,

Capital Fellows, and Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA

Law, and Anderson Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as well as

others), and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA).


Under the FLSA employees in the United States must be paid at least one and one-half the regular

rate of pay for all hours worked (overtime) over 40 hours in a workweek.  Our Supreme Court has

stated that, " '[I]n light of the remedial nature of the legislative enactments authorizing the

regulation of wages, hours and working conditions for the protection and benefit of employees, the

statutory provisions are to be liberally construed with an eye to promoting such protection.' See

Industrial Welfare Com. v. Superior Court, supra, 27 Cal.3d at p. 702, 166 Cal.Rptr. 331, 613 P.2d

579; see also Murphy, at p. 1103, 56 Cal.Rptr.3d 880, 155 P.3d 284" see also Brinker Rest. Corp.

v. Superior Court, 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012) see also Flowers v. Los

Angeles Cty. Metro. Transportation Auth., 243 Cal. App. 4th 66, 82, 196 Cal. Rptr. 3d 352, 362

(2015)  [G]iven the Legislature's remedial purpose, "statutes governing conditions of employment

are to be construed broadly in favor of protecting employees."].) See Brinker Rest. Corp. v.

Superior Court, 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012)  The FLSA [Federal Fair

Labor Standards Act] requires overtime pay… if an employee works more than 40 hours per week,

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

regardless of the number of hours worked during any one day." (Flowers v. Los Angeles County

MetropolitanTransportation Authority (2015) 243 Cal.App.4th 66, 83 [196 Cal.Rptr.3d 352],


Under the Fair Labor Standards Act, of 1938, § 1 et seq., 29 U.S.C.A. § 201, the Plaintiff shall

succeed in recovery of claims with proving by a preponderance of the evidence that Plaintiff was

a) and employee of Defendant, b) engaged in commerce and c) the Defendant did not pay him the

legally required overtime or other bonus, and incentive pay.

   1.   Here Defendants:

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

a.  Employed Plaintiff:

    i.   During the time period involved Plaintiff was employed by Defendants, and was praised for work, and character, while performing duties by multiple persons of authority in the respective companies.  Employment agencies and the employers who contract with them are considered employers under the law (Defendants and joint liability for wages can be placed on both the employment agency (MVP/Balance) and the entity that supervises the work (Tesla).  See *Martinez v. Combs (2010) 49 Cal.4th 35, 64, 71*

b.  Engaged Plaintiff in Commerce through employment:

    i.   Plaintiff's work was engaged in commerce or in the production of goods for commerce.  Tesla is one of the top car and energy manufacturers in the World and is rapidly growing and thus Defendant's business or businesses under unified operation or common control met the standard (employed at least two persons and was engaged in commerce or the production of goods for commerce and had an annual gross sales of at least $500,000.00).  In my direct role I engaged in commerce as defined as a person who produced, manufactured, mined, handled, transported, or in any manner worked on such goods or worked in any closely related process or occupation directly essential to the production of the goods.

c.  Failed to Pay Plaintiff

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

      i.     Defendant failed to pay the Plaintiff the overtime pay required by law.

Defendants have to date still not paid the undisputed wages owed to

Plaintiff, George J. Austin. Two sets of checks, two sets of transaction

numbers, each check possessing a unique number representing a different

wage (check), and all printed with my social security number, full name,

George J. Austin, etc. Under CA Labor Law on undisputed wages

approximately $25,000, should have been paid immediately, upon request,

or the employer shall be liable for additional liability, and penalties.  The

veracity and authenticity of these wages have been independently confirmed

via a Wage Affidavit by an independent State Government Auditing

Agency which confirmed the veracity of the second set of wages

[undisputed wages owed]. However, beyond the disputed wages, there are

additional missing past, present and future wages (including bonus,

incentives, stock, automobile, and other incentives or their equivalent

values) that can be more accurately determined during the discovery

process.  Under the FLSA An employer must pay its employees at least one

and one-half times their regular rate for overtime work.


The Fair Labor Standards Act was designed to extend the frontiers of social progress by [ensuring]

all able-bodied working men and women a fair day's pay for a fair day's work. Fair Labor

Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.  See 401 F.Supp.3d 886  For

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

purposes of the requirement under the Fair Labor Standards Act (FLSA), that covered workers be

paid at least 1.5 times their regular rate for work exceeding 40 hours weekly, "regular rate" is

defined as the hourly rate actually paid the employee for the normal, non-overtime workweek for

which he is employed. Fair Labor Standards Act of 1938 § 7, 29 U.S.C.A. § 207(e); 29 C.F.R. §

778.108.  See 401 F.Supp.3d 886  An employer commits a willful violation of the Fair Labor

Standards Act (FLSA), making the three year statute of limitations applicable, if it knew or showed

reckless disregard for the matter of whether its conduct was prohibited by the FLSA. Fair Labor

Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq  See 401 F.Supp.3d 886


"A violation of the FLSA is willful if the employer 'knew or showed reckless disregard for the

matter of whether its conduct was prohibited by the [FLSA]." Chao v. A–One Med. Servs., Inc.,

346 F.3d 908, 918 (9th Cir. 2003) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133,

108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)) (alteration in original); Flores v. City of San Gabriel, 824

F.3d 890, 906 (9th Cir. 2016) ("A violation is willful if the employer knew or showed reckless

disregard for the matter of whether its conduct was prohibited by the [FLSA].") (internal quotation

and citation omitted) (alteration in original).5  The Ninth Circuit has found willfulness where the

employer was "on notice of its FLSA requirements, yet took no affirmative action to assure

compliance with them." Alvarez v. IBP, Inc., 339 F.3d 894, 909 (9th Cir. 2003).  See also Hugler

v. Kazu Constr., LLC, 262 F. Supp. 3d 1032, 1036 (D. Haw. 2017)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

The FLSA requires covered workers to be paid at least 1.5 times their normal rate for all work in excess of forty hours weekly, 29 U.S.C. § 207(a)(1), provided the employer has actual or constructive knowledge that the work is occurring. 29 C.F.R. § 785.11; Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981). Employers who violate this requirement are liable for damages in the amount of the unpaid overtime, "an additional equal amount as liquidated damages," and "reasonable attorney's fee ... and costs." 29 U.S.C. § 216(b).  See Campbell v. City of Los Angeles, 903 F.3d 1090, 1102 (9th Cir. 2018)

"The Fair Labor Standards Act was designed to 'extend the frontiers of social progress' by '[e]nsuring to all our able-bodied working men and women a fair day's pay for a fair day's work.' " A.H. Phillips v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945) (quoting Message of the President to Congress, May 24, 1934). Among the protections offered to workers under the FLSA are a federal minimum wage and limits on overtime. See 29 U.S.C. §§ 206, 207. The FLSA requires covered workers to be paid at least 1.5 times their normal rate for all work in excess of forty hours weekly. 29 U.S.C. § 207(a)(1). The FLSA defines "regular rate" broadly as "all remuneration for employment." 29 U.S.C. § 207(e). "Courts have defined 'regular rate' more specifically as 'the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed.' " Parth v. Pomona Valley Hosp. Med. Ctr., No. CV 06-04703 MMM (FFMx), 2007 WL 9193688, at *6 (C.D. Cal. Dec. 5, 2007) (citing Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945); 29 C.F.R. § 778.108). "Employers who violate this requirement are liable for damages in the

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

amount of the unpaid overtime, "an additional equal amount as liquidated damages," and a "reasonable attorney's fee ... and costs." Campbell v. City of Los Angeles, 903 F.3d 1090, 1102 (9th Cir. 2018) (quoting 29 U.S.C. § 216(b))  See 401 F.Supp.3d 886, 895


An employee's regular rate is the basis for calculating any overtime pay due the employee.  The regular rate for a week is determined by dividing the first 40 hours worked into the total wages paid for those 40 hours. The overtime rate, then, is one and one-half times that rate.  Additionally, The United States Department of Labor recently added language to clarify the Employer's legal responsibilities, and incurred liabilities, with the Fluctuating Workweek Method of Computing Overtime under 29 CFR 778.114  The final rule clarifies that payments in addition to the fixed salary are compatible with the use of the fluctuating workweek method under the Fair Labor Standards Act (FLSA)  It adds language to 29 CFR 778.114(a) to expressly state that employers can pay bonuses, premium payments, or other additional pay, such as commissions and hazard pay, to employees compensated using the fluctuating workweek method of compensation. (The rule also states that such supplemental payments must be included in the calculation of the regular rate unless they are excludable under FLSA sections 7(e)(1)–(8)). The rule grants employers greater flexibility to provide bonuses or other additional compensation to nonexempt employees whose hours vary from week to week, and eliminates any disincentive for employers to pay additional bonus or premium payments to such employees.  Addresses uncertainty and adds examples to 29 CFR 778.114(b) to illustrate these principles where an employer pays an employee, in addition to a fixed salary (1) a night shift differential and (2) a productivity bonus.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

### 4. **Conversion**

Organizational Defendants (including EDD) practiced conversion of Plaintiff's property.  Tesla, EDD, MVP Personnel, and Balance Staffing along with other defendants knowingly conspired to commit the tort of conversion of non-paid, and undisputed wages, and statutorily defined, and entitled Disability benefit wages.  These wages have already been verified by the EDD's Auditing, and Accounting Department, with respective employers, and confirming accounts and wages printed and signed with my social security number, unique check numbers, and full name (with middle initial) George J. Austin.  Defendants, unconstitutional, and tortious, non-(and delayed) payment of wages was to the detriment of Plaintiff, (University of California, Berkeley Graduate (09'), Honors Student, Bay Area Housing Commissioner, Alum, NAACP National Representative, and Local Youth and College President, Alum, California Senate, Governance and Finance Committee, Consultant, Capital Fellows, and Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as well as others), and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA).


Conversion is essentially the civil law equivalent to criminal theft. Plaintiff's must have right to possession, title, or ownership of the personal property to sue for conversion. [Gen. Motors Acceptance Corp. v. Dallas (1926) 198 Cal. 365, 370 (where conversion occurred after sale of automobile, buyer must either show certificate of ownership or actual possession to sue for

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

conversion); Witkin § 705]  Generally, conversion is the wrongful exercise of dominion over the personal property of another. [De Vries v. Brumback (1960) 53 Cal. 2d 643, 647 (conversion is "an act of willful interference with personal property, done without lawful justification, by which any person entitled thereto is deprived of the use and possession of the personal property"); Steele v. Marsciano (1894) 102 Cal. 666, 669; 5 Witkin Summary of California Law Torts § 699 (10th ed. 2005)].  A person with a special interest with a right of possession can sue for conversion. [Dept. of Industrial Relations v. UI Video Stores (1997) 55 Cal. App. 4th 1084, 1095 (state agency with immediate right to possession of checks could sue for conversion); Witkin § 706] 3.

One can have ownership without possession.  An owner not in possession may also sue for conversion. [Reynolds v. Lerman (1956) 138 Cal. App. 2d 586, 596 (where debtor sued sheriff for wrongful sale of debtor's attached property, debtor's conversion claim was valid because he was owner despite not having a right of immediate possession) Witkin § 707]   Property is a broad concept that includes "every intangible benefit and prerogative susceptible of possession or disposition[,]" conversion generally involves tangible personal property. [Witkin §§ 701, 702; See Downing v. Mun. Ct., 88 Cal.App.2d 345, 350 (1948).] 1/15/2010 5:04 PM (2K) [CA Conversion Law Chapter, 1.13.doc] 1.  Intangible versus tangible property: while conversion developed to remedy the wrongful taking of physical personal property, "virtually every jurisdiction … has disregarded this rigid limitation to some degree." Kremen v. Cohen, 337 F.3d 1024, 1030, 1031-33 (9th Cir. 2003)  Conversion applies to all types of personal property: conversion is "a remedy for the conversion of every species of personal property," [Payne v. Elliot, 54 Cal. 339, 341 (1880)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

(holding that shares in a corporation, money (or specifically payroll checks) is a possible

conversion cause of action for a specific identifiable sum of money. [Haigler v. Donnelly (1941) 18

Cal. 2d 674, 681


To succeed Intentional interference is required: a conversion cause of action arises only from

intentional acts causing substantial interference with an owner's property right. [Zaslow v.

Kroenert (1946) 20 Cal. 2d 541, 550 (taking possession of and locking building, by itself, does not

constitute interference without intent to convert possession); Enterprise Leasing Corp. v. Shugart

Corp. (1991) 231 Cal. App. 3d 737, 748 (plaintiff need only show that he was entitled to

possession at time of conversion; later recovery of property does not preclude conversion claim);

Witkin § 708] 1. Interference must be substantial: "[w]here the conduct complained of does not

amount to a substantial interference with the possession of or the right thereto, but consists of the

intermeddling with or use of, or damages to the personal property[,]" no conversion exists. [Jordan

v. Talbot, 55 Cal.2d 597, 610 (1961) (citing Zaslow v. Cronert, 29 Cal.2d 541, 551 (1946))] ii.

Control may be sufficient: manual taking of the plaintiff's personal property is not required; any

wrongful assumption of control may constitute actual interference. [Gruber v. Pacific States

Savings & Loans Co. (1939) 13 Cal. 2d 144, 147 (landlord's refusal to permit tenant to remove

personal property amounted to conversion); Witkin § 709]


Even within the confines of the *Voris* holding by the California State Supreme Court, which is

broadly adverse to more traditional unpaid wages conversion claim, supports this claim due to an

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

identifiable, ownership interest, uncontested (i.e. checks in my name, social security number, etc.),

defined amount of money.  Public policy generally favors informal resolution of disputes, claims

for wages [especially uncontested wages] are in a special category. (Reid, supra, 55 Cal.2d at p.

207, 10 Cal.Rptr. 819, 359 P.2d 251.) "It has long been recognized that wages are not ordinary

debts, that they may be preferred over other claims, and that, because of the economic position of

the average worker and, in particular, his dependence on wages for the necessities of life for

himself and his family, it is essential to the public welfare that he receive his pay when it is due."

(In re Trombley (1948) 31 Cal.2d 801, 809–810, 193 P.2d 734.)  See Also Hermann v. Charles

Stratton, D.D.S., Inc., No. A095233, 2002 WL 193857, at *3 (Cal. Ct. App. Feb. 7, 2002)  This is

even more true with undisputed wages as they are immediately owed, and considered property of

the employee.  Some additional examples of conversion are wrongful withholding of plaintiff's

property. [Edwards v. Jenkins (1932) 214 Cal. 713, 720; Witkin § 712] 1/15/2010 5:04 PM (2K)

[CA Conversion Law Chapter, 1.13.doc] 5  Delivery of goods to the wrong person. [Byer v.

Canadian Bank of Commerce (1937) 8 Cal. 2d 297, 299; Witkin § 712] Intangible property

represented by physical document: possible conversion cause of action for improper use of

intangibles represented by documents, i.e., bonds, notes, stock certificates, negotiable instruments,

etc. [Acme Paper Co. v. Goffstein (1954) 125 Cal. App. 2d 175, 179 (conversion of check); Mears

v. Crocker First Nat'l Bank (1948) 84 Cal. App. 2d 637, 644 (conversion of stock share

certificate); Cal. Jur. § 12; Witkin § 702]

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

The *Robles* court combating the unconstitutional state conversion, or theft, of funds notes that "the

prompt payment of benefits is the ' "very essence" ' of the unemployment compensation insurance

program" (id. at p. 546), that "Robles had shown himself substantively eligible for the identified

benefits by attesting to his availability, and diligent search, for work" (id. at p. 552), and that

"EDD's chosen process in response to the Writ had utterly failed to result in the timely payment of

all of the benefits to which Robles was entitled" (ibid.), we held that the trial court properly ordered

the immediate payment of benefits without requiring Robles to jump any additional procedural

hurdles (ibid.). As a result, EDD paid the remaining amounts owed, resulting in Robles' total

recovery of $66,214.53." 'The fundamental purpose of California's Unemployment Insurance

Code is to reduce the hardship of unemployment . . . .'(Paratransit, Inc. v. Unemployment Ins.

Appeals Bd. (2014) 59 Cal. 4th 551, 558, fn. omitted; see § 100 [unemployment insurance system

created to provide benefits 'for persons unemployed through no fault of their own' and to reduce

'the suffering caused thereby'].)  Specifically, ' "[u]nemployment (and Disability) benefits provide

cash to a newly unemployed (and injured) worker 'at a time when otherwise he would have

nothing to spend,' serving to maintain the recipient at subsistence levels without the necessity of his

turning to welfare or private charity." ' " (Robles II, supra, 236 Cal.App.4th at pp. 545–546.)

As a consequence, we have stressed the societal importance of an unemployment insurance system

that promptly pays recipients all benefits due. (See Robles II, supra, 236 Cal.App.4th at pp.

545–546 at p. 546 [noting that "the prompt payment of benefits is the ' "very essence" ' of the

unemployment compensation insurance program"].)  We have also emphasized the need to

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

"liberally construe the Unemployment Insurance Code to advance the legislative objective of

reducing the hardship of unemployment." (Ibid.; Robles I, supra, 207 Cal.App.4th at p. 1034.)

Here Plaintiff::

    a.  Had Right to Ownership or Possess

        i.  Plaintiff in fact had the right to possess said property [money] including

undisputed wages, as signified by social security number, name George J.

Austin, and other unique identifiers of rightful legal ownership as well as

undisputed statutorily predefined (already processed) EDD benefit wages.

Organizational defendants demonstrated, and are demonstrating, in multiple

ways that they intended, and intend, to permanently deprive me of wages or

so delay them to cause irreparable harm. The Employer undisputed, but

converted, wages are in my name, under my social security number, and

with easily discoverable unique identifiers (i.e. check numbers/dates, etc.)

and the predetermined, and already processed benefit compensation has

already been entered into the system according to the Auditing and

Accounting Department, but have been delayed over three months already.

This has been compounded by lying, deceptive practices, unnecessary

stalling techniques and a variety of constitutional, and tortious violations.

When approached to solve the issue with employers they have lied

repeatedly of their existence, and refused to cancel previous, and resend

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

once Identified of their existence.  Plaintiff notified Defendant organizations

of non-receipt of wages, and compensation and possessed right of

ownership, or possession, as demonstrated in the above described

phenomena.

b.  Was Deprived of Right/Interests

    i.   Defendant's disposition of property was in a manner inconsistent with

         plaintiff's property rights.  Plaintiff was deprived of said rights by EDD

         most immediately regarding predefined, verified, and processed, but delayed

         compensation (to the point of violating due process under *Goldberg*, and

         *Java).* Defendant Employers also did not properly notify of additional

         wages, or of delivery, and then further exacerbated liability by not

         correcting once Plaintiff discovered, and made formal inquiry, request, and

         demand.  Organization lied repeatedly, in writing, showing intent, and

         scienter, of their existence and further their intent to deprive. Defendants lost

         a tremendous amount of credibility while continually denying even though

         fairly easily ascertainable, discoverable contradicted, via subpoena (and

         other investigative, truth/fact finding methods).  Communicated to each part

         of the MVP Personnel, and its organization Balance Staffing, and Tesla, and

         none corrected, nor provided a solution (and continued the knowing

         dishonesty).  Pay, and Paystubs, clearly identified me as the owner of the

         property via social security number, name including middle initial, George J.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Austin, address listed on my drivers license, etc.  In California wages

[especially undisputed] are owned by employees.  Was deprived of, and

substantially interfered with, interest in the property by the defendant's

unauthorized act.

c.   c) Suffered damages

   i.   Plaintiff suffered direct, and indirect, damages with an immediate and direct

   known amount of approximately $25,000 and an unknown amount through

   discovery that will help determine a full amount.  It is likely an even larger

   direct amount of wages through fraudulent benefits, or incentives, paid to

   persons who stole those wages, and filed, also in my name (i.e. worker's

   compensation).  Those sums of money, stolen, or improperly converted,

   shall also be included in the total direct damages (as Defendants at

   minimum, aided and abetted, their theft (or conversion) if not directly stolen

   that money themselves).  Undisputed stolen, or converted, wages already

   have independently been verified through a Wage Affidavit, and

   investigation,via an independent and reputable government agency.


