George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

GEORGE J. AUSTIN, Plaintiff,

v.

TESLA, INC., et al., Defendants.

Case No. 3:20-cv-00800

PLAINTIFF APPLICATION FOR INJUNCTIVE RELIEF   Re: Dkt. Nos. 12, 16, 17

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

**Abbreviated Injunctive Relief Table Of Authority**

1. Facts
   a. UIC section 2707.3.
   b. UIC section 1329.5
   c. Section 303(a)(1) of the Social Security Act, 49 Stat. 626,
   d. 42 U.S.C. 503(a)(1)
   e. CA Labor Code Section 212,
   f. Unemployment Insurance Code (UIC) Section 1329.5,
   g. Labor Code Section 206,
   h. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)
   i. California Department of Human Resources Development et al., Appellants, v. Judith JAVA ,402 U.S. 121 (91 S.Ct. 1347, 28 L.Ed.2d 666)
2. Standard of Review
   a. See Federal Rule of Civil Procedure number 65 (Fed. R. Civ. P. 65).
   b. See Fed. R. Civ. P. 65(a)-(b).
   c. See Fed. R. Civ. P. 65(a).
   d. See Fed. R. Civ. P. 65(b).
   e. See Fed. R. Civ. P. 65(b)(2).
   f. See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).
   g. See Robles II, supra, 236 Cal.App.4th,
   h. See California Human Resources Dept. v. Java, supra, 402 U.S. 121,
   i. See Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811.
3. Injunctive Relief Requirements Met
   a. Rule 65(b) of the Federal Rules of Civil Procedure
   b. Local Rule 231
   c. Section 303(a)(1) of the Social Security Act, 49 Stat. 626, as amended,
   d. 42 U.S.C. 503(a)(1),
   e. CA Labor Code Section 212,
   f. Unemployment Insurance Code Section 1329.5,
   g. Labor Code Section 206,
   h. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)
   i. California Department of Human Resources Development et al., Appellants, v. Judith JAVA ,402 U.S. 121 (91 S.Ct. 1347, 28 L.Ed.2d 666)
   j. Section 303(a)(1) of the Social Security Act,
   k. Goldberg v. Kelly, and California Department of Human Services v. Java,
   l. Section 303(a)(1) of the Social Security Act, 49 Stat. 626,
   m. 42 U.S.C. 503(a)(1),

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

n.  California Department of Human Resources Development et al., Appellants, v. Judith JAVA ,402 U.S. 121 (91 S.Ct. 1347, 28 L.Ed.2d 666)

o.  Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

p.  CALIFORNIA DEPARTMENT OF HUMAN RESOURCES DEVELOPMENT et al., Appellants, v. Judith JAVA et al.,402 U.S. 121 (91 S.Ct. 1347, 28 L.Ed.2d 666).

q.  Section 303(a)(1) of the Social Security Act, 49 Stat. 626,

r.  42 U.S.C. 503(a)(1)

s.  Unemployment Insurance Code Section 1329.5

t.  Labor Code Section 206

u.  Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)

v.  California Department of Human Resources Development et al., Appellants, v. Judith JAVA ,402 U.S. 121 (91 S.Ct. 1347, 28 L.Ed.2d 666)

w.  Section 303(a)(1) of the Social Security Act,

x.  Goldberg v. Kelly, and California Department of Human Services v. Java

y.  UIC section 1329.5

z.  Section 1326 Unemployment [& Disability] Insurance Code (UIC)

aa. See Fed. R. Civ. P. 65(a).

bb. See Fed. R. Civ. P. 65(b).

cc.  See Fed. R. Civ. P. 65(b)(2).

dd. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

ee. Robles II, supra, 236 Cal.App.4th

ff.  California Human Resources Dept. v. Java, supra, 402 U.S. 121

gg. Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811.

hh. Section 303(a)(1) of the Social Security Act, 49 Stat. 626

ii.  42 U.S.C. 503(a)(1)

jj.  CA Labor Code Section 212

kk. Unemployment Insurance Code Section 1329.5

ll.  Labor Code Section 206

mm.    Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)

nn. California Department of Human Resources Development et al., Appellants, v. Judith JAVA ,402 U.S. 121 (91 S.Ct. 1347, 28 L.Ed.2d 666)

    i.    Plaintiff is very likely to succeed on merits

        1.  Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)

        2.  California Department of Human Resources Development et al., Appellants, v. Judith JAVA ,402 U.S. 121 (91 S.Ct. 1347, 28 L.Ed.2d 666)

        3.  Am. Fedn' of Labor v. EDD

        4.  See Sampson v. Murray, 415 U.S. 61, 88 (1974)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

     5.  Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal. App. 3d 811, 152 Cal. Rptr. 193 (Ct. App. 1979).

     6.  UIC section 1329.5

     7.  Section 1326 of Unemployment [& Disability] Insurance Code (UIC)

ii.     Plaintiff is currently suffering irreparable harm

     1.  See Robles II, supra, 236 Cal.App.4th at pp. 545–546

     2.  See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)

     3.  California Department of Human Resources Development et al., Appellants, v. Judith JAVA ,402 U.S. 121 (91 S.Ct. 1347, 28 L.Ed.2d 666)

     4.  California Human Resources Dept. v. Java, supra, 402 U.S. 121, 131-132, 91 S.Ct. 1347, 1354, 28 L.Ed.2d 666.)

     5.  Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811, 821, 152 Cal.Rptr. 193, 199

     6.  Robles II, supra, 236 Cal.App.4th at pp. 545–546.

     7.  Social Security Act, § 303(a)

     8.  42 U.S.C.A. § 503(a)

     9.  Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal. App. 3d 811, 152 Cal. Rptr. 193 (Ct. App. 1979)

iii.     The balance of equities tips strongly in Plaintiff's interest

     1.  See Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811, 820, 152 Cal.Rptr. 193, 198

     2.  Robles II, supra, 236 Cal.App.4th at pp. 538–542, 553.

     3.  See Robles II, supra, 236 Cal.App.4th at pp. 545–546 at pp. 540, 542–543.

     4.  California Human Resources Dept. v. Java, supra, 402 U.S. 121, 131-132, 91 S.Ct. 1347, 1354, 28 L.Ed.2d 666.

     5.  Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811, 821, 152 Cal.Rptr. 193, 199.

iv.     The Injunction for Plaintiff is in the Public Interest

     1.  Oakland PFRS, supra, 29 Cal.App.5th at p. 710.

     2.  People v. Investco Management & Development LLC (2018) 22 Cal.App.5th 443, 465 (Investco Management); see also Oakland PFRS, supra, 29 Cal.App.5th at p. 710.).

     3.  Paratransit, Inc. v. Unemployment Ins. Appeals Bd. (2014) 59 Cal. 4th 551, 558, fn. omitted;

     4.  See Robles II, supra, 236 Cal.App.4th at pp. 545–546 at p. 546

     5.  See Robles II, supra, 236 Cal.App.4th at pp. 545–546; Robles I, supra, 207 Cal.App.4th at p. 1034.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

4.   Civil Rights Violations
5.   Breach Of Insurance Contract
6.   Withholding of Wages
7.   Physical Disability Discrimination
8.   Conversion
9.   Fraudulent Misrepresentation
10. Fraudulent Concealment
11. Tortious Interference
12. Conclusion

## FACTS

Plaintiff, (University of California, Berkeley Graduate (09'), Honors Student, Bay Area Housing

Commissioner, Alum, NAACP National Representative, and Local Youth and College President,

Alum, California Senate, Governance and Finance Committee, Consultant, Capital Fellows, and

Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and UCLA

Anderson Riordan MBA, Fellows, Alum (08', 13'), T-14 Law Student, etc.), and Attorney of

Record, Mr. George Jarvis (J.) Austin, esq. (TBA) began working at Tesla, and was paid through

subcontractors, Balance Staffing, and MVP Personnel (whose separate names show up on his

check stubs.  These check stubs show unique identifiers like social security number, long-term

permanent mailing address, individual check numbers, and others.  Throughout the employment

relationship Plaintiff was injured at work, and simultaneously observed, noticed, and reported

illegal labor code (and other violations) in accord with, and encouraged by whistleblowers law.

Plaintiff was subsequently, and conspiratorially, retaliated against through a variety of behaviors

and communications via Defendants in violation of whistle-blowers, and other protections leading

to the larger set of causes of action in the initial complaint.  Plaintiff has applied for EDD disability

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

benefits beginning 4/20/20, was granted benefits, and has been getting some compensation (but severely underpaid according to statutorily entitled).  Authorities in the EDD (Auditing and Accounting Departments) have personally reached out to Plaintiff to verify that the appropriate amount of compensation, and upward calculation has been verified, and processed, but somehow has not entered into Plaintiff bank account, yet (over 16 weeks late).

This highlighted specific set of facts for this injunctive relief request, although inclusive of larger fact pattern principles, are narrowly tailored and focused on the immediate request: EDD compensation Injunctive relief.  Plaintiff was injured on the job (lower portion of body still unhealed, but to date received no worker's compensation), and later outside of job (upper body injury).  Both injuries are still unhealed, likely will not be healed until at least 2021.  Plaintiff has not received any worker's compensation for his on the job injuries, and applied on 04/20/20 for outside of work injuries, and subsequently received EDD Disability benefits.  Although Plaintiff began receiving Disability benefits, and both unique sets of wages from Balance, and MVP, were recognized, and verified, by EDD, and utilized as the wage basis in their system, Plaintiff noticed the State via EDD Department used the wrong Calendar quarter, and sought correction.  Plaintiff sent in a variety of communications, and calls to rectify the situation as early as May continuing into the present.  An example, and quote from an earlier Plaintiff mailed, and faxed, notice to EDD after multiple phone call follow ups, notice reads:

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

"A representative in your department confirmed the OCT-DEC wages were almost updated in your system, and the department is almost complete with the calculation for my full benefit," but when I called there was no change in my file, and no notice of computation.  Further, the wages were not scanned into the system, so not sure what the internal discrepancy was (As the Auditing Department already had in their system).  Previously, "I've also included a filed Wage Affidavit for an ongoing Federal lawsuit with my previous, Defendant, employers (for context).  See attached.  I am the Plaintiff, one who initiated the lawsuit (which has met Federal Judicial standards of review, and is now being served on Defendant Employers).  See attached.  I've re-included the key information for both purposes, one redacted (submitted to Federal Court), and one unredacted for our purposes here."  This information is already scanned into your system according to the representative I spoke with on the phone." - George J. Austin

Since then representatives and others have personally called to verify that the information had been corrected, updated, processed in their system, but Plaintiff still has yet to receive.  Most recently a notice had been both faxed to the Accounting and Auditing Department, and mailed to the appropriate organizational mailing address stating the need for correction, still.  A series of incorrect adjustments were made, and finally a point person for the Auditing department, Anna, called Plaintiff directly on 8/18/20, after previous assurances had been made months ago and said

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

that she'd finished updating in the system and Plaintiff should be receiving shortly (within days; that was weeks ago).  She apologized for any inconvenience and said "God bless you" and thank you for your patience.  Yet, Plaintiff still hasn't received.

Defendant EDD has been severely, and extremely late in fully payment (though verified, and approved multiple times by their Auditing and Accounting departments), in violation of Plaintiff's due Process.  Plaintiff has been proactive and gone above and beyond providing all levels, and layers of paperwork, documentation, proof, correspondence, phone calls, emails, internal messages, etc to solve the problem.  Without exaggeration there has been at least 100 seperate communications (in a variety of forms on resolving this specific issue, yet no resolution has been materialized in Plaintiff's account).  Plaintiff has personally communicated with Anna, in the Accounting and Auditing department on multiple occasions, sending necessary fax documents, phone calls, and all supporting information for her so that she could, and did, conduct sufficient due diligence on behalf of the State of California's EDD.  She did so, and assured that she had gone above and beyond to personally investigate the employers, validate, and verify all wages, connected account information, and documented her Auditing report in the system.  She personally called me and said she made the adjustment several weeks ago (after I had already previously been assured that this was complete several weeks prior to this).   Anna apologized for any inconvenience to me, and said it would be available shortly, and proper adjustment would be made, but still have not received.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Plaintiff is still very much injured.  Based on Plaintiff's body's recovery timetable, thus far, and the physical standards, for Plaintiff's current area of very physical work and labor requirements (standing 12 hours, lifting, moving and adjusting 50-100 pounds regularly, bending, adjusting lifting etc) he likely will not be ready to return at least until 2021.  Plaintiff's previous Doctor, Lisa Nhu, committed a major invasion of privacy, and violation of HIPAA standards (and other tortious and unconstitutional acts) by sending my medical records to someone I've never met, and don't know, without notice, inquiry, verification, or permission, and retaliated when reporting the illegal behavior to Federal Agency responsible for oversight (and at this point will also be sued in Federal Court) *See Austin v. Atlina, et. al.*  The need for compliance with the statutory, and constitutional, requirements of immediate pay 'when due' is of utmost importance triggering the need for injunctive relief, to prevent further irreparable injury, and deprivation of Plaintiff's constitutional due process rights.

Currently, Defendant EDD, according to their own representatives, publications, and records, owes Plaintiff George J. Austin, Esq. (TBA), over $10,000(+) in backpay, and proper and full compensation rate going forward.  According to the EDD representatives, EDD website, CA UIC Unemployment (and Disability) Insurance Code, and in accord with Federal statutes including the Social Security Act, as well as the methodology for finding the appropriate base period, Plaintiff has been extremely underpaid with the incorrect rate from the beginning (over 16 weeks, and counting).  Under UIC section 2707.3. upon the filing of a claim for unemployment compensation disability benefits, the Employment Development Department <u>shall promptly</u> make a computation

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

on the claim which shall set forth the maximum amount of benefits potentially payable during the

disability benefit period and the weekly benefit amount.  The Employment Development

Department (EDD) shall promptly notify the claimant of the computation.  Under UIC section

1329.5 which states Section 1326 "... the department shall promptly pay benefits."     To prevent

further irreparable injury, and violations of Section 303(a)(1) of the Social Security Act, 49 Stat.

626, as amended, 42 U.S.C. 503(a)(1), CA Labor Code Section 212, Unemployment Insurance

Code Section 1329.5, Labor Code Section 206, and the holdings Goldberg v. Kelly, 397 U.S. 254,

90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) as well as California Department of Human Resources

Development et al., Appellants, v. Judith JAVA ,402 U.S. 121 (91 S.Ct. 1347, 28 L.Ed.2d 666)

and in compliance with these statutes, and Due process, and other law, Plaintiff is requesting

injunctive relief as EDD to present still has not made correction to the point where Plaintiff

received (although representatives said they already processed in their system).

**Standard of Review**

Under Federal law, the procedure, and standard for obtaining injunctive relief is governed by

Federal Rule of Civil Procedure number 65.  Pursuant to Federal Rule of Civil Procedure 65(a)

preliminary injunctions and Federal Rule of Civil Procedure 65(b) TROs both types of injunctive

relief, and their respective standards are addressed. See Fed. R. Civ. P. 65(a)-(b).   Under Fed. R.

Civ. P. 65, a preliminary injunction may only issue on notice to the adverse party. See Fed. R. Civ.

P. 65(a). Also pursuant to Fed. R. Civ. P. 65, a TRO may issue without written or oral notice to the

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

adverse party or their attorney. See Fed. R. Civ. P. 65(b). In addition, TROs expire 14 days after

entry, unless before that time it is extended by the court. See Fed. R. Civ. P. 65(b)(2).

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). These criteria and legal standards

for injunctive relief in the Federal Circuit are: [A] plaintiff seeking a preliminary injunction must

establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm

in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an

injunction is in the public interest.  Here Plaintiff is 1) very likely to succeed on the merits [many of

the causes of action have already been proven in the pre-discovery period], 2) already suffering

irreparable harm in violation of constitutional rights 3) balance of equities tip decidedly and

strongly in his favor, and 4) the injunction(s) is (are) clearly in the public interest, and purpose of

the controlling public policy, and statutes for the topic.  Although, the remedy is designed for

extraordinary circumstances, and irreparable harms that standard is met for Plaintiff's, George J.

Austin's request, due to the extreme delay in the full payment EDD unemployment's disability

Insurance (UIC; DI) to the point of violating Plaintiff's Constitutional Due Process Rights under

Robles II, supra, 236 Cal.App.4th, California Human Resources Dept. v. Java, supra, 402 U.S.

121, and Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811.

**Injunctive Relief Requirements Met**

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and Local Rule 231, Plaintiff

George J. Austin, esq. (TBA), hereby applies to this Court for Injunctive Relief.  The form of

injunctive relief requested is an immediate financial temporary restraining order ("TRO"), and

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

thereafter Preliminary Injunction for compelling specific Organizational performance, and

immediate payment of past due amounts of owed payments to apply to defendants (and specifically

the Organizational Defendant Employment Development Department [EDD] (tallying at least over

$10,000+ in past due)).  Injunctive relief is required to prevent further irreparable injury, and

violations of Section 303(a)(1) of the Social Security Act, 49 Stat. 626, as amended, 42 U.S.C.

503(a)(1), CA Labor Code Section 212, Unemployment Insurance Code Section 1329.5, Labor

Code Section 206, and the holdings Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d

287 (1970) as well as California Department of Human Resources Development et al., Appellants,

v. Judith JAVA ,402 U.S. 121 (91 S.Ct. 1347, 28 L.Ed.2d 666), Plaintiff requests a TRO, and

subsequent preliminary injunction.

In violation of section Section 303(a)(1) of the Social Security Act, and principles and the holding

articulated in Goldberg v. Kelly, and California Department of Human Services v. Java, it is illegal

to withhold funds from claimants without cause.  According to Section 303(a)(1) of the Social

Security Act, 49 Stat. 626, as amended, 42 U.S.C. 503(a)(1), provides that benefits must be paid

'when due.'  According to the Court in California Department of Human Services v. Java The

practice of withholding and delaying compensation is in violation of constitutional and statutory

grounds... [and] constitutes a denial of procedural due process.  See Goldberg v. Kelly, 397 U.S.

254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).  See also CALIFORNIA DEPARTMENT OF

HUMAN RESOURCES DEVELOPMENT et al., Appellants, v. Judith JAVA et al.,402 U.S. 121

(91 S.Ct. 1347, 28 L.Ed.2d 666).  The Court in JAVA, further held that a median seven-week

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

delay in payments to claimants who have been found eligible for benefits, constituted a failure to

pay unemployment compensation 'when due' within the meaning of § 303(a)(1) of the Social

Security Act. The Court granted appellees' motion for a preliminary injunction, ordering the State

of California to pay benefits.  Similarly, a violation occurs when, already certified and, artificially

held for over 16 weeks without any reason to delay.  This is not only a violation of "when due,"

according to the Social Security Act, but fundamentally due process, too, as the Supreme Court

ruled.  As payments from EDD in accord with the policy intention of the service, and especially

given the target audience [i.e. those recently injured, and lacking income], should be made as soon

as possible in the public interest, and in accord with policy goals. In compliance with Section

303(a)(1) of the Social Security Act, 49 Stat. 626, as amended, 42 U.S.C. 503(a)(1),

Unemployment Insurance Code Section 1329.5, Labor Code Section 206, and the holdings of

Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) as well as California

Department of Human Resources Development et al., Appellants, v. Judith JAVA ,402 U.S. 121

(91 S.Ct. 1347, 28 L.Ed.2d 666), Claimant requests immediate relief by EDD of the irreparable

harm, denial of due process, and other statutory violations caused by the current illegal withholding

of funds (at least $10,000+) entitled to claimant.  In violation of section Section 303(a)(1) of the

Social Security Act, and principles and the holding articulated in Goldberg v. Kelly, and California

Department of Human Services v. Java, it is illegal to withhold funds from claimants without

cause.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

The application for TRO and PI in compliance with UIC section 1329.5 which states "For

purposes of a claim for disability benefits are: a) to immediately make available certified funds in

accord with Section 1326 of Unemployment [& Disability] Insurance Code (UIC)  "... the

department shall promptly pay benefits [as the] claimant is eligible."  The constitutionally, and

statutorily required immediate payment of EDD funds to Plaintiff is necessary, and legally justified

according to precedent. Funds have been certified and Plaintiff is partially receiving since 4/20/20,

but severely underpaid.  The correct rate has not been received although the Auditing and

Accounting Department have already said that they have been processed, but are severely late

(over 120 days, or 16 weeks, late: way past 'when due' threshold in *Java, and Goldberg*).  Anna, a

leader in that department personally called me and said that she verified all wages (and respective

Payroll accounts) with Defendant employers, entered the correct amount in, and processed the full

amount which should have already paid back pay, and adjusted the rate of pay to the full amount

(but has yet to do so).

Under Fed. R. Civ. P. 65, a preliminary injunction may only issue on notice to the adverse party.

See Fed. R. Civ. P. 65(a). Also pursuant to Fed. R. Civ. P. 65, a TRO may issue without written or

oral notice to the adverse party or their attorney. See Fed. R. Civ. P. 65(b). In addition, TROs

expire 14 days after entry, unless before that time it is extended by the court.  See Fed. R. Civ. P.

65(b)(2).  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). These criteria and legal

standards for injunctive relief in the Federal Circuit are: [A] plaintiff seeking a preliminary

injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his

favor, and [4] that an injunction is in the public interest.  Here Plaintiff is 1) very likely to succeed

on the merits [many of the causes of action have already been proven in the pre-discovery period],

2) already suffering irreparable harm in violation of constitutional rights 3) balance of equities tip

decidedly and strongly in his favor, and 4) the injunction(s) is (are) clearly in the public interest,

and purpose of the controlling public policy, and statutes for the topic.  Although, the remedy is

designed for extraordinary circumstances, and irreparable harms that standard is met for Plaintiff's,

George J. Austin's request, due to the extreme delay in the full payment EDD unemployment's

disability Insurance (UIC; DI) to the point of violating Plaintiff's Constitutional Due Process

Rights under Robles II, supra, 236 Cal.App.4th, California Human Resources Dept. v. Java, supra,

402 U.S. 121, and Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811. To prevent

further irreparable injury, and violations of Section 303(a)(1) of the Social Security Act, 49 Stat.

626, as amended, 42 U.S.C. 503(a)(1), CA Labor Code Section 212, Unemployment Insurance

Code Section 1329.5, Labor Code Section 206, and the holdings Goldberg v. Kelly, 397 U.S. 254,

90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) as well as California Department of Human Resources

Development et al., Appellants, v. Judith JAVA ,402 U.S. 121 (91 S.Ct. 1347, 28 L.Ed.2d 666),

Plaintiff requests a TRO, and preliminary injunction.  Plaintiff requests the court grant immediate

relief of the irreparable harm already being done by the defendants unconstitutional, and fraudulent

behavior magnified with this unnecessary, and harmful, hindrance to funds I'm entitled to via

Federal & State Code sections, and Case law.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

### A. Plaintiff is very likely to succeed on the merits

The facts, precedent, and strong public policy leanings all favor Plaintiff's overall success on the merits of the case at large, as well as the request for injunctive relief.  More specifically, the immediately relatable causes of action (spelled out below) giving rise to the need for an immediate Financial TRO, and Specific Performance Preliminary Injunction (to compel payment of illegally withheld funds), and to prevent further irreparable harm (and due process violations) have already been acknowledged, and proven, by Defendant parties themselves.   Analogous to the rulings, and respective grant of injunctive relief in *Goldberg, Java,* and Am. Fedn' of Labor v. EDD the 16 week wait violates 'when due' and 'due process.' Defendants unconstitutional, and tortious, a) Civil Rights (Due Process) violations b) Breach of Insurance Contract c) Withholding and Underpayment of Wages d) Disability Discrmination, and e) Conversion violations to Plaintiff's detriment, upsetting of the status quo, and causing irreparable harm in relation to injunctive relief have been proven by the EDD Organization itself (and acknowledged).

