Print this Verdict

# $167 million record verdict for wrongful termination of surgical aide at Catholic hospital. Sacramento County.

## Summary
Physician's assistant in surgical unit says hospital ignored her repeated written complaints about verbal sexual harassment by doctors, lax safety practices and meal-and-rest breaks.

## The Case
**Case Name:** Ani Chopourian v. Catholic Healthcare West d.b.a. Mercy General Hospital and Mercy General Hospital
**Court and Case Number:** U.S. District Court, Eastern District, Sacramento/ 2:09-CV-02972-KJM-KJN
**Date of Verdict or Judgment:** Tuesday, February 28, 2012
**Type of Action:** Defamation (/jury-verdicts/category/defamation/), Employment (/jury-verdicts/category/employment/), Sexual Harassment (/jury-verdicts/category/sexual-harassment/)
**Judge or Arbitrator(s):** Hon. Kimberly J. Mueller
**Plaintiffs:**
Ani Chopourian, 45, cardiac surgical physician assistant
**Defendants:**
Catholic Healthcare West, Mercy General Hospital
**Type of Result:** Jury Verdict

## The Result
**Gross Verdict or Award:** $167,720,488
**Economic Damages:**
$3,720,488
**Non-Economic Damages:**
$39,000,000
**Punitive Damages:**
$125,000,000
**Trial or Arbitration Time:** 11 days
**Jury Deliberation Time:** 3 days
**Jury Polls:** 12-0

## The Attorneys
**Attorney for the Plaintiff:**
Bohm Law Group by Lawrance A. Bohm, Sacramento
Law Office of Erika M. Gaspar by Erika M. Gaspar, Sacramento
Law Offices of Gregory R. Davenport by Gregory R. Davenport, Stockton
**Attorney for the Defendant:**
La Follette, Johnson, De Haas, Fesler & Ames by Judith "Julie" C. Martin, Mary E Greene and David Ditora, Sacramento

## The Experts
**Plaintiff's Technical Experts:**
Charles Mahla, Ph.D., economics, Sacramento
**Defendant's Technical Experts:**
Aaron Abbott, Ph.D., jury consulting
David Moore, forensic document examination, Fair Oaks

## Facts and Background
**Facts and Background:**

Plaintiff worked as a Cardiac Surgery Physician Assistant in the Cardio-Vascular Operation Department of defendant's Mercy General and Mercy San Juan Hospitals in Sacramento. Plaintiff worked for the hospital from August 2006 until her termination on August 7, 2008. Plaintiff was a high school valedictorian, and holds an undergraduate degree from UCLA, a Masters of Architecture from UCLA, and a Masters of Medical Science from Yale University Medical School, Physician Associate program.Please show claims, contentions and all disputed matters under contentions rather than facts. Facts stated here should be only those in evidence.

**Plaintiff's Contentions:**

During her employment and on a daily basis, plaintiff endured sexually inappropriate behavior in and out of the operative suite. Outside of surgery, male coworkers made repeated unwelcome and crude sexual advances and propositions. Vulgarity, obscene facial gestures, buttocks slapping, objectification of women and trash talk were daily occurrences, frequently in front of or involving managers of the department. During open heart surgery in the operative suite, unwelcome sexual behavior was a daily occurrence for a prominent heart surgeon whose daily salutation was "I'm horny." In addition to detailed reports concerning lack of sex with his wife, this heart surgeon regularly discussed his sexual adoration of coworkers and pop stars. Witnesses confirmed a Harvard-educated heart surgeon also made frequent inappropriate references to women's breasts and had a particularly misogynist attitude concerning females including pop star Rihanna, who according to this Harvard surgeon, "got what she deserved" after she was brutally beaten by pop star Chris Brown. According to witnesses, the assistant surgeon spoke frequently of his sexual exploits and affinity for prostitutes. Other medical staff members made frequent sexually inappropriate jokes and comments, sometimes, when patients were "crashing" during surgery.

