Always free. Subscribe

 News   Election 2020   Politics   Education   Housing   Immigration   Criminal Justice   Silicon

 FAIRWARNING

# 'We're Being Robbed': Wage Theft in California Often Goes Unpunished by State

▶ **LISTEN**  3 min

By Eli Wolfe
FairWarning    Oct 16, 2019

   



Prep chefs in the kitchen at Yank Sing dim sum restaurant in San Francisco's Financial District, where workers won a $4 million wage theft settlement in 2014. *(Vinnee Tong/KQED)*

In February, when California labor officials announced the biggest wage theft case against a private company in state history, they included a warning for all bosses:

"Stealing earned wages from workers' pockets is illegal in California and this case shows that employers who steal from their workers will end up paying for it in the end," Julie Su, head of the state's Labor and Workforce Development Agency, said in a press release announcing nearly $12 million in citations against RDV Construction, Inc.

RDV has appealed the penalties.

But her message didn't include a timeline for when RDV will pay; nor do any of the other announcements from the Labor Commissioner's Office about wage theft citations. There's good reason for this: In many cases, it takes years before workers receive even a portion of the money they're owed. Sometimes they receive nothing at all.

**'Once you get to a point where nothing is going your way and you have no money to pay [bills], that's when it gets to you and you feel like, what am I going to do now?'**
—Jose Herrera

Last week, Gov. Gavin Newsom signed a series of worker protection bills, including Assembly Bill 51, which bans forced arbitration, a business practice commonly used by employers to prevent workers from suing them for sexual harassment, discrimination or wage theft. Another new law extends the amount of time employees have to file civil rights complaints against their employers.

"We're being robbed," said Georgina Hernandez, a janitorial worker whose former employer was cited for multiple wage violations in 2014 and ordered to pay workers over $1.7 million. Five years later, Hernandez and dozens of other employees haven't received a dime, according to labor organizers.

Wage theft — a term that covers various types of pay violations — occurs with alarming frequency in California. Many employers, large and small, shortchange their workers by not paying them the minimum wage or required overtime, making improper deductions or refusing to pay them altogether. According to the U.S. Department of Labor, minimum wage violations in California alone occur approximately 372,000 times each week.

Low-income workers (those paid less than $14.35 per hour in 2017), who make up about a third of California's workforce, are especially vulnerable, and can suffer severe hardship when

shorted on their pay. Every year, tens of millions of dollars are siphoned from workers like Hernandez, who clean restaurants, pick fruit, wait tables, repair cars, stock warehouses, sew clothes and care for the sick and elderly.

Risking retaliation, many workers seek help from the government. In California, the U.S. Department of Labor's Wage and Hour Division enforces federal pay rules. But to add muscle to its efforts, the state Labor Commissioner's Office runs a parallel enforcement program. It allows workers to pursue unpaid wages through hearings, where administrative officers award or reject their claims.

In the majority of cases — roughly 80% — employers pay at least a portion of the claim before any judgment can be issued, said Matthew Sirolly, an attorney with the Labor Commissioner's Office.

But when workers don't reach a settlement, they rarely get their money. A landmark study of California wage claims between 2008 and 2011 found that just 17% of workers who won a Labor Commission judgment received even some of their pay. To avoid paying up, many of these employers shuttered their companies or hid assets, leaving workers nothing.

"Some person of authority — a judge or an administrative hearing officer — says this particular employer has broken the law and owes you money for your wages. But all it means is you get a piece of paper that they don't have to pay," said Matthew DeCarolis, an attorney at Bet Tzedek, a nonprofit legal aid firm in Los Angeles.

The press releases suggesting victories for underpaid workers do not hint at the years-long struggles that may lie ahead. For this story, FairWarning conducted more than 20 interviews and reviewed hundreds of pages of documents obtained under the California Public Records Act and from court files, to determine the actual outcome of these cases. In some instances, workers ultimately got nothing or, years later, are still waiting.



Jose Herrera is owed over $200,000 by his former employer, the transportation firm XPO Logistics. Herrera, who is unemployed and fighting cancer, said he's barely getting by on his social security income. *(Eli Wolfe/FairWarning)*

Take the seemingly endless saga of American Airporter Shuttle Inc. In April 2012, a van driver named Bin Wu filed an administrative claim with the Labor Commissioner that accused the San Francisco-based shuttle business of numerous violations.

Wu testified that he usually worked 13-hour days, and that the company asked him to work through meal breaks. He also wasn't allowed to refuse assignments, but the shuttle firm classified him as an independent contractor, which would exempt them from wage regulations.

