(https://www.nelp.org)

Menu

𝐟 (https://www.facebook.com/NationalEmploymentLawProject)

(https://twitter.com/NelpNews)
(https://www.instagram.com/nationalemploymentlawproject/)

Search...

Search...

Publications (https://www.nelp.org/publications/)
Campaigns (https://www.nelp.org/campaigns/)
Experts (https://www.nelp.org/experts/)
About (https://www.nelp.org/about-us/)
Board of Directors (https://www.nelp.org/about-us/board-of-directors/)
Issues (https://www.nelp.org/about-us/issues/)
Annual Reports (https://www.nelp.org/about-us/our-impact/)
Media Inquiries (https://www.nelp.org/about-us/press-inquiries/)
Staff (https://www.nelp.org/about-us/staff/)
Work With Us (https://www.nelp.org/about-us/work-with-us/)
News (https://www.nelp.org/newsroom/)
Contact Us (https://www.nelp.org/contact/)

June 24, 2019

## EXPOSING WAGE THEFT WITHOUT FEAR



Tweet 🐦 | Share 𝖿 | Email ✉

(https://twitter.com/intent/tweet? (https://www.facebook.com/sharer.php?
text=Exposing%20Wage%20Theft%20... u=https%3A%2F%2Fwww.nelp.org%2F...
wage-theft-   wage-theft-   wage%20workers%20face%20an%20e...
without-   without-   term%20economic%20security%2C%...
fear%2F)   fear%2F)   wage%20workers%2C%20will%20hav...
   imposed%20fine.%0A%0A%0A%0AN...
   abiding%20businesses%20benefit%2...
   wage%20jobs.%20Part%20II%20place...
   immigrant%20climate%20that%20our...

retaliation%20or%20%E2%80%9Cwh
level%20retaliation%20protection%2

# Exposing Wage Theft Without Fear: States Must Protect Workers from Retaliation

> **DOWNLOAD REPORT (HTTPS://S27147.PCDN.CO/WP-CONTENT/UPLOADS/RETAL-REPORT-6-26-19.PDF)**

## INTRODUCTION

**Around the country, workers who speak up about workplace violations often face a significant risk of retaliation by their employer.** Yet our laws generally place the burden on workers to come forward and report violations, either through complaints filed with enforcement agencies or through lawsuits filed in state or federal court. Government investigations or audits of employers are relatively rare. Retaliation is therefore one of the most pressing and persistent challenges to effective enforcement of our workplace laws—workers should not fear that their employer will punish them for asserting their rights. **Ultimately, any law intending to protect workers' rights must protect workers from retaliation in order to make that law a reality.**

### Why Do Workers Experience Retaliation?

- Workers in the U.S. generally bear the burden of enforcing their own labor protections—it is up to them to come forward to report violations.

- When a worker comes forward to report a workplace violation, we know that employers often retaliate or threaten to retaliate against the worker.

- ·Under our current system, workers bear the entire risk of retaliation from their employer when they report violations.

### What Does Retaliation Look Like?

- Retaliation takes many shapes and can be difficult to pinpoint or prove. Employers, for example, may fire a worker, demote a worker, reduce a worker's

hours, change worker's schedule to a less favorable one, subject a worker to new forms of harassment, unfairly discipline a worker, threaten to report a worker or a worker's family member to immigration authorities, and much more.

## What Does Retaliation Cost Workers?

- When workers experience retaliation for trying to protect their rights, the costs can quickly escalate from both a financial and emotional standpoint, especially for the countless workers nationwide who live paycheck to paycheck. A worker may experience lost pay, for example, which can quickly lead to missed payments, lower credit scores, eviction, repossession of a car or other property, suspension of a license, inability to pay child support or taxes, attorney's fees and costs, stress, trauma, and more.

**Low-wage workers face an especially high risk of retaliation along with potentially more devastating consequences.** On a daily basis, workers who want to assert their basic rights risk not only their job and income, but also their long-term economic security, trauma, their ability to remain with their families and communities when immigration status is an issue, and more.

Any retaliation protection law must provide adequate compensation to workers who suffer retaliation while effectively deterring employers from retaliating in the first place. **This report explains that a retaliation protection law must, at a minimum, contain four basic elements:**

- A right to **monetary damages** for workers who suffer retaliation in addition to lost pay.

- A right for workers who prevail in their retaliation case to recover **attorney's fees and costs** so that workers, especially low-wage workers, will have a better chance of finding attorneys who will represent them when they experience retaliation.

- A right to bring a retaliation complaint to a government agency *and* go directly to court.

- A government-imposed fine.

NELP's analysis of retaliation or "whistleblower" protection laws for workers who seek to exercise their wage and hour rights (i.e., minimum wage and overtime) reveals that only six states, including the District of Columbia, can claim to incorporate all

four of these basic elements. Thus, **the vast majority of workers around the country live in states that fail to provide the most essential mechanisms for legal protection when it comes to retaliation in the wage and hour context.** Even in the six states that arguably include the most essential mechanisms, NELP's interviews with practitioners reveal that retaliation remains a persistent challenge requiring bolder protections and collaboration among advocates, agencies, and workers.

**Policymakers and worker advocates must take stock of the current retaliation protection landscape and identify opportunities to build a better support system for workers.** While the analysis of state laws presented here focuses on laws in the minimum wage context, the stark absence of strong protections nationwide in that space very likely reflects similar gaps when it comes to other workplace protections, such as employment discrimination and harassment, health and safety, and paid sick leave.

**Everyone benefits from effective enforcement of our labor standards and effective protection from retaliation.** Workers first and foremost stand to benefit from increased compliance and a greater sense of security on the job. Law-abiding businesses benefit by not having to compete with employers who cut corners by violating labor laws and retaliating against workers who try to hold them accountable.

**As long as our labor standards almost exclusively place the burden of enforcement and employer accountability on workers themselves, our laws must ensure that workers who come forward to report violations can access swift and meaningful remedies and penalties when an employer retaliates, while also effectively deterring retaliation.**

**Part I** of this report provides an overview of the research confirming the prevalence of retaliation and fear of retaliation in the American workplace, especially in low-wage jobs. **Part II** places the problem of retaliation in the context of a changing economy and an intensifying anti-immigrant climate that urgently call for better retaliation protection laws around the country. **Part III** outlines the patchwork of federal, state, and local laws that govern retaliation against workers. **Part IV** discusses the four elements that NELP considers critical for any anti-retaliation or "whistleblower" law aiming to both compensate workers and effectively deter retaliation. Finally, **Part V** breaks down NELP's analysis of state-level retaliation protection laws in the minimum wage context to illustrate how the vast majority of states fail to provide even the most basic mechanisms for protection and deterrence. This part also aims to help policymakers and advocates evaluate how their state compares to others.



 **DOWNLOAD (HTTPS://S27147.PCDN.CO/WP-CONTENT/UPLOADS/RETAL-REPORT-6-26-19.PDF)** 

## ENDNOTES

[1] *See* Charlotte S. Alexander, *Anticipatory Retaliation, Threats, and the Silencing of the Brown Collar Workforce*, 50 Am. Bus. L.J. 779 (2013).

[2] *Id.* at 779 (citing Human Rights Watch, Unfair Advantage: Workers' Freedom of Association in The United States Under International Human Rights Standards (2000)).

