1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6

7    GEORGE JARVIS AUSTIN,                      Case No. 20-cv-00800-EMC

8                    Plaintiff,

9            v.                                 ORDER GRANTING DEFENDANTS'
                                                MOTION TO DISMISS AND DENYING
10   TESLA, INC., et al.,                       ALL OTHER MOTIONS

11                   Defendants.                Docket Nos. 25, 27, 33, 36, 40, 41, 49, 72

12

13

14          Pro Se Plaintiff George Jarvis Austin filed a complaint against Tesla Motors, Inc.[1]

15   ("Tesla"), Personnel Staffing Group, LLC[2] ("PSG"), Balance Staffing Workforce, LLC[3] ("BSW"),

16   and several individual defendants (collectively, "Defendants") alleging nine causes of action

17   arising out of work Mr. Austin performed as a contractor at Tesla facilities.  *See* Docket No. 18

18   (First Amended Complaint (FAC)).[4]  Mr. Austin alleges he was fired after he was falsely accused

19   of recording a supervisor in violation of California's wiretapping laws.  *See id.*  Mr. Austin claims

20   the accusation was not only false, but also retaliation for reporting violations of various state and

21   federal employment laws.  *See id.*

22

23   _____

     [1] Mr. Austin erroneously sued "Tesla, Inc."  *See* FAC at 2.

24   [2] Mr. Austin erroneously sued "MVP Personnel Staffing Group."  *Id.*

25   [3] Mr. Austin erroneously sued as "Balance Staffing."  *Id.*

26   [4] Mr. Austin alleges (1) defamation, (2) wage theft in violation of California and federal laws, (3)
     conversion, (4) breach of contract, (5) fraudulent misrepresentation, (6) fraudulent concealment,
27   (7) tortious interference with contractual relations and economic advantage, (8) wrongful
     termination, and (9) whistleblower retaliation in violation of various state and federal laws.  *See*
28   FAC at 24-97.

United States District Court
Northern District of California

Pending before the Court are Mr. Austin's:

(1) motion to join the California Employment Development Department ("EDD") as a required party under Federal Rules of Civil Procedure 15(a), 19(a), and 21;

(2) motion for injunctive relief under Federal Rule of Civil Procedure 65(b);

(3) motion for discovery under Federal Rules of Civil Procedure 26(a), 44(a), 56(c), 65(a)–(b), and Civil Local Rule 65; and

(4) motion to amend the SAC.

Pending before the Court are:

(1) Tesla's motion to dismiss the FAC under Federal Rules of Civil Procedure 12(b)(5), 12(b)(6), or in the alternative, strike portions of the FAC under Federal Rule of Civil Procedure 12(f);

(2) PSG's (a) motion to join Tesla's motion to dismiss under Federal Rule of Civil Procedure 12(g)(1), and (b) motion to strike the second amended complaint (SAC) under Federal Rule of Civil Procedure 12(f); and

(3) BSW's motion to join Tesla's motion to dismiss under Federal Rule of Civil Procedure 12(g)(1).

For the following reasons, PSG and BSW's motions to join, PSG's motion to strike, and Tesla's Rule 12(b)(6) motion to dismiss are **GRANTED**.[5]  All other motions are **DENIED**.

## I.      BACKGROUND

A.    Factual Background

Mr. Austin alleges as follows.  Mr. Austin was employed by PSG and BSW beginning in the summer of 2019 "up through 2020" to work at several Tesla facilities.  *See* FAC at 2, 20.[6]  Mr. Austin claims he noticed a pay discrepancy and subsequently discovered a second set of payroll checks containing his personally identifiable information.  *Id.* at 21.  He maintains these checks

---

[5] The Court need not address Tesla's alternative motions to dismiss under Rule 12(b)(5) and strike under Rule 12(f).

[6] Unless otherwise indicated, this memo cites to the pages assigned by the Court's ECF docketing system.

1   represent unpaid wages PSG owes him.  *Id.*

2       Mr. Austin contends he also noticed certain health and safety violations and reported them

3   to "all involved organizations, and persons responsible."  *Id.*  Mr. Austin alleges his disclosures

4   did not sit well with his supervisors and his relationship with them became increasingly strained.

5   *Id.* at 22.

