**No. # 21 - 15151**
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

George Jarvis Austin,

*Plaintiff-Appellant [or Plaintiff-Appellee],*

v.

Tesla, et. al.

*Defendant-Appellee [or Defendant-Appellant].*

On Appeal from the United States District Court
for the Northern District of California
No.3:20:00800
Hon. District Judge Chen

## APPELLANT'S (OPTIONAL) REPLY BRIEF

George Jarvis Austin, esq. (TBA). Pro Se
2107 Montauban Ct., Stockton, CA
209.915.6304,
gaustin07@berkeley.edu
*Appellant, Pro Se*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES

STATUTORY [AND REGULATORY] AUTHORITIES

INTRODUCTION          1

ARGUMENT              5

I.    Appellant, as Pro Se Litigant, and Student, should have been granted leave to Amend in the Interest of Justice, in light of the favorable facts for his case, circumstances, disclosures, and liberal standard to amend in Interest of Justice expressed in *Robertson v. Dean Witter, Sharkey v. O'neal, and Barnes v. Saul.* 5

    A. Any alleged deficiencies could be easily corrected by Mr. Austin. 5

    B. The necessary plead facts, disclosures, and elements taken in whole, can properly be deduced, and inferred from Appellants pleading by the Court. 5

II.   Appellant's, pro se, pleadings of Joint Employers *FLSA* violations, regarding complained about unpaid overtime for multiple weeks, along with independently verified findings of fact per *General Order No. 71* disclosures, preliminary authenticating, and buttressing, said pleadings was more than sufficient under this Circuit's *Landers* standard.  5-6

    A. Appellee/Defendant Employers, including publicly traded Tesla, are jointly responsible for Appellant, pro se's, plead *FLSA* wage violations, given key factors of control, scheduling, inspection, power to hire and fire,

payroll, payment and supervision under *Chao,
Espinoza, and Scalia*. 5-6

III.   Appellant, Pro Se's, protected characteristics (as a Black man,
injured on the job requiring augmented work schedule) and
activity (complaints to supervisors, HR, management, and
company officers, etc.) regarding unpaid overtime, Health and
Safety, and other violations for multiple weeks leading to
adverse employment activity (wrongful termination based on
defamatory and racially offensive, and discriminatory, false
accusation of criminal recording), apparently as pretext, only
days after meeting with HR Officer is sufficient not only under
*FLSA* retaliation, but also 1981 intentional discrimination, and
retaliation standards (as articulated by this Circuit's *Rosenfield*,
and the Supreme Court's *Kasten*). 6-22

        A. Defendant Employers are jointly responsible for
           Retaliation, Intentional Discrimination, and Civil Rights
           violations due to employer retaliation because of *FLSA*
           violation, and other Health and Safety Code complaints
           under joint employment doctrine, as well as extended,
           and shared, liability articulated in *Arias*. 22-23

CONCLUSION

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*George Jarvis Austin v. Tesla, et. al.*
    *Opening Tesla Brief No. #21-15151,*
    *(DktEntry: 6,) Page# 14-23, 28-34, 35-43, 43-56*      *1, 5-7, 23*
*Adame v. Bank of America,*
    *No. C 09-00129 SI, at \*13 (N.D. Cal. Aug. 5, 2010)*
    *("See Morgan v. Regents of the Univ. of California,*
    *88 Cal. App. 4th 52, 69 (Cal. Ct. App. 2000)*         *16*
*Allen v. U.S. Bancorp,*
    *264 F. Supp. 2d 945, 950 (D. Or. 2003)*               *16*
*Alvarez, 339 F.3d 894,*
    *2003 WL 21788995, 2003 U.S.App.*
    *LEXIS 15622, at \*37*                                  *22*
*Arias v. Raimondo, 860*
    *F.3d 1185 (9th Cir. 2017)*                            *23*
*Bains LLC v. Arco Products Co., Div. of*
    *Atlantic Richfield Co., 405 F.3d 764, 769 n. 3*
    *(9th Cir. 2005)*                                      *11*
*Barnes v. Saul,*
    *No. 19-17203, at \*2 (9th Cir. Dec. 30, 2020)*        *2, 5*
*Bartelson v. Dean Witter Co.,*
    *86 F.R.D. 657, 665 (E.D.Pa. 1980)*                    *9*
*Brown v. Bd. of Educ.,*
    *347 U.S. 483 (1954)*                                  *17*
*Brown v. FPI Mgmt., Inc.,*
    *Case No.: C-11-05414-YGR, at \*6*
    *(N.D. Cal. Feb. 27, 2012)*                            *14*
*Chao v. A-One Med. Servs., Inc.,*
    *346 F.3d 908, 918 (9th Cir. 2003)*                    *6, 22*
*Cordova v. State Farm Ins. Cos.,*
    *124 F.3d 1145, 1149 (9th Cir. 1997)*                  *12*

*Crawford v. Roadway Express, Inc.,*
 *485 F. Supp. 914, 922 (W.D.La. 1980)*  *19*

*DeMatteis v. Eastman Kodak Co.,*
 *511 F.2d 306, 312 (2nd Cir.), modified,*
 *520 F.2d 409 (2nd Cir. 1975)*  *19*

*Des Vergnes v. Seekonk Water District,*
 *601 F.2d 9, 14 (1st Cir. 1979)*  *9*

*Enlow v. Salem-Keizer Yellow Cab Co., Inc.,*
 *389 F.3d 802, 808 (9th Cir. 2004)*  *17*

*Espinoza v. MH Janitorial Servs., No. 76752-6-I,*
 *at (Wash. Ct. App. Nov. 4, 2019)*  *6*

*Flores v. City of Westminster,*
 *873 F. 3d 739, 752 (9th Cir. 2017)*  *15*

*Gay v. Waiters' and Dairy Lunchmen's Union,*
 *Local 30, 489 F. Supp. 282 (N.D.Cal. 1980)*  *10*

*Gladstone, Realtors v. Village of Bellwood,*
 *441 U.S. 91, 113 n. 26, 99 S.Ct.*
 *1601, 1615, 60 L.Ed.2d 66 (1979)*  *9*

*Godwin v. Hunt Wesson, Inc.,*
 *150 F.3d 1217, 1221,1222 (9th Cir. 1998)*  *19*

*Green v. Mercy House., Inc.,*
 *No. C 18-04888 WHA, at \*7*
 *(N.D. Cal. Dec. 20, 2018)*  *17*

*Hicks v. ABT Associates, Inc.,*
 *572 F.2d 960, 969 (3rd Cir. 1978)*  *18*

*Hishon v. King Spalding,*
 *467 U.S. 69, 75, 104 S.Ct. 2229,*
 *81 L.Ed.2d 59 (1984)*  *11, 21*

*Jauregui v. City of Glendale,*
 *852 F.2d 1128, 1134 (9th Cir. 1988)*  *13*

*Johnson v. California,*
 *543 U.S. 499, 507 (2005)*  *7, 17*

*Johnson v. Lucent Technologies Inc.,*
 *653 F.3d 1000, 1006, 1007 (9th Cir. 2011)*  *7, 10-11, 15*

*Jones v. Mayer Co.,*

*392 U.S. 409, 410 (1968)*                                      *10, 15*

*Kasten v. Saint-Gobain Performance Plastics Corp.,*
    *563 U.S. 1, 14 (2011)*                                  *3, 7, 14*

*King v. Laborers International Union of North America,*
    *Local No. 818, 443 F.2d*
    *273, 278, 279 (6th Cir. 1971)*                          *9*

*Landers v. Quality Commc'ns, Inc.,*
    *771 F.3d 638, 640 (9th Cir. 2014)*                      *2, 6*

*Lazy Y Ranch Ltd. v. Behrens,*
    *546 F.3d 580, 592 (9th Cir. 2008)*                      *16, 18*

*Lindsey v. SLT Los Angeles, LLC,*
    *447 F.3d 1138, 1140-41 (9th Cir. 2005)*                 *2, 7-8*

*Macey v. World Airways, Inc.,*
    *14 Fair Empl. Prac. Cas. 1426*
    *(N.D.Cal. 1977)*                                        *19*

*McGinest v. GTE Serv. Corp.,*
    *360 F.3d 1103, 1121-22 (9th Cir. 2004)*                 *14*

*Mercer v. Southwest Airlines Co.,*
    *No. 13-cv-05057-MEJ, at *3,8*
    *(N.D. Cal. Dec. 18, 2014)*                              *16, 18*

*Metoyer v. Chassman, 504 F.3d*
    *919, 931, 933, 935, 937, 939 (9th Cir. 2007)*          *7, 11-12, 14, 19, 21-22*

*Mustafa v. Clark County School Dist,*
    *157 F.3d 1169, 1179-80 (9th Cir. 1998)*                 *12*

*National Organization for Women v. Sperry Rand Corp,*
    *457 F. Supp. 1338 (D.Conn. 1978)*                       *9*

*North Pacifica LLC v. City of Pacifica,*
    *526 F.3d 478, 486 (9th Cir. 2008)*                      *16, 18*

*Pacific Shores Properties, LLC v. City of Newport Beach,*
    *730 F.3d 1142, 1158 (9th Cir. 2013)*                    *14*

*Richardson v. Restaurant Marketing Associates, Inc.,*
    *527 F. Supp. 690, 694-95 (N.D. Cal. 1981)*              *9, 18*

*Robertson v. Dean Witter Reynolds, Inc.,*
    *749 F.2d 530, 541 (9th Cir. 1984)*                      *2, 5*

*Rogers v. EEOC,*

*454 F.2d 234, 238 (5th Cir. 1971)*          *12*

*Rosenfield v. GlobalTranz Enterprises, Inc.,*
     *811 F.3d 282, 286 (9th Cir. 2015)*          *3, 7, 14*

*Scalia v. Emp'r Sols. Staffing Grp.,*
     *951 F.3d 1097, 1103 (9th Cir. 2020)*          *6*

*Serrano v. Francis,*
     *345 F.3d 1071, 1082 (9th Cir. 2003)*          *16, 18*

*Sharkey v. O'Neal,*
     *778 F.3d 767, 774 (9th Cir. 2015)*          *2, 5*

*Slack v. Havens, 8 Empl. Prac. Dec.*
     *¶ 9492, page 5219 (S.D.Cal. 1973),*
     *aff'd, 522 F.2d 1091 (9th Cir. 1975)*          *10*

*Smith v. Sol D. Adler Realty Co.,*
     *436 F.2d 344, 349, 350 (7th Cir. 1970) (§ 1982)*   *9*

*Stringer v. Combe, Inc.,*
     *No. 17-cv-03192-WHO, at *1*
     *(N.D. Cal. Dec. 21, 2017)*          *15*

*United States v. Harris,*
     *106 U.S. 629, 643*          *15*

*United States v. Price,*
     *383 U.S. 787, 801;*
     *Jones v. Alfred H. Mayer Co., 392 U.S. 409)*          *15*

*Wallis v. J.R. Simplot Co.,*
     *26 F.3d 885, 889 (9th Cir. 1994)*          *19*

*Waters v. Heublein, Inc.,*
     *547 F.2d 466 (9th Cir. 1976), cert. denied,*
     *433 U.S. 915, 97 (1977)*          *9*

*Whiting v. Jackson State University,*
     *616 F.2d 116, 121 (5th Cir. 1980)*          *9*

*Williams v. Anderson,*
     *562 F.2d 1081, 1094 (8th Cir. 1977) (§ 1983)*   *9*

*Winston v. Lear-Siegler, Inc.,*
     *558 F.2d 1266 (6th Cir. 1977)*          *19*

*Woods v. Graphic Commc'ns,*
     *925 F.2d 1195, 1200-03 (9th Cir. 1991)*          *7, 12, 2*

## STATUTORY [AND REGULATORY] AUTHORITIES

All other relevant statutory, constitutional, or regulatory authorities, and other informational references shall appear in the Addendum to this brief.

