No. # 21 - 15151

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

George Jarvis Austin,

*Plaintiff-Appellant [or Plaintiff-Appellee],*

v.

Tesla, et. al.

*Defendant-Appellee [or Defendant-Appellant].*

On Appeal from the United States District Court
for the Northern District of California
No.3:20:00800
Hon. District Judge Chen

---

## PLAINTIFFS-APPELLEES' PETITION FOR REHEARING AND
## REHEARING EN BANC

---

George Jarvis Austin, esq. (TBA). Pro Se
2107 Montauban Ct., Stockton, CA
209.915.6304,
gaustin07@berkeley.edu
*Appellant, Pro Se*

# TABLE OF CONTENTS

**Page**

INTRODUCTION

STATEMENT PURSUANT TO FED. R. APP. P. 35

ARGUMENT

    I.    The Opinion Overlooks A Material Point Of Law Resulting In Conflict With Landers, The controlling authority decision of this Court on the issue so that Rehearing is necessary to Secure Uniformity of This Court's Decisions and The Opinion Directly Conflicts with the Decisions of Other Circuits and the Supreme Court and Substantially Affects the Application of FLSA: Whereas Mr. Austin's, pro se, pleadings of Joint Employers FLSA violations, regarding complained about unpaid overtime for multiple weeks (where Mr. Austin worked in excess of 40 hours), along with independently verified findings of fact per General Order No. 71 disclosures, preliminary authenticating, and buttressing, said pleadings was more than sufficient under this Circuit's Landers standard

    II.    The Opinion Overlooks A Material Point Of Law Resulting In Conflict With Rosenfield, (and the Supreme Court's Kasten), The controlling authority decision of this Court on the issue so that Rehearing is necessary to Secure Uniformity of This Court's Decisions and The Opinion Directly Conflicts with the Decisions of Other Circuits and the Supreme Court and Substantially Affects the Application of FLSA: Whereas Mr. Austin's , Pro Se, protected activity (complaints to supervisors, HR, management, and company officers, etc.) regarding unpaid overtime, Health and Safety, and other violations for multiple weeks (where he worked in excess of 40 hours) leading to adverse employment activity (wrongful termination

based on defamatory false accusation of criminal recording), apparently as pretext, only days after meeting with HR Officer is sufficient under FLSA retaliation standard (as articulated by this Circuit's Rosenfield, and the Supreme Court's Kasten).

CONCLUSION

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*George Jarvis Austin v. Tesla, et. al.*
    *Opening Tesla Brief No. #21-15151,*
    *(DktEntry: 6,) Page# 14-23, 28-34, 35-43, 43-56*
*Adame v. Bank of America,*
    *No. C 09-00129 SI, at \*13 (N.D. Cal. Aug. 5, 2010)*
    *("See Morgan v. Regents of the Univ. of California,*
    *88 Cal. App. 4th 52, 69 (Cal. Ct. App. 2000)*
*Allen v. U.S. Bancorp,*
    *264 F. Supp. 2d 945, 950 (D. Or. 2003)*
*Alvarez, 339 F.3d 894,*
    *2003 WL 21788995, 2003 U.S.App.*
    *LEXIS 15622, at \*37*
*Arias v. Raimondo, 860*
    *F.3d 1185 (9th Cir. 2017)*
*Bains LLC v. Arco Products Co., Div. of*
    *Atlantic Richfield Co., 405 F.3d 764, 769 n. 3*
    *(9th Cir. 2005)*
*Barnes v. Saul,*
    *No. 19-17203, at \*2 (9th Cir. Dec. 30, 2020)*
*Bartelson v. Dean Witter Co.,*
    *86 F.R.D. 657, 665 (E.D.Pa. 1980)*
*Brown v. Bd. of Educ.,*
    *347 U.S. 483 (1954)*
*Brown v. FPI Mgmt., Inc.,*
    *Case No.: C-11-05414-YGR, at \*6*
    *(N.D. Cal. Feb. 27, 2012)*
*Chao v. A-One Med. Servs., Inc.,*
    *346 F.3d 908, 918 (9th Cir. 2003)*
*Cordova v. State Farm Ins. Cos.,*
    *124 F.3d 1145, 1149 (9th Cir. 1997)*

*Crawford v. Roadway Express, Inc.,*
>        *485 F. Supp. 914, 922 (W.D.La. 1980)*

*DeMatteis v. Eastman Kodak Co.,*
>        *511 F.2d 306, 312 (2nd Cir.), modified,*
>        *520 F.2d 409 (2nd Cir. 1975)*

*Des Vergnes v. Seekonk Water District,*
>        *601 F.2d 9, 14 (1st Cir. 1979)*

*Enlow v. Salem-Keizer Yellow Cab Co., Inc.,*
>        *389 F.3d 802, 808 (9th Cir. 2004)*

*Espinoza v. MH Janitorial Servs., No. 76752-6-I,*
>        *at (Wash. Ct. App. Nov. 4, 2019)*

*Flores v. City of Westminster,*
>        *873 F. 3d 739, 752 (9th Cir. 2017)*

*Gay v. Waiters' and Dairy Lunchmen's Union,*
>        *Local 30, 489 F. Supp. 282 (N.D.Cal. 1980)*

*Gladstone, Realtors v. Village of Bellwood,*
>        *441 U.S. 91, 113 n. 26, 99 S.Ct.*
>        *1601, 1615, 60 L.Ed.2d 66 (1979)*

*Godwin v. Hunt Wesson, Inc.,*
>        *150 F.3d 1217, 1221,1222 (9th Cir. 1998)*

*Green v. Mercy House., Inc.,*
>        *No. C 18-04888 WHA, at *7*
>        *(N.D. Cal. Dec. 20, 2018)*

*Hicks v. ABT Associates, Inc.,*
>        *572 F.2d 960, 969 (3rd Cir. 1978)*

*Hishon v. King Spalding,*
>        *467 U.S. 69, 75, 104 S.Ct. 2229,*
>        *81 L.Ed.2d 59 (1984)*

*Jauregui v. City of Glendale,*
>        *852 F.2d 1128, 1134 (9th Cir. 1988)*

*Johnson v. California,*
>        *543 U.S. 499, 507 (2005)*

*Johnson v. Lucent Technologies Inc.,*
>        *653 F.3d 1000, 1006, 1007 (9th Cir. 2011)*

*Jones v. Mayer Co.,*

392 U.S. 409, 410 (1968)

Kasten v. Saint-Gobain Performance Plastics Corp.,
    563 U.S. 1, 14 (2011)

King v. Laborers International Union of North America,
    Local No. 818, 443 F.2d
    273, 278, 279 (6th Cir. 1971)

Landers v. Quality Commc'ns, Inc.,
    771 F.3d 638, 640 (9th Cir. 2014)

Lazy Y Ranch Ltd. v. Behrens,
    546 F.3d 580, 592 (9th Cir. 2008)

Lindsey v. SLT Los Angeles, LLC,
    447 F.3d 1138, 1140-41 (9th Cir. 2005)

Macey v. World Airways, Inc.,
    14 Fair Empl. Prac. Cas. 1426
    (N.D.Cal. 1977)

McGinest v. GTE Serv. Corp.,
    360 F.3d 1103, 1121-22 (9th Cir. 2004)

Mercer v. Southwest Airlines Co.,
    No. 13-cv-05057-MEJ, at *3,8
    (N.D. Cal. Dec. 18, 2014)

Metoyer v. Chassman, 504 F.3d
    919, 931, 933, 935, 937, 939 (9th Cir. 2007)

Mustafa v. Clark County School Dist,
    157 F.3d 1169, 1179-80 (9th Cir. 1998)

National Organization for Women v. Sperry Rand Corp,
    457 F. Supp. 1338 (D.Conn. 1978)

North Pacifica LLC v. City of Pacifica,
    526 F.3d 478, 486 (9th Cir. 2008)

Pacific Shores Properties, LLC v. City of Newport Beach,
    730 F.3d 1142, 1158 (9th Cir. 2013)

Richardson v. Restaurant Marketing Associates, Inc.,
    527 F. Supp. 690, 694-95 (N.D. Cal. 1981)

Robertson v. Dean Witter Reynolds, Inc.,
    749 F.2d 530, 541 (9th Cir. 1984)

Rogers v. EEOC,

*454 F.2d 234, 238 (5th Cir. 1971)*

*Rosenfield v. GlobalTranz Enterprises, Inc.,*
*811 F.3d 282, 286 (9th Cir. 2015)*

*Scalia v. Emp'r Sols. Staffing Grp.,*
*951 F.3d 1097, 1103 (9th Cir. 2020)*

*Serrano v. Francis,*
*345 F.3d 1071, 1082 (9th Cir. 2003)*

*Sharkey v. O'Neal,*
*778 F.3d 767, 774 (9th Cir. 2015)*

*Slack v. Havens, 8 Empl. Prac. Dec.*
*¶ 9492, page 5219 (S.D.Cal. 1973),*
*aff'd, 522 F.2d 1091 (9th Cir. 1975)*

*Smith v. Sol D. Adler Realty Co.,*
*436 F.2d 344, 349, 350 (7th Cir. 1970) (§ 1982)*

*Stringer v. Combe, Inc.,*
*No. 17-cv-03192-WHO, at *1*
*(N.D. Cal. Dec. 21, 2017)*

*United States v. Harris,*
*106 U.S. 629, 643*

*United States v. Price,*
*383 U.S. 787, 801;*
*Jones v. Alfred H. Mayer Co., 392 U.S. 409)*

*Wallis v. J.R. Simplot Co.,*
*26 F.3d 885, 889 (9th Cir. 1994)*

*Waters v. Heublein, Inc.,*
*547 F.2d 466 (9th Cir. 1976), cert. denied,*
*433 U.S. 915, 97 (1977)*

*Whiting v. Jackson State University,*
*616 F.2d 116, 121 (5th Cir. 1980)*

*Williams v. Anderson,*
*562 F.2d 1081, 1094 (8th Cir. 1977) (§ 1983)*

*Winston v. Lear-Siegler, Inc.,*
*558 F.2d 1266 (6th Cir. 1977)*

*Woods v. Graphic Commc'ns,*
*925 F.2d 1195, 1200-03 (9th Cir. 1991)*

## STATUTORY [AND REGULATORY] AUTHORITIES

All other relevant statutory, constitutional, or regulatory authorities, and other informational references shall appear in the Addendum to this brief.