## 5. Breach of Employment Contract

Defendant's breached employment contract with Plaintiff.  Tesla, MVP Personnel, and Balance

Staffing along with other defendants collectively breached their employment contract, in violation

of not only "Good Cause," (express or implied), but also in tortious violation of laws against fraud,

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

deceit, and defamation.  All to the detriment of Plaintiff, (University of California, Berkeley

Graduate (09'), Honors Student, Bay Area Housing Commissioner, Alum, NAACP National

Representative, and Local Youth and College President, Alum, California Senate, Governance and

Finance Committee, Consultant, Capital Fellows, and Senate Fellows Top 10 out of 800+

Nationally Ranked, Alum (13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08',

13'), T-14 Law Student,  as well as others), and Attorney of Record, Mr. George Jarvis (J.) Austin,

esq. (TBA).


There can be no right to terminate for an unlawful reason or a purpose that contravenes

fundamental public policy. Any other conclusion would sanction lawlessness, which courts by

their very nature are bound to oppose.' " (Casella v. SouthWest Dealer Services, Inc. (2007)

157Cal.App.4th 1127, 1138–1139 [69 Cal.Rptr.3d 445],   Under California law, breach of implied

covenant of good faith and fair dealing in employment contracts is established whenever an

employer engages in bad-faith action extraneous to contract, combined with the employer's intent

to frustrate employee's enjoyment of contract rights. Huber v. Standard Ins. Co., 841 F.2d 980 (9th

Cir. 1988)  Ninth Circuit Court of Appeals in *Huber* held that when genuine issue of material fact

exists as to whether employer's discharge of employee was bad-faith action extraneous to

employment contract and done with intent to frustrate employee's enjoyment of contract rights

summary judgment is precluded under California law on claim of breach of implied covenant of

good faith and fair dealing in employment contract.  See Huber v. Standard Ins. Co., 841 F.2d 980

(9th Cir. 1988)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Good cause exists when an employer's decision to discharge or demote an employee is made in good faith and based on a fair and honest reason (a lie especially with reckless disregard for truth [malice] disqualifies).  Further, good cause does not exist if the employer's reasons for the discharge or demotion are trivial, arbitrary, inconsistent with usual practices, or unrelated to business needs or goals [or if the stated reasons conceal the employer's true reasons].  Even more, an employer cannot defraud, deceive, or defame to accomplish its ends, whether legitimate, or legitimate business needs.  At will presumption in law is limited by legal, and honest, dealing, when the alternative is present it destroys those employer protections and opens them up to liability for breach of contract and beyond.

Where there is no express agreement, the issue is whether other evidence of the parties' conduct has a 'tendency in reason' to demonstrate the existence of an actual mutual understanding on particular terms and conditions of employment. If such evidence logically permits conflicting inferences, a question of fact is presented."(Guz v. Bechtel National, Inc. (2000) 24 Cal.4th 317, 337 [100 Cal.Rptr.2d 352,8 P.3d 1089], internal citations omitted.)  "The presumption that an employment relationship of indefinite duration is intended to be terminable at will is therefore 'subject, like any presumption, to contrary evidence. This may take the form of an agreement, express or implied,that . . . the employment relationship will continue indefinitely, pending the occurrence of some event such as the employer's dissatisfaction with the employee's services or the existence of some "cause" for termination.' " (Foley v. Interactive Data Corp. (1988) 47 Cal.3d

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

654, 680 [254 Cal.Rptr. 211, 765P.2d 373], internal citation omitted.) "In Foley, we identified

several factors, apart from express terms, that may bear upon 'the existence and content of an . . .

[implied-in-fact] agreement' placing limits on the employer's right to discharge an employee. These

factors might include ' "the personnel policies or practices of the employer, the employee's

longevity of service, actions or communications by the employer reflecting assurances of continued

employment, and the practices of the industry in which the employee is engaged." ' " (Guz v.

Bechtel National, Inc. (2000) 24 Cal.4th317, 336–337 [100 Cal.Rptr.2d 352, 8 P.3d 1089], internal

citations omitted.)


Civil Code sections 1619–1621 together provide as follows: "A contract is either express or

implied. An express contract is one, the terms of which are stated in words. An implied contract is

one, the existence and terms of which are manifested by conduct." 'Good cause' or 'just cause' for

termination connotes ' "a fair and honest cause or reason," ' regulated by the good faith of the

employer. The term is relative, and defamatory lies bars and destroys good cause. Whether good

cause exists is dependent upon the particular circumstances of each case. In deciding whether a

good cause exists, there must be a balance between the employer's interest in operating its business

efficiently and profitably and the employee's interest in continued employment. Care must be

exercised so as not to interfere with the employer's legitimate exercise of managerial discretion.

While the scope of such discretion is substantial, it is not unrestricted. Good cause is not properly

found where the asserted reasons for discharge are 'trivial, capricious, unrelated to business needs

or goals, pretextual.' Where there is a contract to terminate only for good cause, the employer has

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

no right to terminate for an arbitrary or unreasonable decision."(Walker v. Blue Cross of California

(1992) 4 Cal.App.4th 985, 994 [6Cal.Rptr.2d 184], internal citations omitted, abrogated on another

ground inGuz, supra, 24 Cal.4th at p. 351.)


When the reason given for the discharge is misconduct, and there is a factual dispute whether the

misconduct occurred, then the court should give allow the finders fact to ascertain truth CACINo.

2405, Breach of Implied Employment Contract—Unspecified Term—"GoodCause"

Defined—Misconduct, (See Cotran v. RollinsHudig Hall International, Inc. (1998) 17 Cal.4th 93,

107 [69 Cal.Rptr.2d 900, 948P.2d 412].)13370015   "If the evidence is uncontradicted and permits

only one conclusion, then the issue [of good cause] is legal, not factual. Where, however, as here,

the evidence is contradicted, the issue is one for the trier of fact to decide." (Wallis V. Farmers

Group, Inc. (1990) 220 Cal.App.3d 718, 733 [269 Cal.Rptr. 299],disapproved on other grounds in

Dore v. Arnold Worldwide, Inc. (2006) 39Cal.4th 384, 394 fn. 2 [46 Cal.Rptr.3d 668, 139 P.3d

56].)



"[G]ood cause" in [the context of wrongful termination based on an implied contract] "is quite

different from the standard applicable in determining the propriety of an employee's termination

under a contract for a specified term."(Pugh, supra, 116 Cal.App.3d at p. 330.)  "We have held that

appellant has demonstrated a prima facie case of wrongful termination in violation of his contract

of employment. The burden of coming forward with evidence as to the reason for appellant's

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

termination now shifts to the employer. Appellant may attack the employer's offered explanation,

either on the ground that it is pretextual (and that the real reason is one prohibited by contract or

public policy, or on the ground that it is insufficient to meet the employer's obligations under

contract or applicable legal principles. Appellant bears, however, the ultimate burden of proving

that he was terminated wrongfully." (Pugh, supra, 116 Cal.App.3d at pp. 329–330, internal citation

omitted.)Secondary Sources3 Witkin, Summary of California Law (10th ed. 2005) Agency and

Employment,§§ 208, 209, 231Chin et al., Cal. Practice Guide: Employment Litigation ¶¶

4:270–4:273, 4:300 (TheRutter Group)1 Wrongful Employment Termination Practice

(Cont.Ed.Bar 2d ed.) ContractCACI No. 2404   A defamatory lie, without previous basis,

warning, employer due diligence (demonstrating a reckless disregard for truth at minimum)

qualifies to destroy good cause defense, and triggers liability.


Under California law breach of employment contract claim shall be meritorious when a) plaintiff

and defendant enter into an employment relationship. b)  Defendant promised, by words or

conduct, to discharge, or demote, plaintiff, only for good cause, and c) plaintiff substantially

performed his, or her, job duties unless plaintiff's performance was excused or prevented, d)

defendant discharged, or demoted plaintiff without good cause; and e). plaintiff was harmed by the

discharge, or demotion. See *Judicial Council of California Civil Jury Instructions* See also 1

Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, ["The determination whether a material

breach has occurred is generally a question of fact"].) Whether a partial breach of a contract is

material depends on "the importance or seriousness thereof and the probability of the injured party

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

getting substantial performance." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, §

852, pp. 938–940; Brown v. Grimes, 192 Cal. App. 4th 265, 278, 120 Cal. Rptr. 3d 893, 903

(2011)

Here there was:

    a.   Contract Formation:

        i.   Plaintiff and Defendants entered into an employment relationship.  See

            *Judicial Council of California Civil Jury Instructions* See also 1 Witkin,

            Summary of Cal. Law (10th ed. 2005) Contracts.  The formation of a

            contract between the Plaintiff, George J. Austin, and the Defendants Tesla,

            MVP/Balance was formed prior to beginning work in the summer and fully

            consummated once work began. This is evident in badges, work attire

            provided by the company, paystubs made out to me, in my name, and with

            my social security number, time sheets, work ID and other items and work

            records.

    b.   Implied or Express Good Cause

        i.   Defendant promised, by words or conduct, to discharge, or demote,

            plaintiff, only for good cause, See *Judicial Council of California Civil Jury*

            *Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Contracts.  The Implied and Express Good Cause clause was evident in

written, and oral word from the very beginning of training, and continued

indeed throughout the time working in a multitude of ways.  From the top

down the reason for emphasis on attendance, PPE, and other policies and

procedures from employees, and human resource handbooks, to which I

took heed (and extra care) and was commended for, were expression of

Good Clauses express or implied.


c.   Plaintiff Substantial Performance

    i.   Plaintiff substantially performed his job duties See *Judicial Council of*

*California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law

(10th ed. 2005) Contracts.  Plaintiff, George J. Austin, performed contract,

and duties, receiving positive feedback from peers, supervisors, Executive

leadership, officers and managers.  Not only was there not good cause for

firing, I was alternatively told repeatedly, and explicitly, by my supervisors

that I was doing an excellent job, and looking to promote me.  In fact I was

explicitly asked by my Supervisor if I had considered Management, while

he was saying he was impressed by my work.  The Vice President, and

head of the department I worked in said explicitly I should already be in a

lead, or Supervisor role.  I also received multiple positive written feedback

from a variety of sources.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

   d.   Defendant Non-performance, and discharge without Good Cause

      i.   Although Plaintiff substantially performed his job, and functions,
Defendants didn't hold their end of the bargain, and illegally discharged the
plaintiff without good cause; See *Judicial Council of California Civil Jury
Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005)
Contracts Defendant(s), collectively did not perform, or hold up, their end
of the contract.  Unfortunately they a) violated their duty to ensure receipt of
all [undisputed] wages assigned to me by their company, also b) failed to
properly, and honestly, remedy missing/stolen wages when notified (i.e. stop
order, and reprint), c) failed to conduct proper due diligence before, and
acted at best reckless (at worse maliciously) taking negative employment
and retaliatory action, d) violating public policy, and ethical baselines by
acting recklessly, and practicing defamation per se.  Defendants Failed to
perform.


   e.   e) Resulting damages to the plaintiff.

      i.   Plaintiff was harmed by the breach up and ultimate, discharge, or demotion.
See *Judicial Council of California Civil Jury Instructions* See also 1 Witkin,
Summary of Cal. Law (10th ed. 2005) Contracts.  Plaintiff, George J.
Austin, incurred multiple damages due to breach of contract including lost

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

wages, opportunities, incentives, bonuses, automobiles, other opportunities,

and forms of wages to be more fully and accurately determined through the

discovery process.


### 6. Fraudulent Misrepresentation

Defendants, including EDD, made fraudulent misrepresentation to and about Plaintiff.  Tesla,

MVP, and Balance (broadly Defendants) collectively caused injury, and prevented subsequent

employment, and delayed/underpaid, benefit payments, by Fraudulent Misrepresentation, via EDD

Officials, Sandy Malloy (and other company officers, and representatives). Defendants did so

when Ms. Malloy spoke on all three entities behalf, after communicating, and "publishing", a lie

("that Plaintiff recorded a supervisor against California penal code; accusation of "a crime") with

other company officers.  Defendants via Sandy Malloy not only made fraudulent

misrepresentations in a decision making capacity, and with a failed duty to ascertain truth, and

present truth, but used those misrepresentation to wrongfully withhold wages, initiate negative

employment actions, ultimately wrongful termination, and prevent subsequent employment of

Plaintiff, (University of California, Berkeley Graduate (09'), Honors Student, Bay Area Housing

Commissioner, Alum, NAACP National Representative, and Local Youth and College President,

Alum, California Senate, Capital Fellows, Senate Fellows Top 10 out of 800+ Nationally Ranked,

Alum (13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08', 13'), T-14 Law

Student,  as well as others), and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

"To establish a claim for fraudulent misrepresentation, the plaintiff must prove: '(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff.' " (Perlas v. GMAC Mortgage, LLC (2010) 187 Cal.App.4th 429, 434, 113 Cal.Rptr.3d 790 (Perlas )  See also Graham v. Bank of Am., N.A., 226 Cal. App. 4th 594, 605–06, 172 Cal. Rptr. 3d 218, 228 (2014)

Here Defendants:

1) Misrepresented

    i)    There were a series of multiple misrepresentations, outright lies, and fraudulent claims intended to take, steal, and deprive Plaintiff (presented as fact).  EDD has said for over 16 weeks that full payment was on the way, way beyond the bounds of 'when due,' constitutional due process and misrepresented themselves and their process (even when personally guaranteed by their Auditing Dept.) Defendants conspired to deprive of wages, and make false claim, and misrepresentation, of recording a supervisor with intent to deprive of wages, job, and benefits.  A fundamental lie, or misrepresentation, is that I recorded a supervisor (still

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

unsure of context or full meaning, but all I have is the message).  Asked for

clarity, and more information, in writing, none was provided. Another major

misrepresentation/lie, was  that the second group of checks/wages did not

exist, when they clearly were already made out in my name, with my social

security number, and ready to be cashed/deposited.  Additionally, it appears

Defendant EDD may have been engaged in further fraud by not only

promising, on a recorded line, but not paying the constitutionally entitled

compensation amount, but also appears EDD to have switched the name of

the employers from the two previous, to his detriment when that wasn't the

employer mentioned, or on his check stubs or other information submitted

for verification.  Even, further when Plaintiff looked up the name it's an

organization with 2 employees, located apparently in Fresno.  Plaintiff has

never heard of that organization until that point and more importantly is

concerned about the fraudulent misrepresentation (said explicitly was

already complete, and another employee verified it should have been

received weeks ago). Fraud omission and misrepresentation, as EDD did

not include any additional information about waiting period or any other

reason for unconstitutional due process delay of full pay.

2)  Had Scienter, or Knowledge of falsity

      i)   In each example of misrepresentation/false statement the defendants knew,

         or easily could have inquired to find out, and instead were grossly negligent,

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

but made the false statements anyway.  With defendant EDD for over 16 weeks, with internal checks and balance verifying the accuracy and authenticity, claiming to have already put in the adjustment it's clear they knew, and had scienter, of the falsity of their process, and follow up.  In the case of the checks, wages, not only did they deny their existence, when the official records (inside, and outside their company) say otherwise, but refused to offer any requested proof to show otherwise.  In the example of defamatory per se statements made resulting in negative employment action by employer, again, it was with knowledge, and reckless disregard.

3) Intended to defraud/deceive

    i)   Employer's, and Defendant's, intended to defraud as evidenced not only in the initial false statements, but in their responses to legitimate inquiry.  Defendant EDD has yet to make the adjustment as available in my account, and further after 16 weeks of promise, but no full payment it's clear of their intention (despite the personal assurances, and apologies, something is clearly wrong internally).  An honest mistake can often be corrected with honest recognition, and adjustment/correction as needed.  However, when the response is to further hide, retaliate, and deceive, it shows the true motives of the party.  Here, each inquiry was received not with honesty, but with more attempts to deceive, and create obstacles to finding the truth, and correcting any missteps (intentional, or by omission), the defendants made.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

4)  Induced plaintiff's justifiable reliance

      i)  Defendant EDD has consistently promised to make the adjustment available in my account, and given their state authority Plaintiff had reason to justifiable rely on their words.  Plaintiff would have responded sooner, and taken action, but for the justified reliance in his employer's, and collectively defendant's, words, though shown to be deceitful, and fraudulent.  Because Defendant's, as Plaintiff's employer, owed a special duty of care, loyalty, and responsibility, plaintiff by law had a reasonably justifiable reliance on the words of Defendants.  Although those words ultimately proved false, when there was no reason to assume they were lying, ultimately fraudulent, Defendants had a duty as employer to present the truth, and Plaintiff had a reasonable and justifiable reliance on their words.  Defendants lied about stolen/withheld wages [some of which were non-disputed], opportunities, as well as others.  Defendant's also made fraudulent representations about the plaintiff, mentioned above as defamation per se, with the intent of depriving plaintiff of property, rights and opportunities he was entitled to.

5)  resulting damage

      i)  Due to the misrepresentations by EDD, Employer, Plaintiff suffered a variety of damages of significant magnitude.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

"[F]fraudulent intent is an issue for the trier of fact to decide." (Beckwith v. Dahl(2012) 205 Cal.App.4th 1039, 1061 [141 Cal.Rptr.3d 142].)  "[T]here are two causation elements in a fraud cause of action.  First, the plaintiff's actual and justifiable reliance on the defendant's misrepresentation must have caused him to take a detrimental course of action. Second, the detrimental action taken by the plaintiff must have caused his alleged damage."(Beckwith, supra, 205 Cal.App.4th at p. 1062.  "[P]laintiffs argue that actual reliance cannot logically be an element of a cause of action for deceit based on an omission because it is impossible to demonstrate reliance on something that one was not told. In support of the argument, plaintiffs cite Affiliated Ute Citizens v. United States, supra, 406 U.S.128 (Ute) . . . Interpreting Rule 10b-5, the high court held that 'positive proof of reliance is not a prerequisite to recovery' in a case involving primarily a failure to disclose . . . .' [¶] Contrary to plaintiffs' assertion, it is not logically impossible to prove reliance on an omission.  One need only prove that, had the omitted information been disclosed, one would have been aware of it and behaved differently." (Mirkin, supra, 5 Cal.4th at p. 1093.)

"The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced. There is no duty resting upon a citizen to suspect the honesty of those with whom he [or she] transacts business. Laws are made to protect the trusting, as well as the suspicious. [T]he rule of caveat emptor should not be relied upon to reward fraud and deception." (Boschma,supra, 198 Cal.App.4th at p. 249, original italics.)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

### 7.  Fraudulent Concealment

Defendants fraudulently concealed material information from Plaintiff.  EDD, Tesla, MVP, and

Balance (broadly Defendants) collectively caused injury, and prevented subsequent employment

by Fraudulent Concealment.  Defendants collectively withheld, or lied directly, about vital

information in a decision making capacity to wrongfully withhold wages, initiate negative

employment actions, ultimately wrongful termination, and prevent subsequent employment of

Plaintiff, (University of California, Berkeley Graduate (09'), Honors Student, Bay Area Housing

Commissioner, Alum, NAACP National Representative, and Local Youth and College President,

Alum, California Senate, Capital Fellows, Senate Fellows Top 10 out of 800+ Nationally Ranked,

Alum (13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08', 13'), T-14 Law

Student,  as well as others), and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA)


The required elements for fraudulent concealment are: (1) concealment or suppression of a material

fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to

defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was

unaware of the fact and would not have acted as he or she did if he or she had known of the

concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or

suppression of the fact. (*Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862,

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

870, 130 Cal.Rptr.3d 504 (*Bank of America Corp.*).)  See Graham v. Bank of Am., N.A., 226 Cal.

App. 4th 594, 606, 172 Cal. Rptr. 3d 218, 228 (2014)


There must usually be a duty to disclose arising from a fiduciary or confidential relationship

between the parties. Here the Defendant parties clearly had a fiduciary and other duties as

employers.  However, in transactions that do not involve fiduciary or confidential relations, a duty

to disclose material facts may arise in at least three instances: (1) the defendant makes

representations but does not disclose facts that materially qualify the facts disclosed, or that render

his disclosure likely to mislead(option 2); (2) the facts are known or accessible only to defendant,

and defendant knows they are not known to or reasonably discoverable by the plaintiff (option

3);(3) the defendant actively conceals discovery from the plaintiff (option 4). (SeeWarner Constr.