The sine qua non (an indispensable and essential action, condition, or ingredient) of injunctive relief is a showing of irreparable injury and the inadequacy of legal remedies. See Sampson v. Murray, 415 U.S. 61, 88 (1974). Generally, the party requesting injunctive relief must establish the likelihood of irreparable harm if the injunction is not entered and that other remedies at law are inadequate.  Because of the  timing, urgency, constitutional obligations, statutory defined requirements and type of compensation  it's clear from precedent that other remedies at law

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

(outside of injunctive relief are inadequate).  In a similar fact pattern where the court in Am. Fedn'
of Labor v. EDD "Granted injunctive relief and awarded plaintiffs attorney fees, ….The Court of
Appeal, Hastings, J., held that: (1) suspending [withholding, or underpaying] continuing benefits
on a claimant's appeal from a determination of ineligibility for a particular week or weeks violated
the "payment when due" clause of Social Security Act; (2) unemployment [ and UI disability]
insurance benefits are a type of property interest protected by due process; (3) although
Department's Appeals Board conducted a full evidentiary hearing, interview conducted by
department clerk concerning continuing eligibility did not satisfy due process since a claimant is
given no prior notice that he may be ineligible for continuing benefits and a claimant does not have
the right to confront and cross-examine witnesses, notwithstanding lump-sum payment to claimants
who successfully appeal a denial, and (4) it was not abuse of discretion to award attorney fees to
plaintiffs, notwithstanding their alleged financial ability to meet costs of the action." - Am. Fed'n of
Labor v. Employment Dev. Dep't, 88 Cal. App. 3d 811, 152 Cal. Rptr. 193 (Ct. App. 1979).


Here the case for underlying causes of action, and specifically for injunctive relief is stronger.  Not
only have benefit payments, at the appropriate amount, been verified, approved, and entered into
the system according to the Accounting and Auditing Department of EDD (personally called to
inform me of of their entry), but have been delay over 16 weeks, way beyond the "when due"
standard for constitutional due process violations.  The application for TRO and PI  in compliance
with UIC section 1329.5 which states "For purposes of a claim for disability benefits are: a) to
immediately make available certified funds in accord with Section 1326 of Unemployment [&

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Disability] Insurance Code (UIC)  "... the department shall promptly pay benefits if it finds the claimant is eligible."  Thus, the need for immediate payment of improperly withheld EDD funds to Plaintiff, for use, which were certified and Plaintiff has been receiving since 4/20/20, but severely underpaid, is irreparably past due, and is very likely to win.  Anna, a leader in that department personally called Plaintiff and said that she verified all wages (and respective Payroll accounts) with Defendant employers, entered the correct amount in, and processed the full amount which should have already paid back pay, and adjusted going forward the correct rate of pay to the full amount (but has yet to do so).  Thus the Injunctive relief [TRO & PI] should be granted as plaintiff is very likely to succeed on the merits.

### B. Plaintiff is currently suffering irreparable harm in absence of injunctive relief

Plaintiff is currently suffering irreparable harm, in violation of a) the statutorily, and constitutionally required "when due' standard, b) the status quo, and c) his due process.  In *Robles*, in explaining the legal justification for granted injunctive relief, and highlighting the irreparable harm component the court contextualizes need, and harm.  The *Robles* court notes that "the prompt payment of benefits is the ' "very essence" ' of the unemployment (and disability) compensation insurance program" (id. at p. 546), that "Robles had shown himself substantively eligible for the identified benefits ..." (id. at p. 552), and that "EDD's chosen process in response to the Writ had utterly failed to result in the timely payment of all of the benefits to which Robles was entitled" (ibid.), we held that the trial court properly ordered the immediate payment of benefits without requiring

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Robles to jump any additional procedural hurdles (ibid.). As a result, EDD paid the remaining

amounts owed, resulting in Robles' total recovery of $66,214.53." See Robles II, supra, 236

Cal.App.4th at pp. 545–546

Similarly, Defendant EDD is causing irreparable harm to Plaintiff, and the grant of injunctive relief

is justified, legally, morally, and in the public interest.   According to the Employment

Development Department (EDD) which stated the appropriate payment adjustment, and backpay,

had already been processed via Anna, but has yet to materialize, nor deposited in my account.  Due

to Plaintiff's current physical disability, and thus inability to work, current Covid-19 restrictions,

social unrest, and other burdens placed on families, and persons, in this challenging time

constitutional due process (as well as other) violations under *Goldberg,* and *Java,* are too high a

price for anyone to pay (and more than qualifies as irreparable harm under precedent).  See

Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) as well as California

Department of Human Resources Development et al., Appellants, v. Judith JAVA ,402 U.S. 121

(91 S.Ct. 1347, 28 L.Ed.2d 666)  The nature of Disability Insurance and Wages for adequate

health care, and healing, as well as other fundamental life needs is essential.  To withhold is not

only unconstitutional, and irreparable, but immoral (especially when already approved and

processed according to their accounting, and auditing department).

In measuring, and accounting for the irreparable harm, the *Am. Fed'n of Labor v. EDD* court

explained "Any increase in government costs which might result from our decision is outweighed

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

by the claimant's need to receive prompt payment of benefits. The loss of unemployment (or

disability) insurance benefits may have severe effects upon the worker and his family. A lump sum

payment, which claimants who successfully appeal a denial of continuing benefits receive, defeats

the purpose of unemployment insurance. These benefits "provide cash to a newly unemployed

worker 'at a time when otherwise he would have nothing to spend,' serving to maintain the

recipient at subsistence levels." (California Human Resources Dept. v. Java, supra, 402 U.S. 121,

131-132, 91 S.Ct. 1347, 1354, 28 L.Ed.2d 666.) - Am. Fed'n of Labor v. Employment Dev. Dep't,

88 Cal.App.3d 811, 821, 152 Cal.Rptr. 193, 199

Further, the *Robles* court continued, ' "[u]nemployment (and Disability) benefits provide cash to a

newly unemployed (and injured) worker 'at a time when otherwise he would have nothing to

spend,' serving to maintain the recipient at subsistence levels without the necessity of his turning to

welfare or private charity." ' " (Robles II, supra, 236 Cal.App.4th at pp. 545–546.)  *Am*. *Fed'n of*

*Labor v. EDD,* put a nice bow in articulation of the immediate need, and irreparable harm in

delaying, underpaying, withholding, etc. benefits in violation of due process.  The Court states the

"Purpose of (EDD disability and) unemployment insurance is to provide the worker with security

while (disabled or) unemployed through no fault of his (or her) own and to enable the worker to

find employment without resorting to other types of relief, such as welfare; another purpose of

Unemployment Insurance Act is to prevent a decline in purchasing power of the unemployed (and

injured)." Social Security Act, § 303(a), 42 U.S.C.A. § 503(a). - Am. Fed'n of Labor v.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Employment Dev. Dep't, 88 Cal. App. 3d 811, 152 Cal. Rptr. 193 (Ct. App. 1979) Thus the

Injunctive relief  [TRO & PI] should be granted as Plaintiff is currently suffering irreparable harm.


## C. The balance of equities tips strongly in Plaintiff's favor


The extreme hardship of withholding Disability wages, and insurance, in violation of the

controlling statues, the constitution, public policy, and respective precedent absolutely tips in

Plaintiff's favor with little to no hardship to organizational defendants (in fact it's their stated

institutional purpose according to statute), but with grave repercussions to Plaintiff.  In articulating

the underlying reasoning why the balance of equities, in this scenario, tips in Plaintiff's favor the

The *Am. Fed'n v. EDD* Court states: "The purpose of unemployment (and EDD disability)

insurance is to provide continuing income to the worker.  Secondly, the effect of a temporary

deprivation of benefits places a greater financial burden on the unemployment (and injured)

insurance recipient. ... Although unemployment insurance compensation, unlike welfare payments,

is not based strictly upon need, a deprivation of benefits may have substantially the same effect. -

See Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811, 820, 152 Cal.Rptr. 193,

198


According to UCLA Law Review's *The System of Equitable Remedies* equitable relief includes a

variety of menu options including injunction, accounting, constructive trust, equitable lien,

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

subrogation, equitable rescission, and specific performance.  According to the same Author,

Samuel L. Bray, in a *Washington Post piece*  "This doctrine is concerned with the hardships that an

injunction might impose on the defendant (relative to hardships for the plaintiff), as well as the

defendant's fault. This doctrine is strongly associated with the court's power (and duty) to tailor

equitable relief to the circumstances of the case."  He continues " With the balance of hardships,

the court is looking not to whether the plaintiff has "done equity," but to whether the defendant

has. The traditional maxim is "he who seeks equity must do equity." This doctrine adds a corollary:

"he who seeks to avoid equity must do equity."


Although the *Robles* court outlined EDD's resistance it provides insight into why the balance tips,

under similar facts, in favor of Plaintiff  "By contrast, EDD and its counsel consistently rebuffed all

efforts by Garfinkle to ensure that his client was promptly paid the wrongfully withheld benefits

and interest.  We will not here relate the specifics of EDD's "stubborn refusal" to comply with the

terms of Robles I. (Robles II, supra, 236 Cal.App.4th at pp. 538–542, 553.) Suffice it to say that

after months of bureaucratic runaround, Robles filed a motion in May 2013 to enforce full

compliance with the Writ. (Id. at pp. 542–543.) In connection with his enforcement motion, Robles

submitted declarations attesting to the fact that ... he was owed beyond an initial $12,240 payment

EDD sent him after the Robles I remand, Robles submitted with the motion documentation

calculating a balance due of over $45,000. (See Robles II, supra, 236 Cal.App.4th at pp. 545–546

at pp. 540, 542–543.)  Again, as mentioned above, the *Am. Fed'n of Labor v. EDD* court opined

in their grant of injunctive relief for which way the balance of equities tips "Any increase in

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

government costs which might result from our decision is outweighed by the claimant's need to receive prompt payment of benefits. The loss (underpayment, withholding, non-payment) of unemployment (or disability) insurance benefits may have severe effects upon the worker and his family. A lump sum payment, which claimants who successfully appeal a denial of continuing benefits receive, defeats the purpose of unemployment insurance. These benefits "provide cash to a newly unemployed worker 'at a time when otherwise he would have nothing to spend,' serving to maintain the recipient at subsistence levels." (California Human Resources Dept. v. Java, supra, 402 U.S. 121, 131-132, 91 S.Ct. 1347, 1354, 28 L.Ed.2d 666.) - Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811, 821, 152 Cal.Rptr. 193, 199. Thus the Injunctive relief  [TRO & PI] should be granted as the balance of equities tips strongly in plaintiff's favor.


### D. Public Interest: The injunction for Plaintiff is in the public interest.

Granting the Financial TRO, and Preliminary Injunction, to compel appropriate wage payments, that are entitled to Plaintiff according to statute, as well as back pay for multiple months of underpayment, is not only in the public interest, but as the *Robles* court said "very essence" of the program, and state sanction.  In line with that correct reasoning the *People v. Investco Management & Development LLC* court noted "The strength or societal importance of a particular right generally is determined by realistically assessing the significance of that right in terms of its relationship to the achievement of fundamental legislative goals." ' " (Oakland PFRS, supra, 29 Cal.App.5th at p. 710.) As for the significant benefit to a large group that will justify a fee award under section 1021.5, we have repeatedly confirmed that such a benefit " 'need not represent a

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

"tangible" asset or a "concrete" gain but, in some cases, may be recognized simply from the effectuation of a fundamental constitutional or statutory policy.' " (People v. Investco Management & Development LLC (2018) 22 Cal.App.5th 443, 465 (Investco Management); see also Oakland PFRS, supra, 29 Cal.App.5th at p. 710.).

Historically many of the federal and state programs that provide income security to U.S. families have their roots in the Social Security Act (the Act) of 1935. This Act provided for unemployment insurance, old-age insurance, and means-tested welfare programs. The Great Depression was clearly a catalyst for the Social Security Act of 1935, and some of its provisions—notably the means-tested programs—were intended to offer immediate relief to families. However, the old-age insurance program—the precursor to today's Old-Age, Survivors, and Disability Insurance, or Social Security, program—was not designed specifically to deal with the economic crisis of that era.  The Act created several programs that, even today, form the basis for the government's role in providing income security, specifically, the old-age insurance, unemployment insurance, and Aid to Families with Dependent Children (AFDC) programs. The old-age program is, of course, the precursor to today's Old-Age, Survivors, and Disability Insurance, or Social Security, program. Unemployment insurance continues to this day, and AFDC is the forerunner to the current Temporary Assistance for Needy Families program.

According to the EDD the DI program was established in 1946 to provide short-term benefits to eligible California workers who have a loss of wages when they are unable to work due to a

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

non-work-related illness, injury, or pregnancy.    The California Supreme Court noted in Paratransit, Inc. v. Unemployment Ins. Appeals Bd. "'The fundamental purpose of California's Unemployment Insurance Code is to reduce the hardship of unemployment . . . .'(Paratransit, Inc. v. Unemployment Ins. Appeals Bd. (2014) 59 Cal. 4th 551, 558, fn. omitted; see § 100 [unemployment insurance system created to provide benefits 'for persons unemployed through no fault of their own' and to reduce 'the suffering caused thereby'].)"  As a consequence, we have stressed the societal importance of an unemployment insurance system that promptly pays recipients all benefits due. (See Robles II, supra, 236 Cal.App.4th at pp. 545–546 at p. 546 [noting that "the prompt payment of benefits is the ' "very essence" ' of the unemployment compensation insurance program"].)  We have also emphasized the need to "liberally construe the Unemployment Insurance Code to advance the legislative objective of reducing the hardship of unemployment." (See Robles II, supra, 236 Cal.App.4th at pp. 545–546; Robles I, supra, 207 Cal.App.4th at p. 1034.)  Each respective Court has articulated the public interest for enforcing, if need be through the court system, the constitutional 'when due' standard of immediate and full benefit compensation (even if that need requires injunctive relief as does this one).  Thus the Injunctive relief [TRO & PI] should be granted as the Injunctive relief for Plaintiff is strongly in the Public Interest, and fundamentally aligned with the statutory purpose of the program.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

## 1. Civil Rights Due Process Violations

Defendant(s) violated Plaintiff's Due Process (substantive, and procedural) Rights when illegally withholding, and underpaying Disability benefit wages against Social Security Act, CA Disability and Unemployment Code as well as other key precedent.  EDD Defendants conspired in withholding, and non-payment of undisputed wages (i.e. already verified by the Auditing, and Accounting Department, with respective employers and confirming accounts and wages printed and signed with my social security number, unique check numbers, and full name (with middle initial) George J. Austin.  Defendant, unconstitutional, and tortious, non-(and delayed) payment of wages was to the detriment of Plaintiff, (University of California, Berkeley Graduate (09'), Honors Student, Bay Area Housing Commissioner, Alum, NAACP National Representative, and Local Youth and College President, Alum, California Senate, Governance and Finance Committee, Consultant, Capital Fellows, and Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as well as others), and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA).

Due process under the Fourteenth Amendment can be broken down into two categories: procedural due process and substantive due process. Procedural due process, based on principles of

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

"fundamental fairness," addresses which legal procedures are required to be followed in state

proceedings. Relevant issues, as discussed in detail below, include notice, opportunity for hearing,

confrontation and cross-examination, discovery, basis of decision, and availability of counsel.

Substantive due process, although also based on principles of "fundamental fairness," is used to

evaluate whether a law can be applied by states at all, regardless of the procedure followed.

Substantive due process has generally dealt with specific subject areas, such as liberty of contract

or privacy, and over time has alternately emphasized the importance of economic and noneconomic

matters. In theory, the issues of procedural and substantive due process are closely related. In

reality, substantive due process has had greater political import, as significant portions of a state

legislature's substantive jurisdiction can be restricted by its application.


Although the extent of the rights protected by substantive due process may be controversial, its

theoretical basis is firmly established and forms the basis for much of modern constitutional case

law. Passage of the Reconstruction Amendments (13th, 14th, and 15th) gave the federal courts the

authority to intervene when a state threatened fundamental rights of its citizens,See Bill of Rights,

Fourteenth Amendment See also AKHIL REED AMAR, THE BILL OF RIGHTS 163–180

(1998). and one of the most important doctrines flowing from this is the application of the Bill of

Rights to the states through the Due Process Clause. See Bill of Rights, Fourteenth Amendment


The Due Process Clause provides that no states shall deprive any "person" of "life, liberty or

property" without due process of law.  "Property" and Police Power.—States have an inherent

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

"police power" to promote public safety, health, morals, public convenience, and general

prosperity, See Gibbons v. Ogden, 22 U.S. (9 Wheat.), but the extent of the power may vary based

on the subject matter over which it is exercised. See Hudson Water Co. v. McCarter, 209 U.S. 349

(1908); Eubank v. Richmond, 226 U.S. 137, 142 (1912); Erie R.R. v. Williams, 233 U.S. 685, 699

(1914) If a police power regulation goes too far, it will be recognized as a taking of property for

which compensation must be paid.  See Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922);

Welch v. Swasey, 214 U.S. 91, 107 (1909). See also Penn Central Transp. Co. v. City of New

York, 438 U.S. 104 (1978); Agins v. City of Tiburon, 447 U.S. 255 (1980)


A. Plaintiff's Substantive and Procedural Due Process is being violated and causing

irreparable harm

a. Elements.

i. 1. Defendant intentionally violated Plaintiffs due process rights by depriving

Plaintiff full payment of owed payment way passed the "when due"

standard as articulated in a variety of holdings including *Java, and

Goldberg*.

1. Organizational Defendants, in this case, Specifically EDD,

intentionally withheld, and underpaid, Plaintiff (according to their

own representatives, and their own Accounting, and Auditing

Department, in violation of due process, and other torts.

a. Brief summary arguments:

George Jarvis (J).. Austin, esq. (TBA) 06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

    ii.    2. Defendant was acting or purporting to act in the performance of official duties under the color of law;

        1.   Organizational Defendants, specifically EDD, was acting in Official duties under the color of law when issuing Disability wages, and insurance.

    iii.    3. Defendant's conduct violated Plaintiff's Constitutional Due Process rights;

        1.   Organizational Defendants, EDD, violated Plaintiff's constitutional due process (substantive and procedural) rights under foundational precedential cases *Goldberg, and Java.*

    iv.    4. Plaintiff] was harmed;

        1.   Plaintiff was harmed, financially, physically, emotionally, mentally, and in other ways due to due process violations (especially during a pandemic, and other social unrest with a physical disability).

    v.    5. Defendant's due process violations, and deprivations, was a substantial factor in causing Plaintiff's harm.

        1.   Defendant's violation of Due Process, the California Disability and Unemployment Insurance Code, Social Security Act, and other torts, was a substantial factor in causing plaintiff's irreparable harm and requires immediate correction including financial TRO, and Preliminary Injunction, compelling organizational specific

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

performance and issuance of proper current amount and corrective

back pay.


## Unruh Civil Rights

To establish Unruh Civil Civil Rights claim, Plaintiff shall prove all of the following:


1. Defendants denied, aided or incited a denial of, and discriminated or made a distinction that

denied full and equal accommodations, advantages, facilities, privileges, and services to Plaintiff


    a.   Organizational defendants (Including EDD) engaged in retaliatory conduct to prevent

        access, availability and deprive of rights, property and opportunity.  Defendant's

        conspirator-ily denied, aided or incited a denial of, discriminated and made a distinction that

        denied full and equal accommodations, advantages, facilities, privileges and services to

        Plaintiff's detriment.  Specifically EDD in response to a variety of notices, and complaints,

        by Plaintiff,  not only put a block on that specific needed service (as Plaintiff is still very

        much underpaid, and very much injured), and further created barriers of access in violation

        of Plaintiff's due process.  Other organizational Defendants have also gone out of their way

        to create barriers of access, communication, accomodations, and services.  Defendant

        intentionally violated Plaintiffs due process rights by depriving Plaintiff full payment of

George Jarvis (J).. Austin, esq. (TBA) 06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

owed payment way passed the "when due" standard as articulated in a variety of holdings including *Java, and Goldberg*. Organizational Defendants, in this case, Specifically EDD, intentionally withheld, and underpaid, Plaintiff (according to their own representatives, and their own Accounting, and Auditing Department, in violation of due process, and other torts.

2. A substantial motivating reason for Defendant's conduct was their perception of Plaintiff's disability, race, color, ancestry, medical condition, genetic information, and protected activity

   a. Defendant's acts were motivated, at least in part,by Plaintiff's protected activity, as well as protected characteristics including race, color, ancestry, medical condition, or genetic information. All Organizational Defendants explicitly made reference to protected activity as justification, or explanation, for retaliatory behaviors. EDD made reference to Federal complaint and Federal lawsuit complaint, and State of California and Inquiries. Organizational Defendants, specifically EDD, was acting in Official duties under the color of law when issuing Disability wages, and insurance. Defendant's conduct violated Plaintiff's Constitutional Due Process rights; Organizational Defendants, EDD, violated Plaintiff's constitutional due process (substantive and procedural) rights under foundational precedential cases *Goldberg, and Java.*

3. Plaintiff was harmed

   a. Plaintiff suffered financial, physical, harm, pain and suffering, emotional toll, and distress due to Defendant's actions.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

4. Defendant's conduct was a substantial factor in causing Plaintiff's harm.

    a.   Defendant's acts created enormous obstacles, intertwining, and utilizing state actors, and threats of punishments, under the color of law to deter and deprive Plaintiff, and was direct, and substantial cause in Plaintiff's.

Note that element 2 uses the term "substantial motivating reason" to express both intent and causation between the protected classification and the defendant's conduct. "Substantial motivating reason" has been held to be the appropriate standard under the Fair Employment and Housing Act to address the possibility of both discriminatory and nondiscriminatory motives. (See Harris v. City of SantaMonica (2013) 56 Cal.4th 203, 232 [152 Cal.Rptr.3d 392, 294 P.3d 49]; CACI No.2507, "Substantial Motivating Reason" Explained.)

Whether the FEHA standard applies under the Unruh Act has not been addressed by the courts.With the exception of claims that are also violations of the Americans With Disabilities Act (ADA) (see Munson v. Del Taco, Inc. (2009) 46 Cal.4th 661, 665[94 Cal.Rptr.3d 685, 208 P.3d 623]), intentional discrimination is required forviolations of the Unruh Act. (See Harris v. Capital Growth Investors XIV (1991) 52Cal.3d 1142, 1149 [278 Cal.Rptr. 614, 805 P.2d 873].) The intent requirement is encompassed within the motivating-reason element. For claims that are also violations of the ADA, do not give element

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Non-payment, or underpayment of "benefits on a claimant's [application, or appeal] ... violates

[the] requirement of Social Security Act that a state program be reasonably calculated to insure full

payment of unemployment (or disability) compensation "when due." Social Security Act, § 303(a),

42 U.S.C.A. § 503(a). - Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal. App. 3d 811, 152

Cal. Rptr. 193 (Ct. App. 1979)  For purpose of [the] requirement of Social Security Act .. a state

program [must] be reasonably calculated to insure full payment of unemployment compensation

"when due," under Social Security Act, § 303(a), 42 U.S.C.A. § 503(a). - Am. Fed'n of Labor v.

Employment Dev. Dep't, 88 Cal. App. 3d 811, 152 Cal. Rptr. 193 (Ct. App. 1979)  (Disability or)

Unemployment insurance benefits are a type of property interest protected by due process. Social

Security Act, § 303(a)(1), 42 U.S.C.A. § 503(a)(1); U.S.C.A.Const. Amends. 5, 14; West's

Ann.Const. art. 1, § 7. - Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811, 152

Cal.Rptr. 193

In deciding whether or not a [procedure, or hearing] is required by due process, it is necessary to

weigh the competing interests of the individual and the government in light of the particular facts of

the case. (Arnett v. Kennedy, 416 U.S. 134, 168, 94 S.Ct. 1633, 40 L.Ed.2d 15; Goldberg v.