During her two year employment in cardiac surgery, plaintiff submitted 18 written complaints concerning patient safety, employee safety, abuse of women and hospital conditions. She reported distinct factual circumstances including failure to provide an assistant surgeon (Title XXII Cal. Reg. Requirement), unnecessary vein harvest, unnecessary broken ribs, torn veins, torn heart, needle stick, dropped radial artery, intimidation, humiliation and other verbally abusive treatment, in particular by a heart surgeon educated at the prestigious Columbia University. In addition, plaintiff complained about the failure to provide sufficient meal breaks and rest breaks in violation of state law. Plaintiff's final complaint was stamped received by the human resources department less than one week prior to her termination.

Performance write-ups, internal email, and notes created by management provided the basis for internal publication of false facts concerning plaintiff's work performance and professional abilities. Because of these false statements, plaintiff was unable to find work for nearly a year, at which time she began employment with Radiological Associates of Sacramento (RAS) providing gynecological surgery assistance in various hospitals, including the CHW's Mercy San Juan Hospital. Plaintiff worked for RAS for eight months until her employment ended when hospital privileges were denied by CHW's privileging committee. Immediately after plaintiff produced evidence in support of her case during the discovery phase, hospital leadership decided that her efforts to preserve evidence supported a denial of privileges. No member of the privileging review committee was aware or informed of the exception to medical privacy violation for whistleblowers provided under federal medical privacy law. The denial of plaintiff's privileges was the first time in hospital history that a physician assistant has had a privileging application denied. Since denial of her privileging and the loss of her position at RAS, plaintiff has not received an interview despite her prestigious educational background and excellent clinical performance.

**Defendant's Contentions:**

No harassment occurred and all appropriate remedial measures were taken to prevent harassment.

Defendant only received some of plaintiff's written complaints. Moreover, defendant contended plaintiff was actually terminated for not being a team player in that she slept in the break room, insisted on lunch breaks, showed up late for work and failed to report while on-call the weekend after submitting her final written complaint.

# Injuries and Other Damages

Plaintiff claimed severe emotional distress before and after her termination of employment. The severe emotional distress caused significant and appreciable interference with her enjoyment of life, including sleep disorder, nightmares, digestive problems, depression, anxiety, and premature menopause.

# Additional Notes
**The Rest of the Story**

The jury unanimously decided Choupourian was subject to a hostile work environment, retaliation for protected workplace complaints, defamation and intentional interference with economic advantage. The jury found 368 meal period violations, 200 rest period violations

and provided a finding that failure to provide breaks was willful.

**Verdict breakdown in detail:**

Sexual Harassment: Total - $41,250,000
Compensatory Damages: $10,000,000
Punitive Damages: $31,250,000

Title VII Retaliation: Total - $14,970,488
Past Wages: $549,360
Future Lost Wages: $3,181,128
Compensatory Damage: $5,000,000
Punitive Damage: $6,250,000

Wrongful Termination in Violation of Public Policy: Total - $42,970,488
Past Wages: $549,360
Future Lost Wages: $3,181,128
Compensatory Damages: $8,000,000
Punitive Damage: $31,250,000

Retaliation for Report Regarding Patient Safety (Health & Safety Code 1278.5): Total -$36,970,488
Past Wages: $549,360
Future Lost Wages: $3,181,128
Compensatory Damages: $2,000,000
Punitive Damages: $31,250,000

Intentional Interference with Economic Advantage: Total - $17,970,488
Past Wages: $549,360
Future Lost Wages: $3,181,128
Compensatory Damages: $8,000,000
Punitive Damage: $6,250,000

Defamation: Total - $24,750,000
Compensatory Damages: $6,000,000
Punitive Damages: $18,750,000

Tweet          **Like** 3

(http://www.jvamvlert.com/) (http://www.jvideoApp.com/)

**Print this Verdict**

## Disclaimer

This is not an official court document. While the publisher believes the information to be accurate, the publisher does not guarantee it and the reader is advised not to rely upon it without consulting the official court documents or the attorneys of record in this matter who are listed above.

© Copyright 2020 by Neubauer & Associates, Inc. All rights reserved. www.juryverdictalert.com