According to his testimony, Wu didn't understand his contractor agreement because he received a copy in English, even though he speaks only Mandarin Chinese. Five other drivers subsequently filed similar claims.

In 2013, following an investigation, the Labor Commissioner issued citations to American Airporter and its owner, Phillip Achilles, saying the they illegally misclassified its drivers as contractors. The company appealed, a new hearing was held, and in May 2016 an administrative officer affirmed the citations.

What happened next highlights the lengths some employers will go to fight citations, and the difficulty of recovering stolen wages through the legal system.

On June 16, 2016, after the state Labor Commissioner affirmed American Airporter's citations, the company contested the findings in San Francisco Superior Court. But for the next two years, Achilles did nothing to advance his plea. In court briefs, the Labor Commissioner asserted that he had instead worked secretly to hide his assets. FairWarning

was unable to reach Achilles. An attorney who represents the drivers declined to speak on record.

In October 2017, the Labor Commissioner discovered that Achilles was trying to sell a building he owned in downtown San Francisco. The state moved to put a lien on his commercial property, allegedly worth over $5 million, but Achilles transferred the building to a shell company, rendering himself insolvent, according to court records. The Labor Commissioner sued Achilles to undo the allegedly fraudulent transfer.

In January 2019, nearly seven years after Bin Wu filed his wage claim, the Labor Commissioner and Achilles finally agreed to sit down for mediation and, according to court records, hammered out a settlement in February.



Hilaria Corral's former employer, Spirit Airport Services, was cited for wage violations in 2014. The company left California without paying her back wages. *(Photo courtesy of Corral)*

But it was short-lived: In May, the Labor Commissioner accused Achilles of breaching their agreement. A trial date has been set for Dec. 16, but Matthew Sirolly, the Labor Commissioner

attorney, said it's unlikely the case will reach this stage because the agency has asked the court to enforce a sheriff's sale of Achilles' real estate.

But, he noted, the legal system can move at a "glacial" pace, which means an immediate sale of the property is unlikely. Sirolly said the hope is for a sale by early 2020.

Even in less extreme cases, hurdles for underpaid workers remain high. They need to identify their employer's bank account or real property, which can be difficult if the information on their pay stubs is missing or incorrect. Some bosses close their companies and reopen under different names. In 50% of cases where the Labor Commissioner found that an employer owed wages, the employer sold, transferred or abandoned their business before the judgment was even delivered, according to a joint study by the UCLA Labor Center and National Employment Law Project.

"It really is a structural problem within these industries where it's really difficult to be able to collect those wages," said Jennifer Lin, of the employment law project.

In May 2014, the Labor Commissioner announced citations over $1.5 million against two janitorial companies in Southern California — NLP Janitorial and Coast to Coast West — for failing to pay their workers minimum wage or overtime.

Georgina Hernandez, one of the former employees, told FairWarning that she worked 12-hour days cleaning movie theaters and restaurants without overtime or breaks. She said she and her coworkers finally went to the Labor Commissioner after her boss laid them off without paying for their last month of work.

The loss of a month's pay had life-altering consequences for Hernandez.

Speaking through a translator, she explained that she lost her apartment and spent two days sleeping on the street before finding a place to stay. For a while, she said, she couldn't afford to feed her daughter. Others were in similar straits — at one point, Hernandez shared $10 with a former co-worker who couldn't afford basic necessities like milk or tortillas.

**RELATED COVERAGE**

**Immigrants Win Back Stolen Wages, But Few May Report Violations During Pandemic**

**Replacement Marriott Workers Say They Weren't Paid, File Wage Theft Claims**

**Activists Demand a Bill of Rights for California Farmworkers**

Following the citations, NLP and Coast to Coast negotiated with state labor officials and agreed to pay a settlement to their former workers. But before paying up, both companies shut down and the owners disappeared, according to an organizer with the Maintenance Cooperation Trust Fund, an advocacy group for janitorial employees, that assisted the workers with their wage claims.

The Labor Commissioner got a court order to stop both companies from operating in California as long as they had unpaid judgments, Sirolly said. But NLP and Coast to Coast escaped the state's jurisdiction by moving to Texas.

Sirolly said the office reached out to its counterpart in Texas to enforce the judgments, only to learn that the Texas was struggling to collect its own wage claims against the companies. He added that it's unlikely payments will ever be made to workers in either state.

A similar thing happened to Southern California custodial worker Hilaria Corral. In 2014, the Labor Commissioner cited her employer, Spirit Airport Services, for failing to pay overtime and minimum wage.

Corral said she had expected it would take time to get her back wages—perhaps as long as a year. But the company left California without paying anything to Corral, according to an organizer with the Maintenance Cooperation Trust Fund.