[3] *See, e.g.*, Charlotte S. Alexander & Arthi Prasad, *Bottom-Up Workplace Law Enforcement: An Empirical Analysis*, 89 Ind. L.J. 1069, 1098–99 (2014) ("Thus, the results reported in Part III support our contention that the bottom-up workplace law enforcement regime may be failing the very workers who most need protection. Workers do not simply progress up the workplace dispute pyramid through consecutive phases of naming, blaming, claiming, and resolution. Instead, our analysis of the Unregulated Work Survey data suggests that workers are shunted off the pyramid, at a minimum, at the naming and claiming stages. We contend that this drop-off occurs because low-wage, front-line workers often lack the legal knowledge and incentives needed for bottom-up workplace law enforcement. Compounding this problem, claiming incentives and legal knowledge are distributed unevenly among workers. As our analysis suggests, the least politically, economically, and socially powerful and secure workers were the least likely to make claims, the most likely to experience retaliation, and the least likely to have accurate substantive and procedural legal knowledge: women, workers without legal immigration

status, and workers with low education levels."); Deborah L. Brake, *Retaliation*, 90 Minn. L. Rev. 18, 40 (2005) ("The fear of retaliation is particularly debilitating for persons with low-institutional power across multiple dimensions. For example, women who are especially isolated and tokens in their jobs, women in nontraditional employment, and women who are especially vulnerable in their jobs are more likely to be silenced by the threat or fear of retaliation. . . . As the perpetrator's power increases relative to the target, reporting discrimination is less likely to lead to a positive outcome for the target. The potential for retaliation increases as the power disparity widens between a low-status target and a higher-status perpetrator.") (citations omitted); Charlotte S. Alexander, *Anticipatory Retaliation, Threats, and the Silencing of the Brown Collar Workforce*, 50 Am. Bus. L.J. 779, 785 (2013) ("[E]mployers may be particularly likely to engage in anticipatory retaliation against what has come to be called the 'brown collar' workforce: low-wage, often undocumented, immigrant workers.") (citation omitted).

[4] Annette Bernhardt et al., Broken Laws, Unprotected Workers: Violations of Employment and Labor Laws in America's Cities 2, 20 (2009), https://www.nelp.org/wp-content/uploads/2015/03/BrokenLawsReport2009.pdf (https://s27147.pcdn.co/wp-content/uploads/2015/03/BrokenLawsReport2009.pdf).

[5] *Id.* at 5.

[6] *Id.*

[7] *Id.* at 9. Women were significantly more likely than men to experience minimum wage violations at a rate of 30 percent versus 20 percent for men. *Id.* at 42. Latina women workers experienced minimum wage violations at a rate of 40 percent (versus 24 percent for their male counterparts), and African American workers "had a violation rate three times that of white workers." *Id.* at 43. Foreign-born workers experienced minimum wage violations at almost twice the rate of their U.S.-born counterparts. *Id.* at 42.

[8] *Id.* at 3.

[9] *Id.*

[10] *Id.*

[11] Raise the Floor Alliance & National Economic & Social Rights Initiative, challenging the business of fear 11 (2016), https://www.nesri.org/sites/default/files/Business_of_Fear_WEB.pdf (https://www.nesri.org/sites/default/files/Business_of_Fear_WEB.pdf). Of the 275 surveys collected, 29 surveys "were excluded from the study because the worker was employed outside the State of Illinois or the location of employment could not be identified." *Id.* at 5.

[12] *Id.* at 13.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 12.

[16] Alabama Appleseed & Southern Poverty Law Center, Unsafe At These Speeds: Alabama's Poultry Industry and its Disposable Workers 5 (2013), https://www.splcenter.org/sites/default/files/Unsafe_at_These_Speeds_web.pdf (https://www.splcenter.org/sites/default/files/Unsafe_at_These_Speeds_web.pdf).

[17] *Id.* at 16.

[18] *Id.*

[19] *Id.*

[20] *Id.* at 22.

[21] Alexander & Prasad, *supra* note 3, at 1087 n.72 (citing Deborah L. Brake, *Retaliation*, 90 Minn. L. Rev. 18 (2005)).

[22] Brake, *supra* note 3, at 38 (citations omitted).

[23] To support this statement, Brake cites, for example, to a study "describing the results of a study of state employees finding that 62 percent of the women who reported sexual harassment experienced retaliation, with the most assertive responses often triggering the harshest response." *Id.* at n.59 (citing Louise F. Fitzgerald et al. *Why Didn't She Just Report Him? The Psychological and Legal Implications of Women's Responses to Sexual Harassment*, 51 J. Soc. Issues 117, 122 (1995)). Another study cited by Brake described "the results of [a] study on women who filed sex discrimination complaints against their employer with the Wisconsin Equal Rights Division, finding that 40 percent of the women reported experiencing retaliation. *Id.* (citing Janet P. Near & Tamila C. Jensen, *The Whistleblowing Process: Retaliation and Perceived Effectiveness*, 10 Work & Occupations 3, 17 (1983)).

[24] Ethics Resource Center, Retaliation: When Whistleblowers Become Victims (A Supplemental Report of the 2011 National Business Ethics Survey) 2 (2012), http://jpp.whs.mil/Public/docs/03_Topic-Areas/06-Retaliation/20150410/06_ERC_RetaliationWhenWhistleblowersBecomeVictims.pdf (http://jpp.whs.mil/Public/docs/03_Topic-Areas/06-Retaliation/20150410/06_ERC_RetaliationWhenWhistleblowersBecomeVictims.pdf); Alexander & Prasad, *supra* note 3, at 1100.

[25] *Id.*

[26] *Id.* The Ethics Resource Center report shows that in 2011, 22 percent of American workers who reported misconduct experienced retaliation, compared to 15 percent in 2009 and compared to 12 percent in 2007. *Id.* at 5. The report also showed that between 2007 and 2012, "there [was] an 83 percent increase in the rate of retaliation, but reporting [] only increased by 12 percent." *Id.*

[27] Eileen Appelbaum & Ruth Milkman, Leaves That Pay: Employer and Worker Experiences with Paid Family Leave in California 1, 2, 3, 28 (2011), http://cepr.net/documents/publications/paid-family-leave-1-2011.pdf (http://cepr.net/documents/publications/paid-family-leave-1-2011.pdf).

[28] A NELP 2014 report describes common outsourcing arrangements in more detail. These include outsourcing when an employer misclassifies workers by converting all of its employees to "independent contractors" "franchisees," or "limited liability corporations." Catherine Ruckelshaus et al., Nat'l Emp. L. Project, Who's the Boss: Restoring Accountability for Labor Standards in Outsourced Work 7 (2014), https://www.nelp.org/wp-content/uploads/2015/02/Whos-the-Boss-Restoring-Accountability-Labor-Standards-Outsourced-Work-Report.pdf (https://s27147.pcdn.co/wp-content/uploads/2015/02/Whos-the-Boss-Restoring-Accountability-Labor-Standards-Outsourced-Work-Report.pdf) [hereinafter Who's the Boss]. Some employers rely on intermediaries, such as temp or staffing agencies to serve as the apparent "employer" even though workers hired through these intermediaries are not truly temporary workers. *Id.* at 7– 8. In some industries, there exist "multiple layers of contractors, with the first-tier contractor operating as a broker that secures contracts and then contracts with a second tier of sometimes undercapitalized subcontractors." *Id.* at 8.

[29] *See* David Weil, Boston University, Improving Workplace Conditions Through Strategic Enforcement: A Report to the Wage and Hour Division (2010), https://www.dol.gov/whd/resources/strategicenforcement.pdf (https://www.dol.gov/whd/resources/strategicenforcement.pdf).

[30] Ruckelshaus et al., *supra* note 28, at 1 (Executive Summary).

[31] "Nationally, nearly 90 percent of fast-food workers surveyed in early 2014 reported some sort of wage theft on the job." *Id.* at 11 (citation omitted).

[32] According to NELP's Who's the Boss report, workers in the home care industry experience minimum wage violations at a rate of 17.5 percent and overtime violations at a rate of 82.7 percent. *Id.* at 14.

[33] Claire Prestel, *A Win For Workers! Employer Can't Mislead and Coerce Employees With Unpaid Overtime Claims*, Pub. Just. (Apr. 8, 2013), https://www.publicjustice.net/blogwin-workers-employer-cant-mislead-and-coerce-employees-with-unpaid-overtime-claims/ (https://www.publicjustice.net/blogwin-workers-employer-cant-mislead-and-coerce-employees-with-unpaid-overtime-claims/).