6       In early 2020, Mr. Austin met with a Tesla human resource officer and a hiring manager to

7   discuss a promotion and to resolve his health, safety, and wage issues.  *Id.*  At the end of the

8   meeting, Mr. Austin was assured his health, safety, and wage concerns would be resolved and was

9   instructed to take the rest of the day off with pay.  *Id.* at 23.  According to Mr. Austin, a series of

10  "missteps" occurred thereafter, including a false statement that he surreptitiously recorded a

11  supervisor in violation of California law.  *Id.*  Mr. Austin subsequently received a voicemail from

12  BSW personnel that his employment was being terminated because of his alleged violation of

13  California law.  *Id.* at 23, 28, 99.  Mr. Austin admits, however, that he "began documenting" and

14  made a written record of various conversations when he noticed the alleged violations.  *Id.*  The

15  FAC does not allege that he shared these records with any outside governmental agencies.

16      Due to his termination in early 2020, Mr. Austin says he applied for and received

17  unemployment and disability benefits—stemming from an alleged work injury—from the EDD.

18  *Id.*

19  B.   Procedural History

20      In February of 2020, Mr. Austin filed his original complaint along with an application to

21  proceed *in forma pauperis* ("IFP Application").  *See* Docket Nos. 1 ("Compl."), 3 ("IFP App.").

22  Chief Magistrate Judge Spero found Mr. Austin qualified financially for IFP status.  *See* Docket

23  Nos. 4, 5, 7.  Mr. Austin subsequently moved for a temporary restraining order (TRO) seeking

24  immediate reissue of payroll checks, immediate payment of unemployment benefits from the

25  EDD, and a correction of the rate utilized by the EDD to determine the amount of his benefits.

26  *See* Docket No. 6 ("First TRO Motion").

27      In May of 2020, Chief Magistrate Judge Spero screened Mr. Austin's complaint on the

28  merits pursuant to 28 U.S.C. § 1915(e) and issued his report and recommendation ("Report") that

United States District Court
Northern District of California

1    three of Mr. Austin's claims—Whistleblower Protection Act claim, Whistleblower Protection

2    Enhancement Act claim, and Conspiracy Against Rights claim (18 U.S.C. § 241)—be dismissed

3    with prejudice, while the remaining claims be dismissed with leave to amend for failing to state a

4    claim upon which relief can be granted.  *See* Docket No. 12 ("Report").  Chief Magistrate Judge

5    Spero also recommended that Mr. Austin's request for a TRO be denied for, *inter alia*, failing to

6    show that preliminary relief would prevent irreparable injury.  *See id.* at 10.

7            On June 26, 2020, Mr. Austin filed his FAC without the three claims Chief Magistrate

8    Judge Spero recommended be dismissed with prejudice.  He also omitted some of the original

9    claims that Chief Magistrate Judge Spero recommended be dismissed with leave to amend.  In

10   particular, Mr. Austin did not reallege his claims under the Equal Pay Act, 41 U.S.C. § 4712, First

11   Amendment, Americans with Disabilities Act, Genetic Information Nondiscrimination Act, and 42

12   USC § 1981.  The FAC added several new claims, *i.e.*:  claims of (1) wage theft under California

13   law and the Fair Labor Standards Act, (2) conversion, (3) breach of contract, (4) fraudulent

14   misrepresentation, (5) fraudulent concealment, (6) tortious interference with contractual relations

15   and economic advantage, (7) wrongful termination, and (8) whistleblower retaliation under

16   California law, the Fair Labor Standards Act, and the Sarbanes–Oxley Act.  A few days later, the

17   Court adopted Chief Magistrate Judge Spero's Report in full, dismissing the original complaint,

18   denying the TRO, and allowing the FAC to be filed.  *See* Docket No. 19 ("Order Adopting

19   Report").

20           Between August 30 and September 22, 2020, Mr. Austin filed:

21           (1) a second motion for a TRO against the EDD, Docket No. 27 ("Second TRO Mot.");

22           (2) a motion to join in the FAC the EDD as a required party, Docket No. 25 ("Joinder

23   Mot.");

24           (3) a motion seeking discovery from the EDD to support his injunctive relief request,

25   Docket No. 33 ("Discovery Mot.");

26           (4) his SAC, without leave of court, realleging all nine claims in the FAC, and adding three

27

28

1   new claims against the EDD, Docket No. 28 (SAC);[7] and

2       (5) a motion to amend the SAC to add the EDD as a defendant, Docket No. 36 ("Mot. to