# Introduction

"As mentioned in the Tesla Coverage "N*gg*r" is an aged term designed to demean, humiliate, strip away rights, and control, …. Black people during a time of mass enslavement, (www.nytimes.com/2018/11/30/business/tesla-factory-racism.html; https://www.baltimoresun.com/opinion/op-ed/bs-ed-op-1107-tesla-diaz-black-confidence-20211105-ultla hzhijes7bqks6j2uiefla-story.html;www.blackenterprise.com/black-ex-tesla-employee-awarded-more-than-1-million-after-company-fails-to-stop-supervisors-from-calling-him-the-n-word/ in many ways falsely labeling a Black man a "criminal" (*through word, or deed*) in modern parlance,  in a time of mass incarceration is its equivalent and serves the same nefarious purposes  (demean, humiliate, strip away rights, and control - especially when acting on this assumption.. Because we live in live in the first prison society according to Loic Wacquant (who Professor Seidman cites), with largest population of prisoners on the planet, with an over representation of Black men incarcerated, it is hard to overestimate the negative repercussion of a false criminal accusation.

- Appellant, Mr. **George Jarvis Austin**, signed Attorney of Record (for himself), Pro Se, in Opening Tesla Brief No. #21-15151, Ninth Circuit (after experiencing wage theft, retaliation, defamation, etc. as well as other labor and safety code violations) referencing *Elizabeth Hinton; DeAnza Cook*, The mass criminalization of Black Americans: A historical overview, 4 Annual Review of Criminology 261–286 (2021).  See also *Louis Michael Seidman*, Hyper-Incarceration and Strategies of Disruption: Is There a WayOut?, 9 OHIO ST. J. CRIM. L. 109 (2011)

"When we think of racism we think of Governor Wallace of Alabama blocking the schoolhouse door (https://www.businessinsider.com/george-wallaces-stand-in-the-school-house-door-2013-6) ; we think of water hoses, lynchings, racial epithets, and "Whites only" signs. These images make it easy to forget that many wonderful, goodhearted white people who were generous to others, respectful of their neighbors, and even kind to their Black maids, gardeners, or shoe shiners--and wished them well--nevertheless went to the polls and voted for racial segregation... Our understanding of racism is therefore shaped by the most extreme expressions of individual bigotry, not by the way in which it functions naturally, almost invisibly (and sometimes with genuinely benign intent), when it is embedded in the structure of a social system….In the era of colorblindness, it is no longer socially permissible to use race, explicitly, as a justification for discrimination, exclusion, and social contempt….Rather than rely on race, we use our criminal justice system to label people of color "criminals" and then engage in all the practices we supposedly left behind….As a criminal, you have scarcely more rights, and arguably less respect, than a Black man living in Alabama at the height of Jim Crow. We have not ended racial caste in America; we have merely redesigned it."

**— Michelle Alexander,** The New Jim Crow:
Mass Incarceration in the Age of Colorblindness

"The synonymy of Blackness with criminality is not a new phenomenon in America. Documented historical accounts have shown how myths, stereotypes, and racist ideologies led to discriminatory policies and court rulings that fueled racial violence in a post-Reconstruction era and has culminated in the exponential increase of Black male incarceration today. Misconceptions and prejudices manufactured and disseminated through various channels such as the media included references to a "brute" image of Black males. In the 21st century, this negative imagery of Black males has frequently utilized the negative connotation of the terminology "thug." In recent years, law enforcement agencies have unreasonably used deadly force on Black males allegedly considered to be "suspects" or "persons of interest." The exploitation of these often-targeted victims' criminal records, physical appearances, or misperceived

attributes has been used to justify their unlawful deaths... the connection between disproportionate criminality and Black masculinity"

- **Calvin John Smiley and David Fakunle** From "brute" to "thug:" the demonization and criminalization of unarmed Black male victims in America, Abstract

"Time and again, powerful and brilliant men and women have produced racist ideas in order to justify the racist policies of their era, in order to redirect the blame for their era's racial disparities away from those policies and onto Black people (and sometimes using Black People to do so).... The principal function of racist ideas in American history has been the suppression of resistance to racial discrimination and its resulting racial disparities. The beneficiaries of slavery, segregation, and mass incarceration have produced racist ideas of Black people being best suited for or deserving of the confines of slavery, segregation, or the jail cell. Consumers of these racist ideas have been led to believe there is something wrong with Black people, and not the policies that have enslaved, oppressed, and confined so many Black people."
— **Ibram X. Kendi**, Stamped from the Beginning:
The Definitive History of Racist Ideas in America

**Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1140-41 (9th Cir. 2005)** ("As discussed above in the analysis of the Supreme Court's holding in Reeves in section II.C., **credibility attacks alone may provide enough circumstantial evidence to support a finding of intentional discrimination** if no legitimate reasons for different treatment remain. While direct evidence of discriminatory intent, such as racial slurs, could further support such a finding, they are not required if a prima facie case has been established and the plaintiff presents "specific" and "substantial" "circumstantial evidence that tends to show that the … proffered motives were not the actual motives because they are inconsistent or otherwise not believable." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998).")

Appellant, Mr. Austin, as Pro Se Litigant, and Student (Straight A's, and A+'s, last nine semesters), filed an Opening brief highlighting the legal, and factual, fallacies, and errors, of counsel and the lower Court including issues of: 1. granting leave to Amend in the Interest of Justice, in light of the favorable facts for Mr. Austin's case, circumstances, disclosures, and liberal standard to amend in Interest of Justice expressed in *Robertson v. Dean Witter, Sharkey v. O'neal, and Barnes v. Saul* 2. pleadings of Joint Employers FLSA violations, regarding complained about unpaid overtime for multiple weeks, along with independently verified findings of fact per General Order No. 71 disclosures, was more than sufficient under this Circuit's *Landers* standard, and 3. protected activity

(complaints to supervisors, HR, management, and company officers, etc.) regarding unpaid overtime, Health and Safety, and other violations for multiple weeks leading to adverse employment activity (wrongful termination based on defamatory false accusation of criminal recording), apparently as pretext, only days after meeting with HR Officer is sufficient under FLSA retaliation standard (as articulated by this Circuit's *Rosenfield*, and the Supreme Court's *Kasten*).

Appellee, Tesla, filed a Response brief essentially re-iterating the errors highlighted by Mr. Austin's brief, but without actually responding to Appellant's (Mr. Austin's) arguments, and instead did not address Mr. Austin's arguments, points, facts, nor key Ninth Circuit, and Supreme Court precedent.  Further, Mr. Austin notes that only (1) One of (3) Three Appellee Joint Employers responded, at all, and motions for Summary Disposition in Mr. Austin's favor per *Circuit Rule 3-6, and FRAP 31* against the two non-responding Joint Employers as they have been served twice via the Ninth Circuit ECF system, and the Northern District ECF system, yet have not responded by deadlines set by the Ninth Circuit nor responded to the clear error highlighted in Opening Brief.

Although, Mr. Austin's claims, and arguments, are sufficient, the context of racial harassment, discrimination and retaliation at Tesla, especially for Black People, and Black men, heighten the injury, and accentuate the harm.  Recent Ninth Circuit decisions illustrate the discriminatory context, and hostile work

environment, Mr. Austin's pled facts happened in concert with (*especially in light of the recent 137 Million Dollar Judgment in the Ninth Circuit against Tesla. See e.g.* www.npr.org/2021/10/05/1043336212/ tesla- racial-discrimination-lawsuit  See also e.g. www.nytimes.com/2021/10/04/ business/tesla-racism-lawsuit.html ; techcrunch.com/2021/10/05/tesla-must-pay -137-million -in-discrimination-lawsuit).  Further, the pleadings fit not only Civil Rights violations, and retaliation in context of FLSA, H&S Code violation reporting, but also 42 USC 1981 violations. This defamatory, and discriminatory, set of injuries create joint liability for employers (I.e. racially discriminatory false criminal accusation of Mr.Austin, a Black man, while taking negative employment action), shortly after Mr. Austin made multiple complaints, and inquiries, as well as solution suggestions (including to health and safety committee & HR), regarding the discovered labor code (I.e. wage theft), health and safety code (including injury response, and prevention) violations, and retaliatory behavior pattern.  Subsequently, Mr. Austin motions for Summary Disposition against 2 joint Employers Balance Staffing, and Personnel Staffing Group, in his favor, as they have failed to respond to his arguments highlighting clear error, at all, in addition to filing his REPLY.

## ARGUMENT

**I.     Appellant, as Pro Se Litigant, and Student, should have been granted leave to Amend in the Interest of Justice, in light of the favorable facts for his case, circumstances, disclosures, and liberal standard to amend in Interest of Justice expressed in  *Robertson v. Dean Witter, Sharkey v. O'neal, and Barnes v. Saul.***

> **A. Any alleged deficiencies could be easily corrected by Mr. Austin.**

> **B. The necessary plead facts, disclosures, and elements taken in whole, can properly be deduced, and inferred from Appellants pleading by the Court.**

Because Joint Employer Tesla did not address the arguments Mr. Austin raised on this issue, and instead reiterated the previous clear error, Mr. Austin directs the Court's attention to Opening Brief (DktEntry: 6,) Page# 14-23, 28-34

**II.     Appellant's, pro se, pleadings of Joint Employers *FLSA* violations, regarding complained about unpaid overtime for multiple weeks, along with independently verified findings of fact per General Order No. 71 disclosures, preliminary authenticating, and buttressing, said pleadings was more than sufficient under this Circuit's *Landers* standard.**

**A. Appellee/Defendant Employers, including publicly traded Tesla, are jointly responsible for Appellant, pro se's, plead *FLSA* wage violations, given key factors of control, scheduling, inspection, power to hire and fire, payroll, payment and supervision under *Chao, Espinoza, and Scalia*.**

Because Joint Employer Tesla did not address the arguments Mr. Austin raised on this issue, and instead reiterated the previous clear error, Mr. Austin directs the Court's attention to Opening Brief (DktEntry: 6,) Page# 14-23, 35-43

**III.   Appellant, Pro Se's, protected characteristics (as a Black man, injured on the job requiring augmented work schedule) and activity (complaints to supervisors, HR, management, and company officers, etc.) regarding unpaid overtime, Health and Safety, and other violations for multiple weeks leading to adverse employment activity (wrongful termination based on defamatory and racially offensive, and discriminatory, false accusation of criminal recording), apparently as pretext, only days after meeting with HR Officer is sufficient not only under *FLSA* retaliation, but also 1981 intentional discrimination, and retaliation standards (as articulated by this Circuit's *Lindsey, Johnson, Metoyer, Woods, Rosenfield* and the Supreme Court's *Kasten*).**

Jointly responsible Employers added intentionally discriminatory insult to literal injury via their retaliation, and disparate treatment, as plaintiff a. suffered on the job injury, b. was continually being treated in Tesla Clinic, and c. had required augmented work duties/schedule due to injury while making complaints including the meeting with HR Officer (for which Plaintiff was fraudulently induced into going on the basis of promotion and ensuring payment of unpaid overtime), yet completely opposite was discriminatorily defamed via racially offensive false accusation, retaliated against, and is still injured  (to date has never received Workers compensation, after over 600 days from injury).  Because Joint Employer Tesla did not address the arguments Mr. Austin raised on this issue, and instead reiterated the previous clear error, Mr. Austin directs the Court's attention to Opening Brief (DktEntry: 6,) Page# 14-23, 43-56

However, the intro statements in Appellant's Opening Brief, along with initial quotes, and citations, help to frame, and capture (especially in context with recent Tesla litigation) the underlying 1981 colorable, and cognizable harms (in concert with the FLSA).  Appellant, a Black man, injured on the job at Tesla, qualifying under definition of disability, requiring augmented work schedule, and ordered to go to Tesla clinic day (and week) of retaliatory actions, and ultimately retaliatory discharge would qualify under both Labor Code, and section 1981.  This is especially true as the racially charged discriminatory

criminal accusation Tesla and joint employers used as pre-text, to not only

deprive Plaintiff of right to contract privileges, but refuse to answer the

mandatory questions about the pay issues regarding several weeks of missing

overtime pay [and Mr. Austin still wasn't paid]).  See e.g. Lindsey v. SLT Los

Angeles, LLC, 447 F.3d 1138, 1140-41 (9th Cir. 2005) ("credibility attacks

alone may provide enough circumstantial evidence to support a finding of

intentional discrimination)

Similar to the surrounding facts of the recent $137 million dollar jury

award, and Arbitrator's comments regarding the seriously problematic company

culture and response pattern to Black people, and specifically the Black man, and

person, being called "n-word" Mr. Austin's pleadings raised major issues with

explicit racial overtones, and intentional discriminatory conduct exhibited during

(pre, and post) retaliatory negative employment actions which are also sufficient,

and cognizable harm, under 1981.  See www.theguardian.com/technology

/2022/feb/18 /tesla-california-racial-harassment-discrimination-lawsuit.  See also

www.blackenterprise.com/ black-ex-tesla-employee-awarded-more-than-1-million

-after-company-fails-to-stop-supervisors-from-calling-him-the-n-word/.  See also

www.nytimes.com/2021/10/04/business/tesla-racism -lawsuit.html See also

Richardson v. Restaurant Marketing Associates, Inc., 527 F. Supp. 690, 694-95

(N.D. Cal. 1981) ("Defendant's own actions proved that plaintiff's fear of

retaliatory discharge was entirely justified, and the evidence …amply supported

…claim [of] … racist atmosphere…denied the benefits of a work environment

conducive to inter-racial harmony and association pursuant to Title VII and 42

U.S.C. § 1981.  Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 113 n.