## INTRODUCTION & CASE STATEMENT REITERATION

Under The Ninth Circuit *Landers*' ruling the requirement is to plead at least one week unpaid overtime, or below minimum wage, for FLSA violations.  See e.g. Landers v. Quality Commc'ns, Inc., 771 F.3d 638, 641-42 (9th Cir. 2015) ("No circuit court has interpreted Rule 8 as requiring FLSA plaintiffs to plead in detail the number of hours worked, their wages, or the amount of overtime owed to state a claim for unpaid minimum wages or overtime wages")  To reiterate Mr. Austin plead from the first filing in District Court that for several weeks leading up to the meeting with HR Mr. Austin repeatedly complained to his immediate supervisor, the supervisor above him, and then up the chain (as far as possible) as multiple weeks of overtime, and time sheet errors needed to be corrected, and unpaid overtime actually paid to Mr. Austin (as it was identified, complained about, but unpaid for multiple weeks).  See e.g. Rosenfield v. Globaltranz Enters., Inc., 811 F.3d 282, 289 (9th Cir. 2015)("[B]ecause the FLSA is a remedial statute, it must be interpreted broadly." Lambert v. Ackerley, 180 F.3d 997, 1003 (9th Cir. 1999) (en banc); see also Navarro v. Encino Motorcars, LLC, 780 F.3d 1267, 1271 (9th Cir. 2015) (holding that "we must apply the background rule that the FLSA is to be construed liberally in favor of employees")

Mr. Austin noticed first that very specific overtime hours were not paid for multiple weeks and kept bringing the issue up to the immediate supervisor without correction, and then realized through more and more due diligence, and research, that there were a variety of errors, and corrections, and questions that needed to be rectified.  To date they have not been corrected. Further when injured from car accident the State of California audited my submitted check stubs, and the paying joint employers verifying that not only were Mr. Austin's concerns accurate, but provided a specific amount of verifiable missing wages that were designated as paid (and deductions paid out of check stub) but Mr. Austin received only a portion and did not receive all the missing part of wages due to Employer Labor Code violations.  Further, when Mr. Austin complained and inquired in writing, and in a meeting with HR, he was almost immediately retaliated against (within a week) with negative employment action.  It's important to note, in Accord with Dissenting Judge Brown in *Rosenfield* that Mr. Austin's role was not in accounting, nor finance, nor Human Resources, and him auditing his paystubs and conducting due diligence on his joint employers to ensure they comply with FLSA standards, including one of the fastest growing and highest valuations on Wall Street (Tesla) https://finance.yahoo.com/quote/TSLA/key-statistics/ ,  and subsequently submitting complaints internally, and advocating on his own behalf for correcting their violations and

non-compliance was beyond his call of duty, and imposed significant additional burdens in an already resource (including time strained schedule) tight situation. Similar to what this Appellate Court held in *Rosenfield*, and The Supreme Court held in *Kasten* when Mr. Austin made multiple complaints about not being paid for multiple weeks overtime (over several weeks in which he worked in excess of 40 hours) to his direct supervisor, then his supervisor' supervisor up the chain (including to Elon Musk) all the way to meeting HR with a Head of HR responsible for implementing FLSA standards (and Mr. Austin documented the complaints in writing, and verbally) shortly thereafter negative employment action occurred within a week, triggering anti-retaliation liability.

Mr. Austin, as Pro Se Litigant, and Student (Straight A's, and A+'s, last nine semesters), filed an Opening brief highlighting the legal, and factual, fallacies, and errors, of counsel and the lower Court: 1. granting leave to Amend in the Interest of Justice, in light of the favorable facts for Mr. Austin's case, circumstances, disclosures, and liberal standard to amend in Interest of Justice expressed in *Robertson v. Dean Witter, Sharkey v. O'neal, and Barnes v. Saul* 2. pleadings of Joint Employers FLSA violations, regarding complained about unpaid overtime for multiple weeks, along with independently verified findings of fact per General Order No. 71 disclosures, was more than sufficient under this Circuit's *Landers* standard, and 3. protected activity (complaints to supervisors,

HR, management, and company officers, etc.) regarding unpaid overtime, Health

and Safety, and other violations for multiple weeks leading to adverse

employment activity (wrongful termination based on defamatory false accusation

of criminal recording), apparently as pretext, only days after meeting with HR

Officer is sufficient under FLSA retaliation standard (as articulated by this

Circuit's *Rosenfield*, and the Supreme Court's *Kasten*).

      Although, Mr. Austin's claims, and arguments, are sufficient in themselves,

the context of racial harassment, discrimination and retaliation at Tesla, especially

for Black People, and Black men, heighten the injury, and accentuate the harm

done.  Recent Ninth Circuit decisions illustrate the discriminatory context, and

hostile work environment, Mr. Austin's pled facts happened in concert with

(*especially in light of the recent initial 137 Million Dollar Judgment in the Ninth*

*Circuit against Tesla, later reduced to $15 Million, and subsequently rejected by*

*Plaintiff Diaz and seeking to rehear the case re:damages, not liability).  See e.g.*

www.npr.org/2021/10/05/1043336212/ tesla-racial-discrimination-lawsuit  ;

www.businessinsider.com/tesla-racial-abuse-lawsuit-payout-owen-diaz

-2022-6?amp  The courage required to stand up for yourself, as a Black person,

and Black American Holocaust survivor, as Mr. Austin did (via complaints,

proactive communication, follow up, etc.), in that context, becomes more evident

when the culture is not only discriminatory against them, but retaliatory

(triggering Company legal liability).  See e.g. www.abhmuseum.org/about/
what-is-the-black-holocaust/ ; Metoyer v. Chassman, 504 F.3d 919, 937 (9th Cir.
2007) ("bigoted remarks …may tend to show discrimination, even if directed at
someone other than the plaintiff. Cordova v. State Farm Ins. Cos., 124 F.3d
1145, 1149 (9th Cir. 1997). Furthermore, we have held that remarks by such a
decision-maker tend to show bias, even if several years old. See Woods v.
Graphic Commc'ns, 925 F.2d 1195, 1200-01 (9th Cir. 1991) (Courts have long
recognized that a workplace in which racial hostility is pervasive constitutes a
form of discrimination).

"Fair notice" to liable joint employer's was provided and response from
their representatives confirms they understood the level of seriousness of
complaints.  One said as mentioned "you are barking up the wrong tree," the HR
Officer said in Tesla meeting prior to retaliation against  Appellant, George Jarvis
Austin "you shouldn't have to deal with that and take the rest of the day of paid
[Paraphrased] (prior to retaliating two days or so later)."  See e.g. Richardson v.
Restaurant Marketing Associates, Inc., 527 F. Supp. 690, 695 (N.D. Cal. 1981)
("Plaintiff … was fired in retaliation for [making formal complaint] against
defendant. Hicks v. ABT Associates, Inc., 572 F.2d 960, 969 (3rd Cir. 1978);
Macey v. World Airways, Inc., 14 Fair Empl. Prac. Cas. 1426 (N.D.Cal. 1977).

Plaintiff/Appellant, Pro Se, made clear leading up to that conversation orally and in writing that there were unpaid overtime wages, and other pay, and time-log discrepancies that needed correction with management supervisors, HR Officers, etc.   Plaintiff worked so much overtime whereas management team member inquired into why I was working so hard, and so much, and attempted to put a cap/limit on how much I worked.  A variety of persons were provided fair notice including, but not limited to: Jerome Guillen <jerome@tesla.com ; (who apparently took over for Bert Bruggeman), Freddy Rivera <frivera@tesla.com ), multiple Supervisors, Deputy General Counsel Yusef Mohamed  Ymohamed@tesla.com),  who Bert made intro to when saying I, Appellant, was too smart to work in that Department given skills, intelligence, background and pedigree, etc.), Elon Musk erm@tesla.com  (Elon Musk), and management at Tesla prior to HR meeting with Vince Woodard, HR Officer, vwoodard@tesla.com  from personal and my Tesla company email geaustin@tesla.com.  All were informed prior to, and after, retaliatory, defamatory, and negative employment action was made after Plaintiff/Appellant wage, health and safety, record-keeping and other complaints.