Corp. v. L.A. (1970) 2 Cal.3d 285, 294 [85 Cal. Rptr. 444, 466 P.2d996].) For the second, third,

and fourth options, if the defendant asserts that there was no relationship based on a transaction

giving rise to a duty to disclose, the jury should also be instructed to determine whether the

requisite relationship existed.(See Hoffman v. 162 North Wolfe LLC (2014) 228 Cal.App.4th

1178, 1187 [175Cal.Rptr.3d 820].)


"The elements of fraud, which give rise to the tort action for deceit, are (1)misrepresentation (false

representation, concealment or non-disclosure); (2)knowledge of falsity (or 'scienter'); (3) intent to

defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." (Hackethal v.

National Casualty Co. (1987) 189 Cal.App.3d 1102, 1110 [234 Cal.Rptr. 853].)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Here Defendant Employers:

   A.  Concealed

        i)    There were a series of multiple misrepresentations, outright lies, and fraudulent claims intended to take, steal, and deprive Plaintiff.  EDD not only misrepresented in terms of follow through, and timeliness, of severely withheld, and underpaid wages, but actively concealed how long, or what was wrong internally to create the current due process, constitutional, and tortious violations.  Defendants further misrepresented and omitted info on Wages, False Claim of recording with intent to steal wages, job, benefits.  a) First lie, that I recorded a supervisor (still unsure of context or full meaning, but all I have is the message).  Asked for clarity, and more information, in writing, none was provided. b) Second misrepresentation/lie, second group of checks/wages did not exist, yet have been proven to exist and likely used by others not Plaintiff (discovery will uncover).  Additionally, it appears Defendant EDD may have been engaged in further fraud by not only promising, on a recorded line, but not paying the constitutionally entitled compensation amount, but also appears EDD to have switched the name of the employers from the two previous, to his detriment when that wasn't the employer mentioned, or on his check stubs or other information submitted for verification.  Even, further when Plaintiff looked up the name it's an

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

organization with 2 employees, located apparently in Fresno.  Plaintiff has

never heard of that organization until that point and more importantly is

concerned about the fraudulent misrepresentation (said explicitly was

already complete, and another employee verified it should have been

received weeks ago). Fraud omission and misrepresentation, as EDD did

not include any additional information about waiting period or any other

reason for unconstitutional due process delay of full pay.

## B. Had Knowledge of Falsity

ii)    In each example of misrepresentation/false statement the employer knew, or

easily could have inquired to find out, grossly negligent, but made the false

statements anyway.  With defendant EDD for over 16 weeks, with internal

checks and balance verifying the accuracy and authenticity, claiming to

have already put in the adjustment it's clear they knew, and had scienter, of

the falsity of their process, and follow up. In the case of the checks, wages,

not only did they deny their existence, when the official records (inside, and

outside their company) say otherwise, but refused to offer any requested

proof to show otherwise.  In the example of defamatory per se statements

made resulting in negative employment action by employer, again, it was

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

C. Intent to Defraud

iii)     Employer's, and Defendant's, intended to defraud as evidenced not only in

the initial false statements, but in their responses to legitimate inquiry.

Defendant EDD has yet to make the adjustment as available in my account,

and further after 16 weeks of promise, but no full payment it's clear of their

intention (despite the personal assurances, and apologies, something is

clearly wrong internally).  An honest mistake can often be corrected with

honest recognition, and adjustment/correction as needed.  However, when

the response is to further hide, retaliate, and deceive, it shows the true

motives of the party.  Here, each inquiry was received not with honesty, but

with more attempts to deceive, and create obstacles to finding the truth, and

correcting any missteps (intentional, or by omission), the defendants made.

D. Provide Justifiable Reliance

iv)     Defendant EDD has consistently promised to make the adjustment available

in my account, and given their state authority Plaintiff had reason to

justifiable rely on their words.  Plaintiff would have responded sooner, and

taken action, but for the justified reliance on his employer's words, though

shown to be deceitful, and fraudulent.  Because, defendant's, as Plaintiff's

employer, owed a special duty of care, loyalty, and responsibility, plaintiff

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

by law had a reasonably justifiable reliance on the words, though

fraudulent, of defendants

E. Resulting damage

      v)    Due to the omissions, concealments, and misrepresentations by EDD,

Employers, and broadly Defendants Plaintiff suffered a variety of damages

of significant magnitude.

"[T]he elements of an action for fraud and deceit based on a concealment are:(1) the defendant

must have concealed or suppressed a material fact, (2) the defendant must have been under a duty

to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or

suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware

of the fact and would not have acted as he did if he had known of the concealed or suppressed fact,

and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained

damage." (Boschma v. Home Loan Center,Inc. (2011) 198 Cal.App.4th 230, 248 [129 Cal.Rptr.3d

874].) "A duty to speak may arise in four ways: it may be directly imposed by statute or other

prescriptive law; it may be voluntarily assumed by contractual undertaking; it may arise as an

incident of a relationship between the defendant and the plaintiff; and it may arise as a result of

other conduct by the defendant that makes it wrongful for him to remain silent." (SCC

Acquisitions, Inc. v. Central Pacific Bank (2012) 207 Cal.App.4th 859, 860 [143 Cal.Rptr.3d

711].)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95042

"In transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; (3) the defendant actively conceals discovery from the plaintiff."(Warner Construction Corp., supra, 2 Cal.3d at p. 294, footnotes omitted.)  "[O]ther than the first instance, in which there must be a fiduciary relationship between the parties, 'the other three circumstances in which non-disclosure may be actionable: presuppose the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise. . . . "[W]here material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is some relationship between the parties which gives rise to a duty to disclose such known facts." [Citation.]' A relationship between the parties is present if there is 'some sort of transaction between the parties. [Citations.] Thus, a duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee,doctor and patient, or parties entering into any kind of contractual agreement.' "(Hoffman, supra, 228 Cal.App.4th at p. 1187, original italics, internal citations omitted.)

"Even if a fiduciary relationship is not involved, a non-disclosure claim arises when the defendant makes representations but fails to disclose additional facts which materially qualify the facts disclosed, or which render the disclosure likely to mislead." (Roddenberry v. Roddenberry (1996)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

44 Cal.App.4th 634,666 [51 Cal.Rptr.2d 907], internal citations omitted.)  "'[T]he rule has long

been settled in this state that although one may be under no duty to speak as to a matter, "if he

undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly

what he tells but also not to suppress or conceal any facts within his knowledge which materially

qualify those stated. If he speaks at all he must make a full and fair disclosure." ' " (Marketing

West, Inc. v. Sanyo Fisher (USA) Corp. (1992) 6Cal.App.4th 603, 613 [7 Cal.Rptr.2d 859].)


"[F]raudulent intent is an issue for the trier of fact to decide." (Beckwith v. Dahl(2012) 205

Cal.App.4th 1039, 1061 [141 Cal.Rptr.3d 142].)  "[T]here are two causation elements in a fraud

cause of action. First, the plaintiff's actual and justifiable reliance on the defendant's

misrepresentation must have caused him to take a detrimental course of action. Second, the

detrimental action taken by the plaintiff must have caused his alleged damage."(Beckwith, supra,

205 Cal.App.4th at p. 1062.  "[P]laintiffs argue that actual reliance cannot logically be an element

of a cause of action for deceit based on an omission because it is impossible to demonstrate reliance

on something that one was not told. In support of the argument, plaintiffs cite Affiliated Ute

Citizens v. United States, supra, 406 U.S.128 (Ute) . . . Interpreting Rule 10b-5, the high court held

that 'positive proof of reliance is not a prerequisite to recovery' in a case involving primarily a

failure to disclose . . . .' [¶] Contrary to plaintiffs' assertion, it is not logically impossible to prove

reliance on an omission. One need only prove that, had the omitted information been disclosed,

one would have been aware of it and behaved differently." (Mirkin, supra, 5 Cal.4th at p. 1093.)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

"The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced. There is no duty resting upon a citizen to suspect the honesty of those with whom he [or she] transacts business. Laws are made to protect the trusting as well as the suspicious. [T]he rule of caveat emptor should not be relied upon to reward fraud and deception." (Boschma,supra, 198 Cal.App.4th at p. 249.).

### 8. Tortious Interference with economic and contractual relations

Defendants tortiously interfered with economic and contractual relations. Tesla, MVP, Balance and other defendants collectively conspired to tortiously interfere with economic, present and future contractual relations to the detriment of Plaintiff, (University of California, Berkeley Graduate (09'), Honors Student, Bay Area Housing Commissioner, Alum, NAACP National Representative, and Local Youth and College President, Alum, California Senate, Capital Fellows, Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as well as others),and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA)

"The tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

that if it did not act with due care its actions would interfere with this relationship and cause

plaintiff to lose in whole or in part the probable future economic benefit or advantage of the

relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in

that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part

the economic benefits or advantage reasonably expected from the relationship." (North American

Chemical Co. v. Superior Court (1997) 59Cal.App.4th 764, 786 [69 Cal.Rptr.2d 466].)


The fundamental elements are the similar for prospective, contract, and economic or business

relations as well as existing contracts.  Thus, I'll combine into one claim for Tortious interference

with current contractual relations as well as prospective contract and business, (or economic)

relations as that combination most aptly fits the fact pattern. I had a current contract with all three

organizational defendants, but was on the verge of entering into new contractual and

economic/business relations directly with Tesla outside of the intermediaries prior to Tortious

interference.


Here Plaintiff, in establishing the claims of tortious interference with a) existing, b) prospective,

contratual and economic relations shows:

    a.   Were in an existing contract:

        i.   Plaintiffs and Defendants (including EDD) were in an existing contract as

            evidence by work relationships, payroll, and IDs/Badges.

    b.   Was on the verge of new, and improved contract(s)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

    i.    Plaintiffs and Defendants were on the verge of new, and improved

contracts, particularly directly with Defendant Company, Tesla as I had

been commended via multiple persons in leadership, and responsibility and

told directly by a Vice President of the company I should already be in a

higher position (based on performance, experience, character, education,

skill, etc.).  Plaintiff is also on the verge of new contracts with health care

providers to adequately address Plaintiff's long term and serious injuries.

c.  Was on the verge of new, and improved economic/business relationship

    i.    Plaintiff and Defendants, particularly Tesla, were on the verge of economic

and business relationship that likely would have resulted in a future

economic benefit to plaintiff particularly in the area of stock ownership, and

other incentive based benefits. I had been commended via multiple persons

in leadership, and responsibility and told directly by a Vice President of the

company I should already be in a higher position (based on performance,

experience, character, education, skill, etc.).  Multiple areas of incentive pay

(including individual stock ownership contracts) are part of the variety of

incentive based pay throughout the company.  Plaintiff is also on the verge

of new contracts with health care providers to adequately address Plaintiff's

long term and serious injuries, so that hopefully Plaintiff can heal fully and

be ready to take advantage of opportunities presented (although given the

current process of healing likely won't be ready until after 2021.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

d.  Defendant knew or should have known of these existing and prospective

contractual, business, and economic relationships;

    i.  Defendants, including EDD, have been kept in the loop and knew of

contracts and business relationships both prospective, and existing.  In fact,

each helped to ensure that it was clear which organization was responsible

for which aspect of the contract and business relation.  The explicit goal was

to work for the company, as stated repeatedly throughout the entire Tesla

training, and development process (as well as all of the other incentives like

stock ownership contracts, or the equivalents).

e.  Defendant knew or should have known that this relationship would be disrupted if

they failed to act with reasonable care;

    i.  Defendants, especially EDD given their statutory and constitutional

mandates, absolutely knew that the relationship should be handled with

care, and would be disrupted from their tortious behavior.  Further, that is

explicitly what they advised (handle with care) prior to, and after hiring, yet

failed to act with reasonable care (at best grossly negligent, or reckless, at

worse with malice and ill-will).  Due to Defendants reckless disregard in

terms of Labor Code, and Tortitous violations (including Defamation Per Se

and subsequent negative employment actions), plaintiff business and

economic relationship were disrupted.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

f.   Defendant failed to act with reasonable care;

    i.   Defendants (including EDD) absolutely failed to act with reasonable care and were at best grossly negligent or reckless, but still unconstitutional (violating 'when due' and due process) and worse intentionally ill 'will'ed by not asking or following up on basic duties, requests, or inquiries on issues required by law.

g.   Defendants engaged in wrongful conduct through breach of contract,misrepresentation, fraud, violation of the Constitution,Federal and State statutes including whistleblower protections.

    i.   Defendants not only failed to act with reasonable care, but affirmatively misrepresented, violated statute, and fraud.

h.   That the relationship was disrupted;

    i.   The relationship was severely disrupted by Defendant tortious, and reckless, at best, behavior, which is a substantial factor, for the disruption, and with fundamental questions, inquiries, and demands still unmet including [undisputed wages].

i.   Plaintiff was harmed;

    i.   Plaintiff was harmed by the tortious interference resulting in negative employment action and ultimately, discharge. See *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts.  Plaintiff, George J. Austin, incurred multiple

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

damages due to breach of contract including lost wages, opportunities,

incentives, bonuses, automobiles,and other opportunities, and forms of

wages to be more fully and accurately determined through the discovery

process.


"The elements which a plaintiff must plead to state the cause of action for intentional interference

with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's

knowledge of this contract;(3) defendant's intentional acts designed to induce a breach or

disruption of the contractual relationship; (4) actual breach or disruption of the contractual

relationship; and (5) resulting damage." (Pacific Gas & Electric Co. v. BearStearns & Co. (1990)

50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587],internal citations omitted.)  This tort is

sometimes called intentional interference with performance of a contract.  See Little v. Amber

Hotel Co. (2011) 202 Cal.App.4th 280, 291 [136Cal.Rptr.3d 97.  [A] cause of action for

intentional interference with contract requires an underlying enforceable contract. Where there is

no existing, enforceable contract, only a claim for interference with prospective advantage may be

pleaded." PMC, Inc. v. Saban Entertainment, Inc. (1996) 45 Cal.App.4th 579,601 [52 Cal.Rptr.2d

877].  Because interference with an existing contract receives greater solicitude thandoes

interference with prospective economic advantage, it is not necessary that the defendant's conduct

be wrongful apart from the interference with the contract itself." Quelimane Co. v. Stewart Title

Guaranty Co. (1998) 19 Cal.4th26, 55 [77 Cal.Rptr.2d 709, 960 P.2d 513], internal citations

omitted.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

"Specific intent is not a required element of the tort of interference with prospective economic advantage. While plaintiff may satisfy the intent requirement by pleading specific intent, i.e.,that the defendant desired to interfere with the plaintiff's prospective economic advantage, a plaintiff may alternately plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action." Korea Supply Co. v. Lockheed Martin Corp. (2003) 29 Cal.4th 1134,1154 [131 Cal.Rptr.2d 29, 63 P.3d 937], original italics.  We caution that although we find the intent requirement to be the same for the torts of intentional interference with contract and intentional interference with prospective economic advantage, these torts remain distinct." Korea SupplyCo., supra, 29 Cal.4th at p. 1157  "Plaintiff need not allege an actual or inevitable breach of contract in order to state a claim for disruption of contractual relations. We have recognized that interference with the plaintiff's performance may give rise to a claim for interference with contractual relations if the plaintiff's performance is made more costly or more burdensome. Other cases have pointed out that while the tort of inducing breach of contract requires proof of a breach, the cause of action for interference with contractual relations is distinct and requires only proof of interference."  Pacific Gas & Electric Co., supra, 50 Cal.3d at p. 1129, internal citations omitted. What's required is showing that because of the disruption, the plaintiff suffered economic harm. Youst v. Longo (1987) 43 Cal.3d 64. See also California Civil Jury Instructions (CACI) 2202. Intentional Interference With Prospective Economic Relations.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

An essential element of intentional interference is an existing business relationship. It does not need to be a contractual relationship. But prior business dealings are required. Roth v. Rhodes (1994) 25 Cal.App.4th 530. "[I]nterference with an at-will contract is actionable interference with the contractual relationship, on the theory that a contract 'at the will of the parties,respectively, does not make it one at the will of others.' " Pacific Gas &Electric Co., supra, 50 Cal.3d at p. 1127, internal citations and quotations omitted.


To recover for intentional interference with prospective economic relations, the plaintiff must show that if not for the defendant's wrongful interference, the plaintiff would have been reasonably certain of obtaining an economic advantage. Youst v. Longo (1987) 43 Cal.3d 64.  The defendant knew that disruption of the relationship was certain or substantially certain to occur as a result of his or her actions.  Korea Supply Co., endnote 7; Ramona Manor Convalescent Hospital v. Care Enterprises (1986) 177 Cal.App.3d 1120The usual measure of the lost economic advantage is "lost profits." Lost profits do not need not be calculated with mathematical precision. But there must be a reasonable basis for computing the loss.  Sargon Enterprises, Inc. v. University of Southern California (2012) 55 Cal.4th 747; Meister v. Mensinger (2014) 230 Cal.App.4th 381. See also CACI 3903N. Lost Profits (Economic Damage).  In some cases, the plaintiff may be able to introduce evidence of profits made by similar businesses, or persons, under similar conditions. Della Penna v. Toyota Motor Sales, U.S.A., Inc. (1995) 11 Cal.4th 376.  Competition is not fair and reasonable if it is independently wrongful — that is, in some way other than just disrupting the plaintiff's business.  Sargon Enterprises, Inc. v. University of Southern California (2012) 55

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Cal.4th 747; Meister v. Mensinger (2014) 230 Cal.App.4th 381. See also CACI 3903N. Lost

Profits (Economic Damage).


An act is independently wrongful if it violates a statute or is otherwise prohibited by a determinable

legal standard.  San Jose Construction, Inc. v. S.B.C.C., Inc. (2007) 155 Cal.App.4th 1528.  Other

common wrongful actions for purposes of intentional interference claims include (but are not

limited to): Acts or threats of violence, Defamation, Extortion, Fraud / misrepresentation, Fraud is a

wrongful act that is prohibited by California law. California Civil Code 1709.  California law

allows a plaintiff to recover punitive damages when the defendant has acted with "malice, fraud or

oppression."California Civil Code 3294.  By definition, "malice" includes conduct which is

intended by a defendant to cause injury to the plaintiff.  California Civil Code 3294(c).  The

interference must have been wrongful "by some measure beyond the fact of the interference itself."

Della Penna v. Toyota Motor Sales, USA, Inc., 11 Cal.4th 376, 393 (1995).  Claim does not

require proof of a written contract, and can be asserted in situations where the statute of frauds

would otherwise require one.  Buckaloo v. Johnson, 14 Cal.3d 815, 824 (1975).


The element for Tortious Interference with Existing Contract are  a) A contract existed between the

plaintiff and a third party, b) The defendant knew about the contract, c) The defendant engaged in

conduct that prevented or hindered performance of the contract, d) The defendant intended this

result, or knew it was likely, e) This harmed the plaintiff; and f) The defendant's conduct

substantially caused this harm.  See Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal.3d

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1118 (1990).  Regarding element 3, the interfering conduct must be wrongful by some legal

measure other than the fact of the interference itself. (Della Penna v. Toyota MotorSales, U.S.A.,

Inc. (1995) 11 Cal.4th 376, 393 [45 Cal.Rptr.2d 436, 902 P.2d 740].)  This conduct must fall

outside the privilege of fair competition. (PMC, Inc. v.Saban Entertainment, Inc. (1996) 45

Cal.App.4th 579, 603 [52 Cal.Rptr.2d 877], disapproved on other grounds in Korea Supply Co. v.

Lockheed Martin Corp.(2003) 29 Cal.4th 1134, 1159 fn. 11 [131 Cal.Rptr.2d 29, 63 P.3d 937].)

Whether the conduct alleged qualifies as wrongful if proven or falls within the privilege of fair

competition is resolved by the court as a matter of law. If the court lets the case go to trial, the jury's

role is not to determine wrongfulness, but simply to findwhether or not the defendant engaged in

the conduct. If the conduct is tortious, the judge should instruct on the elements of the tort.


"The tort of intentional or negligent interference with prospective economic advantage imposes

liability for improper methods of disrupting or diverting the business relationship of another which

fall outside the boundaries of fair competition." (Settimo Associates v. Environ Systems, Inc.