Kelly, supra, 397 U.S. 254, 263-266, 90 S.Ct. 1011, 25 L.Ed.2d 287.) Some of the factors to be

considered according to Skelly, supra, 15 Cal.3d 194, 209, 124 Cal.Rptr. 14, 25, 539 P.2d 774,

785, are, "whether pre-deprivation safeguards minimize the risk of error in the initial taking

decision, whether the surrounding circumstances necessitate quick action, whether the

post-deprivation hearing is sufficiently prompt, whether the interim loss incurred by the person

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

affected is substantial, and whether such person will be entitled to adequate compensation in the event the deprivation of his property interest proves to have been wrongful." - Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811, 820, 152 Cal.Rptr. 193, 199.  It was not abuse of discretion to award attorney fees to the national labor organizations on their success in seeking declaration that failure to accord (disability and) unemployment compensation benefits claimants a due process type hearing before department clerks concerning continuing eligibility violated due process [even if] such organizations (or individuals) may have been financially able to meet the costs of suit. Social Security Act, § 303(a), 42 U.S.C.A. § 503(a); West's Ann.Const. art. 1, § 7; West's Ann.Code Civ.Proc. §§ 1021.5, 1021.5(a, b). - Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811, 152 Cal.Rptr. 193

Although the finding of a violation of the Social Security Act is alone sufficient to resolve this case, another ground also exists. We find that the EDD's practice of (withholding, non-payment, or underpaying payments) ... for continuing claim recipients (without proper fact finding, opportunity to cross examine, be represented by counsel, etc.)  does not meet with the requirements of due process under Article I, section 7 of the California Constitution. - Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811, 819, 152 Cal.Rptr. 193, 198.  Procedural due process involves the deprivation of a "liberty" or " property" interest. … Skelly v. State Personnel Bd., 15 Cal.3d 194, 207, 124 Cal.Rptr. 14, 23, 539 P.2d 774, 783, held, ... "when a person has a legally enforceable right to receive a government benefit provided certain facts exist, this right constitutes a property interest protected by due process. (Goldberg v. Kelly (1970), 397 U.S. 254,

George Jarvis (J).. Austin, esq. (TBA) 06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

261-262, 90 S.Ct. 1011, 25 L.Ed.2d 287.).” The court in Goldberg, while finding that welfare

benefits “are a matter of statutory entitlement for persons qualified to receive them,” also stated:

“Relevant constitutional restraints apply as much to the withdrawal of public assistance benefits as

to disqualification (or reduction/underpayment) for unemployment (and disability) compensation, .

. .” ( *820 Goldberg, supra, at p. 262, 90 S.Ct. at p. 1017.) It is clear then that (EDD disability or)

unemployment insurance benefits are a type of property interest protected by the due process

clause. - Am. Fed'n of Labor v. Employment Dev. Dep't, 88 Cal.App.3d 811, 819-20, 152

Cal.Rptr. 193, 198


“Although initially unpublished, we issued an order to publish Robles I in July 2012, after

receiving requests for publication from Garfinkle, the Legal Aid Society- Employment Law

Center, the Civil Justice Law Clinic at Hastings School of Law, and an attorney who had a client in

similar circumstances. In September 2012, the trial court on remand issued a writ of administrative

mandamus (Writ), commanding EDD and the Board to set aside their previous decisions and to

“award to Robles ‘the unemployment insurance benefits that were withheld

beginning January 5, 2010 and including extensions under state and federal law, plus

interest on those benefits under Civil Code section 3287, subdivision (a).’ ” (Robles II,

supra, 236 Cal.App.4th at p. 538.) Several days later, the Board complied, setting aside

its previous determination and issuing a new decision in accordance with Robles I and the

Writ. The Board concluded that Robles was not disqualified from receiving unemployment

insurance benefits and that any benefits that were withheld were payable, with interest. (Robles II,

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

supra, 236 Cal.App.4th at p. 538)  By contrast, EDD and its counsel consistently rebuffed all

efforts by Garfinkle to ensure that his client was promptly paid the wrongfully withheld benefits

and interest.  We will not here relate the specifics of EDD's "stubborn refusal" to comply with the

terms of Robles I. (Robles II, supra, 236 Cal.App.4th at pp. 538–542, 553.) Suffice it to say that

after months of bureaucratic runaround, Robles filed a motion in May 2013 to enforce full

compliance with the Writ. (Id. at pp. 542–543.) In connection with his enforcement motion, Robles

submitted declarations attesting to the fact that he had been unemployed since his January 2010

termination date, despite his availability for and diligent attempts to obtain employment. Because

he had been unable to obtain from EDD an analysis of the amounts he was owed beyond an initial

$12,240 payment EDD sent him after the Robles I remand, Robles submitted with the motion

documentation calculating a balance due of over $45,000. (Id. at pp. 540, 542–543.)


Noting that "the prompt payment of benefits is the ' "very essence" ' of the unemployment

compensation insurance program" (id. at p. 546), that "Robles had shown himself substantively

eligible for the identified benefits by attesting to his availability, and diligent search, for work" (id.

at p. 552), and that "EDD's chosen process in response to the Writ had utterly failed to result in the

timely payment of all of the benefits to which Robles was entitled" (ibid.), we held that the trial

court properly ordered the immediate payment of benefits without requiring Robles to jump any

additional procedural hurdles (ibid.). As a result, EDD paid the remaining amounts owed, resulting

in Robles' total recovery of $66,214.53."  'The fundamental purpose of California's

Unemployment Insurance Code is to reduce the hardship of unemployment . . . .'(Paratransit, Inc.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

v. Unemployment Ins. Appeals Bd. (2014) 59 Cal. 4th 551, 558, fn. omitted; see § 100 [unemployment insurance system created to provide benefits 'for persons unemployed through no fault of their own' and to reduce 'the suffering caused thereby'].)

Specifically, ' "[u]nemployment (and Disability) benefits provide cash to a newly unemployed (and injured) worker 'at a time when otherwise he would have nothing to spend,' serving to maintain the recipient at subsistence levels without the necessity of his turning to welfare or private charity." ' " (Robles II, supra, 236 Cal.App.4th at pp. 545–546.)  As a consequence, we have stressed the societal importance of an unemployment insurance system that promptly pays recipients all benefits due. (See Robles II, supra, 236 Cal.App.4th at pp. 545–546 at p. 546 [noting that "the prompt payment of benefits is the ' "very essence" ' of the unemployment compensation insurance program"].)  We have also emphasized the need to "liberally construe the Unemployment Insurance Code to advance the legislative objective of reducing the hardship of unemployment." (Ibid.; Robles I, supra, 207 Cal.App.4th at p. 1034.)

Under Title 42 United States Code section1983 Civil Action for Deprivation of Rights "As we have said many times, § 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " (Graham v. Connor (1989) 490 U.S. 386, 393–394 [109 S.Ct.1865, 104 L.Ed.2d 443], internal citation omitted.)  "42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution.Section 1983 does not create any substantive rights; rather

George Jarvis (J).. Austin, esq. (TBA) 06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

it is the vehicle whereby plaintiffs can challenge actions by governmental officials." (Jones

v. Williams (9th Cir. 2002) 297 F.3d 930, 934.) "By the plain terms of § 1983, two—and only

two—allegations are required in order to state a cause of action under that statute. First, the plaintiff

must allege that some person has deprived him of a federal right. Second, he must allege that the

person who has deprived him of that right acted under color of state or territorial law." (Catsouras

v. Department of California Highway Patrol (2010) 181 Cal.App.4th 856, 890 [104 Cal.Rptr.3d

352].)

"Section 1983 can also be used to enforce federal statutes. For a statutory provision to be privately

enforceable, however, it must create an individual right." (Henry A. v. Willden (9th Cir. 2012) 678

F.3d 991, 1005, internal citation omitted.) "Section 1983 claims may be brought in either state or

federal court." (Pitts v. County of Kern (1998) 17 Cal.4th 340, 348 [70 Cal.Rptr.2d 823, 949

P.2d 920].) "The jury was properly instructed on [plaintiff]'s burden of proof and the particular

elements of the section 1983 claim. (CACI No. 3000.)" (King v. State Of California (2015) 242

Cal.App.4th 265, 280 [195 Cal.Rptr.3d 286].) " 'State courts look to federal law to determine

what conduct will support an action under section 1983. The first inquiry in any section 1983 suit

is to identify the precise constitutional violation with which the defendant is charged.' " (Weaver v.

State of California (1998) 63 Cal.App.4th 188, 203 [73 Cal.Rptr.2d 571], internal citations

omitted.)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

"Constitutional torts employ the same measure of damages as common law torts and are not augmented 'based on the abstract "value" or "importance" of constitutional rights . . . .' Plaintiffs have the burden of proving compensatory damages in section 1983 cases, and the amount of damages depends 'largely upon the credibility of the plaintiffs' testimony concerning their injuries.' "(Choate v. County of Orange (2000) 86 Cal.App.4th 312, 321 [103 Cal.Rptr.2d339], internal citations omitted.)  "[E]ntitlement to compensatory damages in a civil rights action is not a matter of discretion: 'Compensatory damages . . . are mandatory; once liability is found, the jury is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss.' " (Hazle v. Crofoot (9th Cir.2013) 727 F.3d 983, 992.)  "[T]he state defendants' explanation of the jury's zero-damages award as allocating all of [plaintiff]'s injury to absent persons reflects the erroneous view that not only could zero damages be awarded to [plaintiff], but that [plaintiff]'s damages were capable of apportionment. [Plaintiff] independently challenges the jury instruction and verdict form that allowed the jury to decide this question,contending that the district judge should have concluded, as a matter of law,that [plaintiff] was entitled to compensatory damages and that defendants were jointly and severally liable for his injuries. He is correct. The district judge erred in putting the question of apportionment to the jury in the first place,because the question of whether an injury is capable of apportionment is a legalone to be decided by the judge, not the jury." (Hazle, supra, 727 F.3d at pp.994–995.)

"An individual acts under color of state law when he or she exercises power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

” (Naffe v. Frey (9th Cir. 2015) 789 F.3d 1030, 1036.)  “The Supreme Court has interpreted the phrase 'under "color" of law' to mean under "pretense" of law.' A police officer's actions are under pretense of law only if they are 'in some way "related to the performance of his official duties.' " By contrast, an officer who is ' "pursuing his own goals and is not in any way subject to control by [his public employer],' " does not act under color of law, unless he 'purports or pretends' to do so. Officers who engage in confrontations for personal reasons unrelated to law enforcement, and do not purport[] or pretend[]' to be officers, do not act under color of law.” (Huffman v. County of Los Angeles (9th Cir. 1998) 147 F.3d 1054, 1058, internal citations omitted.)  “A state employee who is off duty nevertheless acts under color of state law when (1) the employee 'purport[s] to or pretend[s] to act under color of law,'(2) his 'pretense of acting in the performance of his duties . . . had the purpose and effect of influencing the behavior of others,' and (3) the harm inflicted on plaintiff 'related in some meaningful way either to the officer's governmental status or to the performance of his duties,' " (Naffe, supra, 789 F.3d at p. 1037,internal citations omitted.)

“[P]rivate parties ordinarily are not subject to suit under section 1983, unless,sifting the circumstances of the particular case, the state has so significantlyinvolved itself in the private conduct that the private parties may fairly betermed state actors. Among the factors considered are whether the state subsidized or heavily regulated the conduct, or compelled or encouraged the particular conduct, whether the private actor was performing a function which normally is performed exclusively by the state, and whether there was a symbiotic relationship rendering the

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

conduct joint state action." (Robbins v.Hamburger Home for Girls (1995) 32 Cal.App.4th 671, 683

[38 Cal.Rptr.2d534], internal citations omitted.) "Private parties act under color of state law if they

willfully participate in jointaction with state officials to deprive others of constitutional rights.

Private parties involved in such a conspiracy may be liable under section 1983."(United

Steelworkers of America v. Phelps Dodge Corp. (9th Cir. 1989) 865F.2d 1539, 1540, internal

citations omitted.)


The Court has required greater protection from property deprivations resulting from operation of

established state procedures than from those resulting from random and unauthorized acts of state

employees, Logan v. Zimmerman Brush Co., 455 U.S. at 435–36 (1982). The Court emphasized

that a post-deprivation hearing regarding harm inflicted by a state procedure would be inadequate.

"That is particularly true where, as here, the State's only post-termination process comes in the

form of an independent tort action. Seeking redress through a tort suit is apt to be a lengthy and

speculative process, which in a situation such as this) one will never make the complainant entirely

whole." 455 U.S. 422, 436–37 and presumably this distinction still holds. Thus, the Court has held

that post-deprivation procedures would not satisfy due process if it is "the state system itself that

destroys a complainant's property interest." (455 U.S. at 436.)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

## 2. Breach of Insurance Contract

Defendant withheld, and did not pay Plaintiff benefit wages against CA Disability and

Unemployment Insurance Code (and it's respective contract).  EDD Defendants conspired in

withholding, and non-payment of undisputed wages (i.e. already verified by the Auditing, and

Accounting Department, with respective employers and confirming accounts and wages printed

and signed with my social security number, unique check numbers, and full name (with middle

initial) George J. Austin.  Defendant, unconstitutional, and tortious, non-(and delayed) payment of

wages was to the detriment of Plaintiff, (University of California, Berkeley Graduate (09'), Honors

Student, Bay Area Housing Commissioner, Alum, NAACP National Representative, and Local

Youth and College President, Alum, California Senate, Governance and Finance Committee,

Consultant, Capital Fellows, and Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum

(13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as

well as others), and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA).

Defendant's Breach of Insurance Contract (codified in Statute), is irreparably harming Plaintiff

      b.  Elements.

            i.  Defendant breached its duty to pay Plaintiff for a loss covered under an

                  insurance policy.  To Establish this claim, Plaintiff must prove all of the

                  following:

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

ii.  1. That Plaintiff suffered a loss, all or part of which was covered under an insurance policy with Defendant;

1.  Plaintiff suffered losses statutorily covered by Defendant EDD and thus plaintiff is entitled to unpaid, and underpaid benefit amounts, or wages.  These wages have already been entered into the system, according to the Auditing and Accounting Department, but still unpaid to Plaintiff, nor deposited into his account.

iii.  2. That Defendant was notified of the loss as required by the policy; and

1.  EDD was notified, processed, and contacted Plaintiff regarding loss and full, and appropriate, payment as required by statute.  EDD owes plaintiff unpaid, and underpaid benefit amounts, or wages, including the proper pay rate going forward already entered into the system, according to the Auditing and Accounting Department, but still unpaid to Plaintiff, nor deposited into his account.  A leader in that Department explicitly said they had already been entered, and should be available shortly, but weeks have passed, and still not received.

iv.  3. That Defendant], failed to conduct a full, fair, prompt,and thorough investigation of all of the bases of Plaintiff]'s claim;

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

1. EDD delayed, but apparently, conducted the full, and fair thorough investigation into Defendant Employers, to verify wages, and accounts, but have woefully underinvested, nor conducted anywhere near prompt investigation into their own processes, and procedures to the point of violating Plaintiff's due process.  EDD owes plaintiff unpaid, and underpaid benefit amounts, or wages, including the proper pay rate going forward already entered into the system, according to the Auditing and Accounting Department, but still unpaid to Plaintiff, nor deposited into his account.  A leader in that Department explicitly said they had already been entered, and should be available shortly, but weeks have passed, and still not received.

v. 5. That Defendant's failure to properly investigate the claim was a substantial factor in causing Plaintiff's harm.

1. Defendant EDD's failure to properly investigate has been a substantial factor in causing major harm to Plaintiff.  EDD owes plaintiff unpaid, and underpaid benefit amounts, or wages, including the proper pay rate going forward already entered into the system, according to the Auditing and Accounting Department, but still unpaid to Plaintiff, nor deposited into his account.  A leader in that Department explicitly said they had already been entered, and

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

should be available shortly, but weeks have passed, and still not received.

vi.     6. The amount of the covered loss that Defendant failed to pay. Plaintiff claims that Defendant breached the obligation of good faith and fair dealing by failing to pay, underpaying, and delaying payment and insurance due under the insurance policy.  To act or fail to act "unreasonably" means that the insurer had no proper cause for its conduct. In determining whether Defendant acted unreasonably, you should consider only the information that Defendant knew or reasonably should have known at the time when it failed to pay/delayed payment of policy benefits, or wages.

1.  Defendant EDD acted, and continues to act, unreasonably, and in violation of due process.  EDD owes plaintiff unpaid, and underpaid benefit amounts, or wages, including the proper pay rate going forward already entered into the system, according to the Auditing and Accounting Department, but still unpaid to Plaintiff, nor deposited into his account.  Anna, A leader in that Department explicitly said they had already been entered, and should be available shortly, but weeks have passed, and still not received.

vii.    7. That Plaintiff was harmed; and

1.  Plaintiff was harmed financially, physically, and emotionally due to the due process violation and extreme delay in compensation.  EDD

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

owes plaintiff unpaid, and underpaid benefit amounts, or wages, including the proper pay rate going forward already entered into the system, according to the Auditing and Accounting Department, but still unpaid to Plaintiff, nor deposited into his account.  Anna, A leader in that Department explicitly said they had already been entered, and should be available shortly, but weeks have passed, and still not received.

viii.    8. That Defendant's failure to pay/delay in payment of policy benefits was a substantial factor in causing Plaintiff's harm.

1.    Defendant's failure to pay and delay in pay was a substantial factor in causing Plaintiff's harm.

When investigating Plaintiff's claim, Defendant had a duty to diligently search for and consider evidence that supported coverage of the claimed loss [including internally problems preventing payment "when due".  "Wrongful failure to provide coverage or defend a claim is a breach of contract." (Isaacson v. California Insurance Guarantee Assn. (1988) 44 Cal.3d775, 791 [244 Cal.Rptr. 655, 750 P.2d 297].)

In determining whether Defendants acted unreasonably, that is,without proper cause, one may consider whether the defendant did any of the following:[(a) Misrepresented to Plaintiff relevant

Case 3:20-cv-00800-EMC Document 37 Filed 09/12/20 Page 47 of 135

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

facts or insurance policy provisions relating to any coverage at issue.][(b) Failed to acknowledge

and act reasonably promptly after receiving communications about Plaintiff's claim arising under

the insurance policy.][(c) Failed to adopt and implement reasonable standards for the prompt

investigation and processing of claims arising under its insurance policies.][(d) Failed to accept or

deny coverage of claims within a reasonable time after Plaintiff completed and submitted

proof-of-loss requirements.][(e) Did not attempt in good faith to reach a prompt, fair, and equitable

settlement of Plaintiff's claim after liability had become reasonably clear.][(f) Required Plaintiff to

file a lawsuit to recover amounts due under the policy by offering substantially less than the

amount that [he/she/it] ultimately recovered in the lawsuit,even though [name of plaintiff] had

made a claim for an amount reasonably close to the amount ultimately recovered.] [(l) Failed to

settle a claim against Plaintiff promptly once his liability had become apparent, under one portion

of the insurance policy coverage in order to influencesettlements under other portions of the

insurance policy coverage.][(m) Failed to promptly provide a reasonable explanation of its reasons

for denying the claim or offering a compromise settlement, based on the provisions of the insurance

policy in relation to the facts or applicable law.]


In every insurance policy there is an implied obligation of good faith and fair dealing that neither

the insurance company nor the insured will do anything to injure the right of the other party to

receive the benefitsof the agreement.To fulfill its implied obligation of good faith and fair dealing,

an insurance company must give at least as much consideration to the interests of the insured as it

gives to its own interests.To breach the implied obligation of good faith and fair dealing, an

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

insurance company must unreasonably act or fail to act in a manner that deprives the insured of the benefits of the policy. To act unreasonably is not a mere failure to exercise reasonable care. It means that the insurer must act or fail to act without proper cause. However, it is not necessary for the insurer to intend to deprive the insured of the benefits of the policy.

Noting that "the prompt payment of benefits is the ' "very essence" ' of the unemployment compensation insurance program" (id. at p. 546), that "Robles had shown himself substantively eligible for the identified benefits by attesting to his availability, and diligent search, for work" (id. at p. 552), and that "EDD's chosen process in response to the Writ had utterly failed to result in the timely payment of all of the benefits to which Robles was entitled" (ibid.), we held that the trial court properly ordered the immediate payment of benefits without requiring Robles to jump any additional procedural hurdles (ibid.). As a result, EDD paid the remaining amounts owed, resulting in Robles' total recovery of $66,214.53."  'The fundamental purpose of California's Unemployment Insurance Code is to reduce the hardship of unemployment . . . .'(Paratransit, Inc. v. Unemployment Ins. Appeals Bd. (2014) 59 Cal. 4th 551, 558, fn. omitted; see § 100 [unemployment insurance system created to provide benefits 'for persons unemployed through no fault of their own' and to reduce 'the suffering caused thereby'].)

Specifically, ' "[u]nemployment (and Disability) benefits provide cash to a newly unemployed (and injured) worker 'at a time when otherwise he would have nothing to spend,' serving to maintain the recipient at subsistence levels without the necessity of his turning to welfare or private charity."

George Jarvis (J).. Austin, esq. (TBA) 06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

' " (Robles II, supra, 236 Cal.App.4th at pp. 545–546.)  As a consequence, we have stressed the

societal importance of an unemployment insurance system that promptly pays recipients all benefits

due. (See Robles II, supra, 236 Cal.App.4th at pp. 545–546 at p. 546 [noting that "the prompt

payment of benefits is the ' "very essence" ' of the unemployment compensation insurance

program"].)  We have also emphasized the need to "liberally construe the Unemployment

Insurance Code to advance the legislative objective of reducing the hardship of unemployment."

(Ibid.; Robles I, supra, 207 Cal.App.4th at p. 1034.)


"There is an implied covenant of good faith and fair dealing in every contract that neither party will

do anything which will injure the right of the other to receive the benefits of the agreement."

(Comunale v. Traders & General Ins.Co. (1958) 50 Cal.2d 654, 658 [328 P.2d 198].)  "For the

insurer to fulfill its obligation not to impair the right of the insured to receive the benefits of the

agreement, it again must give at least as much consideration to the latter's interests as it does to its

own." (Egan v. Mutual of Omaha Insurance Co. (1979) 24 Cal.3d 809, 818–819 [169 Cal.Rptr.

691, 620P.2d 141].)  "[T]o establish the insurer's 'bad faith' liability, the insured must show that

the insurer has (1) withheld benefits due under the policy, and (2) that such withholding was

'unreasonable' or 'without proper cause.' The actionable withholding of benefits may consist of

the denial of benefits due; paying less than due; and/or unreasonably delaying payments due."

(Major v. Western HomeIns. Co. (2009) 169 Cal.App.4th 1197, 1209 [87 Cal.Rptr.3d 556],

internal citations omitted.) " '[T]he covenant of good faith can be breached for objectively

unreasonable conduct, regardless of the actor's motive.' . . . [A]n insured plaintiff need onlyshow,

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

for example, that the insurer unreasonably refused to pay benefits or failed to accept a reasonable

settlement offer; there is no requirement to establish subjective bad faith." (Bosetti v. United States

Life Ins. Co. in the City Of New York (2009) 175 Cal.App.4th 1208, 1236 [96 Cal.Rptr.3d 744],

original italics, internal citations omitted.)