"[I've] suffered greatly," Corral said through a translator, adding that she's worried something like this will happen to her again.

If enforcing wage claims against fly-by-night operators is difficult, it's equally hard against powerful companies with seemingly limitless resources to stall wage theft cases.

In April 2017, a Los Angeles County truck driver named Jose Herrera won an award of nearly $280,000 from his employer XPO Logistics Inc., a multinational transportation and logistics company headquartered in Greenwich, Connecticut, that reported more than $17 billion in revenue last year.

Herrera had filed a claim in March 2016 with the Labor Commissioner that accused XPO of misclassifying him as an independent contractor. Today, Herrera's judgment remains just a piece of paper. For the past two years, XPO has fought the judgment in an appeal that is still pending in Long Beach Superior Court.

XPO did not respond to requests for comment.

Julie Dickinson, an attorney who has represented XPO workers in a different wage case, said the transportation company's active wage and hour liability, both from private litigation and state claims, is estimated at over $185 million. With a hefty litigation budget, she said, XPO can fight these battles for years.

"The delays are astronomical," Dickinson said.

In Herrera's case, the delay is potentially life threatening. In 2018, he was diagnosed with prostate cancer. In quick succession, he lost his job and his health insurance. Even though he's owed more than $200,000, according to court records, Herrera said he has to live on a small social security income that leaves him with about $200 each month after he pays for his housing.

"It's really bad," Herrera said. "Now that I'm not working and don't have any income coming in, it's hard because I have to watch everything I spend, everything I eat." In September, a Long Beach Superior Court affirmed the Labor Commissioner's 2017 decision. XPO is expected to appeal the ruling.

Manuel Martinez, a driver who works for XPO, spent seven years fighting the company for unpaid wages. After winning a settlement for a confidential sum earlier this year, Martinez visited family in Guatemala, taking his first vacation in five years.

Martinez said he was stunned to find that while he was away, XPO deducted hundreds of dollars for insurance, gas and administrative costs as if he had been working.

"[I] felt absolutely frustrated because I had made so little on that paycheck," Martinez said through a translator. Martinez added that he had to dip into his settlement money to pay for maintenance to his truck, and he fears that he'll ultimately have to file for bankruptcy.

Sponsored

"[I] thought the company was going to make a change — [I] thought they were going to stop," he said. "But at this point they're doing it again, and it feels like XPO's treatment is a laugh in the face of justice."

There are some signs that post-judgment collections are improving in California. Last year, the Bureau of Field Enforcement recovered nearly $10.5 million in unpaid wage judgments — more than double the previous year. Tia Koonse, a staff attorney with the UCLA Labor Center, said Julie Su, who served as Labor Commissioner office from 2011 through 2018, improved enforcement by focusing on investigations of California's underground economy and strengthening partnerships with community groups.

Su was tapped earlier this year by Gov. Gavin Newsom to head the California Labor and Workforce Development Agency. The Labor Commissioner's Office refused FairWarning's request to interview Lilia Garcia-Brower, Su's replacement.

A recent law, SB 588, gives the agency new powers to collect post-judgment money. According to Sirolly, the agency has also started to sue companies to prevent fraudulent transfers and bankruptcies designed to hide their assets. In Los Angeles, a pilot program to help day laborers file a measure known as a mechanics' lien boasts a nearly 100% collection rate, he added.

Meanwhile, the parade of news releases from the Labor Commissioner's Office continues to announce its citations and the big dollars attached: $631,000 against a Daly City residential care facility in July; over$2.36 million against a Culver City car wash in April.

Sirolly said the office has done a lot of work to hold these sorts of employers accountable. But this isn't much comfort to a worker like Jose Herrera, who says he sometimes wakes up in the night wondering if he'll ever see a nickel of his wages.

"Once you get to a point where nothing is going your way and you have no money to pay [bills], that's when it gets to you and you feel like 'what am I going to do now?' "

*This story* was produced by *FairWarning*, a nonprofit news organization based in Southern California that focuses on public health, consumer, workplace and environmental issues.

## KQED

### Stay in touch. Sign up for our daily newsletter.

Enter your email    Sign Up

Copyright © 2020 KQED Inc. All Rights Reserved.

Terms of Service   Privacy Policy   Contact Us



TV                News              Donate
Radio             Science           Help Center

| | | |
|---|---|---|
| Podcasts | Arts & Culture | About |
| Events | | Careers |
| For Educators | | Corporate Sponsorship |
| | | Contact Us |

  

Copyright © 2020 KQED Inc. All Rights Reserved.

Terms of Service   Privacy Policy

Contest Rules   FCC Public Files