[34] *See, e.g.*, Center for Law and Social Policy et al., Tackling Unstable And Unpredictable Work Schedules 2 (2014), https://www.clasp.org/sites/default/files/public/resources-and-publications/publication-1/Tackling-Unstable-and-Unpredictable-Work-Schedules-3-7-2014-FINAL-1.pdf (https://www.clasp.org/sites/default/files/public/resources-and-publications/publication-1/Tackling-Unstable-and-Unpredictable-Work-Schedules-3-7-2014-FINAL-1.pdf); Heather Boushey & Bridget Ansel, Washington Center for Equitable Growth, Working by the hour: The economic consequences of unpredictable scheduling practices 5 (2016), http://equitablegrowth.org/wp-content/uploads/2016/09/090716-unpred-sched-practices.pdf (http://equitablegrowth.org/wp-content/uploads/2016/09/090716-unpred-

sched-practices.pdf); Janelle Jones, *Working People Deserve Schedules That Work*, Econ. Pol'y Inst.: Working Econ. Blog (June 20, 2017), https://www.epi.org/blog/working-people-deserve-schedules-that-work/ (https://www.epi.org/blog/working-people-deserve-schedules-that-work/).

[35] *See, e.g.*, Boushey & Ansel, *supra* note 34, at 1–2.

[36] Jones, *supra* note 34.

[37] Maria Sacchetti, *ICE Raids Meatpacking Plant in Rural Tennessee; 97 Immigrants Arrested*, Wash. Post (Apr. 6, 2018), https://www.washingtonpost.com/local/immigration/ice-raids-meatpacking-plant-in-rural-tennessee-more-than-95-immigrants-arrested/2018/04/06/4955a79a-39a6-11e8-8fd2-49fe3c675a89_story.html?utm_term=.70bcdef36c51 (https://www.washingtonpost.com/local/immigration/ice-raids-meatpacking-plant-in-rural-tennessee-more-than-95-immigrants-arrested/2018/04/06/4955a79a-39a6-11e8-8fd2-49fe3c675a89_story.html?utm_term=.70bcdef36c51).

[38] Hamed Aleaziz, *Workplace Arrests Have Soared As The Trump Administration Steps Up Immigration Enforcement*, BuzzFeed News (July 24, 2018, 4:39 PM), https://www.buzzfeednews.com/article/hamedaleaziz/workplace-arrests-trump-enforcement-ice (https://www.buzzfeednews.com/article/hamedaleaziz/workplace-arrests-trump-enforcement-ice).

[39] Andrew Khouri, *More Workers Say Their Bosses Are Threatening to Have Them Deported*, L.A. Times (Jan. 2, 2018), https://www.latimes.com/business/la-fi-immigration-retaliation-20180102-story.html (https://www.latimes.com/business/la-fi-immigration-retaliation-20180102-story.html).

[40] *Id.*

[41] Marshall Steinbaum, The Roosevelt Institute, A Missing Link: The Role of Antitrust Law In Rectifying Employer Power In Our High-Profit, Low-Wage Economy 4 (2018), http://rooseveltinstitute.org/wp-content/uploads/2018/04/Monopsony-issue-brief.pdf (http://rooseveltinstitute.org/wp-content/uploads/2018/04/Monopsony-issue-brief.pdf).

[42] Orly Lobel, *Companies Compete but Won't Let Their Workers Do the Same*, N.Y. Times (May 4, 2017), https://www.nytimes.com/2017/05/04/opinion/noncompete-agreements-workers.html (https://www.nytimes.com/2017/05/04/opinion/noncompete-agreements-workers.html).

[43] *See, e.g.*, *id.*; Marshall Steinbaum *supra* note 41, at 4–5; Sophie Quinton, *These Days, Even Janitors Are Being Required to Sign Non-Compete Clauses*, USA Today (May 27, 2017), https://www.usatoday.com/story/money/2017/05/27/noncompete-clauses-jobs-workplace/348384001/ (https://www.usatoday.com/story/money/2017/05/27/noncompete-clauses-jobs-workplace/348384001/).

[44] *See, e.g.*, Hailey Mensik, *Illinois, 10 Other States Take Aim at 'No-Poaching' Clauses That Critics Say Limit Fast-Food Workers' Pay*, Chi. Trib. (July 9, 2018), https://www.chicagotribune.com/business/ct-biz-fast-food-non-compete-investigation-20180709-story.html (https://www.chicagotribune.com/business/ct-biz-fast-food-non-compete-investigation-20180709-story.html).

[45] 29 U.S.C. § 660(c) (2019) (Occupational Safety and Health Act); 18 U.S.C. § 1514A

92019) (Sarbanes-Oxley Act); *see also* Channah S. Broyde, U.S. Department of Labor, Solicitor's Office – Region IV, Whistleblower Protection Enforcement: A View From The United States Department of Labor (Aug. 2014), https://www.americanbar.org/content/dam/aba/events/labor_law/am/2014/3b_broyde.pdf (https://www.americanbar.org/content/dam/aba/events/labor_law/am/2014/3b_broyde.pdf).

[46] 29 U.S.C. § 215(a)(3) (2019) (making it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee").

[47] 29 U.S.C. § 216(b) (2019).

[48] *See, e.g.*, Carol Abdelmesseh & Deanne M. DiBlasi, *Why Punitive Damages Should Be Awarded for Retaliatory Discharge Under the Fair Labor Standards Act*, 21 Hofstra Lab. & Emp. L.J. 715, 716 (2004).

[49] See *infra* Part V.

[50]Nat'l Emp. L. Project, Winning Wage Justice: Talking Points on the Need for Stronger Anti-Wage Theft Laws 3 (2012), https://www.nelp.org/wp-content/uploads/2015/03/WinningWageJusticeTalkingPoints.pdf (https://s27147.pcdn.co/wp-content/uploads/2015/03/WinningWageJusticeTalkingPoints.pdf) [hereinafter Winning Wage Justice] (citing David Weil & Amanda Pyles, *Why Complain? Complaints, Compliance and the Problem of Enforcement in the U.S. Workplace*, 27 Comp. Lab. L. & Pol'y J. 59, 62 (2005)).

[51] *Employee Rights*, Nat'l Labor Relations Bd., https://www.nlrb.gov/rights-we-protect/rights/employee-rights (https://www.nlrb.gov/rights-we-protect/rights/employee-rights) (last visited Mar. 13, 2019).

[52] *Id.*

[53] *See, e.g.*, *Discriminating Against Employees Because of Their Union Activities or Sympathies* (Section 8(a)(3)), Nat'l Labor Relations Bd., https://www.nlrb.gov/rights-we-protect/whats-law/employers/discriminating-against-employees-because-their-union (https://www.nlrb.gov/rights-we-protect/whats-law/employers/discriminating-against-employees-because-their-union) (last visited Mar. 13, 2019); *Interfering With Employee Rights (Section 7 & 8(a)(1))*, Nat'l Labor Relations Bd., https://www.nlrb.gov/rights-we-

protect/whats-law/employers/interfering-employee-rights-section-7-8a1
(https://www.nlrb.gov/rights-we-protect/whats-law/employers/interfering-employee-rights-
section-7-8a1) (last visited Mar. 13, 2019).

[54] *See* Alexander, *supra* note 1, at 786, 817–18.

[55] *See, e.g.*, Human Rights Watch, Unfair Advantage: Workers' Freedom of Association in
the United States under International Human Rights Standards 26, 31 (2000),
https://www.hrw.org/reports/pdfs/u/us/uslbr008.pdf
(https://www.hrw.org/reports/pdfs/u/us/uslbr008.pdf).