3   Amend").

4       On November 11, 2020, Tesla moved to dismiss the FAC for insufficient service of

5   process under Rule 12(b)(5) and for failure to state a claim upon which relief can be granted under

6   Rule 12(b)(6).  *See* Docket No. 41 (MTD).  Alternatively, Tesla moved to strike portions of the

7   FAC under Rule 12(f) for being redundant, immaterial, impertinent, or scandalous.  *Id.*

8       On November 19, 2020, PSG moved to strike Mr. Austin's SAC under Rule 12(f) for

9   failure to obtain leave of court.  *See* Docket No. 49 (MTS).  PSG and BSW also moved separately

10  to join Tesla's motion to dismiss under Rule 12(g)(1).  *See id.*; Docket No. 72.  None of the

11  individual defendants have made an appearance.

## II.  DISCUSSION

A.   Mr. Austin's Motions

    1.   Motion for Injunctive Relief

15      Mr. Austin seeks a TRO pursuant to Rule 65(b) requiring the EDD to immediately pay past

16  due benefits he claims he is entitled to by law.  *See* Second TRO Mot. at 11-12.  Mr. Austin

17  maintains injunctive relief is necessary to prevent irreparable harm, as well as violations of the

18  Social Security Act (SSA), California's Labor and Unemployment Insurance Codes, and the

19  holdings of *Goldberg v. Kelly*, 397 U.S. 254 (1970) and *Cal. Dep't of Human Res. Dev. v. Java*,

20  402 U.S. 121 (1971).  *Id.* at 10.

21      The purpose of a TRO is to "preserv[e] the status quo and prevent[] irreparable harm just

22  so long as is necessary to hold a hearing and no longer."  *See E. Bay Sanctuary Covenant v.*

23  *Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bd. of Teamsters*

24  *& Auto Truck Drivers Loc. No. 70*, 415 U.S. 423, 439 (1974).  To obtain injunctive relief, Mr.

25  Austin must establish (1) " that he is likely to succeed on the merits, (2) that he is likely to suffer

26

27  ───────────────

28  [7] Mr. Austin alleges the EDD breached its insurance contract with him, discriminated against him based on physical disability, and deprived him of property without due process of law.  *See* SAC at 108–64.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his

2   favor,"(4) "and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*,

3   555 U.S. 7, 20 (2008).

4       Mr. Austin fails to satisfy the first *Winter* factor here because the EDD is immune from

5   suit under the Eleventh Amendment.  Absent consent, the Eleventh Amendment bars a suit in

6   federal court "in which the State or one of its agencies or departments is named as the defendant."

7   *Papasan v. Allain*, 478 U.S. 265, 276 (1986) (quoting *Pennhurst State Sch. & Hosp. v.*

8   *Halderman*, 465 U.S. 89, 100 (1984)).  "This bar exists whether the relief sought is legal or

9   equitable."  *Id.* at 276.  Given that the EDD is an instrumentality of the State of California, Mr.

10  Austin's claims for "past due amounts of owed payments," Second TRO Mot. at 11–12, is barred

11  from federal court by the Eleventh Amendment.  *See id.*; *see also Wood v. Sargeant*, 694 F.2d

12  1159, 1161 (9th Cir. 1982) (EDD is immune from suit in federal court); *Porter v. Jones*, 319 F.3d

13  483, 491 (9th Cir. 2003) (Eleventh Amendment bars federal lawsuits against a state where

14  retrospective relief is sought).

15      Accordingly, given he has shown no likelihood of success on the merits, Mr. Austin's

16  motion for injunctive relief is **DENIED**.

17          2.      Joinder Motion

18      Mr. Austin moved to join in the FAC the EDD as a required party under Rules 15(a),

19  19(a), and 21.  *See* Joinder Mot.  Mr. Austin claims adding the EDD as a party is necessary to

20  avoid duplicative litigation and to provide complete relief in a single action.  *Id.* at 6.

21      As discussed above, the EDD is immune under the Eleventh Amendment from suit in

22  federal court.  *See infra* Section III.A.1.  That is sufficient reason to deny Mr. Austin's joinder

23  motion.  *See Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 997 (9th Cir. 2020) (where a

24  party is immune from suit in federal court, they cannot be joined).  Moreover, as discussed below,

25  to the extent the joinder is integral to the SAC, the SAC was filed without consent or court order

26  and must be stricken.