26, 99 S.Ct. 1601, 1615, 60 L.Ed.2d 66 (1979); Des Vergnes v. Seekonk Water

District, 601 F.2d 9, 14 (1st Cir. 1979); Waters v. Heublein, Inc., 547 F.2d 466

(9th Cir. 1976), cert. denied, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100

(1977); Bartelson v. Dean Witter Co., 86 F.R.D. 657, 665 (E.D.Pa. 1980);

National Organization for Women v. Sperry Rand Corp, 457 F. Supp. 1338

(D.Conn. 1978). 4. A substantial factor in defendant's decision to terminate

plaintiff Simmons' was his race. Whiting v. Jackson State University, 616 F.2d

116, 121 (5th Cir. 1980); Williams v. Anderson, 562 F.2d 1081, 1094 (8th Cir.

1977) (§ 1983); Smith v. Sol D. Adler Realty Co., 436 F.2d 344, 349, 350 (7th

Cir. 1970) (§ 1982). Defendant's termination of plaintiff Simmons was a

violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 . 5. A substantial

factor in defendant's decision to [take negative employment action against]

plaintiff … was his race. Whiting v. Jackson State University; King v. Laborers

International Union of North America, Local No. 818, 443 F.2d 273, 278, 279

(6th Cir. 1971); Slack v. Havens, 8 Empl. Prac. Dec. ¶ 9492, page 5219

(S.D.Cal. 1973), aff'd, 522 F.2d 1091 (9th Cir. 1975). Gay v. Waiters' and Dairy Lunchmen's Union, Local 30, 489 F. Supp. 282 (N.D.Cal. 1980)")

For example Mr. Austin, a Black man, plead he worked multiple over-time days, and weeks (more than 40 hours), as the structure of that work at Tesla is literally everyday, and nearly every week, work hours accumulate Overtime (and Mr. Austin was not paid at least one week of the multiple weeks of overtime, and made complaints to correct that issue, repeatedly, leading up to HR meeting with HR Officer that preceded retaliation days later).  No more are the "badges and incidents of slavery" demonstrated by an employer in refusal to pay a Black person, timely, for their work (as enslavement in this country was Black people working for free).  See e.g. Jones v. Mayer Co., 392 U.S. 409, 410 (1968) ("The Thirteenth Amendment authorized Congress to do more than merely dissolve the legal bond by which the Negro slave was held to his master; it gave Congress the power rationally to determine what are the badges and the incidents of slavery and the authority to translate that determination into effective legislation. Pp. 439-440.(c) Whatever else they may have encompassed, the badges and incidents of slavery that the Thirteenth Amendment empowered Congress to eliminate included restraints upon "those fundamental rights which are the essence of civil freedom, namely, the same right"... as is enjoyed by white citizens).  See Johnson v. Lucent Technologies Inc., 653 F.3d 1000, 1006 (9th Cir. 2011) (""make and

enforce contracts" language in § 1981 to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Id. at 383, 124 S.Ct. 1836 (quoting 42 U.S.C. § 1981 (b)).") See also e.g. Metoyer v. Chassman, 504 F.3d 919, 935 (9th Cir. 2007) ("Section 1981 prohibits discrimination in the "benefits, privileges, terms, and conditions" of employment, see 42 U.S.C. § 1981 (b); see also Bains LLC v. Arco Products Co., Div. of Atlantic Richfield Co., 405 F.3d 764, 769 n. 3 (9th Cir. 2005), ...employee ... pay [and labor code safety issues] qualify as a privilege, term, or condition of employment. See, e.g., Hishon v. King Spalding, 467 U.S. 69, 75, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984**).")** The problematic culture is evidenced many times over as "Workers referred to the factory as the 'slaveship' or 'the plantation', where defendants' production leads 'crack the whip'," refusing to pay a Black person, timely, and then retaliating (with racially charged, and false, pre-text) is the essence of intentional discrimination. See www.theguardian.com/technology/2022/feb/18/ tesla-california-racial-harassment-discrimination-lawsuit.

The courage required to stand up for yourself, as a Black person, as Mr. Austin did (via complaints, proactive communication, follow up, etc.), in that context, becomes more evident when the culture is not only discriminatory against them, but retaliatory (triggering Company legal liability). See e.g.

Metoyer v. Chassman, 504 F.3d 919, 937 (9th Cir. 2007) ("bigoted remarks

…may tend to show discrimination, even if directed at someone other than the

plaintiff. Cordova v. State Farm Ins. Cos., 124 F.3d 1145, 1149 (9th Cir. 1997).

Furthermore, we have held that remarks by such a decision-maker tend to show

bias, even if several years old. See Mustafa v. Clark County School Dist, 157

F.3d 1169, 1179-80 (9th Cir. 1998).")  See also Woods v. Graphic Commc'ns,

925 F.2d 1195, 1200-01 (9th Cir. 1991) ("697 F.2d 1297, 1304 (9th Cir. 1982)

(Courts have long recognized that a workplace in which racial hostility is

pervasive constitutes a form of discrimination. See Rogers v. EEOC, 454 F.2d

234, 238 (5th Cir. 1971),  … [there is] an affirmative obligation to oppose

employment discrimination … If instead it acquiesced or joined in …

discrimination practices , it too is liable to the injured employees....affirmative

duty to combat discrimination in the workplace. Id. It did not rely on this duty to

find liability, however, because the acts … constituted more than mere passivity.

… deliberate choice not to process grievances, since the evidence proved "`far

more' than mere passivity." ….. Racial harassment is a form of discrimination

usually charged against an employer because the claim is grounded in the fact

that the offensive conduct alters the "terms and conditions of employment." ….

assumed responsibility for preventing discrimination in terms and conditions of

employment. "The same reasons which prohibit an employer from discriminating

on the basis of race "). Tesla, and joint employers, not only failed their affirmative duties, but intensified, and took company liability further, by acknowledging receipt of formal complaints, and instead of correcting intentionally discriminatory behaviors, intensified them through retaliation shortly after HR meeting Plaintiff requested per Vice Presidents suggestion for promotion.

Because Mr. Austin worked, above and beyond, additional days nearly every week to the point a supervisor/manager even inquired as to why I was working so hard, and attempted to put a cap on how much overtime I could work (*compounding amount missing unpaid overtime which according to State of California Auditing and Accounting Department Plaintiff was not only underpaid (at minimum approx 25K), but verified those findings of fact, disclosed to the Court, under penalty of perjury by Defendant Employers*) the initial discriminatory violations of refusing to pay a Black person, timely, and then retaliating is clear (i.e. *still without paying what's owed, racially offensive defaming, and negative employment actions, etc.*) See Jauregui v. City of Glendale, 852 F.2d 1128, 1134 (9th Cir. 1988) ("An individual suffers "disparate treatment " when ... "singled out and treated less favorably .... (prima facie case may be made "without any direct proof of discriminatory motivation."). ") See also McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1121-22 (9th Cir. 2004)..

.simply...demonstrating that a discriminatory reason more likely than not motivated [is sufficient])).  See Pacific Shores Properties, LLC v. City of Newport Beach, 730 F.3d 1142, 1158 (9th Cir. 2013) ("[Ninth Circuit] cases clearly establish that plaintiffs who allege disparate treatment under statutory anti-discrimination laws 'need not' demonstrate ... a similarly situated entity ...treated better.)  See also e.g. Brown v. FPI Mgmt., Inc., Case No.: C-11-05414-YGR, at *6 (N.D. Cal. Feb. 27, 2012) ("Plaintiff's race discrimination claims are ones of targeted discrimination").

However, due to Mr. Austin's protected characteristics (Black man severely injured on job at Telsa), and protected activity (complaints to supervisors, HR, management, and company officers, etc.) regarding unpaid overtime, Health and Safety, and other violations for multiple weeks leading to adverse employment activity (wrongful termination based on defamatory, racially charged, false accusation of criminal recording), apparently as pretext, only days after meeting with HR Officer Tesla's, and joining employer's, conduct are not only sufficient under FLSA retaliation standard (as articulated by this Circuit's *Rosenfield*, and the Supreme Court's *Kasten*), but also intentionally discriminatory Retaliation standards under 1981.  See Metoyer v. Chassman, 504 F.3d 919, 939 (9th Cir. 2007) ("The direct evidence of retaliatory intent … for … engagement in protected activity, and the timing of the suspension, which ultimately resulted in

… termination, raises a triable issue of fact as to the § 1981 retaliation claim.")
See also Johnson v. Lucent Technologies Inc., 653 F.3d 1000, 1007 (9th Cir.
2011) (" § 1981 retaliation claim is subject to the four-year statute of limitations")
See also Stringer v. Combe, Inc., No. 17-cv-03192-WHO, at *1 (N.D. Cal. Dec.
21, 2017) ("violation of 42 U.S.C. § 1981, which guarantees that all persons
shall have the same rights to make and enforce contracts as white citizens….T]he
term 'make and enforce contracts ' includes the making, performance,
modification, and termination of contracts , and the enjoyment of all benefits,
privileges, terms, and conditions of the contractual relationship." Id.; see also
Flores v. City of Westminster, 873 F. 3d 739, 752 (9th Cir. 2017)... attempted to
contract for certain services, and … was denied the right to contract for those
services.").") See also, e. g., United States v. Harris, 106 U.S. 629, 643. (The
approach of this Court to other Reconstruction civil rights statutes in the years
since Collins has been to "accord [them] a sweep as broad as [their] language."
United States v. Price, 383 U.S. 787, 801; Jones v. Alfred H. Mayer Co., 392
U.S. 409, 437.")