## STATEMENT PURSUANT TO FED. R. APP. P. 35

A panel of this Court affirmed a district court decision that Mr. Austin's pleadings of complaints of FLSA violations internally up the chain of command at Tesla starting with his immediate supervisor after identifying multiple weeks of missing overtime pay where he worked in excess of 40 hours a week all the way until complaining, and documenting his complaint in an HR meeting resulting in almost immediate negative employment action (within a week) did not constitute either an FLSA violation, nor FLSA anti-retaliation violation despite this Circuits opposite ruling in *Landers* and *Rosenfield*.   Per Fed. R. App. P. 35 "the panel decision conflicts with a decision of the United States Supreme Court (*Kasten*) [and] of the court to which the petition is addressed (*Landers* and *Rosenfield*), and presents a question of exceptional importance as it directly conflicts with the authoritative decisions in its own Circuit, and the Supreme Court with consideration by the full court therefore necessary to secure and maintain uniformity of the court's decisions.  In demonstrating the error in the panel's initial decision Mr. Austin points out that not only do the plead facts align with this Circuit's controlling rulings, and standards on the issues, under *Landers*, and *Rosenfield*, but also with the Supreme Court under *Kasten*.  Basic fairness and justice require Mr. Austin's Pro Se, arguments and positions, especially in context when he exhausted remedies only to experience negative employment action as

result, is correct.  The panel decision "overlooked or misapprehended" both a "points of law [and] fact" per Federal Rules of Appellate Procedure and should be reversed and remanded under current Ninth Circuit, and Supreme Court law on FLSA, and Anti-Retaliation.

## ARGUMENT

I.   **The Opinion Overlooks A Material Point Of Law Resulting In Conflict With *Landers*, The controlling authority decision of this Court on the issue so that Rehearing is necessary to Secure Uniformity of This Court's Decisions and The Opinion Directly Conflicts with the Decisions of Other Circuits and the Supreme Court and Substantially Affects the Application of FLSA: Whereas Mr. Austin's, pro se, pleadings of Joint Employers *FLSA* violations, regarding complained about unpaid overtime for multiple weeks (where Mr. Austin worked in excess of 40 hours), along with independently verified findings of fact per General Order No. 71 disclosures, preliminary authenticating, and buttressing, said pleadings was more than sufficient under this Circuit's *Landers* standard**

Although the circuit courts are in harmony on what is not required by Twombly and Iqbal, there [was] no consensus on what facts must be affirmatively pled to state a viable FLSA claim post-Twombly and Iqbal" until Landers settled that issued asserting the basic requirement of alleging "*a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours.*"

Now the standard under this Circuit's Landers is " at a minimum the plaintiff must allege at least one workweek when he worked in excess of forty hours and was not paid for the excess hours in that workweek, or was not paid minimum wages" **which Mr. Austin plead far above this standard**. See Landers v. Quality Commc'ns, Inc., 771 F.3d 638, 646 (9th Cir. 2014).  Under *Williamson* the Court "review[s] a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo. See TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief.  See Williamson v. General Dynamics Corp., 208 F.3d 1144, 1149 (9th Cir. 2000)  *Landers* continues that the Court must"accept as true all well pleaded facts in the complaint and construe them in

the light most favorable to the nonmoving party." Zadrozny v. Bank of N.Y.

Mellon, 720 F.3d 1163, 1167 (9th Cir.2013)....After all, most (if not all) of the

detailed information concerning a plaintiff-employee's compensation and

schedule is in the control of the defendants.  (FLSA provision requiring

employers subject to the FLSA to keep records concerning their employees' work

schedules and compensation).")"  See Landers v. Quality Commc'ns, Inc., 771

F.3d 638, 640 (9th Cir. 2014)

Here, it was well plead that Plaintiff worked multiple over-time days, and

weeks (more than 40 hours), as the structure of that work at Tesla is literally

everyday, and nearly every week, work hours accumulate Overtime (and Mr.

Austin was not paid at least one week of the multiple weeks of overtime, and

made complaints to correct that issue, repeatedly, leading up to HR meeting with

HR Officer that preceded retaliation days later).  Plaintiff worked, above and

beyond, additional days nearly every week to the point a supervisor/manager

even inquired as to why I was working so hard, and attempted to put a cap on

how much overtime I could work. According to State of California Auditing and

Accounting Department Plaintiff was not only underpaid (at minimum approx

25K), but verified those findings of fact, disclosed to the Court, under penalty of perjury by Defendant Employers.

It is apparent, utilizing context, and common sense, as partially informed by reports on current events, that pled labor code (and other) violations by Jointe Employers including Tesla *are plausible.* Similar to the unpaid overtime wages in *Chao,* in violation of FLSA, [Defendants], were not new to overtime wage violations.  Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 913-14 (9th Cir. 2003)   "One of the principal purposes of the FLSA is to ensure that employees are provided appropriate compensation for all hours worked. See, e.g., 29 C.F.R. § 778.223 ("Under the Act an employee must be compensated for all hours worked."); 29 C.F.R. § 778.315 ..."The Supreme Court has held that in enacting the FLSA Congress intended "to guarantee .. overtime compensation. To hold that an employer may validly compensate his employees for only a fraction of time consumed in actual labor would be inconsistent with the very purpose" of the Act. Tennessee Coal, Iron R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597-98, 64 S.Ct. 698, 88 L.Ed. 949 (1944)

**I.    The Opinion Overlooks A Material Point Of Law Resulting In Conflict With *Rosenfield*, (and the Supreme Court's *Kasten)*, The controlling authority decision of this Court on the issue so that Rehearing is necessary to Secure Uniformity of This Court's Decisions and The Opinion Directly Conflicts with the Decisions of Other Circuits and the Supreme Court and Substantially Affects the Application of FLSA: Whereas Mr. Austin's , Pro Se, protected activity (complaints to supervisors, HR, management, and company officers, etc.) regarding unpaid overtime, Health and Safety, and other violations for multiple weeks (where he worked in excess of 40 hours) leading to adverse employment activity (wrongful termination based on defamatory false accusation of criminal recording), apparently as pretext, only days after meeting with HR Officer is sufficient under FLSA retaliation standard (as articulated by this Circuit's *Rosenfield*, and the Supreme Court's *Kasten*).**

Jointly responsible Employers added insult to literal injury via their retaliation as Mr. Austin, a Black man and injured worker working in a hostile

work environment had a. suffered on the job injury, b. was continually being

treated in Tesla Clinic, and c. had required augmented work duties/schedule due

to injury while making complaints including the meeting with HR Officer (for

which Plaintiff was fraudulently induced into going on the basis of promotion

and ensuring payment of unpaid overtime), yet completely opposite was

retaliated against, is still injured  (and to date has never received Workers

compensation, after over 800 days from injury).

Under *Rosenfield* "it is the assertion of statutory rights (i.e. the advocacy of

rights) by taking some action adverse to the company—whether via formal

complaint, providing testimony in an FLSA proceeding, complaining to

superiors about inadequate pay, or otherwise—that is the hallmark of protected

activity under § 215(a)(3)." Rosenfield v. Globaltranz Enters., Inc., 811 F.3d

282, 289 (9th Cir. 2015)  Under *Kasten* "the Supreme Court established a "fair

notice" test for deciding whether an employee has "filed any complaint" under

the anti-retaliation provision of the Fair Labor Standards Act of 1938 ("FLSA"),

29 U.S.C. § 215(a)(3): "[A] complaint must be sufficiently clear and detailed for

a reasonable employer to understand it, in light of both content and context, as an

assertion of rights protected by the statute and a call for their protection."
Rosenfield v. Globaltranz Enters., Inc., 811 F.3d 282, 289 (9th Cir. 2015))  The
standards were clearly surpassed in Appellant's pleadings, and disclosures
(multiple weeks unpaid overtime and retaliated against several days after
complaint with HR).

"Fair notice" to liable joint employer's was provided and response from
their representatives confirms they understood the level of seriousness of
complaints.  See Introduction.  One said as mentioned "you are barking up the
wrong tree," the HR Officer said in Tesla meeting prior to retaliation against
Appellant, George Jarvis Austin "you shouldn't have to deal with that and take
the rest of the day of paid [Paraphrased] (prior to retaliating two days or so
later)." See e.g. *Rosenfield ("documented the company's non-compliance with
the FLSA and complained ... Five days later... fired")*

Plaintiff/Appellant, Pro Se, made clear leading up to that conversation
orally and in writing that there were unpaid overtime wages, and other pay, and
time-log discrepancies that needed correction with management supervisors, HR
Officers, etc.  Plaintiff worked so much overtime whereas management team

member inquired into why I was working so hard, and so much, and attempted to put a cap/limit on how much I worked.

As articulated in *Chao,* the initial violations, compounded by the reckless disregard, and malicious retaliation was willful.  Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 918 (9th Cir. 2003) ("A violation of the FLSA is willful if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA ]." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)") "See Alvarez v. IBP, Inc., 339 F.3d 894, 2003 WL 21788995 (9th Cir. Aug. 5, 2003), 2003 U.S.App. LEXIS 15622, at *36 (noting that willfulness exists "where an employer disregarded the very possibility that it was violating the [FLSA ]"") Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 919 n.7 (9th Cir. 2003) ("even viewed in the light most favorable …. appear to have been steps made to evade the FLSA , not to comply with it. See Alvarez, 339 F.3d 894, 2003 WL 21788995, 2003 U.S.App. LEXIS 15622, at *37 ("was on notice of its FLSA requirements, yet took no affirmative action to assure compliance with them. To

the contrary, ... actions may more properly be characterized as attempts to evade

compliance. . . .")")

Courts look to federal law when analyzing retaliation claims, and utilizing

the three-part burden shifting test described in McDonnell Douglas Corp. v.