(1993) 14Cal.App.4th 842, 845 [17 Cal.Rptr.2d 757], internal citation omitted.)  "The tort of

interference with prospective economic advantage protects the same interest in stable economic

relationships as does the tort of interference with contract, though interference with prospective

advantage does not require proof of a legally binding contract. The chief practical distinction

between interference with contract and interference with prospective economic advantage is that a

broader range of privilege to interfere is recognized when the relationship or economic advantage

interfered with is only prospective." (PacificGas & Electric Co. v. Bear Stearns & Co. (1990) 50

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Cal.3d 1118, 1126 [270Cal.Rptr. 1, 791 P.2d 587], internal citations omitted.)   "The five elements for intentional interference with prospective economic advantage are: (1) [a]n economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2)the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." (Youst v. Longo (1987) 43 Cal.3d 64, 71, fn. 6 [233Cal.Rptr. 294, 729 P.2d 728].)

"The question is whether a plaintiff must plead and prove that the defendant engaged in wrongful acts with the specific intent of interfering with the plaintiff's business expectancy. We conclude that specific intent is not a required element of the tort of interference with prospective economic advantage. While plaintiff may satisfy the intent requirement by pleading specific intent, i.e.,that the defendant desired to interfere with the plaintiff's prospective economic advantage, a plaintiff may alternately plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action." (Korea Supply Co., supra, 29 Cal.4th at p. 1154, original italics.)   "[A] plaintiff seeking to recover for an alleged interference with prospective contractual or economic relations must plead and prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measures other than the fact of interference itself." (Della Penna,supra, 11 Cal.4th at p.393.)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

"With respect to the third element, a plaintiff must show that the defendant engaged in an independently wrongful act. It is not necessary to prove that the defendant acted with the specific intent, or purpose, of disrupting the plaintiff's prospective economic advantage. Instead, 'it is sufficient for the plaintiff to plead that the defendant "[knew] that the interference is certain or substantially certain to occur as a result of his action." ' '[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory,regulatory, common law, or other determinable legal standard.' '[A]n act must be wrongful by some legal measure, rather than merely a product of animproper, but lawful, purpose or motive.' " (San Jose Construction, Inc. v.S.B.C.C., Inc. (2007) 155 Cal.App.4th 1528, 1544–1545 [67 Cal.Rptr.3d 54],internal citations omitted.)  "Della Penna did not specify what sort of conduct would qualify as 'wrongful apart from the interference itself." Limandri v. Judkins (1997) 52 Cal.App.4th326, 340 [60 Cal.Rptr.2d 539].)

"Justice Mosk's concurring opinion in Della Penna advocates that proscribed conduct be limited to means that are independently tortious or a restraint of trade. The Oregon Supreme Court suggests that conduct may be wrongful if it violates 'a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession.' . . . Our SupremeCourt may later have occasion to clarify the meaning of 'wrongful conduct' or wrongfulness,' or it may be that a precise definition proves impossible." (ArntzContracting Co. v. St. Paul Fire and Marine Insurance Co. (1996) 47Cal.App.4th 464, 477–478 [54 Cal.Rptr.2d 888], internal citations omitted.)  "Commonly included among improper means are actions which are independently actionable, violations of federal or state law or unethical business practices, e.g., violence,

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

misrepresentation, unfounded litigation, defamation,trade libel or trade mark infringement." (PMC, Inc., supra, 45 Cal.App.4th at p.603, internal citation omitted.)  "[A] plaintiff need not allege the interference and a second act independent of the interference. Instead, a plaintiff must plead and prove that the conduct alleged to constitute the interference was independently wrongful, i.e., unlawful for reasons other than that it interfered with a prospective economic advantage.[Citations.]" (Crown Imports, LLC v. Superior Court (2014) 223 Cal.App.4th1395, 1404 [168 Cal.Rptr.3d 228].)

"The question has arisen as to whether, in order to be actionable as interference with prospective economic advantage, the interfering act must be independently wrongful as to the plaintiff. It need not be. There is 'no sound reason for requiring that a defendant's wrongful actions must be directed towards the plaintiff seeking to recover for this tort. The interfering party is liable to the interfered-with party [even] "when the independently tortious means the interfering party uses are independently tortious only as to a third party." ' "(Crown Imports LLC,supra, 223 Cal.App.4th at p. 1405, original italics.)  "[O]ur focus for determining the wrongfulness of those intentional acts should be on the defendant's objective conduct, and evidence of motive or other subjective states of mind is relevant only to illuminating the nature of that conduct." (Arntz Contracting Co., supra, 47 Cal.App.4th at p. 477.)  "[A]n essential element of the tort of intentional interference with prospective business advantage is the existence of a business relationship with which the tortfeasor interfered. Although this need not be a contractual relationship, an existing relationship is required." (Roth v. Rhodes (1994) 25 Cal.App.4th 530, 546 [30 Cal.Rptr.2d 706], internal citations

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

omitted.)  "If a party has no liability in tort for refusing to perform an existing contract,no matter

what the reason, he or she certainly should not have to bear a burden in tort for refusing to enter

into a contract where he or she has no obligation to do so. If that same party cannot conspire with a

third party to breach or interfere with his or her own contract then certainly the result should be no

different where the 'conspiracy' is to disrupt a relationship which has not even risen to the dignity

of an existing contract and the party to that relationship was entirely free to 'disrupt' it on his or her

own without legal restraint or penalty."(Kasparian v. County of Los Angeles (1995) 38

Cal.App.4th 242, 266 [45Cal.Rptr.2d 90], original italics.)  "Although varying language has been

used to express this threshold requirement, the cases generally agree it must be reasonably probable

that the prospective economic advantage would have been realized but for defendant's

interference." (Youst, supra, 43 Cal.3d at p. 71, internal citations omitted.)  "[I]n the absence of

other evidence, timing alone may be sufficient to prove causation . . . . Thus, . . . the real issue is

whether, in the circumstances of the case, the proximity of the alleged cause and effect tends to

demonstrate some relevant connection. If it does, then the issue is one for the fact finder to decide."

(Overhill Farms, Inc. v. Lopez (2010) 190 Cal.App.4th 1248, 1267[119 Cal.Rptr.3d 127], original

italics.)


### 9.  Wrongful Discharge/Termination

Defendants wrongfully discharged Plaintiff.  Tesla, MVP, Balance and other defendants

collectively conspired to illegally, tortiously, and in violation of public policy to wrongfully

discharge/terminate Plaintiff, (University of California, Berkeley Graduate (09'), Honors Student,

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Bay Area Housing Commissioner, Alum, NAACP National Representative, and Local Youth and

College President, Alum, California Senate, Capital Fellows, Senate Fellows Top 10 out of 800+

Nationally Ranked, Alum (13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08',

13'), T-14 Law Student,  as well as others),and Attorney of Record, Mr. George Jarvis (J.) Austin,

esq. (TBA)


"The elements [to prove] a claim for wrongful discharge in violation of public policy are (1) an

employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the

termination was substantially motivated by a violation of public policy, and (4) the discharge

caused the plaintiff harm." (Yauv. Allen (2014) 229 Cal.App.4th 144, 154 [176 Cal.Rptr.3d 824].)


   Here Plaintiff:

   a.   Was employed by Defendants;

        i.   Plaintiff and Defendants entered into an employment relationship.  See

             *Judicial Council of California Civil Jury Instructions* See also 1 Witkin,

             Summary of Cal. Law (10th ed. 2005) Contracts.  The formation of a

             contract between the Plaintiff, George J. Austin, and the Defendants Tesla,

             MVP/Balance was formed prior to beginning work in the summer and fully

             consummated once work began. This is evident in badges, work attire

             provided by the company, paystubs made out to me, in my name, and with

             my social security number, time sheets, work ID and other items.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

    b.   Was discharged by Defendants ;

        i.   Although Plaintiff substantially performed his job, and functions, Defendants didn't hold their end of the bargain, and illegally discharged the plaintiff without good cause, in bad faith, and against policy, and the law (with a lie); See *Judicial Council of California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts Defendant(s), collectively did not perform, or hold up, their end of the contract.  Unfortunately they a) violated their duty to ensure receipt of all [undisputed] wages assigned to me by their company, also b) failed to properly, and honestly, remedy missing/stolen wages when notified (i.e. stop order, and reprint), c) failed to conduct proper due diligence before, and acted at best reckless (at worse maliciously) taking negative employment and retaliatory action, d) violating public policy, and ethical baselines by acting recklessly, and practicing defamation per se.  Defendants Failed to perform.

    c.   Discharge was in violation of public policy

        i.   Plaintiff exercised whistleblower duties for potential violations of FLSA, California Labor Code, and Sarbanes Oxley, and that legally protected exercise of rights was a substantial motivating reason for plaintiff's discharge.  Thus discharge was in violation of public policy.

    d.   Discharge caused harm.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

      i.     Plaintiff was harmed by the breach and ultimate, discharge, or demotion.

See *Judicial Council of California Civil Jury Instructions* See also 1 Witkin,

Summary of Cal. Law (10th ed. 2005) Contracts.  Plaintiff, George J.

Austin, incurred multiple damages due to breach of contract including lost

wages, opportunities, incentives, bonuses, automobiles,and other

opportunities, and forms of wages to be more fully and accurately

determined through the discovery process.


"An employer may not discharge an at will employee for a reason that violates fundamental public

policy. This exception is enforced through tort law by permitting the discharged employee to assert

against the employer a cause of action for wrongful discharge in violation of fundamental public

policy." [Stevenson v. Sup.Ct. (Huntington Mem. Hosp.) (1997) 16 C4th 880, 897, 66 CR2d 888,

898—age discrimination may support claim for wrongful discharge in violation of public policy;

see Silo v. CHW Med. Found. (2002) 27 C4th 1097, 1104-1105, 119 CR2d 698,

703-704—religious discrimination may support claim for wrongful discharge in violation of public

policy; Franklin v. Monadnock Co. (2007) 151 CA4th 252, 260, 59 CR3d 692, 697 (wrongful

termination in violation of public policy based on alleged retaliation for reporting unsafe working

conditions)] - A.Employment Presumed At Will, Cal. Prac. Guide Employment Litigation Ch. 4-A


There can be no right to terminate for an unlawful reason or a purpose that contravenes

fundamental public policy. Any other conclusion would sanction lawlessness, which courts by

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

their very nature are bound to oppose.' " (Casella v. SouthWest Dealer Services, Inc. (2007)

157Cal.App.4th 1127, 1138–1139 [69 Cal.Rptr.3d 445], internal citations omitted.)• "[W]hen an

employer's discharge of an employee violates fundamental principles of public policy, the

discharged employee may maintain a tort action and recover damages traditionally available in

such actions." (Tameny v. AtlanticRichfield Co. (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839,

610 P.2d 1330].)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

### 10. Civil Rights Due Process

Defendant(s) violated Plaintiff's Due Process (substantive, and procedural) Rights when illegally withholding, and underpaying Disability benefit wages against Social Security Act, CA Disability and Unemployment Code as well as other key precedent.  EDD Defendants conspired in withholding, and non-payment of undisputed wages (i.e. already verified by the Auditing, and Accounting Department, with respective employers and confirming accounts and wages printed and signed with my social security number, unique check numbers, and full name (with middle initial) George J. Austin.  Defendant, unconstitutional, and tortious, non-(and delayed) payment of wages was to the detriment of Plaintiff, (University of California, Berkeley Graduate (09'), Honors Student, Bay Area Housing Commissioner, Alum, NAACP National Representative, and Local Youth and College President, Alum, California Senate, Governance and Finance Committee, Consultant, Capital Fellows, and Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as well as others), and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA).

Due process under the Fourteenth Amendment can be broken down into two categories: procedural due process and substantive due process. Procedural due process, based on principles of "fundamental fairness," addresses which legal procedures are required to be followed in state proceedings. Relevant issues, as discussed in detail below, include notice, opportunity for hearing, confrontation and cross-examination, discovery, basis of decision, and availability of counsel. Substantive due process, although also based on principles of "fundamental fairness," is used to

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

evaluate whether a law can be applied by states at all, regardless of the procedure followed.

Substantive due process has generally dealt with specific subject areas, such as liberty of contract

or privacy, and over time has alternately emphasized the importance of economic and noneconomic

matters. In theory, the issues of procedural and substantive due process are closely related. In

reality, substantive due process has had greater political import, as significant portions of a state

legislature's substantive jurisdiction can be restricted by its application.


Although the extent of the rights protected by substantive due process may be controversial, its

theoretical basis is firmly established and forms the basis for much of modern constitutional case

law. Passage of the Reconstruction Amendments (13th, 14th, and 15th) gave the federal courts the

authority to intervene when a state threatened fundamental rights of its citizens,See Bill of Rights,

Fourteenth Amendment See also AKHIL REED AMAR, THE BILL OF RIGHTS 163–180

(1998). and one of the most important doctrines flowing from this is the application of the Bill of

Rights to the states through the Due Process Clause. See Bill of Rights, Fourteenth Amendment


The Due Process Clause provides that no states shall deprive any "person" of "life, liberty or

property" without due process of law.  "Property" and Police Power.—States have an inherent

"police power" to promote public safety, health, morals, public convenience, and general

prosperity, See Gibbons v. Ogden, 22 U.S. (9 Wheat.), but the extent of the power may vary based

on the subject matter over which it is exercised. See Hudson Water Co. v. McCarter, 209 U.S. 349

(1908); Eubank v. Richmond, 226 U.S. 137, 142 (1912); Erie R.R. v. Williams, 233 U.S. 685, 699

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

(1914) If a police power regulation goes too far, it will be recognized as a taking of property for

which compensation must be paid.  See Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922);

Welch v. Swasey, 214 U.S. 91, 107 (1909). See also Penn Central Transp. Co. v. City of New

York, 438 U.S. 104 (1978); Agins v. City of Tiburon, 447 U.S. 255 (1980)


   A.  Plaintiff's Substantive and Procedural Due Process is being violated and causing

       irreparable harm

       a.  Elements.

           i.   1. Defendant intentionally violated Plaintiffs due process rights by depriving

                Plaintiff full payment of owed payment way passed the "when due"

                standard as articulated in a variety of holdings including *Java, and*

                *Goldberg*.

                    1.  Organizational Defendants, in this case, Specifically EDD,

                        intentionally withheld, and underpaid, Plaintiff (according to their

                        own representatives, and their own Accounting, and Auditing

                        Department, in violation of due process, and other torts.

                            a.  Brief summary arguments:

           ii.  2. Defendant was acting or purporting to act in the performance of official

                duties under the color of law;

                    1.  Organizational Defendants, specifically EDD, was acting in Official

                        duties under the color of law when issuing Disability wages, and

                        insurance.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

iii.　　3. Defendant's conduct violated Plaintiff's Constitutional Due Process

rights;

　　　1.　Organizational Defendants, EDD, violated Plaintiff's constitutional

　　　due process (substantive and procedural) rights under foundational

　　　precedential cases *Goldberg, and Java.*

iv.　　4. Plaintiff] was harmed;

　　　1.　Plaintiff was harmed, financially, physically, emotionally, mentally,

　　　and in other ways due to due process violations (especially during a

　　　pandemic, and other social unrest with a physical disability).

v.　　5. Defendant's due process violations, and deprivations, was a substantial

factor in causing Plaintiff's harm.

　　　1.　Defendant's violation of Due Process, the California Disability and

　　　Unemployment Insurance Code, Social Security Act, and other

　　　torts, was a substantial factor in causing plaintiff's irreparable harm

　　　and requires immediate correction including financial TRO, and

　　　Preliminary Injunction, compelling organizational specific

　　　performance and issuance of proper current amount and corrective

　　　back pay.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Unruh Civil Rights

To establish Unruh Civil Civil Rights claim, Plaintiff shall prove all of the following:

1. Defendants denied, aided or incited a denial of, and discriminated or made a distinction that denied full and equal accommodations, advantages, facilities, privileges, and services to Plaintiff

    a.  Organizational defendants (Including EDD) engaged in retaliatory conduct to prevent access, availability and deprive of rights, property and opportunity.  Defendant's conspirator-ily denied, aided or incited a denial of, discriminated and made a distinction that denied full and equal accommodations, advantages, facilities, privileges and services to Plaintiff's detriment.  Specifically EDD in response to a variety of notices, and complaints, by Plaintiff,  not only put a block on that specific needed service (as Plaintiff is still very much underpaid, and very much injured), and further created barriers of access in violation of Plaintiff's due process.  Other organizational Defendants have also gone out of their way to create barriers of access, communication, accomodations, and services.  Defendant intentionally violated Plaintiffs due process rights by depriving Plaintiff full payment of owed payment way passed the "when due" standard as articulated in a variety of holdings including *Java, and Goldberg*.  Organizational Defendants, in this case, Specifically EDD, intentionally withheld, and underpaid, Plaintiff (according to their own representatives, and

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

their own Accounting, and Auditing Department, in violation of due process, and other

torts.


2. A substantial motivating reason for Defendant's conduct was their perception of Plaintiff's

disability, race, color, ancestry, medical condition, genetic information, and protected activity

    a.  Defendant's acts were motivated, at least in part,by Plaintiff's protected activity, as well as

        protected characteristics including race, color, ancestry, medical condition, or genetic

        information.  All Organizational Defendants explicitly made reference to protected activity

        as justification, or explanation, for retaliatory behaviors.   EDD made reference to Federal

        complaint and Federal lawsuit complaint, and State of California  and Inquiries.

        Organizational Defendants, specifically EDD, was acting in Official duties under the color

        of law when issuing Disability wages, and insurance.  Defendant's conduct violated

        Plaintiff's Constitutional Due Process rights;  Organizational Defendants, EDD, violated

        Plaintiff's constitutional due process (substantive and procedural) rights under foundational

        precedential cases *Goldberg, and Java.*

3. Plaintiff was harmed

    a.  Plaintiff suffered financial, physical, harm, pain and suffering, emotional toll, and distress

        due to Defendant's actions.

4. Defendant's conduct was a substantial factor in causing Plaintiff's harm.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

a. Defendant's acts created enormous obstacles, intertwining, and utilizing state actors, and

threats of punishments, under the color of law to deter and deprive Plaintiff, and was direct,

and substantial cause in Plaintiff's.


Note that element 2 uses the term "substantial motivating reason" to express both intent and

causation between the protected classification and the defendant's conduct. "Substantial motivating

reason" has been held to be the appropriate standard under the Fair Employment and Housing Act

to address the possibility of both discriminatory and nondiscriminatory motives. (See Harris v. City

of SantaMonica (2013) 56 Cal.4th 203, 232 [152 Cal.Rptr.3d 392, 294 P.3d 49]; CACI No.2507,

"Substantial Motivating Reason" Explained.)


Whether the FEHA standard applies under the Unruh Act has not been addressed by the

courts.With the exception of claims that are also violations of the Americans With Disabilities Act

(ADA) (see Munson v. Del Taco, Inc. (2009) 46 Cal.4th 661, 665[94 Cal.Rptr.3d 685, 208 P.3d

623]), intentional discrimination is required forviolations of the Unruh Act. (See Harris v. Capital

Growth Investors XIV (1991) 52Cal.3d 1142, 1149 [278 Cal.Rptr. 614, 805 P.2d 873].) The intent

requirement is encompassed within the motivating-reason element. For claims that are also

violations of the ADA, do not give element

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Non-payment, or underpayment of "benefits on a claimant's [application, or appeal] ... violates

[the] requirement of Social Security Act that a state program be reasonably calculated to insure full

payment of unemployment (or disability) compensation "when due." Social Security Act, § 303(a),

42 U.S.C.A. § 503(a). - Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal. App. 3d 811, 152

Cal. Rptr. 193 (Ct. App. 1979)  For purpose of [the] requirement of Social Security Act .. a state

program [must] be reasonably calculated to insure full payment of unemployment compensation

"when due," under Social Security Act, § 303(a), 42 U.S.C.A. § 503(a). - Am. Fed'n of Labor v.

Employment Dev. Dep't, 88 Cal. App. 3d 811, 152 Cal. Rptr. 193 (Ct. App. 1979)  (Disability or)

Unemployment insurance benefits are a type of property interest protected by due process. Social

Security Act, § 303(a)(1), 42 U.S.C.A. § 503(a)(1); U.S.C.A.Const. Amends. 5, 14; West's

Ann.Const. art. 1, § 7. - Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811, 152

Cal.Rptr. 193


In deciding whether or not a [procedure, or hearing] is required by due process, it is necessary to

weigh the competing interests of the individual and the government in light of the particular facts of

the case. (Arnett v. Kennedy, 416 U.S. 134, 168, 94 S.Ct. 1633, 40 L.Ed.2d 15; Goldberg v.