"Thus, a breach of the implied covenant of good faith and fair dealing involves something more

than a breach of the contract or mistaken judgment. There must be proof the insurer failed or

refused to discharge its contractual duties not because of an honest mistake, bad judgment, or

negligence, 'but rather by a conscious and deliberate act, which unfairly frustrates the agreed

common purposes and disappoints the reasonable expectations of the other party thereby depriving

that party of the benefits of the agreement.' " (Century Surety Co. v.Polisso (2006) 139

Cal.App.4th 922, 949 [43 Cal.Rptr.3d 468], internal citations omitted.)  "[I]f the insurer denies

benefits unreasonably (i.e., without any reasonable basis for such denial), it may be exposed to the

full array of tort remedies, including possible punitive damages." (Jordan v. Allstate Ins. Co. (2007)

148 Cal.App.4th1062, 1073 [56 Cal.Rptr.3d 312].)  "Subterfuges and evasions violate the

obligation of good faith in performance even though the actor believes his conduct to be justified.

But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing

may require more than honesty. A complete catalogue of types of bad faith is impossible, but the

following types are among those which have been recognized in judicial decisions: evasion of the

spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance,

abuse of a power to specify terms, and interference with or failure to cooperate in the other party's

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

performance." (R. J. Kuhl Corp. v. Sullivan (1993) 13 Cal.App.4th1589, 1602 [17 Cal.Rptr.2d

425].)

"[A]n insurer is not required to pay every claim presented to it. Besides the duty to deal fairly with

the insured, the insurer also has a duty to its other policyholders and to the stockholders (if it is

such a company) not to dissipate its reserves through the payment of meritless claims. Such a

practice inevitably would prejudice the insurance seeking public because of the necessity to

increase rates, and would finally drive the insurer out of business." (Austero v.National Cas. Co.

(1978) 84 Cal.App.3d 1, 30 [148 Cal.Rptr. 653], overruled on other grounds in Egan, supra, 24

Cal.3d at p. 824 fn. 7.)  "Unique obligations are imposed upon true fiduciaries which are not found

in the insurance relationship. For example, a true fiduciary must first consider and always act in the

best interests of its trust and not allow self-interest to  overpower its duty to act in the trust's best

interests. An insurer, however, may give its own interests consideration equal to that it gives the

interests of its insured; it is not required to disregard the interests of its shareholders and other

policyholders when evaluating claims; and it is not required to pay non-covered claims, even

though payment would be in the best interests of its insured."(Love v. Fire Ins. Exchange (1990)

221 Cal.App.3d 1136, 1148–1149 [271Cal.Rptr. 246], internal citations omitted.)

If an insurer "fails to deal fairly and in good faith with its insured by refusing, without proper

cause, to compensate its insured for a loss covered by the policy,such conduct may give rise to a

cause of action in tort for breach of an implied covenant of good faith and fair dealing. . . . [¶] . . .

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

[W]hen the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is

subject to liability in tort." (Gruenberg v. Aetna Insurance Co. (1973) 9Cal.3d 566, 574–575 [108

Cal.Rptr. 480, 510 P.2d 1032], original italics.)  "An insurer's obligations under the implied

covenant of good faith and fair dealing with respect to first party coverage include a duty not to

unreasonably withhold benefits due under the policy. An insurer that unreasonably delays, or fails

to pay, benefits due under the policy may be held liable in tort for breach of the implied covenant.

The withholding of benefits due under the policy may constitute a breach of contract even if the

conduct was reasonable, but liability in tort arises only if the conduct was unreasonable, that is,

without proper cause."(Rappaport-Scott v. Interinsurance Exch. of the Auto. Club (2007)

146Cal.App.4th 831, 837 [53 Cal.Rptr.3d 245], internal citations omitted.) "[T]here are at least two

separate requirements to establish breach of the implied covenant: (1) benefits due under the policy

must have been withheld;and (2) the reason for withholding benefits must have been unreasonable

or without proper cause." (Love v. Fire Insurance Exchange (1990) 221Cal.App.3d 1136, 1151

[271 Cal.Rptr. 246], internal citations omitted.)


"[A]n insurer denying or delaying the payment of policy benefits due to the existence of a genuine

dispute with its insured as to the existence of coverage liability or the amount of the insured's

coverage claim is not liable in bad faith even though it might be liable for breach of contract."

(Chateau Chamberay Homeowners Assn. v. Associated International Insurance Co. (2001)

90Cal.App.4th 335, 347 [108 Cal.Rptr.2d 776].)  Here there are no disputes, just improper

withholding. "We evaluate the reasonableness of the insurer's actions and decision to deny benefits

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

[or unduly delay] as of the time they were made rather than with the benefit of hindsight." (Century Surety Co. v. Polisso (2006) 139 Cal.App.4th 922, 949 [43Cal.Rptr.3d 468].) "[I]f the insurer denies benefits unreasonably (i.e., without any reasonable basis for such denial), it may be exposed to the full array of tort remedies, including possible punitive damages." (Jordan v. Allstate Ins. Co. (2007) 148 Cal.App.4th1062, 1073 [56 Cal.Rptr.3d 312].)

" '[D]enial  [or delay] of a claim on a basis unfounded in the facts known to the insurer, or contradicted by those facts, may be deemed unreasonable. "A trier of fact mayfind that an insurer acted unreasonably if the insurer ignores evidence available to it which supports the claim. The insurer may not just focus on those facts which justify denial of the claim." ' " (Maslo v. Ameriprise Auto & Home Ins.(2014) 227 Cal.App.4th 626, 634 [173 Cal.Rptr.3d 854].)  "We conclude . . . that the duty of good faith and fair dealing on the part of defendant insurance companies is an absolute one. . . . [T]he nonperformance by one party of its contractual duties cannot excuse a breach of the duty of good faith and fair dealing by the other party while the contract between them is in effect and not rescinded." (Gruenberg, supra, 9 Cal.3d at p. 578.), [A]n insurer may act unreasonably by failing to pay damages that are certain and demanding arbitration on those damages." (Maslo,supra, 227Cal.App.4th at pp. 638–639 [uninsured motorist coverage case].) "[T]he insurer's duty to process claims fairly and in good faith [is] a non delegable duty." (Hughes v. Blue Cross of Northern California (1989) 215Cal.App.3d 832, 848 [263 Cal.Rptr. 850].)  "[I]n [a bad-faith action] 'damages for emotional distress are compensable as incidental damages flowing from the initial breach, not as a separate cause of action.' Such claims of

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

emotional distress must be incidental to 'a substantial invasion of property interests.' " (Major v. Western Home Ins. Co. (2009) 169Cal.App.4th 1197, 1214 [87 Cal.Rptr.3d 556], original italics, internal citations omitted.)

"To fulfill its implied obligation, an insurer must give at least as much consideration to the interests of the insured as it gives to its own interests.When the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort. And an insurer cannot reasonably and in good faith deny payments to its insured without fully investigating the grounds for its denial." (Frommoethelydo v. Fire Insurance Exchange (1986) 42Cal.3d 208, 214–215 [228 Cal.Rptr. 160, 721 P.2d 41], internal citation omitted.)  "To protect [an insured's] interests it is essential that an insurer fully inquire into possible bases that might support the insured's claim. Although we recognize that distinguishing fraudulent from legitimate claims may occasionally be difficult for insurers, . . . an insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial." (Egan, supra, 24 Cal.3d at p. 819.)  "When investigating a claim, an insurance company [or broadly organization] has a duty to diligently search for evidence which supports its insured's claim. If it seeks to discover only the evidence that defeats the claim it holds its own interest above that of the insured." (Mariscal v. Old Republic Life Ins. Co. (1996) 42 Cal.App.4th1617, 1620 [50 Cal.Rptr.2d 224].)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

### 3. Withholding of Wages/Compensation) in Violation of California Labor,

### Unemployment & Disability Insurance Codes

Defendants (including EDD) withheld, and did not pay Plaintiff wages, or appropriate

compensation, against CA Labor, UIC & DI Codes.  EDD, Tesla, MVP Personnel, and Balance

Staffing along with other defendants conspired in withholding, and non-payment of statutorily

entitled compensation, and undisputed wages (i.e. already printed and signed with my social

security number, unique check numbers, and full name (with middle initial), George J. Austin.

Defendants also conspired in non-payment of other wages to the detriment of Plaintiff, (University

of California, Berkeley Graduate (09'), Honors Student, Bay Area Housing Commissioner, Alum,

NAACP National Representative, and Local Youth and College President, Alum, California

Senate, Governance and Finance Committee, Consultant, Capital Fellows, and Senate Fellows Top

10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and Anderson Riordan MBA

Fellows, Alum (08', 13'), T-14 Law Student,  as well as others), and Attorney of Record, Mr.

George Jarvis (J.) Austin, esq. (TBA).


Under CA Labor Code Section 200(a) "wage" is defined as money or other value that is received

by an employee as compensation for labor or services performed. "Other value" could include

room, board, clothes, [cars, including bonuses, overtime pay incentives, stock/ownership, etc.] and

other benefits to which the employee is entitled as a part of his, or her, compensation.  A bonus is

performance-based compensation to be paid to an employee in addition to the employee's regular

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

salary. (Duffy Brothers v. Bing & Bing (1939) 217 App.Div. 10, 215, N.Y.S. 755).  Bonuses

constitute additional salary, and thus, must be paid in accordance with Labor Code sections 201

and 202 when an employee is terminated, or voluntarily quits, his, or her, employment.

Under CA Disability and Unemployment Code sections 2652-2658 the benefit amount, or

disability 'wages' is determined by the highest quarterly earnings within a set period of time

(approx. two year window).  Under CA Labor Codes 201, 202, 218, and 1194, a plaintiff is

entitled to relief for unpaid, or withheld, wages (including overtime) when 1) plaintiff performed

work for the defendant; 2) defendant owes plaintiff wages under the terms of the employment; 3)

plaintiff worked overtime hours; 4) defendant knew or should have known that plaintiff had

worked overtime hours; 5) plaintiff was either not paid or paid less than the wage or overtime rate

for some or all of the hours worked; and 6) The employer debt for amount of wage or overtime pay

is owed plaintiff/employee even if he or she would agree to work for a lower overtime rate (the

entitlement is not eliminated).  Similarly, Under CA Disability and Unemployment Code (UIC)

sections 2652-2658 a plaintiff is entitled to relief for unpaid, or withheld, statutorily predefined

benefits, or disability 'wages,'

1. Here Plaintiff is entitled to relief because:

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

a.   Plaintiff performed work for, and or is entitled to pay from, Organizational

Defendants (including EDD):

    i.   With previous employers Plaintiff performed work for defendants, and was

praised for work, and character, while performing duties by multiple persons

of authority in the respective companies.  Employment agencies and the

employers who contract with them are considered employers under the law

(Defendants and joint liability for wages can be placed on both the

employment agency (MVP/Balance) and the entity that supervises the work

(Tesla).  See *Martinez v. Combs (2010) 49 Cal.4th 35, 64, 71.*   Regarding

EDD plaintiff is entitled to unpaid, and underpaid benefit amounts, or

wages, already entered into the system, according to the Auditing and

Accounting Department, but still unpaid to Plaintiff, nor deposited into his

account.

b.   Defendants owe plaintiff wages:

    i.   Organizational Defendants respectively owe Plaintiff, George J. Austin,

wages under the terms of employment and California, and Federal law as

evidenced in the undisputed withheld, and unpaid wages, as well as

confirmation of these wages from an independent State Government

Auditing Agency which confirmed.  Similarly, EDD also owes plaintiff

unpaid, and underpaid benefit amounts, or wages, including the proper pay

rate going forward already entered into the system, according to the

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Auditing and Accounting Department, but still unpaid to Plaintiff, nor

deposited into his account.  A leader in that Department explicitly said they

had already been entered, and should be available shortly, but weeks have

passed, and still not received.

c.  Plaintiff worked overtime hours:

    i.  Plaintiff performed overtime work for defendants, and was praised for

work, and character, while performing duties by multiple persons of

authority in the respective companies.  Part of the reason Plaintiff's base rate

is high enough to qualify for the amount of benefit wages due to disability is

precisely because of overtime already entered into the system, according to

the Auditing and Accounting Department, but still unpaid to Plaintiff, nor

deposited into his account.

d.  Defendant knew or should have known plaintiff worked overtime:

    i.  Defendants knew, or should have known, that the plaintiff worked overtime

as he communicated with all respective persons in various departments,

including Tesla's CEO.  Defendant EDD is well aware of the total amount

of wages, as the Auditing Department leader, and representative, said she

personally verified wages, accounts, and completed full and thorough due

diligence, and follow up, before authorizing and entering into the system

(including overtime).  However, it is still unpaid to Plaintiff, nor deposited

into his account.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

e.  Plaintiff was either not paid, or paid less than wage, overtime, (or statutorily entitled) pay:

    i.  Plaintiff, George J. Austin, was missing wages under the terms of employment and California, and Federal law as evidenced in the undisputed withheld, and unpaid wages, as well as confirmation of these wages from an independent State Government Auditing Agency, and IRS, which confirmed.  Also, Part of the reason Plaintiff's base rate is high enough to qualify for the amount of benefit wages due to disability is precisely because of overtime already entered into the system, according to the Auditing and Accounting Department.  Defendant EDD is well aware of the total amount of wages, as the Auditing Department leader, and representative, said she personally verified wages, accounts, and completed full and thorough due diligence, and follow up, before authorizing and entering into the system (including overtime).  However, it is still unpaid to Plaintiff, nor deposited into his account.

f.  Defendants (employers) owe plaintiff amount unpaid:

    i.  Defendants have to date still not paid the undisputed wages owed to Plaintiff, George J. Austin. Two sets of checks, two sets of transaction numbers, each check possessing a unique number representing a different wage (check), and all printed with my social security number, full name,

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

George J. Austin, permanent address, etc. Under CA Labor Law on

undisputed wages approximately $25,000, should have been paid

immediately, upon request, or the employer shall be liable for additional

liability, and penalties.  The veracity and authenticity of these wages have

been independently confirmed via a Wage Affidavit by an independent

State Government Auditing Agency which confirmed veracity of the

second set of wages [undisputed wages owed]. However, beyond the

disputed wages, there are additional missing past, present and future wages

(including bonus, incentives, stock, automobile, and other incentives or their

equivalent values) that can be more accurately determined during the

discovery process.  Further, Defendant EDD is well aware of the total

amount of wages, as the Auditing Department leader, and representative,

said she personally verified wages, accounts, and completed full and

thorough due diligence, and follow up, before authorizing and entering into

the system (including overtime).  However, it is still unpaid to Plaintiff, nor

deposited into his account.


Although public policy generally favors informal resolution of disputes, claims for wages (and

benefits, or disability wages) are in a (very) special category. (Reid, supra, 55 Cal.2d at p. 207, 10

Cal.Rptr. 819, 359 P.2d 251.) "It has long been recognized that wages are not ordinary debts, that

they may be preferred over other claims, and that, because of the economic position of the average

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

worker and, in particular, his dependence on wages for the necessities of life for himself and his

family, it is essential to the public welfare that he receive his pay when it is due." (In re Trombley

(1948) 31 Cal.2d 801, 809–810, 193 P.2d 734.)  See Also Hermann v. Charles Stratton, D.D.S.,

Inc., No. A095233, 2002 WL 193857, at *3 (Cal. Ct. App. Feb. 7, 2002).  A "willful" failure to

pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally

fails to pay wages to an employee when those wages are due.  Overtime wages must be paid no

later than the payday for the next regular payroll period following the payroll period in which the

overtime wages were earned. An employer shall be in compliance with Labor Code Section 226(a)

relating to total hours worked by the employee if the overtime hours are recorded as a correction on

the itemized statement for the next regular pay period and include the dates of the pay period for

which the correction is being made see Labor Code Section 204(b)(2)  An employer who willfully

fails to pay any wages due a terminated employee (discharge or quit) in the prescribed time frame

may be assessed a waiting time penalty. The waiting time penalty is an amount equal to the

employee's daily rate of pay for each day the wages remain unpaid, up to a maximum of thirty (30)

calendar days. Mamika v. Barca (1998) 68 Cal.App4th 487.  Additionally, an employee who is

discharged must be paid all of his or her wages, including accrued vacation, immediately at the

time of termination. Labor Code Sections 201 and 227.3


Where the FLSA [federal Fair Labor Standards Act] requires overtime pay only if an employee

works more than 40 hours per week, regardless of the number of hours worked during any one

day, California law, codified at Labor Code section 510, is more stringent and requires overtime

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

compensation for '[a]nywork in excess of eight hours in one workday and any work in excess of

40 hours in any one workweek.' " (Flowers v. Los Angeles County MetropolitanTransportation

Authority (2015) 243 Cal.App.4th 66, 83 [196 Cal.Rptr.3d 352], internal citation omitted.)

"[Employees are] entitled to the benefit of wage laws requiring an employer to promptly pay all

wages due, and prohibiting the employer from deducting unauthorized expenses from the

employee's wages, deducting for debts due the employer, or recouping advances absent the parties'

express agreement." (Davis v. Farmers Ins. Exchange (2016) 245 Cal.App.4th 1302,1330 [200

Cal.Rptr.3d 315].)   "The Labor Code's protections are 'designed to ensure that employees receive

their full wages at specified intervals while employed, as well as when they are fired or quit,' and

are applicable not only to hourly employees, but to highlycompensated executives and

salespeople." (Davis, supra, 245 Cal.App.4th at p.1331, internal citation omitted.)


[W]ages include not just salaries earned hourly, but also bonuses, profit-sharing plans, and

commissions." (Davis, supra, 245 Cal.App.4th at p. 1332, fn. 20.)  "[A]n employee's on-call or

standby time may require compensation."(Mendiola, supra, 60 Cal.4th at p. 840.)  "[Labor Code]

section 221 has long been held to prohibit deductions from an employee's wages for cash

shortages, breakage, loss of equipment, and other business losses that may result from the

employee's (or employer's) simple negligence."(Hudgins v. Neiman Marcus Group, Inc. (1995) 34

Cal.App.4th 1109, 1118 [41Cal.Rptr.2d 46].)   Further even if the employer mistakenly, or

intentionally, allowed a different person to use those wages, and cash those checks, those wages

are still owed to me.  "[A]n employer is not entitled to a setoff of debts owing it by an employee

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

against any wages due that employee." (Barnhill v. Robert Saunders & Co (1981) 125 Cal.App.3d

1, 6 [177 Cal.Rptr. 803].)  "State wage and hour laws 'reflect the strong public policy favoring

protection of workers' general welfare and "society's interest in a stable job market." See Cash v.

Winn (2012) 205 Cal.App.4th 1285, 1297, 140 Cal.Rptr.3d 867. See Also Flowers v. Los Angeles

Cty. Metro. Transportation Auth., 243 Cal. App. 4th 66, 82, 196 Cal. Rptr. 3d 352, 362 (2015)

They are therefore liberally construed (as are Pro Se Complaints) in favor of protecting workers.


Our Supreme Court has stated that, " '[I]n light of the remedial nature of the legislative enactments

authorizing the regulation of wages, hours and working conditions for the protection and benefit of

employees, the statutory provisions are to be liberally construed with an eye to promoting such

protection.' See Industrial Welfare Com. v. Superior Court, supra, 27 Cal.3d at p. 702, 166

Cal.Rptr. 331, 613 P.2d 579; see also Murphy, at p. 1103, 56 Cal.Rptr.3d 880, 155 P.3d 284" see

also Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012)

see also Flowers v. Los Angeles Cty. Metro. Transportation Auth., 243 Cal. App. 4th 66, 82, 196

Cal. Rptr. 3d 352, 362 (2015)  [G]iven the Legislature's remedial purpose, "statutes governing

conditions of employment are to be construed broadly in favor of protecting employees."].) See

Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1026–27, 273 P.3d 513, 527 (2012)


Under  CA Labor Code sec 206.5 There can be no valid release of any claim or right on account

of wages due unless the wages subject to the release have been paid.   "The purpose of section 206

is to prevent an employer from coercing a settlement by placing any condition on payment of

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

wages that are concededly due to the employee. It requires the employer to leave the employee to

all remedies for the balance claimed. The purpose of section 206.5 is to invalidate a release of *any*

wage claim before "such wages" are actually paid. Thus, by its terms, section 206.5 merely

prohibits release of a claim before the wages subject to the release have been paid."


"Although we find that the language of the statute is clear and does not need to refer to legislative

history, it also supports our construction. The Governor's Chaptered Bill File for Assembly Bill

No. 302, (which added section 206.5 in 1959), contains a letter to the governor from the legislative

representative of the California Labor Federation, stating that testimony before legislative

committees developed evidence of a wide-spread practice in the building industry of requiring

execution of a release as a condition of an employee's wage payment, and then raising the release

as a defense when the wage checks were dishonored. (Letter from C.J. Haggerty to Governor

Edmund G. Brown (June 11, 1959) p. 1.)  This letter evidences a concern that the wages due are

actually paid before the release can be raised as a defense to a wage claim.  Also, the bill

memorandum, dated June 16, 1959, that accompanied the assembly's unanimous vote on the bill

stated that the bill was designed "to provide a remedy against abuses on the part of an employer

who requires an employee to release his claim for wages as a conditional settlement of the claim for

an amount less than the wages actually due." (contained in Governor's Chaptered Bill File, ch.

1066, Bill Mem., Assem. Bill No. 302, (1959 Reg. Sess.) June 16, 1959.) This document indicates

a focus on requiring payment before the wage claim is released. See  Hermann v. Charles Stratton,

D.D.S., Inc., No. A095233, 2002 WL 193857, at *4 (Cal. Ct. App. Feb. 7, 2002)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

The Court finds that exhaustion under § 98.7 is not required before bringing a civil action under §§

98.6 and 1102.5. In so holding, the Court finds Creighton persuasive and adopts its reasoning.

Particularly, the Court agrees that the Private Attorneys General Act ("PAG Act" or "PAGA"),

which covers the statutory claims at issue here, see Cal. Labor Code § 2699.5, indicates a

legislative emphasis on private enforcement of the Labor Code that would be undercut by a

mandatory exhaustion requirement before the Labor Commissioner. The PAG Act " 'empowers or

deputizes an aggrieved employee to sue for civil penalties ... as an alternative to enforcement by the

State.' " McKenzie v. Fed. Exp. Corp., 765 F.Supp.2d 1222, 1231 (C.D.Cal.2011) (quoting

Villacres v. ABM Indus., Inc., 189 Cal.App.4th 562, 592, 117 Cal.Rptr.3d 398 (2010) (internal

quotation, citation, and alterations omitted)). The Act allows private citizens to sue on behalf of

themselves "and other current or former employees" for violations of the Labor Code, and permits

said citizens to recover civil penalties otherwise recoverable only by the government. See §

2699(a). - Turner v. City and County of San Francisco, 892 F.Supp.2d 1188, 1202

(N.D.Cal.,2012)

Similar to Labor Code Requirements of timely, and full pay, the Insurance Code, inclusive of

Unemployment & Disability Insurance Code has those same requirements for disability wages

under the UIC.  "There is an implied covenant of good faith and fair dealing in every contract that

neither party will do anything which will injure the right of the other to receive the benefits of the

agreement." (Comunale v. Traders & General Ins.Co. (1958) 50 Cal.2d 654, 658 [328 P.2d 198].)

"For the insurer to fulfill its obligation not to impair the right of the insured to receive the benefits

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

of the agreement, it again must give at least as much consideration to the latter's interests as it does

to its own." (Egan v. Mutual of Omaha Insurance Co. (1979) 24 Cal.3d 809, 818–819 [169

Cal.Rptr. 691, 620 P.2d 141].)