[56] *See, e.g.,* Nat'l Emp. L. Project, impact of the fight for $15: $68 Billion in raises, 22
million workers (Nov. 2018) (showing dozens of cities and counties have adopted local
minimum wages), https://s27147.pcdn.co/wp-content/uploads/Data-Brief-Impact-Fight-for-15-
2018.pdf (https://s27147.pcdn.co/wp-content/uploads/Data-Brief-Impact-Fight-for-15-
2018.pdf);  A Better Balance, Overview of Paid Sick Time Laws in the United States (Oct.
26, 2018) (showing local aid sick leave laws around the country),
https://www.abetterbalance.org/paid-sick-time-laws/?export
(https://www.abetterbalance.org/paid-sick-time-laws/?export); Julia Wolfe et al., Econ. Pol'y
Inst., 'fair workweek' laws help more than 1.8 million workers (2019) (noting the growth of
local fair workweek laws around the country), https://www.epi.org/publication/fair-
workweek-laws-help-more-than-1-8-million-workers/ (https://www.epi.org/publication/fair-
workweek-laws-help-more-than-1-8-million-workers/); Alexia Elejalde-Ruiz, *Chicago to
Create Office That Will Enforce City's Minimum Wage, Sick Leave Laws*, Chi. Trib, (Oct. 31,
2018), https://www.chicagotribune.com/business/ct-biz-chicago-office-labor-laws-standards-
1101-story.html (https://www.chicagotribune.com/business/ct-biz-chicago-office-labor-laws-
standards-1101-story.html); Alayna Alvarez, *As More Cities Push for Paid Sick Leave, States
Push Back*, Pew Charitable Trust: Stateline (Sept. 24, 2018),
https://www.pewtrusts.org/en/research-and-analysis/blogs/stateline/2018/09/24/as-more-
cities-push-for-paid-sick-leave-states-push-back.

[57] *See, e.g.*, A Better Balance, Overview of Paid Sick Time Laws in the United States (Oct.
26, 2018) (showing local aid sick leave laws around the country),
https://www.abetterbalance.org/paid-sick-time-laws/?export
(https://www.abetterbalance.org/paid-sick-time-laws/?export).

[58] *See, e.g.*, Nat'l Emp. L. Project, Impact of the Fight for $15: $68 Billion in Raises, 22
Million Workers (2018), https://s27147.pcdn.co/wp-content/uploads/Data-Brief-Impact-Fight-
for-15-2018.pdf (https://s27147.pcdn.co/wp-content/uploads/Data-Brief-Impact-Fight-for-15-
2018.pdf) (detailing the impact of $15 minimum wage laws in localities like Flagstaff, Los
Angles, San Francisco, Montgomery County, the Twin Cities, Seattle and the District of
Columbia); Sylvia Allegretto et al., Ctr. on Wage and Emp. Dynamics, U. of Cal. Berkley, The
New Wave of Local Minimum Wage Policies: Evidence from Six Cities (2018),
http://irle.berkeley.edu/files/2018/09/The-New-Wave-of-Local-Minimum-Wage-Policies.pdf
(http://irle.berkeley.edu/files/2018/09/The-New-Wave-of-Local-Minimum-Wage-Policies.pdf)
(examining the "effects of minimum wage policies in six large cities with high citywide
minimum wages").

[59] *See, e.g.*, N.Y.C. Admin. Code § 20-927 *et seq.* (2019) ("Freelance Isn't Free Act").

[60] *See, e.g.*, Wolfe et al., *supra* note 56 (examining laws that "promote workplace flexibility and protect against unfair scheduling practices").

[61] *See, e.g.*, National League of Cities, City Rights in an Era of Preemption: A State-by-State Analysis 10 (2018 Update) (noting how "cities have moved to cement social progress and protect the rights of marginalized groups through anti-discrimination ordinances" and how "[a]t least 225 local governments prohibit employment discrimination on the basis of gender identity"), https://www.nlc.org/sites/default/files/2017-03/NLC-SML%20Preemption%20Report%202017-pages.pdf (https://www.nlc.org/sites/default/files/2017-03/NLC-SML%20Preemption%20Report%202017-pages.pdf).

[62] S.F., Cal., Admin. Code ch. 12R, § 12R.6 (2019).

[63] Santa Fe City, N.M. Code ch. XXVIII, § 28-1.6(B) (2018).

[64] L. A., Cal. Code ch. XVIII, art. 8, § 188.04 (2019).

[65] L. A. Cnty., cal. Code tit. 8, div. 4, ch. 8.101, § 8.101.080 (2019).

[66] Berkeley, Cal. Code tit. 13, ch. 13.99, § 13.99.070 (2019).

[67] Oakland, Cal. Code tit. 5, ch. 5.92, § 5.92.050 (2018).

[68] San Jose, Cal. Code tit. 4, ch. 4.100, § 4.100.070 (2019).

[69] San Diego, Cal. Code ch. 3, art. 9, div. 1, § 39.0111 (2019).

[70] *Retaliation Complaint Investigations Unit (RCI)*, State of Cal. Dep't of Indus. Relations, https://www.dir.ca.gov/dlse/dlseRetaliation.html (https://www.dir.ca.gov/dlse/dlseRetaliation.html) (last visited Mar. 14, 2019).

[71] Julie A. Su, 2017 Retaliation Complaint Report (Labor Code §98.75) 1, https://www.dir.ca.gov/dlse/RCILegReport2017.pdf (https://www.dir.ca.gov/dlse/RCILegReport2017.pdf).

[72] *See, e.g.*, Nat'l Emp. L. Project, The Top 5 Enforcement Tools for Local Minimum Wage Laws (2015), https://s27147.pcdn.co/wp-content/uploads/Policy-Brief-Top-Five-Enforcement-Tools-Local-Minimum-Wage.pdf (https://s27147.pcdn.co/wp-content/uploads/Policy-Brief-Top-Five-Enforcement-Tools-Local-Minimum-Wage.pdf) (naming "Community Partnerships" as one of the top 5 tools for effective enforcement of minimum wage laws); Janice Fine, New Approaches to Enforcing Labor Standards: How Co-enforcement Partnerships between Government and Civil Society Are Showing the Way Forward, Univ. of Chicago Legal Forum (Vol. 2017, art. 7) (2018), https://chicagounbound.uchicago.edu/cgi/viewcontent.cgi?article=1594&context=uclf (https://chicagounbound.uchicago.edu/cgi/viewcontent.cgi?article=1594&context=uclf); Tia Koonse et al., UCLA Center for Labor Research and Education and UC Berkeley Center for Labor Research and Education, Enforcing City Minimum Wage Laws in California: Best Practices And City-State Partnerships (2015),

http://laborcenter.berkeley.edu/pdf/2015/minimum-wage-enforcement.pdf
(http://laborcenter.berkeley.edu/pdf/2015/minimum-wage-enforcement.pdf); Tanya L.
Goldman, Rutgers School of Management and Labor Relations Center for Innovation in
Worker Organization And CLASP, The Labor Standards Enforcement Toolbox (Tool 4:
Introduction to Strategic Enforcement) (2018),
https://www.clasp.org/sites/default/files/publications/2018/09/2018_introductiontostrategic
enforcement.pdf
(https://www.clasp.org/sites/default/files/publications/2018/09/2018_introductiontostrategic
enforcement.pdf).

[73] *See, e.g.*, Nat'l Emp. L. Project, Winning Wage Justice, *supra* note 50, at 17–36.