27

28

United States District Court
Northern District of California

1    Accordingly, Mr. Austin's Rule 19 joinder motion is **DENIED**.[8]

2         3.    Discovery Motion

3    Mr. Austin moved under Rule 26(a) seeking documents from the EDD, including account

4    numbers and the rates utilized to determine the amount of his benefits, to support his motion for

5    injunctive relief.  *See* Discovery Mot. at 2.

6    The scope of discovery in federal court is limited "to 'nonprivileged matter that is relevant

7    to any party's claim or defense.'"  *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020)

8    (quoting Fed. R. Civ. P. 26(b)).  The information Mr. Austin seeks is irrelevant because he has no

9    claim or defense against the EDD, *see supra* Sections III.A.1 (motion for injunctive relief), III.A.2

10   (joinder motion), and information pertaining to the EDD's internal procedures bears no relation to

11   his claims against Defendants.

12   Accordingly, Mr. Austin's discovery motion is **DENIED**.[9]

13        4.    Motion to Amend

14   Mr. Austin moved under Rule 60(a) to amend the SAC to add defendants he mistakenly

15   omitted.  *See* Mot. to Amend at 2.

16   Rule 60 has no application here; it allows only the Court—not the parties—to amend

17   judgments—not pleadings—that contain clerical errors or were issued by inadvertence or mistake.

18   *See Am. Trucking Ass'ns, Inc. v. Frisco*, 358 U.S. 133, 145 (1958).

19   Although Rule 60 is inapplicable, the Court liberally construes Mr. Austin's motion as a

20   motion to amend under Rule 15.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (court

21   must construe pro se plaintiff's pleadings liberally).  Even so, the Court denies the motion because

22   leave to amend should not be granted where amendment would be futile.  *See Theme Promotions,*

23   *Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1010 (9th Cir. 2008).

24   _____

25   [8] Mr. Austin also cites Rules 15 and 21 in support of his motion for joinder.  *See* Joinder Mot.
     Rule 15 deals with amended and supplemental pleadings and Rule 21 permits the Court to add a

26   party.  Allowing Mr. Austin to add the EDD as a party to this action would be futile under either
     rule because the EDD is immune from suit in federal court, *see supra* Section III.A.1 (motion for

27   injunctive relief).

28   [9] Mr. Austin also cites Rules 44(a), 56(c), 65(a)-(b), and Local Rule 65 in support of his discovery
     motion, but none of these rules are applicable here.

1      First, Mr. Austin seeks to amend the SAC, not the FAC. The FAC is the operative

2  complaint, *see infra* Section III.B.1 (motion to strike the SAC), because as discussed below, the

3  SAC must be stricken as unauthorized. Accordingly, the motion to amend the SAC is not

4  cognizable. Second, Mr. Austin's motion with respect to the FAC must be denied because the

5  FAC already includes all the parties Mr. Austin seeks to add here, except for the EDD. As

6  previously discussed, however, Mr. Austin cannot add the EDD as a Defendant because it is

7  immune from suit in federal court under the Eleventh Amendment. *See Theme Promotions*, 546

8  F.3d at 1010.

9      Accordingly, Mr. Austin's motion to amend is **DENIED**.

10 B.    Defendants' Motions

11      1.    PSG's Motion to Strike the SAC

12      PSG moved to strike Mr. Austin's SAC in its entirety under Rule 12(f) because Mr. Austin

13 did not obtain leave from the Court to file it. *See* MTS at 4–5. Nor did Defendants consent to its

14 filing.

15      A plaintiff can amend the complaint *once* as a matter of course. *See* Fed. R. Civ. P.

16 15(a)(1). When a complaint is amended, it "supersedes the original, the latter being treated

17 thereafter as non-existent." *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir.

18 2015) (quoting *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997)). Additional

19 amendments can only be filed by leave of court or stipulation of the parties. *See* Fed. R. Civ. P.

20 15(a)(2). The SAC was unilaterally filed here without Defendants' consent or leave of court. It

21 shall therefore be stricken. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993),

22 *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

23      Accordingly, PSG's motion to strike the SAC is **GRANTED**.

24      2.    PSG and BSW's Motions to Join Tesla's Motion to Dismiss

25      PSG and BSW move to join Tesla's motion to dismiss pursuant to Rule 12(g)(1). *See*

26 Docket Nos. 49, 72. That Rule permits Rule 12 motions to be joined by other Rule 12 motions.

27 *See* Fed. R. Civ. P. 12(g)(1); *Moser v. Encore Capital Grp., Inc.*, No. 04CV2085-LAB (WMc),

28 2007 U.S. Dist. LEXIS 63810, at *3-4 (S.D. Cal. Aug. 24, 2007) (permitting a party to join in

United States District Court
Northern District of California

1    another party's motion to strike).