The discriminatory animus demonstrated in Joint Employer Tesla's
intentionally racially discriminatory, pre-textual, defamatory false allegation used
to block contract rights, and access (even to Plaintiff's medical care, and records
in Tesla Clinic after on the job injury) makes the harm even more cognizable. See

Adame v. Bank of America, No. C 09-00129 SI, at *13 (N.D. Cal. Aug. 5, 2010) ("See Morgan v. Regents of the Univ. of California, 88 Cal. App. 4th 52, 69 (Cal. Ct. App. 2000). "The causal link may be established by an inference derived from circumstantial evidence,")  See also Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008)." (A plaintiff may establish an equal protection claim by showing that the plaintiff was intentionally discriminated against on the basis of his membership in a protected class.)  See also e.g. Mercer v. Southwest Airlines Co., No. 13-cv-05057-MEJ, at *8 (N.D. Cal. Dec. 18, 2014) (".. In Trigueros v. Southwest Airlines, the court found that plaintiffs, who were both African Americans, alleged a prima facie case of discrimination when they were singled out by being taken off the plane twice for admonishment for (1) refusing to move a stowed carry-on bag after a Caucasian woman was not removed from the plane when she strenuously refused to move her bag, … plaintiffs had "presented sufficient circumstantial evidence to permit an inference of a discriminatory motive based on … treatment different ...""")  See also e.g.  Allen v. U.S. Bancorp, 264 F. Supp. 2d 945, 950 (D. Or. 2003) (finding the plaintiff stated a cause of action under § 1981 where he alleged that he was required to change lines at a bank because of his race")  See also Green v. Mercy House., Inc., No. C

18-04888 WHA, at *7 (N.D. Cal. Dec. 20, 2018) ("[i]t does contain, by contrast, facts plausibly suggesting intentional discrimination based on race . The complaint alleges that plaintiff's property manager remarked that African Americans were "more problems" for the apartment complex, falsely accused plaintiff's son of criminal conduct, and then banned plaintiff's son from the property").  See also Brown v. Bd. of Educ., 347 U.S. 483 (1954). Similarly, the stigma that intentional discrimination may cause is a cognizable harm. See generally Johnson v. California, 543 U.S. 499, 507 (2005)

Jointly responsible Employers added insult to literal injury via their retaliation as Mr. Austin (a Black Man) a. suffered on the job injury, b. was continually being treated in Tesla Clinic, and c. had required augmented work duties/schedule due to injury while making complaints including the meeting with HR Officer (for which Plaintiff was fraudulently induced into going on the basis of promotion and ensuring payment of unpaid overtime), yet completely opposite was retaliated against, is still injured  (and to date has never received Workers compensation, after over 600 days from injury).  See Enlow v. Salem-Keizer Yellow Cab Co., Inc., 389 F.3d 802, 808 (9th Cir. 2004) ("We conclude that [Plaintiff] presented sufficient direct evidence to support an inference that [Company's] decision to [act intentionally discriminatorily] was based on the fact [of protected characteristics]")  See also e.g. Mercer v.

Southwest Airlines Co., No. 13-cv-05057-MEJ, at *3 (N.D. Cal. Dec. 18, 2014)

([Finding inference of racial discrimination where] "Plaintiff relayed the story to

two other Southwest Airlines supervisors, one of whom told Plaintiff that his

removal from the flight "made no sense." Id. ¶ 17. Plaintiff attributes his being

singled out for removal from the flight to "intentional racial discrimination "")

See also Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lazy Y Ranch

Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City

of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008)." (A plaintiff may establish an

equal protection claim by showing that the plaintiff was intentionally

discriminated against on the basis of his membership in a protected class.)

"Fair notice" to liable joint employer's was provided and response from

their representatives confirms they understood the level of seriousness of

complaints.  One said as mentioned "you are barking up the wrong tree," the HR

Officer said in Tesla meeting prior to retaliation against  Appellant, George Jarvis

Austin "you shouldn't have to deal with that and take the rest of the day of paid

[Paraphrased] (prior to retaliating two days or so later)."  See e.g. Richardson v.

Restaurant Marketing Associates, Inc., 527 F. Supp. 690, 695 (N.D. Cal. 1981)

("Plaintiff … was fired in retaliation for [making formal complaint] against

defendant. Hicks v. ABT Associates, Inc., 572 F.2d 960, 969 (3rd Cir. 1978);

Macey v. World Airways, Inc., 14 Fair Empl. Prac. Cas. 1426 (N.D.Cal. 1977).

A retaliatory discharge of this type is a violation not only of Title VII but also of the Civil Rights Act of 1866, 42 U.S.C. § 1981 . Winston v. Lear-Siegler, Inc., 558 F.2d 1266 (6th Cir. 1977); DeMatteis v. Eastman Kodak Co., 511 F.2d 306, 312 (2nd Cir.), modified, 520 F.2d 409 (2nd Cir. 1975); Crawford v. Roadway Express, Inc., 485 F. Supp. 914, 922 (W.D.La. 1980).")  See also Metoyer v. Chassman, 504 F.3d 919, 931 (9th Cir. 2007) (""When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998); see also Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994) (concluding that on summary judgment, "[t]he requisite degree of proof necessary to establish a prima facie case . . . is minimal and does not even need to rise to the level of a preponderance of the evidence").")

Plaintiff/Appellant, Pro Se, made clear leading up to that conversation orally and in writing that there were unpaid overtime wages, and other pay, and time-log discrepancies that needed correction with management supervisors, HR Officers, etc.   Plaintiff worked so much overtime whereas management team member inquired into why I was working so hard, and so much, and attempted to put a cap/limit on how much I worked.  A variety of persons were provided fair notice including, but not limited to: Jerome Guillen <jerome@tesla.com ;

(who apparently took over for Bert Bruggeman), Freddy Rivera

<frivera@tesla.com ), multiple Supervisors, Deputy General Counsel Yusef

Mohamed  Ymohamed@tesla.com),  who Bert made intro to when saying I,

Appellant, was too smart to work in that Department given skills, intelligence,

background and pedigree, etc.), Elon Musk erm@tesla.com  (Elon Musk), and

management at Tesla prior to HR meeting with Vince Woodard, HR Officer,

vwoodard@tesla.com  from personal and my Tesla company email

geaustin@tesla.com.  All were informed prior to, and after, retaliatory,

defamatory, and negative employment action was made after Plaintiff/Appellant

wage, health and safety, record-keeping and other complaints.

Because Mr. Austin, Pro Se, also made clear Health and Safety Code

violations, while being injured on the job, while still being treated in Tesla Clinic

for those leg injuries, and is still suffering from that injury 600+ days later, was

blocked, and removed access to even Tesla Clinic for medical records

(inexplicably), and still hasn't received Workers compensation (i.e. treated in an

inferior manner) the intentionally discriminatory patterns are clear.  See Austin v

Atlina, et. al.  Prior to work related injury at Tesla Plaintiff could ride an outside

mountain bike, play basketball, and other activities, yet since injury to date has

not been able to engage due to leg pains and mobility limitations.  From initial

complaint the State of California, Auditing and Accounting, Department has

since proven the veracity of his wage complaints and even confirmed a minimum

amount of unpaid wages, and the specific account number from

Defendant/Appellee Employers, when Investigating the wage documents with

liable joint employers under the penalty of perjury (submitted to them by George

Jarvis Austin prior to paying him maximum weekly benefits based on audited

wages due to back injury from an non-work car accident).  See e.g. Metoyer v.

Chassman, 504 F.3d 919, 937 (9th Cir. 2007) ("can prove discrimination in

privileges of employment on the basis of discriminatory denial of benefits that

were not included in her contract. See Hishon, 467 U.S. at 75, 104 S.Ct. 2229

("An employer may provide its employees with many benefits that it is under no

obligation to furnish by any express or implied contract."). But this benefit must

be "part and parcel of the employment relationship." Id. For example in Hishon,

the Supreme Court held that "the opportunity to become a partner [in a law firm]

was part and parcel of an associate's status as an employee [at the law firm]." Id. at

76, 104 S.Ct. 2229")

Defendant Employers are jointly responsible for Retaliation and Civil

Rights violations (including 1981) due to employer retaliation because of FLSA

(i.e. Pay) violations, and other Health and Safety Code   See Woods v. Graphic

Commc'ns, 925 F.2d 1195, 1202-03 (9th Cir. 1991) ("Under 42 U.S.C. § 1981 ,

"all persons" are guaranteed the "same right . . . to make and enforce contracts . . .

as is enjoyed by white citizens." … a (entity), entrusted with the enforcement of a labor contract, may violate the statute (1981) if by racial discrimination it interferes with … ability to enforce their contract.")  As articulated in *Chao,* the initial violations, compounded by the reckless disregard, and malicious retaliation was not only willful, but discriminatory.  See Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 918 (9th Cir. 2003) ("A violation of the FLSA is willful if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA ].")  See Alvarez, 339 F.3d 894, 2003 WL 21788995, 2003 U.S.App. LEXIS 15622, at *37 ("was on notice of its FLSA requirements, yet took no affirmative action to assure compliance with them. To the contrary, ... actions may more properly be characterized as attempts to evade compliance. . . .")")  See also Metoyer v. Chassman, 504 F.3d 919, 933 (9th Cir. 2007) ("any discrimination that is actually shown to play a role in a contested employment decision may be the subject of liability.")

    **A.   Defendant Employers are jointly responsible for Retaliation, Intentional Discrimination, and Civil Rights violations due to employer retaliation because of *FLSA* violation, and other Health and Safety Code complaints under joint employment doctrine, as well as extended, and shared, liability articulated in *Arias.***

Because Joint Employer Tesla did not address the arguments Mr. Austin raised on this issue, and instead reiterated the previous clear error, Mr. Austin directs the Court's attention to Opening Brief (DktEntry: 6,) Page# 14-23, 43-56.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed, with leave to amend, and the case remanded to District Court for further proceedings.  See *Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1147 (9th Cir. 2000)

Date:  04/12/22

George Jarvis (or J.) Austin
*/s/ George Jarvis (or J.) Austin*

Plaintiff-*Appellant, Pro Se*

# ADDENDUM

**Statutes**

*42 U.S.C. § 1981*                                        4, 9,11.15.19,21
*29 U.S.C. Ch. 8 Fair Labor Standards Act (FLSA)* ,      (passim)

**Rules**

*FRAP 31*                        *3*
*General Order No. 71*           2, 5
*Ninth Cir. R. 3-6.*             3

**Other Authorities**

*Elizabeth Hinton &amp; DeAnza Cook, The mass criminalization of Black Americans: A historical overview, 4 Annual Review of Criminology 261–286 (2021).*

*Louis Michael Seidman, Hyper-Incarceration and Strategies of Disruption: Is There a WayOut?, 9 OHIO ST. J. CRIM. L. 109 (2011)*

*Peter Edelman's, Georgetown Law Professor, Not a Crime to Be Poor: The Criminalization of Poverty in America*

*Michelle Alexander, The New Jim Crow: Mass Incarceration in the Age of Colorblindness*

*Calvin John Smiley and David Fakunle From "brute" to "thug:" the demonization and criminalization of unarmed Black male victims in America, Abstract*

*Ibram X. Kendi, Stamped from the Beginning: The Definitive History of Racist Ideas in America*

*Source Info via Tesla Emails: Jerome Guillen <jerome@tesla.com; Freddy Rivera frivera@tesla.com ; Yusef Mohamed  Ymohamed@tesla.com; Elon Musk erm@tesla.com  (Elon Musk; Vince Woodard, HR Officer, vwoodard@tesla.com ; my (George Jarvis Austin's) Tesla company email geaustin@tesla.com.*

**Other Informational Sources, Reports, News**

[1] https://www.civilrightsca.com/protocol-tesla-discrimination-lawsuits/
- (Ex-workers Say Tesla is Still Racist, ...100-plus sworn statements from a class-action lawsuit and public records obtained by Protocol.)

[2]-https://www.google.com/amp/s/www.theverge.com/platform/amp/2021/8/5/22611725/tesla-paid-1-million-black-former-employee-racist-slur
- (Tesla reportedly paid $1 million to former employee who said supervisors called him a racist slur; Melvin Berry said the company failed to act when supervisors called him the N-word then retaliated - Berry is not the first worker to allege racism at Tesla's Fremont plant)

[3]-https://www.latimes.com/business/autos/la-fi-hy-tesla-racism-lawsuit-20171115-story.html
- (Marcus Vaughn ... alleges that supervisors and co-workers called him the N-word, but his written complaint to human resources about it was not investigated….standard operating procedure at the Tesla factory is pre-civil rights era race discrimination," the lawsuit says. "Race harassment has continued at the Tesla factory, and became more widespread, because despite their knowledge of the harassment, defendants have done nothing that could be reasonably expected to stop it."  Vaughn's legal action is the third lawsuit filed this year by black workers alleging that racial slurs were used against them and that the company ignored their complaints.)