Green, 411 U.S. 792 (1973)). To establish a prima facie case of retaliation, a

plaintiff must demonstrate that  (1) [t]he[y] engaged in statutorily protected

activity, (I.e. oral and written complaints to all joint employers "up the chain"to

supervisors, management, officers, etc) (2) defendants took some adverse

employment action against [them], (i.e. Defendants retaliated within days via

wrongful termination, unsupported, nor investigated defamation, and a complete

'about face' regarding the purpose of the meeting (for promotion), and instructed

to get treated by Tesla Clinic further confirming extent of physical injury, and

prescribing next steps including MRI, and other tests,) and (3) there is a causal

connection between the protected activity and the discharge. (Causal link in

connection as explicit purpose of meeting outside of promotion was to correct

companies errors of unpaid wages (and other violations), whereas plaintiff

complained for weeks leading up to meeting without correction (in oral and

written form), and whereas after the meeting plaintiff again was assured the

meeting was only to fix their labor code, and other violations (I.e. unpaid

overtime, etc.), they instead made a complete about face, and took negative

employment action within days.)  See Stegall v. Citadel Broad. Co., 350 F.3d

1061, 1065-1066 (9th Cir. 2003)

"An employee need not file a formal or detailed complaint to enjoy the

protection of Section 215(a). Lambert v. Ackerley, 180 F.3d 997, 1007-08 (9th

Cir. 1999). Rather, "[to] fall within the scope of the anti-retaliation provision, a

complaint must be sufficiently clear and detailed for a reasonable employer to

understand it, in light of both content and context, as an assertion of rights

protected by the statute and a call for their protection." Kasten v. Saint-Gobain

Performance Plastics Corp., 563 U.S. 1, 14 (2011). The threshold issue, which

must be determined on a case- by-case basis, is whether the described activity

placed the employer on "fair notice that an employee is making a complaint that

could subject the employer to a later claim of retaliation." Rosenfield v.

GlobalTranz Enterprises, Inc., 811 F.3d 282, 286 (9th Cir. 2015). "[I]t is clear

that so long as an employee communicates the substance of his allegations to the

employer (e.g., that the employer has failed to pay adequate overtime), he is protected by § 215(a)(3)." Lambert, 180 F.3d at 1008 " See Allison v. Dolich, Case No.: 3:14-CV-1005-AC, at *15-16 (D. Or. Feb. 12, 2018)

Under *Miller* "the purpose of the FLSA's anti-retaliation clause is to ensure vindication of the wage-and-hour rights established by the statute. See, e.g., Lambert, 180 F.3d at 1004 ("The FLSA's anti-retaliation clause is designed to ensure that employees are not compelled to risk their jobs in order to assert their wage and hour rights under the Act."); Onken v. W.L. May Co., 300 F. Supp. 2d 1066, 1068 (D. Or. 2004) ("The statute's anti-retaliation provision, therefore, is designed to encourage employees to report alleged violations of FLSA's substantive provisions without fear of reprisal). All the cases relied upon by Plaintiff involved alleged violations of the FLSA's substantive provisions in addition to alleged violations of the anti-retaliation provision. See Lambert v. Ackerley, 180 F.3d 997, 1004 (9th Cir. 1999) (violations of overtime wage provisions); Henderson v. City of Grantville, Ga., 37 F. Supp. 3d 1278, 1281 (N.D. Ga. 2014) (unpaid wages for hours worked during unauthorized shift with police department); E.E.O.C. v. White & Son Enterprises, 881 F.2d 1006, 1008

(11th Cir. 1989) (violation of FLSA's prohibition of sex discrimination);

Rosenfield v. GlobalTranz Enterprises, Inc., 811 F.3d 282, 288 (9th Cir. 2015)

(misclassification of employees in violation of FLSA); Darveau v. Detecon, Inc.,

515 F.3d 334, 336 (4th Cir. 2008) (violation of FLSA overtime provisions);

Pineda v. JTCH Apartments, L.L.C., 843 F.3d 1062, 1063 (5th Cir. 2016)

(unpaid overtime in violation of FLSA)"  See Miller v. Infinite Percent Partners ,

No. 20-cv-02253-HSG, at *4 (N.D. Cal. Feb. 3, 2021) In Rosenfield v.

Globaltranz Enters., Inc., 811 F.3d 282, 287 (9th Cir. 2015) ("Kasten's")  "the

Court of Appeals determined that a jury could reasonably find that Rosenfield's

complaints constituted a protected activity under section 215(a)(3) as FLSA

compliance was not part of Rosenfield's job duties; thus, her advocacy for the

rights of employees to be paid in accordance with the FLSA qualified as "any

complaint" under FLSA" Analogously Appellant, Pro Se's, written/oral

complaints to supervisors, managers, HR, Officers, etc. of all Defendant Joint

Employers regarding unpaid overtime surpasses that standard.

    Even *Rosenfield's* dissent would agree with Appellant's position.  Under

Dissents' more stringent standard Appellants actions (*under the Fair Labor*

*Standards Act' anti-retaliation provision 'protected conduct*) would still constitute "filed any complaint" … [which] contemplates some degree of formality … The Court repeatedly referenced "oral grievances," …, in connection with "workplace grievance procedures,"... and emphasized that including oral complaints in the definition of "any complaint" allows for the use of "hotlines, interviews, and other oral methods of receiving complaints," … as well as other "desirable informal workplace grievance procedures." The examples of oral complaints provided by Supreme Court's *Kasten* contemplate a degree of formality [that is actually found in Appellant's complaints, that the dissent argued lacked in *Rosenfield*]" See Rosenfield v. Globaltranz Enters., Inc., 811 F.3d 282, 290 (9th Cir. 2015) (If an entry-level employee reported that someone is underpaid in violation .. FLSA ……certainly would understand that report as a "complaint".. [especially when].. Step[ping]  outside [their] role)

## CONCLUSION

This Court should grant rehearing and rehearing en banc.  See e.g. Mitchell

v. Robert de Mario Jewelry, Inc., 361 U.S. 288, 292 (1960) (It needs no

argument to show that fear of economic retaliation might often operate to induce

aggrieved employees quietly to accept substandard conditions.)

August 10, 2022                                          Respectfully submitted,

                                                         s/George Jarvis Austin

## ADDENDUM

**Statutes**

*42 U.S.C. § 1981*
*29 U.S.C. Ch. 8 Fair Labor Standards Act (FLSA) ,*


**Rules**

*FRAP 31, 35*
*General Order No. 71*
*Ninth Cir. R. 3-6.*

**Other Authorities**

*Black Holocaust Musuem:*
    www.abhmuseum.org/about/what-is-the-black-holocaust
*Elizabeth Hinton &amp; DeAnza Cook, The mass criminalization of Black*
    *Americans: A historical overview, 4 Annual Review of Criminology*
    *261–286 (2021).*
*Louis Michael Seidman, Hyper-Incarceration and Strategies of Disruption: Is*
    *There a WayOut?, 9 OHIO ST. J. CRIM. L. 109 (2011)*
*Peter Edelman's, Georgetown Law Professor, Not a Crime to Be Poor: The*
    *Criminalization of Poverty in America*
*Michelle Alexander, The New Jim Crow: Mass Incarceration in the Age of*
    *Colorblindness*
*Calvin John Smiley and David Fakunle From "brute" to "thug:" the*
    *demonization and criminalization of unarmed Black male victims in*
    *America, Abstract*
*Ibram X. Kendi, Stamped from the Beginning: The Definitive History of Racist*
    *Ideas in America*
*Source Info via Tesla Emails: Jerome Guillen <jerome@tesla.com; Freddy Rivera*
    *frivera@tesla.com ; Yusef Mohamed  Ymohamed@tesla.com; Elon Musk*
    *erm@tesla.com  (Elon Musk; Vince Woodard, HR Officer,*
    *vwoodard@tesla.com ; my (George Jarvis Austin's) Tesla company email*
    *geaustin@tesla.com.*

**Other Informational Sources, Reports, News**

[1] https://www.civilrightsca.com/protocol-tesla-discrimination-lawsuits/
- (Ex-workers Say Tesla is Still Racist, ...100-plus sworn statements from a class-action lawsuit and public records obtained by Protocol.)

[2]-https://www.google.com/amp/s/www.theverge.com/platform/amp/2021/8/5/2 2611725/tesla-paid-1-million-black-former-employee-racist-slur
- (Tesla reportedly paid $1 million to former employee who said supervisors called him a racist slur; Melvin Berry said the company failed to act when supervisors called him the N-word then retaliated - Berry is not the first worker to allege racism at Tesla's Fremont plant)

[3]-https://www.latimes.com/business/autos/la-fi-hy-tesla-racism-lawsuit-2017111 5-story.html
- (Marcus Vaughn ... alleges that supervisors and co-workers called him the N-word, but his written complaint to human resources about it was not investigated….standard operating procedure at the Tesla factory is pre-civil rights era race discrimination," the lawsuit says. "Race harassment has continued at the Tesla factory, and became more widespread, because despite their knowledge of the harassment, defendants have done nothing that could be reasonably expected to stop it."  Vaughn's legal action is the third lawsuit filed this year by black workers alleging that racial slurs were used against them and that the company ignored their complaints.)