Kelly, supra, 397 U.S. 254, 263-266, 90 S.Ct. 1011, 25 L.Ed.2d 287.) Some of the factors to be

considered according to Skelly, supra, 15 Cal.3d 194, 209, 124 Cal.Rptr. 14, 25, 539 P.2d 774,

785, are, "whether pre-deprivation safeguards minimize the risk of error in the initial taking

decision, whether the surrounding circumstances necessitate quick action, whether the

post-deprivation hearing is sufficiently prompt, whether the interim loss incurred by the person

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

affected is substantial, and whether such person will be entitled to adequate compensation in the event the deprivation of his property interest proves to have been wrongful." - Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811, 820, 152 Cal.Rptr. 193, 199.  It was not abuse of discretion to award attorney fees to the national labor organizations on their success in seeking declaration that failure to accord (disability and) unemployment compensation benefits claimants a due process type hearing before department clerks concerning continuing eligibility violated due process [even if] such organizations (or individuals) may have been financially able to meet the costs of suit. Social Security Act, § 303(a), 42 U.S.C.A. § 503(a); West's Ann.Const. art. 1, § 7; West's Ann.Code Civ.Proc. §§ 1021.5, 1021.5(a, b). - Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811, 152 Cal.Rptr. 193

Although the finding of a violation of the Social Security Act is alone sufficient to resolve this case, another ground also exists. We find that the EDD's practice of (withholding, non-payment, or underpaying payments) ... for continuing claim recipients (without proper fact finding, opportunity to cross examine, be represented by counsel, etc.)  does not meet with the requirements of due process under Article I, section 7 of the California Constitution. - Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811, 819, 152 Cal.Rptr. 193, 198.  Procedural due process involves the deprivation of a "liberty" or " property" interest. … Skelly v. State Personnel Bd., 15 Cal.3d 194, 207, 124 Cal.Rptr. 14, 23, 539 P.2d 774, 783, held, ... "when a person has a legally enforceable right to receive a government benefit provided certain facts exist, this right constitutes a property interest protected by due process. (Goldberg v. Kelly (1970), 397 U.S. 254,

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

261-262, 90 S.Ct. 1011, 25 L.Ed.2d 287.).” The court in Goldberg, while finding that welfare

benefits “are a matter of statutory entitlement for persons qualified to receive them,” also stated:

“Relevant constitutional restraints apply as much to the withdrawal of public assistance benefits as

to disqualification (or reduction/underpayment) for unemployment (and disability) compensation, .

. .” ( *820 Goldberg, supra, at p. 262, 90 S.Ct. at p. 1017.) It is clear then that (EDD disability or)

unemployment insurance benefits are a type of property interest protected by the due process

clause. - Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811, 819-20, 152

Cal.Rptr. 193, 198


“Although initially unpublished, we issued an order to publish Robles I in July 2012, after

receiving requests for publication from Garfinkle, the Legal Aid Society- Employment Law

Center, the Civil Justice Law Clinic at Hastings School of Law, and an attorney who had a client in

similar circumstances. In September 2012, the trial court on remand issued a writ of administrative

mandamus (Writ), commanding EDD and the Board to set aside their previous decisions and to

“award to Robles ‘the unemployment insurance benefits that were withheld

beginning January 5, 2010 and including extensions under state and federal law, plus

interest on those benefits under Civil Code section 3287, subdivision (a).’ ” (Robles II,

supra, 236 Cal.App.4th at p. 538.) Several days later, the Board complied, setting aside

its previous determination and issuing a new decision in accordance with Robles I and the

Writ. The Board concluded that Robles was not disqualified from receiving unemployment

insurance benefits and that any benefits that were withheld were payable, with interest. (Robles II,

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

supra, 236 Cal.App.4th at p. 538)  By contrast, EDD and its counsel consistently rebuffed all

efforts by Garfinkle to ensure that his client was promptly paid the wrongfully withheld benefits

and interest.  We will not here relate the specifics of EDD's "stubborn refusal" to comply with the

terms of Robles I. (Robles II, supra, 236 Cal.App.4th at pp. 538–542, 553.) Suffice it to say that

after months of bureaucratic runaround, Robles filed a motion in May 2013 to enforce full

compliance with the Writ. (Id. at pp. 542–543.) In connection with his enforcement motion, Robles

submitted declarations attesting to the fact that he had been unemployed since his January 2010

termination date, despite his availability for and diligent attempts to obtain employment. Because

he had been unable to obtain from EDD an analysis of the amounts he was owed beyond an initial

$12,240 payment EDD sent him after the Robles I remand, Robles submitted with the motion

documentation calculating a balance due of over $45,000. (Id. at pp. 540, 542–543.)


Noting that "the prompt payment of benefits is the ' "very essence" ' of the unemployment

compensation insurance program" (id. at p. 546), that "Robles had shown himself substantively

eligible for the identified benefits by attesting to his availability, and diligent search, for work" (id.

at p. 552), and that "EDD's chosen process in response to the Writ had utterly failed to result in the

timely payment of all of the benefits to which Robles was entitled" (ibid.), we held that the trial

court properly ordered the immediate payment of benefits without requiring Robles to jump any

additional procedural hurdles (ibid.). As a result, EDD paid the remaining amounts owed, resulting

in Robles' total recovery of $66,214.53."  'The fundamental purpose of California's

Unemployment Insurance Code is to reduce the hardship of unemployment . . . .'(Paratransit, Inc.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

v. Unemployment Ins. Appeals Bd. (2014) 59 Cal. 4th 551, 558, fn. omitted; see § 100
[unemployment insurance system created to provide benefits 'for persons unemployed through no
fault of their own' and to reduce 'the suffering caused thereby'].)

Specifically, ' "[u]nemployment (and Disability) benefits provide cash to a newly unemployed (and
injured) worker 'at a time when otherwise he would have nothing to spend,' serving to maintain
the recipient at subsistence levels without the necessity of his turning to welfare or private charity."
' " (Robles II, supra, 236 Cal.App.4th at pp. 545–546.)  As a consequence, we have stressed the
societal importance of an unemployment insurance system that promptly pays recipients all benefits
due. (See Robles II, supra, 236 Cal.App.4th at pp. 545–546 at p. 546 [noting that "the prompt
payment of benefits is the ' "very essence" ' of the unemployment compensation insurance
program"].)  We have also emphasized the need to "liberally construe the Unemployment
Insurance Code to advance the legislative objective of reducing the hardship of unemployment."
(Ibid.; Robles I, supra, 207 Cal.App.4th at p. 1034.)

Under Title 42 United States Code section1983 Civil Action for Deprivation of Rights "As we
have said many times, § 1983 'is not itself a source of substantive rights,' but merely provides 'a
method for vindicating federal rights elsewhere conferred.' " (Graham v. Connor (1989) 490 U.S.
386, 393–394 [109 S.Ct.1865, 104 L.Ed.2d 443], internal citation omitted.)  "42 U.S.C. § 1983
creates a cause of action against a person who, acting under color of state law, deprives another of
rights guaranteed under the Constitution.Section 1983 does not create any substantive rights; rather

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

it is the vehicle whereby plaintiffs can challenge actions by governmental officials." (Jones

v.Williams (9th Cir. 2002) 297 F.3d 930, 934.) "By the plain terms of § 1983, two—and only

two—allegations are required in order to state a cause of action under that statute. First, the plaintiff

must allege that some person has deprived him of a federal right. Second, he must allege that the

person who has deprived him of that right acted under color of state or territorial law." (Catsouras

v. Department of California Highway Patrol (2010)181 Cal.App.4th 856, 890 [104 Cal.Rptr.3d

352].)


"Section 1983 can also be used to enforce federal statutes. For a statutory provision to be privately

enforceable, however, it must create an individual right." (Henry A. v. Willden (9th Cir. 2012) 678

F.3d 991, 1005, internal citation omitted.)  "Section 1983 claims may be brought in either state or

federal court." (Pitts v.County of Kern (1998) 17 Cal.4th 340, 348 [70 Cal.Rptr.2d 823, 949

P.2d920].)  "The jury was properly instructed on [plaintiff]'s burden of proof and the particular

elements of the section 1983 claim. (CACI No. 3000.)" (King v. State Of California (2015) 242

Cal.App.4th 265, 280 [195 Cal.Rptr.3d 286].)  " 'State courts look to federal law to determine

what conduct will support an action under section 1983. The first inquiry in any section 1983 suit

is to identify the precise constitutional violation with which the defendant is charged.' " (Weaver v.

State of California (1998) 63 Cal.App.4th 188, 203 [73Cal.Rptr.2d 571], internal citations

omitted.)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

"Constitutional torts employ the same measure of damages as common law torts and are not

augmented 'based on the abstract "value" or "importance" of constitutional rights . . . .' Plaintiffs

have the burden of proving compensatory damages in section 1983 cases, and the amount of

damages depends 'largely upon the credibility of the plaintiffs' testimony concerning their injuries.'

"(Choate v. County of Orange (2000) 86 Cal.App.4th 312, 321 [103 Cal.Rptr.2d339], internal

citations omitted.)  "[E]ntitlement to compensatory damages in a civil rights action is not a matter of

discretion: 'Compensatory damages . . . are mandatory; once liability is found, the jury is required

to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss.'

" (Hazle v. Crofoot (9th Cir.2013) 727 F.3d 983, 992.)  "[T]he state defendants' explanation of the

jury's zero-damages award as allocating all of [plaintiff]'s injury to absent persons reflects the

erroneous view that not only could zero damages be awarded to [plaintiff], but that [plaintiff]'s

damages were capable of apportionment. [Plaintiff] independently challenges the jury instruction

and verdict form that allowed the jury to decide this question,contending that the district judge

should have concluded, as a matter of law,that [plaintiff] was entitled to compensatory damages

and that defendants were jointly and severally liable for his injuries. He is correct. The district

judge erred in putting the question of apportionment to the jury in the first place,because the

question of whether an injury is capable of apportionment is a legalone to be decided by the judge,

not the jury." (Hazle, supra, 727 F.3d at pp.994–995.)


"An individual acts under color of state law when he or she exercises power possessed by virtue of

state law and made possible only because the wrongdoer is clothed with the authority of state law.'

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

" (Naffe v. Frey (9th Cir. 2015) 789 F.3d 1030, 1036.)  "The Supreme Court has interpreted the phrase 'under "color" of law' to mean under "pretense" of law.' A police officer's actions are under pretense of law only if they are 'in some way "related to the performance of his official duties.' " By contrast, an officer who is ' "pursuing his own goals and is not in any way subject to control by [his public employer],' " does not act under color of law, unless he 'purports or pretends' to do so. Officers who engage in confrontations for personal reasons unrelated to law enforcement, and do not purport[] or pretend[]' to be officers, do not act under color of law." (Huffman v. County of Los Angeles (9th Cir. 1998) 147 F.3d 1054, 1058, internal citations omitted.)  "A state employee who is off duty nevertheless acts under color of state law when (1) the employee 'purport[s] to or pretend[s] to act under color of law,'(2) his 'pretense of acting in the performance of his duties . . . had the purpose and effect of influencing the behavior of others,' and (3) the harm inflicted on plaintiff 'related in some meaningful way either to the officer's governmental status or to the performance of his duties,' " (Naffe, supra, 789 F.3d at p. 1037,internal citations omitted.)


"[P]rivate parties ordinarily are not subject to suit under section 1983, unless,sifting the circumstances of the particular case, the state has so significantlyinvolved itself in the private conduct that the private parties may fairly betermed state actors. Among the factors considered are whether the state subsidized or heavily regulated the conduct, or compelled or encouraged the particular conduct, whether the private actor was performing a function which normally is performed exclusively by the state, and whether there was a symbiotic relationship rendering the

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

conduct joint state action." (Robbins v.Hamburger Home for Girls (1995) 32 Cal.App.4th 671, 683

[38 Cal.Rptr.2d534], internal citations omitted.) "Private parties act under color of state law if they

willfully participate in jointaction with state officials to deprive others of constitutional rights.

Private parties involved in such a conspiracy may be liable under section 1983."(United

Steelworkers of America v. Phelps Dodge Corp. (9th Cir. 1989) 865F.2d 1539, 1540, internal

citations omitted.)


The Court has required greater protection from property deprivations resulting from operation of

established state procedures than from those resulting from random and unauthorized acts of state

employees, Logan v. Zimmerman Brush Co., 455 U.S. at 435–36 (1982). The Court emphasized

that a post-deprivation hearing regarding harm inflicted by a state procedure would be inadequate.

"That is particularly true where, as here, the State's only post-termination process comes in the

form of an independent tort action. Seeking redress through a tort suit is apt to be a lengthy and

speculative process, which in a situation such as this) one will never make the complainant entirely

whole." 455 U.S. 422, 436–37 and presumably this distinction still holds. Thus, the Court has held

that post-deprivation procedures would not satisfy due process if it is "the state system itself that

destroys a complainant's property interest." (455 U.S. at 436.)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

## 11. Physical Disability Discrimination

Defendant(s) {EDD} Discriminated against Plaintiff and have thus far refused to make reasonable

accommodation, when illegally withholding, and underpaying Disability benefit compensation

against the Constitution, ADA, Gov.Code, § 12940(n)), Social Security Act, CA Disability and

Unemployment Code as well as other key precedent.  EDD Defendants discriminated in

withholding, and non-payment of undisputed wages (i.e. already verified by the Auditing, and

Accounting Department, with respective employers and confirming accounts and wages printed

and signed with my social security number, unique check numbers, and full name (with middle

initial) George J. Austin.  Defendant, unconstitutional, and tortious, non-(and delayed) payment of

wages was to the detriment of Plaintiff, (University of California, Berkeley Graduate (09'), Honors

Student, Bay Area Housing Commissioner, Alum, NAACP National Representative, and Local

Youth and College President, Alum, California Senate, Governance and Finance Committee,

Consultant, Capital Fellows, and Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum

(13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as

well as others), and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA).

Disability discrimination is prohibited, and the obligation (and duty) to provide reasonable

accomodation is required under several federal and state laws, including the Unruh Act, the

FEHA, Government Code section 12940(m), Government Code section 12926(p), Cal. Code

Regs., tit. 2, § 11068(a), Government Code section 12926.1(c) and the Americans with Disabilities

Act of 1990 (ADA).  The ADA defines a disability as a physical or emotional impairment that

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

substantially limits one or more basic life activities or bodily functions that people who are not

disabled do not usually have trouble doing. Some common examples include breathing, walking,

talking, writing, and socializing.  Adjustments are not always in tangible form.  A reasonable

accommodation may be required to permit an employee (or protected person) to perform an

essential function of a job, to permit an employee (or protected person) to enjoy equal benefits and

privileges, and to ensure equal opportunity in the application process. It is illegal for an employer

(or other covered entity) covered by ADA, and other related statutes, not to make a reasonable

accommodation upon request by an otherwise qualified job applicant or employee with a disability.

In general, a reasonable accommodation may have an expense attached.   A reasonable

accommodation need not involve a physical change. It could be a change in a rule or schedule.


Disability discrimination occurs when an employer or other entity covered by the Americans with

Disabilities Act, as amended, or the Rehabilitation Act, as amended, treats a qualified individual

with a disability who is an employee or applicant unfavorably because he or she has a disability.

Some examples of disability discrimination may include: Discriminating on the basis of physical or

mental disability in various aspects of employment, including: recruitment, firing, hiring, training,

job assignments, promotions, pay, benefits, lay off, leave and all other employment-related

activities.


Under the ADA, 42 U.S.C. § 12101 et seq., A person has a disability if he or she has a physical or

mental impairment that substantially limits one or more major life activities, a record of such an

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

impairment, or is regarded as having such an impairment.  Here Plaintiff had, and has medically

verified severe back and neck trauma injury (as well as previous on the job injury all impairing,

and preventing) his ability to work.  Whether or not a person's condition is a disability under the

law is determined individually; the ADA does not list specific covered disabilities.  People with

past drug or alcohol problems are protected from job discrimination by the ADA, as are individuals

with current alcohol problems who are able to perform their jobs (or participate in protected

programs).

The Americans with Disabilities Act of 1990 (ADA) is a federal law that prohibits discrimination

against qualified individuals with disabilities. The ADA requires that reasonable accommodation

be made to provide individuals with disabilities equal access to services, programs, and

opportunities, such as employment and housing. Several federal agencies and departments enforce

the ADA, including the Equal Employment Opportunity Commission (EEOC) and the Department

of Justice.  Under the ADA, Private Companies, Employment Agencies, Labor Organizations, and

State & Local Governments all must comply.  The ADA prohibits discrimination in the workplace

(and in other protected activitces, or accomodations) against qualified individuals with disabilities

by an employer, public or private.

Discrimination, under the ADA, is not limited to hiring and firing an individual but may take such

forms as inappropriately classifying a job applicant or employee; not hiring or promoting qualified

individuals who are disabled; or failing to make reasonable accommodations for employees (or

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

other protected persons) who an employer (or other covered entity) knows has mental or physical

limitations. Employers can require applicants to complete a medical examination after they have

offered that person a job, but only if the employer requires that of all applicants and the employer

keeps the medical record confidential.

Under Title II of the ADA public agencies, including state and local governments, and commuter

authorities, including the National Railroad Passenger Corporation, people with disabilities cannot

be discriminated against or excluded from the benefits of the services, programs, or activities of a

public entity because of disability. This includes access to state parks, government meetings, public

schools, and public transportation. The failure to make certain services accessible to disabled

individuals can be considered discrimination, such as if a municipal transit agency does not make

its buses wheelchair accessible

Under American Federation of Labor v. EDD, in granting preliminary injunction on a similar fact

pattern regarding under, or non-payment,  "Any increase in government costs which might result

from our decision is outweighed by the claimant's need to receive prompt payment of benefits. The

loss of unemployment insurance benefits may have severe effects upon the worker and his family.

A lump sum payment, which claimants who successfully appeal a denial of continuing benefits

receive, defeats the purpose of unemployment insurance. These benefits "provide cash to a newly

unemployed worker 'at a time when otherwise he would have nothing to spend,' serving to

maintain the recipient at subsistence levels." (California Human Resources Dept. v. Java, supra,

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

402 U.S. 121, 131-132, 91 S.Ct. 1347, 1354, 28 L.Ed.2d 666.) - Am. Fed'n of Labor v.

Employment Dev. Dep't, 88 Cal.App.3d 811, 821, 152 Cal.Rptr. 193, 199

Here:

1. Defendant EDD was a covered entity;

    a. The State of California Employment Development Department is a covered entity

       under all respective Federal, and State laws requiring reasonable accommodation.

2. Plaintiff was in a covered relationship with EDD

    a. EDD as a state agency and Plaintiff as a citizen of the state, CA, are in a covered

       relationship.

3. Plaintiff had physical condition that limited major life activity;

    a. Plaintiffs with severe back and neck injuries, and lower body injuries limiting

       working, had multiple severe injuries that are ongoing and limited, or prevented

       major life activity (i.e. employment).

4. Defendant knew of Plaintiff's injuries, and  [that limited major life activity

    a. Defendant, EDD, knew of and had medical documentation of injuries preventing

       work.

5. Plaintiff was able to perform the essential duties related to the covered relationship with

   reasonable accommodation for physical condition

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

    a.  Plaintiff was able to, and did, perform essential duties with regard to covered relationship and accommodation for physical condition, but Defendant EDD did not provide reasonable accommodation, and violated Plaintiff's Due Process Rights.

6. Defendant failed to provide reasonable accommodation for Plaintiff's physical condition

    a.  Defendant repeatedly failed to provide reasonable accommodation for physical condition, and actually made worse through deprivation of Constitutional Due Process Rights.

7. Plaintiff was harmed; and

    a.  Plaintiff was harmed physically, mentally, and emotionally due to the deprivations caused by the organization's actions.

8. Defendant's failure to provide reasonable accommodation was a substantial factor in causing Plaintiff's harm.

    a.  Defendant's failure to provide reasonable accommodation was a substantial factor in causing plaintiff irreparable harm, and ongoing injury.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Unruh Civil Rights

Alternatively, and related to the reasonable accommodation Discrimiantion claim,To establish Unruh Civil Civil Rights claim, Plaintiff shall prove all of the following elements.