"[T]o establish the insurer's 'bad faith' liability, the insured must show that the insurer has (1)

withheld benefits due under the policy, and (2) that such withholding was 'unreasonable' or

'without proper cause.' The actionable withholding of benefits may consist of the denial of benefits

due; paying less than due; and/or unreasonably delaying payments due." (Major v. Western

HomeIns. Co. (2009) 169 Cal.App.4th 1197, 1209 [87 Cal.Rptr.3d 556], internal citations

omitted.) " '[T]he covenant of good faith can be breached for objectively unreasonable conduct,

regardless of the actor's motive.' . . . [A]n insured plaintiff need onlyshow, for example, that the

insurer unreasonably refused to pay benefits or failed to accept a reasonable settlement offer; there

is no requirement to establish subjective bad faith." (Bosetti v. United States Life Ins. Co. in the

City Of New York (2009) 175 Cal.App.4th 1208, 1236 [96 Cal.Rptr.3d 744], original italics,

internal citations omitted.)

"Thus, a breach of the implied covenant of good faith and fair dealing involves something more

than a breach of the contract or mistaken judgment. There must be proof the insurer failed or

refused to discharge its contractual duties not because of an honest mistake, bad judgment, or

negligence, 'but rather by a conscious and deliberate act, which unfairly frustrates the agreed

common purposes and disappoints the reasonable expectations of the other party thereby depriving

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

that party of the benefits of the agreement.' " (Century Surety Co. v.Polisso (2006) 139

Cal.App.4th 922, 949 [43 Cal.Rptr.3d 468], internal citations omitted.) "[I]f the insurer denies

benefits unreasonably (i.e., without any reasonable basis for such denial), it may be exposed to the

full array of tort remedies, including possible punitive damages." (Jordan v. Allstate Ins. Co. (2007)

148 Cal.App.4th1062, 1073 [56 Cal.Rptr.3d 312].)  "Subterfuges and evasions violate the

obligation of good faith in performance even though the actor believes his conduct to be justified.

But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing

may require more than honesty. A complete catalogue of types of bad faith is impossible, but the

following types are among those which have been recognized in judicial decisions: evasion of the

spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance,

abuse of a power to specify terms, and interference with or failure to cooperate in the other party's

performance." (R. J. Kuhl Corp. v. Sullivan (1993) 13 Cal.App.4th1589, 1602 [17 Cal.Rptr.2d

425].)


If an insurer "fails to deal fairly and in good faith with its insured by refusing, without proper

cause, to compensate its insured for a loss covered by the policy,such conduct may give rise to a

cause of action in tort for breach of an implied covenant of good faith and fair dealing. . . . [¶] . . .

[W]hen the insurer unreasonably and in bad faith withholds payment of the claim of its insured, itis

subject to liability in tort." (Gruenberg v. Aetna Insurance Co. (1973) 9Cal.3d 566, 574–575 [108

Cal.Rptr. 480, 510 P.2d 1032], original italics.) "An insurer's obligations under the implied

covenant of good faith and fair dealing with respect to first party coverage include a duty not to

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

unreasonably withhold benefits due under the policy. An insurer that unreasonably delays, or fails

to pay, benefits due under the policy may be held liable in tort for breach of the implied covenant.

The withholding of benefits due under the policy may constitute a breach of contract even if the

conduct was reasonable, but liability in tort arises only if the conduct was unreasonable, that is,

without proper cause."(Rappaport-Scott v. Interinsurance Exch. of the Auto. Club (2007)

146Cal.App.4th 831, 837 [53 Cal.Rptr.3d 245], internal citations omitted.)

"[T]here are at least two separate requirements to establish breach of the implied covenant: (1)

benefits due under the policy must have been withheld;and (2) the reason for withholding benefits

must have been unreasonable or without proper cause." (Love v. Fire Insurance Exchange (1990)

221Cal.App.3d 1136, 1151 [271 Cal.Rptr. 246], internal citations omitted.) "[A]n insurer denying

or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured

as to the existence of coverage liability or the amount of the insured's coverage claim is not liable

in bad faith even though it might be liable for breach of contract." (Chateau Chamberay

Homeowners Assn. v. Associated International Insurance Co. (2001) 90Cal.App.4th 335, 347

[108 Cal.Rptr.2d 776].)  Here there are no disputes, just improper withholding.  "We evaluate the

reasonableness of the insurer's actions and decision to deny benefits [or unduly delay] as of the

time they were made rather than with the benefit of hindsight." (Century Surety Co. v. Polisso

(2006) 139 Cal.App.4th 922, 949 [43Cal.Rptr.3d 468].)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

"[I]f the insurer denies benefits unreasonably (i.e., without any reasonable basis for such denial), it

may be exposed to the full array of tort remedies, including possible punitive damages." (Jordan v.

Allstate Ins. Co. (2007) 148 Cal.App.4th1062, 1073 [56 Cal.Rptr.3d 312].)" '[D]enial  [or delay]

of a claim on a basis unfounded in the facts known to the insurer, or contradicted by those facts,

may be deemed unreasonable. "A trier of fact mayfind that an insurer acted unreasonably if the

insurer ignores evidence available to it which supports the claim. The insurer may not just focus on

those facts which justify denial of the claim." ' " (Maslo v. Ameriprise Auto & Home Ins.(2014)

227 Cal.App.4th 626, 634 [173 Cal.Rptr.3d 854].)  "We conclude . . . that the duty of good faith

and fair dealing on the part of defendant insurance companies is an absolute one. . . . [T]he

nonperformance by one party of its contractual duties cannot excuse a breach of the duty of good

faith and fair dealing by the other party while the contract between them is in effect and not

rescinded." (Gruenberg, supra, 9 Cal.3d at p. 578.) [A]n insurer may act unreasonably by failing to

pay damages that are certain and demanding arbitration on those damages." (Maslo,supra,

227Cal.App.4th at pp. 638–639 [uninsured motorist coverage case].)


"[T]he insurer's duty to process claims fairly and in good faith [is] a non delegable duty." (Hughes

v. Blue Cross of Northern California (1989) 215Cal.App.3d 832, 848 [263 Cal.Rptr. 850].)  "[I]n

[a bad-faith action] 'damages for emotional distress are compensable as incidental damages flowing

from the initial breach, not as a separate cause of action.' Such claims of emotional distress must be

incidental to 'a substantial invasion of property interests.' " (Major v. Western Home Ins. Co.

(2009) 169Cal.App.4th 1197, 1214 [87 Cal.Rptr.3d 556], original italics, internal citations

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

omitted.)  "To fulfill its implied obligation, an insurer must give at least as much consideration to

the interests of the insured as it gives to its own interests.When the insurer unreasonably and in bad

faith withholds payment of the claim of its insured, it is subject to liability in tort. And an insurer

cannot reasonably and in good faith deny payments to its insured without fully investigating the

grounds for its denial." (Frommoethelydo v. Fire Insurance Exchange (1986) 42Cal.3d 208,

214–215 [228 Cal.Rptr. 160, 721 P.2d 41], internal citation omitted.)


"To protect [an insured's] interests it is essential that an insurer fully inquire into possible bases that

might support the insured's claim. Although we recognize that distinguishing fraudulent from

legitimate claims may occasionally be difficult for insurers, . . . an insurer cannot reasonably and in

good faith deny payments to its insured without thoroughly investigating the foundation for its

denial." (Egan, supra, 24 Cal.3d at p. 819.)  "When investigating a claim, an insurance company

has a duty to diligently search for evidence which supports its insured's claim. If it seeks to

discover only the evidence that defeats the claim it holds its own interest above that of the insured."

(Mariscal v. Old Republic Life Ins. Co. (1996) 42 Cal.App.4th1617, 1620 [50 Cal.Rptr.2d 224].)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

### 4. Physical Disability Discrimination

Defendant(s) {EDD} Discriminated against Plaintiff and have thus far refused to make reasonable accommodation, when illegally withholding, and underpaying Disability benefit compensation against the Constitution, ADA, Gov.Code, § 12940(n)), Social Security Act, CA Disability and Unemployment Code as well as other key precedent.  EDD Defendants discriminated in withholding, and non-payment of undisputed wages (i.e. already verified by the Auditing, and Accounting Department, with respective employers and confirming accounts and wages printed and signed with my social security number, unique check numbers, and full name (with middle initial) George J. Austin.  Defendant, unconstitutional, and tortious, non-(and delayed) payment of wages was to the detriment of Plaintiff, (University of California, Berkeley Graduate (09'), Honors Student, Bay Area Housing Commissioner, Alum, NAACP National Representative, and Local Youth and College President, Alum, California Senate, Governance and Finance Committee, Consultant, Capital Fellows, and Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as well as others), and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA).

Disability discrimination is prohibited, and the obligation (and duty) to provide reasonable accomodation is required under several federal and state laws, including the Unruh Act, the FEHA, Government Code section 12940(m), Government Code section 12926(p), Cal. Code Regs., tit. 2, § 11068(a), Government Code section 12926.1(c) and the Americans with Disabilities

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Act of 1990 (ADA).  The ADA defines a disability as a physical or emotional impairment that substantially limits one or more basic life activities or bodily functions that people who are not disabled do not usually have trouble doing. Some common examples include breathing, walking, talking, writing, and socializing.  Adjustments are not always in tangible form.  A reasonable accommodation may be required to permit an employee (or protected person) to perform an essential function of a job, to permit an employee (or protected person) to enjoy equal benefits and privileges, and to ensure equal opportunity in the application process. It is illegal for an employer (or other covered entity) covered by ADA, and other related statutes, not to make a reasonable accommodation upon request by an otherwise qualified job applicant or employee with a disability. In general, a reasonable accommodation may have an expense attached.   A reasonable accommodation need not involve a physical change. It could be a change in a rule or schedule.

Disability discrimination occurs when an employer or other entity covered by the Americans with Disabilities Act, as amended, or the Rehabilitation Act, as amended, treats a qualified individual with a disability who is an employee or applicant unfavorably because he or she has a disability. Some examples of disability discrimination may include: Discriminating on the basis of physical or mental disability in various aspects of employment, including: recruitment, firing, hiring, training, job assignments, promotions, pay, benefits, lay off, leave and all other employment-related activities.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Under the ADA, 42 U.S.C. § 12101 et seq., A person has a disability if he or she has a physical or mental impairment that substantially limits one or more major life activities, a record of such an impairment, or is regarded as having such an impairment.  Here Plaintiff had, and has medically verified severe back and neck trauma injury (as well as previous on the job injury all impairing, and preventing) his ability to work.  Whether or not a person's condition is a disability under the law is determined individually; the ADA does not list specific covered disabilities.  People with past drug or alcohol problems are protected from job discrimination by the ADA, as are individuals with current alcohol problems who are able to perform their jobs (or participate in protected programs).

The Americans with Disabilities Act of 1990 (ADA) is a federal law that prohibits discrimination against qualified individuals with disabilities. The ADA requires that reasonable accommodation be made to provide individuals with disabilities equal access to services, programs, and opportunities, such as employment and housing. Several federal agencies and departments enforce the ADA, including the Equal Employment Opportunity Commission (EEOC) and the Department of Justice.  Under the ADA, Private Companies, Employment Agencies, Labor Organizations, and State & Local Governments all must comply.  The ADA prohibits discrimination in the workplace (and in other protected activitces, or accomodations) against qualified individuals with disabilities by an employer, public or private.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Discrimination, under the ADA, is not limited to hiring and firing an individual but may take such forms as inappropriately classifying a job applicant or employee; not hiring or promoting qualified individuals who are disabled; or failing to make reasonable accommodations for employees (or other protected persons) who an employer (or other covered entity) knows has mental or physical limitations. Employers can require applicants to complete a medical examination after they have offered that person a job, but only if the employer requires that of all applicants and the employer keeps the medical record confidential.

Under Title II of the ADA public agencies, including state and local governments, and commuter authorities, including the National Railroad Passenger Corporation, people with disabilities cannot be discriminated against or excluded from the benefits of the services, programs, or activities of a public entity because of disability. This includes access to state parks, government meetings, public schools, and public transportation. The failure to make certain services accessible to disabled individuals can be considered discrimination, such as if a municipal transit agency does not make its buses wheelchair accessible

Under American Federation of Labor v. EDD, in granting preliminary injunction on a similar fact pattern regarding under, or non-payment,  "Any increase in government costs which might result from our decision is outweighed by the claimant's need to receive prompt payment of benefits. The loss of unemployment insurance benefits may have severe effects upon the worker and his family. A lump sum payment, which claimants who successfully appeal a denial of continuing benefits

George Jarvis (J).. Austin, esq. (TBA) 06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

receive, defeats the purpose of unemployment insurance. These benefits "provide cash to a newly

unemployed worker 'at a time when otherwise he would have nothing to spend,' serving to

maintain the recipient at subsistence levels." (California Human Resources Dept. v. Java, supra,

402 U.S. 121, 131-132, 91 S.Ct. 1347, 1354, 28 L.Ed.2d 666.) - Am. Fed'n of Labor v.

Employment Dev. Dep't, 88 Cal.App.3d 811, 821, 152 Cal.Rptr. 193, 199


Here:


1. Defendant EDD was a covered entity;

   a. The State of California Employment Development Department is a covered entity

      under all respective Federal, and State laws requiring reasonable accommodation.

2. Plaintiff was in a covered relationship with EDD

   a. EDD as a state agency and Plaintiff as a citizen of the state, CA, are in a covered

      relationship.

3. Plaintiff had physical condition that limited major life activity;

   a. Plaintiffs with severe back and neck injuries, and lower body injuries limiting

      working, had multiple severe injuries that are ongoing and limited, or prevented

      major life activity (i.e. employment).

4. Defendant knew of Plaintiff's injuries, and  [that limited major life activity

   a. Defendant, EDD, knew of and had medical documentation of injuries preventing

      work.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

5. Plaintiff was able to perform the essential duties related to the covered relationship with reasonable accommodation for physical condition

   a. Plaintiff was able to, and did, perform essential duties with regard to covered relationship and accommodation for physical condition, but Defendant EDD did not provide reasonable accommodation, and violated Plaintiff's Due Process Rights.

6. Defendant failed to provide reasonable accommodation for Plaintiff's physical condition

   a. Defendant repeatedly failed to provide reasonable accommodation for physical condition, and actually made worse through deprivation of Constitutional Due Process Rights.

7. Plaintiff was harmed; and

   a. Plaintiff was harmed physically, mentally, and emotionally due to the deprivations caused by the organization's actions.

8. Defendant's failure to provide reasonable accommodation was a substantial factor in causing Plaintiff's harm.

   a. Defendant's failure to provide reasonable accommodation was a substantial factor in causing plaintiff irreparable harm, and ongoing injury.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Unruh Civil Rights

Alternatively, and related to the reasonable accommodation Discrimiantion claim,To establish Unruh Civil Civil Rights claim, Plaintiff shall prove all of the following elements.

Here:

1. Defendants, EDD, denied, aided or incited a denial of, and discriminated or made a distinction that denied full and equal accommodations, advantages, facilities, privileges, and services to Plaintiff

   a. Organizational defendants engaged in retaliatory conduct to prevent access, availability and deprive of rights, property and opportunity (including proper benefit payments). Defendant's conspirator-ily denied, aided or incited a denial of, discriminated and made a distinction that denied full and equal accommodations, advantages, facilities, privileges and services to Plaintiff's detriment.

2. A substantial motivating reason for Defendant's, EDDs, conduct was their perception of Plaintiff's disability, race, color, ancestry, medical condition, genetic information, and protected activity

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

a. Defendant's acts were motivated, at least in part, by Plaintiff's protected activity, as well as protected characteristics including physical disability, race, color, ancestry, medical condition, or genetic information.

    i. All Organizational Defendants, including EDD, were made aware, and explicitly made reference to protected activity in regard to retaliatory behaviors (i.e. extreme delay in payment in violation of Due Process and a host of statutes and case holdings).

        1. Defendant Insurers, and Employers, made reference to Federal lawsuit complaints, and State of California, Insurance and Labor Department Complaints, and Inquiries.

3. Plaintiff was harmed

a. Plaintiff suffered, and is suffering financial, physical, harm, pain and suffering, emotional toll, and distress due to Defendant's, EDDs, actions.  Defendant's actions have detrimental effects on every aspect of Plaintiff's life including appropriate medical care to help heal from ongoing severe injury.

4. Defendant's conduct was a substantial factor in causing Plaintiff's harm.

a. Defendant's acts created enormous obstacles, as a State Actor, intertwining, and utilizing state actors, operating under the color of law to deter and deprive Plaintiff, and was direct, and substantial cause in Plaintiff's.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Note that element 2 uses the term "substantial motivating reason" to express both intent and

causation between the protected classification and the defendant's conduct. "Substantial motivating

reason" has been held to be the appropriate standard under the Fair Employment and Housing Act

to address the possibility of both discriminatory and nondiscriminatory motives. (See Harris v. City

of SantaMonica (2013) 56 Cal.4th 203, 232 [152 Cal.Rptr.3d 392, 294 P.3d 49]; CACI No.2507,

"Substantial Motivating Reason" Explained.)

Note that there are two causation elements. There must be a causal link between the discriminatory

intent and the adverse action (see element 2), and there must be a causal link between the adverse

action and the harm (see element 4).For an instruction on damages under the Unruh Act, see CACI

No. 3067, UnruhCivil Rights Act—Damages. Note that the jury may award a successful plaintiff

upto three times actual damages but not less than $4,000 regardless of any actual damages. (Civ.

Code, § 52(a).) In this regard, harm is presumed, and elements 3 and 4 may be considered as

established if no actual damages are sought. (See Koirev. Metro Car Wash (1985) 40 Cal.3d 24, 33

[219 Cal.Rptr. 133, 707 P.2d 195][Unruh Act violations are per se injurious]; Civ. Code, § 52(a)

[provides for minimum statutory damages for every violation regardless of the plaintiff's actual

damages]; see also Civ. Code, § 52(h) ["actual damages" means special and general damages].)

An employee (or other protect person) may file a civil action based on the employer's (or other

protected entity's) failure to engage in the interactive process. (Claudio, supra, 134 Cal.App.4th at

p. 243.)  "Two principles underlie a cause of action for failure to provide a reasonable

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

accommodation. First, the employee must request an accommodation. Second,the parties must

engage in an interactive process regarding the requested accommodation and, if the process fails,

responsibility for the failure rests with the party who failed to participate in good faith. While a

claim of failure to accommodate is independent of a cause of action for failure to engage in an

interactive dialogue, each necessarily implicates the other." (Gelfo, supra, 140 Cal.App.4th at p.

54, internal citations omitted.)  "FEHA requires an informal process with the employee to attempt

to identify reasonable accommodations, not necessarily ritualized discussions." (Nealy v.City of

Santa Monica (2015) 234 Cal.App.4th 359, 379 [184 Cal.Rptr.3d 9].)


"FEHA's reference to a 'known' disability is read to mean a disability of which the employer has

become aware, whether because it is obvious, the employee has brought it to the employer's

attention, it is based on the employer's own perception—mistaken or not—of the existence of a

disabling condition or,perhaps as here, the employer has come upon information indicating the

presence of a disability." (Gelfo, supra, 140 Cal.App.4th at p. 61, fn. 21.)  "Once initiated, the

employer has a continuous obligation to engage in the interactive process in good faith. 'Both

employer and employee have the obligation "to keep communications open" and neither has "a

right to obstruct the process." [Citation.] "Each party must participate in good faith, undertake

reasonable efforts to communicate its concerns, and make available to the other information which

is available, or more accessible, to one party.  Liability hinges on the objective circumstances

surrounding the parties' breakdown in communication, and responsibility for the breakdown lies

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

with the party who fails to participate in good faith." [Citation.]' " (Swanson v. Morongo

UnifiedSchool Dist. (2014) 232 Cal.App.4th 954, 971–972 [181 Cal.Rptr.3d 553].)


"[Employer] asserts that, if it had a duty to engage in the interactive process,the duty was

discharged. 'If anything,' it argues, 'it was [employee] who failed to engage in a good faith

interactive process.' [Employee] counters [employer] made up its mind before July 2002 that it

would not accommodate [employee]'slimitations, and nothing could cause it to reconsider that

decision. Because the evidence is conflicting and the issue of the parties' efforts and good faith is

factual, the claim is properly left for the jury's consideration." (Gelfo, supra,140 Cal.App.4th at p.

62, fn. 23.)  "None of the legal authorities that [defendant] cites persuades us that theLegislature

intended that after a reasonable accommodation is granted, the interactive process continues to

apply in a failure to accommodate context. . . .To graft an interactive process intended to apply to

the determination of a reasonable accommodation onto a situation in which an employer failed to

provide a reasonable, agreed-upon accommodation is contrary to the apparent intent of the FEHA

and would not support the public policies behind that provision." (A.M. v. Albertsons, LLC (2009)

178 Cal.App.4th 455, 464 [100Cal.Rptr.3d 449].)  "[T]he verdicts on the reasonable

accommodations issue and the interactive process claim are not inconsistent. They involve separate

causes of action and proof of different facts. Under FEHA, an employer must engage in a good

faith interactive process with the disabled employee to explore the alternatives to accommodate the

disability. 'An employee may file a civil action based on the employer's failure to engage in the

interactive process.' Failure to engage in this process is a separate FEHA violation independent

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

from an employer's failure to provide a reasonable disability accommodation, which is also a

FEHA violation.An employer may claim there were no available reasonable accommodations.But

if it did not engage in a good faith interactive process, 'it cannot be known whether an alternative

job would have been found.' The interactive process determines which accommodations are

required. Indeed, the interactive process could reveal solutions that neither party envisioned."

(Wysinger, supra, 157Cal.App.4th at pp. 424–425, internal citations omitted.)


"We disagree . . . with Wysinger's construction of section 12940(n). We Conclude that the

availability of a reasonable accommodation (i.e., amodification or adjustment to the workplace that

enables an employee to perform the essential functions of the position held or desired) is necessary

to a section 12940(n) claim. [¶] Applying the burden of proof analysis in Green,supra, 42 Cal.4th

254, we conclude the burden of proving the availability of a reasonable accommodation rests on

the employee." (Nadaf-Rahrov, supra, 166Cal.App.4th at pp. 984–985.)  "We synthesize

Wysinger, Nadaf-Rahrov, and Claudio with our analysis of the law as follows: To prevail on a

claim under section 12940, subdivision (n) for failure to engage in the interactive process, an

employee must identify a reasonable accommodation that would have been available at the time the

interactive process should have occurred. An employee cannot necessarily be expected to identify

and request all possible accommodations during the interactive process itself because ' "

'[e]mployees do not have at their disposal the extensive information concerning possible alternative

positions or possible accommodations which employers have. . . .' " ' However, as the

Nadaf-Rahrovcourt explained, once the parties have engaged in the litigation process, to prevail,

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

the employee must be able to identify an available accommodation the interactive process should

have produced: 'Section 12940[, subdivision](n),which requires proof of failure to engage in the

interactive process, is the appropriate cause of action where the employee is unable to identify a

specific,available reasonable accommodation while in the workplace and the employer fails to

engage in a good faith interactive process to help identify one, but the employee is able to identify

a specific, available reasonable accommodation through the litigation process.' " (Scotch, supra,

173 Cal.App.4th at pp.1018–1019.)

A reasonable accommodation is a reasonable change to the workplace that [choose one or more of

the following][gives a qualified applicant with a disability an equal opportunity inthe job

application process;][allows an employee with a disability to perform the essential duties of the

job;] [or][allows an employee with a disability to enjoy the same benefits and privileges of

employment that are available to employees without disabilities.]  "[T]he duty of an employer to

provide reasonable accommodation for an employee with a disability is broader under the FEHA

than under the ADA."(Bagatti v. Department of Rehabilitation (2002) 97 Cal.App.4th 344, 362

[118Cal.Rptr.2d 443].)  "[A]n employer who knows of the disability of an employee has an

affirmative duty to make known to the employee other suitable job opportunities with the employer

and to determine whether the employee is interested in, and qualifiedfor, those positions, if the

employer can do so without undue hardship or if the employer offers similar assistance or benefit to

other disabled or nondisabledemployees or has a policy of offering such assistance or benefit to

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

any other employees." (Prilliman v. United Air Lines, Inc. (1997) 53 Cal.App.4th 935,950–951

[62 Cal.Rptr.2d 142].)