[74] For discussion of the wide-ranging consequences of retaliation for workers and the
cascading consequences of financial insecurity and poverty, see Jennie E. Brand, Cal. Ctr.
for Population Res., U.C.L.A., The Far-Reaching Impact of Job Loss and Unemployment
(2014), http://citeseerx.ist.psu.edu/viewdoc/download?
doi=10.1.1.661.8164&rep=rep1&type=pdf (http://citeseerx.ist.psu.edu/viewdoc/download?
doi=10.1.1.661.8164&rep=rep1&type=pdf); Diana Elliott & Emma Kalish, Urban Institute, New
York: The cost of Eviction and Unpaid Bills of Financially Insecure Families for City Budgets
(2017), https://www.urban.org/sites/default/files/publication/87726/new-york-cost-eviction-
and-unpaid-bills-financially-insecure-families-city-budgets.pdf
(https://www.urban.org/sites/default/files/publication/87726/new-york-cost-eviction-and-
unpaid-bills-financially-insecure-families-city-budgets.pdf); Karen Weese, *Why it Costs So
Much to be Poor in America*, Wash. Post, Jan. 25, 2018,
https://www.washingtonpost.com/news/posteverything/wp/2018/01/25/why-it-costs-so-
much-to-be-poor-in-america/?utm_term=.e4c7bd30c6e0
(https://www.washingtonpost.com/news/posteverything/wp/2018/01/25/why-it-costs-so-
much-to-be-poor-in-america/?utm_term=.e4c7bd30c6e0); Nusrat Choudhury, *Single Moms
Get Sucked Into the Cruelest Debtors' Prisons We've Ever Seen*, ACLU: Speak Freely (Dec.
21, 2018), https://www.aclu.org/blog/racial-justice/race-and-criminal-justice/single-moms-
get-sucked-cruelest-debtors-prison-weve (https://www.aclu.org/blog/racial-justice/race-
and-criminal-justice/single-moms-get-sucked-cruelest-debtors-prison-weve); Sheelah
Kolhatkar, *The Personal Toll of Whistle-Blowing,* New Yorker (Feb. 4, 2019),
https://www.newyorker.com/magazine/2019/02/04/the-personal-toll-of-whistle-blowing
(https://www.newyorker.com/magazine/2019/02/04/the-personal-toll-of-whistle-blowing).

[75] *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002).

[76] *See, e.g.*, Raise the Floor Alliance & National Economic & Social Rights Initiative, *supra*
note 11, at 13; Robert Johnson, *Whistling While You Work: Expanding Whistleblower Laws to
Include Non-Workplace-Related Retaliation After Burlington Northern v. White*, 42 U. Rich.
L. Rev. 1337, 1342–43 (2008) (quoting Joyce Rothschild & Terance D. Miethe, *Whistle-
Blower Disclosures and Management Retaliation: The Battle to Control Information About
Organization Corruption*, 26 Work and Occupations 107, 121 (1999)) (highlighting a study of
whistleblowers finding that "'[t]he most common fallout from their whistle-blowing involved:
(a) severe depression or anxiety (84%), (b) feelings of isolation of powerlessness (84%), (c)
distrust of others (78%), (d) declining physical health (69%), (e) severe financial decline
(66%), and (f) problems with family relations (53%)'" and noting that based on that same
study, "roughly two-thirds of internal whistleblowers lost their jobs and were later

blacklisted in their occupations"); Lilia M. Cortina & Vicki J. Magley, *Raising Voice, Risking Retaliation: Events Following Interpersonal Mistreatment in the Workplace*, 8(4) J. of Occupational Health Psychol. 247–265, 262 (2003) (finding in part how "among highly mistreated employees, vocal victims suffered when they experienced *any* type of retaliation," describing "greater sadness and anxiety; fewer feelings of tranquility, happiness, and life satisfaction; and more somatic complaints") (emphasis in original).

[77] Clyde Summers, *Effective Remedies For Employment Rights: Preliminary Guidelines And Proposals*, 141 U. Pa. L. Rev. 457, 477 (1992).

[78] *Id*. at 477–78.

[79] *Id*. at 478.

[80] Weil, *supra* note 29, at 81 (May 2010).

[81] Rebecca Buckwalter-Poza, Center for American Progress, Making Justice Equal 4 (2016) (citation omitted), https://cdn.americanprogress.org/content/uploads/2016/12/07105805/MakingJusticeEqual-brief.pdf (https://cdn.americanprogress.org/content/uploads/2016/12/07105805/MakingJusticeEqual-brief.pdf).

[82] *Id*.

[83] *Id*. (citation omitted).

[84] Nat'l Emp. L. Project, Winning Wage Justice, *supra* note 50, at 31.

[85] The laws analyzed and categorized in Tiers 1, 2, and 3 do not include state laws concerning only limited circumstances involving blacklisting. *See, e.g.*, Conn. Gen. Stat. Ann. § 31-51 (West 2019); Ind. Code Ann. § 22-5-3-1 (West 2019); Ind. Code Ann. § 22-5-3-2 (West 2019); Kan. Stat. Ann. § 44-117 (West 2019); La. Stat. Ann. § 23:291 (2018); Mo. Ann. Stat. § 290.152 (West 2019); Neb. Rev. Stat. Ann. § 48-201 (West 2019); Nev. Rev. Stat. Ann. § 613.200 (West 2019); Nev. Rev. Stat. Ann. § 613.210 (West 2019); Va. Code Ann. § 40.1-27 (West 2018); Wash. Rev. Code Ann. § 49.44.010 (West 2019).

[86] Nat'l Emp. L. Project, Winning Wage Justice, *supra* note 50, at 55–70.

[87] Arizona voters approved Proposition 202 in 2006, which included the relevant retaliation protection language. See *Arizona 2006 Ballot Measures*, Ballotpedia, https://ballotpedia.org/Arizona_2006_ballot_measures (https://ballotpedia.org/Arizona_2006_ballot_measures) (last visited Apr. 10, 2019); *Florida Minimum Wage, Amendment 5 (2004)*, Ballotpedia, https://ballotpedia.org/Florida_Minimum_Wage,_Amendment_5_(2004) (https://ballotpedia.org/Florida_Minimum_Wage,_Amendment_5_(2004)) (last visited Apr. 10, 2019).

[88] *See* Appendix 1.

[89] *Id.*

[90] *Id.*

[91] Fla. Stat. Ann. § 448.110(6)(c)(1) (West 2019); *see also* Fla. Const. art. X, § 24(e) (2018).

[92] Fla. Const. art. X, § 24(e) (2018); Fla. Stat. Ann. § 448.110(6)(c)(2) (West 2019).

[93] Fla. Stat. Ann. § 448.110(6)(c)(2) (West 2019).

[94] *Id.*

[95] Ariz. Rev. Stat. Ann. § 23-364(B) (2019); D.C. Code Ann. § 32-1311(b).

[96] *Ohio Minimum Wage Increase, Amendment 2 (2006),* Ballotpedia, https://ballotpedia.org/Ohio_Minimum_Wage_Increase,_Amendment_2_(2006) (https://ballotpedia.org/Ohio_Minimum_Wage_Increase,_Amendment_2_(2006)) (last visited Apr. 15, 2019).

[97] Ohio Const. Article II, § 34a; Ohio Rev. Code Ann. § 4111.14(J) (West 2019) (specifying that the "'not less than one hundred fifty dollar' penalty . . . shall be imposed only for violations of the anti-retaliation provision in Section 34a of Article II, Ohio Constitution").

[98] 820 Ill. Comp. Stat. Ann. 115/14 (West 2019).

[99] *See* 735 Ill. Comp. Stat. Ann. 5/13-206 (West 2019).

[100] *See, e.g.,* Nat'l Emp. L. Project, Winning Wage Justice, *supra* note 50, at 22.

[101] In addition, Virginia appears to only create limited criminal penalties for blacklisting that do not amount to clear protection from retaliation in the wage theft context. Va. Code Ann. § 40.1-27 (West 2018).

[102] Alaska Stat. Ann. § 23.10.135 (West 2018); Alaska Stat. Ann. § 23.10.140 (West 2018).

[103] Kan. Stat. Ann. § 44-1210 (West 2019) makes retaliation in the wage theft context unlawful, but it only clearly establishes a criminal penalty of a fine ranging from $250 to $1,000. Kan. Stat. Ann. § 44-1210 (West 2019). Kansas does appear to allow for civil penalties in limited circumstances involving blacklisting, but only after a criminal conviction. *See* Kan. Stat. Ann. § 44-117 (West 2019) (making certain forms of blacklisting unlawful); Kan. Stat. Ann. § 44-119 (West 2019) (allowing for certain damages in cases involving blacklisting); *Hawkins v. MCI*, No. 04-1328-JTM, 2005 WL 1130267, at *7 (D. Kan. May 13, 2005) (noting that Kan. Stat. Ann. § 44-117 "was intended to prevent blacklisting and requires a criminal blacklisting conviction of an employer in order to bring a civil blacklisting claim") (citation omitted).