2         Accordingly, PSG and BSW's motions to join are **GRANTED**.

3         3.      Tesla's Motion to Dismiss the First Amended Complaint

4         Tesla moves to dismiss the FAC for failure to state a claim under Rule 12(b)(6).  *See* MTD

5    at 10-19.  Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and

6    plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

7    A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed.

8    R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's

9    decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S.

10   544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has

11   at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014)

12   (quoting *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013).  The court

13   "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light

14   most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

15   1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the

16   elements of a cause of action [and] must contain sufficient allegations of underlying facts to give

17   fair notice and to enable the opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135

18   (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).  "A claim has facial plausibility

19   when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

20   the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility

21   standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

22   a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

23         a.      Wage Theft

24         Mr. Austin alleges Defendants conspired to withhold his wages in violation of the federal

25   Fair Labor Standards Act (FLSA).  *See* FAC at 32-47.[10]  Mr. Austin maintains that he is owed

26   approximately $25,000 in back pay, evidenced by two sets of checks containing his personally

27

28   ――――――――――――――――
     [10] The Court does not address Mr. Austin's wage theft claim under California law.

United States District Court
Northern District of California

identifiable information.  *Id.* at 44.  Tesla contends Mr. Austin has not identified the specific hours he worked, the services he performed, the category of wages he is owed, or the sums for each category of wages that are alleged to be missing.  *See* MTD at 12.  Without this information, according to Tesla, Mr. Austin cannot establish that Tesla is liable under the FLSA.  *Id.*  In the alternative, Tesla argues that "[e]ven assuming arguendo that Mr. Austin sufficiently plead[ed] [those] claims, they still fail against Tesla because Mr. Austin acknowledges that Tesla did not pay his wages."  *Id.*

Congress enacted the FLSA to protect workers "from substandard wages and oppressive working hours."  *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) (quoting *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U. S. 728, 739 (1981)).  "Among other requirements, the FLSA obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1½ times the employees' regular wages."  *Id.*

Mr. Austin fails to specify how many hours he worked, the nature of the work he performed, the rate of pay for the various hours he worked, or the specific amount of money he is owed.  The only information provided in the FAC are conclusory allegations that Mr. Austin is entitled to "approximately $25,000," the various check stubs submitted in support thereof, and a naked assertion that Tesla, PSG, and BSW unlawfully withheld his wages.  *See* FAC at 32–47; Compl. at 44–47.  Although the plausibility of a claim is context specific, without more, Mr. Austin does not meet Rule 8's pleading requirements for his claim that he received substandard wages in violation of the FLSA.  *See Landers v. Quality Communs., Inc.*, 771 F.3d 638, 645 (9th Cir. 2015) ("a plaintiff asserting a violation of the FLSA overtime provisions must allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week"); *Iqbal*, 556 U.S. at 678 (plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable).  Furthermore, Mr. Austin concedes that Tesla was not responsible for administering his wages and that legal liability for any wage issues rests solely with PSG and BSW.  *See* FAC at 20-21.

Notably, Chief Magistrate Judge Spero's report clearly advised Mr. Austin that he needed to allege sufficient facts and stated:

United States District Court
Northern District of California

10

1
2
3
4
5
6
7

> While Austin need not provide evidence of the basis for his claims at the pleading stage, he must allege that the facts on which he basis his claims in fact occurred.  To the extent that his claims are based on purported wage theft, Austin has not specified how much any defendant was obligated to pay him (or specifically identified which Defendant employed him) and has not alleged that he was paid less than agreed or required, but instead merely references ambiguous, potentially duplicative payroll documents bearing Austin's social security number . . . .  Here, Austin has not addressed even whether he was paid less than his promised compensation, which would not in itself establish an FLSA violation, much less whether any defendant that employed him failed to pay minimum wage, overtime, or any other wage guaranteed by the FLSA.