[4]-https://www.google.com/amp/s/www.cbsnews.com/amp/news/tesla-million-melvin-berry-fremont-california-n-word-racial-discrimination/
- (Former Tesla employee who said supervisors called him the N-word awarded $1 million BY … Tesla has been ordered to pay roughly $1 million to a former employee who filed a legal complaint alleging he was called the N-word while working in the electric automaker's factory in California. Melvin Berry was hired by Tesla as a materials handler in 2015, but quit only 17 months later after being harassed on the job, … KKK signs and swastikas The Berry case is one of three racial discrimination lawsuits filed by former employees against Tesla since 2017.  In a class-action lawsuit representing more than 100 employees … Another Black employee said in court documents that he had been called the N-word about 100 times and saw KKK signs and swastikas spray-painted

on bathroom stalls.  In a third lawsuit, two former Tesla employees, a Black father and son, Owen Diaz and Demetric Di-az, also said they were subject to "severe and pervasive racial harassment" while working at the Fremont factory)

[5-]https://www.bloomberg.com/news/articles/2020-09-09/tesla-is-under-pressure-to-end-arbitration-for-racism-claims

- (Kristin Hull will have roughly three minutes to make the case against the company's use of mandatory arbitration for employee sexual harassment and racial discrimination claims.  Hull is the founder and chief executive of Nia Impact Capital, a social impact fund based in Oakland, California that invests in several sustainable energy companies.  Most people who work directly for Tesla sign away their rights to a trial. Hull wants to know how many discrimination and harassment cases go to arbitration, how much that's costing the company, and investors, and the demographics of those bringing the claims.  "We are in this to win this," said Hull during a socially distant interview in Oakland's historic Preservation Park, near Nia's office. "It's the issue of our time, and it's a Civil Rights issue. "Arbitration is used as a form of claim suppression," Cliff Palefsky, a San Francisco employment lawyer, who has testified before Congress about mandatory arbitration, said of the practice broadly. "Instead of court, it's a secret tribunal with no right of appeal."  Tesla's board opposes the proposal…Tesla has faced multiple allegations of racial discrimination and harassment at its factory in Fremont, California,"..In recent years, Tesla has faced high profile allegations of racial discrimination at its Fremont plant, where roughly 10,000 people work. In late 2017, a Black worker, Marcus Vaughn, filed a lawsuit saying the plant was a "hotbed of racist behavior."...In 2018, Owen Diaz and his son Demetric filed suit as well, alleging a pattern of racial harassment and hostility. Demetric dropped his suit voluntarily, but Owen's case is slated for trial before a U.S. district court judge in San Francisco in October. The company said in an emailed statement to Bloomberg at the time that it takes discrimination and harassment of all forms "extremely seriously" and has a dedicated team focused on investigating and addressing workplace concerns. All three men were contract workers, so they never signed arbitration agreements. Tesla

argued that Vaughn's case shouldn't go to court anyway; the car-maker lost that appeal.)

[6]-https://www.reuters.com/article/us-tesla-lawsuit-racism-idUSKBN1YZ18E

- (A federal judge rejected Tesla Inc's effort to dismiss claims by two former workers that the California electric car factory where they worked was a hotbed of racial hostility, clearing the way for a possible trial.  In a decision on Monday, U.S. District Judge William Orrick in San Francisco found open questions over whether Owen Diaz and his son Demetric Di-az faced "severe and pervasive racial harassment" in 2015 and 2016 at Tesla's factory in suburban Fremont, … The plaintiffs, who are black, said they were subjected to repeated racial epithets dozens of times, as well as racist cartoons, and that supervisors engaged in or did little to stop the racism...Orrick said Diaz could pursue claims that Tesla allowed and did not take reasonable steps to stop racial harassment...He said punitive damages might be available if Tesla must have known about the harassment and "ratified" it, even if only lower level workers were directly involved…. The case will proceed to Trial.")

[7]-https://www.claimsjournal.com/news/national/2020/09/09/299249.htm

- (Since 2014, workers have filed 145 complaints with California's Department of Fair Employment and Housing alleging discrimination at Tesla on the basis of race, age, gender, disability, medical leave, pregnancy, sexual orientation, and national origin, according to a synopsis provided by the agency after a California Public Records Act request. This May, three separate people alleged they were forced to quit because of their race. While the state issued right-to-sue letters in all three cases allowing them to proceed in court, it's possible they'll be bound by arbitration clauses. Tesla did not respond to a request for comment on the complaints.
- Arbitration has long been the bane of employment discrimination lawyers. Instead of having a hearing before a jury, cases go in front of an arbitrator, which industry data shows are overwhelmingly older White men. Transcripts usually aren't available to the public, keeping bad actors out of the public eye and allowing inappropriate behavior to go unchecked.
- "The deck is stacked in a much less favorable way for employees," said Hilary Hammell, an employment discrimination attorney at Levy Vinick Burrell Hyams LLP in Oakland, who has written about how forced

arbitration can hurt Black workers.  Employers, and their lawyers, argue that the process is expedient, just, and cost-effective. And in the era of Covid-19, arbitration proceedings can be conducted remotely, while jury trials have largely ground to a halt…..For Hull, this isn't her first time pushing companies for more transparency. In June, she got 70% support from shareholders at cyber-security company Fortinet Inc. for a proposal requiring the firm to release an annual diversity report)

[8]-https://capitalandmain.com/tesla-workers-file-charges-with-national-labor-board-as-battle-with-elon-musk-intensifies-0419

- (Tesla Workers File Charges With National Labor Board as Battle With Elon Musk Intensifies...Workers at Tesla's Fremont, California electric car factory have filed a complaint with the National Labor Relations Board, accusing Elon Musk's company of illegal surveillance, coercion, intimidation and prevention of worker communications….. Workers at Tesla's Fremont, California electric car factory have filed a unfair labor practice charge with the National Labor Relations Board (NLRB), accusing the company of illegal surveillance, coercion, intimidation and prevention of worker communications. The employees, who have been attempting to organize the approximately 7,000 workers at the plant through the United Auto Workers, claim that Tesla violated multiple sections of the National Labor Relations Act, which protects the right to unionize.)

[9]-https://www.google.com/amp/s/www.nytimes.com/2018/11/30/business/tesla-factory-racism.amp.html

- (Owen Diaz, right, and his son, Demetric, said they had heard racial slurs directed toward them while working at the Tesla factory in Fremont, Calif. Owen Diaz, right, and his son, Demetric, said they had heard racial slurs directed toward them while working at the Tesla factory in Fremont, Calif.Credit...Ryan Christopher Jones for The New York Times Menial Tasks, Slurs and Swastikas: Many Black Workers at Tesla Say They Faced Racism African-American workers have reported threats, humiliation and barriers to promotion at the plant. The automaker says there is no pattern of bias…. Owen Diaz had seen swastikas in the bathrooms at Tesla's electric-car plant, and he had tried to ignore racist taunts around the factory. "You hear, 'Hey, boy, come here,' 'N-i-g-g-e-r,' you know, all this," said Mr. Diaz, who is African-American. Then, a few hours into his shift

running the elevators, he noticed a drawing on a bale of cardboard. It had an oversize mouth, big eyes and a bone stuck in the patch of hair scribbled over a long face, with "Booo" written underneath….On that winter night in the factory, when, he said, a supervisor admitted drawing the figure as a joke, Mr. Diaz had had enough. He typed a complaint to a Tesla manager on his phone. "Racist effigy & drawing" was the subject.

- "When you really just look at it, you ask yourself at some point, 'Where is my line?'" said Mr. Diaz, 50, who worked at the factory as a contractor for 11 months before he quit in May 2016….Interviews, internal communications and sworn legal statements filed by more than two dozen current or former Tesla employees and contractors describe a wide range of concerns among some African-American workers at the factory in Fremont, including threats by co-workers, demeaning assignments and barriers to advancement. Three lawsuits by former workers accusing Tesla of failing to curb racial discrimination and harassment have been filed since early last year, including one by Mr. Diaz awaiting trial."….One suit accusing Tesla of racial discrimination and harassment, filed last November in California Superior Court, seeks class-action status. The lawyers involved — Lawrence A. Organ and Bryan Schwartz, whose practices focus on workplace rights — say they have identified dozens of potential plaintiffs. Each lawyer has won multimillion-dollar judgments in other harassment or discrimination cases against major employers. Tesla is seeking to move the case into arbitration, which would require workers to bring individual lawsuits rather than a joint claim.

- The state's Department of Fair Employment and Housing says it has issued 10 "right to sue" letters — a precondition for a discrimination lawsuit — to employees complaining of racial bias at the Fremont plant. Dozens of other complaints against Tesla are pending, but the agency would not say how many involved race.  In an email to employees last year, which the company later released in response to one of the lawsuits, Elon Musk, Tesla's chief executive, warned against "being a huge jerk" to members of "a historically less represented group." At the same time, he wrote, "if someone is a jerk to you, but sincerely apologizes, it is important to be thick-skinned and accept that apology.")

[10]-https://www.industryweek.com/leadership/article/22024555/teslas-a-hotbed-for-racist-behavior-worker-claims-in-suit

- (Tesla's a Hotbed for Racist Behavior, Worker Claims in Suit - The employee says he's one of more than 100 African-American Tesla workers affected and is seeking permission from a judge to sue on behalf of the group….Tesla Inc.'s production floor is a "hotbed for racist behavior," an African-American employee claimed in a lawsuit in which he alleged black workers at the electric carmaker suffer severe and pervasive harassment. The employee says he's one of more than 100 African-American Tesla workers affected and is seeking permission from a judge to sue on behalf of the group. He's seeking unspecified general and punitive monetary damages as well as an order for Tesla to implement policies to prevent and correct harassment…."Although Tesla stands out as a groundbreaking company at the forefront of the electric car revolution, its standard operating procedure at the Tesla factory is pre-Civil Rights era race discrimination," the employee said in the complaint, filed Monday in California's Alameda County Superior Court….. The lawsuit was filed on behalf of Marcus Vaughn, who worked in the Fremont factory from April 23 to Oct. 31. Vaughn alleged that employees and supervisors regularly used the "N word" around him and other black colleagues. Vaughn said he complained in writing to human resources and Musk…..Larry Organ, an attorney at the California Civil Rights Law Group, said that Vaughn reached out to him after the law firm sued Tesla on behalf of other African American employees who complained about racial harassment this year. A Tesla assembly line worker sued in March, claiming the company did little to stop coworkers from harassing him.)

[11]-https://www.google.com/amp/s/www.businessinsider.com/tesla-workers-testimonies-recall-racism-being-called-n-word-slurs-2021-7%3famp

- (A Tesla factory worker said he was called the N-word '100 times' by coworkers, according to a sworn testimony….Former Tesla workers routinely used racial slurs against Black employees, according to sworn testimonies obtained by Protocol.  Aaron Craven, a Black worker at Tesla's Fremont factory, said in a sworn statement he had been called the N-word "approximately 100 times," and saw KKK signs and swastika graffitied in bathroom stalls. Workers submitted 103 declarations in March 2021 as part

2017 lawsuit suing Tesla for racial harassment.  "I was directly called n-----
and n---- approximately 100 times at the Fremont factory," Craven said a
sworn statement reviewed by Protocol. "I heard the terms n----- and n----
used over 100 times by coworkers, and by my lead Auggie, in the Tesla
factory."Additionally, ex-contractor Aaron Minor stated he heard Tesla
employees refer to the Fremont factory as a plantation and Black people as
"cotton workers," Protocol reported.