[4]-https://www.google.com/amp/s/www.cbsnews.com/amp/news/tesla-million-m elvin-berry-fremont-california-n-word-racial-discrimination/
- (Former Tesla employee who said supervisors called him the N-word awarded $1 million BY … Tesla has been ordered to pay roughly $1 million to a former employee who filed a legal complaint alleging he was called the N-word while working in the electric automaker's factory in California. Melvin Berry was hired by Tesla as a materials handler in 2015, but quit only 17 months later after being harassed on the job, … KKK signs and swastikas The Berry case is one of three racial discrimination lawsuits filed by former employees against Tesla since 2017.  In a class-action lawsuit representing more than 100 employees … Another

Black employee said in court documents that he had been called the
N-word about 100 times and saw KKK signs and swastikas spray-painted
on bathroom stalls.  In a third lawsuit, two former Tesla employees, a
Black father and son, Owen Diaz and Demetric Di-az, also said they were
subject to "severe and pervasive racial harassment" while working at the
Fremont factory…[and won] *recent initial 137 Million Dollar Judgment in
the Ninth Circuit against Tesla,later reduced to $15 Million, and
subsequently rejected by Plaintiff Diaz and seeking to rehear the case
re:damages, not liability).  See e.g.* [www.npr.org/2021/10/05/](www.npr.org/2021/10/05/)
[1043336212/tesla-racial-discrimination-lawsuit](1043336212/tesla-racial-discrimination-lawsuit) ;
[www.businessinsider.com/tesla-racial-abuse-lawsuit-payout-owen-diaz](www.businessinsider.com/tesla-racial-abuse-lawsuit-payout-owen-diaz)
[-2022-6?amp](-2022-6?amp))

[5-][https://www.bloomberg.com/news/articles/2020-09-09/tesla-is-under-pressure](https://www.bloomberg.com/news/articles/2020-09-09/tesla-is-under-pressure)
[-to-end-arbitration-for-racism-claims](-to-end-arbitration-for-racism-claims)

- (Kristin Hull will have roughly three minutes to make the case against the
  company's use of mandatory arbitration for employee sexual harassment
  and racial discrimination claims.  Hull is the founder and chief executive of
  Nia Impact Capital, a social impact fund based in Oakland, California that
  invests in several sustainable energy companies.  Most people who work
  directly for Tesla sign away their rights to a trial. Hull wants to know how
  many discrimination and harassment cases go to arbitration, how much
  that's costing the company, and investors, and the demographics of those
  bringing the claims.  "We are in this to win this," said Hull during a
  socially distant interview in Oakland's historic Preservation Park, near
  Nia's office. "It's the issue of our time, and it's a Civil Rights issue.
  "Arbitration is used as a form of claim suppression," Cliff Palefsky, a San
  Francisco employment lawyer, who has testified before Congress about
  mandatory arbitration, said of the practice broadly. "Instead of court, it's a
  secret tribunal with no right of appeal."  Tesla's board opposes the
  proposal…Tesla has faced multiple allegations of racial discrimination and
  harassment at its factory in Fremont, California,"..In recent years, Tesla has
  faced high profile allegations of racial discrimination at its Fremont plant,
  where roughly 10,000 people work. In late 2017, a Black worker, Marcus
  Vaughn, filed a lawsuit saying the plant was a "hotbed of racist
  behavior."...In 2018, Owen Diaz and his son Demetric filed suit as well,

alleging a pattern of racial harassment and hostility. Demetric dropped his suit voluntarily, but Owen's case is slated for trial before a U.S. district court judge in San Francisco in October. The company said in an emailed statement to Bloomberg at the time that it takes discrimination and harassment of all forms "extremely seriously" and has a dedicated team focused on investigating and addressing workplace concerns. All three men were contract workers, so they never signed arbitration agreements. Tesla argued that Vaughn's case shouldn't go to court anyway; the car-maker lost that appeal.)

[6]-https://www.reuters.com/article/us-tesla-lawsuit-racism-idUSKBN1YZ18E

- (A federal judge rejected Tesla Inc's effort to dismiss claims by two former workers that the California electric car factory where they worked was a hotbed of racial hostility, clearing the way for a possible trial.  In a decision on Monday, U.S. District Judge William Orrick in San Francisco found open questions over whether Owen Diaz and his son Demetric Di-az faced "severe and pervasive racial harassment" in 2015 and 2016 at Tesla's factory in suburban Fremont, … The plaintiffs, who are black, said they were subjected to repeated racial epithets dozens of times, as well as racist cartoons, and that supervisors engaged in or did little to stop the racism...Orrick said Diaz could pursue claims that Tesla allowed and did not take reasonable steps to stop racial harassment...He said punitive damages might be available if Tesla must have known about the harassment and "ratified" it, even if only lower level workers were directly involved…. The case will proceed to Trial.")

[7]-https://www.claimsjournal.com/news/national/2020/09/09/299249.htm

- (Since 2014, workers have filed 145 complaints with California's Department of Fair Employment and Housing alleging discrimination at Tesla on the basis of race, age, gender, disability, medical leave, pregnancy, sexual orientation, and national origin, according to a synopsis provided by the agency after a California Public Records Act request. This May, three separate people alleged they were forced to quit because of their race. While the state issued right-to-sue letters in all three cases allowing them to proceed in court, it's possible they'll be bound by arbitration clauses. Tesla did not respond to a request for comment on the complaints.

- Arbitration has long been the bane of employment discrimination lawyers. Instead of having a hearing before a jury, cases go in front of an arbitrator, which industry data shows are overwhelmingly older White men. Transcripts usually aren't available to the public, keeping bad actors out of the public eye and allowing inappropriate behavior to go unchecked.
- "The deck is stacked in a much less favorable way for employees," said Hilary Hammell, an employment discrimination attorney at Levy Vinick Burrell Hyams LLP in Oakland, who has written about how forced arbitration can hurt Black workers.  Employers, and their lawyers, argue that the process is expedient, just, and cost-effective. And in the era of Covid-19, arbitration proceedings can be conducted remotely, while jury trials have largely ground to a halt…..For Hull, this isn't her first time pushing companies for more transparency. In June, she got 70% support from shareholders at cyber-security company Fortinet Inc. for a proposal requiring the firm to release an annual diversity report)

[8]-[https://capitalandmain.com/tesla-workers-file-charges-with-national-labor-board-as-battle-with-elon-musk-intensifies-0419](https://capitalandmain.com/tesla-workers-file-charges-with-national-labor-board-as-battle-with-elon-musk-intensifies-0419)

- (Tesla Workers File Charges With National Labor Board as Battle With Elon Musk Intensifies...Workers at Tesla's Fremont, California electric car factory have filed a complaint with the National Labor Relations Board, accusing Elon Musk's company of illegal surveillance, coercion, intimidation and prevention of worker communications….. Workers at Tesla's Fremont, California electric car factory have filed a unfair labor practice charge with the National Labor Relations Board (NLRB), accusing the company of illegal surveillance, coercion, intimidation and prevention of worker communications. The employees, who have been attempting to organize the approximately 7,000 workers at the plant through the United Auto Workers, claim that Tesla violated multiple sections of the National Labor Relations Act, which protects the right to unionize.)

[9]-[https://www.google.com/amp/s/www.nytimes.com/2018/11/30/business/tesla-factory-racism.amp.html](https://www.google.com/amp/s/www.nytimes.com/2018/11/30/business/tesla-factory-racism.amp.html)

- (Owen Diaz, right, and his son, Demetric, said they had heard racial slurs directed toward them while working at the Tesla factory in Fremont, Calif. Owen Diaz, right, and his son, Demetric, said they had heard racial slurs directed toward them while working at the Tesla factory in Fremont,

Calif.Credit...Ryan Christopher Jones for The New York Times Menial Tasks, Slurs and Swastikas: Many Black Workers at Tesla Say They Faced Racism African-American workers have reported threats, humiliation and barriers to promotion at the plant. The automaker says there is no pattern of bias…. Owen Diaz had seen swastikas in the bathrooms at Tesla's electric-car plant, and he had tried to ignore racist taunts around the factory. "You hear, 'Hey, boy, come here,' 'N-i-g-g-e-r,' you know, all this," said Mr. Diaz, who is African-American. Then, a few hours into his shift running the elevators, he noticed a drawing on a bale of cardboard. It had an oversize mouth, big eyes and a bone stuck in the patch of hair scribbled over a long face, with "Booo" written underneath….On that winter night in the factory, when, he said, a supervisor admitted drawing the figure as a joke, Mr. Diaz had had enough. He typed a complaint to a Tesla manager on his phone. "Racist effigy & drawing" was the subject.

- "When you really just look at it, you ask yourself at some point, 'Where is my line?'" said Mr. Diaz, 50, who worked at the factory as a contractor for 11 months before he quit in May 2016….Interviews, internal communications and sworn legal statements filed by more than two dozen current or former Tesla employees and contractors describe a wide range of concerns among some African-American workers at the factory in Fremont, including threats by co-workers, demeaning assignments and barriers to advancement. Three lawsuits by former workers accusing Tesla of failing to curb racial discrimination and harassment have been filed since early last year, including one by Mr. Diaz awaiting trial."....One suit accusing Tesla of racial discrimination and harassment, filed last November in California Superior Court, seeks class-action status. The lawyers involved — Lawrence A. Organ and Bryan Schwartz, whose practices focus on workplace rights — say they have identified dozens of potential plaintiffs. Each lawyer has won multimillion-dollar judgments in other harassment or discrimination cases against major employers. Tesla is seeking to move the case into arbitration, which would require workers to bring individual lawsuits rather than a joint claim.
- The state's Department of Fair Employment and Housing says it has issued 10 "right to sue" letters — a precondition for a discrimination lawsuit — to employees complaining of racial bias at the Fremont plant. Dozens of other

complaints against Tesla are pending, but the agency would not say how many involved race.  In an email to employees last year, which the company later released in response to one of the lawsuits, Elon Musk, Tesla's chief executive, warned against "being a huge jerk" to members of "a historically less represented group." At the same time, he wrote, "if someone is a jerk to you, but sincerely apologizes, it is important to be thick-skinned and accept that apology.")