Here:

1. Defendants, EDD, denied, aided or incited a denial of, and discriminated or made a distinction that denied full and equal accommodations, advantages, facilities, privileges, and services to Plaintiff

   a. Organizational defendants engaged in retaliatory conduct to prevent access, availability and deprive of rights, property and opportunity (including proper benefit payments). Defendant's conspirator-ily denied, aided or incited a denial of, discriminated and made a distinction that denied full and equal accommodations, advantages, facilities, privileges and services to Plaintiff's detriment.

2. A substantial motivating reason for Defendant's, EDDs, conduct was their perception of Plaintiff's disability, race, color, ancestry, medical condition, genetic information, and protected activity

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

   a.  Defendant's acts were motivated, at least in part,by Plaintiff's protected activity, as well as protected characteristics including physical disability, race, color, ancestry, medical condition, or genetic information.

       i.  All Organizational Defendants, including EDD, were made aware, and explicitly made reference to protected activity in regard to retaliatory behaviors (i.e. extreme delay in payment in violation of Due Process and a host of statutes and case holdings).

          1.  Defendant Insurers, and Employers, made reference to Federal lawsuit complaints, and State of California, Insurance and Labor Department Complaints, and Inquiries.

3. Plaintiff was harmed

   a.  Plaintiff suffered, and is suffering financial, physical, harm, pain and suffering, emotional toll, and distress due to Defendant's, EDDs, actions.  Defendant's actions have detrimental effects on every aspect of Plaintiff's life including appropriate medical care to help heal from ongoing severe injury.

4. Defendant's conduct was a substantial factor in causing Plaintiff's harm.

   a.  Defendant's acts created enormous obstacles, as a State Actor, intertwining, and utilizing state actors, operating under the color of law to deter and deprive Plaintiff, and was direct, and substantial cause in Plaintiff's.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Note that element 2 uses the term "substantial motivating reason" to express both intent and causation between the protected classification and the defendant's conduct. "Substantial motivating reason" has been held to be the appropriate standard under the Fair Employment and Housing Act to address the possibility of both discriminatory and nondiscriminatory motives. (See Harris v. City of SantaMonica (2013) 56 Cal.4th 203, 232 [152 Cal.Rptr.3d 392, 294 P.3d 49]; CACI No.2507, "Substantial Motivating Reason" Explained.)

Note that there are two causation elements. There must be a causal link between the discriminatory intent and the adverse action (see element 2), and there must be a causal link between the adverse action and the harm (see element 4).For an instruction on damages under the Unruh Act, see CACI No. 3067, UnruhCivil Rights Act—Damages. Note that the jury may award a successful plaintiff upto three times actual damages but not less than $4,000 regardless of any actual damages. (Civ. Code, § 52(a).) In this regard, harm is presumed, and elements 3 and 4 may be considered as established if no actual damages are sought. (See Koirev. Metro Car Wash (1985) 40 Cal.3d 24, 33 [219 Cal.Rptr. 133, 707 P.2d 195][Unruh Act violations are per se injurious]; Civ. Code, § 52(a) [provides for minimum statutory damages for every violation regardless of the plaintiff's actual damages]; see also Civ. Code, § 52(h) ["actual damages" means special and general damages].)

An employee (or other protect person) may file a civil action based on the employer's (or other protected entity's) failure to engage in the interactive process. (Claudio, supra, 134 Cal.App.4th at p. 243.)  "Two principles underlie a cause of action for failure to provide a reasonable

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

accommodation. First, the employee must request an accommodation. Second,the parties must

engage in an interactive process regarding the requested accommodation and, if the process fails,

responsibility for the failure rests with the party who failed to participate in good faith. While a

claim of failure to accommodate is independent of a cause of action for failure to engage in an

interactive dialogue, each necessarily implicates the other." (Gelfo, supra, 140 Cal.App.4th at p.

54, internal citations omitted.)  "FEHA requires an informal process with the employee to attempt

to identify reasonable accommodations, not necessarily ritualized discussions." (Nealy v.City of

Santa Monica (2015) 234 Cal.App.4th 359, 379 [184 Cal.Rptr.3d 9].)


"FEHA's reference to a 'known' disability is read to mean a disability of which the employer has

become aware, whether because it is obvious, the employee has brought it to the employer's

attention, it is based on the employer's own perception—mistaken or not—of the existence of a

disabling condition or,perhaps as here, the employer has come upon information indicating the

presence of a disability." (Gelfo, supra, 140 Cal.App.4th at p. 61, fn. 21.)  "Once initiated, the

employer has a continuous obligation to engage in the interactive process in good faith. 'Both

employer and employee have the obligation "to keep communications open" and neither has "a

right to obstruct the process." [Citation.] "Each party must participate in good faith, undertake

reasonable efforts to communicate its concerns, and make available to the other information which

is available, or more accessible, to one party.  Liability hinges on the objective circumstances

surrounding the parties' breakdown in communication, and responsibility for the breakdown lies

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

with the party who fails to participate in good faith." [Citation.]' " (Swanson v. Morongo

UnifiedSchool Dist. (2014) 232 Cal.App.4th 954, 971–972 [181 Cal.Rptr.3d 553].)


"[Employer] asserts that, if it had a duty to engage in the interactive process,the duty was

discharged. 'If anything,' it argues, 'it was [employee] who failed to engage in a good faith

interactive process.' [Employee] counters [employer] made up its mind before July 2002 that it

would not accommodate [employee]'slimitations, and nothing could cause it to reconsider that

decision. Because the evidence is conflicting and the issue of the parties' efforts and good faith is

factual, the claim is properly left for the jury's consideration." (Gelfo, supra,140 Cal.App.4th at p.

62, fn. 23.)  "None of the legal authorities that [defendant] cites persuades us that theLegislature

intended that after a reasonable accommodation is granted, the interactive process continues to

apply in a failure to accommodate context. . . .To graft an interactive process intended to apply to

the determination of a reasonable accommodation onto a situation in which an employer failed to

provide a reasonable, agreed-upon accommodation is contrary to the apparent intent of the FEHA

and would not support the public policies behind that provision." (A.M. v. Albertsons, LLC (2009)

178 Cal.App.4th 455, 464 [100Cal.Rptr.3d 449].)  "[T]he verdicts on the reasonable

accommodations issue and the interactive process claim are not inconsistent. They involve separate

causes of action and proof of different facts. Under FEHA, an employer must engage in a good

faith interactive process with the disabled employee to explore the alternatives to accommodate the

disability. 'An employee may file a civil action based on the employer's failure to engage in the

interactive process.' Failure to engage in this process is a separate FEHA violation independent

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

from an employer's failure to provide a reasonable disability accommodation, which is also a

FEHA violation.An employer may claim there were no available reasonable accommodations.But

if it did not engage in a good faith interactive process, 'it cannot be known whether an alternative

job would have been found.' The interactive process determines which accommodations are

required. Indeed, the interactive process could reveal solutions that neither party envisioned."

(Wysinger, supra, 157Cal.App.4th at pp. 424–425, internal citations omitted.)


"We disagree . . . with Wysinger's construction of section 12940(n). We Conclude that the

availability of a reasonable accommodation (i.e., amodification or adjustment to the workplace that

enables an employee to perform the essential functions of the position held or desired) is necessary

to a section 12940(n) claim. [¶] Applying the burden of proof analysis in Green,supra, 42 Cal.4th

254, we conclude the burden of proving the availability of a reasonable accommodation rests on

the employee." (Nadaf-Rahrov, supra, 166Cal.App.4th at pp. 984–985.)  "We synthesize

Wysinger, Nadaf-Rahrov, and Claudio with our analysis of the law as follows: To prevail on a

claim under section 12940, subdivision (n) for failure to engage in the interactive process, an

employee must identify a reasonable accommodation that would have been available at the time the

interactive process should have occurred. An employee cannot necessarily be expected to identify

and request all possible accommodations during the interactive process itself because ' "

'[e]mployees do not have at their disposal the extensive information concerning possible alternative

positions or possible accommodations which employers have. . . .' " ' However, as the

Nadaf-Rahrovcourt explained, once the parties have engaged in the litigation process, to prevail,

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

the employee must be able to identify an available accommodation the interactive process should

have produced: 'Section 12940[, subdivision](n),which requires proof of failure to engage in the

interactive process, is the appropriate cause of action where the employee is unable to identify a

specific,available reasonable accommodation while in the workplace and the employer fails to

engage in a good faith interactive process to help identify one, but the employee is able to identify

a specific, available reasonable accommodation through the litigation process.' " (Scotch, supra,

173 Cal.App.4th at pp.1018–1019.)

A reasonable accommodation is a reasonable change to the workplace that [choose one or more of

the following][gives a qualified applicant with a disability an equal opportunity inthe job

application process;][allows an employee with a disability to perform the essential duties of the

job;] [or][allows an employee with a disability to enjoy the same benefits and privileges of

employment that are available to employees without disabilities.]  "[T]he duty of an employer to

provide reasonable accommodation for an employee with a disability is broader under the FEHA

than under the ADA."(Bagatti v. Department of Rehabilitation (2002) 97 Cal.App.4th 344, 362

[118Cal.Rptr.2d 443].)  "[A]n employer who knows of the disability of an employee has an

affirmative duty to make known to the employee other suitable job opportunities with the employer

and to determine whether the employee is interested in, and qualifiedfor, those positions, if the

employer can do so without undue hardship or if the employer offers similar assistance or benefit to

other disabled or nondisabledemployees or has a policy of offering such assistance or benefit to

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

any other employees." (Prilliman v. United Air Lines, Inc. (1997) 53 Cal.App.4th 935,950–951

[62 Cal.Rptr.2d 142].)


"The question now arises whether it is the employees' burden to prove that a reasonable

accommodation could have been made, i.e., that they were qualifiedfor a position in light of the

potential accommodation, or the employers' burden to prove that no reasonable accommodation

was available, i.e., that the employees were not qualified for any position because no reasonable

accommodation was available. [¶¶] Applying Green's burden of proof analysis to section

12940(m), we conclude that the burden of proving ability to perform the essential functions of a

job with accommodation should be placed on the plaintiff under this statute as well."

(Nadaf-Rahrov v. The Neiman MarcusGroup, Inc. (2008) 166 Cal.App.4th 952, 977–978 [83

Cal.Rptr.3d 190], internal citations omitted.)  The California Supreme Court has held that under

Government Code section12940(a), the plaintiff is required to prove that he or she has the ability to

perform the essential duties of the job with or without reasonable accommodation. (SeeGreen v.

State of California (2007) 42 Cal.4th 254, 260 [64 Cal.Rptr.3d 390, 165P.3d 118].) While the court

left open the question of whether the same rule should apply to cases under Government Code

section 12940(m) (see id. at p. 265), appellate courts have subsequently placed the burden on the

employee to prove that he or she would be able to perform the job duties with reasonable

accommodation(see element 5). (See Cuiellette v. City of Los Angeles (2011) 194 Cal.App.4th

757,766 [123 Cal.Rptr.3d 562]; Nadaf-Rahrov v. The Neiman Marcus Group, Inc.(2008) 166

Cal.App.4th 952, 973–979 [83 Cal.Rptr.3d 190].)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

There may still be an unresolved issue if the employee claims that the employer failed to provide

him or her with other suitable job positions that he or she might be able to perform with reasonable

accommodation. The rule has been that the employer has an affirmative duty to make known to the

employee other suitable job opportunities and to determine whether the employee is interested in,

and qualifiedfor, those positions, if the employer can do so without undue hardship or if the

employer offers similar assistance or benefit to other disabled or nondisabled employees or has a

policy of offering such assistance or benefit to any other employees. (Prilliman v. United Air Lines,

Inc. (1997) 53 Cal.App.4th 935,950–951 [62 Cal.Rptr.2d 142]; see also Furtado v. State Personnel

Bd. (2013) 212Cal.App.4th 729, 745 [151 Cal.Rptr.3d 292]; Claudio v. Regents of the

Universityof California (2005) 134 Cal.App.4th 224, 243 [35 Cal.Rptr.3d 837]; Hanson v.Lucky

Stores (1999) 74 Cal.App.4th 215, 226 [87 Cal.Rptr.2d 487].) In contrast other courts have said

that it is the employee's burden to prove that a reasonable accommodation could have been made,

i.e., that he or she was qualified for a position in light of the potential accommodation. (See

Nadaf-Rahrov, supra, 166Cal.App.4th at p. 978; see also Cuiellette, supra, 194 Cal.App.4th at p.

767[plaintiff proves he or she is a qualified individual by establishing that he or she can perform

the essential functions of the position to which reassignment is sought].) The question of whether

the employee has to present evidence of other suitable job descriptions and prove that a vacancy

existed for a position that the employee could do with reasonable accommodation may not be fully

resolved.No element has been included that requires the plaintiff to specifically request reasonable

accommodation. Unlike Government Code section 12940(n) on theinteractive process (see CACI

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

No. 2546, Disability Discrimination—ReasonableAccommodation—Failure to Engage in

Interactive Process), section 12940(m) doe snot specifically require that the employee request

reasonable accommodation; itrequires only that the employer know of the disability. (See Prilliman,

supra, 53Cal.App.4th at pp. 950–951.)


"The essential elements of a failure to accommodate claim are: (1) the plaintiff has a disability

covered by the FEHA; (2) the plaintiff is a qualified individual(i.e., he or she can perform the

essential functions of the position); and (3) the employer failed to reasonably accommodate the

plaintiff's disability."(Cuiellette,supra, 194 Cal.App.4th at p. 766.)  "Under the FEHA, 'reasonable

accommodation' means 'a modification or adjustment to the workplace that enables the employee

to perform the essential functions of the job held or desired.' " (Cuiellette,supra, 194 Cal.App.4th

at p.766.) "Reasonable accommodations include '[j]ob restructuring, part-time or modifiedwork

schedules, reassignment to a vacant position, . . . and other similar accommodations for individuals

with disabilities.' " (Swanson v. MorongoUnified School Dist. (2014) 232 Cal.App.4th 954, 968

[181 Cal.Rptr.3d 553],original italics.)  "The examples of reasonable accommodations in the

relevant statutes and regulations include reallocating nonessential functions or modifying how or

when an employee performs an essential function, but not eliminating essential functions

altogether. FEHA does not obligate the employer to accommodate the employee by excusing him

or her from the performance of essential functions.``(Nealy v. City of Santa Monica (2015) 234

Cal.App.4th 359, 375 [184Cal.Rptr.3d 9].)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

" 'If the employee cannot be accommodated in his or her existing position and the requested

accommodation is reassignment, an employer must make affirmative efforts to determine whether a

position is available. [Citation.] A reassignment, however, is not required if "there is no vacant

position for which the employee is qualified." [Citations.] "The responsibility to reassign a

disabledemployee who cannot otherwise be accommodated does 'not require creating a new job,

moving another employee, promoting the disabled employee or violating another employee's rights

. . . ." ' [Citations.] "What is required is the'duty to reassign a disabled employee if an already

funded, vacant position at the same level exists.' [Citations.]" [Citations.]' " (Furtado,supra,

212Cal.App.4th at p. 745.)  "[A] disabled employee seeking reassignment to a vacant position 'is

entitled to preferential consideration.' " (Swanson, supra, 232 Cal.App.4th at p. 970.) "Although

no particular form of request is required, ' "[t]he duty of an employer reasonably to accommodate

an employee's handicap does not arise until the employer is 'aware of respondent's disability and

physical limitations.'. . ." ' ' "[T]he employee can't expect the employer to read his mind and know

he secretly wanted a particular accommodation and sue the employer for not providing it. Nor is an

employer ordinarily liable for failing to accommodate a disability of which it had no knowledge. . .

." . . .' " (Avila, supra, 165Cal.App.4th at pp. 1252–1253, internal citations omitted.) " 'Ordinarily

the reasonableness of an accommodation is an issue for the jury.' "(Prilliman,supra, 53 Cal.App.4th

at p. 954, internal citation omitted.)


"[T]he duty of an employer to provide reasonable accommodation for an employee with a

disability is broader under the FEHA than under the ADA."(Bagatti, supra, 97 Cal.App.4th at p.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

362.) "Under the FEHA . . . an employer is relieved of the duty to reassign adisabled employee

whose limitations cannot be reasonably accommodated in his or her current job only if

reassignment would impose an 'undue hardship' on its operations or if there is no vacant position

for which the employee is qualified."(Spitzer v. Good Guys, Inc. (2000) 80 Cal.App.4th 1376,

1389 [96 Cal.Rptr.2d236].)  "On these issues, which are novel to California and on which the

federal courts are divided, we conclude that employers must reasonably accommodate individuals

falling within any of FEHA's statutorily defined 'disabilities,'including those 'regarded as'

disabled, and must engage in an informal,interactive process to determine any effective

accommodations." (Gelfo v.Lockheed Martin Corp. (2006) 140 Cal.App.4th 34, 55 [43

Cal.Rptr.3d 874].)  "Appellant also stated a viable claim under section 12940, subdivision

(m),which mandates that an employer provide reasonable accommodations for the known physical

disability of an employee. She alleged that she was unable to work during her pregnancy, that she

was denied reasonable accommodations for her pregnancy-related disability and terminated, and

that the requested accommodations would not have imposed an undue hardship on [defendant].

Afinite leave of greater than four months may be a reasonable accommodation for a known

disability under the FEHA." (Sanchez v. Swissport, Inc. (2013) 213Cal.App.4th 1331, 1341 [153

Cal.Rptr.3d 367].)  "To the extent [plaintiff] claims the [defendant] had a duty to await a vacant

position to arise, he is incorrect. A finite leave of absence may be a reasonable accommodation to

allow an employee time to recover, but FEHA does not require the employer to provide an

indefinite leave of absence to await possible future vacancies." (Nealy, supra, 234 Cal.App.4th at

pp. 377–378.)

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

The analysis of a claim under the ADA "roughly parallels" the analysis of claims brought under

the Rehabilitation Act. Pangburn v. N. Ky. Univ., No. 99-5474, 2000 U.S. App. LEXIS 6413, at

*4, 2000 WL 331948 (6th Cir. Mar. 23, 2000). To bring a claim for disability discrimination under

these statutes, the plaintiff must prove that he is "(1) disabled as defined by each statute, (2)

'otherwise qualified' for participation in the program, and (3) being denied the benefits of or being

dismissed from the program based on h[is] disability." Id. (citing Kaltenberger v. Ohio Coll. of

Podiatric Med., 162 F.3d 432, 435 (6th Cir. 1998)). A person is "otherwise qualified" if he or she

can meet the program's necessary requirements with reasonable accommodation. Id. Courts

generally defer to the judgment of a school when considering students' qualifications. See Halpern

v. Wake Forest Univ. Health Scis., 669 F.3d 454 (4th Cir. 2012) (compiling list of cases). Cobble v.

Spalding University, 2017 WL 382245 (W.D.Ky.), 4 (W.D.Ky., 2017)


Whether the FEHA standard applies under the Unruh Act has not been addressed by the

courts.With the exception of claims that are also violations of the Americans With Disabilities Act

(ADA) (see Munson v. Del Taco, Inc. (2009) 46 Cal.4th 661, 665[94 Cal.Rptr.3d 685, 208 P.3d

623]), intentional discrimination is required forviolations of the Unruh Act. (See Harris v. Capital

Growth Investors XIV (1991) 52Cal.3d 1142, 1149 [278 Cal.Rptr. 614, 805 P.2d 873].) The intent

requirement is encompassed within the motivating-reason element. For claims that are also

violations of the ADA, do not give element  The judge may decide the issue of whether the

defendant is a business establishment as a matter of law. (Rotary Club of Duarte v. Bd. of Directors

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

(1986)178 Cal.App.3d 1035, 1050 [224 Cal.Rptr. 213].)  The Act is not limited to the categories

expressly mentioned in the statute. Other forms of arbitrary discrimination by business

establishments are prohibited. (In reCox (1970) 3 Cal.3d 205, 216 [90 Cal.Rptr. 24, 474 P.2d

992].) Therefore, this instruction allows the user to "insert other actionable characteristics"

throughout.  First, the claim must be based on a personal characteristic similar to those listed in the

statute. Second, the court must consider whether the alleged discrimination wasjustified by a

legitimate business reason. Third, the consequences of allowing the claim to proceed must be taken

into account. (Semler v. General Electric CapitalCorp. (2011) 196 Cal.App.4th 1380, 1392–1393

[127 Cal.Rptr.3d 794]; see Harris,supra, 52 Cal.3d at pp. 1159–1162.)