"The question now arises whether it is the employees' burden to prove that a reasonable

accommodation could have been made, i.e., that they were qualifiedfor a position in light of the

potential accommodation, or the employers' burden to prove that no reasonable accommodation

was available, i.e., that the employees were not qualified for any position because no reasonable

accommodation was available. [¶¶] Applying Green's burden of proof analysis to section

12940(m), we conclude that the burden of proving ability to perform the essential functions of a

job with accommodation should be placed on the plaintiff under this statute as well."

(Nadaf-Rahrov v. The Neiman MarcusGroup, Inc. (2008) 166 Cal.App.4th 952, 977–978 [83

Cal.Rptr.3d 190], internal citations omitted.)  The California Supreme Court has held that under

Government Code section12940(a), the plaintiff is required to prove that he or she has the ability to

perform the essential duties of the job with or without reasonable accommodation. (SeeGreen v.

State of California (2007) 42 Cal.4th 254, 260 [64 Cal.Rptr.3d 390, 165P.3d 118].) While the court

left open the question of whether the same rule should apply to cases under Government Code

section 12940(m) (see id. at p. 265), appellate courts have subsequently placed the burden on the

employee to prove that he or she would be able to perform the job duties with reasonable

accommodation(see element 5). (See Cuiellette v. City of Los Angeles (2011) 194 Cal.App.4th

757,766 [123 Cal.Rptr.3d 562]; Nadaf-Rahrov v. The Neiman Marcus Group, Inc.(2008) 166

Cal.App.4th 952, 973–979 [83 Cal.Rptr.3d 190].)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

There may still be an unresolved issue if the employee claims that the employer failed to provide

him or her with other suitable job positions that he or she might be able to perform with reasonable

accommodation. The rule has been that the employer has an affirmative duty to make known to the

employee other suitable job opportunities and to determine whether the employee is interested in,

and qualifiedfor, those positions, if the employer can do so without undue hardship or if the

employer offers similar assistance or benefit to other disabled or nondisabled employees or has a

policy of offering such assistance or benefit to any other employees. (Prilliman v. United Air Lines,

Inc. (1997) 53 Cal.App.4th 935,950–951 [62 Cal.Rptr.2d 142]; see also Furtado v. State Personnel

Bd. (2013) 212Cal.App.4th 729, 745 [151 Cal.Rptr.3d 292]; Claudio v. Regents of the

Universityof California (2005) 134 Cal.App.4th 224, 243 [35 Cal.Rptr.3d 837]; Hanson v.Lucky

Stores (1999) 74 Cal.App.4th 215, 226 [87 Cal.Rptr.2d 487].) In contrast other courts have said

that it is the employee's burden to prove that a reasonable accommodation could have been made,

i.e., that he or she was qualified for a position in light of the potential accommodation. (See

Nadaf-Rahrov, supra, 166Cal.App.4th at p. 978; see also Cuiellette, supra, 194 Cal.App.4th at p.

767[plaintiff proves he or she is a qualified individual by establishing that he or she can perform

the essential functions of the position to which reassignment is sought].) The question of whether

the employee has to present evidence of other suitable job descriptions and prove that a vacancy

existed for a position that the employee could do with reasonable accommodation may not be fully

resolved.No element has been included that requires the plaintiff to specifically request reasonable

accommodation. Unlike Government Code section 12940(n) on theinteractive process (see CACI

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

No. 2546, Disability Discrimination—ReasonableAccommodation—Failure to Engage in Interactive Process), section 12940(m) doe snot specifically require that the employee request reasonable accommodation; itrequires only that the employer know of the disability. (See Prilliman, supra, 53Cal.App.4th at pp. 950–951.)

"The essential elements of a failure to accommodate claim are: (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual(i.e., he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's disability."(Cuiellette,supra, 194 Cal.App.4th at p. 766.)  "Under the FEHA, 'reasonable accommodation' means 'a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired.' " (Cuiellette,supra, 194 Cal.App.4th at p.766.) "Reasonable accommodations include '[j]ob restructuring, part-time or modifiedwork schedules, reassignment to a vacant position, . . . and other similar accommodations for individuals with disabilities.' " (Swanson v. MorongoUnified School Dist. (2014) 232 Cal.App.4th 954, 968 [181 Cal.Rptr.3d 553],original italics.)  "The examples of reasonable accommodations in the relevant statutes and regulations include reallocating nonessential functions or modifying how or when an employee performs an essential function, but not eliminating essential functions altogether. FEHA does not obligate the employer to accommodate the employee by excusing him or her from the performance of essential functions.``(Nealy v. City of Santa Monica (2015) 234 Cal.App.4th 359, 375 [184Cal.Rptr.3d 9].)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

" 'If the employee cannot be accommodated in his or her existing position and the requested

accommodation is reassignment, an employer must make affirmative efforts to determine whether a

position is available. [Citation.] A reassignment, however, is not required if "there is no vacant

position for which the employee is qualified." [Citations.] "The responsibility to reassign a

disabledemployee who cannot otherwise be accommodated does 'not require creating a new job,

moving another employee, promoting the disabled employee or violating another employee's rights

. . . ." ' [Citations.] "What is required is the'duty to reassign a disabled employee if an already

funded, vacant position at the same level exists.' [Citations.]" [Citations.]' " (Furtado,supra,

212Cal.App.4th at p. 745.)  "[A] disabled employee seeking reassignment to a vacant position 'is

entitled to preferential consideration.' " (Swanson, supra, 232 Cal.App.4th at p. 970.) "Although

no particular form of request is required, ' "[t]he duty of an employer reasonably to accommodate

an employee's handicap does not arise until the employer is 'aware of respondent's disability and

physical limitations.'. . ." ' ' "[T]he employee can't expect the employer to read his mind and know

he secretly wanted a particular accommodation and sue the employer for not providing it. Nor is an

employer ordinarily liable for failing to accommodate a disability of which it had no knowledge. . .

." . . .' " (Avila, supra, 165Cal.App.4th at pp. 1252–1253, internal citations omitted.) " 'Ordinarily

the reasonableness of an accommodation is an issue for the jury.' "(Prilliman,supra, 53 Cal.App.4th

at p. 954, internal citation omitted.)


"[T]he duty of an employer to provide reasonable accommodation for an employee with a

disability is broader under the FEHA than under the ADA."(Bagatti, supra, 97 Cal.App.4th at p.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

362.) "Under the FEHA . . . an employer is relieved of the duty to reassign a disabled employee

whose limitations cannot be reasonably accommodated in his or her current job only if

reassignment would impose an 'undue hardship' on its operations or if there is no vacant position

for which the employee is qualified."(Spitzer v. Good Guys, Inc. (2000) 80 Cal.App.4th 1376,

1389 [96 Cal.Rptr.2d 236].)  "On these issues, which are novel to California and on which the

federal courts are divided, we conclude that employers must reasonably accommodate individuals

falling within any of FEHA's statutorily defined 'disabilities,'including those 'regarded as'

disabled, and must engage in an informal,interactive process to determine any effective

accommodations." (Gelfo v.Lockheed Martin Corp. (2006) 140 Cal.App.4th 34, 55 [43

Cal.Rptr.3d 874].)  "Appellant also stated a viable claim under section 12940, subdivision

(m),which mandates that an employer provide reasonable accommodations for the known physical

disability of an employee. She alleged that she was unable to work during her pregnancy, that she

was denied reasonable accommodations for her pregnancy-related disability and terminated, and

that the requested accommodations would not have imposed an undue hardship on [defendant].

A finite leave of greater than four months may be a reasonable accommodation for a known

disability under the FEHA." (Sanchez v. Swissport, Inc. (2013) 213 Cal.App.4th 1331, 1341 [153

Cal.Rptr.3d 367].)  "To the extent [plaintiff] claims the [defendant] had a duty to await a vacant

position to arise, he is incorrect. A finite leave of absence may be a reasonable accommodation to

allow an employee time to recover, but FEHA does not require the employer to provide an

indefinite leave of absence to await possible future vacancies." (Nealy, supra, 234 Cal.App.4th at

pp. 377–378.)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

The analysis of a claim under the ADA "roughly parallels" the analysis of claims brought under

the Rehabilitation Act. Pangburn v. N. Ky. Univ., No. 99-5474, 2000 U.S. App. LEXIS 6413, at

*4, 2000 WL 331948 (6th Cir. Mar. 23, 2000). To bring a claim for disability discrimination under

these statutes, the plaintiff must prove that he is "(1) disabled as defined by each statute, (2)

'otherwise qualified' for participation in the program, and (3) being denied the benefits of or being

dismissed from the program based on h[is] disability." Id. (citing Kaltenberger v. Ohio Coll. of

Podiatric Med., 162 F.3d 432, 435 (6th Cir. 1998)). A person is "otherwise qualified" if he or she

can meet the program's necessary requirements with reasonable accommodation. Id. Courts

generally defer to the judgment of a school when considering students' qualifications. See Halpern

v. Wake Forest Univ. Health Scis., 669 F.3d 454 (4th Cir. 2012) (compiling list of cases). Cobble v.

Spalding University, 2017 WL 382245 (W.D.Ky.), 4 (W.D.Ky., 2017)


Whether the FEHA standard applies under the Unruh Act has not been addressed by the

courts.With the exception of claims that are also violations of the Americans With Disabilities Act

(ADA) (see Munson v. Del Taco, Inc. (2009) 46 Cal.4th 661, 665[94 Cal.Rptr.3d 685, 208 P.3d

623]), intentional discrimination is required forviolations of the Unruh Act. (See Harris v. Capital

Growth Investors XIV (1991) 52Cal.3d 1142, 1149 [278 Cal.Rptr. 614, 805 P.2d 873].) The intent

requirement is encompassed within the motivating-reason element. For claims that are also

violations of the ADA, do not give element  The judge may decide the issue of whether the

defendant is a business establishment as a matter of law. (Rotary Club of Duarte v. Bd. of Directors

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

(1986)178 Cal.App.3d 1035, 1050 [224 Cal.Rptr. 213].)  The Act is not limited to the categories

expressly mentioned in the statute. Other forms of arbitrary discrimination by business

establishments are prohibited. (In reCox (1970) 3 Cal.3d 205, 216 [90 Cal.Rptr. 24, 474 P.2d

992].) Therefore, this instruction allows the user to "insert other actionable characteristics"

throughout.  First, the claim must be based on a personal characteristic similar to those listed in the

statute. Second, the court must consider whether the alleged discrimination wasjustified by a

legitimate business reason. Third, the consequences of allowing the claim to proceed must be taken

into account. (Semler v. General Electric CapitalCorp. (2011) 196 Cal.App.4th 1380, 1392–1393

[127 Cal.Rptr.3d 794]; see Harris,supra, 52 Cal.3d at pp. 1159–1162.)


"The Unruh Act was enacted to 'create and preserve a non-discriminatory environment in

California business establishments by "banishing" or "eradicating" arbitrary, invidious

discrimination by such establishments.' "(Flowers v. Prasad (2015) 238 Cal.App.4th 930, 937 [190

Cal.Rptr.3d 33].)  "Invidious discrimination is the treatment of individuals in a manner that is

malicious, hostile, or damaging." (Javorsky v. Western Athletic Clubs, Inc.(2015) 242 Cal.App.4th

1386, 1404 [195 Cal.Rptr.3d 706].)  " 'The Legislature used the words "all" and "of every kind

whatsoever" in referring to business establishments covered by the Unruh Act, and the inclusion of

these words without any exception and without specification of particular kinds of enterprises,

leaves no doubt that the term "business establishments" was used in the broadest sense reasonably

possible. The word "business" embraces everything about which one can be employed, and it is

often synonymous with "calling, occupation, or trade, engaged in for the purpose of making a

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

livelihood or gain." The word "establishment," as broadly defined, includes not only a fixed

location, such as the "place where one is permanently fixed for residence or business," but also a

permanent "commercial force or organization" or "a permanent settled position, (as in life or

business." ' " (O'Connor v. Village Green Owners Assn. (1983) 33 Cal.3d 790, 795 [191

Cal.Rptr. 320, 662 P.2d 427], internal citations omitted.)  Whether a defendant is a "business

establishment" is decided as an issue of law. (Rotary Club of Duarte, supra, 178 Cal.App.3d at p.

1050.)

"In addition to the particular forms of discrimination specifically outlawed by the Act (sex, race,

color, etc.), courts have held the Act 'prohibit[s] discrimination based on several classifications

which are not specifically enumerated in the statute.' These judicially recognized classifications

include unconventional dress or physical appearance, families with children, homosexuality, and

persons under 18." (Hessians Motorcycle Club v. J.C. Flanagans (2001) 86 Cal.App.4th 833, 836

[103 Cal.Rptr.2d 552], internal citations omitted.)  "[T]here is no dispute that California courts

have applied the Act to discrimination based on age. Furthermore, the Act targets *not just the*

*practice of outright exclusion, but pricing differentials as well.*" (Javorsky, supra, 242 Cal.App.4th

at p. 1394, internal citations omitted.)

"[T]he language and history of the Unruh Act indicate that the legislative object was to prohibit

intentional discrimination in access to public accommodations.  We have been directed to no

authority, nor have we located any, that would justify extension of a disparate impact test, which

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

has been developed and applied by the federal courts primarily in employment discrimination

cases, to a general discrimination-in public-accommodations statute like the Unruh Act. Although

evidence of adverse impact on a particular group of persons may have probative value in public

accommodations cases and should therefore be admitted in appropriate cases subject to the general

rules of evidence, a plaintiff must nonetheless plead and prove a case of intentional discrimination

to recover under the Act." (Harris, supra, 52 Cal.3d at p. 1149.)


"On examining the language, statutory context, and history of section 51, subdivision (f), we

conclude . . . [t]he Legislature's intent in adding subdivision (f) was to provide disabled

Californians injured by violations of the ADA with the remedies provided by section 52. A

plaintiff who establishes a violation of the ADA, therefore, need not prove intentional

discrimination in order to obtain damages under section 52." (Munson, supra, 46 Cal.4th at p.665.)

"Civil Code section 51, subdivision (f) states: 'A violation of the right of any individual under the

federal [ADA] shall also constitute a violation of this section.' The ADA provides in pertinent part:

'No individual shall be discriminated against on the basis of disability in the full and equal

enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any

place of public accommodation by any person who . . . operates a place of public accommodation.'

The ADA defines discrimination as 'a *failure to make reasonable modifications* in policies,

practices, or procedures, when such modifications are necessary to afford such goods, services,

facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the

entity can demonstrate that making such modifications would fundamentally alter the nature of such

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

goods, services, facilities, privileges, advantages, oraccommodations.' " (Baughman v. Walt

Disney World Co. (2013) 217Cal.App.4th 1438, 1446 [159 Cal.Rptr.3d 825], internal citations

omitted.)

"[T]he Act's objective of prohibiting 'unreasonable, arbitrary or invidious discrimination' is

fulfilled by examining whether a price differential reflects an' arbitrary, class-based generalization.'

. . . [A] policy treating age groups differently in this respect may be upheld, at least if the pricing

policy (1) ostensibly provides a social benefit to the recipient group; (2) the recipient group is

disadvantaged economically when compared to other groups paying full price; and (3) there is no

invidious discrimination." (Javorsky, supra, 242Cal.App.4th at p. 1399.)  "It is thus manifested by

section 51 that all persons are entitled to the full and equal privilege of associating with others in

any business establishment. And section 52, liberally interpreted, makes clear that discrimination

by such a business establishment against one's right of association on account of the associates'

color [or other protected characteristic], is violative of the Act.  It follows . . . that discrimination by

a business establishment against persons on account of their association with others of the [B]lack

race is actionable under the Act." (Winchell v. English(1976) 62 Cal.App.3d 125, 129 [133

Cal.Rptr. 20].)

"Because it is undisputed that the respondent 'regarded or treated' her as a person with a disability.

The protection of the Unruh Civil Rights Act extends both to people who are currently living with

a physical disability that limits a life activity and to those who are regarded by others as living with

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

such a disability. . . . 'Both the policy and language of the statute offer protection to a person who

is not actually disabled, but is wrongly perceived to be. The statute's plain language leads to the

conclusion that the "regarded as" definition casts a broader net and protects any individual

"regarded" or "treated" by an employer "as having, or having had, any physical condition that

makes achievement of a major life activity difficult" or may do so in the future….' [and] … is

protected by theUnruh Civil Rights Act." (Maureen K. v. Tuschka (2013) 215 Cal.App.4th

519,529–530 [155 Cal.Rptr.3d 620], original italics, internal citations omitted.)


Under The Americans With Disabilities Act (ADA) found at 42 U.S.C. 12101-12213 (As it

protects those incorrectly perceived with disabilities, too). 7. Civil Rights Act of 1866 (Section

1981), it is illegal to discriminate on these basis (and causes of action are available even to those

incorrectly perceived with such).   42 U.S. Code § 12101 states " (a)FindingsThe Congress finds

that:


(1)physical or mental disabilities in no way diminish a person's right to fully participate in all

aspects of society, yet many people with physical or mental disabilities have been precluded from

doing so because of discrimination; others who have a record of a disability or are regarded as

having a disability also have been subjected to discrimination;

(2)historically, society has tended to isolate and segregate individuals with disabilities, and, despite

some improvements, such forms of discrimination against individuals with disabilities continue to

be a serious and pervasive social problem;

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

(3)discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(4)unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;

(5)individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

(6)census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally;

(7)the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and

(8)the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

(b)PurposeIt is the purpose of this chapter—

(1)to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2)to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3)to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and

(4)to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.


The Supreme Court has broadly construed the provision "under color of any statute" to include virtually any State Action including the exercise of power of one "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law" (United States v. Classic, 313 U.S. 299, 61 S. Ct. 1031, 85 L. Ed. 1368 [1941]). Thus, the wrongdoer's employment by the government may indicate state action, although it does not conclusively prove it. Even if the wrongdoer did not act pursuant to a state statute, the plaintiff may still show that the defendant acted pursuant to a "custom or usage" that had the force of law in the state. In Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970), the plaintiff was able to prove that she was refused service in a restaurant due to her race because of a state-enforced

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

custom of racial Segregation, even though no state statute promoted racial segregation in restaurants.

According to the Department of Labor When employees are injured or disabled or become ill on the job, they may be entitled to medical and/or disability-related leave under two federal laws: the Americans with Disabilities Act (ADA) and the Family and Medical Leave Act (FMLA). In addition, state workers' Compensation laws have leave provisions that may apply. Depending on the situation, one or more of these laws can apply to the same employee. To help employers understand their responsibilities related to medical and disability-related leave, an overview of each is provided below, including information about where the laws intersect and overlap.  Workers' Compensation laws apply to almost all employers. Workers' compensation is a form of insurance that provides financial assistance, medical care and other benefits for employees who are injured or disabled on the job. Except for federal government employees and certain other groups of employees, workers' Compensation laws are administered at the state level. Because each state has its own system, coverage varies. As a general rule, Workers' Compensation laws apply to all employers with one or more employees. In most states, all employees are covered. An on-the-job injury triggers coverage.  Medical and disability-related leave rules: Injured employees receive varying amounts of paid leave, depending on the state and the nature of the injury.  The Americans with Disabilities Act (ADA) is a federal law that protects the rights of people with disabilities by eliminating barriers to their participation in many aspects of working and living in America. In particular, Title I of the ADA prohibits covered employers from discriminating against people with

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

disabilities in the full range of employment-related activities, from recruitment to advancement to pay and benefits.  Title I of the ADA applies to employers (including state or local governments) with 15 or more employees and to employment agencies, labor organizations and joint labor-management committees with any number of employees.  The ADA protects individuals with a disability who are qualified for the job, meaning they have the skills and qualifications to carry out the essential functions of the job, with or without accommodations. An individual with a disability is defined as a person who: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.

### 5. Conversion

Organizational Defendants (including EDD) practiced conversion of Plaintiff's property.  Tesla, EDD, MVP Personnel, and Balance Staffing along with other defendants knowingly conspired to commit the tort of conversion of non-paid, and undisputed wages, and statutorily defined, and entitled Disability benefit wages.  These wages have already been verified by the EDD's Auditing, and Accounting Department, with respective employers, and confirming accounts and wages printed and signed with my social security number, unique check numbers, and full name (with middle initial) George J. Austin.  Defendants, unconstitutional, and tortious, non-(and delayed) payment of wages was to the detriment of Plaintiff, (University of California, Berkeley Graduate (09'), Honors Student, Bay Area Housing Commissioner, Alum, NAACP National

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Representative, and Local Youth and College President, Alum, California Senate, Governance and Finance Committee, Consultant, Capital Fellows, and Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as well as others), and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA).

Conversion is essentially the civil law equivalent to criminal theft. Plaintiff's must have right to possession, title, or ownership of the personal property to sue for conversion. [Gen. Motors Acceptance Corp. v. Dallas (1926) 198 Cal. 365, 370 (where conversion occurred after sale of automobile, buyer must either show certificate of ownership or actual possession to sue for conversion); Witkin § 705]  Generally, conversion is the wrongful exercise of dominion over the personal property of another. [De Vries v. Brumback (1960) 53 Cal. 2d 643, 647 (conversion is "an act of willful interference with personal property, done without lawful justification, by which any person entitled thereto is deprived of the use and possession of the personal property"); Steele v. Marsciano (1894) 102 Cal. 666, 669; 5 Witkin Summary of California Law Torts § 699 (10th ed. 2005)].  A person with a special interest with a right of possession can sue for conversion. [Dept. of Industrial Relations v. UI Video Stores (1997) 55 Cal. App. 4th 1084, 1095 (state agency with immediate right to possession of checks could sue for conversion); Witkin § 706] 3.

One can have ownership without possession.  An owner not in possession may also sue for conversion. [Reynolds v. Lerman (1956) 138 Cal. App. 2d 586, 596 (where debtor sued sheriff for

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

wrongful sale of debtor's attached property, debtor's conversion claim was valid because he was owner despite not having a right of immediate possession) Witkin § 707]   Property is a broad concept that includes "every intangible benefit and prerogative susceptible of possession or disposition[,]" conversion generally involves tangible personal property. [Witkin §§ 701, 702; See Downing v. Mun. Ct., 88 Cal.App.2d 345, 350 (1948).] 1/15/2010 5:04 PM (2K) [CA Conversion Law Chapter, 1.13.doc] 1.  Intangible versus tangible property: while conversion developed to remedy the wrongful taking of physical personal property, "virtually every jurisdiction … has disregarded this rigid limitation to some degree." Kremen v. Cohen, 337 F.3d 1024, 1030, 1031-33 (9th Cir. 2003)  Conversion applies to all types of personal property: conversion is "a remedy for the conversion of every species of personal property," [Payne v. Elliot, 54 Cal. 339, 341 (1880) (holding that shares in a corporation, money (or specifically payroll checks) is a possible conversion cause of action for a specific identifiable sum of money. [Haigler v. Donnelly (1941) 18 Cal. 2d 674, 681

To succeed Intentional interference is required: a conversion cause of action arises only from intentional acts causing substantial interference with an owner's property right. [Zaslow v. Kroenert (1946) 20 Cal. 2d 541, 550 (taking possession of and locking building, by itself, does not constitute interference without intent to convert possession); Enterprise Leasing Corp. v. Shugart Corp. (1991) 231 Cal. App. 3d 737, 748 (plaintiff need only show that he was entitled to possession at time of conversion; later recovery of property does not preclude conversion claim); Witkin § 708] 1. Interference must be substantial: "[w]here the conduct complained of does not

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

amount to a substantial interference with the possession of or the right thereto, but consists of the

intermeddling with or use of, or damages to the personal property[,]" no conversion exists. [Jordan

v. Talbot, 55 Cal.2d 597, 610 (1961) (citing Zaslow v. Cronert, 29 Cal.2d 541, 551 (1946))] ii.