[104] Md. Code Ann., Lab. & Empl. § 3-428 (West 2019).

[105] N.M. Stat. Ann. § 50-4-26.1 (West 2019); N.M. Stat. Ann. § 50-4-26 (West 2019).

[106] Okla. Stat. Ann. tit. 40, § 199 (West 2019).

[107] 43 Pa. Stat. Ann. § 333.112 (West 2019).

[108] W. Va. Code Ann. § 21-5C-7 (West 2019).

[109] *See* Appendix 3.

[110] *Id.*

[111] Mo. Ann. Stat. § 285.575 (West 2018).

[112] *Id.*

[113] *Id.*

[114] The law only protects individuals defined as protected persons. That definition excludes an employee if "[t]he proper authority or person to whom the employee makes his or her report is the person whom the employee claims to have committed the unlawful act or violation of a clear mandate of public policy . . . ." *Id.*

[115] Tenn. Code Ann. § 50-1-304 (West 2019).

[116] *See Hall v. Wal-Mart Stores, Inc.*, No. 3:16-CV-2818, 2017 WL 2131649, at *4 (M.D. Tenn. May 16, 2017), *appeal dismissed*, No. 17-5683, 2017 WL 4122573 (6th Cir. Aug. 15, 2017).

[117] *See, e.g.*, Ben Levin, *Rethinking Wage Theft Criminalization*, On Labor (Apr. 13, 2018), https://onlabor.org/rethinking-wage-theft-criminalization/ (https://onlabor.org/rethinking-wage-theft-criminalization/); Terri Gerstein & David Seligman, *A Response to "Rethinking Wage Theft Criminalization*," On Labor (Apr. 20, 2018), https://onlabor.org/a-response-to-rethinking-wage-theft-criminalization/ (https://onlabor.org/a-response-to-rethinking-wage-theft-criminalization/); Stephen Lee, *Policing Wage Theft in the Day Labor Market*, 4 U.C. Irvine L. Rev. 655 (2014) (discussing criminal wage theft laws and intersection with immigrant workers).

[118] The state laws identified do not include state laws or case law that may allow for a general wrongful discharge claim under common law. Maine and North Carolina were not included in Tiers 1, 2, or 3 even though their retaliation laws contained a number of the characteristics for one or more Tiers because the relevant retaliation statutes require a worker to file an administrative complaint and ultimately do not guarantee a private right of action. *See* Me. Rev. Stat. tit. 26, § 833 (2018) (making retaliation unlawful); Me. Rev. Stat. tit. 26, § 834-A (2018) (allowing a worker who alleges a violation of rights under section 833 to bring a complaint before the Maine Human Rights Commission for action under Title 5, section 4612); Me. Rev. Stat. tit. 5, § 4612 (2018) (stating that "[i]f, within 180 days of a complaint being filed with the commission, the commission has not filed a civil action in the case or has not entered into a conciliation agreement in the case, the complainant may request a right-to-sue letter, and, *if* a letter is given, the commission shall end its investigation") (emphasis added); N.C. Gen. Stat. Ann. § 95-242 (West 2019); N.C. Gen. Stat. Ann. § 95-243 (West 2019). A retaliation protection statute in Michigan, Mich. Comp. Laws

Ann. § 408.414a (West 2019), prohibiting discrimination against employees "based on an employee's choice to request or not request compensatory time in lieu of overtime compensation," was not included under Tiers 1, 2, or 3 because of its exceptionally narrow application. *See* Mich. Comp. Laws Ann. § 408.420 (West 2019) (clarifying that the law does not generally apply to an employer that is subject to the minimum wage provisions of the FLSA, "unless those federal minimum wage provisions would result in a lower minimum hourly wage than provided" in the FLSA); *Vernon v. Go Ventures, LLC*, No. 16-CV-13818, 2017 WL 2002011, at *5 (E.D. Mich. May 12, 2017) (clarifying that "if an employer is only subject to both [sic] the Workforce Opportunity Wage Act because the state minimum wage exceeds the federal minimum wage, then 'Section 4a [concerning overtime pay under the Act] does not apply.'").

[119] Ariz. Rev. Stat. Ann. § 23-364(G) (2019).

[120] *Id*.

[121] Ariz. Rev. Stat. Ann. § 23-364(E) (2019).

[122] Ariz. Rev. Stat. Ann. § 23-364(G) (2019).

[123] A number of California statutes provide retaliation protection for workers who exercise their wage and hour rights. *See, e.g.*, Cal. Lab. Code § 98.6 (West 2019); Cal. Lab. Code § 98.7 (West 2019); Cal. Lab. Code § 1019 (West 2019); Cal. Lab. Code § 1019.1 (West 2019); Cal. Lab. Code § 1019.2 (West 2019). It may also be possible for a worker to cite to multiple retaliation-related statutes and recover damages or other relief from more than one of those retaliation-related laws. *See Alabado v. French Concepts, Inc.*, No. CV152830FMOAJWX, 2016 WL 5929247, at *14 (C.D. Cal. May 2, 2016) (showing how a worker may cite to more than one retaliation-related statute and recover damages under more than one retaliation-related provision). However, NELP's analysis identified only one statute, Cal. Lab. Code § 1102.5 (West 2019), that clearly satisfies all of the criteria developed in this report for Tier 1 states.

[124] Cal. Lab. Code § 1102.5(f) (West 2019). Case law confirms that workers may recover up to $10,000 under Cal. Lab. Code § 1102.5 in penalties for violations of this statute. *See Alabado*, 2016 WL at *14. Cal. Lab. Code § 1105 provides that nothing in the chapter containing Cal. Lab. Code § 1102.5 "shall prevent the injured employee from recovering damages from his employer for injury suffered through a violation of th[e] chapter." Cal. Lab. Code § 1105 (West 2019).

[125] Cal. Lab. Code § 1102.5(f) (West 2019).

[126] *See Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 916 (E.D. Cal. 2017) ("A plaintiff can bring a § 1102.5 claim for damages, which seeks to remedy individual harms.") (citation omitted).

[127] *See Clemens v. Prot. One, Inc.*, No. CIV09CV1424L(CAB), 2010 WL 1445173, at *3 (S.D. Cal. Apr. 12, 2010) (acknowledging that Cal. Lab. Code § 1102.5 "allows for the imposition of punitive damages, attorney's fees and costs . . . .").

[128] Fla. Const. art. X, § 24(e) (2018); Fla. Stat. Ann. § 448.110(6)(c) (West 2019).

[129] Fla. Stat. Ann. § 448.110(6)(c)(2) (West 2019).

[130] Fla. Const. art. X, § 24(e) (2018); Fla. Stat. Ann. § 448.110(7) (West 2019).

[131] Fla. Const. art. X, § 24(e) (2018); Fla. Stat. Ann. § 448.110(6) (West 2019).

[132] Fla. Const. art. X, § 24(e) (2018); Fla. Stat. Ann. § 448.110(6)(c)(1) (West 2019).

[133] N.Y. Lab. Law § 215 (McKinney 2019).