8   *See* Report at 4–6.  Mr. Austin has not alleged he worked more than 40 hours per week and did not

9   receive compensation for that week.  *See Landers, Inc.*, 771 F.3d at 645.  Because Mr. Austin has

10  failed to allege sufficient facts despite being previously admonished to do so, his FLSA wage theft

11  claim is **DISMISSED** with prejudice.

12              b.      Whistleblower Claims

13          Mr. Austin alleges Defendants violated several whistleblower protection statues, including

14  the Sarbanes–Oxley Act (Sarbanes–Oxley) and the FLSA.[11]  *See* FAC at 90–97.  Mr. Austin states

15  that he engaged in protected activity when he complained of "violations of labor, and other laws,

16  to multiple levels of all defendant organizations including directly to Elon Musk" and was

17  subsequently retaliated against because of his disclosures.  *Id.* at 93–95.  Tesla argues Mr. Austin's

18  whistleblower claims fail because he does not allege that he was engaged in protected activity

19  under these statutes.  MTD at 17.  Tesla concedes that Mr. Austin filed a complaint related to the

20  FLSA, but argues it was filed *after* he was terminated and therefore cannot form the basis of his

21  retaliation claim.  *See id.* at 18-19.

22          To establish a prima facie case of retaliation under Sarbanes–Oxley, an employee must

23  first demonstrate they engaged in protected activity.  *See Van Asdale v. Int'l Game Tech.*, 577 F.3d

24  989, 996 (9th Cir. 2009); *see also Dig. Realty Tr., Inc. v. Somers*, 138 S.Ct. 767, 772 (2018)

25  (protected activity may include reporting internally).  An employee engages in protected activity

26  when the employee's communications definitively and specifically relate to mail fraud, wire fraud,

27

28  _____

[11] The Court does not address Mr. Austin's whistleblower retaliation claims under California law.

*United States District Court*
*Northern District of California*

1    bank fraud, securities fraud, any rule or regulation of the Securities and Exchange Commission, or

2    any provision of federal law relating to fraud against shareholders.  *Van Asdale*, 577 F.3d at 996-

3    97.  Mr. Austin does not allege that he reported any of these types of violations, and therefore has

4    not engaged in protected activity under Sarbanes–Oxley.

5            The FLSA prohibits an employer from discharging or discriminating against any employee

6    because the employee has filed a complaint related to the Act.  *See* 29 U.S.C. § 215(a)(3);

7    *Rosenfield v. Globaltranz Enters.*, 811 F.3d 282, 285 (9th Cir. 2015).  "To fall within the scope of

8    the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable

9    employer to understand it, in light of both content and context, as an assertion of rights protected

10   by the statute and a call for their protection."  *Kasten v. Saint-Gobain Performance Plastics Corp.*,

11   563 U.S. 1, 14 (2011).  As previously discussed, the FLSA establishes, *inter alia*, the federal

12   minimum wage and overtime standards.  *See supra* Section III.B.3.a (wage theft).  Mr. Austin,

13   however, does not allege that he reported being paid below the federal minimum wage, working

14   more than forty hours per week without receiving overtime compensation, or otherwise allege that

15   he reported a violation of the FLSA.  Thus, Mr. Austin has failed to demonstrate that he engaged

16   in protected activity under the FLSA.  Furthermore, Mr. Austin does not allege facts that would

17   demonstrate his complaint to supervisors, assuming *arguendo* they related to the FLSA, was

18   sufficient to give fair notice of the potential for a later claim of retaliation because he does not

19   indicate when the complaint was made, to whom he complained (apart from the generalized

20   assertion that he complained to "all defendant organizations including directly to Elon Musk," *see*

21   FAC at 93-94), or what was said in his complaint.  *See Kasten*, 563 U.S. at 13; *Rosenfield*, 811

22   F.3d. at 286; *see also Glynn v. City of Stockton*, No. 2:15-cv-00529-KJM-CKD (TEMP), 2016

23   U.S. Dist. LEXIS 97652 (E.D. Cal. July 25, 2016) (employer did not have fair notice because it

24   was reasonable to think employee was merely performing her job duties).