- Two separate lawsuits filed against Tesla in 2017 alleged racial harassment
  and discrimination at the Fremont plant. Former Tesla worker DeWitt
  Lambert said coworkers regularly called him the N-word and made
  sexually explicit comments.  In 2019, Black and Latino workers at a Tesla
  factory in Buffalo, New York, filed discrimination complaints with the US
  Equal Employment Opportunity Commission (EEOC) and the New York
  Division of Human Rights. The six former workers said they heard racial
  slurs and racist comments at the factory.)

[12]-https://www.protocol.com/workplace/tesla-fremont-racism-discrimination

- (Racist graffiti, 'plantation' jokes and 100 potential lawsuits: Ex-workers
  say Tesla is still racist...The N-word, demeaning jokes and retaliation on
  the basis of race are all common at Tesla, according to 100-plus sworn
  statements from a class-action lawsuit and public records obtained by
  Protocol….When Aaron Craven clocked in to work every day at the Tesla
  Fremont factory, he knew he might hear or be called the N-word. When he
  walked into the bathroom stalls, he knew he might see graffiti of "KKK" or
  a swastika.
- "I was directly called n----- and n---- approximately 100 times at the
  Fremont factory," Craven said in a sworn statement. "I heard the terms
  n----- and n---- used over 100 times by co-workers, and by my lead
  Auggie, in the Tesla factory.  Former Tesla workers also called
  ex-contractor Aaron Minor "n-----," and Minor, too, found swastikas in the
  bathroom. Minor heard the factory called "the Plantation" and its Black
  employees "cotton workers." "My understanding is that people refer to the
  Tesla factory as the Plantation and call employees cotton workers because
  Tesla treats its Black employees like slaves," he wrote in a sworn statement.
- These sworn statements and 103 other declarations sworn under penalty of
  perjury comprise a 500-page exhibit filed in March 2021 as part of a 2017

lawsuit that alleges Tesla discriminates against Black people and has
allowed a racially hostile work environment to fester in its factories. The
lawsuit's allegations against the company are not unique:....Race-based
complaints about Tesla are on average more common than the proportion
of race-based complaints state-wide; while about 10% of all cases
requesting right to sue were filed on the basis of race with the DFEH in
2020 (and less than that in previous years), more than 30% of the Tesla
cases from 2018 to 2021 are based on allegations of racial discrimination.")

[13]-https://www.google.com/amp/s/www.latimes.com/business/technology/story
/2021-08-05/ex-tesla-employee-called-racial-slur-wins-rare-1-million-reward%3f_
amp=true

- (Ex-Tesla employee called a racial slur wins rare $1-million reward … a
  Black former employee who won a ruling after alleging that supervisors
  called him the "N-word" ….. Tesla Inc. has paid more than $1 million to a
  Black former employee who won a ruling that the company failed to stop
  his supervisors from calling him the "N-word" at the electric-car maker's
  Northern California plant.  The rare discrimination award by an arbitrator
  to Melvin Berry, which followed a closed-door proceeding, caps years of
  complaints from Black workers that Tesla turned a blind eye to the
  commonplace use of racial slurs on the assembly line and was slow to clean
  up graffiti with swastikas and other hate symbols scrawled in common
  areas. It ends a years-long and emotionally grueling fight launched by
  Berry, who was hired by the company as a materials handler in 2015 and
  quit less than 18 months later.

- Arbitration typically keeps disputes between employees and companies
  secret, but court filings reveal that the arbitrator found Berry's allegations
  more credible than Tesla's denials, though she called it a "difficult" case
  after hearing from witnesses on both sides. Berry claimed that when he
  confronted a supervisor for calling him the "N-word," he was forced to
  work longer hours and push a heavier cart…."I hope the world knows that
  an arbitrator found Tesla treats its employees like this," Berry, 47, told
  Bloomberg News in a phone interview Wednesday. He ..said he's now
  taking time off to focus on his mental health as he still hasn't "gotten over
  the healing process."…..," arbitrator Elaine Rushing said in her May 12
  ruling, which hasn't been previously reported. Rushing, a former judge in

Sonoma County Superior Court for almost two decades….. Rushing "was clearly troubled by the facts, culture at the company and the tone of the defense.".....After his supervisors turned against him, Berry alleged, he suffered from sleepless nights, panic attacks, depression and anxiety, prompting him to seek help from a psychologist for the first time, according to the ruling. He broke down during the arbitration proceeding as he recalled how he "became quiet and cried a lot" and "questioned his sanity," Rushing wrote…….."This is a case of a 23-year-old White man with only a high-school education supervising a 43-year-old African-American man with a college degree, a classic invitation for serious resentment," she wrote…….In 2020, 31 complaints were filed with California's Department of Fair Employment and Housing alleging discrimination at Tesla on the basis of race, age, gender expression, disability and pregnancy, according to data obtained from public records. The state agency issued right-to-sue letters in a majority of the cases; a handful were closed with insufficient evidence. In July, Valerie Workman, Tesla's vice president of people, posted on the company's blog to remind employees about the use of slurs and epithets as they prepared to return to offices.")

[14]-https://www.google.com/amp/s/mobile.reuters.com/article/amp/idUSKBN1YZ18E

- (A federal judge rejected Tesla Inc's effort to dismiss claims by two former workers that the California electric car factory where they worked was a hotbed of racial hostility, clearing the way for a possible trial….In a decision on Monday, U.S. District Judge William Orrick in San Francisco found open questions over whether Owen Diaz and his son Demetric Di-az faced "severe and pervasive racial harassment" in 2015 and 2016 at Tesla's factory in suburban Fremont, which employs more than 10,000 people. The plaintiffs, who are black, said they were subjected to repeated racial epithets dozens of times, as well as racist cartoons, and that supervisors engaged in or did little to stop the racism….Orrick said Diaz could pursue claims that Tesla allowed and did not take reasonable steps to stop racial harassment.)

[15]-https://www.google.com/amp/s/futurism.com/tesla-pays-racial-slur/amp

- (TESLA PAYS FORMER EMPLOYEE $1 MILLION FOR CALLING HIM HORRIFIC RACIAL SLUR… "I HOPE THE WORLD KNOWS THAT AN ARBITRATOR FOUND TESLA TREATS ITS EMPLOYEES LIKE THIS."  A former Tesla employee named Melvin Berry was awarded over $1 million in an arbitration hearing earlier this year after he filed complaints about racist harassment at work — including his direct supervisor calling him the N-word and then punishing him with longer hours of harder work for speaking out about it.

- Toxic Culture…..Arbitrator Elaine Rushing decided that the evidence that Berry — who quit after 18 months and dealt with panic attacks, depression, and anxiety as a result — was harassed was clear…..“Racial discrimination awards are rare and it seems this was especially hard-fought,” employment lawyer Cliff Palefsky, who wasn't involved in the case, told Bloomberg News. Rushing, he added, “was clearly troubled by the facts, culture at the company, and the tone of the defense.”)

[16]-https://www.sec.gov/Archives/edgar/data/1318605/000121465920005699/p612202px14a6g.htm

- (The resolution requests that Tesla's Board of Directors oversee the preparation of a report on the impact of the use of mandatory arbitration on Tesla's employees and workplace culture. The report should evaluate the impact of Tesla's current use of arbitration on the prevalence of harassment and discrimination in its workplace and on employees' ability to seek redress should harassment and discrimination occur…..The proposal speaks to the widespread experience in the economy of discrimination in the workplace by African American, Hispanic and female employees, despite this discrimination being unlawful under the Civil Rights Act of 1964. Those companies that tolerate discrimination and harassment in their own workplaces allow unnecessary legal, brand, financial, and human capital risk within their companies. In contrast, studies show that companies with strong workplace equity programs are more likely to outperform peers with poor diversity programs.

- The use of mandatory arbitration in employee agreements limits employees' remedies for wrongdoing,....Corporate Policies that Allow Harassment and Discrimination Risk Investors' Capital….Identified

benefits of diverse teams include: access to top talent, better understanding of consumer preferences, a stronger mix of leadership skills, informed strategy discussions, and improved risk management. Diversity, and the different perspectives it encourages, has also been shown to encourage more creative and innovative workplace environments.

- In contrast, companies where harassment and discrimination exist may experience reduced employee morale and productivity, increased absenteeism, challenges in attracting talent and difficulties in retaining talent. Employees directly experiencing workplace discrimination….Tesla employees have alleged harassment and discrimination on the basis of race and gender. A number of employees have come forward with allegations of harassment and discrimination at Tesla. While the company disputes these allegations on various grounds, the pattern of allegations is difficult for reasonable investors to ignore:

  ○ n 2017, AJ Vendermeyden alleged that she experienced harassment and discrimination as an engineer at Tesla's Fremont plant. According to Ms. Vendermeyden, a part of the factory was known to women as the "predator zone." While Tesla stated that it conducted investigations of Ms. Vendermeyden's claims and found them baseless, it held the case in arbitration, preventing it from going to court. Ms. Vendermeyden was eventually fired from Tesla. Tesla told The Guardian that Ms. Vendermeyden was fired for "falsely attacking our company in the press."13

  ○ In 2017, DeWitt Lambert alleged that he experienced harassment and violent threats while working at Tesla's Fremont, California. His allegation included recordings of co-workers stating "N***, we take your ass home, n***. Shred you up in pieces, n***. Cut you up, n***. Send your ass so everyone in yo family so everybody can have a piece of you, n***."14 In March of that year, Tesla general counsel, Todd Maron, wrote to Mr. Lambert's lawyers: "In terms of settlement, we are willing to pay Mr. Lambert [redacted], but only if we are to resolve this matter before there is media attention, preferably within the next few hours." He also wrote, "If there is media attention first, there will be no deal."15 Mr. Lambert's case was held in arbitration and Mr. Lambert was fired from Tesla. The

company said that it had discovered problems with his conduct and work history.16

○ In November 2019, WIVB4, a local news station in Buffalo, reported that six African American and Hispanic Tesla workers had reported racist experiences in Tesla's Buffalo plant. As of February, 2020, WIVB4 reported that it was aware of twelve employees that had inquired about filing complaints with the U.S. Equal Employment Opportunity Commission and the state Division of Human Rights, alleging a racist, hostile work environment. In its interviews, however, employees spoke anonymously, given their fears of retaliation from the company.)

[17]-https://www.google.com/amp/s/revealnews.org/article/how-tesla-and-its-doctor-made-sure-injured-employees-didnt-get-workers-comp/

● (How Tesla and its doctor made sure injured employees didn't get workers' comp … Inside a medical clinic not far from Tesla's electric car factory, Yvette Bonnet started noting a troubling pattern. The automaker's workers' compensation manager would pressure her boss, Dr. Basil Besh, to make sure Tesla wasn't on the hook for certain injured workers.  And in her observation, Besh did whatever he could to not jeopardize his chance to run Tesla's on-site factory clinic.

● "He would say, 'I'm not losing the contract over this – get this case closed,'" said Bonnet, who was operations manager for Besh's Access Omnicare clinic in Fremont, California, for about a year.  "Besh wanted to make certain that we were doing what Tesla wanted so badly," she said. "He got the priorities messed up. It's supposed to be patients first."...)

[18]-https://jalopnik.com/tesla-pressured-doctors-to-block-workers-comp-benefits-1833968118

● (Tesla Pressured Doctors to Block Workers Comp Benefits to Save Money: Report … Imagine getting shocked at work by an industrial electric current so severely that you fall backwards, urinate on yourself, and have pain, numbness, and balance problems. Third-party doctors subsequently confirm, yep, you were electrocuted.

● But then a manager from your employer steps in and says, no it was just minor static electric shock, like the kind you get when you touch a doorknob after walking on the rug, just so the company isn't on the hook

for the associated medical costs with your treatment and doesn't have to report the workplace injury to regulators…..This is not the first time Reveal has brought to light sketchy workplaces practices from the electric car company. The news organization has previously reported on Tesla's practices of keeping workplace injuries off the books and providing questionable medical assistance on-site before sending workers back to the line.)