[10]-https://www.industryweek.com/leadership/article/22024555/teslas-a-hotbed-for-racist-behavior-worker-claims-in-suit

- (Tesla's a Hotbed for Racist Behavior, Worker Claims in Suit - The employee says he's one of more than 100 African-American Tesla workers affected and is seeking permission from a judge to sue on behalf of the group….Tesla Inc.'s production floor is a "hotbed for racist behavior," an African-American employee claimed in a lawsuit in which he alleged black workers at the electric carmaker suffer severe and pervasive harassment. The employee says he's one of more than 100 African-American Tesla workers affected and is seeking permission from a judge to sue on behalf of the group. He's seeking unspecified general and punitive monetary damages as well as an order for Tesla to implement policies to prevent and correct harassment…."Although Tesla stands out as a groundbreaking company at the forefront of the electric car revolution, its standard operating procedure at the Tesla factory is pre-Civil Rights era race discrimination," the employee said in the complaint, filed Monday in California's Alameda County Superior Court….. The lawsuit was filed on behalf of Marcus Vaughn, who worked in the Fremont factory from April 23 to Oct. 31. Vaughn alleged that employees and supervisors regularly used the "N word" around him and other black colleagues. Vaughn said he complained in writing to human resources and Musk…..Larry Organ, an attorney at the California Civil Rights Law Group, said that Vaughn reached out to him after the law firm sued Tesla on behalf of other African American employees who complained about racial harassment this year. A Tesla assembly line worker sued in March, claiming the company did little to stop coworkers from harassing him.)

[11]-https://www.google.com/amp/s/www.businessinsider.com/tesla-workers-testimonies-recall-racism-being-called-n-word-slurs-2021-7%3famp

- (A Tesla factory worker said he was called the N-word '100 times' by coworkers, according to a sworn testimony….Former Tesla workers routinely used racial slurs against Black employees, according to sworn testimonies obtained by Protocol.  Aaron Craven, a Black worker at Tesla's Fremont factory, said in a sworn statement he had been called the N-word "approximately 100 times," and saw KKK signs and swastika graffitied in bathroom stalls. Workers submitted 103 declarations in March 2021 as part 2017 lawsuit suing Tesla for racial harassment.  "I was directly called n----- and n---- approximately 100 times at the Fremont factory," Craven said a sworn statement reviewed by Protocol. "I heard the terms n----- and n---- used over 100 times by coworkers, and by my lead Auggie, in the Tesla factory."Additionally, ex-contractor Aaron Minor stated he heard Tesla employees refer to the Fremont factory as a plantation and Black people as "cotton workers," Protocol reported.
- Two separate lawsuits filed against Tesla in 2017 alleged racial harassment and discrimination at the Fremont plant. Former Tesla worker DeWitt Lambert said coworkers regularly called him the N-word and made sexually explicit comments.  In 2019, Black and Latino workers at a Tesla factory in Buffalo, New York, filed discrimination complaints with the US Equal Employment Opportunity Commission (EEOC) and the New York Division of Human Rights. The six former workers said they heard racial slurs and racist comments at the factory.)

[12]-https://www.protocol.com/workplace/tesla-fremont-racism-discrimination

- (Racist graffiti, 'plantation' jokes and 100 potential lawsuits: Ex-workers say Tesla is still racist...The N-word, demeaning jokes and retaliation on the basis of race are all common at Tesla, according to 100-plus sworn statements from a class-action lawsuit and public records obtained by Protocol….When Aaron Craven clocked in to work every day at the Tesla Fremont factory, he knew he might hear or be called the N-word. When he walked into the bathroom stalls, he knew he might see graffiti of "KKK" or a swastika.
- "I was directly called n----- and n---- approximately 100 times at the Fremont factory," Craven said in a sworn statement. "I heard the terms n----- and n---- used over 100 times by co-workers, and by my lead Auggie, in the Tesla factory.  Former Tesla workers also called

ex-contractor Aaron Minor "n-----," and Minor, too, found swastikas in the bathroom. Minor heard the factory called "the Plantation" and its Black employees "cotton workers." "My understanding is that people refer to the Tesla factory as the Plantation and call employees cotton workers because Tesla treats its Black employees like slaves," he wrote in a sworn statement.

- These sworn statements and 103 other declarations sworn under penalty of perjury comprise a 500-page exhibit filed in March 2021 as part of a 2017 lawsuit that alleges Tesla discriminates against Black people and has allowed a racially hostile work environment to fester in its factories. The lawsuit's allegations against the company are not unique:....Race-based complaints about Tesla are on average more common than the proportion of race-based complaints state-wide; while about 10% of all cases requesting right to sue were filed on the basis of race with the DFEH in 2020 (and less than that in previous years), more than 30% of the Tesla cases from 2018 to 2021 are based on allegations of racial discrimination.")

[13]-https://www.google.com/amp/s/www.latimes.com/business/technology/story/2021-08-05/ex-tesla-employee-called-racial-slur-wins-rare-1-million-reward%3f_amp=true

- (Ex-Tesla employee called a racial slur wins rare $1-million reward … a Black former employee who won a ruling after alleging that supervisors called him the "N-word" ….. Tesla Inc. has paid more than $1 million to a Black former employee who won a ruling that the company failed to stop his supervisors from calling him the "N-word" at the electric-car maker's Northern California plant.  The rare discrimination award by an arbitrator to Melvin Berry, which followed a closed-door proceeding, caps years of complaints from Black workers that Tesla turned a blind eye to the commonplace use of racial slurs on the assembly line and was slow to clean up graffiti with swastikas and other hate symbols scrawled in common areas. It ends a years-long and emotionally grueling fight launched by Berry, who was hired by the company as a materials handler in 2015 and quit less than 18 months later.
- Arbitration typically keeps disputes between employees and companies secret, but court filings reveal that the arbitrator found Berry's allegations more credible than Tesla's denials, though she called it a "difficult" case after hearing from witnesses on both sides. Berry claimed that when he

confronted a supervisor for calling him the "N-word," he was forced to work longer hours and push a heavier cart…."I hope the world knows that an arbitrator found Tesla treats its employees like this," Berry, 47, told Bloomberg News in a phone interview Wednesday. He ..said he's now taking time off to focus on his mental health as he still hasn't "gotten over the healing process."….,," arbitrator Elaine Rushing said in her May 12 ruling, which hasn't been previously reported. Rushing, a former judge in Sonoma County Superior Court for almost two decades….. Rushing "was clearly troubled by the facts, culture at the company and the tone of the defense."…..After his supervisors turned against him, Berry alleged, he suffered from sleepless nights, panic attacks, depression and anxiety, prompting him to seek help from a psychologist for the first time, according to the ruling. He broke down during the arbitration proceeding as he recalled how he "became quiet and cried a lot" and "questioned his sanity," Rushing wrote……."This is a case of a 23-year-old White man with only a high-school education supervising a 43-year-old African-American man with a college degree, a classic invitation for serious resentment," she wrote…….In 2020, 31 complaints were filed with California's Department of Fair Employment and Housing alleging discrimination at Tesla on the basis of race, age, gender expression, disability and pregnancy, according to data obtained from public records. The state agency issued right-to-sue letters in a majority of the cases; a handful were closed with insufficient evidence. In July, Valerie Workman, Tesla's vice president of people, posted on the company's blog to remind employees about the use of slurs and epithets as they prepared to return to offices.")

[14]-https://www.google.com/amp/s/mobile.reuters.com/article/amp/idUSKBN1YZ18E

- (A federal judge rejected Tesla Inc's effort to dismiss claims by two former workers that the California electric car factory where they worked was a hotbed of racial hostility, clearing the way for a possible trial….In a decision on Monday, U.S. District Judge William Orrick in San Francisco found open questions over whether Owen Diaz and his son Demetric Di-az faced "severe and pervasive racial harassment" in 2015 and 2016 at Tesla's factory in suburban Fremont, which employs more than 10,000 people.

The plaintiffs, who are black, said they were subjected to repeated racial epithets dozens of times, as well as racist cartoons, and that supervisors engaged in or did little to stop the racism….Orrick said Diaz could pursue claims that Tesla allowed and did not take reasonable steps to stop racial harassment.)

[15]-https://www.google.com/amp/s/futurism.com/tesla-pays-racial-slur/amp

- (TESLA PAYS FORMER EMPLOYEE $1 MILLION FOR CALLING HIM HORRIFIC RACIAL SLUR… "I HOPE THE WORLD KNOWS THAT AN ARBITRATOR FOUND TESLA TREATS ITS EMPLOYEES LIKE THIS."  A former Tesla employee named Melvin Berry was awarded over $1 million in an arbitration hearing earlier this year after he filed complaints about racist harassment at work — including his direct supervisor calling him the N-word and then punishing him with longer hours of harder work for speaking out about it.

- Toxic Culture…..Arbitrator Elaine Rushing decided that the evidence that Berry — who quit after 18 months and dealt with panic attacks, depression, and anxiety as a result — was harassed was clear…..“Racial discrimination awards are rare and it seems this was especially hard-fought,” employment lawyer Cliff Palefsky, who wasn't involved in the case, told Bloomberg News. Rushing, he added, “was clearly troubled by the facts, culture at the company, and the tone of the defense.”)

[16]-https://www.sec.gov/Archives/edgar/data/1318605/000121465920005699/p612202px14a6g.htm

- (The resolution requests that Tesla's Board of Directors oversee the preparation of a report on the impact of the use of mandatory arbitration on Tesla's employees and workplace culture. The report should evaluate the impact of Tesla's current use of arbitration on the prevalence of harassment and discrimination in its workplace and on employees' ability to seek redress should harassment and discrimination occur…..The proposal speaks to the widespread experience in the economy of discrimination in the workplace by African American, Hispanic and female employees, despite this discrimination being unlawful under the Civil Rights Act of 1964. Those companies that tolerate discrimination and harassment in their own workplaces allow unnecessary legal, brand, financial, and human

capital risk within their companies. In contrast, studies show that companies with strong workplace equity programs are more likely to outperform peers with poor diversity programs.