"The Unruh Act was enacted to 'create and preserve a non-discriminatory environment in

California business establishments by "banishing" or "eradicating" arbitrary, invidious

discrimination by such establishments.' "(Flowers v. Prasad (2015) 238 Cal.App.4th 930, 937 [190

Cal.Rptr.3d 33].)  "Invidious discrimination is the treatment of individuals in a manner that is

malicious, hostile, or damaging." (Javorsky v. Western Athletic Clubs, Inc.(2015) 242 Cal.App.4th

1386, 1404 [195 Cal.Rptr.3d 706].)  " 'The Legislature used the words "all" and "of every kind

whatsoever" in referring to business establishments covered by the Unruh Act, and the inclusion of

these words without any exception and without specification of particular kinds of enterprises,

leaves no doubt that the term "business establishments" was used in the broadest sense reasonably

possible. The word "business" embraces everything about which one can be employed, and it is

often synonymous with "calling, occupation, or trade, engaged in for the purpose of making a

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

livelihood or gain." The word "establishment," as broadlydefined, includes not only a fixed

location, such as the "place where one is permanently fixed for residence or business," but also a

permanent "commercial force or organization" or "a permanent settled position, (as in life or

business)." ' " (O'Connor v. Village Green Owners Assn. (1983) 33 Cal.3d 790,795 [191

Cal.Rptr. 320, 662 P.2d 427], internal citations omitted.)  Whether a defendant is a "business

establishment" is decided as an issue of law.(Rotary Club of Duarte, supra, 178 Cal.App.3d at p.

1050.)


"In addition to the particular forms of discrimination specifically outlawed by the Act (sex, race,

color, etc.), courts have held the Act 'prohibit[s]discrimination based on several classifications

which are not specifically enumerated in the statute.' These judicially recognized classifications

include unconventional dress or physical appearance, families with children, homosexuality, and

persons under 18." (Hessians Motorcycle Club v. J.C.Flanagans (2001) 86 Cal.App.4th 833, 836

[103 Cal.Rptr.2d 552], internal citations omitted.)  "[T]here is no dispute that California courts

have applied the Act to discrimination based on age. Furthermore, the Act targets *not just the*

*practice of outright exclusion, but pricing differentials as well.*" (Javorsky, supra, 242Cal.App.4th

at p. 1394, internal citations omitted.)


"[T]he language and history of the Unruh Act indicate that the legislative object was to prohibit

intentional discrimination in access to public accommodations.  We have been directed to no

authority, nor have we located any, that would justify extension of a disparate impact test, which

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

has been developed and applied by the federal courts primarily in employment discrimination

cases, to a general discrimination-in public-accommodations statute like the Unruh Act. Although

evidence of adverse impact on a particular group of persons may have probative value in public

accommodations cases and should therefore be admitted in appropriate cases subject to the general

rules of evidence, a plaintiff must nonetheless plead and prove a case of intentional discrimination

to recover under the Act." (Harris, supra, 52 Cal.3d at p. 1149.)


"On examining the language, statutory context, and history of section 51,subdivision (f), we

conclude . . . [t]he Legislature's intent in adding subdivision (f) was to provide disabled

Californians injured by violations of the ADA with the remedies provided by section 52. A

plaintiff who establishes a violation of the ADA, therefore, need not prove intentional

discrimination in order to obtain damages under section 52." (Munson, supra, 46 Cal.4th at p.665.)

"Civil Code section 51, subdivision (f) states: 'A violation of the right of any individual under the

federal [ADA] shall also constitute a violation of this section.' The ADA provides in pertinent part:

'No individual shall be discriminated against on the basis of disability in the full and equal

enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any

place of public accommodation by any person who . . . operates a place of public accommodation.'

The ADA defines discrimination as 'a *failure to make reasonable modifications* in policies,

practices, or procedures, when such modifications are necessary to afford such goods, services,

facilities, privileges,advantages, or accommodations to individuals with disabilities, unless the

entitycan demonstrate that making such modifications would fundamentally alter the nature of such

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

goods, services, facilities, privileges, advantages, oraccommodations.' " (Baughman v. Walt

Disney World Co. (2013) 217Cal.App.4th 1438, 1446 [159 Cal.Rptr.3d 825], internal citations

omitted.)

"[T]he Act's objective of prohibiting 'unreasonable, arbitrary or invidious discrimination' is

fulfilled by examining whether a price differential reflects an' arbitrary, class-based generalization.'

. . . [A] policy treating age groups differently in this respect may be upheld, at least if the pricing

policy (1) ostensibly provides a social benefit to the recipient group; (2) the recipient group is

disadvantaged economically when compared to other groups paying full price; and (3) there is no

invidious discrimination." (Javorsky, supra, 242Cal.App.4th at p. 1399.)  "It is thus manifested by

section 51 that all persons are entitled to the full and equal privilege of associating with others in

any business establishment. And section 52, liberally interpreted, makes clear that discrimination

by such a business establishment against one's right of association on account of the associates'

color [or other protected characteristic], is violative of the Act.  It follows . . . that discrimination by

a business establishment against persons on account of their association with others of the [B]lack

race is actionable under the Act." (Winchell v. English(1976) 62 Cal.App.3d 125, 129 [133

Cal.Rptr. 20].)

"Because it is undisputed that the respondent 'regarded or treated' her as a person with a disability.

The protection of the Unruh Civil Rights Act extends both to people who are currently living with

a physical disability that limits a life activity and to those who are regarded by others as living with

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

such a disability. . . . 'Both the policy and language of the statute offer protection to a person who is not actually disabled, but is wrongly perceived to be. The statute's plain language leads to the conclusion that the "regarded as" definition casts a broader net and protects any individual "regarded" or "treated" by an employer "as having, or having had, any physical condition that makes achievement of a major life activity difficult" or may do so in the future….' [and] … is protected by theUnruh Civil Rights Act." (Maureen K. v. Tuschka (2013) 215 Cal.App.4th 519,529–530 [155 Cal.Rptr.3d 620], original italics, internal citations omitted.)


Under The Americans With Disabilities Act (ADA) found at 42 U.S.C. 12101-12213 (As it protects those incorrectly perceived with disabilities, too). 7. Civil Rights Act of 1866 (Section 1981), it is illegal to discriminate on these basis (and causes of action are available even to those incorrectly perceived with such).   42 U.S. Code § 12101 states " (a)FindingsThe Congress finds that:


(1)physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination;

(2)historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

(3)discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(4)unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;

(5)individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

(6)census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally;

(7)the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and

(8)the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

(b)PurposeIt is the purpose of this chapter—

(1)to provide a clear and comprehensive national mandate for the elimination of discrimination

against individuals with disabilities;

(2)to provide clear, strong, consistent, enforceable standards addressing discrimination against

individuals with disabilities;

(3)to ensure that the Federal Government plays a central role in enforcing the standards established

in this chapter on behalf of individuals with disabilities; and

(4)to invoke the sweep of congressional authority, including the power to enforce the fourteenth

amendment and to regulate commerce, in order to address the major areas of discrimination faced

day-to-day by people with disabilities.


The Supreme Court has broadly construed the provision "under color of any statute" to include

virtually any State Action including the exercise of power of one "possessed by virtue of state law

and made possible only because the wrongdoer is clothed with the authority of state law" (United

States v. Classic, 313 U.S. 299, 61 S. Ct. 1031, 85 L. Ed. 1368 [1941]). Thus, the wrongdoer's

employment by the government may indicate state action, although it does not conclusively prove

it. Even if the wrongdoer did not act pursuant to a state statute, the plaintiff may still show that the

defendant acted pursuant to a "custom or usage" that had the force of law in the state. In Adickes v.

S. H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970), the plaintiff was able

to prove that she was refused service in a restaurant due to her race because of a state-enforced

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

custom of racial Segregation, even though no state statute promoted racial segregation in

restaurants.


According to the Department of Labor When employees are injured or disabled or become ill on

the job, they may be entitled to medical and/or disability-related leave under two federal laws: the

Americans with Disabilities Act (ADA) and the Family and Medical Leave Act (FMLA). In

addition, state workers' Compensation laws have leave provisions that may apply. Depending on

the situation, one or more of these laws can apply to the same employee. To help employers

understand their responsibilities related to medical and disability-related leave, an overview of each

is provided below, including information about where the laws intersect and overlap.  Workers'

Compensation laws apply to almost all employers. Workers' compensation is a form of insurance

that provides financial assistance, medical care and other benefits for employees who are injured or

disabled on the job. Except for federal government employees and certain other groups of

employees, workers' Compensation laws are administered at the state level. Because each state has

its own system, coverage varies. As a general rule, Workers' Compensation laws apply to all

employers with one or more employees. In most states, all employees are covered. An on-the-job

injury triggers coverage.  Medical and disability-related leave rules: Injured employees receive

varying amounts of paid leave, depending on the state and the nature of the injury.  The Americans

with Disabilities Act (ADA) is a federal law that protects the rights of people with disabilities by

eliminating barriers to their participation in many aspects of working and living in America. In

particular, Title I of the ADA prohibits covered employers from discriminating against people with

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

disabilities in the full range of employment-related activities, from recruitment to advancement to

pay and benefits.  Title I of the ADA applies to employers (including state or local governments)

with 15 or more employees and to employment agencies, labor organizations and joint

labor-management committees with any number of employees.  The ADA protects individuals

with a disability who are qualified for the job, meaning they have the skills and qualifications to

carry out the essential functions of the job, with or without accommodations. An individual with a

disability is defined as a person who: (1) has a physical or mental impairment that substantially

limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as

having such an impairment.

## 12. Breach of Insurance Contract

Defendant withheld, and did not pay Plaintiff benefit wages against CA Disability and

Unemployment Insurance Code (and it's respective contract).  EDD Defendants conspired in

withholding, and non-payment of undisputed wages (i.e. already verified by the Auditing, and

Accounting Department, with respective employers and confirming accounts and wages printed

and signed with my social security number, unique check numbers, and full name (with middle

initial) George J. Austin.  Defendant, unconstitutional, and tortious, non-(and delayed) payment of

wages was to the detriment of Plaintiff, (University of California, Berkeley Graduate (09'), Honors

Student, Bay Area Housing Commissioner, Alum, NAACP National Representative, and Local

Youth and College President, Alum, California Senate, Governance and Finance Committee,

Consultant, Capital Fellows, and Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

(13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as

well as others), and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA).

Defendant's Breach of Insurance Contract (codified in Statute), is irreparably harming Plaintiff

   a.  Elements.

      i.   Defendant breached its duty to pay Plaintiff for a loss covered under an

          insurance policy.  To Establish this claim, Plaintiff must prove all of the

          following:

      ii.  1. That Plaintiff suffered a loss, all or part of which was covered under an

          insurance policy with Defendant;

          1.  Plaintiff suffered losses statutorily covered by Defendant EDD and

             thus plaintiff is entitled to unpaid, and underpaid benefit amounts, or

             wages.  These wages have already been entered into the system,

             according to the Auditing and Accounting Department, but still

             unpaid to Plaintiff, nor deposited into his account.

      iii.  2. That Defendant was notified of the loss as required by the policy; and

          1.  EDD was notified, processed, and contacted Plaintiff regarding loss

             and full, and appropriate, payment as required by statute.  EDD

             owes plaintiff unpaid, and underpaid benefit amounts, or wages,

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

including the proper pay rate going forward already entered into the

system, according to the Auditing and Accounting Department, but

still unpaid to Plaintiff, nor deposited into his account.  A leader in

that Department explicitly said they had already been entered, and

should be available shortly, but weeks have passed, and still not

received.

iv.     3. That Defendant], failed to conduct a full, fair, prompt,and thorough

investigation of all of the bases of Plaintiff]'s claim;

1.   EDD delayed, but apparently, conducted the full, and fair thorough

investigation into Defendant Employers, to verify wages, and

accounts, but have woefully underinvested, nor conducted

anywhere near prompt investigation into their own processes, and

procedures to the point of violating Plaintiff's due process.  EDD

owes plaintiff unpaid, and underpaid benefit amounts, or wages,

including the proper pay rate going forward already entered into the

system, according to the Auditing and Accounting Department, but

still unpaid to Plaintiff, nor deposited into his account.  A leader in

that Department explicitly said they had already been entered, and

should be available shortly, but weeks have passed, and still not

received.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

v.      5. That Defendant's failure to properly investigate the claim was a

substantial factor in causing Plaintiff'sharm.

1.    Defendant EDD's failure to properly investigate has been a

substantial factor in causing major harm to Plaintiff.  EDD owes

plaintiff unpaid, and underpaid benefit amounts, or wages, including

the proper pay rate going forward already entered into the system,

according to the Auditing and Accounting Department, but still

unpaid to Plaintiff, nor deposited into his account.  A leader in that

Department explicitly said they had already been entered, and

should be available shortly, but weeks have passed, and still not

received.

vi.     6. The amount of the covered loss that Defendant failed to pay. Plaintiff

claims that Defendant breached the obligation of good faith and fair dealing

by failing to pay, underpaying, and delaying payment and insurance due

under the insurance policy.  To act or fail to act "unreasonably" means that

the insurer had no proper cause for its conduct. In determining whether

Defendant acted unreasonably, you should consider only the information

that Defendant knew or reasonably should have known at the time when it

failed to pay/delayed payment of policy benefits, or wages.

1.    Defendant EDD acted, and continues to act, unreasonably, and in

violation of due process.  EDD owes plaintiff unpaid, and underpaid

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

benefit amounts, or wages, including the proper pay rate going

forward already entered into the system, according to the Auditing

and Accounting Department, but still unpaid to Plaintiff, nor

deposited into his account.  Anna, A leader in that Department

explicitly said they had already been entered, and should be

available shortly, but weeks have passed, and still not received.

vii.    7. That Plaintiff was harmed; and

1.   Plaintiff was harmed financially, physically, and emotionally due to

the due process violation and extreme delay in compensation.  EDD

owes plaintiff unpaid, and underpaid benefit amounts, or wages,

including the proper pay rate going forward already entered into the

system, according to the Auditing and Accounting Department, but

still unpaid to Plaintiff, nor deposited into his account.  Anna, A

leader in that Department explicitly said they had already been

entered, and should be available shortly, but weeks have passed, and

still not received.

viii.    8. That Defendant's failure to pay/delay in payment of policy benefits was a

substantial factor in causing Plaintiff's harm.

1.   Defendant's failure to pay and delay in pay was a substantial factor

in causing Plaintiff's harm.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

When investigating Plaintiff's claim, Defendant had a duty to diligently search for and consider evidence that supported coverage of the claimed loss [including internally problems preventing payment "when due".  "Wrongful failure to provide coverage or defend a claim is a breach of contract." (Isaacson v. California Insurance Guarantee Assn. (1988) 44 Cal.3d775, 791 [244 Cal.Rptr. 655, 750 P.2d 297].)

In determining whether Defendants acted unreasonably, that is,without proper cause, one may consider whether the defendant did any of the following:[(a) Misrepresented to Plaintiff relevant facts or insurance policy provisions relating to any coverage at issue.][(b) Failed to acknowledge and act reasonably promptly after receiving communications about Plaintiff's claim arising under the insurance policy.][(c) Failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under its insurance policies.][(d) Failed to accept or deny coverage of claims within a reasonable time after Plaintiff completed and submitted proof-of-loss requirements.][(e) Did not attempt in good faith to reach a prompt, fair, and equitable settlement of Plaintiff's claim after liability had become reasonably clear.][(f) Required Plaintiff to file a lawsuit to recover amounts due under the policy by offering substantially less than the amount that [he/she/it] ultimately recovered in the lawsuit,even though [name of plaintiff] had made a claim for an amount reasonably close to the amount ultimately recovered.] [(l) Failed to settle a claim against Plaintiff promptly once his liability had become apparent, under one portion of the insurance policy coverage in order to influencesettlements under other portions of the

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

insurance policy coverage.][(m) Failed to promptly provide a reasonable explanation of its reasons for denying the claim or offering a compromise settlement, based on the provisions of the insurance policy in relation to the facts or applicable law.]

In every insurance policy there is an implied obligation of good faith and fair dealing that neither the insurance company nor the insured will do anything to injure the right of the other party to receive the benefitsof the agreement.To fulfill its implied obligation of good faith and fair dealing, an insurance company must give at least as much consideration to the interests of the insured as it gives to its own interests.To breach the implied obligation of good faith and fair dealing, an insurance company must unreasonably act or fail to act in a manner that deprives the insured of the benefits of the policy. To act unreasonably is not a mere failure to exercise reasonable care. It means that the insurer must act or fail to act without proper cause. However, it is not necessary for the insurer to intend to deprive the insured of the benefits of the policy.

Noting that "the prompt payment of benefits is the ' "very essence" ' of the unemployment compensation insurance program" (id. at p. 546), that "Robles had shown himself substantively eligible for the identified benefits by attesting to his availability, and diligent search, for work" (id. at p. 552), and that "EDD's chosen process in response to the Writ had utterly failed to result in the timely payment of all of the benefits to which Robles was entitled" (ibid.), we held that the trial court properly ordered the immediate payment of benefits without requiring Robles to jump any additional procedural hurdles (ibid.). As a result, EDD paid the remaining amounts owed, resulting

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

in Robles' total recovery of $66,214.53."  'The fundamental purpose of California's

Unemployment Insurance Code is to reduce the hardship of unemployment . . . .'(Paratransit, Inc.

v. Unemployment Ins. Appeals Bd. (2014) 59 Cal. 4th 551, 558, fn. omitted; see § 100

[unemployment insurance system created to provide benefits 'for persons unemployed through no

fault of their own' and to reduce 'the suffering caused thereby'].)


Specifically, ' "[u]nemployment (and Disability) benefits provide cash to a newly unemployed (and

injured) worker 'at a time when otherwise he would have nothing to spend,' serving to maintain

the recipient at subsistence levels without the necessity of his turning to welfare or private charity."

' " (Robles II, supra, 236 Cal.App.4th at pp. 545–546.)   As a consequence, we have stressed the

societal importance of an unemployment insurance system that promptly pays recipients all benefits

due. (See Robles II, supra, 236 Cal.App.4th at pp. 545–546 at p. 546 [noting that "the prompt

payment of benefits is the ' "very essence" ' of the unemployment compensation insurance

program"].)  We have also emphasized the need to "liberally construe the Unemployment

Insurance Code to advance the legislative objective of reducing the hardship of unemployment."

(Ibid.; Robles I, supra, 207 Cal.App.4th at p. 1034.)


"There is an implied covenant of good faith and fair dealing in every contract that neither party will

do anything which will injure the right of the other to receive the benefits of the agreement."

(Comunale v. Traders & General Ins.Co. (1958) 50 Cal.2d 654, 658 [328 P.2d 198].)  "For the

insurer to fulfill its obligation not to impair the right of the insured to receive the benefits of the

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

agreement, it again must give at least as much consideration to the latter's interests as it does to its

own." (Egan v. Mutual of Omaha Insurance Co. (1979) 24 Cal.3d 809, 818–819 [169 Cal.Rptr.

691, 620P.2d 141].)  "[T]o establish the insurer's 'bad faith' liability, the insured must show that

the insurer has (1) withheld benefits due under the policy, and (2) that such withholding was

'unreasonable' or 'without proper cause.' The actionable withholding of benefits may consist of

the denial of benefits due; paying less than due; and/or unreasonably delaying payments due."

(Major v. Western HomeIns. Co. (2009) 169 Cal.App.4th 1197, 1209 [87 Cal.Rptr.3d 556],

internal citations omitted.) " '[T]he covenant of good faith can be breached for objectively

unreasonable conduct, regardless of the actor's motive.' . . . [A]n insured plaintiff need onlyshow,

for example, that the insurer unreasonably refused to pay benefits or failed to accept a reasonable

settlement offer; there is no requirement to establish subjective bad faith." (Bosetti v. United States

Life Ins. Co. in the City Of New York (2009) 175 Cal.App.4th 1208, 1236 [96 Cal.Rptr.3d 744],

original italics, internal citations omitted.)