Control may be sufficient: manual taking of the plaintiff's personal property is not required; any

wrongful assumption of control may constitute actual interference. [Gruber v. Pacific States

Savings & Loans Co. (1939) 13 Cal. 2d 144, 147 (landlord's refusal to permit tenant to remove

personal property amounted to conversion); Witkin § 709]

Even within the confines of the *Voris* holding by the California State Supreme Court, which is

broadly adverse to more traditional unpaid wages conversion claim, supports this claim due to an

identifiable, ownership interest, uncontested (i.e. checks in my name, social security number, etc.),

defined amount of money.  Public policy generally favors informal resolution of disputes, claims

for wages [especially uncontested wages] are in a special category. (Reid, supra, 55 Cal.2d at p.

207, 10 Cal.Rptr. 819, 359 P.2d 251.) "It has long been recognized that wages are not ordinary

debts, that they may be preferred over other claims, and that, because of the economic position of

the average worker and, in particular, his dependence on wages for the necessities of life for

himself and his family, it is essential to the public welfare that he receive his pay when it is due."

(In re Trombley (1948) 31 Cal.2d 801, 809–810, 193 P.2d 734.)  See Also Hermann v. Charles

Stratton, D.D.S., Inc., No. A095233, 2002 WL 193857, at *3 (Cal. Ct. App. Feb. 7, 2002)  This is

even more true with undisputed wages as they are immediately owed, and considered property of

the employee.  Some additional examples of conversion are wrongful withholding of plaintiff's

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

property. [Edwards v. Jenkins (1932) 214 Cal. 713, 720; Witkin § 712] 1/15/2010 5:04 PM (2K)

[CA Conversion Law Chapter, 1.13.doc] 5  Delivery of goods to the wrong person. [Byer v.

Canadian Bank of Commerce (1937) 8 Cal. 2d 297, 299; Witkin § 712] Intangible property

represented by physical document: possible conversion cause of action for improper use of

intangibles represented by documents, i.e., bonds, notes, stock certificates, negotiable instruments,

etc. [Acme Paper Co. v. Goffstein (1954) 125 Cal. App. 2d 175, 179 (conversion of check); Mears

v. Crocker First Nat'l Bank (1948) 84 Cal. App. 2d 637, 644 (conversion of stock share

certificate); Cal. Jur. § 12; Witkin § 702]


The *Robles* court combating the unconstitutional state conversion, or theft, of funds notes that "the

prompt payment of benefits is the ' "very essence" ' of the unemployment compensation insurance

program" (id. at p. 546), that "Robles had shown himself substantively eligible for the identified

benefits by attesting to his availability, and diligent search, for work" (id. at p. 552), and that

"EDD's chosen process in response to the Writ had utterly failed to result in the timely payment of

all of the benefits to which Robles was entitled" (ibid.), we held that the trial court properly ordered

the immediate payment of benefits without requiring Robles to jump any additional procedural

hurdles (ibid.). As a result, EDD paid the remaining amounts owed, resulting in Robles' total

recovery of $66,214.53." 'The fundamental purpose of California's Unemployment Insurance

Code is to reduce the hardship of unemployment . . . .'(Paratransit, Inc. v. Unemployment Ins.

Appeals Bd. (2014) 59 Cal. 4th 551, 558, fn. omitted; see § 100 [unemployment insurance system

created to provide benefits 'for persons unemployed through no fault of their own' and to reduce

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

'the suffering caused thereby'].)  Specifically, ' "[u]nemployment (and Disability) benefits provide

cash to a newly unemployed (and injured) worker 'at a time when otherwise he would have

nothing to spend,' serving to maintain the recipient at subsistence levels without the necessity of his

turning to welfare or private charity." ' " (Robles II, supra, 236 Cal.App.4th at pp. 545–546.)

As a consequence, we have stressed the societal importance of an unemployment insurance system

that promptly pays recipients all benefits due. (See Robles II, supra, 236 Cal.App.4th at pp.

545–546 at p. 546 [noting that "the prompt payment of benefits is the ' "very essence" ' of the

unemployment compensation insurance program"].)  We have also emphasized the need to

"liberally construe the Unemployment Insurance Code to advance the legislative objective of

reducing the hardship of unemployment." (Ibid.; Robles I, supra, 207 Cal.App.4th at p. 1034.)


Here Plaintiff::

   a.  Had Right to Ownership or Possess

      i.  Plaintiff in fact had the right to possess said property [money] including

undisputed wages, as signified by social security number, name George J.

Austin, and other unique identifiers of rightful legal ownership as well as

undisputed statutorily predefined (already processed) EDD benefit wages.

Organizational defendants demonstrated, and are demonstrating, in multiple

ways that they intended, and intend, to permanently deprive me of wages or

so delay them to cause irreparable harm. The Employer undisputed, but

converted, wages are in my name, under my social security number, and

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

with easily discoverable unique identifiers (i.e. check numbers/dates, etc.)
and the predetermined, and already processed benefit compensation has
already been entered into the system according to the Auditing and
Accounting Department, but have been delayed over three months already.
This has been compounded by lying, deceptive practices, unnecessary
stalling techniques and a variety of constitutional, and tortious violations.
When approached to solve the issue with employers they have lied
repeatedly of their existence, and refused to cancel previous, and resend
once Identified of their existence.  Plaintiff notified Defendant organizations
of non-receipt of wages, and compensation and possessed right of
ownership, or possession, as demonstrated in the above described
phenomena.

b.  Was Deprived of Right/Interests

i.  Defendant's disposition of property was in a manner inconsistent with
plaintiff's property rights.  Plaintiff was deprived of said rights by EDD
most immediately regarding predefined, verified, and processed, but delayed
compensation (to the point of violating due process under *Goldberg*, and
*Java).* Defendant Employers also did not properly notify of additional
wages, or of delivery, and then further exacerbated liability by not
correcting once Plaintiff discovered, and made formal inquiry, request, and
demand.  Organization lied repeatedly, in writing, showing intent, and

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

scienter, of their existence and further their intent to deprive. Defendants lost

a tremendous amount of credibility while continually denying even though

fairly easily ascertainable, discoverable contradicted, via subpoena (and

other investigative, truth/fact finding methods).  Communicated to each part

of the MVP Personnel, and its organization Balance Staffing, and Tesla, and

none corrected, nor provided a solution (and continued the knowing

dishonesty).  Pay, and Paystubs, clearly identified me as the owner of the

property via social security number, name including middle initial, George J.

Austin, address listed on my drivers license, etc.  In California wages

[especially undisputed] are owned by employees.  Was deprived of, and

substantially interfered with, interest in the property by the defendant's

unauthorized act.

c.   c) Suffered damages

    i.   Plaintiff suffered direct, and indirect, damages with an immediate and direct

known amount of approximately $25,000 and an unknown amount through

discovery that will help determine a full amount.  It is likely an even larger

direct amount of wages through fraudulent benefits, or incentives, paid to

persons who stole those wages, and filed, also in my name (i.e. worker's

compensation).  Those sums of money, stolen, or improperly converted,

shall also be included in the total direct damages (as Defendants at

minimum, aided and abetted, their theft (or conversion) if not directly stolen

George Jarvis (J).. Austin, esq. (TBA) 06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

that money themselves).  Undisputed stolen, or converted, wages already

have independently been verified through a Wage Affidavit, and

investigation, via an independent and reputable government agency.

## 6. Fraudulent Misrepresentation

Defendants, including EDD, made fraudulent misrepresentation to and about Plaintiff.  Tesla,

MVP, and Balance (broadly Defendants) collectively caused injury, and prevented subsequent

employment, and delayed/underpaid, benefit payments, by Fraudulent Misrepresentation, via EDD

Officials, Sandy Malloy (and other company officers, and representatives). Defendants did so

when Ms. Malloy spoke on all three entities behalf, after communicating, and "publishing", a lie

("that Plaintiff recorded a supervisor against California penal code; accusation of "a crime") with

other company officers.  Defendants via Sandy Malloy not only made fraudulent

misrepresentations in a decision making capacity, and with a failed duty to ascertain truth, and

present truth, but used those misrepresentation to wrongfully withhold wages, initiate negative

employment actions, ultimately wrongful termination, and prevent subsequent employment of

Plaintiff, (University of California, Berkeley Graduate (09'), Honors Student, Bay Area Housing

Commissioner, Alum, NAACP National Representative, and Local Youth and College President,

Alum, California Senate, Capital Fellows, Senate Fellows Top 10 out of 800+ Nationally Ranked,

Alum (13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08', 13'), T-14 Law

Student,  as well as others), and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

"To establish a claim for fraudulent misrepresentation, the plaintiff must prove: '(1) the defendant

represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the

defendant knew that the representation was false when the defendant made it, or the defendant

made the representation recklessly and without regard for its truth; (4) the defendant intended that

the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6)

the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a

substantial factor in causing that harm to the plaintiff.' " (Perlas v. GMAC Mortgage, LLC (2010)

187 Cal.App.4th 429, 434, 113 Cal.Rptr.3d 790 (Perlas )  See also Graham v. Bank of Am., N.A.,

226 Cal. App. 4th 594, 605–06, 172 Cal. Rptr. 3d 218, 228 (2014)


Here Defendants:

1) Misrepresented

    i)    There were a series of multiple misrepresentations, outright lies, and

        fraudulent claims intended to take, steal, and deprive Plaintiff (presented as

        fact).  EDD has said for over 16 weeks that full payment was on the way,

        way beyond the bounds of 'when due,' constitutional due process and

        misrepresented themselves and their process (even when personally

        guaranteed by their Auditing Dept.) Defendants conspired to deprive of

        wages, and make false claim, and misrepresentation, of recording a

        supervisor with intent to deprive of wages, job, and benefits.  A

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

fundamental lie, or misrepresentation, is that I recorded a supervisor (still unsure of context or full meaning, but all I have is the message).  Asked for clarity, and more information, in writing, none was provided. Another major misrepresentation/lie, was  that the second group of checks/wages did not exist, when they clearly were already made out in my name, with my social security number, and ready to be cashed/deposited.  Additionally, it appears Defendant EDD may have been engaged in further fraud by not only promising, on a recorded line, but not paying the constitutionally entitled compensation amount, but also appears EDD to have switched the name of the employers from the two previous, to his detriment when that wasn't the employer mentioned, or on his check stubs or other information submitted for verification.  Even, further when Plaintiff looked up the name it's an organization with 2 employees, located apparently in Fresno.  Plaintiff has never heard of that organization until that point and more importantly is concerned about the fraudulent misrepresentation (said explicitly was already complete, and another employee verified it should have been received weeks ago). Fraud omission and misrepresentation, as EDD did not include any additional information about waiting period or any other reason for unconstitutional due process delay of full pay.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

2)  Had Scienter, or Knowledge of falsity

    i)  In each example of misrepresentation/false statement the defendants knew, or easily could have inquired to find out, and instead were grossly negligent, but made the false statements anyway.  With defendant EDD for over 16 weeks, with internal checks and balance verifying the accuracy and authenticity, claiming to have already put in the adjustment it's clear they knew, and had scienter, of the falsity of their process, and follow up.  In the case of the checks, wages, not only did they deny their existence, when the official records (inside, and outside their company) say otherwise, but refused to offer any requested proof to show otherwise.  In the example of defamatory per se statements made resulting in negative employment action by employer, again, it was with knowledge, and reckless disregard.

3)  Intended to defraud/deceive

    i)  Employer's, and Defendant's, intended to defraud as evidenced not only in the initial false statements, but in their responses to legitimate inquiry. Defendant EDD has yet to make the adjustment as available in my account, and further after 16 weeks of promise, but no full payment it's clear of their intention (despite the personal assurances, and apologies, something is clearly wrong internally).  An honest mistake can often be corrected with honest recognition, and adjustment/correction as needed.  However, when the response is to further hide, retaliate, and deceive, it shows the true

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

motives of the party.  Here, each inquiry was received not with honesty, but with more attempts to deceive, and create obstacles to finding the truth, and correcting any missteps (intentional, or by omission), the defendants made.

4) Induced plaintiff's justifiable reliance

    i)   Defendant EDD has consistently promised to make the adjustment available in my account, and given their state authority Plaintiff had reason to justifiable rely on their words.  Plaintiff would have responded sooner, and taken action, but for the justified reliance in his employer's, and collectively defendant's, words, though shown to be deceitful, and fraudulent.  Because Defendant's, as Plaintiff's employer, owed a special duty of care, loyalty, and responsibility, plaintiff by law had a reasonably justifiable reliance on the words of Defendants.  Although those words ultimately proved false, when there was no reason to assume they were lying, ultimately fraudulent, Defendants had a duty as employer to present the truth, and Plaintiff had a reasonable and justifiable reliance on their words.  Defendants lied about stolen/withheld wages [some of which were non-disputed], opportunities, as well as others.  Defendant's also made fraudulent representations about the plaintiff, mentioned above as defamation per se, with the intent of depriving plaintiff of property, rights and opportunities he was entitled to.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

5)  resulting damage

      i)  Due to the misrepresentations by EDD, Employer, Plaintiff suffered a

      variety of damages of significant magnitude.

"[F]fraudulent intent is an issue for the trier of fact to decide." (Beckwith v. Dahl(2012) 205

Cal.App.4th 1039, 1061 [141 Cal.Rptr.3d 142].)  "[T]here are two causation elements in a fraud

cause of action.  First, the plaintiff's actual and justifiable reliance on the defendant's

misrepresentation must have caused him to take a detrimental course of action. Second, the

detrimental action taken by the plaintiff must have caused his alleged damage."(Beckwith, supra,

205 Cal.App.4th at p. 1062.  "[P]laintiffs argue that actual reliance cannot logically be an element

of a cause of action for deceit based on an omission because it is impossible to demonstrate reliance

on something that one was not told. In support of the argument, plaintiffs cite Affiliated Ute

Citizens v. United States, supra, 406 U.S.128 (Ute) . . . Interpreting Rule 10b-5, the high court held

that 'positive proof of reliance is not a prerequisite to recovery' in a case involving primarily a

failure to disclose . . . .' [¶] Contrary to plaintiffs' assertion, it is not logically impossible to prove

reliance on an omission.  One need only prove that, had the omitted information been disclosed,

one would have been aware of it and behaved differently." (Mirkin, supra, 5 Cal.4th at p. 1093.)

"The fact that a false statement may be obviously false to those who are trained and experienced

does not change its character, nor take away its power to deceive others less experienced. There is

no duty resting upon a citizen to suspect the honesty of those with whom he [or she] transacts

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

business. Laws are made to protect the trusting, as well as the suspicious. [T]he rule of caveat emptor should not be relied upon to reward fraud and deception." (Boschma,supra, 198 Cal.App.4th at p. 249, original italics.)

### 7. Fraudulent Concealment

Defendants fraudulently concealed material information from Plaintiff.  EDD, Tesla, MVP, and Balance (broadly Defendants) collectively caused injury, and prevented subsequent employment by Fraudulent Concealment.  Defendants collectively withheld, or lied directly, about vital information in a decision making capacity to wrongfully withhold wages, initiate negative employment actions, ultimately wrongful termination, and prevent subsequent employment of Plaintiff, (University of California, Berkeley Graduate (09'), Honors Student, Bay Area Housing Commissioner, Alum, NAACP National Representative, and Local Youth and College President, Alum, California Senate, Capital Fellows, Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and Anderson Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as well as others), and Attorney of Record, Mr. George Jarvis (J.) Austin, esq. (TBA)

The required elements for fraudulent concealment are: (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or

suppression of the fact. (*Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862,

870, 130 Cal.Rptr.3d 504 (*Bank of America Corp.*).)  See Graham v. Bank of Am., N.A., 226 Cal.

App. 4th 594, 606, 172 Cal. Rptr. 3d 218, 228 (2014)


There must usually be a duty to disclose arising from a fiduciary or confidential relationship

between the parties. Here the Defendant parties clearly had a fiduciary and other duties as

employers.  However, in transactions that do not involve fiduciary or confidential relations, a duty

to disclose material facts may arise in at least three instances: (1) the defendant makes

representations but does not disclose facts that materially qualify the facts disclosed, or that render

his disclosure likely to mislead(option 2); (2) the facts are known or accessible only to defendant,

and defendant knows they are not known to or reasonably discoverable by the plaintiff (option

3);(3) the defendant actively conceals discovery from the plaintiff (option 4). (SeeWarner Constr.

Corp. v. L.A. (1970) 2 Cal.3d 285, 294 [85 Cal. Rptr. 444, 466 P.2d996].) For the second, third,

and fourth options, if the defendant asserts that there was no relationship based on a transaction

giving rise to a duty to disclose, the jury should also be instructed to determine whether the

requisite relationship existed.(See Hoffman v. 162 North Wolfe LLC (2014) 228 Cal.App.4th

1178, 1187 [175Cal.Rptr.3d 820].)


"The elements of fraud, which give rise to the tort action for deceit, are (1)misrepresentation (false

representation, concealment or non-disclosure); (2)knowledge of falsity (or 'scienter'); (3) intent to

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." (Hackethal v.

National Casualty Co. (1987) 189 Cal.App.3d 1102, 1110 [234 Cal.Rptr. 853].)


Here Defendant Employers:


    A.  Concealed

                ii)     There were a series of multiple misrepresentations, outright lies, and

fraudulent claims intended to take, steal, and deprive Plaintiff.  EDD not

only misrepresented in terms of follow through, and timeliness, of severely

withheld, and underpaid wages, but actively concealed how long, or what

was wrong internally to create the current due process, constitutional, and

tortious violations.  Defendants further misrepresented and omitted info on

Wages, False Claim of recording with intent to steal wages, job, benefits.  a)

First lie, that I recorded a supervisor (still unsure of context or full meaning,

but all I have is the message).  Asked for clarity, and more information, in

writing, none was provided. b) Second misrepresentation/lie, second group

of checks/wages did not exist, yet have been proven to exist and likely used

by others not Plaintiff (discovery will uncover).  Additionally, it appears

Defendant EDD may have been engaged in further fraud by not only

promising, on a recorded line, but not paying the constitutionally entitled

compensation amount, but also appears EDD to have switched the name of

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

the employers from the two previous, to his detriment when that wasn't the employer mentioned, or on his check stubs or other information submitted for verification.  Even, further when Plaintiff looked up the name it's an organization with 2 employees, located apparently in Fresno.  Plaintiff has never heard of that organization until that point and more importantly is concerned about the fraudulent misrepresentation (said explicitly was already complete, and another employee verified it should have been received weeks ago). Fraud omission and misrepresentation, as EDD did not include any additional information about waiting period or any other reason for unconstitutional due process delay of full pay.

## B. Had Knowledge of Falsity

iii)     In each example of misrepresentation/false statement the employer knew, or easily could have inquired to find out, grossly negligent, but made the false statements anyway.  With defendant EDD for over 16 weeks, with internal checks and balance verifying the accuracy and authenticity, claiming to have already put in the adjustment it's clear they knew, and had scienter, of the falsity of their process, and follow up. In the case of the checks, wages, not only did they deny their existence, when the official records (inside, and outside their company) say otherwise, but refused to offer any requested

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

proof to show otherwise.  In the example of defamatory per se statements

made resulting in negative employment action by employer, again, it was

## C. Intent to Defraud

iv)  Employer's, and Defendant's, intended to defraud as evidenced not only in

the initial false statements, but in their responses to legitimate inquiry.

Defendant EDD has yet to make the adjustment as available in my account,

and further after 16 weeks of promise, but no full payment it's clear of their

intention (despite the personal assurances, and apologies, something is

clearly wrong internally).  An honest mistake can often be corrected with

honest recognition, and adjustment/correction as needed.  However, when

the response is to further hide, retaliate, and deceive, it shows the true

motives of the party.  Here, each inquiry was received not with honesty, but

with more attempts to deceive, and create obstacles to finding the truth, and

correcting any missteps (intentional, or by omission), the defendants made.

## D. Provide Justifiable Reliance

v)  Defendant EDD has consistently promised to make the adjustment available

in my account, and given their state authority Plaintiff had reason to

justifiable rely on their words.  Plaintiff would have responded sooner, and

taken action, but for the justified reliance on his employer's words, though

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

shown to be deceitful, and fraudulent.  Because, defendant's, as Plaintiff's

employer, owed a special duty of care, loyalty, and responsibility, plaintiff

by law had a reasonably justifiable reliance on the words, though

fraudulent, of defendants

E. Resulting damage

      vi)    Due to the omissions, concealments, and misrepresentations by EDD,

             Employers, and broadly Defendants Plaintiff suffered a variety of damages

             of significant magnitude.

"[T]he elements of an action for fraud and deceit based on a concealment are:(1) the defendant

must have concealed or suppressed a material fact, (2) the defendant must have been under a duty

to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or

suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware

of the fact and would not have acted as he did if he had known of the concealed or suppressed fact,

and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained

damage." (Boschma v. Home Loan Center,Inc. (2011) 198 Cal.App.4th 230, 248 [129 Cal.Rptr.3d

874].) "A duty to speak may arise in four ways: it may be directly imposed by statute or other

prescriptive law; it may be voluntarily assumed by contractual undertaking; it may arise as an

incident of a relationship between the defendant and the plaintiff; and it may arise as a result of

other conduct by the defendant that makes it wrongful for him to remain silent." (SCC

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Acquisitions, Inc. v. Central Pacific Bank (2012) 207 Cal.App.4th 859, 860 [143 Cal.Rptr.3d

711].)

"In transactions which do not involve fiduciary or confidential relations, a cause of action for

non-disclosure of material facts may arise in at least three instances: (1) the defendant makes

representations but does not disclose facts which materially qualify the facts disclosed, or which

render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and

defendant knows they are not known to or reasonably discoverable by the plaintiff; (3) the

defendant actively conceals discovery from the plaintiff."(Warner Construction Corp., supra, 2

Cal.3d at p. 294, footnotes omitted.)  "[O]ther than the first instance, in which there must be a

fiduciary relationship between the parties, 'the other three circumstances in which non-disclosure

may be actionable: presuppose the existence of some other relationship between the plaintiff and

defendant in which a duty to disclose can arise. . . . "[W]here material facts are known to one party

and not to the other, failure to disclose them is not actionable fraud unless there is some relationship

between the parties which gives rise to a duty to disclose such known facts." [Citation.]' A

relationship between the parties is present if there is 'some sort of transaction between the parties.

[Citations.] Thus, a duty to disclose may arise from the relationship between seller and buyer,

employer and prospective employee,doctor and patient, or parties entering into any kind of

contractual agreement.' "(Hoffman, supra, 228 Cal.App.4th at p. 1187, original italics, internal

citations omitted.)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

"Even if a fiduciary relationship is not involved, a non-disclosure claim arises when the defendant makes representations but fails to disclose additional facts which materially qualify the facts disclosed, or which render the disclosure likely to mislead." (Roddenberry v. Roddenberry (1996) 44 Cal.App.4th 634,666 [51 Cal.Rptr.2d 907], internal citations omitted.)  "'[T]he rule has long been settled in this state that although one may be under no duty to speak as to a matter, "if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all he must make a full and fair disclosure." ' " (Marketing West, Inc. v. Sanyo Fisher (USA) Corp. (1992) 6Cal.App.4th 603, 613 [7 Cal.Rptr.2d 859].)