[134] *Id.*

[135] *Id.*

[136] *Id.*

[137] Or. Rev. Stat. Ann. § 652.355 (West 2019) provides protection from retaliation for workers enforcing their basic wage payment rights and makes a violation of this section an "unlawful employment practice under ORS chapter 659A." Or. Rev. Stat. Ann. § 652.355 (West 2019). A worker may recover compensatory damages and punitive damages through a private right of action for a violation of Or. Rev. Stat. Ann. § 652.355 (West 2019). *See* Or. Rev. Stat. Ann. § 659A.885 (West 2019). It may also be possible for a worker to recover more than actual damages through the administrative process. *See* Or. Rev. Stat. Ann. § 659A.850 (West 2019). However, is it not clear whether the state may impose a civil penalty for violations of Or. Rev. Stat. Ann. § 652.355 (West 2019) through the administrative complaint process. Another provision, Or. Rev. Stat. Ann. § 659A.199 (West 2019), separately makes it an "unlawful employment practice" for an employer to retaliate against a worker if the worker has "in good faith reported information that the employee believes is evidence of a violation of a state or federal law." Or. Rev. Stat. Ann. § 659A.199 (West 2019). A worker may recover compensatory damages and punitive damages through a private right of action for a violation of Or. Rev. Stat. Ann. § 659A.199 (West 2019). *See* Or. Rev. Stat. Ann. § 659A.885 (West 2019). It may also be possible for a worker to recover more than actual damages through the administrative process. *See* Or. Rev. Stat. Ann. § 659A.850 (West 2019). However, is it not clear whether the state may impose a civil penalty for violations of Or. Rev. Stat. Ann. § 659A.199 (West 2019) through the administrative complaint process. Therefore, neither Or. Rev. Stat. Ann. § 652.355 (West 2019) nor Or. Rev. Stat. Ann. § 659A.199 (West 2019) are included in Appendix 1.

[138] *See* Or. Rev. Stat. Ann. § 659A.885 (West 2019) (creating private right of action for violations of Or. Rev. Stat. Ann. § 653.060 (West 2019) and specifying availability of compensatory damages or $200, whichever is greater).

[139] *See* Or. Rev. Stat. Ann. § 653.060 (West 2019) (making a violation of this section an "unlawful employment practice under ORS chapter 659A"); Or. Rev. Stat. Ann. § 659A.001 (West 2019) (defining "unlawful practice" as including "any unlawful employment practice"); Or. Rev. Stat. Ann. § 659A.820 (West 2019) (allowing an individual to file a complaint with the Bureau alleging an "unlawful practice"); Or. Rev. Stat. Ann. § 659A.850 (West 2019)

(specifying the type of relief available through the administrative hearing process, which includes the possibility of something more than actual damages in order to "[e]liminate the effects of the unlawful practice").

[140] Or. Rev. Stat. Ann. § 653.256 (West 2019).

[141] Or. Rev. Stat. Ann. § 659A.885 (West 2019).

[142] *Id.*

[143] *See* D.C. Code Ann. § 32-1011.01 (West 2019); D.C. Code Ann. § 32-1311 (West 2019).

[144] *Id.*

[145] *Id.*

[146] *Id.*

[147] *See* D.C. Code Ann. § 32-1311 (West 2019).

[148] *See* D.C. Code Ann. § 32-1311 (West 2019); D.C. Code Ann. § 32-1307 (West 2019).

[149] *See* D.C. Code Ann. § 32-1311 (West 2019).

[150] *Id.*

[151] Ohio Rev. Code Ann. § 4111.14(J) (West 2019).

[152] *Id.*

[153] Ohio Rev. Code Ann. § 4111.14(K) (West 2019).

[154] Ohio Const. Article II, § 34a.

[155] *Id.*

[156] *Id.*

[157] *Id.*

[158] 820 Ill. Comp. Stat. Ann. 115/14(c) (West 2019).

[159] 820 Ill. Comp. Stat. Ann. 115/14(c) (West 2019).

[160] 820 Ill. Comp. Stat. Ann. 115/14(c) (West 2019).

[161] An analysis of certain retaliation protection laws in the wage and hour context in Illinois (740 Ill. Comp. Stat. Ann. 174/15 *et seq.* (West 2019)), Minnesota (Minn. Stat. Ann. § 177.32 (West 2019)), and Montana (Mont. Code Ann. § 39-2-901 *et seq.* (West 2019)) found

that these laws were not sufficiently clear to include under Tier 3. Tennessee (Tenn. Code Ann. § 50-1-304 (West 2019)) was not included under Tier 3 because the law protecting workers only applies in narrow situations where the employee can show that the claim serves a public purpose and furthers the public good. *See, e.g.*, *Hall v. Wal-Mart Stores, Inc.*, No. 3:16-CV-2818, 2017 WL 2131649, at *4 (M.D. Tenn. May 16, 2017), *appeal dismissed*, No. 17-5683, 2017 WL 4122573 (6th Cir. Aug. 15, 2017).

[162] La. Stat. Ann. § 23:967 (2018) (stating that a worker may recover "damages," which is defined to include "compensatory damages, back pay, benefits, reinstatement, reasonable attorney fees, and court costs resulting from the reprisal").

[163] *Id.*

[164] *Id.*

[165] Mass. Gen. Laws Ann. ch. 151, § 19 (West 2019).

[166] Mass. Gen. Laws Ann. ch. 149, § 150 (West 2019).

[167] *See* Mass. Gen. Laws Ann. ch. 149, § 27C (West 2019).

[168] Mass. Gen. Laws Ann. ch. 151, § 19 (West 2019); Mass. Gen. Laws Ann. ch. 149, § 150 (West 2019).

[169] *Id.*

[170] Mass. Gen. Laws Ann. ch. 149, § 150 (West 2019).

[171] *See* Mass. Gen. Laws Ann. ch. 149, § 27C (West 2019).

[172] Mass. Gen. Laws Ann. ch. 149, § 150 (West 2019).

[173] *Id.*

[174] Minn. Stat. Ann. § 181.935 (West 2019).

[175] *Id.*

[176] *Id.*

[177] Neb. Rev. Stat. Ann. § 48-1119(4) (West 2019).

[178] *See* Neb. Rev. Stat. Ann. § 48-1119(4) (West 2019); Neb. Rev. Stat. Ann. § 48-1120.01 (West 2019); Neb. Rev. Stat. Ann. § 20-148 (West 2019); *Ludlow v. BNSF Ry. Co.*, No. 4:12CV3113, 2013 WL 3872930, at *12 (D. Neb. July 24, 2013) (citation omitted) (noting that a plaintiff can bring a claim under the Nebraska Fair Employment Practice Act (NFPA) itself or by invoking section 20-148 to bring a claim without first exhausting the NFPA's administrative remedies).

[179] Neb. Rev. Stat. Ann. § 48-1119(4) (West 2019).

[180] Nev. Const. art. XV, § 16.

[181] *Id.*

[182] *Id.*

[183] N.J. Stat. Ann. § 34:19-5 (West 2019).

[184] *Id.*

[185] *Id.*

[186] *Id.*

[187] N.D. Cent. Code Ann. § 34-01-20(3) (West 2019); N.D. Cent. Code Ann. § 32-03.2-11 (West 2019).

[188] N.D. Cent. Code Ann. § 34-01-20 (West 2019).

[189] *Id.*

[190] Vt. Stat. Ann. tit. 21, § 507 (West 2019) protects employees of certain hospitals and nursing homes from retaliation and offers the possibility of compensatory and punitive damages. *See* Vt. Stat. Ann. tit. 21, § 507 (West 2019); Vt. Stat. Ann. tit. 21, § 508 (West 2019). It was not included in the appendix because it only applies to a narrow category of workers.

[191] Vt. Stat. Ann. tit. 21, § 348(b) (West 2019).

[192] *Id.*

[193] *Id.*

[194] Vt. Stat. Ann. tit. 21, § 397(b) (West 2019).

[195] *Id.*

[196] *Id.*

[197] Alaska Stat. Ann. § 23.10.135(6) (West 2018); Alaska Stat. Ann. § 23.10.140 (West 2018).

[198] Cal. Lab. Code § 98.6 (West 2019) (making violation a misdemeanor); Cal. Penal Code § 19 (West 2019) (outlining punishment for misdemeanors).

[199] Cal. Lab. Code § 1103 (West 2019).

[200] Colo. Rev. Stat. Ann. § 8-4-120 (West 2019).

[201] Colo. Rev. Stat. Ann. § 8-6-115 (West 2019).

[202] Haw. Rev. Stat. Ann. § 387-12(a)(4) (West 2018).

[203] 820 Ill. Comp. Stat. Ann. 105/11 (West 2019); 730 Ill. Comp. Stat. Ann. 5/5-4.5-60 (West 2019); 730 Ill. Comp. Stat. Ann. 5/5-5-6 (West 2019).