25           Again Mr. Austin was effectively forewarned by Judge Spero of the need to allege with

26   specificity facts supporting his whistleblower claims.  *See* Report at 4, 6-7.  Although Mr. Austin's

27   original complaint did not contain whistleblower retaliation claims under Sarbanes–Oxley or the

28   FLSA, he raised whistleblower retaliation claims under other statutory provisions stemming from

United States District Court
Northern District of California

United States District Court
Northern District of California

1  the same series of events.  Judge Spero indicated that Mr. Austin's original complaint failed "to

2  clearly identify any protected disclosure or to allege that [he] was in fact terminated or subject to

3  any other adverse action."  *Id.* at 7.  Judge Spero further stated that an "amended complaint raising

4  [a whistleblower retaliation] claim should also identify [the] applicable statutory basis for such

5  claim.  *Id.*  He thus received adequate notice of the need for specificity.  Judge Spero also

6  recommended that Mr. Austin contact the Federal Pro Bono Project's Pro Se Help Desk for

7  assistance.  However, Mr. Austin contends they provided him with unsatisfactory legal advice, and

8  he declined to utilize them further.  *See id.* at 11; FAC at 17-18.  He has opted to take his own

9  chances.

10      Accordingly, Mr. Austin's whistleblower retaliation claims under Sarbanes–Oxley and the

11  FLSA are **DISMISSED** with prejudice.

12  C.     Supplemental Jurisdiction

13      Because this case comes before the Court on the basis of federal question jurisdiction, and

14  all federal claims have now been dismissed, the Court must decide whether it wishes to exercise

15  supplemental jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367.[12]

16      A district court may decline to exercise supplemental jurisdiction under 28 U.S.C. §

17  1367(a) if:

18          (1) the claim raises a novel or complex issue of State law,

19          (2) the claim substantially predominates over the claim or claims
            over which the district court has original jurisdiction,
20

21          (3) the district court has dismissed all claims over which it has
            original jurisdiction, or
22
            (4) in exceptional circumstances, there are other compelling reasons
23          for declining jurisdiction.

24

25  [12] Mr. Austin indicates the Court also has jurisdiction on the basis of diversity of citizenship.  *See*
26  FAC at 3-4.  However, the Court does not have diversity jurisdiction because Mr. Austin alleges
    he is a citizen of California and that Tesla has its principal place of business in California.  *See id.*;
27  *see also* 28 U.S.C. § 1332(c)(1) ("corporation shall be deemed to be a citizen of every State . . .
    which it has been incorporated and of the State . . . where it has its principal place of business");
28  *Demarest v. HSBC Bank USA, N.A.*, 920 F.3d 1223, 1226 (9th Cir. 2019) (citizenship of each
    plaintiff must be diverse from each defendant).

28 U.S.C. § 1367(c).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded on other grounds by statute as recognized in Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000)).

Here, several considerations related judicial economy, convenience, fairness, and comity weigh in favor of declining to exercise supplemental jurisdiction over Mr. Austin's remaining state-law claims.  First, Mr. Austin's remaining claims sound in either tort or contract law which arise under California state laws.  Second, Mr. Austin wishes to pursue claims against the EDD, which he can only do in state court absent the EDD's consent.  Third, the litigation is still in its preliminary stages and the parties have not yet expended significant resources.  Fourth, the Court has spent insignificant time and resources supervising the case and has not performed any substantive legal analysis on Mr. Austin's state-law claims.  Finally, the multiple state-law claims substantially predominate over any cognizable federal claims.  Thus, the factors under § 1367 weigh against exercising supplemental jurisdiction over Mr. Austin's remaining state-law claims, and the Court declines to do so here.[13]

### III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** PSG and BSW's motions to join Tesla's motion to dismiss and PSG's motion to strike Mr. Austin's SAC.  The Court also **GRANTS** Tesla's Rule 12(b)(6) motion to dismiss and **DISMISSES** Mr. Austin's federal whistleblower and wrongful termination claims with prejudice.  All other motions are **DENIED**.  Finally, the Court declines to exercise supplemental jurisdiction over Mr. Austin's state-law claims.  Mr. Austin is free to pursue his remaining state-law claims in one of the Superior Courts of California.

---

[13] At oral argument, the Court was inclined to dismiss some of Mr. Austin's state-law claims, but after taking the matter under submission, the Court withholds ruling on any of Mr. Austin's claims arising under California law.

1    This order disposes of Docket Nos. 25, 27, 33, 36, 40, 41, 49, and 72.  The Clerk of the

2   Court is instructed to issue a Judgment and close the case.

3

4        **IT IS SO ORDERED**.

5

6   Dated: January 26, 2021

7

8   _____

9                                EDWARD M. CHEN
                                 United States District Judge

10

United States District Court
Northern District of California