[19]-https://revealnews.org/podcast/working-through-the-pain-at-tesla/

- Working through the pain at Tesla...After being called out for hiding worker injuries at its factory, Tesla decides to double down….

[20]-https://revealnews.org/blog/tesla-fired-safety-official-for-reporting-unsafe-conditions-lawsuit-says/

- Tesla fired safety official for reporting unsafe conditions, lawsuit says … A former high-level safety official at Tesla Inc. has sued the company for failing to treat injured employees and for misclassifying work injuries to avoid reporting them as required by law...Carlos Ramirez, a director of environment, health, safety and sustainability at Tesla until June 2017, alleges he was fired in retaliation for reporting unsafe working conditions, such as chemical exposures and fires, and for refusing to go along with what he believed to be illegal practices.
- More from Insult to Injury…. An April investigation by Reveal from The Center for Investigative Reporting found that Tesla undercounted its workers' injuries, making the official injury rate look better than it actually was.  The suit also says Ramirez, who is Mexican American, faced harassment based on his race and national origin and that Tesla failed to address it.
- Ramirez previously worked as vice president of environmental, health and safety for SolarCity, a solar panel manufacturer Tesla acquired in 2016...Carlos Ramirez, a former safety official at Tesla Inc., sued the automaker for allegedly firing him in retaliation for reporting unsafe working conditions and safety violations. … After he came to Tesla, Ramirez and his team audited the company's internal injury tracking system, the suit says. The 2017 audit "revealed numerous instances of lack of treatment of Tesla employees that suffered workplace injuries,

recordkeeping violations, and improper classification of workplace injuries to avoid treating and reporting workplace injuries," it says.

[21]-https://revealnews.org/blog/im-not-who-i-used-to-be-severely-injured-worker-sues-tesla/

- Severely injured worker sues Tesla: 'I'm not who I used to be'...Chuong Nguyen (left) helps look after his brother, Son, as he recovers from a severe burn injury at Tesla's car factory in 2017….A man severely burned in an electrical explosion at Tesla's car factory is suing the automaker for allegedly putting him in harm's way "in order to increase productivity at the expense of human lives."

- Son Nguyen was working as a contractor at the Fremont, California, factory on June 5, 2017, when an explosion called an arc flash threw him back 15 to 20 feet and engulfed him in flames...More from Insult to Injury...Nguyen's lawsuit says Tesla should have cut electricity to the equipment he was working on, but refused to because the company didn't want to temporarily stop production.

- Nearly a year later, he is in constant pain and covered in scars and skin grafts, his pinky finger amputated, a compression garment covering him from head to knees. Nerve pain, which he says feels like "thousands of pins and needles poking you," keeps him up at night. He struggles with basic tasks and dreads the surgeries to come…."I don't want anybody to go through what I went through,"

[22]-https://revealnews.org/blog/tesla-hit-by-government-investigation-after-reveal-story/

- Tesla hit by government investigation after Reveal story…..Tesla officials Laurie Shelby (left) and Gaby Toledano read the concerns of then-safety lead Justine White, who emailed CEO Elon Musk's chief of staff in 2016. "I know what can keep a person up at night regarding safety," she wrote. "I must tell you that I can't sleep here at Tesla."....California's workplace safety agency opened an investigation of Tesla Inc. on Tuesday, the day after Reveal from The Center for Investigative Reporting published an investigation of safety problems and unreported injuries at the carmaker's Fremont factory.

- Reveal found that Tesla did not count all of its work injuries as required by law, making its safety record look better than it actually is…."Cal/OSHA

takes seriously reports of workplace hazards and allegations of employers' underreporting recordable work-related injuries and illnesses," said Erika Monterroza, spokeswoman for the state Department of Industrial Relations, which includes the Division of Occupational Safety and Health, known as Cal/OSHA…..Cal/OSHA has cited Tesla for more than 40 health and safety violations since 2013. This year, the agency cited the company for failing to provide employees with effective information and training on chemical hazards in their work areas, as well as failing to "effectively assess the workplace" for chemical hazards.

- [23]-https://revealnews.org/article/inside-teslas-factory-a-medical-clinic-designed-to-ignore-injured-workers/
  - INSULT TO INJURY - Inside Tesla's factory, a medical clinic designed to ignore injured workers …. Former Tesla worker Stephon Nelson clutches his back as he climbs steps outside his girlfriend's home in Oakland, Calif. He was injured in August while working in the trunk of a Model X. Something slipped and its hatchback crunched down on his back. … When a worker gets smashed by a car part on Tesla's factory floor, medical staff are forbidden from calling 911 without permission.

  - The electric carmaker's contract doctors rarely grant it, instead often insisting that seriously injured workers – including one who severed the top of a finger – be sent to the emergency room in a Lyft….Injured employees have been systematically sent back to the production line to work through their pain with no modifications, according to former clinic employees, Tesla factory workers and medical records. Some could barely walk.

  - The on-site medical clinic serving some 10,000 employees at Tesla Inc.'s California assembly plant has failed to properly care for seriously hurt workers, an investigation by Reveal from The Center for Investigative Reporting has found…..The clinic's practices are unsafe and unethical, five former clinic employees said….But denying medical care and work restrictions to injured workers is good for one thing: making real injuries disappear. "The goal of the

> clinic was to keep as many patients off of the books as possible," said Anna Watson, a physician assistant who worked at Tesla's medical clinic for three weeks in August.….Watson has nearly 20 years of experience as a medical professional

[24]-https://www.google.com/amp/s/nypost.com/2021/07/07/ex-tesla-worker-says-he-was-called-n-word-100-times-by-coworkers/amp/

[25]-https://www.gwclaw.com/blog/tesla-minimizing-work-injuries/

[26]-https://www.audacy.com/kcbsradio/blogs/doug-sovern/tesla-fined-california-lack-workers-compensation-janitors

- The state of California is fining Tesla ...The California Labor Commissioner has cited and fined Tesla Energy Operations and its previous subcontractor ... each for violating state labor laws.…The company was not paying for workers compensation insurance,"

[27]-https://www.bloomberg.com/news/articles/2019-09-27/tesla-committed-unfair-labor-practices-nlrb-judge-rules

- tesla-committed-unfair-labor-practices-nlrb-judge-rules

[28]-https://www.gwclaw.com/blog/tesla-minimizing-work-injuries/

[29]-http://www.janitorialwatch.org/2019/10/24/tesla-and-its-contractors-again-cited-and-fined-for-labor-violations-in-california/

- Tesla and its Contractors Again Cited and Fined for Labor Violations in California
- October 24, 2019 / Press Release.. For the second time in recent months, an investigation from the Maintenance Cooperation Trust Fund has turned into a citation from the state LOS ANGELES – The State of California has cited Tesla and its janitorial contractors for not paying janitors their full wages at one of Tesla's San Jose facilities.
- Workers who cleaned the facility between 2015 and 2018 were underpaid for the hours they worked, workers received checks with no deductions statement, and were misclassified as independent contractors. Tesla's contractors, Leonardo Valencia and Orbit USA, LLC were cited and owe $370,000 for willfully misclassifying workers, including workers who worked at the Tesla facility. Leonardo Valencia and Orbit USA, LLC were also cited for underpaid work at the Tesla facility and other locations. Tesla was cited for more than $30,000 for violations of minimum wage and

overtime requirements, meal and rest period violations, failure to comply with itemized statement provision, plus additional penalties.

- "Too often, subcontractors have overworked and underpaid janitors with no consequences. New California laws help to give workers more protections and hold companies like Tesla responsible," said Rafael Ventura, Interim Executive Director. "Tesla must stop using contractors who evade the law and exploit their workers to make their bottom line."
- "I was misclassified as an independent contractor so my employer could cut costs, even though I worked at Tesla full time," said Santiago Paz. "I was denied overtime and my workers' rights. I worked hard and I deserve to be paid fairly."
- Wage theft (and these types of labor code violations are a wide spread problem - Addenda ref). The company itself, as well as its subcontractors, as well as these particular subcontractors, who they (Tesla) also have a legal duty to ensure paid, and worker's compensation according to rulings … (see addenda - see specific rulings from them).

[30]-Tesla's new gigafactory will highlight the 2 biggest labor trends in America - Transmosis CyberOps Small Business AI Cybersecurity Software

[31]-This Week in Threats to Workers' Rights - Pacific Standard

[32]- Report: Wage Theft is Pervasive in Corporate America | Good Jobs First
- (A new report finds that many large corporations operating in the United States have boosted their profits by forcing employees to work off the clock, cheating them out of required overtime pay and engaging in similar practices that together are known as wage theft.)

[33] - Tesla | Today's Workplace
- (Hiding Injuries at Tesla: Where The Worker Still Doesn't Matter, Under-recording of workplace injuries and illnesses is bad, and far too common. But at the automaker Tesla, in Fremont, California, under-recording is more than a paper exercise in deception — at Tesla it means withholding needed medical treatment of injured workers so that their injuries aren't report on OSHA logs. We wrote previously about reports that workers are getting hurt at Tesla and that many of those injuries are not being recorded.... CalOSHA has inspected the company a number

of times and found recordkeeping violations.  Now Evans shows the many ways that Tesla is keeping injuries off the OSHA logs.)

[34] -Tesla factory workers stiffed on overtime, denied breaks: lawsuit

- (Tesla factory workers stiffed on overtime, denied breaks: lawsuit, Tesla and a contracting company failed to pay contract workers fully for overtime and denied them legally mandated meal and rest breaks, a contract employee at Tesla's Fremont auto-assembly plant said in a lawsuit that also claims she was fired for complaining about employee-payment practices….Nezbeth-Altimore's lawsuit, filed April 19 in Alameda County Superior Court, is not the only contractor-related legal action facing the company. A lawsuit by three African American men, hired through workplace-staffing agencies to work at the Fremont factory, alleges that the company led by CEO Elon Musk oversaw a work environment hostile to black people, featuring racial epithets and racist graffiti.)

[35] -Elon Musk apologizes for Tesla workers paid just $5 an hour by subcontractor | Tesla | The Guardian

[36] -Tesla Fined for Labor Violations, Second Investigation by the State of California Ongoing - The Maintenance Cooperation Trust Fund

[37] - Tesla's $1 Million Settlement of Wage Claims Gets Final Approval

[38] - Tesla Fined By California For Lack Of Workers Compensation For Janitors

[39] -What is Wage Theft and How to Know if You're a Victim of it | Money

- (Wage Theft Costs American Workers Billions Each Year.A 2017 study from the Economic Policy Institute (EPI) found that 2.4 million employees across the ten largest U.S. states lost $8 billion annually to just one form of wage theft)

[40] - Exposing Wage Theft Without Fear - National Employment Law Project

- (workers face an especially high risk of retaliation along with potentially more devastating consequences. On a daily basis, workers who want to assert their basic rights risk not only their job and income, but also their

long-term economic security, trauma...Why Do Workers Experience Retaliation?  Workers in the U.S. generally bear the burden of enforcing their own labor protections—it is up to them to come forward to report violations.  When a worker comes forward to report a workplace violation, we know that employers often retaliate or threaten to retaliate against the worker.  ·Under our current system, workers bear the entire risk of retaliation from their employer when they report violations.   What Does Retaliation Look Like?   Retaliation takes many shapes and can be difficult to pinpoint or prove. Employers, for example, may fire a worker, demote a worker, reduce a worker's hours, change worker's schedule to a less favorable one, subject a worker to new forms of harassment, unfairly discipline a worker, threaten to report a worker or a worker's family member to immigration authorities, and much more.)