- The use of mandatory arbitration in employee agreements limits employees' remedies for wrongdoing,....Corporate Policies that Allow Harassment and Discrimination Risk Investors' Capital….Identified benefits of diverse teams include: access to top talent, better understanding of consumer preferences, a stronger mix of leadership skills, informed strategy discussions, and improved risk management. Diversity, and the different perspectives it encourages, has also been shown to encourage more creative and innovative workplace environments.

- In contrast, companies where harassment and discrimination exist may experience reduced employee morale and productivity, increased absenteeism, challenges in attracting talent and difficulties in retaining talent. Employees directly experiencing workplace discrimination….Tesla employees have alleged harassment and discrimination on the basis of race and gender. A number of employees have come forward with allegations of harassment and discrimination at Tesla. While the company disputes these allegations on various grounds, the pattern of allegations is difficult for reasonable investors to ignore:

  - n 2017, AJ Vendermeyden alleged that she experienced harassment and discrimination as an engineer at Tesla's Fremont plant. According to Ms. Vendermeyden, a part of the factory was known to women as the "predator zone." While Tesla stated that it conducted investigations of Ms. Vendermeyden's claims and found them baseless, it held the case in arbitration, preventing it from going to court. Ms. Vendermeyden was eventually fired from Tesla. Tesla told The Guardian that Ms. Vendermeyden was fired for "falsely attacking our company in the press."[13]

  - In 2017, DeWitt Lambert alleged that he experienced harassment and violent threats while working at Tesla's Fremont, California. His allegation included recordings of co-workers stating "N***, we take your ass home, n***. Shred you up in pieces, n***. Cut you up, n***. Send your ass so everyone in yo family so everybody can have a piece of you, n***."[14] In March of that year, Tesla general

counsel, Todd Maron, wrote to Mr. Lambert's lawyers: "In terms of settlement, we are willing to pay Mr. Lambert [redacted], but only if we are to resolve this matter before there is media attention, preferably within the next few hours." He also wrote, "If there is media attention first, there will be no deal."15 Mr. Lambert's case was held in arbitration and Mr. Lambert was fired from Tesla. The company said that it had discovered problems with his conduct and work history.16

○ In November 2019, WIVB4, a local news station in Buffalo, reported that six African American and Hispanic Tesla workers had reported racist experiences in Tesla's Buffalo plant. As of February, 2020, WIVB4 reported that it was aware of twelve employees that had inquired about filing complaints with the U.S. Equal Employment Opportunity Commission and the state Division of Human Rights, alleging a racist, hostile work environment. In its interviews, however, employees spoke anonymously, given their fears of retaliation from the company.)

[17]-https://www.google.com/amp/s/revealnews.org/article/how-tesla-and-its-doctor-made-sure-injured-employees-didnt-get-workers-comp/

● (How Tesla and its doctor made sure injured employees didn't get workers' comp … Inside a medical clinic not far from Tesla's electric car factory, Yvette Bonnet started noting a troubling pattern. The automaker's workers' compensation manager would pressure her boss, Dr. Basil Besh, to make sure Tesla wasn't on the hook for certain injured workers.  And in her observation, Besh did whatever he could not jeopardize his chance to run Tesla's on-site factory clinic.

● "He would say, 'I'm not losing the contract over this – get this case closed,'" said Bonnet, who was operations manager for Besh's Access Omnicare clinic in Fremont, California, for about a year.  "Besh wanted to make certain that we were doing what Tesla wanted so badly," she said. "He got the priorities messed up. It's supposed to be patients first."...)

[18]-https://jalopnik.com/tesla-pressured-doctors-to-block-workers-comp-benefits-1833968118

● (Tesla Pressured Doctors to Block Workers Comp Benefits to Save Money: Report … Imagine getting shocked at work by an industrial electric current

so severely that you fall backwards, urinate on yourself, and have pain, numbness, and balance problems. Third-party doctors subsequently confirm, yep, you were electrocuted.

- But then a manager from your employer steps in and says, no it was just minor static electric shock, like the kind you get when you touch a doorknob after walking on the rug, just so the company isn't on the hook for the associated medical costs with your treatment and doesn't have to report the workplace injury to regulators.....This is not the first time Reveal has brought to light sketchy workplaces practices from the electric car company. The news organization has previously reported on Tesla's practices of keeping workplace injuries off the books and providing questionable medical assistance on-site before sending workers back to the line.)

[19]-https://revealnews.org/podcast/working-through-the-pain-at-tesla/

- Working through the pain at Tesla...After being called out for hiding worker injuries at its factory, Tesla decides to double down….

[20]-https://revealnews.org/blog/tesla-fired-safety-official-for-reporting-unsafe-conditions-lawsuit-says/

- Tesla fired safety official for reporting unsafe conditions, lawsuit says … A former high-level safety official at Tesla Inc. has sued the company for failing to treat injured employees and for misclassifying work injuries to avoid reporting them as required by law...Carlos Ramirez, a director of environment, health, safety and sustainability at Tesla until June 2017, alleges he was fired in retaliation for reporting unsafe working conditions, such as chemical exposures and fires, and for refusing to go along with what he believed to be illegal practices.

- More from Insult to Injury…. An April investigation by Reveal from The Center for Investigative Reporting found that Tesla undercounted its workers' injuries, making the official injury rate look better than it actually was.  The suit also says Ramirez, who is Mexican American, faced harassment based on his race and national origin and that Tesla failed to address it.

- Ramirez previously worked as vice president of environmental, health and safety for SolarCity, a solar panel manufacturer Tesla acquired in 2016...Carlos Ramirez, a former safety official at Tesla Inc., sued the

automaker for allegedly firing him in retaliation for reporting unsafe
working conditions and safety violations. … After he came to Tesla,
Ramirez and his team audited the company's internal injury tracking
system, the suit says. The 2017 audit "revealed numerous instances of lack
of treatment of Tesla employees that suffered workplace injuries,
recordkeeping violations, and improper classification of workplace injuries
to avoid treating and reporting workplace injuries," it says.

[21]-https://revealnews.org/blog/im-not-who-i-used-to-be-severely-injured-worke
r-sues-tesla/

- Severely injured worker sues Tesla: 'I'm not who I used to be'...Chuong
  Nguyen (left) helps look after his brother, Son, as he recovers from a severe
  burn injury at Tesla's car factory in 2017….A man severely burned in an
  electrical explosion at Tesla's car factory is suing the automaker for
  allegedly putting him in harm's way "in order to increase productivity at
  the expense of human lives."
- Son Nguyen was working as a contractor at the Fremont, California,
  factory on June 5, 2017, when an explosion called an arc flash threw him
  back 15 to 20 feet and engulfed him in flames...More from Insult to
  Injury...Nguyen's lawsuit says Tesla should have cut electricity to the
  equipment he was working on, but refused to because the company didn't
  want to temporarily stop production.
- Nearly a year later, he is in constant pain and covered in scars and skin
  grafts, his pinky finger amputated, a compression garment covering him
  from head to knees. Nerve pain, which he says feels like "thousands of
  pins and needles poking you," keeps him up at night. He struggles with
  basic tasks and dreads the surgeries to come…."I don't want anybody to
  go through what I went through,"

[22]-https://revealnews.org/blog/tesla-hit-by-government-investigation-after-revea
l-story/

- Tesla hit by government investigation after Reveal story…..Tesla officials
  Laurie Shelby (left) and Gaby Toledano read the concerns of then-safety
  lead Justine White, who emailed CEO Elon Musk's chief of staff in 2016.
  "I know what can keep a person up at night regarding safety," she wrote. "I
  must tell you that I can't sleep here at Tesla."....California's workplace
  safety agency opened an investigation of Tesla Inc. on Tuesday, the day

after Reveal from The Center for Investigative Reporting published an investigation of safety problems and unreported injuries at the carmaker's Fremont factory.

- Reveal found that Tesla did not count all of its work injuries as required by law, making its safety record look better than it actually is….."Cal/OSHA takes seriously reports of workplace hazards and allegations of employers' underreporting recordable work-related injuries and illnesses," said Erika Monterroza, spokeswoman for the state Department of Industrial Relations, which includes the Division of Occupational Safety and Health, known as Cal/OSHA…..Cal/OSHA has cited Tesla for more than 40 health and safety violations since 2013. This year, the agency cited the company for failing to provide employees with effective information and training on chemical hazards in their work areas, as well as failing to "effectively assess the workplace" for chemical hazards.

- [23]-https://revealnews.org/article/inside-teslas-factory-a-medical-clinic-designed-to-ignore-injured-workers/

  - INSULT TO INJURY - Inside Tesla's factory, a medical clinic designed to ignore injured workers …. Former Tesla worker Stephon Nelson clutches his back as he climbs steps outside his girlfriend's home in Oakland, Calif. He was injured in August while working in the trunk of a Model X. Something slipped and its hatchback crunched down on his back. … When a worker gets smashed by a car part on Tesla's factory floor, medical staff are forbidden from calling 911 without permission.

  - The electric carmaker's contract doctors rarely grant it, instead often insisting that seriously injured workers – including one who severed the top of a finger – be sent to the emergency room in a Lyft….Injured employees have been systematically sent back to the production line to work through their pain with no modifications, according to former clinic employees, Tesla factory workers and medical records. Some could barely walk.