"Thus, a breach of the implied covenant of good faith and fair dealing involves something more

than a breach of the contract or mistaken judgment. There must be proof the insurer failed or

refused to discharge its contractual duties not because of an honest mistake, bad judgment, or

negligence, 'but rather by a conscious and deliberate act, which unfairly frustrates the agreed

common purposes and disappoints the reasonable expectations of the other party thereby depriving

that party of the benefits of the agreement.' " (Century Surety Co. v.Polisso (2006) 139

Cal.App.4th 922, 949 [43 Cal.Rptr.3d 468], internal citations omitted.)  "[I]f the insurer denies

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

benefits unreasonably (i.e., without any reasonable basis for such denial), it may be exposed to the

full array of tort remedies, including possible punitive damages." (Jordan v. Allstate Ins. Co. (2007)

148 Cal.App.4th1062, 1073 [56 Cal.Rptr.3d 312].)  "Subterfuges and evasions violate the

obligation of good faith in performance even though the actor believes his conduct to be justified.

But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing

may require more than honesty. A complete catalogue of types of bad faith is impossible, but the

following types are among those which have been recognized in judicial decisions: evasion of the

spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance,

abuse of a power to specify terms, and interference with or failure to cooperate in the other party's

performance." (R. J. Kuhl Corp. v. Sullivan (1993) 13 Cal.App.4th1589, 1602 [17 Cal.Rptr.2d

425].)


"[A]n insurer is not required to pay every claim presented to it. Besides the duty to deal fairly with

the insured, the insurer also has a duty to its other policyholders and to the stockholders (if it is

such a company) not to dissipate its reserves through the payment of meritless claims. Such a

practice inevitably would prejudice the insurance seeking public because of the necessity to

increase rates, and would finally drive the insurer out of business." (Austero v.National Cas. Co.

(1978) 84 Cal.App.3d 1, 30 [148 Cal.Rptr. 653], overruled on other grounds in Egan, supra, 24

Cal.3d at p. 824 fn. 7.)  "Unique obligations are imposed upon true fiduciaries which are not found

in the insurance relationship. For example, a true fiduciary must first consider and always act in the

best interests of its trust and not allow self-interest to  overpower its duty to act in the trust's best

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

interests. An insurer, however, may give its own interests consideration equal to that it gives the

interests of its insured; it is not required to disregard the interests of its shareholders and other

policyholders when evaluating claims; and it is not required to pay non-covered claims, even

though payment would be in the best interests of its insured."(Love v. Fire Ins. Exchange (1990)

221 Cal.App.3d 1136, 1148–1149 [271Cal.Rptr. 246], internal citations omitted.)


If an insurer "fails to deal fairly and in good faith with its insured by refusing, without proper

cause, to compensate its insured for a loss covered by the policy,such conduct may give rise to a

cause of action in tort for breach of an implied covenant of good faith and fair dealing. . . . [¶] . . .

[W]hen the insurer unreasonably and in bad faith withholds payment of the claim of its insured, itis

subject to liability in tort." (Gruenberg v. Aetna Insurance Co. (1973) 9Cal.3d 566, 574–575 [108

Cal.Rptr. 480, 510 P.2d 1032], original italics.)  "An insurer's obligations under the implied

covenant of good faith and fair dealing with respect to first party coverage include a duty not to

unreasonably withhold benefits due under the policy. An insurer that unreasonably delays, or fails

to pay, benefits due under the policy may be held liable in tort for breach of the implied covenant.

The withholding of benefits due under the policy may constitute a breach of contract even if the

conduct was reasonable, but liability in tort arises only if the conduct was unreasonable, that is,

without proper cause."(Rappaport-Scott v. Interinsurance Exch. of the Auto. Club (2007)

146Cal.App.4th 831, 837 [53 Cal.Rptr.3d 245], internal citations omitted.) "[T]here are at least two

separate requirements to establish breach of the implied covenant: (1) benefits due under the policy

must have been withheld;and (2) the reason for withholding benefits must have been unreasonable

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

or without proper cause." (Love v. Fire Insurance Exchange (1990) 221Cal.App.3d 1136, 1151

[271 Cal.Rptr. 246], internal citations omitted.)


"[A]n insurer denying or delaying the payment of policy benefits due to the existence of a genuine

dispute with its insured as to the existence of coverage liability or the amount of the insured's

coverage claim is not liable in bad faith even though it might be liable for breach of contract."

(Chateau Chamberay Homeowners Assn. v. Associated International Insurance Co. (2001)

90Cal.App.4th 335, 347 [108 Cal.Rptr.2d 776].)  Here there are no disputes, just improper

withholding. "We evaluate the reasonableness of the insurer's actions and decision to deny benefits

[or unduly delay] as of the time they were made rather than with the benefit of hindsight." (Century

Surety Co. v. Polisso (2006) 139 Cal.App.4th 922, 949 [43Cal.Rptr.3d 468].) "[I]f the insurer

denies benefits unreasonably (i.e., without any reasonable basis for such denial), it may be exposed

to the full array of tort remedies, including possible punitive damages." (Jordan v. Allstate Ins. Co.

(2007) 148 Cal.App.4th1062, 1073 [56 Cal.Rptr.3d 312].)


" '[D]enial  [or delay] of a claim on a basis unfounded in the facts known to the insurer, or

contradicted by those facts, may be deemed unreasonable. "A trier of fact mayfind that an insurer

acted unreasonably if the insurer ignores evidence available to it which supports the claim. The

insurer may not just focus on those facts which justify denial of the claim." ' " (Maslo v.

Ameriprise Auto & Home Ins.(2014) 227 Cal.App.4th 626, 634 [173 Cal.Rptr.3d 854].)  "We

conclude . . . that the duty of good faith and fair dealing on the part of defendant insurance

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

companies is an absolute one. . . . [T]he nonperformance by one party of its contractual duties

cannot excuse a breach of the duty of good faith and fair dealing by the other party while the

contract between them is in effect and not rescinded." (Gruenberg, supra, 9 Cal.3d at p. 578.), [A]n

insurer may act unreasonably by failing to pay damages that are certain and demanding arbitration

on those damages." (Maslo,supra, 227Cal.App.4th at pp. 638–639 [uninsured motorist coverage

case].) "[T]he insurer's duty to process claims fairly and in good faith [is] a non delegable duty."

(Hughes v. Blue Cross of Northern California (1989) 215Cal.App.3d 832, 848 [263 Cal.Rptr.

850].)  "[I]n [a bad-faith action] 'damages for emotional distress are compensable as incidental

damages flowing from the initial breach, not as a separate cause of action.' Such claims of

emotional distress must be incidental to 'a substantial invasion of property interests.' " (Major v.

Western Home Ins. Co. (2009) 169Cal.App.4th 1197, 1214 [87 Cal.Rptr.3d 556], original italics,

internal citations omitted.)


"To fulfill its implied obligation, an insurer must give at least as much consideration to the interests

of the insured as it gives to its own interests.When the insurer unreasonably and in bad faith

withholds payment of the claim of its insured, it is subject to liability in tort. And an insurer cannot

reasonably and in good faith deny payments to its insured without fully investigating the grounds

for its denial." (Frommoethelydo v. Fire Insurance Exchange (1986) 42Cal.3d 208, 214–215 [228

Cal.Rptr. 160, 721 P.2d 41], internal citation omitted.)  "To protect [an insured's] interests it is

essential that an insurer fully inquire into possible bases that might support the insured's claim.

Although we recognize that distinguishing fraudulent from legitimate claims may occasionally be

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

difficult for insurers, . . . an insurer cannot reasonably and in good faith deny payments to its

insured without thoroughly investigating the foundation for its denial." (Egan, supra, 24 Cal.3d at

p. 819.)  "When investigating a claim, an insurance company [or broadly organization] has a duty

to diligently search for evidence which supports its insured's claim. If it seeks to discover only the

evidence that defeats the claim it holds its own interest above that of the insured." (Mariscal v. Old

Republic Life Ins. Co. (1996) 42 Cal.App.4th1617, 1620 [50 Cal.Rptr.2d 224].)


### 13.  Whistleblower Claim

Defendants violated well established Whistleblower protections. Tesla, MVP, Balance and other

defendants collectively, tortiously, and illegally, violated whistleblower protections under SOX,

FLSA, and California Labor Codes.  Defendants did so when they not only did not address

concerns that were proven to be true, but alternatively and illegally retaliated, and took negative

employment actions against Plaintiff, and  Attorney of Record, (University of California, Berkeley

Graduate (09'), Honors Student, Bay Area Housing Commissioner, Alum, NAACP National

Representative, and Local Youth and College President, Alum, California Senate, Capital Fellows,

Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and Anderson

Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as well as others), Mr. George Jarvis

(J.) Austin, esq. (TBA).


To establish a prima facie whistle blowing wrongful termination case, an employee must establish

that: 1) he was a member of a protected class or engaged in protected activities (i.e.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

whistleblowing) 2) he was performing competently in the position he held: 3) he suffered an

adverse employment action, such as demotion, or termination; and 4) "some other circumstance

that suggests retaliatory motive." See Monavian v. Department of Justice (29108) 28 Cal.App.5th

1127, 2241. See  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973);  Plaintiff engaged in

protected activities, whistle-blowing, was performing competently in the position, suffered an

adverse employment action, wrongful termination in retaliation to that protected activity.


Under California Labor Code Section 1102.5, if an employer retaliates against a whistleblower, the

employer may be required to reinstate the employee's employment and work benefits, pay lost

wages, and take other steps necessary to comply with the law.  Under the FLSA the Supreme

Court recently ruled that oral statements made to an employer regarding wage and hour violations

are sufficient to trigger the anti-retaliation provision of the Fair Labor Standards Act (FLSA).

Kasten v. Saint-Gobain Performance Plastics Corp., No. 09-834 (March 22, 2011).  Thus,

employees are not required to file a formal written complaint to constitute "filing" a complaint.

In Kasten, the plaintiff (Kasten) received three warnings within a 12-month period for failing to

properly clock in.  On the third warning, his supervisors told him that another violation would lead

to his termination.  Kasten claimed his inability to properly clock in and out was due to the location

of the company's time clocks—a location which, Kasten claimed, violated the FLSA.  Kasten,

however, never lodged a written complaint about the time clocks' location with his employer or the

Department of Labor; he only made oral comments to his supervisors.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Under Sarbanes-Oxley a whistleblower must demonstrate that their protected activity was a contributing factor in the decision to take an adverse action, i.e., that it was "more likely than not" played "any role whatsoever" in the allegedly retaliatory action.[i]Palmer v. Canadian National Railway, ARB No. 16-035 at 53.  "Any role whatsoever" is no exaggeration—the protected activity need not amount to a "significant, motivating, substantial or predominant" factor in the adverse action.[ii] Allen v. Stewart Enters., Inc., ARB Case No. 06-081, slip op. at 17 (U.S. Dep't of Labor July 27, 2006).  A whistleblower may meet this burden by proffering circumstantial evidence, such as: Direct evidence of retaliatory motive, e., "statements or acts that point toward a discriminatory motive for the adverse employment action."[iii] William Dorsey, An Overview of Whistleblower Protection Claims at the United States Department of Labor, 26 J. Nat'l Ass'n Admin. L. Judiciary 43, 66 (Spring 2006) (citing Griffith v. City of Des Moines, 387 F.3d 733 (8th Cir. 2004)).

A shifting or contradictory explanations for the adverse employment action [qualifies] .[iv] Clemmons v. Ameristar Airways, Inc., ARB No. 08-067, at 9, ALJ No. 2004-AIR-11 (ARB May 26, 2010) (footnotes omitted).  Evidence of after-the-fact explanations for the adverse employment action. "[T]he credibility of an employer's after-the-fact reasons for firing an employee is diminished if these reasons were not given at the time of the initial discharge decision."[v]  Id. at 9-10 (footnotes omitted).  Animus or anger towards the employee for engaging in a protected activity. Significant, unexplained or systematic deviations from established policies or practices,

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

such as failing to apply a progressive discipline policy to the whistleblower.[vi] Bobreski v. J.

Givoo Consultants, Inc., ARB No. 13-001, ALJ No. 2008-ERA-3 (ARB Aug. 29, 2014).

Singling out the whistleblower for extraordinary or unusually harsh disciplinary action.[vii] See

Overall v. TVA, ARB Nos. 98-111 and 128, slip op. at 16-17 (Apr. 30, 2001), aff'd TVA v. DOL,

59 F. App'x 732 (6th Cir. 2003).


Disparate treatment or proof that employees who are situated similarly to the plaintiff, but who did

not engage in protected conduct, received better treatment.  Close temporal proximity between the

employee's protected conduct and the decision to take an actionable adverse employment action.

Evidence that the employer conducted a biased or inadequate investigation of the whistleblower's

disclosures, including evidence that the person accused of misconduct controlled or heavily

influenced the investigation.  The cost of taking corrective action necessary to address the

whistleblower's disclosures and the decision-maker's incentive to suppress or conceal the

whistleblower's concerns.  Corporate culture and evidence of a pattern or practice of retaliating

against whistleblowers.  Fundamentally the same elements for Whistleblowing claims under each

CA Labor Code, FLSA, and Sarbanes-Oxley apply:


Here Plaintiff:

1. Engaged in protected activity (they made a protected disclosure under Section 806);

    ○ I inquired, at multiple levels, and then formally, and informally complained of

       violations of labor, and other laws, to multiple levels of all defendant organizations

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

including directly to Elon Musk, via email.  I also followed up with respective

government agencies to register the complaint, and get follow up.  Promises of

follow up to correct fundamental issues were not kept by Defendants, or not

answered at all, and instead deflections, lies, and negative, and retaliatory,

employment actions were dispensed. Inquiry, and Complaint (Formal and Informal)

of potential legal violations (including labor laws) fits the requirement of protected

activity.

2.   Employer knew that Plaintiff engaged in the protected activity;

   ○   I made Employer(s), also organizational defendants, aware via multiple channels,

      including a written email record of the issues, and complaints.  I also alerted of

      potential legal ramifications if not corrected

3.   Suffered an unfavorable personnel action;

   ○   After Plaintiff made inquiry, and complaints, and received written confirmation of

      positive work performance, and record (attendance and otherwise), by supervisor,

      and confirmed via text by previous supervisor, Plaintiff received unjustified, and

      unbiased, negative, unfavorable, and retaliatory employment action(s).  No proper

      due diligence was held, and the allegation, given its falsity, and strong implication,

      itself, is a violation of law.

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

4.   Protected activity was a contributing factor in the unfavorable action.

○   Prior to the false statement by Sandy Malloy Plaintiff had never even been

questioned, about anything relating to the subject matter (of recording), let alone

any warning, or discipline.  Yet, once I made the initial inquiry, and followed up

after non-resolution by respective companies, and defendants, tone and posture

began to change.  As soon as I met with the HR Officer to complain and inquire the

next communication following was a baseless negative, or unfavorable,

employment action.


The Court finds that exhaustion under § 98.7 is not required before bringing a civil action under §§

98.6 and 1102.5. In so holding, the Court finds Creighton persuasive and adopts its reasoning.

Particularly, the Court agrees that the Private Attorneys General Act ("PAG Act" or "PAGA"),

which covers the statutory claims at issue here, see Cal. Labor Code § 2699.5, indicates a

legislative emphasis on private enforcement of the Labor Code that would be undercut by a

mandatory exhaustion requirement before the Labor Commissioner. The PAG Act " 'empowers or

deputizes an aggrieved employee to sue for civil penalties ... as an alternative to enforcement by the

State.' " McKenzie v. Fed. Exp. Corp., 765 F.Supp.2d 1222, 1231 (C.D.Cal.2011) (quoting

Villacres v. ABM Indus., Inc., 189 Cal.App.4th 562, 592, 117 Cal.Rptr.3d 398 (2010) (internal

quotation, citation, and alterations omitted)). The Act allows private citizens to sue on behalf of

themselves "and other current or former employees" for violations of the Labor Code, and permits

said citizens to recover civil penalties otherwise recoverable only by the government. See §

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

2699(a). - Turner v. City and County of San Francisco, 892 F.Supp.2d 1188, 1202

(N.D.Cal.,2012)


Analogous to the whistleblowing techniques, and methodology by Darren Hager, a deputy with

the Los Angeles Sheriff's Department, who received a jury award of $4.5 million upon their

finding that Hager was wrongfully terminated in retaliation for looking too closely into the

disappearance of a fellow officer, Plaintiff by reporting up the chain of command, and investigating

suffered retaliation and negative action.


Under California law, Hager's reports to his employer and the DEA are protected by section

1102.5. (Colores v. Board of Trustees, supra, 105 Cal.App.4th at pp. 1312-1313, 130 Cal.Rptr.2d

347 [§ 1102.5 concerns employees who report to public agencies; public employee qualifies as

whistleblower when reporting to employer].) The federal court never made a determination

whether Hager was engaged in protected whistleblowing activity under section 1102.5 when he

reported to his employers, the issue raised by his state law claim. Nor did the federal court

determine whether Hager's discharge from employment was motivated in whole or in part by his

reports to the Sheriff's Department or the DEA. - Hager v. County of Los Angeles, 2010 WL

1097046 (Cal.App. 2 Dist.), 9 (Cal.App. 2 Dist.,2010)


Also, similar to the context and response pattern of the $5 Million Dollar whistleblower award

against SF City Attorney's Office whereas Joanne Hoeper, Deputy City Attorney, uncovered a

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

kickback scheme and was sidelined, then fired.  When the issues of pay discrepancy were inquired about Sandy Malloy stated in writing "you're barking up the wrong tree."  Similar to above *Hoeper* case "Her attorneys claim … When Hoeper informed Herrera of her findings, a Claims Unit employee allegedly told her, "You'll be sorry," according to Hoeper's attorneys."

Whistleblower Claims (Under CA Labor Code, FLSA, Sarbanes-Oxley (applicable to publicly traded companies, and to private as well) have similar elements.  Examples of protected activities include Filing a complaint with the Labor Commissioner or making a written or oral complaint that the employee is owed wages. [Lab.C. § 98.6];  Filing a workers' compensation claim. [Lab.C. § 132a];  Complaining re workplace safety. [Lab.C. § 6310; see Lujan v. Minagar (2004) 124 CA4th 1040, 1046, 21 CR3d 861, 866—statute also prohibits discharge of employees whom employer fears will complain of safety violations in the future; see also Freund v. Nycomed Amersham (9th Cir. 2003) 347 F3d 752, 758 (applying Calif. law)]

## Conclusion

The claims of 1) Defamation Per Se (In the Workplace), 2) Labor Code Non-Payment 3) FLSA Non-Payment 4) Conversion 5) Breach of Employment Contract 6) Fraudulent Misrepresentation 7) Fraudulent Concealment 8) Tortious Interference with economic and contractual relations 9) Wrongful Discharge, 10) Civil Rights Due Process Violations, 11) Physical Disability Discrimination, 12) Breach of Insurance Contract, and 13) Whistleblower Claim have been stated plainly with supporting facts, and precedent.  Context, similar fact patterns of favorable holdings,

George Jarvis (J).. Austin, esq. (TBA)  09/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

and precedent, have been interwoven to meet the heightened pleading standards after the Court's ruling in Iqbal and Twombly.  Attorney of Record, Pro Se Litigant, and Plaintiff, Mr. George Jarvis (J.) Austin, esq. (TBA) has amended the complaint to meet, and ideally surpass, the Legal Standard for Review Under 28 U.S.C. § 1915, and articulated in Marks v. Solcum, 98 F.3d 494, 495 (9th Cir. 1996) so that while examining stated claims, it is clear that they are not frivolous or malicious, but instead substantive and meritorious (, from which relief may be granted from defendants who are not immune).  Pursuant with Federal Rules of Civil Procedure Rule 15 for Amended Pleadings, 28 U.S.C. § 1915(e)(2)(B), and Rule 8(a)(2) of the Federal Rules of Civil Procedure Attorney of Record, Pro Se Litigant, and Plaintiff, Mr. George Jarvis (J.) Austin, esq. (TBA) files an amended complaint.