"[F]raudulent intent is an issue for the trier of fact to decide." (Beckwith v. Dahl(2012) 205 Cal.App.4th 1039, 1061 [141 Cal.Rptr.3d 142].)  "[T]here are two causation elements in a fraud cause of action. First, the plaintiff's actual and justifiable reliance on the defendant's misrepresentation must have caused him to take a detrimental course of action. Second, the detrimental action taken by the plaintiff must have caused his alleged damage."(Beckwith, supra, 205 Cal.App.4th at p. 1062.  "[P]laintiffs argue that actual reliance cannot logically be an element of a cause of action for deceit based on an omission because it is impossible to demonstrate reliance on something that one was not told. In support of the argument, plaintiffs cite Affiliated Ute Citizens v. United States, supra, 406 U.S.128 (Ute) . . . Interpreting Rule 10b-5, the high court held that 'positive proof of reliance is not a prerequisite to recovery' in a case involving primarily a failure to disclose . . . .' [¶] Contrary to plaintiffs' assertion, it is not logically impossible to prove

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

reliance on an omission. One need only prove that, had the omitted information been disclosed,

one would have been aware of it and behaved differently." (Mirkin, supra, 5 Cal.4th at p. 1093.)

"The fact that a false statement may be obviously false to those who are trained and experienced

does not change its character, nor take away its power to deceive others less experienced. There is

no duty resting upon a citizen to suspect the honesty of those with whom he [or she] transacts

business. Laws are made to protect the trusting as well as the suspicious. [T]he rule of caveat

emptor should not be relied upon to reward fraud and deception." (Boschma,supra, 198

Cal.App.4th at p. 249.)

### 8.  Tortious Interference with economic and contractual relations

Defendants tortiously interfered with economic and contractual relations. Tesla, MVP, Balance and

other defendants collectively conspired to tortiously interfere with economic, present and future

contractual relations to the detriment of Plaintiff, (University of California, Berkeley Graduate

(09'), Honors Student, Bay Area Housing Commissioner, Alum, NAACP National

Representative, and Local Youth and College President, Alum, California Senate, Capital Fellows,

Senate Fellows Top 10 out of 800+ Nationally Ranked, Alum (13'), UCLA Law, and Anderson

Riordan MBA Fellows, Alum (08', 13'), T-14 Law Student,  as well as others),and Attorney of

Record, Mr. George Jarvis (J.) Austin, esq. (TBA)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

"The tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." (North American Chemical Co. v. Superior Court (1997) 59Cal.App.4th 764, 786 [69 Cal.Rptr.2d 466].)

The fundamental elements are the similar for prospective, contract, and economic or business relations as well as existing contracts.  Thus, I'll combine into one claim for Tortious interference with current contractual relations as well as prospective contract and business, (or economic) relations as that combination most aptly fits the fact pattern. I had a current contract with all three organizational defendants, but was on the verge of entering into new contractual and economic/business relations directly with Tesla outside of the intermediaries prior to Tortious interference.

Here Plaintiff, in establishing the claims of tortious interference with a) existing, b) prospective, contratual and economic relations shows:

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

a. Were in an existing contract:

    i. Plaintiffs and Defendants (including EDD) were in an existing contract as evidence by work relationships, payroll, and IDs/Badges.

b. Was on the verge of new, and improved contract(s)

    i. Plaintiffs and Defendants were on the verge of new, and improved contracts, particularly directly with Defendant Company, Tesla as I had been commended via multiple persons in leadership, and responsibility and told directly by a Vice President of the company I should already be in a higher position (based on performance, experience, character, education, skill, etc.).  Plaintiff is also on the verge of new contracts with health care providers to adequately address Plaintiff's long term and serious injuries.

c. Was on the verge of new, and improved economic/business relationship

    i. Plaintiff and Defendants, particularly Tesla, were on the verge of economic and business relationship that likely would have resulted in a future economic benefit to plaintiff particularly in the area of stock ownership, and other incentive based benefits. I had been commended via multiple persons in leadership, and responsibility and told directly by a Vice President of the company I should already be in a higher position (based on performance, experience, character, education, skill, etc.).  Multiple areas of incentive pay (including individual stock ownership contracts) are part of the variety of incentive based pay throughout the company.  Plaintiff is also on the verge

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

of new contracts with health care providers to adequately address Plaintiff's

long term and serious injuries, so that hopefully Plaintiff can heal fully and

be ready to take advantage of opportunities presented (although given the

current process of healing likely won't be ready until after 2021.

d.  Defendant knew or should have known of these existing and prospective

contractual, business, and economic relationships;

   i.  Defendants, including EDD, have been kept in the loop and knew of

   contracts and business relationships both prospective, and existing.  In fact,

   each helped to ensure that it was clear which organization was responsible

   for which aspect of the contract and business relation.  The explicit goal was

   to work for the company, as stated repeatedly throughout the entire Tesla

   training, and development process (as well as all of the other incentives like

   stock ownership contracts, or the equivalents).

e.  Defendant knew or should have known that this relationship would be disrupted if

they failed to act with reasonable care;

   i.  Defendants, especially EDD given their statutory and constitutional

   mandates, absolutely knew that the relationship should be handled with

   care, and would be disrupted from their tortious behavior.  Further, that is

   explicitly what they advised (handle with care) prior to, and after hiring, yet

   failed to act with reasonable care (at best grossly negligent, or reckless, at

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

worse with malice and ill-will).  Due to Defendants reckless disregard in terms of Labor Code, and Tortitous violations (including Defamation Per Se and subsequent negative employment actions), plaintiff business and economic relationship were disrupted.

f.  Defendant failed to act with reasonable care;

    i.  Defendants (including EDD) absolutely failed to act with reasonable care and were at best grossly negligent or reckless, but still unconstitutional (violating 'when due' and due process) and worse intentionally ill 'will'ed by not asking or following up on basic duties, requests, or inquiries on issues required by law.

g.  Defendants engaged in wrongful conduct through breach of contract,misrepresentation, fraud, violation of the Constitution,Federal and State statutes including whistleblower protections.

    i.  Defendants not only failed to act with reasonable care, but affirmatively misrepresented, violated statute, and fraud.

h.  That the relationship was disrupted;

    i.  The relationship was severely disrupted by Defendant tortious, and reckless, at best, behavior, which is a substantial factor, for the disruption, and with fundamental questions, inquiries, and demands still unmet including [undisputed wages].

i.  Plaintiff was harmed;

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

      i.     Plaintiff was harmed by the tortious interference resulting in negative

employment action and ultimately, discharge. See *Judicial Council of*

*California Civil Jury Instructions* See also 1 Witkin, Summary of Cal. Law

(10th ed. 2005) Contracts.  Plaintiff, George J. Austin, incurred multiple

damages due to breach of contract including lost wages, opportunities,

incentives, bonuses, automobiles,and other opportunities, and forms of

wages to be more fully and accurately determined through the discovery

process.


"The elements which a plaintiff must plead to state the cause of action for intentional interference

with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's

knowledge of this contract;(3) defendant's intentional acts designed to induce a breach or

disruption of the contractual relationship; (4) actual breach or disruption of the contractual

relationship; and (5) resulting damage." (Pacific Gas & Electric Co. v. BearStearns & Co. (1990)

50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587],internal citations omitted.)  This tort is

sometimes called intentional interference with performance of a contract.  See Little v. Amber

Hotel Co. (2011) 202 Cal.App.4th 280, 291 [136Cal.Rptr.3d 97.  [A] cause of action for

intentional interference with contract requires an underlying enforceable contract. Where there is

no existing, enforceable contract, only a claim for interference with prospective advantage may be

pleaded." PMC, Inc. v. Saban Entertainment, Inc. (1996) 45 Cal.App.4th 579,601 [52 Cal.Rptr.2d

877].  Because interference with an existing contract receives greater solicitude thandoes

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

interference with prospective economic advantage, it is not necessary that the defendant's conduct

be wrongful apart from the interference with the contract itself." Quelimane Co. v. Stewart Title

Guaranty Co. (1998) 19 Cal.4th26, 55 [77 Cal.Rptr.2d 709, 960 P.2d 513], internal citations

omitted.


"Specific intent is not a required element of the tort of interference with prospective economic

advantage. While plaintiff may satisfy the intent requirement by pleading specific intent, i.e.,that

the defendant desired to interfere with the plaintiff's prospective economic advantage, a plaintiff

may alternately plead that the defendant knew that the interference was certain or substantially

certain to occur as a result of its action." Korea Supply Co. v. Lockheed Martin Corp. (2003) 29

Cal.4th 1134,1154 [131 Cal.Rptr.2d 29, 63 P.3d 937], original italics.  We caution that although we

find the intent requirement to be the same for the torts of intentional interference with contract and

intentional interference with prospective economic advantage, these torts remain distinct." Korea

SupplyCo., supra, 29 Cal.4th at p. 1157  "Plaintiff need not allege an actual or inevitable breach of

contract in order to state a claim for disruption of contractual relations. We have recognized that

interference with the plaintiff's performance may give rise to a claim for interference with

contractual relations if the plaintiff's performance is made more costly or more burdensome. Other

cases have pointed out that while the tort of inducing breach of contract requires proof of a breach,

the cause of action for interference with contractual relations is distinct and requires only proof of

interference."  Pacific Gas & Electric Co., supra, 50 Cal.3d at p. 1129, internal citations omitted.

What's required is showing that because of the disruption, the plaintiff suffered economic harm.

George Jarvis (J).. Austin, esq. (TBA) 06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Youst v. Longo (1987) 43 Cal.3d 64. See also California Civil Jury Instructions (CACI) 2202.

Intentional Interference With Prospective Economic Relations.


An essential element of intentional interference is an existing business relationship. It does not need

to be a contractual relationship. But prior business dealings are required. Roth v. Rhodes (1994) 25

Cal.App.4th 530. "[I]nterference with an at-will contract is actionable interference with the

contractual relationship, on the theory that a contract 'at the will of the parties,respectively, does not

make it one at the will of others.' " Pacific Gas &Electric Co., supra, 50 Cal.3d at p. 1127, internal

citations and quotations omitted.


To recover for intentional interference with prospective economic relations, the plaintiff must show

that if not for the defendant's wrongful interference, the plaintiff would have been reasonably

certain of obtaining an economic advantage. Youst v. Longo (1987) 43 Cal.3d 64.  The defendant

knew that disruption of the relationship was certain or substantially certain to occur as a result of

his or her actions.  Korea Supply Co., endnote 7; Ramona Manor Convalescent Hospital v. Care

Enterprises (1986) 177 Cal.App.3d 1120The usual measure of the lost economic advantage is "lost

profits." Lost profits do not need not be calculated with mathematical precision. But there must be

a reasonable basis for computing the loss.  Sargon Enterprises, Inc. v. University of Southern

California (2012) 55 Cal.4th 747; Meister v. Mensinger (2014) 230 Cal.App.4th 381. See also

CACI 3903N. Lost Profits (Economic Damage).  In some cases, the plaintiff may be able to

introduce evidence of profits made by similar businesses, or persons, under similar conditions.

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

Della Penna v. Toyota Motor Sales, U.S.A., Inc. (1995) 11 Cal.4th 376.  Competition is not fair

and reasonable if it is independently wrongful — that is, in some way other than just disrupting the

plaintiff's business.  Sargon Enterprises, Inc. v. University of Southern California (2012) 55

Cal.4th 747; Meister v. Mensinger (2014) 230 Cal.App.4th 381. See also CACI 3903N. Lost

Profits (Economic Damage).


An act is independently wrongful if it violates a statute or is otherwise prohibited by a determinable

legal standard.  San Jose Construction, Inc. v. S.B.C.C., Inc. (2007) 155 Cal.App.4th 1528.  Other

common wrongful actions for purposes of intentional interference claims include (but are not

limited to): Acts or threats of violence, Defamation, Extortion, Fraud / misrepresentation, Fraud is a

wrongful act that is prohibited by California law. California Civil Code 1709.  California law

allows a plaintiff to recover punitive damages when the defendant has acted with "malice, fraud or

oppression."California Civil Code 3294.  By definition, "malice" includes conduct which is

intended by a defendant to cause injury to the plaintiff.  California Civil Code 3294(c).  The

interference must have been wrongful "by some measure beyond the fact of the interference itself."

Della Penna v. Toyota Motor Sales, USA, Inc., 11 Cal.4th 376, 393 (1995).  Claim does not

require proof of a written contract, and can be asserted in situations where the statute of frauds

would otherwise require one.  Buckaloo v. Johnson, 14 Cal.3d 815, 824 (1975).


The element for Tortious Interference with Existing Contract are  a) A contract existed between the

plaintiff and a third party, b) The defendant knew about the contract, c) The defendant engaged in

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

conduct that prevented or hindered performance of the contract, d) The defendant intended this

result, or knew it was likely, e) This harmed the plaintiff; and f) The defendant's conduct

substantially caused this harm.  See Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal.3d

1118 (1990).  Regarding element 3, the interfering conduct must be wrongful by some legal

measure other than the fact of the interference itself. (Della Penna v. Toyota MotorSales, U.S.A.,

Inc. (1995) 11 Cal.4th 376, 393 [45 Cal.Rptr.2d 436, 902 P.2d 740].)  This conduct must fall

outside the privilege of fair competition. (PMC, Inc. v.Saban Entertainment, Inc. (1996) 45

Cal.App.4th 579, 603 [52 Cal.Rptr.2d 877], disapproved on other grounds in Korea Supply Co. v.

Lockheed Martin Corp.(2003) 29 Cal.4th 1134, 1159 fn. 11 [131 Cal.Rptr.2d 29, 63 P.3d 937].)

Whether the conduct alleged qualifies as wrongful if proven or falls within the privilege of fair

competition is resolved by the court as a matter of law. If the court lets the case go to trial, the jury's

role is not to determine wrongfulness, but simply to findwhether or not the defendant engaged in

the conduct. If the conduct is tortious, the judge should instruct on the elements of the tort.


"The tort of intentional or negligent interference with prospective economic advantage imposes

liability for improper methods of disrupting or diverting the business relationship of another which

fall outside the boundaries of fair competition." (Settimo Associates v. Environ Systems, Inc.

(1993) 14Cal.App.4th 842, 845 [17 Cal.Rptr.2d 757], internal citation omitted.)  "The tort of

interference with prospective economic advantage protects the same interest in stable economic

relationships as does the tort of interference with contract, though interference with prospective

advantage does not require proof of a legally binding contract. The chief practical distinction

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

between interference with contract and interference with prospective economic advantage is that a

broader range of privilege to interfere is recognized when the relationship or economic advantage

interfered with is only prospective." (PacificGas & Electric Co. v. Bear Stearns & Co. (1990) 50

Cal.3d 1118, 1126 [270Cal.Rptr. 1, 791 P.2d 587], internal citations omitted.)  "The five elements

for intentional interference with prospective economic advantage are: (1) [a]n economic

relationship between the plaintiff and some third party, with the probability of future economic

benefit to the plaintiff; (2)the defendant's knowledge of the relationship; (3) intentional acts on the

part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship;

and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." (Youst v.

Longo (1987) 43 Cal.3d 64, 71, fn. 6 [233Cal.Rptr. 294, 729 P.2d 728].)


"The question is whether a plaintiff must plead and prove that the defendant engaged in wrongful

acts with the specific intent of interfering with the plaintiff's business expectancy. We conclude that

specific intent is not a required element of the tort of interference with prospective economic

advantage. While plaintiff may satisfy the intent requirement by pleading specific intent, i.e.,that

the defendant desired to interfere with the plaintiff's prospective economic advantage, a plaintiff

may alternately plead that the defendant knew that the interference was certain or substantially

certain to occur as a result of its action." (Korea Supply Co., supra, 29 Cal.4th at p. 1154, original

italics.)  "[A] plaintiff seeking to recover for an alleged interference with prospective contractual or

economic relations must plead and prove as part of its case-in-chief that the defendant not only

knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

some legal measures other than the fact of interference itself." (Della Penna,supra, 11 Cal.4th at

p.393.)

"With respect to the third element, a plaintiff must show that the defendant engaged in an

independently wrongful act. It is not necessary to prove that the defendant acted with the specific

intent, or purpose, of disrupting the plaintiff's prospective economic advantage. Instead, 'it is

sufficient for the plaintiff to plead that the defendant "[knew] that the interference is certain or

substantially certain to occur as a result of his action." ' '[A]n act is independently wrongful if it is

unlawful, that is, if it is proscribed by some constitutional, statutory,regulatory, common law, or

other determinable legal standard.' '[A]n act must be wrongful by some legal measure, rather than

merely a product of animproper, but lawful, purpose or motive.' " (San Jose Construction, Inc.

v.S.B.C.C., Inc. (2007) 155 Cal.App.4th 1528, 1544–1545 [67 Cal.Rptr.3d 54],internal citations

omitted.)  "Della Penna did not specify what sort of conduct would qualify as 'wrongful apart from

the interference itself." Limandri v. Judkins (1997) 52 Cal.App.4th326, 340 [60 Cal.Rptr.2d 539].)


"Justice Mosk's concurring opinion in Della Penna advocates that proscribed conduct be limited to

means that are independently tortious or a restraint of trade. The Oregon Supreme Court suggests

that conduct may be wrongful if it violates 'a statute or other regulation, or a recognized rule of

common law, or perhaps an established standard of a trade or profession.' . . . Our SupremeCourt

may later have occasion to clarify the meaning of 'wrongful conduct' or wrongfulness,' or it may

be that a precise definition proves impossible." (ArntzContracting Co. v. St. Paul Fire and Marine

Insurance Co. (1996) 47Cal.App.4th 464, 477–478 [54 Cal.Rptr.2d 888], internal citations

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

omitted.)  "Commonly included among improper means are actions which are independently

actionable, violations of federal or state law or unethical business practices, e.g., violence,

misrepresentation, unfounded litigation, defamation,trade libel or trade mark infringement." (PMC,

Inc., supra, 45 Cal.App.4th at p.603, internal citation omitted.)  "[A] plaintiff need not allege the

interference and a second act independent of the interference. Instead, a plaintiff must plead and

prove that the conduct alleged to constitute the interference was independently wrongful, i.e.,

unlawful for reasons other than that it interfered with a prospective economic

advantage.[Citations.]" (Crown Imports, LLC v. Superior Court (2014) 223 Cal.App.4th1395,

1404 [168 Cal.Rptr.3d 228].)


"The question has arisen as to whether, in order to be actionable as interference with prospective

economic advantage, the interfering act must be independently wrongful as to the plaintiff. It need

not be. There is 'no sound reason for requiring that a defendant's wrongful actions must be directed

towards the plaintiff seeking to recover for this tort. The interfering party is liable to the

interfered-with party [even] "when the independently tortious means the interfering party uses are

independently tortious only as to a third party." ' "(Crown Imports LLC,supra, 223 Cal.App.4th at

p. 1405, original italics.)  "[O]ur focus for determining the wrongfulness of those intentional acts

should be on the defendant's objective conduct, and evidence of motive or other subjective states

of mind is relevant only to illuminating the nature of that conduct." (Arntz Contracting Co., supra,

47 Cal.App.4th at p. 477.)  "[A]n essential element of the tort of intentional interference with

prospective business advantage is the existence of a business relationship with which the tortfeasor

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

interfered. Although this need not be a contractual relationship, an existing relationship is

required." (Roth v. Rhodes (1994) 25 Cal.App.4th 530, 546 [30 Cal.Rptr.2d 706], internal citations

omitted.)   "If a party has no liability in tort for refusing to perform an existing contract,no matter

what the reason, he or she certainly should not have to bear a burden in tort for refusing to enter

into a contract where he or she has no obligation to do so. If that same party cannot conspire with a

third party to breach or interfere with his or her own contract then certainly the result should be no

different where the 'conspiracy' is to disrupt a relationship which has not even risen to the dignity

of an existing contract and the party to that relationship was entirely free to 'disrupt' it on his or her

own without legal restraint or penalty."(Kasparian v. County of Los Angeles (1995) 38

Cal.App.4th 242, 266 [45Cal.Rptr.2d 90], original italics.)   "Although varying language has been

used to express this threshold requirement, the cases generally agree it must be reasonably probable

that the prospective economic advantage would have been realized but for defendant's

interference." (Youst, supra, 43 Cal.3d at p. 71, internal citations omitted.)   "[I]n the absence of

other evidence, timing alone may be sufficient to prove causation . . . . Thus, . . . the real issue is

whether, in the circumstances of the case, the proximity of the alleged cause and effect tends to

demonstrate some relevant connection. If it does, then the issue is one for the fact finder to decide."

(Overhill Farms, Inc. v. Lopez (2010) 190 Cal.App.4th 1248, 1267[119 Cal.Rptr.3d 127], original

italics.)

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

## Conclusion

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and Local Rule 231, Plaintiff

George J. Austin, esq. (TBA), hereby applies to this Court for Injunctive Relief.  The form of

injunctive relief requested is an immediate financial temporary restraining order ("TRO"), and

thereafter Preliminary Injunction for compelling specific Organizational performance, and

immediate payment of past due amounts of owed payments to apply to defendants (and specifically

the Organizational Defendant Employment Development Department [EDD] (tallying at least

[$10,000+] in past due).  Injunctive relief is required to prevent further irreparable injury, and

violations of Section 303(a)(1) of the Social Security Act, 49 Stat. 626, as amended, 42 U.S.C.

503(a)(1), CA Labor Code Section 212, Unemployment Insurance Code Section 1329.5, Labor

Code Section 206, and the holdings Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d

287 (1970) as well as California Department of Human Resources Development et al., Appellants,

v. Judith JAVA ,402 U.S. 121 (91 S.Ct. 1347, 28 L.Ed.2d 666), Plaintiff requests a TRO, and

subsequent preliminary injunction.   According to Section 303(a)(1) of the Social Security Act, 49

Stat. 626, as amended, 42 U.S.C. 503(a)(1), provides that benefits must be paid 'when due.'

According to the Court in California Department of Human Services v. Java The practice of

withholding and delaying is in violation of constitutional and statutory grounds... [and] constitutes

a denial of procedural due process.  See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25

L.Ed.2d 287 (1970).  See also CALIFORNIA DEPARTMENT OF HUMAN RESOURCES

DEVELOPMENT et al., Appellants, v. Judith JAVA et al.,402 U.S. 121 (91 S.Ct. 1347, 28

George Jarvis (J).. Austin, esq. (TBA)  06/06/20.
Austin v. Tesla, et. al. Case # 3:20-cv-00800
P.O. Box 1832 Oakland, CA 94604, or alternatively
240 E. Channel St. #431 Stockton, CA 95202

L.Ed.2d 666).   The Court in JAVA, further <u>held</u> that a median <u>seven-week delay</u> in payments

(which includes underpayments) to claimants who have been found eligible for benefits,

<u>constituted a failure to pay unemployment, or disability, compensation 'when due'</u> within the

meaning of § 303(a)(1) of the Social Security Act. The Court granted appellees' motion for a

preliminary injunction, ordering the State of California to pay benefits.   Similarly, a violation

occurs when, already certified and, artificially held, due to improper computation, utilization of the

incorrect earnings quarter, <u>for over 16 weeks </u> without any reason to delay, is an absolute violation

of Civil Rights, Due Process, and other statutory and constitutional rights.   This is not only a

violation of "when due," according to the Social Security Act, but fundamentally due process, too,

as the Supreme Court ruled.  As payments from EDD in accord with the policy intention of the

service, and especially given the target audience [i.e. those injured and unable to work], should be

made as soon as possible in the public interest, and in accord with policy goals.   Therefore,

Plaintiff therefore seeks a (TRO) Temporarily Restraining Order, and Preliminary Injunction (PI) to

prevent the further unjust deprivation of Plaintiff's rights, fraud, and withholding of funds (another

form of Wage Theft, and underlying causes of action for this suit).  Pursuant to Fed. R. Civ. P.

65(b) and Local Civil Rule 231, Plaintiff shall make every reasonable effort to provide actual

notice to Defendants as of the time of making this application, and shall provide copies of all

pleadings and papers filed in this action to date.   Thus, Plaintiff respectfully requests that this

Court grant this motion for injunctive relief.