[204] 820 Ill. Comp. Stat. Ann. 115/14 (West 2019); 730 Ill. Comp. Stat. Ann. 5/5-4.5-65 (West 2019); 730 Ill. Comp. Stat. Ann. 5/5-5-6 (West 2019).

[205] 820 Ill. Comp. Stat. Ann. 174/15 (West 2019) et seq.; 730 Ill. Comp. Stat. Ann. 5/5-4.5-55 (West 2019); 730 Ill. Comp. Stat. Ann. 5/5-5-6 (West 2019).

[206] Ind. Code Ann. § 22-2-2-11 (West 2018) (making a violation a Class C Infraction); Ind. Code Ann. § 34-28-5-4 (West 2018) (establishing penalty for a Class C Infraction).

[207] Kan. Stat. Ann. § 44-1210(b) (2019).

[208] La. Stat. Ann. § 23:964 (2018).

[209] Md. Code Ann., Lab. & Empl. § 3-428(d) (West 2019).

[210] Mass. Gen. Laws Ann. ch. 149, § 27C (West 2019).

[211] Mich. Comp. Laws Ann. § 408.484 (West 2019); Mich. Comp. Laws Ann. § 750.504 (West 2019).

[212] Mich. Comp. Laws Ann. § 408.421 (West 2019) protects employees from retaliation when they have served or about to serve on the wage deviation board, when they have testified or are about to testify before the board, or because the employer believes that the employee may serve on the board or testify before the board or in any investigation under the Workforce Opportunity Wage Act. Mich. Comp. Laws Ann. § 408.421 (West 2019).

[213] Mich. Comp. Laws Ann. § 408.421 (West 2019); Mich. Comp. Laws Ann. § 750.504 (West 2019).

[214] Mich. Comp. Laws Ann. § 408.483a (West 2019) prohibits an employer from discharging, formally disciplining, or otherwise discriminating against for job advancement an employee who had disclosed her or her wages, something that an employee is likely to do in determining whether they have experienced wage theft. Mich. Comp. Laws Ann. § 408.483a (West 2019).

[215] Mich. Comp. Laws Ann. § 408.484 (West 2019); Mich. Comp. Laws Ann. § 750.504 (West 2019).

[216] Minn. Stat. Ann. § 177.32 (West 2019).

[217] Mo. Ann. Stat. § 558.002(1)(4) (West 2018).

[218] Mo. Ann. Stat. § 558.011(1)(8) (West 2018).

[219] Nev. Rev. Stat. Ann. § 608.195 (West 2019); Nev. Rev. Stat. Ann. § 193.150 (West 2019).

[220] Nev. Rev. Stat. Ann. § 608.195 (West 2019); Nev. Rev. Stat. Ann. § 193.150 (West 2019).

[221] N.J. Stat. Ann. § 34:11-56a24 (West 2019).

[222] N.M. Stat. Ann. § 50-4-26 (West 2019) (making a violation of N.M. Stat. Ann. § 50-4-26.1 (West 2019) a misdemeanor); N.M. Stat. Ann. § 31-19-1 (West 2019) (outlining misdemeanor punishments).

[223] N.Y. Lab. Law § 215 (McKinney 2019); N.Y. Penal Law § 80.05 (McKinney 2019); N.Y. Penal Law § 70.15 (McKinney 2019).

[224] N.D. Cent. Code Ann. § 34-01-20(2) (West 2019) (stating that an "employer who willfully violates this section is guilty of an infraction"); N.D. Cent. Code Ann. § 34-01-20(2) (West 2019) (outlining the punishment for an infraction and Class B misdemeanor).

[225] N.D. Cent. Code Ann. § 34-06-19 (West 2019) (making a violation of N.D. Cent. Code Ann. § 34-06-19 (West 2019) a Class B misdemeanor); N.D. Cent. Code Ann. § 12.1-32-01 (West 2019) (outlining punishment for Class B misdemeanor).

[226] N.D. Cent. Code Ann. § 34-14-07 (West 2019); N.D. Cent. Code Ann. § 12.1-32-01 (West 2019).

[227] *See* Ohio Rev. Code Ann. § 4111.99 (West 2019) (making violation of subsection (B) of § 4111.13 a misdemeanor of the third degree); Ohio Rev. Code Ann. § 2929.28 (West 2019) (outlining permissible financial sanctions); Ohio Rev. Code Ann. § 2929.24 (West 2019) (outlining misdemeanor jail terms).

[228] Okla. Stat. Ann. tit. 40, § 199 (West 2019).

[229] Or. Rev. Stat. Ann. § 652.990 (West 2019) (classifying the violation of Or. Rev. Stat. Ann. § 652.355 (West 2019) as a Class C misdemeanor); Or. Rev. Stat. Ann. § 161.615 (West 2019) (specifying that the term of imprisonment for a Class C misdemeanor may be up to 30 days); Or. Rev. Stat. Ann. § 161.635 (West 2019) (specifying that the fine for a Class C misdemeanor may be up to $1,250). It may also be possible for the state to require a defendant to pay for costs incurred by the state in prosecuting the defendant. Or. Rev. Stat. Ann. § 161.665 (West 2019).

[230] Or. Rev. Stat. Ann. § 653.991 (West 2019) (establishing a violation of Or. Rev. Stat. Ann. § 653.060 (West 2019) as a misdemeanor); Or. Rev. Stat. Ann. § 161.555 (West 2019) (noting that misdemeanors not classified as a particular class are Class A misdemeanors); Or. Rev. Stat. Ann. § 161.615 (West 2019) (allowing imprisonment up to 364 days for Class A misdemeanors); Or. Rev. Stat. Ann. § 161.635 (West 2019) (allowing fine of up to $6,250 for Class A misdemeanors). It may also be possible for the state to require a defendant to pay for costs incurred by the state in prosecuting the defendant. Or. Rev. Stat. Ann. § 161.665 (West 2019).

[231] 43 Pa. Stat. And Cons. Stat. Ann. § 333.112 (West 2019).

[232] 28 R.I. Gen. Laws Ann. § 28-12-16 (West 2019).

[233] *See* 28 R.I. Gen. Laws Ann. § 28-14-19.3 (West 2019); 28 R.I. Gen. Laws Ann. § 28-14-17 (West 2019).

[234] Utah Code Ann. § 34-28-12 (West 2018) (making a violation of Utah Code Ann. § 34-28-19 (West 2018) a class B misdemeanor); Utah Code Ann. § 76-3-204 (West 2018) (specifying possible term of imprisonment for class B misdemeanor); Utah Code Ann. § 76-3-301 (West 2018) (specifying potential fine for class B misdemeanor).

[235] Wash. Rev. Code Ann. § 49.46.100 (West 2019) (making a violation a gross misdemeanor); Wash. Rev. Code Ann. § 9.92.020 (West 2019) (describing penalties for gross misdemeanors).

[236] W. Va. Code Ann. § 21-5C-7 (West 2018).

[237] D.C. Code Ann. § 32-1011(West 2019).

[238] D.C. Code Ann. § 32-1307 (West 201

**Contact**
National Employment Law Project (https://www.nelp.org/contact/)
90 Broad Street, Suite 1100, New York, NY 10004

**Work With Us**
(https://www.nelp.org/about-us/work-with-us/)
View Job Openings (https://www.nelp.org/about-us/work-with-us/)
(https://www.nelp.org/about-us/work-with-us/)

(https://www.linkedin.com/company/national-employment-law-project)

**General Inquiries**
*nelp@nelp.org (mailto:nelp@nelp.org)*

(https://www.facebook.com/NationalEmploymentLawProject) (https://twitter.com/NelpNews) (https://www.instagram.com/nationalemploymentlawproje

**Subscribe**

*First Name*

*Email Address*

*ZIP Code*

SUBSCRIBE



(http://www.nelp.org/50th/)

The site is for informational purposes only and does not provide legal advice.  ➔

*Website by* **Briteweb (http://briteweb.com)**

**BACK TO TOP OF PAGE**