[41] Editorial: Tesla worker betrayal brings call for action (East Bay Times) – East Bay Times

- (The Sunday story by the Bay Area News Group's Louis Hansen about the hidden workforce that expanded Tesla's Fremont factory was shocking. It raises red flags about labor practices and B1 visa abuses throughout the Bay Area.  The betrayal by Tesla is especially disappointing. The cutting-edge carmaker was regarded as the role model for bringing manufacturing jobs back to California. It was the prototype feel-good, green industry that paid its skilled workers a premium for their ultra-productive work.  But not the workers imported to build the expansion of the state-of-the-art plant. They were hired through a contractor and paid the wages they would make in their own impoverished countries, $5 an hour in some cases.  In a formal response to the story Monday, Tesla issued a statement saying "mistakes were made" and the company pledged to "put in place additional oversight to ensure that our workplace rules are followed even by sub-subcontractors to prevent such a thing from happening again.")

[42] Elon Musk's SpaceX shortchanged its workers and now it must pay

- In 2014, a handful of former employees claiming unfair compensation brought suits against SpaceX that California courts …. company agreed to settle in August 2016 and finalized a settlement for about $4 million in May

[43] https://www.teslarati.com/tesla-factory-workers-file-charges-labor-board/
  ● unfair labor practice charge, alleging illegal surveillance, coercion, intimidation and prevention of worker communications by Tesla

[44]https://www.cnbc.com/2017/04/25/workers-involved-in-union-activities-say-tesla-is-illegally-intimidating-them.html

[45]-https://www.reuters.com/article/us-tesla-union/uaw-accuses-musk-of-threatening-tesla-workers-over-unionization-idUSKCN1IP2XS

[46]-https://www.vox.com/identities/2019/9/30/20891314/elon-musk-tesla-labor-violation-nlrb

[47]-www.theguardian.com/technology/2022/feb/18/ tesla-california-racial-harassment-discrimination-lawsuit

[48]-www.blackenterprise.com/black-ex-tesla-employee-awarded-more-than-1-million-after-company-fails-to-stop-supervisors-from-calling-him-the-n-word

[49]-www.nytimes.com/2021/10/04/business/tesla-racism -lawsuit.html

[50]-https://www.baltimoresun.com/opinion/op-ed/bs-ed-op-1107-tesla-diaz-black-confidence-20211105-ultlahzhijes7bqks6j2uiefla-story.html



# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**  21-15151

I am the attorney or self-represented party.

**This brief contains**  5771  **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ◉ complies with the word limit of Cir. R. 32-1.
- ○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*
  - ○ it is a joint brief submitted by separately represented parties;
  - ○ a party or parties are filing a single brief in response to multiple briefs; or
  - ○ a party or parties are filing a single brief in response to a longer joint brief.
- ○ complies with the length limit designated by court order dated _____ .
- ○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  s/ George Jarvis Austin    **Date**  04/12/2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                                              *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 21-15151

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Mr. Austin's Appellant Reply Brief

**Signature** | s/ George Jarvis Austin | **Date** | 04/12/2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15** | *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form17instructions.pdf

**9th Cir. Case Number(s)** | 21-15151

The undersigned attorney or self-represented party states the following:

(●) I am unaware of any related cases currently pending in this court.

( ) I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

( ) I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Although there is overlap, with certain pleadings, and causes of action, with a few other cases including Ninth Circuit's Diaz v. Telsa, see e.g. www.theguardian.com/technology/2022/feb/18/ tesla-california-racial-harassment-discrimination-lawsuit ;www.blackenterprise.com/black-ex-tesla-employee-awarded-more-than-1 -million-after-company-fails-to-stop-supervisors-from-calling-him-the-n-word ;  www.nytimes.com/2021/10/04/ business/tesla-racism -lawsuit.html ;https://www.baltimoresun.com/opinion/ op-ed/bs-ed-op-1107-tesla-diaz-black-confidence-20211105-ultlahzhijes7bqk s6j2uiefla-story.html

**Signature** | s/George Jarvis Austin          **Date** | 04/12/2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 17**                                                                 *New 12/01/2018*

# Unique

## GEORGETOWN LAW

Combining a world-renowned faculty, a dedication to intellectual stimulation and community, and a location in the heart of the nation's capital, Georgetown is a **unique** place to study law.

### Legal Education in Its Fullest Sense

Georgetown Law seeks not only to impart the tools of the lawyer's trade, but also to foster reflection and inquiry into the nature of law and the role and responsibility of lawyers in a global society. The goal is education in its fullest sense — not only mastery of "black letter law," but a sense of the philosophical, political, social and ethical dimensions of law, the awakening of an abiding curiosity about its nature and purposes, and the instilling of a sense of responsibility development and direction.

### A Dynamic Intellectual Community

Georgetown nurtures the very highest standards of scholarly inquiry, intellectual rigor and e behavior in a way that respects each student's individuality and fosters his or her particular interests and career goals. The result is a dynamic intellectual community, in which students an unprecedented range of academic opportunities both inside and outside the classroom.

### An unparalleled Vantage Point

Located in Washington, D.C., within blocks of the U.S. Congress that enacts laws, the Su

"What law school in the country is better positioned to deal with the way the profession is going than Georgetown? We have connections to the corporate bar and criminal justice, and we have extensive clinics. We have been oriented to government and politics for decades. Wherever the legal market is going, what law school has more beachheads there than we do? This is a good place to be."

**Daniel R. Ernst,** Professor of Law

# University of California

ON THE NOMINATION OF THE FACULTY OF THE

COLLEGE OF LETTERS AND SCIENCE

HAVE CONFERRED UPON

## GEORGE JARVIS AUSTIN

THE DEGREE OF BACHELOR OF ARTS

WITH A MAJOR IN SOCIOLOGY

WITH ALL THE RIGHTS AND PRIVILEGES THERETO PERTAINING

GIVEN AT BERKELEY

THIS NINETEENTH DAY OF DECEMBER IN THE YEAR

TWO THOUSAND AND NINE

GOVERNOR OF CALIFORNIA AND
PRESIDENT OF THE REGENTS

CHANCELLOR AT BERKELEY

PRESIDENT OF THE UNIVERSITY

ACTING EXECUTIVE DEAN OF THE COLLEGE

# Austin wants to be sheriff



Look out Tom Tramel, there may be a future sheriff in town.

Five-year-old George Jarvis Austin attends the Kindergarten Center and he wants to be a police officer or a sheriff when he grows up.

Son of Charlotte Hall-Austin, George has begun his school career with a positive attitude. "George is an enthusiastic learner and he is a well-liked and caring person," says one of his teachers.

His interests include T-ball and books, especially the Berenstein Bears series.

According to Principal Earl Watts, "George is a very smart child. He is totally involved in all classroom activities and loves school. With George's ability, I think he can accomplish his goals in life."



# CALIFORNIA SENATE

**EXPIRATION**

09/30/2013



**Eye Color**

Brown

**Height**

6-0

Austin, George

Governance & Fin







**California State Senator, Fifth District**

# Lois Wolk News

State Capitol, Sacramento, CA 95814 ▪ tel 916.651.4005 ▪ fax 916.323.2304 ▪ www.sen.ca.gov/wolk

**FOR IMMEDIATE RELEASE**

**CONTACTS:**       Melissa Jones, (916) 651-4005

July 18, 2012

Melissa.Jones@sen.ca.gov

### Stockton residents accepted to prestigious Capitol fellowship

*George Austin and Faith Lane selected for 2012-2013 Senate Fellowship Program*

SACRAMENTO– Stockton residents George Austin and Faith Lane have been accepted to the prestigious Senate Fellows Program at the State Capitol, where



**Stockton residents accepted to prestigious Capitol fellowship**

*George Austin and Faith Lane selected for 2012-2013 Senate Fellowship Program*

SACRAMENTO– Stockton residents George Austin and Faith Lane have been accepted to the prestigious Senate Fellows Program at the State Capitol, where they will work for 11 months as a full-time staffer in a Senate office.

"I am grateful to be selected and very excited for the opportunity to grow, learn more about our system of government, and most importantly, to serve," said Austin, a graduate of the University of California at Berkeley.

"I feel honored to be given this opportunity," said Lane, a graduate of the University of California at Santa Barbara. "Following my term as a Senate Fellow, I hope use my knowledge acquired through the program to better my home in the Central Valley."





•ıll AT&T LTE      1:57 PM      ⊕ ∗ 53% ▮

🔒 mail-attachment.googleusercontent.com







## 2012-13
## CALIFORNIA SENATE FELLOWS



**About you**
**Name:** George Austin

**Hometown:** Stockton

**Hobbies/Interests:** Basketball, Golf, Boxing, Cooking, Kayaking, Travel

**Favorite book(s)/movie(s)/TV show(s)/music:** Finding Forester, Goodwill Hunting, Godfather Trilogy, Coming to America, The Golden Child, Batman Begins, Dark Knight, Dark Knight Rises, Hoop Dreams, Above the Rim, Wedding Crashers, Lord of the Rings 1 & 2, Matrix 1 & 2, Ray, Hangover

The West Wing, Doug, Bloomberg Enterprise, Charlie Rose, The Mentor, Bloomberg Game Changers, Cosby Show, The Wire, Martin

Gospel, R & B, Hip-Hop, Country

The Alchemist, Purpose Driven Life, Autobiography of Malcolm X, Developing the Leader Within – John C. Maxwell, How to Win Friends and Influence People Dale Carnegie, Think and Grow Rich Napoleon Hill, 7 Habits of Highly Effective People

**Birthday:** April 12

**3 strange/unique but interesting facts about you:**
1. Up until I was sixteen my shoes size was always 1 or 2 sizes larger than my age (i.e at twelve years old I wore a size fourteen)
2. In one day I met Oprah Winfrey, Prince, Usher, Anthony Hamilton and Barack Obama
3. I've lived in four states

**Education**
**College/University:** University of California, Berkeley

**Degree:** BA

**Major:** Sociology

**Advanced degrees:** Georgetown Law School- JD (deferred, begin 2013)

---

## 2012-13
## CALIFORNIA SENATE FELLOWS

**Goals & Work/Relevant Experience**
**Activities or Work Experience after College:**
- Riordan MBA Fellows Anderson School of Business (UCLA)
- Chartered Financial Analyst Level 1 Candidate December 2012
- Chartered Financial Analyst Society Scholarship Recipient
- HAAS School of Business, Arts, Science & Engineering Program (Berkeley)

**Occupational Goals/Interests:** Business/ Law/Entrepreneurship/Finance/Education

**Policy Interests:** Economy, Finance, Appropriations, Energy, Transportation, Economic Development, Trade (International and Domestic), Tax, Banking, Insurance







## RULES COMMITTEE

RESOLUTION
By
**President pro Tempore of the Senate Darrell Steinberg**
RELATIVE TO COMMENDING




# *George Austin*

**WHEREAS**, George Austin was selected from a highly competitive group of outstanding college and university graduates from California and throughout the nation, and was appointed a 2012-2013 California Senate Fellow; and

**WHEREAS**, George Austin, from Stockton, graduated from the University of California, Berkeley, with a Bachelor of Arts degree in Sociology; and

**WHEREAS**, Through his service in the Senate Committee on Governance and Finance, George Austin had the unique opportunity of acquiring a deeper understanding of the legislative process and public policy formation, while also providing assistance to Senate Members, legislative committees, and their constituencies; and

**WHEREAS**, The California Senate Fellows program, established in 1973 and sponsored jointly by the Senate and California State University, Sacramento, enables 18 individuals to become full-time Senate staff members in the State Capitol for 11 months and receive six units of university graduate credit; and

**WHEREAS**, As a result of his outstanding service as a Senate Fellow, George Austin is better equipped to provide valuable leadership and contributions to educational institutions; local, regional, state, and federal governments; and professional, business, and community endeavors in the State of California and the nation; now, therefore, be it

**RESOLVED BY THE SENATE RULES COMMITTEE**, That George Austin, a 2013-2013 California Senate Fellow, be commended for his exemplary service on behalf of the Members of the Senate, and extended best wishes for every success in his future endeavors.

Senate Rules Committee Resolution No. 24 adopted this 12th day of August, 2013



CHAIR
Senatoris Est Civitatis



Libertatem Tueri •