  - The on-site medical clinic serving some 10,000 employees at Tesla Inc.'s California assembly plant has failed to properly care for

seriously hurt workers, an investigation by Reveal from The Center for Investigative Reporting has found…..The clinic's practices are unsafe and unethical, five former clinic employees said….But denying medical care and work restrictions to injured workers is good for one thing: making real injuries disappear. "The goal of the clinic was to keep as many patients off of the books as possible," said Anna Watson, a physician assistant who worked at Tesla's medical clinic for three weeks in August…..Watson has nearly 20 years of experience as a medical professional

[24]-https://www.google.com/amp/s/nypost.com/2021/07/07/ex-tesla-worker-says-he-was-called-n-word-100-times-by-coworkers/amp/

[25]-https://www.gwclaw.com/blog/tesla-minimizing-work-injuries/

[26]-https://www.audacy.com/kcbsradio/blogs/doug-sovern/tesla-fined-california-lack-workers-compensation-janitors

- The state of California is fining Tesla ...The California Labor Commissioner has cited and fined Tesla Energy Operations and its previous subcontractor ... each for violating state labor laws….The company was not paying for workers compensation insurance,"

[27]-https://www.bloomberg.com/news/articles/2019-09-27/tesla-committed-unfair-labor-practices-nlrb-judge-rules

- tesla-committed-unfair-labor-practices-nlrb-judge-rules

[28]-https://www.gwclaw.com/blog/tesla-minimizing-work-injuries/

[29]-http://www.janitorialwatch.org/2019/10/24/tesla-and-its-contractors-again-cited-and-fined-for-labor-violations-in-california/

- Tesla and its Contractors Again Cited and Fined for Labor Violations in California
- October 24, 2019 / Press Release.. For the second time in recent months, an investigation from the Maintenance Cooperation Trust Fund has turned into a citation from the state LOS ANGELES – The State of California has cited Tesla and its janitorial contractors for not paying janitors their full wages at one of Tesla's San Jose facilities.
- Workers who cleaned the facility between 2015 and 2018 were underpaid for the hours they worked, workers received checks with no deductions statement, and were misclassified as independent contractors. Tesla's contractors, Leonardo Valencia and Orbit USA, LLC were cited and owe

$370,000 for willfully misclassifying workers, including workers who worked at the Tesla facility. Leonardo Valencia and Orbit USA, LLC were also cited for underpaid work at the Tesla facility and other locations. Tesla was cited for more than $30,000 for violations of minimum wage and overtime requirements, meal and rest period violations, failure to comply with itemized statement provision, plus additional penalties.

- "Too often, subcontractors have overworked and underpaid janitors with no consequences. New California laws help to give workers more protections and hold companies like Tesla responsible," said Rafael Ventura, Interim Executive Director. "Tesla must stop using contractors who evade the law and exploit their workers to make their bottom line."
- "I was misclassified as an independent contractor so my employer could cut costs, even though I worked at Tesla full time," said Santiago Paz. "I was denied overtime and my workers' rights. I worked hard and I deserve to be paid fairly."
- Wage theft (and these types of labor code violations are a wide spread problem - Addenda ref). The company itself, as well as its subcontractors, as well as these particular subcontractors, who they (Tesla) also have a legal duty to ensure paid, and worker's compensation according to rulings … (see addenda - see specific rulings from them).

[30]-Tesla's new gigafactory will highlight the 2 biggest labor trends in America - Transmosis CyberOps Small Business AI Cybersecurity Software

[31]-This Week in Threats to Workers' Rights - Pacific Standard

[32]- Report: Wage Theft is Pervasive in Corporate America | Good Jobs First
- (A new report finds that many large corporations operating in the United States have boosted their profits by forcing employees to work off the clock, cheating them out of required overtime pay and engaging in similar practices that together are known as wage theft.)

[33] - Tesla | Today's Workplace
- (Hiding Injuries at Tesla: Where The Worker Still Doesn't Matter, Under-recording of workplace injuries and illnesses is bad, and far too common. But at the automaker Tesla, in Fremont, California, under-recording is more than a paper exercise in deception — at Tesla it

means withholding needed medical treatment of injured workers so that
their injuries aren't report on OSHA logs. We wrote previously about
reports that workers are getting hurt at Tesla and that many of those injuries
are not being recorded.... CalOSHA has inspected the company a number
of times and found recordkeeping violations.  Now Evans shows the many
ways that Tesla is keeping injuries off the OSHA logs.)

[34] -Tesla factory workers stiffed on overtime, denied breaks: lawsuit

- (Tesla factory workers stiffed on overtime, denied breaks: lawsuit, Tesla
  and a contracting company failed to pay contract workers fully for
  overtime and denied them legally mandated meal and rest breaks, a contract
  employee at Tesla's Fremont auto-assembly plant said in a lawsuit that also
  claims she was fired for complaining about employee-payment
  practices....Nezbeth-Altimore's lawsuit, filed April 19 in Alameda County
  Superior Court, is not the only contractor-related legal action facing the
  company. A lawsuit by three African American men, hired through
  workplace-staffing agencies to work at the Fremont factory, alleges that the
  company led by CEO Elon Musk oversaw a work environment hostile to
  black people, featuring racial epithets and racist graffiti.)

[35] -Elon Musk apologizes for Tesla workers paid just $5 an hour by
subcontractor | Tesla | The Guardian

[36] -Tesla Fined for Labor Violations, Second Investigation by the State of
California Ongoing - The Maintenance Cooperation Trust Fund

[37] - Tesla's $1 Million Settlement of Wage Claims Gets Final Approval

[38] - Tesla Fined By California For Lack Of Workers Compensation For
Janitors

[39] -What is Wage Theft and How to Know if You're a Victim of it | Money

- (Wage Theft Costs American Workers Billions Each Year.A 2017 study
  from the Economic Policy Institute (EPI) found that 2.4 million employees
  across the ten largest U.S. states lost $8 billion annually to just one form of
  wage theft)

[40] - Exposing Wage Theft Without Fear - National Employment Law Project
- (workers face an especially high risk of retaliation along with potentially more devastating consequences. On a daily basis, workers who want to assert their basic rights risk not only their job and income, but also their long-term economic security, trauma...Why Do Workers Experience Retaliation?  Workers in the U.S. generally bear the burden of enforcing their own labor protections—it is up to them to come forward to report violations.  When a worker comes forward to report a workplace violation, we know that employers often retaliate or threaten to retaliate against the worker.  ·Under our current system, workers bear the entire risk of retaliation from their employer when they report violations.   What Does Retaliation Look Like?   Retaliation takes many shapes and can be difficult to pinpoint or prove. Employers, for example, may fire a worker, demote a worker, reduce a worker's hours, change worker's schedule to a less favorable one, subject a worker to new forms of harassment, unfairly discipline a worker, threaten to report a worker or a worker's family member to immigration authorities, and much more.)

[41]-Editorial: Tesla worker betrayal brings call for action (East Bay Times) – East Bay Times
- (The Sunday story by the Bay Area News Group's Louis Hansen about the hidden workforce that expanded Tesla's Fremont factory was shocking. It raises red flags about labor practices and B1 visa abuses throughout the Bay Area.  The betrayal by Tesla is especially disappointing. The cutting-edge carmaker was regarded as the role model for bringing manufacturing jobs back to California. It was the prototype feel-good, green industry that paid its skilled workers a premium for their ultra-productive work.  But not the workers imported to build the expansion of the state-of-the-art plant. They were hired through a contractor and paid the wages they would make in their own impoverished countries, $5 an hour in some cases.  In a formal response to the story Monday, Tesla issued a statement saying "mistakes were made" and the company pledged to "put in place additional oversight to ensure that our workplace rules are followed even by sub-subcontractors to prevent such a thing from happening again.")

[42] Elon Musk's SpaceX shortchanged its workers and now it must pay

- In 2014, a handful of former employees claiming unfair compensation brought suits against SpaceX that California courts …. company agreed to settle in August 2016 and finalized a settlement for about $4 million in May

[43] https://www.teslarati.com/tesla-factory-workers-file-charges-labor-board/

- unfair labor practice charge, alleging illegal surveillance, coercion, intimidation and prevention of worker communications by Tesla

[44]https://www.cnbc.com/2017/04/25/workers-involved-in-union-activities-say-tesla-is-illegally-intimidating-them.html

[45]-https://www.reuters.com/article/us-tesla-union/uaw-accuses-musk-of-threatening-tesla-workers-over-unionization-idUSKCN1IP2XS

[46]-https://www.vox.com/identities/2019/9/30/20891314/elon-musk-tesla-labor-violation-nlrb

[47]-www.theguardian.com/technology/2022/feb/18/ tesla-california-racial-harassment-discrimination-lawsuit

[48]-www.blackenterprise.com/black-ex-tesla-employee-awarded-more-than-1-million-after-company-fails-to-stop-supervisors-from-calling-him-the-n-word

[49]-www.nytimes.com/2021/10/04/business/tesla-racism -lawsuit.html

[50]-https://www.baltimoresun.com/opinion/op-ed/bs-ed-op-1107-tesla-diaz-black-confidence-20211105-ultlahzhijes7bqks6j2uiefla-story.html

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 21-15151

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

⦿ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: 4193 .

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/George Jarvis Austin | **Date** | 8/10/22

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**                    *Rev. 12/01/2021*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 21-15151

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Petition for Rehearing
Opening Brief
Reply Brief

**Signature** | s/George Jarvis Austin          **Date** | 08/10/22

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**                                                          *Rev. 12/01/2018*